IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re | § § | |
| Professional Fee Matters Concerning the Jackson Walker Law Firm | § § § § | Misc. No. 4:23-cv-04787 |

# UNITED STATES TRUSTEE'S OBJECTION TO THE BANKRUPTCY COURT'S REPORT AND RECOMMENDATION THAT HIS MOTIONS TO WITHDRAW THE REFERENCE BE DENIED

Kevin Epstein, United States Trustee for Region 7 ("U.S. Trustee"), objects to the Bankruptcy Court's Report and Recommendation ("Report") that the U.S. Trustee's Motions to Withdraw the Reference Be Denied.

## INTRODUCTION

On October 15, 2023, the U.S. Fifth Circuit Court of Appeals publicly filed an ethics complaint ("Ethics Complaint") alleging serious, pervasive, and continuing judicial and lawyer misconduct—by then Bankruptcy Judge David R. Jones ("Judge Jones"), Elizabeth Freeman ("Ms. Freeman"), a former partner at the law firm of Jackson Walker LLP ("Jackson Walker"), and Jackson Walker itself. The Ethics Complaint alleged that Judge Jones has maintained an intimate household relationship with Ms. Freeman for approximately six years. Beginning in 2018, Judge Jones presided over at least 26 cases where Jackson Walker was debtor's counsel, and he repeatedly approved Jackson Walker's employment and millions of dollars in compensation while Ms. Freeman was both a Jackson Walker partner and his intimate partner. Neither Judge Jones, Ms. Freeman, nor Jackson Walker disclosed the relationship between Judge Jones and Ms. Freeman. And Judge Jones did not recuse himself as required by the Canons of Judicial Conduct. These alleged years-long, intentional, and repeated ethical failures have raised widespread and

legitimate concerns about the fairness and impartiality of proceedings in the Bankruptcy Court for the Southern District of Texas.[1]

On November 2 and 3, the U.S. Trustee filed 17 Rule 60(b)(6) motions ("Rule 60(b)(6) Motions") to vacate all fee awards—valued at approximately $13 million—that Judge Jones had improperly awarded to Ms. Freeman and Jackson Walker during the relevant period; additional filings may follow in as many as 15–18 other cases as the U.S. Trustee's investigation continues.[2] The U.S. Trustee also simultaneously filed motions to withdraw the reference for cause of the Rule 60(b)(6) Motions and related matters[3] because of the appearance of bias, efficiency, uniformity, and consistency. *See generally In re Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) ("Bankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 are automatically referred to the bankruptcy judges of this district . . . ."). Jackson Walker, whose bankruptcy practice remains ongoing, agreed that there was cause for withdrawal of the reference to an Article III court, and it agreed to the U.S. Trustee's motions. The U.S. Trustee and Jackson Walker filed 17 joint, agreed stipulations recommending

---

[1] This alleged judicial misconduct is particularly serious because it implicates the integrity of the bankruptcy proceedings themselves. It has accordingly received significant public attention. According to Reorg Research, its coverage of the "saga of former judge David Jones of the Southern District of Texas and Elizabeth Freeman was its most read story of 2023." *Most-Read Reorg Scoops in 2023 Underscore Ethos of Distressed Investing, Restructuring*, Reorg Research Bankruptcy Industry Update (Jan. 4, 2024) (subscription only) https://app.reorg.com/v3#/items/intel/1937?item_id=244735; *see also, e.g.*, Dakin Campbell & Nicole Einbinder, *Lawsuit Alleges Undisclosed Relationship Involving Federal Judge that Could Cloud Corizon Bankruptcy Deal*, Business Insider, Oct. 6, 2023; Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023; James Nani, *Texas Bankruptcy Judge Resigns After His Ethics Questioned (2)*, Bloomberg Law (Oct. 15, 2023); James Nani & Alex Wolf, *Top Texas Judge's Ethical Lapse Threatens Court's Reputation (2)*, Bloomberg News, Oct. 16, 2023.

[2] There are nine closed cases over which Judge Jones presided that have not been reopened to seek similar relief against Jackson Walker, and there are between six and nine cases, both open and closed, where Judge Jones served as mediator. Jackson Walker was debtor's counsel in most of those cases, and Ms. Freeman was counsel to a party in several cases after she left Jackson Walker.

[3] To allay Judge Rodriguez's concerns expressed at a December hearing about the precise scope of the "related matters" sought to be withdrawn, the U.S. Trustee offered, and the Bankruptcy Court later invited, the U.S. Trustee to supplement his Motion to Withdraw by December 28, which he did. That supplement provides more detail on what should be withdrawn to the District Court and is attached as **Exhibit 1**.

that the references of the Rule 60(b)(6) Motions be withdrawn.[4] Notwithstanding that the parties agreed, that the U.S. Trustee's motions to withdraw were unopposed, and that "cause" for withdrawal is broad and means any good reason, on December 21, the Bankruptcy Court issued its Report recommending that the U.S. Trustee's agreed motions to withdraw be denied.

The Bankruptcy Court's Report is flawed, and this Court should reject it. Although the U.S. Trustee has not alleged bias or impropriety by the remaining bankruptcy judges within the district, withdrawal of the reference is necessary to restore the public's confidence by avoiding the appearance of bias that otherwise will unnecessarily distract from the merits of the Rule 60(b)(6) Motions if they are heard by this district's sitting bankruptcy judges. The Report simply does not address cause for permissive withdrawal beyond the six factors articulated in *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). Even if the *Holland America* factors were dispositive on the question of what constitutes "cause" for withdrawal of the reference, four of the six support withdrawal—uniformity, consistency (reducing confusion), efficiency, and expedition. But the most compelling cause for withdrawal—neither presented in *Holland America* nor squarely addressed by the Bankruptcy Court—is the need for someone other than a fellow bankruptcy court judge to preside over litigation to restore the public's confidence that a former bankruptcy judge and colleague undermined.

Unless the reference is withdrawn, the factual and legal bases for the motions to vacate will require the three bankruptcy judges to adjudicate not just the propriety of Jackson Walker's and Ms. Freeman's conduct but also the propriety of the conduct of their former colleague. The linchpin of the Rule 60(b)(6) Motions is whether Judge Jones violated Bankruptcy Rule 5004 and

---

[4] The agreement did not include the U.S. Trustee's request to refer the Rule 60(b)(6) Motions to the Western District of Texas. Jackson Walker opposes that relief.

28 U.S.C. § 455 when he awarded Jackson Walker millions of dollars in compensation such that the awards were invalid when entered and should be rescinded. Simply put, the Rule 60(b)(6) Motions implicate both Judge Jones's conduct and Jackson Walker's. Consistent with this Court having *sua sponte* referred all litigation against former Judge Jones—arising from the same facts underpinning the Rule 60(b)(6) Motions—to the Chief Judge of the Western District of Texas, General Order 2023-21 (S.D. Tex. Oct. 20, 2023), judges who have shared a courthouse, a clerk's office, and a bench should not sit in judgment about the legality of one another's conduct, even if they believe they could do so fairly and impartially. This is particularly important in large chapter 11 bankruptcy cases that, unlike traditional two-sided civil litigation, implicate a multiplicity of interests held by thousands upon thousands of stakeholders, many of whom do not actively participate in the cases and must trust that the proceedings in a courthouse far away not only *be* right but also *seem* right.

The U.S. Trustee, therefore, objects to the Report and urges this Court to exercise its exclusive authority to order that the references be withdrawn for cause.

## THE UNITED STATES TRUSTEE

1.  The U.S. Trustee is a Department of Justice official, appointed by the Attorney General, 28 U.S.C. § 581(a)(7), whose role includes "serv[ing] as [a] bankruptcy watchdog[] to prevent fraud, dishonesty, and overreaching in the bankruptcy arena." H.R. Rep. No. 595, 95th Cong., 1st Sess. 88 (1977). The Bankruptcy Code provides that "[t]he United States [T]rustee may raise and may appear and be heard on any issue in any case or proceeding under [the Code]." 11 U.S.C. § 307. Among other duties, the U.S. Trustee supervises the administration of chapter 11 cases and is specifically authorized to review, comment on, and object to professionals' applications for compensation under 11 U.S.C. § 330. 28 U.S.C. § 586(a)(3)(A). Congress established the U.S. Trustee to be "responsible for 'protecting the public interest and ensuring that

4

bankruptcy cases are conducted according to law.'" *In re Revco D.S., Inc.*, 898 F.2d 498, 499–500 (6th Cir. 1990) (citation omitted).

## PROCEDURAL HISTORY

2. The U.S. Trustee adopts and incorporates by reference the Procedural History in the Report. ECF No. 44, pp. 2–3. For a comprehensive recitation of the facts as understood on November 2, 2023, *see, e.g., In re Westmoreland Coal Co.*, No. 18-35672, ECF No. 3360 (Bankr. S.D. Tex. Nov. 2, 2023) (United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses).

## LAW AND ARGUMENT

**A. Title 28 Allows Withdrawal for Cause, but Neither it Nor the Bankruptcy Code Defines Cause, Which Generally Means a Good or Legally Sufficient Reason**

3. Section 157(d) of Title 28, governing permissive withdrawal, provides that the reference of a matter to a bankruptcy court may be withdrawn back to the district court for cause. Neither the Bankruptcy Code nor Title 28 defines "cause." It is commonly accepted, however, that cause means a good or "legally sufficient reason" or "ground for legal action." Black's Law Dictionary (11th ed. 2019). As the Fifth Circuit stated almost forty years ago when it first confronted the issue of permissive withdrawal of the reference under the then new Bankruptcy Code, permissive withdrawal requires "a sound, articulated foundation." *Holland America*, 777 F.2d at 998. That standard is plainly met here.

4. The Fifth Circuit's 1985 *Holland America* decision was one of the earliest to confront the issue of withdrawing the reference and the relationship between bankruptcy and district courts in the wake of the Bankruptcy Amendments and Federal Judgeship Act of 1984

("1984 Act") enacted to address the Supreme Court's 1982 *Marathon* ruling declaring the 1978 Bankruptcy Code unconstitutional.[5] Although the six *Holland America* factors have been widely followed in assessing whether cause for withdrawal exists, the Fifth Circuit in that early case neither identified an exhaustive list nor excluded other relevant factors:

> The posture of this case does not permit us to offer more than general principles that should guide the district court in determining whether to refer or withdraw the reference. Little precedent yet exists on this subject. . . . The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process. . . . [W]hile we do not reach the issue, there is some doubt whether bankruptcy courts can conduct jury trials in light of *Marathon* and the Bankruptcy Amendments Act. The district court should apply these factors in articulating whether to withdraw the reference on this litigation.

*Id.* at 999 (footnote omitted). *Holland America*'s listed factors are guideposts that leave intact courts' statutory authority to withdraw cases for cause when necessary or appropriate. As statutory text commands, the statutory standard is and remains cause. Avoiding the appearance or presence of bias or impropriety constitutes such cause.

**B.     The Report Ignores the Most Important Cause for Withdrawal of the Reference: Public Confidence and the Appearance of Bias**

5.     The U.S. Trustee's most significant reason for seeking withdrawal of the reference (and referral to a judge in another district) is the need to avoid even the *appearance* of bias and partiality, which is integral to reestablishing public trust and confidence in the bankruptcy court. Both the Code of Judicial Conduct and the case law are replete with the admonition that proceedings must not only *be* right, they must also *seem* right: "We must continuously bear in mind that 'to perform its high function in the best way []justice must satisfy the appearance of justice.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (quoting *In re*

---

[5] *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

6

*Murchison,* 349 U.S. 133, 136 (1955)); *see also* Canon 2, Code of Conduct for United States Judges (judges must avoid the appearance of impropriety). An "observer of our judicial system is less likely to credit judges' impartiality than the judiciary." *United States v. Jordan*, 49 F.3d 152, 156–57 (5th Cir. 1995). The Supreme Court, albeit in a criminal context, explained how the appearance of neutrality is essential to adjudication that seems fair:

> A multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part. An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself. When the objective risk of actual bias on the part of a judge rises to an unconstitutional level, the failure to recuse cannot be deemed harmless.

*Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909–10 (2016). Although neither the Judges' Code of Conduct nor the constitutional due process standard are at issue here, the principles underlying those authorities necessarily establish that the appearance of bias is a "sound" reason for deviating from ordinary judicial assignment processes. In this case, at a minimum, that requires withdrawing the reference, if not referral outside of the district.

6. There was no reason for the Fifth Circuit to consider or discuss public confidence and the appearance of bias in *Holland America* given the facts of that dispute.[6] In contrast, given the serious ethical failures alleged here, both public confidence and the appearance of bias are a "sound, articulated foundation"—and give this Court cause—for withdrawal. Moreover, the many

---

[6] A bank that held the mortgage on a corporate debtor's property sued the debtor's fire insurance company in state court to establish its status as the appropriate loss payee on the policy after a fire destroyed debtor's processing and packing facility. But the bank did so unaware of the pending bankruptcy case (filed weeks before the 1984 Act became effective). The insurance company then filed an interpleader action in federal court where the bankruptcy case was pending and named all potential claimants to the proceeds, including the bank and debtor, as defendants. On appeal of a preliminary injunction precluding litigation over the insurance policy in any other forum, the Fifth Circuit found the district court had jurisdiction and *sua sponte* raised the question of whether the district court should consider referral of the interpleader litigation to the bankruptcy court under the terms of the weeks-old 1984 Act. *See generally Holland America*, 777 F.2d at 993–94.

7

failures here are neither technical nor clinical. Rather, the very integrity of dozens of the largest chapter 11 cases filed in the United States since early 2018 has been compromised by Judge Jones, Ms. Freeman, and Jackson Walker, and the fees Judge Jones awarded Ms. Freeman and her firm are alleged to have been wrongly approved.[7]

7. The relationship between Judge Jones and Ms. Freeman, first revealed in October, has garnered nationwide interest and public scrutiny, as reported in the Wall Street Journal, the New York Times, Bloomberg News, and many other publications of broad reach. The public is closely watching how these matters are handled and ultimately resolved. Public trust and confidence in the bankruptcy system must be restored, and withdrawing the reference to an Article III court is a necessary part of that restorative process.

8. Just as this Court entered General Order 2023-21 referring litigation against Judge Jones to a judge in another district, other courts confronting allegations similar to those here have likewise altered case assignments to avoid judges having to address alleged misconduct by one of their own. For example, 45 years ago, in Detroit, Michigan, a bankruptcy court clerk was romantically involved with a bankruptcy attorney who paid the clerk to assign his cases to a bankruptcy judge who would then award him more generous legal fees. The bankruptcy court was returned to the control of the district court:[8]

---

[7] "[L]ast year [2020] 57% of all large, public company bankruptcy cases ended up before just three of the country's 375 bankruptcy judges . . . . Judge [David R.] Jones . . . presided over 39% of all megacases filed in 2020. . . . *Testimony of Adam J. Levitin, Professor of Law Georgetown University Law Center*, Before the Committee on the Judiciary Subcommittee on Antitrust, Commercial, and Administrative Law United States House of Representatives "Oversight of the Bankruptcy Code, Part I: Confronting Abuses of the Chapter 11 System," pp. 9 & 12 (July 28, 2021) (emphasis in original) (available at https://docs.house.gov/meetings/JU/JU05/20210728/113996/HHRG-117-JU05-Wstate-LevitinA-20210728.pdf).

[8] In another prior matter, T. Manton, Chief Judge of the United States Court of Appeals for the Second Circuit, appointed himself to act as a district court judge, in which capacity he selected insolvency receivers. In one instance, Judge Manton received $20,000 in return for an appointment. Judge Manton ultimately was convicted of conspiring to defraud the United States and obstruction of justice for accepting bribes. *See* Gunther, Gerald, LEARNED HAND, THE MAN AND THE JUDGE, 504–13 (Harvard 1994). It is instructive here that Judge "Manton's conviction was affirmed not by judges who sat at the same time he did, but by a specially constituted Second Circuit panel consisting

> A [bankruptcy] court intake clerk became romantically involved with a prominent bankruptcy attorney, and in exchange for thousands of dollars, she assigned his cases to judges who awarded higher attorney fees. The couple socialized with Judge Hackett, a bankruptcy judge who apparently received favors from the attorney and, in exchange, granted him suspiciously high attorney fees. Additionally, the clerk of the bankruptcy court was indicted on charges that he had purchased items from a bankruptcy estate. Judge Hackett, the bankruptcy court clerk, and the intake clerk resigned. The attorney and intake clerk were convicted of fraud, conspiracy, and bribery, and sentenced to prison. **As a result, the bankruptcy courts were placed back under the control of the district courts.**

Michigan Bar Journal (Oct. 2012), 56, 57 (available at https://www.michbar.org/file/journal/pdf/pdf4article2096.pdf (emphasis added). In this case, the U.S. Trustee and the Court face a similar set of facts where, in multiple judicial proceedings, the impropriety of a federal judge's and law firm's conduct based on an undisclosed personal, intimate relationship is at issue.

9. Allowing these matters to remain in the same bankruptcy court where the alleged impropriety occurred cannot guarantee public confidence. The bankruptcy judges in this district have close relationships with those involved in the alleged impropriety. Indeed, at a recent ceremony in his honor, Judge Jones acknowledged that Judge Isgur has been a close personal friend for over 30 years, dating back to when Judge Isgur hired him out of law school at Kirkendall & Isgur. Acceptance Remarks for the 2023 Distinguished Service Award for Lifetime Achievement, 39 Emory Bankr. Dev. J. 491. Judge Isgur acknowledged the close relationship continued while they served on the bench together and created the complex case panel:

> David . . . is being honored because he had a vision of a bankruptcy court that would provide services to the business community. . . . But the revolution in mega-case bankruptcy practice that has been started in the Southern District of Texas is a David Revolution. . . . And when it was time for me [Judge Isgur] to step off of the complex panel, David committed to a successful transition to Chris Lopez, who is

---

of retired Supreme Court Justice George Sutherland, Supreme Court Justice Harlan Fiske Stone, and newly appointed Second Circuit Judge Charles Edward Clark" (citing *United States v. Manton*, 107 F.2d 834 (2d Cir. 1939)). *See also* Vestal, Allan D. (1959) "*A Study in Perfidy*," Indiana Law Journal: Vol. 35: Iss. 1, Article 2, pp. 22 and pages following (available at: https://www.repository.law.indiana.edu/ilj/vol35/iss1/2). *See also id.*, note 29 at p. 22.

> here with us tonight. . . . Chris and David have managed a seamless transition of the complex case draw. The work continues.

*Presentation Remarks for the 2023 Distinguished Service Award for Lifetime Achievement*, 39 Emory Bankr. Dev. J. 487, 489. Moreover, Judge Isgur introduced Judge Jones as his son. *Id.* (noting that he had the honor of "introducing my son, David Jones . . . [and that he is] very fortunate to have two very accomplished children. My wonderful daughter Sarah and my stubborn adopted son, David.").

10. The Report states that the U.S. Trustee did not provide "any rationale apart from speculation" as to why the District Court's concerns that prompted referral to the Western District of Texas likewise suggest withdrawal of the reference is appropriate. ECF No. 44, p. 15. But those concerns are based on fundamental principles of fairness that are equally applicable to the instant motions: judges sitting in the same district in the same courthouse sharing the same clerk's office and clerk's staff should not be the ones to adjudicate the propriety of a former colleague's conduct that compromised the integrity of the bankruptcy system and the public's confidence in it. Moreover, discovery of all relevant facts may well require depositions of some bankruptcy court personnel, and if disputes arose about that, public confidence would suggest that a bankruptcy judge should not adjudicate issues regarding its own staff even if the judge believes he could do so impartially. Again, the appearance of bias is a sufficient basis to necessitate withdrawal, regardless of whether actual bias exists, much less can be definitively established. Simply put, withdrawing the reference—and referring the Rule 60(b)(6) Motions to the Western District of Texas (or any other district)—eliminates the appearance problem that is a distraction from the merits of the Rule 60(b)(6) Motions.

## C. Three Related Factors—Reduction of Confusion, Economy, and Uniformity—Likewise Compel Withdrawal

11. The Report's assessment of the *Holland America* factors is also flawed. As an initial matter, it states that economy and uniformity do not favor withdrawal and that reduction of confusion is neutral. ECF No. 44, p. 9. The U.S. Trustee disagrees. Each of those factors favors withdrawal. (For this discussion, the U.S. Trustee treats uniformity as encompassing reduction of confusion.) The Report is correct, however, that the U.S. Trustee's Motion to Withdraw anticipates that this Court would find that only one consolidated trial on the multiple Rule 60(b)(6) Motions would provide much needed uniformity and efficiency and would proceed accordingly.

12. Although the U.S. Trustee agreed *in the abstract* at the hearing that a miscellaneous proceeding *could* solve the uniformity and efficiency issues (but not the appearance and public confidence issues),[9] the actual order as entered *does not* solve even those issues. *In re Professional Fee Matters Concerning the Jackson Walker Firm*, No. 23-645, ECF No. 1 (Dec. 9, 2023) ("Misc. Order"). To the contrary, it has created confusion, duplication, and inefficiency. In the miscellaneous proceeding, one judge will address pre-trial and discovery matters, while substantive issues in the cases will be handled by the three presiding bankruptcy judges, including in 17 different trials on the Rule 60(b)(6) Motions (there could ultimately be more than 30). *Id.* Dozens of virtually identical trials on identical motions with identical witnesses and exhibits is highly inefficient. Multiple Rule 60 trials would also be untenable for the witnesses because it would require them to testify repeatedly in dozens of trials. Conducting multiple trials would also be burdensome for the parties and the bankruptcy court. And three different judges deciding the

---

[9] The U.S. Trustee responded that a miscellaneous proceeding would not address the most important cause for withdrawal: the need to avoid the appearance of bias or partiality. Thus, the Report's statement that "the UST's primary arguments in favor of withdrawal are at least for the most part moot," Report, p. 11, does not fully reflect the U.S. Trustee's position.

Rule 60(b)(6) Motions unnecessarily risks inconsistent and confusing results notwithstanding the overwhelming evidence that the U.S. Trustee's Rule 60(b)(6) Motions should uniformly succeed.

13. Moreover, the Bankruptcy Court stated that "the UST fails to consider that the treatment of any funds that are disgorged must be handled on a case by case basis." *Id.* That contention wrongly conflates the Rule 60 relief—vacating the fee awards—with what happens thereafter and assumes that any Rule 60 relief would be self-executing with automatic disgorgement. But that is not the result. Rather, "[w]hen an order is vacated, 'the rights of the parties are left as though no such judgment had ever been entered.'" *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019) (internal citations omitted); *Wynne v. Rochelle*, 385 F.2d 789, 796 (5th Cir. 1967) ("When an order is set aside as improvidently granted, the prior status of the case is restored and the situation is the same as though the order or judgment had never been entered."). Accordingly, if the U.S. Trustee prevails on his Rule 60(b)(6) Motions, the issue of Jackson Walker's compensation simply reverts to the status quo ante that existed before its final fee applications were approved, and there will be a new hearing on Jackson Walker's final fee applications as if the prior hearing never occurred.[10]

14. Since the U.S. Trustee filed the 17 motions to vacate judgments and accompanying 17 motions to withdraw the reference two months ago, the U.S. Trustee and Jackson Walker have been operating under different scheduling orders and different procedures, briefing or arguing different questions posed in case management orders, and attending various status conferences—all while the threshold matter of who will hear and decide the Rule 60(b)(6) Motions remains

---

[10] Only after the Court vacates the orders awarding Jackson Walker fees would hearings be necessary on individual Jackson Walker final fee applications. 11 U.S.C. § 330. At that point, the U.S. Trustee and any party in interest, *see* 11 U.S.C. §§ 307 and 1109, could object to the award of all or some of the fees Jackson Walker seeks in its applications. And in the chapter 11 cases, any excess funds would be distributed in accordance with the confirmed plans.

12

unresolved.[11] For example, in the cases reassigned to Judge Isgur, he is requiring parties who believe they are indispensable or have constitutional standing to file a notice so stating by January 10.[12] Also by January 10, Jackson Walker and the U.S. Trustee may file briefs in the cases before Judge Isgur addressing the indispensable party and standing issues, with a hearing to be held on January 16. At a status conference before Judge Rodriguez, the U.S. Trustee agreed and Judge Rodriguez ordered that the U.S. Trustee file his Rule 60(b)(6) Motions in closed cases by January 31; Judge Rodriguez also set a status conference for January 29 and a further status conference for March 28. Any motions to be filed in mediated cases (the mediated cases may raise different legal issues than those in the cases where Judge Jones presided) must be filed by the end of March. Judge Rodriguez has also suggested that there might be indispensable parties to the U.S. Trustee's Rule 60(b)(6) Motions other than Jackson Walker that would cause a delay or suspension of the

---

[11] *See In re Westmoreland Coal Company*, Case No. 18-35672 [ECF No. 3364]; *In re J. C. Penney Direct Marketing Services, LLC*, Case No. 20-20184 [ECF No. 1266]; *In re Whiting Petroleum Corporation*, Case No. 20-32021 [ECF No. 1450]; *In re Neiman Marcus Group LTD, LLC*, Case No. 20-32519 [ECF No. 3180, 3189, 3192, 3202]; *In re Stage Stores LLC*, Case No. 20-32564 [ECF No. 1221]; *In re Chesapeake Energy Corporation*, Case No. 20-33233 [ECF No. 4518]; *In re Covia Holdings Corporation*, Case No. 20-33295 [ECF No. 1481]; *In re Tug Robert J. Bouchard Corporation*, Case No. 20-34758 [ECF No. 358]; *In re Mule Sky LLC*, Case No. 20-35561 [ECF No. 1034]; *In re Seadrill Partners LLC*, Case No. 20-35740 [ECF No. 836, 843, 846, 853]; *In re Seadrill Limited*, Case No. 21-30427 [ECF No. 1593]; *In re Brilliant Energy, LLC*, Case No. 21-30936 [ECF Nos. 256, 271]; *In re Katerra Inc.*, Case No. 21-31861 [ECF No. 2062, 2065]; *In re Basic Energy Services, Inc.*, Case No. 21-90002 [ECF No. 1768]; *In re Strike LLC*, Case No. 21-90054 [ECF No. 1474, 1509, 1512, 1521]; *In re 4E Brands Northamerica LLC*, Case No. 22-50009 [ECF No. 542, 561, 582]; *In re Sungard AS New Holdings*, Case No. 22-90018 [ECF No. 1030]; *In re Professional Fee Matters Concerning Jackson Walker Law Firm*, 23-00645 [ECF Nos. 20, 41, 49].

[12] Again, the Bankruptcy Court conflates the Rule 60 relief seeking to vacate the fee orders with the relief available in new hearings on Jackson Walker final fee applications, where all parties in interest may object to the fees. 11 U.S.C. § 1109.

At the status conference where Judge Isgur raised the indispensable party concern as a threshold and gatekeeping issue—with which the U.S. Trustee disagreed—he likewise stated that it is possible no one wants funds that Jackson Walker may disgorge because, for example, debtors could be satisfied with their treatment before Judge Jones. But it simply cannot be that a Judge, his intimate partner, and her law firm can engage in a pattern of unethical and illegal conduct and the firm retains its ill-gotten gains because the debtors were pleased with the results achieved by the corruption. As the Second Circuit stated in passing upon Chief Judge Manton's conviction: "Judicial action, whether just or unjust, right or wrong, is not for sale; and if the rule shall ever be accepted that the correctness of judicial action taken for a price removes the stain of corruption and exonerates the judge, the event will mark the first step toward the abandonment of that imperative requisite of even-handed justice . . . ." *U.S. v. Manton*, 107 F.2d 834, 846 (2d Cir. 1939). Similarly, Jackson Walker's corrupt conduct cannot be exonerated and its gains left intact because the result may have been desirable to certain interested persons.

proceedings, including ruling on discovery disputes, if any. Judge Lopez has taken no action other than a December 1 status conference and later case management orders.

**D.  The Report Wrongly Concludes that Withdrawal of the Reference Would not Expedite the Bankruptcy Process**

15.    The Bankruptcy Court suggests to this Court that it has "'an intimate familiarity' with the case and has dedicated a large amount of time and resources to the adversary proceeding, and, therefore, this *Holland America* factor 'weighs heavily in denying' the withdrawal of the reference." ECF No. 44, p. 9 (citations omitted). The Report then opines that this factor weighs against withdrawal because the Bankruptcy Court is "intimately familiar with the facts and legal issues presented in the U.S. Trustee's Motion for Relief from Final Judgment." *Id*. But Judge Jones presided over each of the 17 cases until the cases were reassigned among three of the four bankruptcy judges on October 15, fewer than three weeks before the U.S. Trustee filed his Rule 60(b)(6) Motions, and the confirmed plans in all 16 of the chapter 11 cases went effective on or before November 9, 2022.[13] The bankruptcy judges have little more familiarity, intimate or otherwise, with the facts in any of the cases than any district court judge would.

**E.  The Report's Recommendation Against Referral to the Western District of Texas is Beyond the Scope of BLR 5011 and Wrongly Concludes that the Lawsuits Against Judge Jones do not Overlap with the U.S. Trustee's Rule 60(b)(6) Motions**

16.    Southern District of Texas Bankruptcy Local Rule 5011 ("BLR 5011") addresses withdrawal of the reference and does not authorize the bankruptcy court to issue a report and recommendation on any other requests properly before this Court, such as the request for referral to the Western District.[14] Regardless of whether the recommendation is authorized, this Court should reject it.

---

[13] The 17th case, *In re Brilliant Energy, LLC*, is a chapter 7 case which was largely administered by the end of 2022.

[14] Although the U.S. Trustee did challenge the validity of BLR 5011 before the bankruptcy court because the decision to withdraw the reference is committed solely to the discretion of the district court, *In re Healthcentral.com,* 504 F.3d

14

17. The Bankruptcy Court reported that the U.S. Trustee's assertion of the overlap with the lawsuit against Judge Jones is "an unfounded misstatement of the facts." ECF No. 44, p. 15. But the *Van Deelen* litigation against Judge Jones—alleging that Judge Jones violated his civil rights when he was an equity holder in one of the cases tainted by the secret relationship, *In re McDermott Int'l, Inc.*, No. 20-30336 (Bankr. S.D. Tex.)—has significant factual overlap with the 17 cases. Specifically, in 2020, Mr. Van Deelen filed a motion to recuse Judge Jones in an adversary proceeding. *Van Deelen v. Dickson* (*In re McDermott Int'l Inc.*), Adv. No. 20-3309 (Bankr. S.D. Tex.), ECF No. 4 (July 23, 2020) ("Van Deelen" or "adversary proceeding"). Although not originally a basis for his motion, shortly before the scheduled hearing, Mr. Van Deelen supplemented his motion with an anonymous letter stating Judge Jones and Ms. Freeman were in a romantic relationship. Judge Jones then referred the recusal motion to Judge Isgur for reassignment, who assigned the recusal motion to himself and ordered that the letter be sealed unless and until it was admitted into evidence. *Van Deelen*, ECF No. 40 (Mar. 9, 2021). The letter remains under seal to this day.

18. At the recusal hearing on March 10, 2021, Mr. Van Deelen, as a pro se litigant, had some difficulty authenticating the letter and establishing its admissibility. When Mr. Van Deelen asked for a continuance of the recusal hearing so that he could take discovery on its contents, Judge Isgur denied the request for continuance and discovery as "outrageous" and denied the motion to recuse. *Van Deelen*, ECF No. 47 (Mar. 10, 2021) (audio file). Yet Mr. Van Deelen persisted and later obtained evidence that Judge Jones and Ms. Freeman owned a house and lived together and thus filed a federal lawsuit against Judge Jones on October 4, 2023. It was this litigation that

---

775, 785 (9th Cir. 2007) (the power to withdraw "is committed exclusively to the district court"); 1 COLLIER ON BANKRUPTCY ¶ 3.04 (16th ed.) (citing 1987 Advisory Committee Note to Rule 5011 that the decision to withdraw "is committed exclusively to the district court"), that challenge is now moot given the Report's issuance.

initiated the cascading series of events that resulted in the Fifth Circuit's Ethics Complaint, Judge Jones's resignation, and the U.S. Trustee's Rule 60(b)(6) Motions.

19. Among other overlap, the Van Deelen litigation against Judge Jones and the Rule 60(b)(6) Motions involve common factual or legal issues, including but not limited to the following:

- The dates of Ms. Freeman's employment by, and partnership in, Jackson Walker.

- The date Ms. Freeman's intimate household relationship began with Judge Jones.

- The date Ms. Freeman became a joint owner of a home with Judge Jones.

- The actions Judge Jones took in *McDermott* (and the other cases), approving applications and motions filed by Jackson Walker while Ms. Freeman was a Jackson Walker attorney.

- Judge Jones's failure to recuse in *McDermott* (and the other cases), either spontaneously or when so moved.

- Judge Jones's failure to disclose his relationship with Ms. Freeman in Jackson Walker cases.

- Judge Jones's obligations under Bankruptcy Rules 5002 and 5004 and 28 U.S.C. § 455.

- Jackson Walker's obligations under Bankruptcy Rules 5002 (incorporating Rule 2014 by reference) and 5004.

- The disclosures—or lack thereof—of the relationship between Judge Jones and Ms. Freeman by Jackson Walker in *McDermott* (and the other cases).

**CONCLUSION**

The reference to the bankruptcy court may be withdrawn for cause, which means a good or legally sufficient reason. Here, there are multiple good reasons for withdrawing the reference, including the need for public trust and confidence, the importance of avoiding even the appearance of bias, and the need for efficiency, consistency, and uniformity. The U.S. Trustee,

therefore, moves this Court to withdraw the reference of the Rule 60(b)(6) Motions and related matters for cause.

Date: January 4, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS

By: */s/ Millie Aponte Sall*
    Millie Aponte Sall
    Assistant U.S. Trustee
    Tex. Bar No. 01278050/Fed. ID No. 11271
    515 Rusk, Suite 3516
    Houston, Texas 77002
    (713) 718-4650 – Telephone
    (713) 718-4670 – Fax
    Email: millie.sall@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on January 4, 2024 a copy of the foregoing *United States Trustee's Objection to the Bankruptcy Court's Report and Recommendation that His Motions to Withdraw the Reference be Denied* was served all parties entitled to notice through the Court's CM/ECF System.

    */s/ Millie Aponte Sall*
    Millie Aponte Sall