**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 4:23-cv-04787-AM** |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM.** | § | |

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 4:21-bk-90002-EVR** |
| | § | |
| **BASIC ENERGY SERVICES, INC.,** *ET* | § | **CHAPTER 11** |
| *AL.,* | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.**[1] | § | |

**THE UNITED STATES TRUSTEE'S OBJECTION TO**
**THE LIQUIDATING TRUSTEE DAVID DUNN'S SETTLEMENT MOTION**

TO THE HONORABLE ALIA MOSES
CHIEF UNITED STATES DISTRICT COURT JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S.

Trustee"), objects to the *Motion for Order Approving Compromise and Settlement Pursuant to*

*Bankruptcy Rule 9019* [ECF No. 1884] (the "Settlement Motion") filed by the Liquidating Trustee

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, were: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services LP, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279).

1

David Dunn ("Dunn"). In support of this objection, the U.S. Trustee states the following:

## I.    PRELIMINARY STATEMENT

1.      The Settlement Motion seeks approval to settle, among other things, the Liquidating Trust's[2] claims against Jackson Walker LLP ("JW") for the years-long, undisclosed, intimate, romantic, cohabiting, and financial relationship between former Chief Bankruptcy Judge David R. Jones ("Jones") and JW's former partner, Elizabeth C. Freeman ("Freeman"). Dunn, however, may not settle the Liquidating Trust's litigation in a way that curtails the rights of other parties, including the U.S. Trustee, without their consent, and he may not do so under Bankruptcy Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.       The Settlement Motion should be denied for at least three reasons. First, Dunn may not "settle" *the U.S. Trustee's* contested matter without the U.S. Trustee's consent under Rule 41 of the Federal Rules of Civil Procedure (the "Civil Rules"). Second, JW cannot orchestrate the use of Rule 9019 to circumvent the law nor abrogate this Court's independent obligations to review an estate professional's conduct and fee requests under 11 U.S.C. §§ 327-330. Third, even when a settlement has been reached agreeing to vacatur of an order, Rule 9019 and its lower standard for the approval of settlements cannot be used to avoid the finding of extraordinary circumstances necessary to obtain the vacatur of a court order.

## II.    FACTUAL BACKGROUND

3.      On August 17, 2021, Basic Energy Services, Inc. and affiliated companies (collectively, "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code. [ECF No. 1].

---

[2] As defined in paragraph 8 below.

4.      On November 8, 2021, Jones signed an *Order (I) (A) Approving Global Settlement Pursuant to Bankruptcy Rule 9019; (B) Authorizing Final Resolution of the Debtors' Chapter 11 Cases; and (C) Granting Related Relief* [ECF No. 686] (the "Global Settlement Order"). Pursuant to the Global Settlement Order, Jones appointed Dunn as the Debtors' "Wind Down Director." Global Settlement Order at ¶ 7.[3]

5.      On December 13, 2021, Dunn, in his capacity as the Debtors' Wind Down Director, caused the Debtors to file their *Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel to the Debtors* [ECF No. 809] (the "Employment Application"). JW sought employment under section 327 of the Code, Bankruptcy Rule 2014(a), and Bankr. S.D. Tex. Local Rule 2014-1. *Id*. at p. 2.

6.      Jones approved JW's Employment Application by order entered on January 19, 2022 [ECF No. 997] (the "Employment Order"). The Employment Order provides that JW "shall apply for compensation for professional services rendered and reimbursement of expenses in accordance with the procedures set forth in [11 U.S.C.] §§ 330 and 331 of the Bankruptcy Code, applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any fee and expense guidelines or orders of this Court." *Id*. at p. 2.

7.      Further, the Employment Order required JW to periodically review "its files . . . to ensure that no conflicts or other disqualifying circumstances exist or arise" and imposed on JW an ongoing duty to file supplemental declarations upon discovery of new relevant facts or relationships. *Id*. Accordingly, the Employment Order required JW not only to comply with

---

[3] Citations to page number in filed documents refer to the page numbers stamped by the ECF system.

Bankruptcy Rule 2014, but it also imposed a specific obligation on JW to supplement its employment application if "new relevant facts or relationships are discovered or arise." *Id*.

8.       On July 29, 2022, the Debtors filed a supplement for their proposed plan [ECF No. 1341] (the "Plan Supplement"). The Plan Supplement contained the Debtors' proposed *Liquidation Trust Agreement,* which established a liquidation trust (the "Liquidation Trust"). Plan Supplement at p. 6.

9.       On August 9, 2022, Jones signed an *Order Confirming the Debtors' Combined Plan of Liquidation and Approving on a Final Basis the Disclosure Statement of Basic Energy Services, Inc., and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 1436] (the "Confirmation Order"), which confirmed Debtors' *Amended Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 1421] (as amended, "Plan") and appointed Dunn as the "Liquidation Trustee" of the Liquidation Trust. Although Plan confirmation terminated the Debtors' estate by vesting the "Liquidation Trust Assets" in the Liquidation Trust, Plan at p. 39, Art. V.C, the bankruptcy court retained exclusive jurisdiction over the allowance of any professional fee claims for pre-effective date work. Plan at p. 57, Art. X.E. The effective date of the Plan occurred on August 26, 2022. [ECF No. 1454].

10.       On September 2, 2022, JW submitted its first and final fee application pursuant to 11 U.S.C. §§ 330-331, Bankruptcy Rule 2016, and S.D. Tex. Bankr. Local Rule 2016-1 [ECF No. 1459] (the "Final Fee Application") for its work as Debtors' counsel. When JW filed its fee application, it knew that Freeman was in an ongoing, cohabiting relationship with Jones. But JW did not disclose the relationship when it sought payment for its services to the Debtors' estates, notwithstanding that both the law and the Employment Order required disclosure of all connections

and that JW's own ethics counsel had advised JW that it should disclose the relationship to its clients. [*See, e.g.*, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Bankr. S.D. Tex. Case No. 4:23-mp-00645 (the "Miscellaneous Proceeding") at ECF Nos. 600-1 at 14-16 (Jarvis2: Disclose or Withdraw), 600-2 at 6 (Concealing), 600-6 at 20-24 (Ex. 6-9)].

11.    On September 29, 2022, Jones signed an order [ECF No. 1511] (the "Compensation Order") approving JW's professional fees of $1,540,349.50 and reimbursement of expenses of $3,082.84 on a final basis under section 330 (collectively, the "Jones-Awarded Compensation"). Yet, because of JW's disclosure failures, the Compensation Order should never have been entered. JW's concealment of material facts when it sought and obtained approval of its compensation renders the Compensation Order voidable.

12.    On October 4, 2023, a civil complaint was filed against Jones that included allegations of an undisclosed relationship between Freeman and Jones. Although Jones purportedly initially denied the existence of any such relationship, within days he confirmed it to the *Wall Street Journal*. [ECF No. 1791 at 14, ¶ 38].

13.    In the wake of this revelation, on November 3, 2023, the U.S. Trustee filed a motion seeking, among other relief, vacatur of the Compensation Order pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"). [ECF No. 1759]. On November 13, 2023, JW filed a preliminary response to the Rule 60(b)(6) Motion. On February 28, 2024, Dunn filed a three-page notice of joinder to the U.S. Trustee's motion. [ECF No. 1788]. The next day the U.S. Trustee filed a 55-page amended Rule 60(b)(6) motion [ECF No. 1791] (the "Rule 60(b) Motion"). The Rule 60(b) Motion sought the vacatur of both JW's Employment Order and Compensation Order signed by Jones and the return of all fees and expenses paid to JW in the case because of JW's failure to disclose the relationship between Freeman and Jones. The Rule 60(b) Motion

argued, among other things, that because a court may not award fees under section 330 of the Bankruptcy Code if a professional has not been employed in the case, vacating JW's Employment Order would require that JW return the entire Jones-Awarded Compensation to the Debtors' bankruptcy estates. On May 22, 2024, JW filed its opposition to the Rule 60(b) Motion.

14.     On December 9, 2023, Chief Bankruptcy Judge Rodriguez commenced the Miscellaneous Proceeding, centralizing discovery for the U.S Trustee's Rule 60(b) Motion [Misc. Proceeding ECF No. 1]. Discovery in the Miscellaneous Proceeding closed in December 2024. The bankruptcy court held further pretrial hearings and entered a scheduling order that ultimately set trial on only some of the relief the U.S. Trustee requested.

15.     On April 9, 2025, this Court entered an Order withdrawing the reference in each of the 33 bankruptcy cases included in the U.S. Trustee's Rule 60(b) Motions.[4] [ECF No. 31]. As a result, the Settlement Motion is now within this Court's exclusive jurisdiction.

16.     The Settlement Motion seeks vacatur of the Compensation Order and the entry of a new order allowing JW compensation and reimbursement in the final amount of $760,432.34. If approved, the Settlement Motion would require JW to return only $783,000.00 of the Jones-Awarded Compensation to the Liquidation Trust, slightly more than half of the $1.5 million plus it was paid.

17.     The attached *Settlement Agreement And Release* ("Settlement Agreement") raises substantial questions and suggests that JW seeks to misuse the settlement with Dunn to obtain the dismissal of the Rule 60(b) Motion, which would be improper. The Settlement Agreement provides, among other things,

---

[4] The U.S. Trustee sought relief against JW in 33, not 34, bankruptcy cases. In the Court's Order, it appears one bankruptcy case was counted twice, Case Nos. 20-33295 (*In re Covia Holdings Corp.*) and 20-33302 (*In re Covia Finance Company, LLC*).

> [JW and Dunn] agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to [among other things, claims brought by Dunn's joinder in the contested matter commenced by the Rule 60(b) Motion.]

Settlement Mot. at p. 15.

18.    If the parties were not seeking to curtail the U.S. Trustee's Rule 60(b) Motion, they could have included clear language concerning the claims that were being barred and specifically carved out the U.S. Trustee's contested matter. But they did not.

### III.    LEGAL FRAMEWORK OF CHAPTER 11

19.    Upon the filing of a chapter 11 petition, the debtor becomes a debtor in possession ("DIP") with fiduciary duties to its creditors. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd.* (*In re Woerner*), 783 F.3d 266, 271 (5th Cir. 2015) (citing 11 U.S.C. §§ 1101, 1106–08); *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985). All the DIP's interests in property or other rights become part of the bankruptcy estate, 11 U.S.C. § 541, and creditors typically are paid from those estate assets under a confirmed plan of reorganization.

20.    Attorneys representing a DIP likewise serve as fiduciaries. *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.),* 785 F.2d 1249, 1255-56 & n.7 (5th Cir.1986). They "owe[s] the duty of undivided loyalty and exclusive allegiance to the estate in bankruptcy." *In re Prudent Holding Corp.*, 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993) (citing *Consol. Bancshares*, 785 F.2d at 1256 & n.7, *Woods v. City Nat'l Bank & Tr. Co.*, 312 U.S. 262, 269 (1941) (remaining citations omitted)).

21.    DIP counsel must have both their employment and compensation approved by the bankruptcy court. To gain approval, these professionals must satisfy a host of obligations. Obligations include first filing a retention application and disclosing all "connections." 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014. To assist the DIP with satisfying its fiduciary duties, the

Bankruptcy Code further forbids proposed DIP counsel from holding or representing an interest adverse to the bankruptcy estate and requires proposed counsel to be "disinterested." 11 U.S.C. § 327(a).

22.    Courts do not treat bankruptcy employment disclosure requirements of connections and disinterestedness as mere redundancies. *In re Estes*, 57 B.R. 158, 162 (Bankr. N.D. Ala. 1986). Rather, each requirement represents a distinct concept. For example, a DIP professional is not "disinterested" when the professional has a materially adverse interest to the bankruptcy estate by reason of any direct or indirect relationship, connection, or interest "or for any other reason." 11 U.S.C. § 101(14); *see Woods*, 312 U.S. at 267-68 (holding under the superseded Bankruptcy Act that claimants for compensation must be disinterested and claimants "subject to conflicting interests, [] should be denied compensation. It is no answer to say that fraud or unfairness were not shown to have resulted.").[5]

23.    Proposed DIP professionals cannot pick and choose which connections they deem relevant. *In re EWC. Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992). "It is the duty of the attorney to reveal all connections." *In re Kuykendahl Place Assocs.*, 112 B.R. 847, 849 (Bankr. S.D. Tex. 1989). Courts do not have the resources to investigate the truthfulness of the information supplied by all proposed DIP professionals or to seek out any potential undisclosed conflicts of

---

[5] When Congress enacted sections 327 and 330 of the Bankruptcy Code in 1978, it incorporated elements of the Bankruptcy Act and prior case law requiring estate professionals to be disinterested. *See, e.g.*, S. Rep. 95-989, 41, 1978 U.S.C.A.A.N. 5787, 5827; *see also Wolf v. Weinstein*, 372 U.S. 633, 640 (1963) (restating "the historic maxim of equity that a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest."); *EWC*, 138 B.R. at 279 (recognizing the need for "high" fiduciary standards due to the common fund nature of bankruptcy estates, along with professional fee problems in prior "sordid chapters" of bankruptcy practice (citations and quotation omitted)).

interest. *EWC*, 138 B.R. at 280. DIP professionals employed by bankruptcy estates are therefore nearly entirely self-policed. *Id.* at 280.

24.     DIP professionals have an ongoing duty to disclose conflicts and connections that arise, even after the bankruptcy court approves employment. *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 625 (Bankr. E.D. Cal. 2012) (holding that the requirement to be disinterested "does not evaporate once the attorney's employment is approved."); *see also I.G. Petrol., L.L.C. v. Fenasci* (*In re W. Delta Oil Co.*), 432 F.3d 347, 355 (5th Cir. 2005) (quoting *In re Metro. Env't, Inc.*, 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003)) ("Although [Bankruptcy Rule 2014(a)] does not explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.") (internal quotation marks omitted).

25.     The court must authorize the DIP professional's employment in order for the professional to be compensated for services rendered to the estate. "A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

26.     Once employed, DIP counsel's reasonable and necessary compensation may be paid from the estate only after counsel files a detailed application disclosing the work performed by each attorney, along with their hours and fees billed. The bankruptcy court may approve applications on an interim basis during the case, 11 U.S.C. § 331, and on a final basis at conclusion of the DIP professionals' services to the estate, 11 U.S.C. § 330. Because compensation for DIP counsel is afforded priority of payment as an administrative expense from the estate, every dollar

of lawyer compensation is paid before any recovery to creditors and may reduce the creditors' recoveries in the case. *See* 11 U.S.C. § 503(b)(2).

27.    In chapter 11 cases, the U.S. Trustee and creditors, among others, must be given notice and opportunity to be heard if a fee application for more than $1,000 is made. Fed. R. Bankr. P. 2002(a)(6); 9034(e); S.D. Tex. Bankr. L.R. 9013-1(d). If an objection is lodged, the matter is a contested matter under the Bankruptcy Code "governed by Bankruptcy Rule 9014." *In re Transamerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Resolution of one party in interest's objection does not moot another's objection (or contested matter), and the court must set a hearing to consider the objection. *See* Fed. R. Bankr. P. 9014 and 7041 (incorporating Fed. R. Civ. P. 41).

28.    Additionally, in chapter 11 proceedings, the court has an independent duty to examine DIP professionals' fee requests for reasonableness notwithstanding the absence of objections. *See In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D. Tex. 1993) ("Even if no objections are raised to a fee application, the court is not bound to award the fees sought, and it has the duty to independently examine the reasonableness of the fees."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994) (same).

29.    Congress created the U.S. Trustee Program to be the watchdog of the bankruptcy system, and its mission is to enhance the integrity and efficiency of the system for the benefit of all stakeholders. *See In re South Beach Sec., Inc*., 606 F.3d 366, 371 (7th Cir. 2010) (The U.S. Trustee is "the congressionally ordained watchdog [and] he has a statutory interest in making sure that bankruptcy law isn't abused."). U.S. Trustees "are responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law." *In re Revco, D.S.*, 898 F.2d 498, 500 (6th Cir. 1990); *see also* 28 U.S.C. § 586 and 11 U.S.C. § 307.

[A] 'guardian' trustee . . . does not represent an absent party or interest in a case, but instead exists to guard the integrity of the decision making system itself. Bankruptcy law provides the quintessential example, in the form of the U.S. Trustee. [footnote omitted]. The U.S Trustee has no client, but instead looks out for the interests of all stakeholders in the bankruptcy process. The U.S. Trustee is not motivated by specific outcomes or incentivized by money; rather, its purpose is to oversee compliance with the U.S. Bankruptcy Code and to ensure that business restructurings do not fall victim to abuse. . . . and to prevent systemic abuse for all stakeholders, including the general public.

\*      \*      \*

The U.S. Trustee played an integral role in bringing the bankruptcy system back from the brink of collapse. While many significant structural revisions contributed to this result, the creation of the U.S. Trustee was a central part of Congress's successful effort to rebuild public trust in a system at risk.

Lindsey D. Simon, *The Guardian Trustee in Bankruptcy Courts and Beyond*, 98 N.C. L. Rev. 1297,1299 and 1304 (2020).

30.      That the U.S. Trustee does not have a pecuniary interest in bankruptcy cases is a feature, not a bug. That is, economic actors will not necessarily be interested in independent and rigorous enforcement of the Code's legal standards. "For as long as legal systems have existed, parties have found ways to work around governing rules." *Id*. at 1299.

## IV.    BASES FOR THE U.S. TRUSTEE'S OBJECTION

### A.  Dunn Cannot Employ Bankruptcy Rule 9019 to Unilaterally "Settle" and Dismiss the U.S. Trustee's Contested Matter Without the U.S. Trustee's Consent as Required by Civil Rule 41.

31.      The U.S. Trustee's Rule 60(b) Motion initiated a contested matter under the Bankruptcy Rules. *In re Timely Secretarial Servs., Inc.*, 987 F.2d 1167, 1171 (5th Cir. 1993).

32.      Bankruptcy Rule 9014 establishes the rules that apply to contested matters. Fed. R. Bankr. P. 9014(c); *see In re Transamerican Nat. Gas Corp.*, 978 F.2d at 1416. In particular, Bankruptcy Rule 7041, incorporated by Bankruptcy Rule 9014(c), applies to contested matters. *Id.* Bankruptcy Rule 7041 in turn incorporates Civil Rule 41.

33.     By filing a voluntary joinder to the U.S. Trustee's Rule 60(b) Motion, Dunn became bound by contested matter procedure.

34.     Although the Settlement Motion does not expressly seek or mention dismissal of the Rule 60(b) Motion, dismissal is what Dunn and JW ultimately seek. *See* ¶ 17 *supra* ("this Agreement may be pleaded as a complete bar to any action or suit . . . relating to [among other things, claims brought by Dunn's joinder in the contested matter commenced by the Rule 60(b) Motion]").

35.     After a response has been filed, Civil Rule 41 allows dismissal without court order when stipulated to by all the parties, Fed. R. Civ. P. 41(a)(1)(A), or "at the plaintiff's request . . . on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Therefore, Civil Rule 41, not Bankruptcy Rule 9019, controls whether the contested matter commenced by the Rule 60(b) Motion may be dismissed. Fed. R. Civ. P. 41.

36.     Because JW filed a response to the Rule 60(b) Motion, Civil Rule 41 ***requires*** the U.S. Trustee's consent to any dismissal. Fed. R. Bankr. P. 7041; Fed. R. Civ. P. 41(a); *Wheeler v. Am. Home Prods. Corp.* (*Boyle-Midway Div.*), 582 F.2d 891, 895-96 (5th Cir. 1977) ("Fed. R. Civ. P. 41(a)(1) did not authorize dismissal as against intervenors because the stipulation (settlement agreement) was not signed by 'all parties.' Similarly, Fed. R. Civ. P. 41(a)(2) did not authorize such dismissal because dismissal 'at the plaintiff's instance' refers only to an 'instance' by All plaintiffs, including intervenors.").

37.     Just as original parties to litigation cannot stipulate away rights of intervening parties, *Wheeler*, 582 F.2d at 896, intervening parties cannot stipulate away the rights of original parties. Simply put, JW cannot use Dunn and Bankruptcy Rule 9019 to sidestep the U.S. Trustee

in the Rule 60(b) Motion. Civil Rule 41 does not authorize the relief sought in the Settlement Motion because the U.S. Trustee has not consented to the settlement. *See id.* at 895-96.

38.     Further, Bankruptcy Rule 9019 does not apply here[6] because it only applies to a trustee or a debtor in possession, and Dunn, as the representative of the Liquidation Trust, is neither. *See* 11 U.S.C. §§ 541(a) and 1101(1) ("'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case"); Fed. R. Bankr. P. 9019 ("on the trustee's motion"); Fed. R. Bankr. P. 9001 ("definitions of words and phrases in §§101, 902, 1101, and 1502 and the rules of construction in §102 [of the Code] apply in these rules).

39.     But even if Bankruptcy Rule 9019 did apply, it could not be used to end-run the Rule 60(b) Motion. Although Rule 9019 may permit a trustee or debtor in possession to compromise certain estate causes of action, it does not allow them to resolve actions that are independently raised by other parties in interest. *See Overton's, Inc. v. Interstate Fire & Cas. Ins. Co.* (*In re Sportstuff, Inc.*), 430 B.R. 170, 181 (B.A.P. 8th Cir. 2010) (noting that "[a] 'settlement' between only two parties to a multi-party lawsuit is not a settlement, and the procedure to approve a compromise under Fed. R. Bankr. P. 9019(a) cannot be used to impose an injunction on the non-settling parties"); *see also In re Louise's, Inc.*, 211 B.R. 798, 802 (D. Del. 1997) (denying approval of Rule 9019 settlement between debtor and creditor that would have circumvented ability of other creditors to object to plan).

---

[6] Dunn also recognizes the inapplicability of Rule 9019 in the Settlement Motion. Settlement Mot. at 2 n.2 ("[t]he Plan...provides that [Dunn] may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, [Dunn] files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court.").

40.     It is also a bedrock principle of civil litigation, including litigation with the government, that courts may not impose a settlement over a party's objections. *See United States v. Ward Baking Co.*, 376 U.S. 327, 334 (1964) (holding that a court could not enter a "consent" judgment for the government without the government's actual consent). "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . without that party's agreement." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986). Put another way, "imposing a settlement" on a non-settling party over its objection is *adjudicating* that claim, not *settling* it.

41.     Nothing in Bankruptcy Rule 9019 allows JW to use Dunn to unilaterally resolve the U.S. Trustee's Rule 60(b) Motion. *See* 28 U.S.C. § 2075 ("[Bankruptcy Rules] shall not abridge, enlarge, or modify any substantive right.").

## B. Dunn and JW Cannot Circumvent the Bankruptcy Code's Requirements for Professional Compensation.

42.     Further, the Court should deny the Settlement Motion because it would be inappropriate to allow Dunn and JW to bargain around the Bankruptcy Code's and Bankruptcy Rules' professional retention and compensation requirements. Dunn's agreement to allow JW to retain a significant portion of the Jones-Awarded Compensation through Bankruptcy Rule 9019's "lowest range of reasonableness"[7] standard to evade the more stringent requirements of Bankruptcy Code sections 328, 330, and 503(b)(2) and Bankruptcy Rule 2014 should not be countenanced. As detailed above, the Bankruptcy Code's limitations on professional retention and compensation—including the denial or reduction of compensation to professionals that are not disinterested or conflicted—cannot be bypassed.

---

[7] *In re Drexel Burnham Lambert Grp.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992).

43.     Nor can a settlement divest the Court of its own independent obligation to ensure that any retention of the Jones-Awarded Compensation is appropriate or complies with the Bankruptcy Code. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (noting that bankruptcy courts are obliged to ensure compliance with Bankruptcy Code on their own initiative even if no creditor objects).

44.     In return for a guaranteed payment of money, Dunn can seek to withdraw his joinder to the Rule 60(b) Motion, and JW can claim such payment as an offset against any greater amount of money that the Court might ultimately order JW to return. But a settlement between Dunn and JW can neither be used to preclude this Court's obligation to review all compensation paid to JW under applicable law nor to preclude the U.S. Trustee's right to have his Rule 60(b) Motion adjudicated.

45.     The Fifth Circuit has explained, "[t]hough settlements in accord and satisfaction are favored in law, they may not be sanctioned and enforced when they contravene and tend to nullify the letter and spirit of an Act of Congress." *Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944). Courts at all levels have rejected settlements that are inconsistent with the statutory requirements or basic purposes and policies of the Bankruptcy Code. For example, the Supreme Court in *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017), held that a bankruptcy court cannot approve a settlement resulting in distributions that do not follow the ordinary priority scheme. In doing so, the Court remarked, "the distributions at issue here more closely resemble proposed transactions that lower courts have refused to allow on the ground that they circumvent the Code's procedural safeguards." *Id.* at 468 (citations omitted).

46.     The Bankruptcy Code and Rules provide a comprehensive framework and requirements for disclosure from and payments to professionals that Dunn and JW are not free to

ignore or rewrite through a Bankruptcy Rule 9019 settlement. *See* 11 U.S.C. §§ 326-331, 503 and Fed. R. Bankr. P. 2014; *see also Davis v. Elliot Mgmt. Corp.* (*In re Lehman Bros. Holdings Inc.*), 508 B.R. 283, 294 (S.D.N.Y. 2014) ("The Bankruptcy Code is meant to be a "comprehensive federal scheme . . . to govern" the bankruptcy process. Although flexibility is necessary[,] the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences . . .") (citations omitted).

47.     In his Rule 60(b) Motion, the U.S. Trustee seeks, among other things, the vacatur of the Employment Order, which would mean that JW is not entitled to any compensation in these cases, *see Lamie*, 540 U.S. at 534, and that JW would have to disgorge all fees and expenses received. JW seeks to end-run the potential vacatur of the Employment Order by allowance of substantial fees via the Settlement Motion. JW should not be allowed to evade the comprehensive scheme established by Congress relating to both employment and compensation of professionals.

C. **Dunn and JW Neither Admit nor Establish Any Extraordinary Circumstances Necessary for this Court to Vacate a Final Order.**

48.     Civil Rule 60(b)(6)—not Bankruptcy Rule 9019—governs the vacatur of the Compensation Order. Vacatur of a final order requires proof of extraordinary circumstances. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994); *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) ("Relief under Rule 60(b)(6) will be granted only if extraordinary circumstances are present.") (citing *Ackermann v. United States*, 340 U.S. 193 (1950)). The "mere fact that a settlement has occurred is not sufficient to justify vacatur of a final judgment." *Mantissa Corp. v. Ondot Sys.*, Case No. 4:15-CV-1133, 2019 WL 4688986 *2 (S.D. Tex. Sept. 26, 2019); *Philip Servs. Corp. v. City of Seattle*, Civil Action No. H-06-2518, 2007 WL 3396436, at *3 (S.D. Tex. Nov. 14, 2007) (Rosenthal, J.) (denying the parties' joint motion to vacate a judgement under Rule 60(b) after the parties settled on appeal).

16

49.     Yet the Settlement Motion does not acknowledge Rule 60, let alone the existence of extraordinary circumstances. The reason for these glaring omissions is that any concession of extraordinary circumstances by JW would compromise its ability to evade the relief the U.S. Trustee seeks. Because not only would the acknowledgment of extraordinary circumstances justify vacatur of the Compensation Order, but it would also justify vacatur of the Employment Order. And if the Employment Order were vacated, JW would be entitled to zero compensation. This consequence is the reason why JW improperly attempts to shoehorn its resolution with Dunn under the more palatable, but inapplicable,  Rule 9019 standard.

50.     The court should not permit JW to short circuit the U.S. Trustee's Rule 60(b) Motion through a unilateral agreement and an end-run of the applicable Rules. Such a result would not only prematurely dissolve the U.S. Trustee's contested matter, it would also curtail the U.S. Trustee's watchdog mission that among other directives, seeks to restore and maintain integrity in the bankruptcy system.

## V.    CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the court deny the Settlement Motion and grant such other relief as is just and proper.

Date: May 20, 2025                          Respectfully Submitted,

                                            KEVIN M. EPSTEIN
                                            UNITED STATES TRUSTEE
                                            REGION 7, SOUTHERN AND WESTERN
                                            DISTRICTS OF TEXAS

                                            By: */s/ Vianey Garza*
                                            Millie Aponte Sall, Assistant U.S. Trustee
                                            Tex. Bar No. 01278050/Fed. ID No. 11271
                                            Vianey Garza, Trial Attorney
                                            Tex. Bar No. 24083057/Fed. ID No. 1812278
                                            Alicia L. Barcomb, Trial Attorney
                                            Tex. Bar No. 24106276/Fed. ID No. 3456397

515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email:  millie.sall@usdoj.gov
          vianey.garza@usdoj.gov
          alicia.barcomb@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 20, 2025, a copy of the foregoing pleading was served on all parties entitled to electronic notice through the Clerk of Court's CM/ECF system.

*/s/ Vianey Garza*
Vianey Garza