# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Civil Action No. 4:23-cv-04787 (AM) |

### THE SUNGARD WIND-DOWN DEBTORS' RESPONSE TO THE U.S. TRUSTEE'S OBJECTION TO ITS MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

On July 29, 2025, the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC and its affiliates (together, the "**Sungard Wind-Down Debtors**")[1] filed their *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 91] (the "**Motion**").[2] On August 15, 2025, the U.S. Trustee filed *The U.S. Trustee's Omnibus Objection to Approval of Private Party Settlements that Preempt Adjudication of the U.S. Trustee's Rule 60(b) Motions* [Docket No. 93] (the "**UST Omnibus Objection**"), objecting to the Motion because, according to the U.S. Trustee, it seeks to "preempt adjudication" of his Rule 60(b) Motions. The Sungard Wind-Down Debtors hereby file their response to the UST Omnibus Objection[3] and respectfully state as follows:

---

[1] Apart from these proceedings, the Sungard Wind-Down Debtors' chapter 11 cases are jointly administered under Case No. 22-90018 (the "**Sungard Chapter 11 Cases**"). The Sungard Wind-Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, LLC; Sungard Availability Services, LP; and Sungard Availability Services, Ltd.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

[3] By agreement of the parties, the Sungard Wind-Down Debtors' deadline to respond to the UST Omnibus Objection was extended to September 5, 2025.

1

The U.S. Trustee's objection is a red herring. It seeks to address issues that are not before the Court. The Motion seeks only to approve the settlement of the ***Sungard Wind-Down Debtors' and Plan Administrator's claims*** against JW. The Motion does ***not*** purport to "preemptively adjudicate" the U.S. Trustee's Motions or any disputes between the U.S. Trustee and JW regarding the validity, extent, and/or scope of the ***U.S. Trustee's claims*** against JW. For this simple reason, the Court should overrule the U.S. Trustee's objection to the Motion.

## ARGUMENT

As set forth by the Wind-Down Debtors in their *Notice of Standing and/or Indispensable Party Status* [Docket No. 1053] and Joinder, since the Plan's Effective Date, the Wind-Down Debtors have continued in existence for the purposes of, *inter alia*, liquidating their remaining assets. Under the Plan, "Causes of Action"[4] belonging to the Debtors were expressly preserved and vested in the Wind-Down Debtors.

The Wind-Down Debtors possess and have asserted Causes of Action against JW arising from or relating to, among other things, Jackson Walker's failure to disclose the relationship between Elizabeth Freeman and former Judge Jones in the Sungard Chapter 11 Cases. The U.S.

---

[4] "Causes of Action" is defined in the Plan to mean:

any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, choate or inchoate, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to Bankruptcy Code sections 362, 510, 542, 543, 544 through 550, or 553; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Bankruptcy Code section 558.

(Plan at Art. I(A)(33)).

2

Trustee does not dispute this fact in the UST Omnibus Objection or otherwise. Indeed, the US Trustee tacitly acknowledged that he and the Debtors' estates may have claims based on the same or overlapping facts in the Amended 60(b) Motion, recognizing "[t]hat the estate might have a separate claim against Jackson Walker based on the same nucleus of facts…" (Amended 60(b) Motion at ¶ 127; *see also* ¶ 126 (stating that the "estate might also have a cause of action based on the same violation")).

The Plan Administrator, as the sole representative of the Wind-Down Debtors, has a duty under the Plan to liquidate the Wind-Down Debtors' assets, including any "Causes of Action" against JW. Consistent therewith, the Wind-Down Debtors filed the Joinder, seeking disgorgement of fees and expenses paid to Jackson Walker in the Sungard Chapter 11 Cases. As set forth in the Motion, the Plan Administrator has participated in the Misc. Proceeding since its inception, while carefully balancing its litigation costs against potential recoveries. Following good faith and arms' length negotiations with JW, the Plan Administrator determined in its sound business judgment to resolve the Sungard Wind-Down Debtors' Causes of Action against JW under the terms of the Settlement Agreement, which amounts to a recovery of about 93% of the fees awarded to JW in the Sungard Chapter 11 Cases. If forced to continue to litigate, the fees and expenses that would be incurred by the Wind-Down Debtors certainly would eclipse any potential incremental recovery to the Wind-Down Debtors in these proceedings.

Thus, there can be no legitimate question that the Settlement Agreement is in the best interests of the Wind-Down Debtors and satisfies the standard for approval under Bankruptcy Rule 9019. The U.S. Trustee does not challenge the Motion on that basis – nor could he. Rather, the U.S. Trustee's objection to the Motion is premised on his belief that approval of the Settlement

Agreement "prematurely and improperly short circuit[s] the U.S. Trustee's prosecution of his Rule 60(b) Motions." (UST Omnibus Objection at p. 1). The U.S. Trustee is wrong.

Nothing in the Settlement Agreement or the proposed Order granting the Motion provides for the resolution of the UST Motions or any claims belonging to the U.S. Trustee. It should go without saying that the Plan Administrator can only settle claims on behalf of itself and the Sungard Wind-Down Debtors, not any third parties. And under the Plan, it is the Plan Administrator's prerogative to settle those claims. That is all the Motion seeks to accomplish. (*See, e.g.*, Settlement Agreement at ¶ 2(b) (making clear that the Settlement Agreement resolves "all issues and claims between the Wind-Down Debtors, the Plan Administrator, and JW, including all claims and causes of action related to the allegations contain in the U.S. Trustee Filings as to the Bankruptcy Cases")). The effect, if any, of the Settlement Agreement on the U.S. Trustee's case (as opposed to the Sungard Wind-Down Debtors' case) against JW is not a concern of the Sungard Wind-Down Debtors and not an issue that ought to be adjudicated in the context of the limited relief sought by the Wind-Down Debtors in the Motion before the Court.

To be sure, as the Court is aware, there is a pending dispute between JW and the US Trustee regarding the extent of the U.S. Trustee's standing to pursue certain relief in the UST Motions. The issues are already fully briefed in JW's response in opposition to the Amended 60(b) Motion [Docket No. 1057] and the US Trustee's reply thereto [Docket No. 1062]. The Motion before the Court, however, does not seek to adjudicate or even implicate those issues. The Plan Administrator and Sungard Wind-Down Debtors are not concerned with issues surrounding the extent of the U.S. Trustee's claims and standing to prosecute all the relief sought in the UST Motions. The Plan Administrator has a fiduciary obligation to monetize the Wind-Down Debtors' assets (including

Causes of Action against JW) and maximize recoveries for the Wind-Down Debtors' creditors under the Plan. That is all it seeks to do here.

Ultimately, each of the U.S. Trustee's arguments against approval of the Motion suffer from the same flaws, in that they are based on the incorrect premise that the Settlement Agreement preemptively adjudicates the U.S. Trustee's 60(b) Motion. For instance, the U.S. Trustee argues that the Motion does not take into account the U.S. Trustee's position that the JW employment order should be vacated and, consequently, JW should not receive any compensation at all. (*See* UST Omnibus Objection at pp. 2-3). In the same vein, the U.S Trustee contends that the parties may not "settle" the U.S. Trustee's contested matters without the U.S Trustee's consent, or "abrogate" the Court's independent obligation to review the conduct of estate professionals. (*See id.* at p. 2 n.3). However, the U.S Trustee's position relative to the JW employment order is immaterial to the Motion. The Motion does not seek to settle the UST Motions or curtail the Court's own review of these matters. The Motion seeks only to approve of the Settlement Agreement, which represents a compromise of the Sungard Wind-Down Debtors' claims against JW, not the U.S. Trustee's claims, whatever those claims may be.

Similarly, the U.S. Trustee argues that the fact that the Motion was filed, notwithstanding the Plan's waiver of the legal requirement to do so, demonstrates "gamesmanship targeted at evading the relief requested by the U.S. Trustee[.]" (UST Omnibus Objection at p. 4). The U.S. Trustee's argument in this regard is illogical, however. Whether the Settlement Agreement is effectuated with or without the Court's approval has no impact on JW's and the U.S Trustee's respective rights, claims, and arguments vis a vis each other. In other words, if the parties consummated the Settlement Agreement without filing the Motion, JW could still make any arguments it wishes regarding the effect of the Settlement Agreement on the U.S. Trustee's case,

5

and likewise the U.S Trustee could make the same arguments he wishes regarding the lack of effect on the U.S Trustee's case.

Also, although the Plan permits the Plan Administrator to settle claims without Court approval, it does not prevent the Plan Administrator from seeking Court approval of a settlement agreement.  In this case, not only was the Plan Administrator required to file the Motion pursuant to the Settlement Agreement, but the Plan Administrator submits it is appropriate under the circumstances of this case to disclose and seek this Court's approval of the Settlement Agreement, for sake of transparency and out of an abundance of caution, given the nature of these proceedings and the purpose of Bankruptcy Rule 9019.

Lastly, the U.S Trustee argues that the Court should delay consideration of the Motion until after trial on the UST Motions because the relief sought in the UST Motions is "broader, and more curative than a partial disgorgement of fees to a private party alone." (UST Omnibus Objection at p. 5).  However, as discussed above, the fact that the U.S. Trustee is seeking its own relief against JW is **<u>not</u>** a legitimate ground to prevent other parties with claims against JW, such as the Sungard Wind-Down Debtors, from settling their claims.  Adopting such an approach would not only run contrary to the strong public policy in favor of allowing parties to settlement claims, but would simply be cost prohibitive and punitive to the Sungard Wind-Down Debtors and their stakeholders.  Absent the Court's approval of the Settlement Agreement, the Sungard Wind-Down Debtors will have to continue to prosecute their claims through trial, the cost of which would exponentially eclipse any potential incremental recovery they may obtain at trial (which would be marginal here given the strength of the settlement) and does not account for any risk that the Court may not order disgorgement of 100% JW's fees and expenses.  Thus, the Court should reject the U.S Trustee's request in this regard.

WHEREFORE, the Plan Administrator respectfully requests that the Court overrule the U.S. Trustee's objections and grant the relief sought in the Motion.

DATED: September 5, 2025

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*Counsel to the Plan Administrator and Wind-Down Debtors in the Sungard Chapter 11 Cases*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on September 5, 2025, a true and correct copy of *The Sungard Wind-Down Debtors' Response to the U.S. Trustee's Objection to its Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

               */s/ Daniel F. X. Geoghan*
               Daniel F. X. Geoghan