### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>PROFESSIONAL FEE MATTERS CONCERNING THE JACKSON WALKER LAW FIRM | Civil Action No. 4:23-cv-04787 |

### MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

TO THE HONORABLE CHIEF JUDGE ALIA MOSES:

## I.  RELIEF REQUESTED

1.   By this Motion, and in accordance with Bankruptcy Rule 9019(a),[1] OLD COPPER COMPANY INC. F/K/A J. C. PENNEY COMPANY INC. AND COPPER SUB CORPORATION, INC. F/K/A J. C. PENNEY COPORATION, INC., AS WIND DOWN DEBTORS IN J. C. PENNEY DIRECT MARKETING SERVICES LLC, by and through its Plan Administrators (hereafter collectively referred to as "Plaintiffs"), request that the Court enter an order substantially in the form attached as **Exhibit A** approving the Settlement Agreement and Release (the "Settlement Agreement") between Jackson Walker LLP ("JW") and Plaintiffs. The Settlement Agreement resolves any and all claims and causes of action of any kind held by Plaintiffs and the Debtors' estates against JW arising out of or related to the bankruptcy cases of *In re J.C. Penney Direct Marketing Services LLC, et al.*, Chapter 11 Case No. 20-20184 (previously jointly administered under Case No. 20-20182), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Cases"), including the Plaintiffs' joinder to the U.S.

---

[1] Article IV.C of the Plan (defined below) provides that the Plaintiffs may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, given the circumstances of this matter, the Plaintiffs file this Motion under Bankruptcy Rule 9019 and seek approval from this Court.

Trustee motion under Federal Rule of Civil Procedure 60(b)(6), Adversary No. 25-02002 styled *Old Copper Company, Inc. f/k/a J.C. Penney Company, Inc. and Copper Sub Corporation, Inc. f/k/a J. C. Penney Corporation, Inc. as Wind Down Debtor in J. C. Penney Direct Marketing Services, LLC v. Jackson Walker, LLP*, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Adversary Proceeding"), and any allegations related to the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A-1** to the proposed order attached to this Motion. In exchange for the releases set forth in the Settlement Agreement, JW shall pay Plaintiffs $1,400,000.00 (the "Settlement Amount"), which will be distributed consistent with the terms of the Plan[2] confirmed in the above-referenced Bankruptcy Cases.

## II.  JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

3. The basis for the relief requested herein is 11 U.S.C. § 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.  BACKGROUND

4. On May 15, 2020 (the "Petition Date"), each of the above-referenced debtors (the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Former Judge Jones initially presided over the Bankruptcy Cases.

5. On June 11, 2020, the Debtors filed their *Application of Debtors and Debtors-in-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors*

---

[2] "Plan" means the *Amended Joint Chapter 11 Plan of Reorganization of J.C. Penney Company, Inc. and its Debtor Affiliates* filed at Docket No. 2162 in Case No. 20-20182.

2

*and Debtors-in-Possession* [Case No. 20-20182, Doc. No. 685] (the "Employment Application"). Former Judge Jones approved the Employment Application on July 2, 2020 [Case No. 20-20182, Doc. No. 963].

6. On October 20, 2020, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Plan and Disclosure Statement Objection and Related Procedures, (III) Approving the Solicitation Procedures, and (IV) Approving the Confirmation Hearing Notice* [Case No. 20-20182, Doc. No. 1594].

7. On October 26, 2020, former Judge Jones entered the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement, (III) Establishing Plan and Disclosure Statement Objection and Related Procedures, (IV) Approving the Solicitation Procedures, and (V) Approving the Confirmation Hearing Notice* [Case No. 20-20182, Doc. No. 1655].

8. On December 16, 2020, former Judge Jones entered the *Amended Order Approving the Disclosure Statement for, and Confirming the Amended Joint Chapter 11 Plan of Reorganization of, J. C. Penney Company, Inc. and Its Debtor Affiliates* [Case No. 20-20182, Doc. No. 2169] (the "Confirmation Order").

9. JW filed *Jackson Walker LLP's First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from May 15, 2020, Through August 31, 2020* [Case No. 20-20182, Doc. No. 2561] ("JW's First Interim Fee Application") on February 5, 2021. Former Judge Jones approved JW's First Interim Fee Application without objection on March 8, 2021 [Case No. 20-20182, Doc. No. 2721].

10. JW filed *Jackson Walker LLP's Second Interim and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from*

*May 15, 2020 Through December 14, 2020* [Case No. 20-20182, Doc. No. 2739] ("JW's Second Interim and Final Fee Application") on March 10, 2021. Former Judge Jones approved JW's Second Interim and Final Fee Application without objection on April 8, 2021 [Case No. 20-20182, Doc. No. 2874].

11. On or about November 2, 2023, the U.S. Trustee filed motions under Rule 60(b)(6) of the Federal Rules of Civil Procedure (the "Rule 60 Matter") seeking relief in various bankruptcy cases, including the Bankruptcy Cases [*see e.g.*, Case No. 20-20184, Doc. No. 1236]. The Rule 60 Matter was based on JW's alleged failure to disclose an alleged intimate relationship ("the Relationship") between one of its then-partners, Elizabeth Freeman, and then-Judge Jones.

12. On February 29, 2024, and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in various cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".[3]

13. On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

14. On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

15. The Parties engaged in discovery from May 2024 through December 2024.

16. On January 16, 2025, the Plaintiffs filed a joinder to the U.S. Trustee Filings in the Bankruptcy Cases.

---

[3] As to the Bankruptcy Cases, the fees and expenses sought to be vacated by the U.S. Trustee, as joined by Plaintiffs, totaled $1,101,482.21.

4

17. On January 28, 2025, Plaintiffs initiated the Adversary Proceeding against JW. The Adversary Proceeding sought disgorgement of fees paid to JW in the Bankruptcy Cases, as well as in matters relating to the Bankruptcy Cases conducted in front of former Judge Jones post-confirmation of the Plan, in addition to the expenses of investigation of the facts and circumstances and representation of Plaintiffs made necessary by the allegations relating to the Relationship. The factual allegations made by Plaintiffs are contained in pages 5-16 of the Amended Complaint filed May 1, 2025 [Adv. Doc. No. 12].[4]

18. JW filed a motion to dismiss the Amended Complaint [Adv. Doc. No. 10]. JW disputes any basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's alleged acts or omissions in relation to the Bankruptcy Cases, and JW asserts, *inter alia*, that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases.

19. Plaintiffs have participated in the Rule 60 Matter and in the Adversary Proceeding since their inception.

20. In or around June 2025, JW and the Plaintiffs agreed to mediate the disputes between them with the Honorable (Ret.) James Peck[5] serving as mediator. After weeks of discussions and virtual meetings with Judge Peck, in August 2025, the parties reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

---

[4] A copy of the Amended Complaint is attached at **Exhibit B**.

[5] Judge Peck was a U.S. Bankruptcy Judge for the Southern District of New York during the Global Financial Crisis and presided over the chapter 11 and SIPA cases of Lehman Brothers and its affiliates and other major chapter 11 and chapter 15 cases. Judge Peck chairs the Business Bankruptcy Advisory Committee of the Southern District of New York and has been appointed to the Panel of Arbitrators of the Singapore International Arbitration Center. Judge Peck is currently a judge on the Singapore International Commercial Court.

### IV. SUMMARY OF SETTLEMENT AGREEMENT[6]

21. The Settlement Agreement is straightforward. Within five (5) business days of an order granting this Motion becoming a Final Order (as defined in the Settlement Agreement), JW will pay to Plaintiffs the Settlement Amount, which will be distributed consistent with the terms of the Plan and the Confirmation Order.

22. Additionally, JW and Plaintiffs are providing mutual releases. Plaintiffs, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date, including claims and causes of action arising from or relating to the Bankruptcy Cases, the Rule 60 Matter, the Adversary Proceeding, and the Relationship. JW, as more fully set forth in the Settlement Agreement, will release Plaintiffs from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of action arising from or related to the Bankruptcy Cases, the Rule 60 Matter, the Adversary Proceeding, and the Relationship.

### V. ARGUMENTS AND AUTHORITIES

23. Bankruptcy Rule 9019(a) states that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Iridium Operating LLC v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 461–62 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

---

[6] The summary of the settlement terms is provided herein for convenience only. To the extent of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls. Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to such terms in the Settlement Agreement.

24. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

25. Courts in the Fifth Circuit use a three-factor balancing test to analyze whether a proposed settlement is fair, reasonable, and in the best interests of the estate: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise." *In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). In connection with the third factor, courts should also consider "the paramount interest of creditors with proper deference to their reasonable views" and the "extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion." *Id.* at 540; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (Matter of Foster Mortg. Corp.)*, 68 F.3d 914, 917–18 (5th Cir. 1995).

26. Plaintiffs contend that the terms of the Settlement Agreement are fair and equitable. The Settlement Agreement gives Plaintiffs and Liquidation Trust created under the Plan the full benefit of the Settlement Amount without the time, expense, and uncertainty of continued litigation.

**A. The balance between the litigation's probability of success and the benefits of settlement weigh in favor of approving the Settlement Agreement.**

27. As this Court is keenly aware, the allegations which form the basis of the Rule 60 Matter and the Adversary Proceeding surround the Relationship between former Judge Jones and Ms. Freeman, and JW's knowledge or lack thereof at any given time, together with JW's disclosure obligations (if any) at any given time.

28. The Plaintiffs allege that JW knew (actually and/or imputably) and failed to inform the Plaintiffs about the Relationship at the time JW was retained or any time thereafter.[7] The Plaintiffs assert that JW's failure to disclose the Relationship was a breach of JW's duties and obligations under the Bankruptcy Code and a breach of fiduciary duty under Texas law. The Plaintiffs assert that when JW breached its duties to the Plaintiffs, JW was no longer a "disinterested person" within the meaning of 11 U.S.C. § 101. Plaintiffs allege that as a result of JW's inability to satisfy the "disinterested" requirement of Bankruptcy Code § 327 and Bankruptcy Rule 2014, JW was ineligible to represent the Debtors in the Bankruptcy Cases. Plaintiffs seek disgorgement and recovery of all fees the Plaintiffs paid to JW prior to confirmation of the Plan. The Plaintiffs also assert that JW's alleged breach of its fiduciary duties resulting from its failure to disclose the Relationship entitle the Plaintiffs to disgorgement of all post-confirmation fees, including all costs incurred by Plaintiffs in the Bankruptcy Cases, the Rule 60 Matter and the Adversary Proceeding. The Plaintiffs seek recovery of a total amount of $3,443,277.64.

29. JW has presented various defenses to the allegations and specifically asserts, among other things, that it had no knowledge of the Relationship, that it had no duty to disclose the Relationship in the Bankruptcy Cases, that the Debtors' estates suffered no harm or prejudice and that there were no biased rulings or orders entered in the Bankruptcy Cases, and that the Plan's releases and exculpation clauses bar any recovery. JW has demonstrated a tenacious commitment to defending against the allegations.

30. Plaintiffs contend that the possibility of success in the litigation against JW is high (albeit JW strenuously disagrees), but the litigation is not without risks. There are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW

---

[7] Plaintiffs' allegations against JW are set forth in detail in the Amended Complaint attached as Exhibit B and incorporated by herein by reference to the extent necessary to determine the Motion.

(including any applicable appeals); and (b) the amount of recovery Plaintiffs will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides a significant recovery for the Liquidation Trust, which will be distributed consistent with the terms of the Plan and Confirmation Order and eliminates the risk and costs of continued litigation.

31. Plaintiffs submit that there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Liquidation Trust. That being said, the Plaintiffs acknowledge the existence of cases that have found that something less than full disgorgement may be appropriate even if a disclosure violation is found, and Plaintiffs understand that JW will argue, among other things, the lack of any causation and that there was no harm caused to the estates by any alleged lack of disclosure. In any event, it is unclear if the Adversary Proceeding would proceed along the same track as the Rule 60 Matter or not,[8] and under either scenario Plaintiffs would be required to continue pursuing litigation to recover fees and, more importantly, the amount of fees to be recovered, at this time, is uncertain. Appeals could also follow, further extending the litigation timeline.

32. Plaintiffs believe that the probability of disgorgement of the fees incurred prior to the confirmation, which were subject to court approval, are relatively high, given that JW filed its final fee application after it learned that the allegations of a past intimate relationship were at least partially true. Regarding the fees paid to JW for work after confirmation of the Plan, Plaintiffs have asserted that JW never informed the Debtors of any Relationship and instead continued to represent the Debtors before former Judge Jones. Notwithstanding the forgoing, Plaintiffs

---

[8] The Plaintiffs note that while discovery in the Rule 60 Matter closed over nine months ago, the Adversary Proceeding is only in the pre-discovery stage while JW's motion to dismiss is pending. Additionally, continued litigation would only serve to reduce recoveries given that attorneys' fees are not recoverable in connection with the Adversary Proceeding.

9

acknowledge that under Texas law disgorgement is not automatic and not necessarily awarded in full.

33. Regarding any amounts relating to the costs of the investigation and representation involved, Plaintiffs have asserted that such expenses are recoverable as directly foreseeable damages, although Plaintiffs acknowledge that the "American Rule" makes recovery of the legal costs less certain.

34. The Settlement Agreement and Settlement Amount provides the Liquidation Trust with a significant recovery, which, upon an order approving the Settlement Amount becoming final, will be distributed consistent with the terms of the Plan and Confirmation Order.

**B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment weighs in favor of approving the Settlement Agreement.**

35. The litigation has already proven to be complex and protracted, and such will continue particularly if the Adversary Proceeding (which has not yet progressed to the discovery phase) is not otherwise consolidated with the Rule 60 Matter. Even if Plaintiffs prevail at trial, Plaintiffs recognize that, under applicable law, such ruling may not result in disgorgement of 100% of fees. Additionally, Plaintiffs retained counsel with respect to the U.S. Trustee's motions and will continue to need to pay counsel with respect to any future litigation or appeal. A settlement now brings finality and eliminates any meaningful litigation and collection risk for the Plaintiffs. Notably, that risk could increase over time with continued litigation and any resulting appeals.

**C. The settlement is in the best interests of the creditors.**

36. Pursuant to the Plan and Confirmation Order, the Class 4 creditors (*i.e.*, the First Lien Claimants) are the only creditors entitled to any additional distributions under the Plan and the Confirmation Order as they will not be paid in full. *See Claims Administration Status Final Report and Notice of No Distribution to Holders of General Unsecured Claims* [Case No. 20-

20184, Doc. No. 1245]. The Settlement Agreement removes uncertainty of the litigation, stops the Debtors' estates from incurring further attorneys' fees and expenses in connection with these disputes (which, in turn, reduces any additional distributions to the Class 4 creditors), and provides a recovery exceeding the fees and expenses incurred in the Rule 60 Matter and the Adversary Proceeding. Further, the Settlement Agreement is a substantial step in bringing the administration of the Bankruptcy Cases to an end. Approval of the Settlement Agreement will permit the Debtors to focus their time and efforts on closing the Bankruptcy Cases.

### D. The settlement is the result of arm's-length negotiations.

37. The Settlement Agreement is the product of extensive, good-faith, arm's-length negotiations between the parties. After over a year of litigation involving the Rule 60 Matter and the filing of the Adversary Proceeding, both parties agreed to participate in mediation with Judge James M. Peck (Ret.) serving as mediator. Judge Peck (Ret.) held numerous individual calls with the parties, each represented by competent and experienced counsel. As a result, JW and the Plaintiffs ultimately reached a settlement. The parties negotiated the Settlement Agreement, which includes customary, broad mutual releases to bring finality to their claims and disputes.

38. Plaintiffs recognize that a degree of uncertainty and litigation risk exists with respect to continued litigation. Plaintiffs believe that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. Plaintiffs have attempted to achieve a resolution that maximizes value for the estate. Consequently, Plaintiffs urge that the Settlement Agreement is fair, equitable, and in the best interest of the estate and all concerned parties.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order approving the Settlement Agreement and granting Plaintiffs such other legal or equitable relief as the Court may deem just and proper.

Dated: September 10, 2025

Respectfully submitted,

STREUSAND, LANDON, OZBURN
& LEMMON LLP

By: */s/ Stephen W. Lemmon*
  Stephen W. Lemmon
  State Bar No. 12194500
  lemmon@slollp.com
  Rhonda Mates
  State Bar No. 24040491
  mates@slollp.com
  1801 S. MoPac Expressway, Suite 320
  Austin, Texas 78746
  (512) 236-9900; (512) 236-9904 (Fax)

**OLD COPPER COMPANY INC. F/K/A J. C. PENNEY COMPANY INC. AND COPPER SUB CORPORATION, INC. F/K/A J. C. PENNEY COPORATION, INC., AS WIND DOWN DEBTORS IN J. C. PENNEY DIRECT MARKETING SERVICES LLC,**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on this 10th day of September 2025 upon all parties registered to receive such electronic notices in this case via this Court's ECF Notification system. In addition, notices of this Motion will be served on all parties registered to receive electronic notices in Case No. 20-20184, *In re J.C. Penney Direct Marketing Services LLC, et al.*, and Adversary No. 25-02002, *Old Copper Company, Inc. f/k/a J.C. Penney Company, Inc. and Copper Sub Corporation, Inc. f/k/a J. C. Penney Corporation, Inc. as Wind Down Debtor in J. C. Penney Direct Marketing Services, LLC v. Jackson Walker, LLP.*

             */s/ Stephen W. Lemmon*
             Stephen W. Lemmon