# EXHIBIT B
# FIRST AMENDED COMPLAINT WITH EXHIBITS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | Case No. 20-20184 (CML) |
| J.C. PENNEY DIRECT MARKETING | § | |
| SERVICES LLC, et al | § | (Jointly Administered) |
| | § | (Formerly Jointly Administered under |
| | § | J.C. Penney Company Inc., 20-20182) |
| OLD COPPER COMPANY INC. F/K/A | § | |
| JC PENNEY COMPANY INC. AND | § | |
| COPPER SUB CORPORATION INC. | § | Adversary No. 25-02002 |
| F/K/A JC PENNEY COPORATION | § | |
| INC., AS WIND DOWN DEBTOR IN JC | § | |
| PENNEY DIRECT MARKETING | § | |
| SERVICES LLC | § | |
| | § | |
|     Plaintiff | § | |
| v. | § | |
| | § | |
| JACKSON WALKER LLP | § | |
|     Defendant | § | |

## FIRST AMENDED COMPLAINT

The Old Copper Company, Inc. f/k/a J.C. Penney Company Inc. and Copper Sub Corporation Inc. f/k/a J.C. Penney Corporation Inc., as Wind Down Debtor in J.C. Penney Direct Marketing Services LLC ("Plaintiff") files this First Amended Complaint against Jackson Walker LLP ("JW") and would show the Court as follows:

## I. INTRODUCTION

1. The conclusion drawn by Judge Isgur as expressed in his September 20, 2024, disciplinary referral of JW says it all:

> **"Jackson Walker's deliberate failure to inform its clients [of the Relationship] was an ethical breach that we cannot excuse."[1]**

---

[1] *See* Exhibit A, September 20, 2024, letter from the Hon. Marvin Isgur to Chief United State District Judge Randy Crane Re: Referral of Jackson Wallker LLP (the "Disciplinary Referral") at 4 (emphasis added).

2.      Regrettably, Judge Isgur was only the latest to warn JW of its obligations to its clients.  When allegations of the Relationship arose, JW immediately sought advice from Ethics Counsel and crisis management professionals. JW ignored these professionals who clearly advised JW that it had to inform its clients.  When a law firm is disregarding the advice of its Ethics Counsel, things are seriously wrong.  JW has not disclosed any reason for this lapse – but still complains that it might be held to account.

## II.      SUMMARY OF THE COVER-UP[2]

3.      JW partner Elizabeth Freeman ("Freeman") and (now former) Judge David R. Jones ("Jones") were in a romantic relationship beginning in 2013, at the latest (the "Relationship").  They co-owned a home located at 3530 Rolla Street, Houston, Texas (the "Rolla House") from 2017 forward.

4.      JW represented JCP in the JCP Cases (defined below).[3]  Jones presided over the JCP Cases.  JW failed to inform JCP about the Relationship, *at any time*.  Likewise, JW failed to make the necessary disclosures to the Court, creditors, and other parties-in-interest.  Instead, JW consciously and deliberately made the economic decision to breach its duties to JCP, which rendered it no longer "disinterested" as required by the Bankruptcy Code.  "It was the firm's duty to place the interest of its clients above its own interest."[4]  JW's failure to do so was a breach of its duties to JCP, under the Bankruptcy Code, federal and Texas law, local rules, and the Rules of Professional Conduct.  As a result, *all fees* JCP paid JW should be disgorged.

5.      To the extent it has articulated any factual defenses, JW contends:

---

[2]     This case is not really about the Relationship.  Rather, it is about JW's cover-up of that Relationship.

[3]     As used herein, "JCP" shall refer to J.C. Penney Company, Inc. and its affiliates in the JCP Cases set forth in footnote 7.

[4]     Exhibit 1 at 4

a.      JW management knew nothing of the Relationship until March 2021.

b.      When allegations of the Relationship surfaced in March 2021, JW conducted a factual investigation.

c.      JW at all times consulted Ethics Counsel and followed their advice.

6.      Unfortunately, the documents and testimony adduced in Case No. 23-00645, *In re Jackson Walker Fee Dispute* (the "Fee Dispute") indicate that JW's publicly stated defenses are incorrect, if not outright false.  JW claims that only Freeman knew of the Relationship, and thus it was an innocent victim of Freeman's indiscretion.  Instead, the facts show that multiple JW lawyers knew of the Relationship.  JW engaged in a sustained cover-up of the facts and completely disregarded the firm's duties to clients, the courts, and parties in the bankruptcy cases.  Then, when JW's upper management learned the facts, instead of rectifying the situation, management willfully participated in the cover-up.  JW is liable for the repeated ethical failures of multiple lawyers at every level of the firm.

7.      JW tries to excuse itself from liability based on the (alleged) fact that upper management did not know about the Relationship, at least for a while.  However, that excuse fails as a matter of law.  First, as observed by Judge Moses, knowledge of the Relationship by Freeman is imputed to JW.[5]  Therefore, JW "knew" of the Relationship as of the date Freeman joined JW (at a minimum).[6]  Additionally, by engaging in the continued cover-up after it undeniably knew

---

[5]      On April 9, 2025, the Honorable Alia Moses, Chief Judge of the U.S. District Court for the Western District of Texas (sitting in the Southern District of Texas), entered an order withdrawing the reference for the Fee Dispute.  *See*, Case No. 4:23-cv-04787, in the U.S. District Court for the Southern District of Texas [ECF 31].

[6]      As indicated below, additional JW attorneys also knew of the Relationship – and their knowledge is also imputed to the firm.

about the Relationship, JW management adopted the bad acts and liability created by non-management partners and lawyers.[7]

8.      JW's failure to disclose the Relationship is a clear breach of its fiduciary duty to JCP. Plaintiff need not establish damages resulting from such breach. The law in federal and state court supports disgorgement of all the fees JCP paid to JW.

## III.      THE PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff is the successor to the associated debtors in possession in various chapter 11 cases filed in the Southern District of Texas by J.C. Penney Company, Inc. and certain of its affiliates (the "JCP Cases" or collectively, the "JCP Case").[8]   The JCP Cases were jointly administered under Case No. 20-20182.  All post-confirmation matters are administered under Case No. 20-20184, which remains open in this Court.

10.      JW has been served with process and appeared in this matter.

11.      This Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and exclusive jurisdiction under § 1334(e)(2). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. § 1409(a).

---

[7]      This Amended Complaint is based on the facts disclosed thus far.  As indicated herein, some of the facts have been suppressed or evidence destroyed.  To the extent JW has any counter factual narrative to present, JCP welcomes such disclosure.

[8]      The "JCP Cases" include: 20-20182, J. C. Penney Company, Inc.; 20-20198, Future Source LLC; 20-20183, J.C. Penney Corporation, Inc.; 20-20184, J. C. Penney Direct Marketing Services LLC; 20-20185, J. C. Penney Export Merchandising Corporation; 20-20186, J. C. Penney International, Inc ; 20-20181, J. C. Penney Properties, LLC; 20-20187, J. C. Penney Purchasing Corporation; 20-20188, JCP Construction Services, Inc. ; 20-20189, JCP Media, Inc.; 20-20190, JCP New Jersey, LLC; 20-20191, JCP Procurement, Inc.; 20-20192, JCP Real Estate Holdings, LLC; 20-20193, JCP Realty, LLC; 20-20194,1 JCP Telecom Systems, Inc.; 20-20195, JCPenney Puerto Rico, Inc.; 20-20196, JCPenney Services, LLC; 20-20197, JCP SSC, Inc.

## IV.   CHRONOLOGY OF THE COVER-UP

**The Relationship Exists Long Before Freeman Joins JW**

**2009:**  Freeman works with Jones at Porter Hedges.

**2011:** Jones takes the bench on October 1, and Freeman leaves Porter Hedges to become Jones' briefing attorney.

**2013:**  Freeman tells Jones court staff about the Relationship.[9]

**June 2017:** Freeman and Jones become co-owners of the Rolla House.[10],[11]

**Freeman joins JW Amid Rumors of the Relationship**

**2018**:
- *May*: Freeman leaves her job as Jones' briefing attorney to join JW as an income partner.[12]

- *July*: Veronica Polnick ("Polnick") begins working a law clerk to Jones and learns Freeman and Jones live together at the Rolla House.[13]

**2019:**
- *March*: Polnick joins JW as an associate in the bankruptcy section.

- *June*: Freeman's ex-husband Nick Simms ("Simms") references "the Liz/Jones casa in a gated community called cape royale" in a text message to a friend.[14]

**2020:**
- *April 19*:  Simms sends a text message Freeman that references the fact that Freeman is living at the Rolla house.[15]

---

[9]   *See*, Exhibit 3, Excerpts of Deposition of Albert Alonzo at 63-65.

[10]   General Warranty Deed dated June 26, 2017, recorded in the Real Property Records of Harris County, Texas, File No. RP-2017-28445.

[11]   Sometime in 2020, Freeman's parents allegedly move into a house owned by Jones in the Lake Livingston area. (This is also never disclosed.)

[12]   Freeman is advanced to equity partner on January 1, 2021.

[13]   *See*, Exhibit 4, Excerpts of Deposition of Veronnica Polnick pp. 353-354.

[14]   Exhibit 5, Deposition of Nick Simms UST Exhibit 109.

[15]   Exhibit 6, Excerpts of Deposition of Nick Simms at 63-65.

## JW Serves as Co-Counsel in the JCP Cases

**May 2020:**

- *May 12*: Freeman texts Polnick about Jones presiding over the JCP Case *three days before the case was filed*.[16]

  > "Talked to Jones.  He's got us."
  > "Jones has been softening up on this for a month."
  > "We are keeping this on the down loooooooow."

- *May 13*:  JCP officially retains JW as local counsel in the JCP Cases (without advising JCP of the Relationship).

**June 2020:**

- *June 11*:  JW files its *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession*[17] in the JCP Case, supported by Matthew Cavenaugh's ("Cavenaugh") Declaration of Disinterestedness[18] that does not mention the Relationship.[19]

**July 2020:**

- *July 7*:  Jones enters an *Order Granting the Application of Debtors and Debtors-in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for Debtors and Debtors-in Possession*[20], which requires JW to:

  > review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Jackson Walker will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a).

**December 2020**:

- *December 24*: Jones confirms JCP's Plan of Reorganization.[21]

**February 2021**:

- *February 5*: JW files an Interim Fee Application without making further disclosures.[22]

---

[16]   Exhibit 7 at 3-4.

[17]   Case No. 20-20182, ECF 685 (the "Retention Application").

[18]   *Id*., ECF 685-2. (the "Cavenaugh Declaration").

[19]   *Id*., ECF 685-2.

[20]   Case No. 20-20182, ECF 963 (the "Retention Order").

[21]   Case No. 20-20182, ECF 2190.

[22]   Case No. 20-20182, ECF 2561

**The Cover-Up Begins**

➢ **Before the March 10, 2021, Recusal Hearing**

**March 6, 2021 (Saturday) – The Allegations Come to Light**

○ At 11:44 a.m., Michael Van Deelen ("Van Deelen"), a creditor in the *McDermott* case,[23] emails Cavenaugh with accusations about the Relationship (the "Allegations").[24]

○ Within seven minutes, Cavenaugh asks Polnick to call him, and follows up 10 minutes later, saying "It's important and a little sensitive."[25]

○ Polnick then meets with Cavenaugh in person.[26]

○ At 1:55 p.m., Polnick texts Freeman, and they speak on the phone.[27]

○ Within an hour and a half of the first text to Freeman, Polnick and Freeman meet at a restaurant.[28]

○ Then Polnick meets with Cavenaugh again.[29]

○ Cavenaugh tells co-counsel about the Allegations and says JW is "investigating."

○ Freeman tells Cavenaugh that she was previously in a Relationship with Jones, but that it ended some time before 2021, and they do not live together.[30]

**March 7, 2021 (Sunday) – A Plan Begins to Form**

○ Polnick alerts Jones' Courtroom Deputy Albert Alonzo ("Alonzo") (who also knows of the Relationship) about the Allegations and previews a filing the following day.[31]

○ Cavenaugh tells Polnick that Bruce Ruzinsky, Chip Babcock, and Pat Cowlishaw ("Cowlishaw") (all JW upper management) are in the "circle" and have "signed off

---

[23] *Van Deelen v.* Dickson *(In re McDermott Int'l Inc.)*, Adv. No. 20-3309, (Bankr. S.D.Tex.), ECF No. 4 (July 23, 2020).

[24] Exhibit 8.

[25] Exhibit 9 at 2.

[26] *Id*.

[27] Exhibit 7 at 10.

[28] *Id*.

[29] Exhibit 9 at 2.

[30] Exhibit 2, Excerpts of Deposition of Matthew Cavenaugh.

[31] Exhibit 11 at 2.

on the plan." He says: "I feel so terrible. But if we want to protect her, this is the route."[32]

o  Polnick raises concerns about the future of JW's bankruptcy practice.[33]

> Polnick: "You think we get out of this with 1) freeman still at JW, 2) Jones still on the bench and panel, and 3) still working with KE?"

> Cavenaugh: "All 3"

**March 8, 2021 – Keeping the Allegations Under Wraps**

o  Van Deelen files an addendum to an earlier-filed Motion to Recuse (the "Addendum") based on the Allegations.[34]

o  Polnick coordinates with Alonzo to get the Addendum sealed. Alonzo says he will call Jones.[35]

o  Polnick drafts and files a Motion to Seal the Addendum,[36] calling the Allegations "defamatory."[37, 38]

o  After filing the Motion to Seal, Polnick heads to the courthouse to personally deliver it to chambers.[39]

**March 8, 2021 – Ethics Counsel – What Did We Do Wrong?**

o  Cavenaugh spends three hours "re reading all of my declarations in prior cases[40]

o  JW seeks advice from outside ethics counsel Peter Jarvis ("Jarvis" or "Ethics Counsel") of Holland & Knight.[41]

▪  After having a call with Jarvis, Cowlishaw emails him: "I am still uncertain…on what rule our lawyer may have violated."[42]

---

[32]  Exhibit 9 at 5.

[33]  *Id.*

[34]  Adv. No. 20-3309, ECF 39.

[35]  Exhibit 11 at 2-3.

[36]  Adv. No. 20-3309, ECF 36.

[37]  Exhibit 4.

[38]  JW also claim the Addendum was filed under seal because of "concerns about Mr. Van Deelen's credibility…" *Preliminary Response of Jackson Walker LLP to Recent Filings by the Office of the United States Trustee*, Case No. 20-20184, ECF 1244 at ¶ 10.

[39]  Exhibit 11 at 3-5. Polnick and Cavenaugh decide Polnick will not make time entries for preparing and filing the motion to seal, presumably to prevent drawing attention to the Allegations. Exhibit 9 at 8-9.

[40]  *Id.* at 25.

[41]  *See generally,* Exhibit 12.

[42]  Exhibit 12 at 1.

- ▪ Jarvis points him to 28 U.S.C. § 455:

  > My starting point here is 28 USC 455. See attached fairly old 5⁵Circuit case. If the bankruptcy court judge either had to recuse or had to disclose and get consent to continue, and if one or more of your firm's clients are or may be harmed as a result, then I think there are at least personal interest conflicts for the lawyer in the relationship.

- ▪ Cowlishaw requests "a complete statement of the rules applicable to the judge and those applicable to the lawyer/firm."[43]

## March 8-10, 2021 – Crisis Management – Getting the Ducks in a Row[44]

*March 8*: JW also seeks expert advice from Androvett Legal Media & Marketing (the "PR Firm").[45]

- ▪ Barbara Malin ("Malin"), JW's marketing director, emails Mark Annick ("Annick") of the PR Firm: "I need to engage crisis communications assistance today."[46]

- ▪ A few hours later, Malin asks Annick for a call with her and Cowlishaw, JW's then general counsel, seeking advice "with talking points and a statement for both of these possible situations: a) if it is determined that no relationship exists and b) if it is determined that a relationship does exist."[47]

- ▪ Cowlishaw and Malin have two calls between 3:45 p.m. and 6:30 p.m.[48]

*March 9*: Annick provides advice that JW rejects.

- ▪ Annick sends a draft statement for JW's consideration.[49]

  > Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

- ▪ Cowlishaw pushes back on the proposed statement, raising concerns about holding JW to the "highest standard" and conducting an "internal investigation."[50]

---

[43] *Id.*

[44] Exhibit 13 at 68 ("Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.")

[45] *See generally,* Exhibit 13.

[46] Exhibit 13 at 15.

[47] *Id.* at 25.

[48] *Id.* at 21-23.

[49] *Id.* at 3-4.

[50] *Id.* at 105.

> • I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
> • We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
> • Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

- Malin worries that "going all in on support for Liz might be a strategic mistake."[51]

- Cowlishaw expresses the need to strongly affirm Freeman "as a person and lawyer, without speaking directly to the propriety of her conduct in this instance."[52]

- Malin advises against being "perceived as throwing Liz to the sharks at the first opportunity."[53]

- Annick states: "if we can't affirm a commitment to the highest ethical standards, an outside observer or reader may wonder what sort of mid-level standards we do follow."[54] Annick also raises the issue of conflicts of interest:

  > "[W]e also feel an obligation – as your advocates in the PR and media space – to say that reporters and others encountering this are bound to see it as a clear conflict of interest, at the very least." (emphasis in original)

- Despite Annick's advice, JW doubles down on not holding itself to the "highest standards" and offers an alternative statement.[55]

  > "For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."
  >
  > We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

- Annick warns that the statement might sound defensive and proposes a minor change.[56]

  > For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

---

[51]  *Id.* at 2.

[52]  *Id.* at 7.

[53]  *Id.*

[54]  *Id.* at 112.

[55]  *Id.* at 67.

[56]  *Id.* at 83.

■ Malin anticipates having to make internal and external statements after the hearing on the Recusal Motion.[57]

**_March 10:_** JW worries about what Jones might say.

■ Before knowing the outcome of the hearing, Malin states that there is a "possibility that at today's hearing Judge Jones may acknowledge the relationship."[58]

➢ **After the March 10, 2021 Hearing**

**March 10:**

○ Judge Isgur denies the motion, leaving the case pending before Jones, where the Allegations will remain under seal.

○ After learning that the Allegations will remain sealed, Annick recognizes that JW has "a little bit of cover and time."[59]

○ Less than 12 hours after the hearing, JW files its _Second Interim and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from May 15, 2020 Through December 14, 2020_, without any additional disclosures.[60]

**March 12:**

○ JW refuses to give Annick a copy of the Van Deelen letter.[61]

○ Jarvis suggests: "With respect to the financial interest issue, how about reconfiguring your partner's share so that it EXCLUDES any part of revenues from cases before Judge Jones?" Cowlishaw calls it "an interesting thought."[62]

**The Relationship is Not a Well-Kept Secret**

**April 2021:**

● _April 14_: Polnick's texts to Freeman show she knows Freeman is living with Jones:[63]

"An accidental kick to the spine in the middle of the night would be ok."
"I'm suggesting you kick someone in the spine in the middle of the night."

---

[57]  _Id_. at 32.

[58]  _Id_. at 51.

[59]  _Id_. at 130. On March 12, JW refused to give Annick a copy of the letter containing the Allegations. This appears to be the last substantive communication with Annick.

[60]  Case No. 20-20184, ECF 2739 (the "Final Fee Application").

[61]  Exhibit 13 at 142.

[62]  Exhibit 12 at 2.

[63]  Exhibit 7 at 21-29.

"I've kicked David in the spine a million times"
"Wash only your clothes and not his next time you do laundry."
"Switch out shampoo with hair."  "Nair."
"Take his suit pants to the cleaners and have them taken in 2 inches."
"Replace toothpaste with preparation H."
"Hide his fancy screwdrivers."

- *April 28*: Polnick and Alonzo texts show they know Freeman is living with Jones:

  Alonzo: "Isn't she supposed to call it off when Jones, move out or quit."[64]

**May 2021:**

- *May 4*: Polnick texts with Freeman demonstrate that JW lawyer Genevieve Graham knows about the Relationship:

  "She [Graham] obviously knows you have a relationship with Jones and she now knows that it quasi came out in McDermott and that there's high level firm shit going on."[65]

- *May 20:*  Cavenaugh to Polnick re Freeman/Jones:[66]

  "They've been very careful.  Taken a lot of steps.  Legal, very good.  But the fact that they've taken so many steps makes it problematic from a pr standpoint."
  Polnick:  "They saw this coming 10 years ago."

- *May 20*: Polnick re JW managing partner Wade Cooper:[67]

  "Apparently Wade only knows that they're friends and socialize and while he may suspect more he apparently doesn't know know."

## 2021 – Ethics Advice Part II[68]

### August 2021:

- Almost six months after first consulting Ethics Counsel, JW's general counsel sends letter to Jarvis formally requesting advice.[69]

  o The letter represents that Freeman is not working on cases that are before Jones.

---

[64]  Exhibit 11 at 8.

[65]  Exhibit 7 at 34.

[66]  Exhibit 9 at 42-43.

[67]  *Id*. at 43.

[68]  At no point in 2021 does it appear that Ethics Counsel was asked about duties to disclose the Relationship, or about bankruptcy disclosure obligations.   It appears that JW never consulted a bankruptcy expert.

[69]  Exhibit 12 at 3.

- o The letter also says that Freeman is being screened from any share of the profits JW receives from working on cases in front of Jones.[70]

- o The letter represents that Jones and Freeman never lived together – though JW never seems to have conducted an investigation into that fact – and even though Polnick knows otherwise.

## <u>The Ongoing Relationship is Confirmed, But JW Does Not Change Course</u>

**January 2022**

- During a dinner with a client and friend, JW management committee member Ross Forbes learns Freeman is living with Jones. That person texts Freeman's ex-husband, who confirms that Freeman is living with Jones.[71]

- o That night, Forbes alerts other members of management. However, no one confronts Freeman until months later.

**March 2022:**

- JW finally confirms with Freeman she is living with Jones and has "rekindled the relationship"[72]

**April 2022:**

- *April 27:* Tom Kirkendall, Freeman's personal counsel, suggested the following addition to JW's bankruptcy disclosures:[73]

  > Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court. Ms. Freeman does not have any financial interest in the Firm's cases in Judge Jones' court in that the Firm does not provide to her any compensation based on the Firm's cases in Judge Jones' court and her partner share of the Firm's profits does not include a share in any of the Firm's profits attributable to cases in Judge Jones' court.

- *April 28*: In response to Tom Kirkendall's proposed disclosure, Wade Cooper (JW managing partner), emailed Bruce Ruzinsky (JW bankruptcy group leader), Cowlishaw (former general counsel), and William Jenkins (current general counsel), pointing out that: "Disclosure is a subject we have considered, even before we knew the facts most recently disclosed."[74] He made several insightful observations/questions:

  > Questions to be considered include:
  >
  > • Is "close personal relationship" sufficient to constitute "full disclosure" under the circumstances?

---

[70] JW does not mention the large sums Freeman receives for origination credit of Jones cases.

[71] <u>Exhibit 6</u>, Excerpts of Deposition of Nick Simms at 63-65; <u>Exhibit 5.</u>

[72] <u>Exhibit 2.</u>

[73] <u>Exhibit 12</u> at 11.

[74] *Id*. at 9-10.

- • How are Liz, Judge Jones, and the Firm going to address press and other inquiries that may follow the making of such a disclosure, e.g., "what is meant by 'close personal relationship'"?, "Does this disclosure mean that Mr. Van Deelen's allegations of a romantic relationship were correct?Or that such a relationship now exists?If so, why wasn't this disclosure made earlier?  Has this

  relationship been a factor, or the driving factor, in the rise to prominence of JW's bankruptcy practice in Houston?

- • The draft disclosure disclaims any financial interest in cases before the Judge and asserts that no compensation is based on the firm's cases there.  For the Firm to stand behind those assertions, Comp Committee would need to consider whether her compensation should be set without credit for any WAC or originations associated with cases in that court, as well as making the net income adjustment to eliminate sharing in profits derived from fees for cases in that court.  This of course would need to be considered by all concerned.

- • If the draft disclosure were made, what opportunity will that create for collateral attack on our recent cases in this court, at least going back to McDermott?Should any cases be reopened, what risk does that raise of claims by our clients against the firm for the additional expense they will incur?

Along with all of this, but perhaps on a separate or parallel track, is the question of candor in Liz's communications with the firm, both in 2021 and during the recent meeting with Pat and Julia.When the most recently disclosed facts are presented to the full Management Committee, there may be members who, even after careful and dispassionate consideration, conclude that a serious question is raised regarding fitness for partnership.  When and how to address that issue also is going to take some time and care.

## 2022 – Ethics Advice Part III

### May 2022:

- *May 3*: JW reaches out to Jarvis for additional advice.[75]

- *May 3*: Jarvis attempts to frame the issues:[76]

  1. If a judge does not disclose a potential issue arising under §455 with respect to a case before the judge but a lawyer for one of the parties in the case actually knows of the issue, does the lawyer have a duty—either under the statute or under the Texas Rules--to make disclosure?
  2. If a judge has an intimate personal relationship with a lawyer at a firm and also lives with that lawyer, is it sufficiently "full disclosure" (to the extent that full disclosure can be a cure under §455(a)) for the judge to say to counsel/parties to litigation pending before the judge that the judge has "a close personal relationship" with that lawyer  (assuming for the sake of this question that the lawyer who lives with the judge is not actually involved in the representation and will not receive any fees as a result of the litigation)?
  3. To the extent that disclosure plus waiver/consent in this situation can cure a potential problem under §455, does the party who receives the disclosure need affirmatively to express a waiver/consent or is the passage of time after disclosure and without objection sufficient?
  4. To what extent does it seem that this situation is not within §455(a) but must be treated as the equivalent of a marital relationship?

- *May 3*: Cowlishaw also adds whether it is sufficient for the lawyer to make the disclosure or whether the judge must also disclose. He explains the Rule 2014 disclosure process and notes: "We looked at the rules related to this disclosure very early on and concluded that it technically requires disclosures only of relationships with interested parties, a term of art that does not include the presiding judge…"[77]

- *May 6*: Cowlishaw asks Jarvis to "keep the advice on this matter oral at the point."[78]

- *May 10*: Tom Kirkendall proposes a disclosure that states:[79]

---

[75]   *Id.* at 13-17.

[76]   *Id.*

[77]   *Id.*

[78]   *Id.*

[79]   *Id.* at 18.

Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court, and Ms. Freeman has no financial interest in the Firm's cases in Judge Jones' court.

- *May 10*: Jaqueline Harvey (H&K associate):[80]

I talked to William and updated him on the matter. I told him that Tom agrees that a disclosure by the firm is necessary, but that an agreement around the wording of that disclosure has yet to be determined. The firm has a disclosure to the Court due tomorrow. William believes at this point, they should continue with the old disclosure until this is sorted out, but wanted our confirmation.

- *May 11*: JW advises Jarvis that they do not intend to include the proposed disclosure in a filing the following day. "We may amend once we have a game plan.[81]

- *May 31*: Jarvis generates draft memo to JW (underlined text reflects the portions of the letter that were deleted in the subsequent draft):[82]

This memorandum addresses what duties attorneys have when they know the judge presiding over their case has an undisclosed conflict of interest. In summary, the lawyer has a duty to (1) disclose the conflict of interest to his or her client and (2) disclose the conflict of interest in the proceedings.

…

The firm leadership was not aware of the Relationship until the last month or so. However, it appears several attorneys in JW's bankruptcy practice were aware of the standing of the Relationship for longer than a few months.

…

Here, there is little doubt that a reasonable person knowing all the facts would believe that Judge Jones is impartial towards Ms. Freeman or JW when she or it appears in front of him.

…

Even if Ms. Freeman does no work on a case, but a JW bankruptcy attorney appears in cases in front of Jude [sic] Jones, a reasonable person knowing all the facts would nonetheless believe that Judge Jones' impartiality towards Ms. Freeman's firm bankruptcy practice, of which she is a leading member, would be affected.

…

JW Attorneys have a Duty to Disclose the Conflict.
The conflict must be disclosed to JW clients whose cases are before Judge Jones.

…

Here, there are several ways that the client's case may be impacted. First, if the relationship goes undiscovered then there is the possibility of beneficial or negative bias on the client's case as a result of the status of the Relationship. For example, if the Relationship was terminated then there is a chance Judge Jones may be negatively biased towards JW and its clients.

---

[80] *Id.* at 42.

[81] *Id.* at 22.

[82] *Id.* at 26-30.

> Even more impactful would be if the conflict was subsequently discovered because the cases may be required to start from the beginning. [citing cases]
>
> …
>
> As for present cases before Judge Jones, disclosures on the record and to clients are still necessary [even if Freeman leaves the firm].

- *June 2*: Jarvis sends a revised memo that eliminates most of the language from the prior memo, with one important point surviving:[83]

  > **"In our opinion, disclosure by the lawyer to firm clients about the judicial conflict is necessary."**

- *June 9*: Jarvis talks to Tom Kirkendall about litigation risk.[84]

  > "Does not want litigation to ensure [sic] where the firm and Liz are both criticized for coming up with this decamping situation as a way to get around the disclosure obligation."
  >
  > "**Agrees that disclosures need to be made to current clients before Jones** and, if Liz stays, all clients going forward"

**JW and Freeman contractually agree to keep the Relationship secret.**

**November 2022**

- *November 29*: JW and Freeman enter into a separation agreement with the following language:

  > **Confidentiality**.  JW and you agree that this Agreement, all of its terms and conditions, and all preceding discussions between you and JW, **regarding your relationship with Judge Jones** ("Covered Matters") are confidential and **shall not be disclosed or revealed to any third party**, except as specified below.

## V.     ANALYSIS OF THE COVER-UP

**A.     There is no question that JW "knew" of the Relationship.**

**(i)     Key JW bankruptcy attorneys knew before the 2021 Allegations.**

12.     As Judge Moses has observed, there is no question that JW knew of the Relationship.  First, equity partner Freeman, as a participant, of course knew.  JW tries to lay blame at the feet of Freeman and Jones. (This blame is misplaced.)  However, it is beyond argument that

---

[83]   *Id*. at 31-40 (emphasis added).

[84]   *Id*. at 41 (emphasis added).

Polnick (who discovered that Freeman and Jones owned a house in 2018) also knew.  JW's attempts to deny knowledge of the Relationship are simply not credible in light of the contemporaneous texts showing knowledge.  The knowledge of Freeman and Polnick pre-dated the Allegations.[85]  By March 6, 2021, Cavenaugh knew at least about a prior Relationship.

### (ii)    JW Does Not Investigate Despite Telling Co-Counsel (and Others) It Was Doing So

13.    Even though JW told others that it was investigating the Allegations at the time they arose, they were not. In fact, in its Preliminary Response to the U.S. Trustee's Rule 60(b) Motion, JW admits that in March 2021, after Freeman acknowledged a past Relationship, "[n]o further details were sought at that time."[86] The extent of JW's "investigation" seems to have been to ask Freeman, with zero effort to confirm the true facts. JW did not ask those closest to Freeman what they knew about the Relationship, or even trying to gather the most basic facts. JW has produced no evidence of a legitimate investigation (and has suppressed much of the investigation information as "privileged").  JW did not even run a simple search of the public records (available online), which would have disclosed that Freeman and Jones owned a house together – thus refuting a key fact JW cited to its Ethics Counsel.[87]

### (iii)    JW Went into Cover-up Mode Rather than Inform its Clients or Anyone Else

14.    Instead of advising its clients after the Allegations arose, JW hired the PR Firm in the event JW was unsuccessful in suppressing the Allegations and their truth.  As Judge Isgur observed, this failure to notify clients was a clear breach of JW's duties to its clients.[88]

---

[85]    It should also be noted that texts were deleted from the phones of Graham, Polnick, and Cavenaugh, for reasons that have never been adequately explained. Critical evidence exists only because of an old iPad belonging to Polnick that survived the purge of texts.  And even that iPad raises more questions.  Polnick testified she provided it to counsel in May 2024.  No excuse has been offered for why counsel held the texts until October 1 when they were produced.

[86]    Case No. 20-20184, ECF 1244-1 at 3.

[87]    Exhibit 10.

[88]    Exhibit 1

15.     The cover-up began at least as of March 8, when Polnick drafted a motion to seal the Allegations as "defamatory."[89] Polnick did this even though she knew there was truth to the Allegations. This was not an oversight.  This was an intentionally deceptive act in furtherance of the cover-up.

16.     The cover-up continued March 9 as JW ignored the advice of the PR Firm to be prepared to advise partners and clients of the Allegations.  The PR Firm[90] warned JW that others would see the Relationship as "as a clear conflict of interest, at the very least."[91]  Despite that warning, JW did nothing.

17.     Also on March 9, Cavenaugh complained about a lack of sleep after spending three hours reviewing all of his prior declarations.   This is, of course, because he must have recognized the gravity of his situation, as the declarations were submitted under penalty of perjury – let alone the gravity of the exposure of the firm as a whole.  There is simply no way for JW to now contend there is not a problem with the sworn declarations.[92] Despite that concern, JW did nothing.

18.     The cover-up continued March 10 as Cavenaugh, even after he admits he had learned of new circumstances, filed the Final Fee Application in the JCP Case – disregarding the Court's order that JW promptly advise of any new circumstances, facts, or connections that might constitute disqualifying circumstances.[93]

---

[89]   Exhibit 4.

[90]   The PR Firm offers services in "crisis communications." https://androvett.com/services/crisis-communications. JW's believed the "crisis" was protecting itself, not its clients.

[91]   Exhibit 13 at 112 (emphasis in original).

[92]   Of course, JW later expressly chose to disregard Ethics Counsel's admonition to file corrected declarations.

[93]   Ironically, the Final Fee Application contained a copy of the Retention Order with the language that was being disobeyed.  See, Case No. 20-20182, ECF 2739.

19.     The cover-up continued throughout 2021, 2022 and 2023, and JW never advised JCP, the Court, or any parties of the Relationship.  As Judge Isgur observed, this was, at a minimum, a breach of the firm's duties to its clients.[94]

20.     The cover-up was furthered when JW misinformed its Ethics Counsel that Freeman was no longer working on Jones cases even though she continued doing so.

21.     The cover-up continued with JW failed to alter its retention applications and supporting declarations of disinterestedness in a single bankruptcy case that was pending or subsequently filed.

22.     The cover-up continued despite intense media scrutiny, multiple lawsuits, ethical referrals by the Fifth Circuit and the Southern District of Texas, and criminal investigations.

**B.      JW Cannot Disclaim Liability Simply Because Upper Management was not Aware of the Relationship**

23.     JW wants to claim that upper management was kept in the dark regarding the true nature of the Relationship – and thus JW should not be held responsible.    Regrettably, this defense fails, for the following reasons:

- First, there is some question about exactly what upper management knew, as evidenced by Polnick and Cavenaugh observing in 2021 that Wade Cooper knows but doesn't "know know."[95]

- Second, management consciously elected not to conduct a full investigation.  JW general counsel expressly struck the "investigation" language from the statement drafted by the PR Firm.

- But, most of all, after Wade Cooper astutely asked whether new disclosures might invite questions about prior disclosures, might cause cases to be reopened, and might then cause the firm to be sued, general counsel William Jenkins expressly refused Ethics Counsel's  repeated admonitions to disclose in current and future cases and to notify JW's clients.[96]  Instead, JW elected to go forward with the form of disclosure its

---

[94]   Exhibit 1.

[95]   Exhibit 9 at 43.

[96]   The JCP Case (No. 20-20182) was and is still open.  To this day, JW has not informed its client.

Ethics Counsel deemed inadequate. Thus, the imprimatur of JW management was placed upon a disclosure the firm's management knew was misleading.

### (i) As of Spring 2022, Upper Management Unquestionably Knew of an Ongoing Relationship

24. As of January 31, 2022, JW upper management absolutely knew that the Relationship was ongoing. Nonetheless, it waited two months to even question Freeman. When it finally did so, it informed Ethics Counsel of the ongoing Relationship. (Again, nothing suggests JW ever consulted bankruptcy experts but rather consulted a generalist in legal ethics. The discussion centered on general duties of counsel if it knows that the judge should recuse himself.) The Ethics Counsel advised that an attorney was committing an ethical breach if such attorney did not disclose the facts which might warrant recusal. Ethics Counsel advised that future and existing clients must be alerted and advised in favor of filing a proper disclosure.

### (ii) JW Intentionally Filed Disclosures It Knew are Misleading in New Cases

25. After the managing partner raised the issue of what problems might be presented by new disclosures, JW general counsel specifically told its Ethics Counsel it was not going to make the disclosures the expert said should be made. William Jenkins told the Ethics Counsel JW would not make disclosures until it had a "game plan." However, the only game plan JW implemented was one of non-disclosure.

### (iii) JW Takes Six More Months to Separate from Freeman with No Disclosures

26. JW took six additional months to separate from Freeman. It chose the path of separation rather than disclosure because it wanted to protect its lucrative complex case practice.[97] The firm chose not to disclose. But it kept practicing in front of Jones and even having Freeman work on the cases.

---

[97] Even though Freeman left JW, she continued to work on cases as "conflicts counsel."

27.     Rather than notify its clients as its Ethics Counsel advised, JW entered into a non-disclosure agreement with Freeman promising not to tell third parties about the "relationship with Judge Jones."

**(iv)     JW Could Have Done the Right Thing – But Didn't**

28.     JW had many opportunities to make the required disclosure.  JW did not do so because it wanted to continue with its multi-million-dollar practice.  To the extent JW feels it was victimized, it victimized itself.

29.     The evidence points inevitably towards a firm-wide coverup.  JW asserts it cannot be held responsible for the poor judgment of lower-level partners and associates who knew of the Relationship and failed to disclose.  That assertion is proven false by the plain fact that JW upper management, when they admittedly knew of the Relationship, chose to continue to file false and misleading disclosures for fear that a proper disclosure (as advised by Ethics Counsel) would invite scrutiny of prior disclosures, with the possibility of legal exposure.[98]

30.     JW, while having the foresight to engage a PR Firm, never took the time to advise their clients of the issues.  JW does not even pretend to offer any explanation for this lapse.  As Judge Isgur observed:[99]

> Jackson Walker could not have ethically determined that the facts known to it should be hidden from its clients.  Non-disclosure was a firm decision – not the decision of a single lawyer or even a single practice group at Jackson Walker.  It is inconceivable that Jackson Walker failed to inform its clients of the situation.  After all, it was the firm's duty to place the interests of its clients above its own interest.  But, Jackson Walker allowed its clients to affirm the completeness of disclosure statements, to pay Jackson Walker's fees, and to include exculpation and release clauses in confirmed bankruptcy plans all without informing the clients of the relevant facts.  Some or all of the clients might have refused to do so for practical reasons.  Others might have determined that their own ethical standards would not allow them to wander into the ethics quagmire precipitated by these events.  But, Jackson Walker apparently did not

---

[98]     Exhibit 12 at 9-10.
[99]     Exhibit 1.

inform its clients.  I have concluded that Jackson Walker's deliberate failure to inform its clients was an ethical breach that we cannot excuse.

31.    The best excuse that JW offers is that the situation was unusual, uncomfortable, and awkward.  That is undoubtedly true.  But rather than confront the embarrassment and risk the future revenue, JW simply attempted to bury the problem.  This does not meet any acceptable standards.  Any time a firm is disregarding the advice of its Ethics Counsel, it is asking for trouble – and should not complain of the implications of its actions.

32.    The inescapable conclusion is that JW's concern about losing the revenue stream outweighed:

- Following the terms of the Retention Order
- Filing proper disclosures
- Advising their clients
- Conducting a proper investigation
- Obeying internal guidelines established to prevent Freeman from working on Jones cases
- Retaining a bankruptcy expert regarding disclosure obligations
- Following the advice of their general Ethics Counsel

33.    Rather than meeting its professional responsibilities, JW, at the very highest levels, participated in the cover-up. In its communications with its PR firm, JW refused to commit itself to the "highest" ethical standards.  Unfortunately, it also failed to meet the minimum standards required by the law.[100] As Judge Isgur observed, JW's actions defiled the "very temple of justice" in which it practiced.

---

[100]  "I would avoid holding us to higher than applicable standards and requirements (i.e., no 'highest standards')." Exhibit 13 at 105.  "We understand the comments about 'highest standards.' Our judgment, for better or worse, is that we need to stay away from that or like phrases." *Id*. at 67.

## VI.    LEGAL ANALYSIS

### A.    JW's Violated Its Professional Obligations

34.    JW is a law firm based in Texas, comprised of attorneys licensed to practice under the laws of the state of Texas, including, among others, the Texas Disciplinary Rules of Professional Conduct (the "<u>Disciplinary Rules</u>") and the Texas Rules of Disciplinary Procedure, as well as specific rules applicable to the courts and jurisdictions in which they are practicing. In the JCP Cases, JW is subject to the rules specified in the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure, the Local Rules of the Southern District of Texas, the Disciplinary Rules, and the U.S. Trustee Guidelines (as well as other sources). *See, e.g*., Bankruptcy Code §§ 327-331; Bankruptcy Rules 2014-2017.

35.    The retention of counsel representing bankruptcy debtors must be approved by the bankruptcy court, which can grant such application only if the attorney/firm (1) does not "hold or represent an interest adverse to the estate" and (2) are "disinterested." Bankruptcy Code § 327; Bankruptcy Rule 2014. In support of an application to be employed as counsel for a debtor, the attorney must file a verified statement identifying all "connections" with the parties in interest. Bankruptcy Rule 2014(a).

36.    A debtor's attorney's obligations do not end once the court approves retention. The attorney's compensation during the case is also subject to court approval. *See*, Bankruptcy Code §§ 328-331; Bankruptcy Rule 2016. The court may deny allowance of compensation if, at any time during the case, the attorney "is not a disinterested person, or represents or holds an interest adverse to the interest of the estate." Bankruptcy Code § 328(c).

37.    Rule 2014 does not require disclosure just for the sake of disclosure, nor is it the limit of counsel's disclosure obligations.  Rather, full disclosure of all relevant facts is required to

ensure that counsel can and do execute their ethical and professional duties throughout the case, that counsel are eligible to be employed and compensated, and that the court itself does not have a disqualifying conflict. Because disclosure and transparency are critical to the integrity and legitimacy of every bankruptcy proceeding, failures to disclose are considered among the most serious ethical violations of bankruptcy lawyers, particularly if they are intentional.[101] Although Rule 2014 does not expressly require disclosure of connections with judges, that Rule is not the limit of counsel's disclosure obligations. Rather, counsel's disclosure obligations arise from this fiduciary duty in addition to the obligations imposed by the Bankruptcy Code, the Bankruptcy Rules, and the Disciplinary Rules. A counsel's duty to disclose "arises not solely by reason of the bankruptcy rules, but also is founded upon the fiduciary obligation owed by counsel for the debtor to the bankruptcy court."[102] The fiduciary duties owed by a professional include the duties of loyalty and care,[103] and in particular, a duty "to disclose any actual or potential conflicts of interest with the estate."[104]

38.     The Local Rules of the Southern District of Texas incorporate the Disciplinary Rules. JW violated these rules by failing to disclose the Relationship. Lawyers "must be ever

---

[101]   *See U.S. v. Gellene*, 182 F.3d 578, 586–90 (7th Cir. 1999).

[102]   *Futuronics Corp. v. Arutt, Nachamie, & Benjamin (In re Futuronics Corp.),* 655 F.2d 463, 470 (2d Cir. 1981) (quotation marks omitted). *See also In re Huddleston*, 120 B.R. 399, 400–01 (Bankr. E.D. Tex. 1990) ("The case law is clear that the burden of disclosure is upon the person making the statement [of qualification for employment] to come forward with facts pertinent to eligibility and to make candid and complete disclosure.") (quotation marks omitted); *In re EWC, Inc.*, 138 B.R. 276, 279 (Bankr. W.D. Okla. 1992) ("[P]rofessionals performing duties for the estate are held to high fiduciary standards, and act as officers of the court."). And section 327(a) "implies a duty of continuing disclosure." In re Granite Partners, LP, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998).

[103]   *In re Hansen*, 220 B.R. 434, 454 (Bankr. N.D. Ill. 1998),

[104]   *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997); *see also In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 712 (Bankr. S.D.N.Y. 2008) (finding that the complaint stated a claim that debtor's counsel breached fiduciary duties by not disclosing relationship with successful bidder at auction); ICM Notes, 278 B.R. at 124 (fiduciary duties of debtor's counsel include "duty to exercise independent professional judgment on behalf of the estate and to disclose any actual or potential conflicts of interest with the estate"). Among other remedies, violation of these duties may "warran[t] a denial of all compensation to debtor's counsel." *Smitty's Truck Stop*, 210 B.R. at 850.

conscious of the broader duty to the judicial system."[105]  All attorneys practicing before this Court "are required to act as mature and responsible professionals" and must comply, as "the minimum standard of practice," with "the Texas Disciplinary Rules of Professional Conduct."[106]  As an office of the court, an attorney has an ethical duty to be honest.[107]  At a minimum JW, breached Disciplinary Rules 3.03 (candor toward the court), 4.01 (truthfulness in statements to others), 5.01 (knowingly permitting ethical violations of another lawyer), and 8.04(a)(6) (assisting judges in violating the law or codes of conduct).

39.  The broad duty of disclosure assists courts and parties with the necessary facts to review employment applications consistent with the Advisory Committee Notes to Rule 5002—which prohibits a bankruptcy judge from approving the retention of an attorney "if that person is or has been so connected with the judge . . . as to make the appointment or employment improper." Fed. R. Bankr. P. 5002(b)—states that professionals should make "appropriate disclosure" under Rule 2014 of their connections with a judge if those connections might render their employment improper.[108]

## B.    JW is Responsible for the Actions of its Lawyers

40.  At the time JW chose to ignore the advice of Ethics Counsel, did not require Cavenaugh and other JW attorneys to supplement already filed disclosures, proceeded to prosecute final fee applications with improper disclosures, and permitted the same misleading disclosures to

---

[105]    S.D. Tex. Loc. R., App. D(A).

[106]    S.D. Tex. Loc. R., App. A, R. 1(A).

[107]    *In re Consol. Bancshares, Inc.,* 785 F.2d 1249, 1258 n.8 (5th Cir. 1986). *See In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) (J. Jones). *See also Gellene,* 182 F.3d at 587 ("[T]he omission of material information in a bankruptcy filing impedes a bankruptcy court's fulfilling of its responsibilities just as much as an explicitly false statement.") (quotation marks omitted) (affirming attorney's conviction for bankruptcy fraud); *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) ("The duty of candor extends beyond not making false statements. An omission may also violate the duty.").

[108]    *See* Fed. R. Bankr. P. 5002(b) advisory committee's note to 1985 amendment.

be filed in new cases, JW endorsed the prior ethical and professional lapses as a matter of law. It has long been black letter law that one joining a conspiracy is liable for all acts of the conspiracy which might reasonably be anticipated, even those occurring before the joinder: "Persons having knowledge of a conspiracy who enter into it after its inception and before its consummation are liable for all acts previously or subsequently done in pursuance thereof."[109] This immemorial common-law principle has been widely accepted[110] and is simply a restatement of another well-settled principle of conspiracy law "that one who knowingly joins a conspiracy even at a later date takes the conspiracy as he finds it."[111]

## C.     JW's failure to disclose the Relationship is an independent ground for disgorgement

41.     The duty to disclosure "connections" under Bankruptcy Rule 2014 is broader than the issue of conflicts and disqualification.[112] A professional has a duty to disclose *all* connections, regardless of whether the connection actually rises to a level that would disqualify the professional from employment under Bankruptcy Code § 327.[113] "The remedy for anything short of full disclosure is denial of compensation and disgorgement of sums already paid. No exceptions are made for slipshodness or good faith. This strict-liability principal is the law across the country."[114]

---

[109]   15A C.J.S. Conspiracy § 19, at 659 (1967), cit*ing, e.g., Standard Oil. Accord*, 12 Tex.Jur.3d Civil Conspiracy § 4 (1981); 16 Am.Jur.2d, Conspiracy § 56 (1979); 1 Eddy on Combinations § 376 (1901)

[110]   *See, e.g., Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970); *Ratner v. Scientific Resources Corp.*, 53 F.R.D. 325, 329 (S.D.Fla.1971), appeal dism'd for want of juris., 462 F.2d 616 (5th Cir. 1972) (per curiam); *Blackstone Industries, Inc. v. Andre*, 232 Ga. 715, 208 S.E.2d 815, 816 (1974),

[111]   *Myzel v. Fields*, 386 F.2d 718, 738 n.12 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968)

[112]   *In re C & C Demo, Inc.,* 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001).

[113]   *Id*. (quoting *In re Olsen Indus., Inc.,* 222 B.R. 49, 60 (Bankr.D.Del. 1997)) ("A court may find a disclosure violation without holding that it would have found the law firm not disinterested given timely and complete disclosure.").

[114]   *In re Chris Petit and Assocs., P.C.*, No. 22-50591, 2022 WL 17722853 *10 (Bankr. W.D. Tex. Dec. 13, 2022) (citations omitted) (emphasis added).

42.     In the JCP Cases, as Judge Parker in *C&C Demo* explained, it was the failure to disclose itself at issue – the timing of inquiry is irrelevant; any lack of intent to hide the connection is irrelevant; consent (or lack of objection to) the retention is irrelevant; the quality of counsel's work or the fact the parties are pleased with the work is irrelevant; the degree to which the bankruptcy cases have progressed is irrelevant.[115] The Court cannot speculate as to whether JW's retention would have ultimately been approved if the Relationship had been properly disclosed, "because the disclosure omission by the Debtor's counsel precluded the Court from independently making that determination."[116]

> It s simply imperative that every doubt which might arise in the mind of a debtor's attorney in this area is construed in favor of disclosure, and every attorney seeking employment under § 327 must exercise dedicated diligence in disclosing and, if necessary, supplementing a prior disclosure, regarding any "connections" which he may have with the debtor, creditors, or other parties in interest or risk the consequences of any failure in that regard.[117]

43.     Bankruptcy courts have the authority and duty to police the disclosure requirements with its sanction power, including to "order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case, regardless of whether the undisclosed connections were materially adverse or only of a *de minimis* nature."[118]

## D.     JW was not disinterested, as a matter of law, because it breached its duties to JCP.

44.     Bankruptcy Code § 101(14) defines "Disinterested Person" as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in,

---

[115] *C & C Demo,*, 273 B.R. at 507-08.

[116] *Id*. at 508.

[117] *Id*.

[118] *Id*.

the debtor, or for any other reason."[119] Thus, by definition, "disinterested person" excludes anyone who possesses an interest adverse to the estate.

45.     As Judge Isgur concluded in the Disciplinary Referral, JW breached its ethical duties to its clients by not disclosing the Relationship to them.[120] When JW breached its ethical duties, it was not "disinterested" as a matter of law. In other words, if JW had a duty to disclose the Relationship at the time it was retained or before it filed its Retention Application, or at any time subsequently, and failed to do so, then the JCP estate held a claim (breach of fiduciary duty) against JW.[121] A professional which the estate possesses a claim against cannot, by definition, be "disinterested."[122]

46.     Since JW, through Freeman, Polnick, Cavenaugh, Graham, or any other JW attorney, knew of the Relationship, JW had an obligation to disclose the Relationship to JCP. Failure to do so means JW was not "disinterested" and was not qualified to represent JCP. Nonetheless, JW went forward with the representation in the JCP Cases and collected large amounts of fees.

## E.     JW had imputed knowledge of the Relationship

47.     The knowledge of an attorney regarding connections with parties-in-interest must be disclosed by the law firm, and the law firm is responsible if the disclosures are not properly made. The actual knowledge of Freeman, Cavenaugh, Polnick, Graham, and other JW attorneys is imputed to JW as a matter of law. As the Fifth Circuit has recently confirmed, the knowledge of

---

[119]  11 U.S.C. §101(14)(C).

[120]  *See* Exhibit 1.

[121]  As Judge Isgur and JW's Ethics Counsel observed, there was a duty to inform the client. This was separate and apart from the duties imposed by the rules and orders of the Court.

[122]  *See* 11 U.S.C. § 101(14)(A) (stating that a disinterested person "is not a creditor"); *See also, In re Pillowtex, Inc.*, 304 F.3d 246, n. 3 (3d Cir. 2002) (holding that if the estate possesses a claim against a professional such professional cannot be disinterested).

an agent (here, the lawyers) is attributed to the principal (here, the firm) for the purpose of liability.[123]

48.     If JW, through Freeman, knew as of 2018 that the Relationship could render it disinterested, potentially making its retention improper, JW had a duty to inform JCP of that fact at the time JCP sought to retain it to file the JCP Cases. It did not do so. JCP paid JW's fees without proper knowledge.

49.     Because Texas law imputes one attorney's knowledge to all those in the firm, JW was obligated to disclose what Freeman knew about Relationship throughout her tenure—before March 2021, between March 2021 and March 2022, and between March 2022 and November 2022, regardless of when others at JW knew definitively of the Relationship. "Texas law imputes one attorney's knowledge to all attorneys in a firm."[124]  Likewise, "[p]artners at firms are . . . charged with knowing about the misdeeds. . .of the attorneys that they employ and supposedly supervise."[125]

## F.     JW Violated the Terms of the Retention Order

50.     The Court entered the Retention Order on July 1, 2020.[126] Notably, the Retention Order required disclosure beyond what is required under Rule 2014.  The Retention Order

---

[123]   *See In re Black Elk Energy Offshore Operations, LLC,* 114 F.4th 343, 354-56 (5th Cir. 2024) (finding that even an agent's knowledge of her own fraudulent acts can be imputed to the principal when those acts are within the scope of the agent's duties).

[124]   *Tesco American, Inc. v. Strong Indus., Inc.,* 221 S.W.3d 550, 553 (Tex. 2006) (reversing appellate decision because one judge had conflict stemming from prior firm's representation of party while she was lawyer with the firm, although she was unaware of it). *Unauthorized Practice of Law Comm. V. Am. Home Assurance Co., Inc.,* 261 S.W.3d 24, 40 (Tex. 2008) ("Texas law imputes knowledge of confidential information to counsel's lawyer-associates so that in a private law firm, all of the lawyers are irrebuttably presumed to have knowledge of the confidential information."); *Nat'l Medical Enters., Inc. v. Godbey,* 924 S.W.2d 123, 131 (Tex. 1996) ("The attorney's knowledge is imputed by law to every other attorney in the firm.")

[125]   *In re Bradley,* 495 B.R. 747, 791 (Bankr. S.D. Tex. 2013) ("Knowledge and actions are said to be imputed to all members of a firm; [the] managing partners, are therefore charged with [the employee attorney's] knowledge and actions.").

[126]   Case No. 20-20182, ECF 963.

29

instructed JW to file a supplemental declaration if "any new relevant facts or relationships are discovered or arise":

> ORDERED that Jackson Walker LLP will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Jackson Walker LLP will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a); it is further

51.     The Retention Order's requirement of continued disclosure is consistent with the law.[127]  After the Retention Order was entered, JW never supplemented the Cavenaugh Declaration to disclose the Relationship. This failure goes beyond an innocent oversight. As discussed above, at least as of the Allegations made on March 6, 2021, Cavenaugh consciously knew that his declarations might be considered false and even spent three hours on March 8, 2021, re-reading his declarations in prior cases.

52.     Apparently ignoring the purpose of disclosure and despite knowing about the Relationship, JW did not supplement its disclosures and instead filed its Final Fee Application[128] on March 10, 2021 (less than 12 hours *after* a hearing in another case that directly related to JW's failure to disclose the Relationship). On April 5, 2021, JW certified the absence of objections to the Fee Application.[129] Even in the face of the Allegations, Jones approved the Final Fee Application on April 8, 2021, approving JW's fees and expenses incurred from the Petition Date through Confirmation, in the amount of $1,101,482.21, without requiring further disclosure. The

---

[127] See, *e.g.*, *C&C Demo*, 273 B.R. at 507, quoting *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.S.D.N.Y.1998) ("Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free.")

[128] Case No. 20-20184, ECF 2739.

[129] Case No. 20-20184, ECF 2854.

Retention Order expressly required JW to supplement its declaration "if any new facts or relationships are discovered or arise." JW did not do so, and the terms of the Retention Order were clearly violated.

53.     Even assuming JW attorneys other than Freeman did not have knowledge of the Relationship until March 6, 2021, at that moment, it had a duty to inform JCP and the Court that it was no longer disinterested, and that, in fact, it had not been disinterested at the time JCP retained JW to represent it.  It did not do so, and, instead, hurriedly sought final approval of all fees incurred during the JCP Cases.  JW made the conscious decision not to disclose the Relationship despite its obligations to do so under the Bankruptcy Code, the Bankruptcy Rules, and the Disciplinary Rules and because of its fiduciary duty. This was willful misconduct by JW.[130]

## VII.    CLAIMS FOR RELIEF

### A.    Cause of Action No. 1 –Breach of Fiduciary Duty

54.     Paragraphs 1-53 above are realleged and incorporated herein by reference.

55.     JW owed fiduciary duties to JCP, including but not limited to duties of loyalty, candor, and full disclosure. As JCP's estate-retained professional in a Chapter 11 bankruptcy proceeding, JW had an obligation to act with the utmost good faith and integrity in all dealings related to its representation.

56.     During the course of its representation, Freeman engaged in an undisclosed intimate Relationship with Jones, the presiding judge in the JCP Cases.  The Bankruptcy Rules, Bankruptcy Code, Local Rules, and the Disciplinary Rules, required disclosure. JW was aware of the

---

[130] *In re eToys, Inc.,* 331 B.R. 176, 187 (Bankr. D. Del. 2005) (holding a knowing failure to disclose a conflict of interest "constitutes willful misconduct").

Relationship and failed to disclose the Relationship at any time during the engagement or JCP Cases.

57.     JW owed a fiduciary duty to JCP. Its failure to disclose the Relationship at the time it was retained by JCP and/or prior to seeking final approval of its fees and its failure to follow court orders concerning its employment was a breach of that duty.[131] To the extent JW claims that it did not know about the Relationship, it is nonetheless vicariously liable for breach of fiduciary duty because it is the employer of the individuals who willfully violated their duties to JCP. Specifically, when Cavenaugh submitted the Final Fee Application knowing the Retention Order had been violated, JW was also liable.

58.     JW's breach of its fiduciary duties to JCP constitute a clear and serious violation of the law.[132] Plaintiff seeks disgorgement of all legal fees paid to JW based on the following factors:

- Gravity and Timing of the Violation: JW breached its ongoing duties when it concealed the Relationship.  The breach occurred before and during the pendency of the JCP Cases, when JW owed its highest duty of loyalty to JCP.

- Willfulness: JW's failure to disclose the Relationship was intentional.  As a partner at JW, Freeman's knowledge of the Relationship is imputed to JW.  JW knew or should have known it was required to disclose the Relationship to JCP, the Court, and other parties in interest.

- Effect on Value of Legal Work: Although JCP does not complain about the quality of the JW's legal work in the JCP Cases, the value of that work has been compromised because of the failure to disclose the Relationship.  The UST has filed a motion seeking to vacate the Retention Order and the Compensation Order, which puts all of the work accomplished in the JCP Cases at risk.

- Harm to Client: JCP has incurred significant expense as a result of JW's breach of its fiduciary duties.  While JW complains that Plaintiff has needlessly incurred "hundreds of thousands of dollars in legal fees actively participating in [the Fee Dispute]," Plaintiff concluded that its participation was necessary in order to protect its right to any recovery obtained by the UST.[133]  In fact, JW

---

[131] *See, generally,* Exhibit 1.

[132] *Thomas v. Hughes*, 27 F.4th 995, 1014 (5th Cir. 2022).

[133] *See* Exhibit 1.

itself suggested to the Court that Plaintiff was a necessary party to the Rule 60B proceedings.

- Adequacy of Other Remedies: There are no other remedies under the law that will make JCP whole. Fee forfeiture is necessary to deter future misconduct.

- Public Interest: The public has a strong interest in maintaining the integrity of the attorney-client relationship and the administration of justice, especially in federal bankruptcy proceedings. Allowing JW to retain fees under these circumstances would undermine public confidence in both the legal profession and the judiciary.

**(i)**     **Disgorgement of fees in the JCP Cases for Failure to Make Rule 2014 Disclosures**

59.     JW's failure to disclose the Relationship as required by the Bankruptcy Code and Bankruptcy Rules, justifies disgorgement of all fees it received from JCP.

60.     As explained by the Fifth Circuit:

> Courts may deny all compensation to professionals who fail to make adequate disclosure, and 'counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.'[134]

"A bankruptcy court should punish a willful failure to disclose the connections ... as severely as an attempt to put forth a fraud on the court."[135]

61.     Full disclosure is mandatory, and less than full disclosure may result in disqualification and denial of all compensation, regardless of whether the undisclosed connections were materially adverse to the estate.[136]

**(ii)**     **Disgorgement of Pre-Petition and Post-Confirmation Fees under Texas Law**

62.     JW's continued failure to disclose the Relationship to JCP and the Court was intentional, flagrant and inexcusable. An attorney's breach of its fiduciary duty to its client may

---

[134] *In re Am. Int'l Refinery, Inc.,* 676 F.3d 455, 465–66 (5th Cir. 2012) (quoting West Delta OilCo., 432 F.3d 355 (5th Cir. 2005)).

[135] *In re Crivello,* 134 F.3d 831, 839 (7th Cir. 1998).

[136] *In re Gulf Coast Orthopedic Ctr.,* 265 B.R. 318 (Bankr. M/D/Fla.2001).

result in disgorgement of the fees paid by the client to the attorney. The primary purpose of disgorgement is to protect relationships of trust by discouraging disloyalty, rather than to compensate the injured party.[137] Courts may order disgorgement of fees or profits wrongfully obtained by the fiduciary as a remedy for such breaches. Id. Furthermore, a client need not prove actual damages to obtain forfeiture fees as a remedy for breach of fiduciary duty.[138]

63.     Based on the conscious and willful actions (and inactions) of JW discussed above, Plaintiff requests full disgorgement of all fees paid to JW in connection with the JCP Cases, including pre-petition, prior to confirmation, and post-confirmation.

**B.     Cause of Action No. 2 – Negligence**

64.     Paragraphs 1-53 above are realleged and incorporated herein by reference.

65.     JW failed to put policies and procedures in place to prevent the failure to make proper disclosures. It also failed to supervise its lawyers to ensure they met their professional and ethical obligations. Even when JW admitted that it heard allegations about the Relationship, it failed to exercise normal care to investigate the facts. As only one example, JW waited months to interview Freeman. JW did not even ask Polnick or other attorneys with knowledge of the Relationship what they knew about it. As a result, JCP was never told of the Relationship by JW.

66.     Disgorgement is a proper remedy for an attorney's violation of disclosure obligations under the Bankruptcy Code and Rules, even if the failure to disclose was due to negligence or inadvertence. *C & C Demo,* 273 B.R. at 507.

---

[137]     *Burrow v. Arce,* 997 S.W.2d 229, 241 (Tex. 1999); *Diakiw v. Stites Mgmt., L.L.C.*, 693 S.W.3d 582 (Tex.App.—Houston [14th Dist.] 2023, pet. denied).

[138]     *Id.*

## VIII.   CONCLUSION

67.     This is not a proud moment for the profession.  JW's actions have cast a pall upon the entire bankruptcy practice.  Each fact that has been developed in this matter has simply made the situation look worse, not better.  The repeated lapses of professional responsibility are damning. What may have started with dissembling led to an active cover-up after Van Deelen found out about the Relationship, and panic ensued.  Lapses that began at lower levels of the firm were formally adopted and endorsed by firm management which intentionally disregarded the firm's duties, and the Ethics Counsel's advice.  As Jones himself once expressed, such actions erode trust in and do great damage to the entire system:[139]

> I think that we all owe a duty to the process.  It's the process that works. It's the professionals in the process that make the process credible or not…
>
> The only thing I want to tell you all is the bankruptcy process itself is extremely, extremely fragile.  It depends upon a level of trust between the Bench and the Bar and the Bench and the professionals that doesn't exist in any other court system.

68.     Despite JW's imputed knowledge of the Relationship at the time JCP retained it, and despite actual knowledge no later than March 7, 2021, JW never apprised JCP of the Relationship and never supplemented its disclosures as required by the Retention Order and the Bankruptcy Code. JW's failure to disclose in and of itself negated the "disinterested" requirement as a matter of law. Instead of issuing a supplemental disclosure, JW proceeded to file the Final Fee Application immediately when news of the Relationship threatened to become public. At a minimum, JW had a duty to inform JCP of the allegations and the potential risk.

69.     JW's failure to properly inform JCP of the Relationship was a breach of its duties to JCP. Its failure to implement proper procedures to avoid or correct the non-disclosure was

---

[139] *In re Westmoreland Coal Co.,* Case No. 18-35672, ECF 3206.

negligent and a breach of its fiduciary duties. The law does not require actual harm to disgorge JW of its fees, and JW's fees paid by JCP should be disgorged in full. In addition, JCP has suffered additional damages as a result of the nondisclosure because of the investigation and various proceedings designed to uncover the depths of JW's actions. JCP should also be awarded those damages.

Dated: May 1, 2025             Respectfully submitted,

                          STREUSAND, LANDON, OZBURN
                          & LEMMON LLP

                   By:  */s/Stephen W. Lemmon*
                       Stephen W. Lemmon
                       State Bar No. 12194500
                       lemmon@slollp.com
                       Rhonda Mates
                       State Bar No. 24040491
                       mates@slollp.com
                       1801 S. MoPac Expressway, Suite 320
                       Austin, Texas 78746
                       (512) 236-9900; (512) 236-9904 (Fax)

                       **ATTORNEYS FOR OLD COPPER
                       COMPANY, INC.**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on this 1st day of May 2025 upon all parties registered to receive such electronic notices in this case via this Court's ECF Notification system.

                       */s/     Stephen W. Lemmon*
                       Stephen W. Lemmon

36



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
515 RUSK AVENUE, STE. 4636
HOUSTON, TEXAS 77002

CHAMBERS OF
MARVIN ISGUR.
UNITED STATES BANKRUPTCY JUDGE

September 20, 2024

Chief United States District Judge Randy Crane
Chambers of Judge Crane
1701 W. Business Highway 83, 9ᵗʰ Floor
McAllen, Texas 78501

      Re: Referral of Jackson Walker LLP

Dear Chief Judge Crane,

I write pursuant to Rule 6 of the Disciplinary Rules of this District. Although Rule 6 deals with referrals of individual attorneys, I write to advise you that Jackson Walker LLP appears to have engaged in conduct that warrants disciplinary action. Rule 11 sanctions may be imposed against "attorneys, law firms or parties." FED. R. CIV. P. 11, as made applicable by FED. R. BANKR. P. 9011. Sanctions may be imposed under the Court's inherent powers "only when it finds fraud has been practiced upon it, or that the very temple of justice has been defiled." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008). If a law firm itself has engaged in such conduct, "... there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith." *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995).

### Background

The initial facts are, unfortunately, well-known to this Court. Elizabeth Freeman, a partner at Jackson Walker, had a secret intimate relationship and shared ownership of a home with then Bankruptcy Judge David Jones. This letter does not suggest that any sanctions are warranted against Jackson Walker because of that relationship itself. Rather, it appears that Jackson Walker breached its own ethical duties after it learned of the relationship. Breaches by the firm itself defiled "the very temple of justice."

I make this referral after having reviewed the facts as pled by Jackson Walker in proceedings filed against it by the United States Trustee. In those proceedings, the United States Trustee is seeking disgorgement or sanctions for fees paid to Jackson Walker.

EXHIBIT 1
Page 1 of 5

Referral Letter to Chief Judge Randy Crane
Re: Jackson Walker LLP
September 20, 2024
Page 2

## Relevant Facts

These are the salient facts that I understand are not disputed by Jackson Walker:

- On May 14, 2018, Ms. Freeman was admitted as a Jackson Walker income partner.

- On January 1, 2021, Ms. Freeman was admitted as a Jackson Walker equity partner.

- On March 6, 2021, Jackson Walker was informed of an allegation that Ms. Freeman was in an intimate relationship with Judge Jones. The following day, Ms. Freeman acknowledged that she had been in a prior intimate relation with Judge Jones during her tenure at Jackson Walker. She denied a present relationship.

- On March 8, 2021, Jackson Walker forwarded an email to Judge Jones' chamber advising Judge Jones of the allegation.

- It appears that Jackson Walker did not advise its affected clients, the Court or opposing counsel of the truth of the allegations about the relationship.

- Jackson Walker immediately retained ethics counsel. At no point after retaining ethics counsel did Jackson Walker inform its affected clients, the Court or opposing counsel of the relationship.

- In one of its briefs defending against relief sought by the United States Trustee, Jackson Walker alleges that: "Yet, the day after learning of Mr. Van Deelen's March 6, 2021 allegations, JW affirmatively confronted Ms. Freeman and asked the very question that apparently was never asked of former Judge Jones. Ms. Freeman affirmatively denied the existence of any current intimate relationship to JW at this time, and continued to deny the existence of an ongoing intimate relationship until March 30, 2022, as discussed below." Once Jackson Walker learned from Ms. Freeman that there had been a prior relationship, its ability to defend its non-disclosure ended.

- A partner at Jackson Walker first learned that there was an ongoing relationship on February 1, 2022. Jackson Walker still made no disclosures to its clients, the Court or opposing counsel.

- On March 29, 2022 (56 days after its partner affirmatively learned of the ongoing relationship), Jackson Walker again asked Ms. Freeman about the relationship. The next day, Ms. Freeman confirmed the existence of the ongoing relationship. Jackson Walker still made no disclosures to its clients, the Court or opposing counsel.

**EXHIBIT 1**
**Page 2 of 5**

Referral Letter to Chief Judge Randy Crane
Re: Jackson Walker LLP
September 20, 2024
Page 3

- Jackson Walker billed approximately $11 million in fees after March 30, 2022 on cases in which Judge Jones was a mediator or Judge. None of the Jackson Walker disclosures or fee applications identify the relationship.

- Ms. Freeman stayed at the firm through December 1, 2022. Between February 1, 2022 (when an independent partner of the firm knew of the ongoing relationship) and December 1, 2022, Jackson Walker made no disclosure to its clients, the Court or opposing counsel.

- During 2022, Ms. Freeman's counsel urged Jackson Walker to amend its disclosures to include references to Ms. Freeman's "close personal relationship" with Judge Jones. Jackson Walker concluded that the proposed amended disclosure did not make adequate disclosure. Rather than enhancing the disclosure so that it was complete, Jackson Walker elected to make no disclosure at all.

- Here are some highlights of actions taken by Jackson Walker on behalf of its clients, without disclosing the relationship to the clients:

  o *In re Basic Energy,* case 21-90002. On August 9, 2022, Jackson Walker filed a disclosure statement and an amended plan at ECF No. 1421. The Disclosure Statement was signed by one of the debtor's directors. It contains no disclosure of the relationship between Freeman and Jones. It does provide Jackson Walker with a release and with an exculpation. The release and exculpation are part of the confirmed plan, so may not be subject to any review (even based on fraud) under § 1144 of the Bankruptcy Code. Jackson Walker now relies on that release and exculpation to defend itself against charges made by the United States Trustee. [1]

  o *In re Strike, LLC.,* case 21-90054. The Debtors filed a plan and disclosure statement on March 23, 2022 at ECF No. 898. The Disclosure Statement was later amended on May 16, 2022. It was signed by the Debtor's Senior Vice President and Treasurer. It contains no disclosure of the relationship between Freeman and Jones. It does provide Jackson Walker with a release and with an exculpation. The release and exculpation are part of the confirmed plan, so may not be subject to any review (even based on fraud) under § 1144 of the Bankruptcy Code. Jackson Walker now relies on that release and exculpation to defend itself against charges made by the United States Trustee.

---

[1] The release and exculpation in this and other cases do contain exceptions for willful misconduct, actual fraud, or gross negligence. It is possible that the exceptions preclude the defenses; but that potential neither justifies the failure to inform their client nor explains the current assertion of the defenses.

**EXHIBIT 1**
**Page 3 of 5**

Referral Letter to Chief Judge Randy Crane
Re: Jackson Walker LLP
September 20, 2024
Page 4

o *In re Sungard AS New Holdings LLC, case 22-90018.* Essentially the same pattern as the previous two cases.

o *In re GWG Holdings, Inc.,* case 22-90032. In this case, Judge Jones was appointed as a mediator on January 5, 2023. Jackson Walker served as Debtor's counsel. After Ms. Freeman's departure from Jackson Walker, the mediation agreement requested that Ms. Freeman serve as Trustee of the Wind Down Trust under the mediated agreement. She was appointed on June 20, 2023. Jackson Walker received both an exculpation and a release under the confirmed plan.

### Identification of Ethical Breaches

#### Breaches to Clients

Jackson Walker could not have ethically determined that the facts that were known to it should be hidden from its clients. Non-disclosure was a firm decision—not the decision of a single lawyer or even a single practice group at Jackson Walker. It is inconceivable that Jackson Walker failed to inform its clients of the situation. After all, it was the firm's duty to place the interest of its clients above its own interest. But, Jackson Walker allowed its clients to affirm the completeness of disclosure statements, to pay Jackson Walker's fees, and to include exculpation and release clauses in confirmed bankruptcy plans all without informing the clients of the relevant facts. Some or all of the clients might have refused to do so for practical reasons. Others might have determined that their own ethical standards would not allow them to wander into the ethics quagmire precipitated by these events. But, Jackson Walker apparently did not inform its clients. I have concluded that Jackson Walker's deliberate failure to inform its clients was an ethical breach that we cannot excuse.

Conversely, I have recently held hearings in which I explicitly asked three potential recipients of any recovered funds whether they wished to pursue any recovery against Jackson Walker. To date, it appears that none of the three have decided to proceed. One has affirmatively made statements affirming that Jackson Walker performed its work admirably. Another has disclaimed any interest in proceeding. A third is not proceeding at this time, but considering matters. It is my present belief that an inquiry in all remaining cases should be made as to whether the parties who would be entitled to any proceeds are seeking any recovery.

I believe that these preliminary reactions should caution the Court to consider the appropriate remedy for the client disclosure breach.

#### Breaches of Court Duties

Jackson Walker affirmatively decided to withhold disclosure from the Court. Its recent papers attack the ethics and asserted lies by its former partner, Ms. Freeman. But, when

**EXHIBIT 1**
**Page 4 of 5**

Ms. Freeman's own lawyer suggested that the firm make a disclosure, Jackson Walker decided that the proposed disclosure was inadequate. Did it beef up the disclosure and make it? No, it did nothing to inform the Court. I reject the concept that Jackson Walker had no duty to inform the Court because Judge Jones, a judge on the Court, obviously knew. Jackson Walker acknowledges that the matter was being kept secret from the Court itself. Indeed, it appears that Jackson Walker's silence and discussions may have been in violation of the Texas Disciplinary Rules prohibiting the assistance of a judge from violating his own duties.

Throughout, it is apparent that Jackson Walker concluded that it had no duty of candor to this Court. It is intolerable that Jackson Walker protected the Jackson Walker firm to the exclusion of its inherent professional responsibilities.

### Breaches to Opposing Parties and Counsel

With respect to opposing parties, Jackson Walker decided not to make disclosures as well. Jackson Walker had (perhaps unknowingly) made misleading or false representations to the Court and opposing counsel. When it learned the truth, it did nothing to correct its prior statements.

This issue may also require some caution. In most instances the creditors in cases are now in control of whether to bring actions by reorganized debtors against Jackson Walker. As set forth above, they appear to be deciding not to pursue matters. I am aware of only two instances in which creditors have voiced complaints and indicated their desire to move forward. The problem in those instances is that the confirmed chapter 11 plans may bar the creditors from seeking independent relief. Because these kinds of breaches should not be allowed without scrutiny, I believe that it is appropriate for the Court to conduct an inquiry and determine an appropriate remedy.

### Recommendation

I recommend that an inquiry be commenced under Rule 6.

Sincerely,

Marvin Isgur

c.     Nathan Ochsner, Clerk of Court

       S.D. Tex. Bankruptcy Judges

**EXHIBIT 1**
**Page 5 of 5**

# In The Matter Of:

*In Re: Professional Fee Matters Concerning*
*The Jackson Walker Law Firm*

_____

*Deposition of Matthew D. Cavenaugh*
*August 30, 2024*

_____

EXHIBIT 2
Page 1 of 8

Page 137

1   letter.
2   A.  Uh, I don't think that's right.  I don't think I
3   received it, uh, until Wednesday, but I'm -- I'm not
4   sure.
5   Q.  Let's just say Tuesday or Wednesday.  So I don't
6   want to quibble over that.
7   A.  Okay.
8   Q.  The documents will speak for themselves on that.
9   But either Tuesday or Wednesday you received an
10  anonymous letter after you had received -- after you had
11  filed the, uh, the motion to seal, correct, roughly?
12  A.  Uh, I'm not sure I received it, but I -- I know
13  I saw it.  Either it was a virtual hearing and I think I
14  saw it on the -- on the screen.
15  Q.  Okay.  All right.  So you saw it.  You became
16  aware of it.
17  A.  Yes.
18  Q.  Did Van Deelen just show up with it in court and
19  just say, This is what I'm relying on?
20  A.  I think it was all virtual, but yes.
21  Q.  Subsequent to that, that period of time, and
22  we're talking about five days roughly, did you ever
23  contact Judge Jones' chambers to ask him about that?
24  A.  Uh, no, I don't believe so.
25  Q.  You never had any sort of conversation with

Page 138

1   Judge Jones regarding the allegations that were being
2   made in either the anonymous letter or in the email that
3   you received from Van Deelen?
4   A.  And what's the timeframe?
5   Q.  Uh, in the -- in we're talking about March 6th
6   through March 9th or 10th of 2021.
7   A.  Uh, no.
8   Q.  Okay.  After -- after that, did you make any
9   contact with Judge Jones regarding the veracity of that
10  letter?
11  A.  Uh -- uh, not regarding the veracity of the
12  letter, no.
13  Q.  Did you have any contact with him regarding the
14  nature of the communication from Van Deelen, either the
15  email or the letter?
16  A.  No.
17  Q.  So you've never discussed it with him.
18  A.  Uh, I don't believe so.
19  Q.  Did you ever have any conversations with
20  Elizabeth Freeman -- I think you testified earlier that
21  she didn't come in on that Monday, but did you ever have
22  any conversations with her regarding the veracity of the
23  allegations?
24  A.  Yes.
25  Q.  When?

Page 139

1   A.  Uh, following the recusal hearing.
2   Q.  Okay.  So that the recusal hearing took place on
3   the 9th or 10th.
4   A.  Correct.
5   Q.  It would have been following that, but how soon
6   after that?
7   A.  Uh, that same day.
8   Q.  What did she tell you?
9   A.  Uh, that there had been a relationship in the
10  past.  It was, uh, long ago.  It was not ongoing.  And
11  that she had not even seen Judge Jones in person for a
12  year by that point because of COVID.
13  Q.  Does Elizabeth Freeman have kids?
14  A.  Yes.
15  Q.  Where do they live?  Where did they live at that
16  time?
17  A.  Uh, with, uh, Ms. Freeman or Ms. Freeman's
18  ex-husband.
19  Q.  Okay.  And where did -- what was your
20  understanding as to where Ms. Freeman lived?
21  A.  Either at a house in town or, uh, there was a
22  river house on the San Jacinto River that she spent a
23  great deal of time at.  I'm not sure which one she
24  considered her primary residence, but yeah.
25  Q.  And at that meeting when you met with her, I

Page 140

1   want you to describe it to me.  Was it that face-to-face
2   meeting where you asked her those questions, was it in
3   the hallway or where was it?
4   A.  Uh, it was, uh, either by phone or by FaceTime.
5   I was still quarantined.
6   Q.  And who initiated the call?
7   A.  Uh, I don't remember.
8   Q.  Well, you had already been through a hearing,
9   correct?
10  A.  Correct.
11  Q.  Okay.  And then you reach out to her and there's
12  a communication that took place.  How soon after that
13  hearing?
14  A.  Uh, I believe it was shortly after that hearing.
15  Q.  A day?  Two days?  Do you know?
16  A.  Oh, it was the same day.
17  Q.  And what did you tell her about the hearing?
18  A.  Uh, I told her what happened at the hearing.
19  Q.  Okay.  Did you tell her about the anonymous
20  letter?
21  A.  I mean if, uh, I mean it was discussed.  I don't
22  know if I told her about it.  I think she already knew
23  about it.
24  Q.  What did she say about it?
25  A.  Uh, that it was false.

Case 4:23-cv-00758-O-BP Document 90-2 Filed on 09/25/24 in TXSD Page 45 of 371
In Re: Professional Fee Matters Concerning
The Jackson Walker Law Firm

Deposition of Matthew D. Cavenaugh
August 30, 2024

Page 293

```
1    MR. PEÑA: All right.  I pass the witness.
2    EXAMINATION
3    BY MR. LEMMON:
4  Q.  Mr. Cavenaugh, I'm Steve Lemmon.  I represent
5    the plan administrators and JCPenney.  I'm going to go
6    as fast as I can and so I'm going to be skipping around
7    a little bit.  And I'm going to apologize in advance.
8      Let me ask you first how long have you
9    been friends with Liz Freeman?
10 A.  Uh, since around 2005.
11 Q.  Did you know Liz during the time that she was at
12   Porter Hedges working with David Jones?
13 A.  Yes.
14 Q.  Would you consider yourself one of her best
15   friends at the law firm?
16 A.  Yes.
17 Q.  Who else would you consider to be really good
18   friends with Liz?
19 A.  Veronica Polnick.  Genevieve Graham.
20 Q.  Okay.  Do you have, sitting here today, any
21   understanding of the timeline of Liz' relationship with
22   David Jones?
23 A.  Not, uh, a clear timeline, no.
24 Q.  Is it -- is it and has it been your
25   understanding since you knew that there was an intimate
```

Page 294

```
1    relationship, uh, is it and has it been your
2    understanding that it was an on again, off again
3    relationship?
4  A.  Again, I just don't know, uh, the nature and
5    extent.  What Liz told me was, is that there had been
6    one in the past.  It was over a long time ago.  So I
7    just don't know any more specifics than that.
8  Q.  So I want to ask you about your understanding of
9    their relationship in the context of the duty to
10   disclose in bankruptcy from a court retained
11   professional.  And does the, uh, nature of the
12   relationship at different times historically mean
13   anything to you as far as your duty to disclose?
14 A.  Under, uh, Rule 2014?
15 Q.  Yes, sir.
16 A.  I -- I don't think so.
17 Q.  When I read the Jarvis opinions, uh, it strikes
18   me that Jarvis never speaks in terms of the bankruptcy
19   duties to disclose from court retained professionals.
20   Would you agree with me about that?
21 A.  Yes.
22 Q.  To your knowledge was Jarvis ever asked about
23   the bankruptcy duties to disclose?
24 A.  I don't know.
25 Q.  You do recall that in the June 2nd memo, June
```

Page 295

```
1    2nd of '22, that Mr. Jarvis opines on the firm's duty to
2    make disclosures to clients?  You recall that?
3  A.  Yes.
4  Q.  Now, in your opinion is the duty to make a
5    disclosure to the client equal to, less than, or the
6    same as the duty to make a disclosure to the court?
7  A.  Uh, I think they're separate duties.
8  Q.  And do you believe that the duty is stronger,
9    weaker, or the same?
10 A.  I'm sorry, could you repeat that question?
11   Yeah.
12 Q.  So the duty that Mr. Jarvis talks about --
13 A.  Yes.
14 Q.  -- to make a disclosure to the client, is that
15   equal to, lesser than, or more than the duty to make a
16   disclosure to the court?
17 A.  I don't know because I think they're different.
18   Uh, they're just different.
19 Q.  So let me ask you who have you consulted with?
20   I'm not -- I'm not asking about attorney-client
21   privilege issues, but who have you consulted with about
22   the duty to make disclosure?
23 A.  Uh, pursuant to Rule 2014?
24 Q.  Yes, sir.
25 A.  Uh, members of the, uh, of the firm.
```

Page 296

```
1  Q.  Okay.  Like Mr. Ruzinsky would be one probably,
2    right?
3  A.  Correct.
4  Q.  Okay.  Now, when -- you knew Liz when Liz was
5    Judge Jones' law clerk, right?
6  A.  Yes.
7  Q.  And, uh, did she ever send you texts about
8    cases?
9  A.  Uh, that I was working on?
10 Q.  Yes, sir.
11 A.  No, sir.
12 Q.  Okay.  So she never advised you stay away from
13   this issue or you might want to go into this issue.
14 A.  No, sir.
15 Q.  Okay.  Now, I'm going to -- I'm going to ask
16   maybe four or five questions about texts and I'm going
17   to -- I'm going to make it clear that in asking these
18   questions about texts, I'm not interested in any texts
19   about bar functions or about social issues or things
20   like that.  I'm only interested in the issue of whether
21   there were communications regarding cases.  Okay?
22 A.  I understand.
23 Q.  So let me ask you this.  Were there ever, to
24   your knowledge, in any of the cases that you worked on
25   texts exchanged with, uh, Judge Jones regarding the
```

EXHIBIT 2
Page 3 of 9

Page 297

1  substance of cases?
2  A.  No, sir.
3  Q.  To your knowledge were there any, uh, texts ever
4  exchanged with Mr. Alonzo regarding cases?
5  A.  Yes.
6  Q.  And what would be the nature of those texts?
7  A.  Uh, it would typically be to obtain a, uh, a
8  setting time or to ask for procedure on how to file a
9  particular motion.
10  Q.  Now, I'm not pretending to be an expert on this
11  issue, right, but I want to explore with you just very
12  quickly the issue of the nature of an ex parte
13  communication with, uh, the judge's clerk versus the
14  issue of an ex parte communication with the judge.
15  A.  Okay.
16  Q.  All right?  And, uh, and for purposes of this --
17  these questions I want to exclude any instances in which
18  the judge is a mediator.  All right?
19  A.  Okay.
20  Q.  I just want to know about cases that are pending
21  in front of the judge.  And in this case let's just talk
22  about Judge Jones.  Okay?
23  A.  Okay.
24  Q.  To you and to your understanding is there a
25  difference between having an ex parte communication with

Page 298

1  the judge's clerk versus having an ex parte
2  communication with the judge?
3  A.  Uh, yes, I think there it's -- I consider them,
4  uh, to be one in the same, that it's a communication
5  with chambers.
6  Q.  So in other words, you would think that it's
7  improper to have an ex parte communication about the
8  substance of any legal issue with Mr. Alonzo, right?
9  A.  Without, uh, the other counsel being present on
10  the communication?
11  Q.  Right.
12  A.  Correct.
13  Q.  Okay.  And to your knowledge, that never
14  happened.
15  A.  Not to my knowledge.
16  Q.  Now, I want to ask about emails.  To your
17  knowledge were there ever any ex parte emails sent to
18  Judge Jones?
19  A.  Uh, talking about the substance of a case
20  pending in his court?
21  Q.  Talking about a case pending in his court.
22  A.  Not to my knowledge.
23      MR. LEMMON: What's the next exhibit
24  number?  I know that we've been --
25      MS. SMITH: We've been doing separate.

Page 299

1      MR. LEMMON: Okay.  Well, I'm just going
2  to do my own then.  I'll feel special.  And I'm going to
3  label this Exhibit 1.  I'm going to label it JCP Exhibit
4  1 and I'll -- whoops, I've written on the other copy.
5      (Whereupon, JCP Exhibit No. 1 was marked.)
6      MR. PEÑA: Do you have other copies to
7  share?
8      MR. LEMMON: I do.  I do.
9      MR. PEÑA: Thank you.
10      MR. LEMMON: This is the only -- look,
11  could you pass this one to him?
12      MR. JENKINS: I will.
13      MR. LEMMON: And I've got one for you
14  guys -- and y'all have seen this -- and one for you
15  guys.
16      MR. BOLAND: Right here.  Thank you.
17  Q.  So, Mr. Cavenaugh, I've -- we've handed you
18  what's been marked as JCP Exhibit 1.  It is a document
19  that was produced in this case.  It bears the Bates
20  labels JW 7267 through 7271.
21  A.  I see that.
22  Q.  Okay.  And you'll see that it's an email from
23  Ms. Freeman at her work email account to David Yahoo.
24  And so let me start by asking do you recognize that, uh,
25  Yahoo address, ccc -- ccd5274?

Page 300

1  A.  Uh, not to -- not as I sit here.
2  Q.  Okay.  To your knowledge, you've never sent an
3  email to that email account, right?
4  A.  Uh, I think I recall back in the, uh -- in
5  the -- whatever the period was where I was, uh, the
6  guest at the, uh --
7  Q.  At the Fifth Circuit Conference?
8  A.  -- at the Fifth Circuit Judicial Conference that
9  I received, uh, a -- an email from Judge Jones that was
10  not his, uh, Southern District of Texas email.
11  Q.  Yes, sir.
12  A.  And there may have been a reply to that and that
13  may have been that email address.
14  Q.  But with the exception of that, you don't think
15  you've ever emailed this account before?
16  A.  No, sir.
17  Q.  Okay.  And have you ever seen this, uh, Exhibit
18  1 before?
19  A.  Uh, yes.
20  Q.  When have you seen it?
21  A.  I saw it in preparation for my deposition here
22  today.
23  Q.  Okay.  Good.  So you do know that this was sent
24  about 40 minutes before the first day hearing started in
25  JCPenney's.

Page 301

```
 1  A.  I don't recall, uh, the exact date for the first
 2      day hearing, but that seems, uh, around that time, yes.
 3  Q.  So the first day hearing in JCPenneys took place
 4      on a Saturday.  It was unusual.
 5  A.  Yes.
 6  Q.  And you remember that everything was virtual
 7      because it was during COVID, right?
 8  A.  Yes.
 9  Q.  Matter of fact, I think the whole case was
10      virtual; is that right?
11  A.  I think that's right.
12  Q.  Okay.  And, uh, I'll tell you that I've looked
13      and, uh, I'm pretty darn sure that the hearing started
14      at 1 o'clock and this was sent at 12:20.  So the first
15      time you were aware that this was sent was, uh, in
16      preparation for this deposition, right?
17  A.  Yes.
18  Q.  You think it was appropriate to send this email?
19  A.  Uh, I don't know.
20  Q.  Okay.  Have you looked to see if there were any
21      other ex parte communications that took place with Judge
22      Jones regarding JCPenney?
23  A.  Uh, in connection with preparing for the
24      deposition and providing documents to counsel pursuant
25      to the document request, uh, yes.
```

Page 303

Designated Confidential

Page 302

```
 1  Q.  And have you found any other ex parte
 2      communications?
 3  A.  Not to my knowledge.
 4  Q.  Has anyone ever told you that they exchanged
 5      texts with Judge Jones about cases other than cases
 6      where he was a mediator?
 7  A.  No.
 8  Q.  Okay.  I'm going to ask you, uh, a question, and
 9      it's my understanding from your testimony before that as
10      of March of '21 —
11  A.  March of '21.
12  Q.  — when you first found out that Liz had had a
13      prior relationship with Judge Jones, right, that, uh,
14      from that time forward, that Liz didn't receive any of
15      the firm profits relating to JCPenney — or, I'm sorry,
16      relating to any of the cases in front of Judge Jones.
17      Right?
18  A.  That's my understanding.
19  Q.  I want to ask you about originations.  And I'm
20  
21  
22  
23  
24  
25  
```

Designated Confidential

Page 304

Designated Confidential

EXHIBIT 2
Page 6 of 8

In Re: Professional Fee Matters Concerning
The Jackson Walker Law Firm

Deposition of Matthew D. Cavenaugh
August 30, 2024



Page 305

Designated Confidential

Page 307

Designated Confidential

20 Q. Now, back to, uh, (flipping pages) this
21   conversation that you had with, uh, Ms. Freeman, I
22   believe it was. And I'm not going to go through the
23   whole timeline again, but I believe your testimony is
24   that, uh, in March of '21 you heard directly from Liz
25   that she and David had had an intimate relationship in

Page 306

Designated Confidential

Page 308

1   the past, right?
2 A.  Uh, I don't recall the word intimate, but she
3   did say that they had had a relationship in the past,
4   yes.
5 Q.  And did you take that to be a romantic
6   relationship?
7 A.  It -- yes.
8 Q.  Did you have an understanding as to when that
9   relationship, uh, had happened, what she was referring
10  to?
11 A.  Only that it was long in the past.
12 Q.  Okay. Now, we've seen a number of documents --
13  and I don't want to pull them all up again -- that refer
14  to that document as having ended when COVID kind of
15  incepted in March of '20. Do you recall that?
16 A.  Uh, which document or the --
17 Q.  There were -- there were a number of them that
18  you went through with Mr. Peña.
19 A.  Yes.
20 Q.  And, uh, what I'm getting to is this, and that
21  is, uh, did you have a general assumption that the --
22  that she had a romantic relationship with Judge Jones in
23  whatever form, maybe on again, off again, but that that
24  had ended in March of '20?
25 A.  It -- yes, that there had been a, uh,

Min-U-Script®

EXHIBIT 2
Page 6 of 8

BEHMKE REPORTING AND VIDEO SERVICES, INC.
(415) 597-5600

(77) Pages 305 - 308

Page 309

1 relationship, but that it had ended long before, uh,
2 March of 2020, but I -- I did not know how long before.
3 Q. And I understand and I understand that the
4 nature -- I understand the nature of the problem that
5 you and your co-workers were faced with. All right?
6 And so I understand and I'm not asking too many
7 questions, but I want to make sure that I understand
8 what you understood --
9 A. Okay.
10 Q. -- as of '21. All right? And so what you're
11 saying is -- and correct me if this isn't fair. All
12 right? What I think you're telling me is, look, I knew
13 that it had ended before March of '20, but I didn't ask
14 too many questions to find out when it ended exactly.
15 A. She'd indicated that it was long before March of
16 2020, and I did not, uh -- that -- that was -- I didn't
17 ask any follow-up questions for that.
18 Q. So in other words, you didn't ask whether long
19 meant a month, a year, or whatever. It just didn't come
20 up.
21 A. No, she had said she hadn't even seen him in
22 person since the onset of COVID and that, uh, that was
23 in addition to it had been long in the past. So to me
24 it was much longer than before March '20 -- March of
25 2020.

Page 310

1 Q. So I'm going to -- I'm going to now ask just a
2 couple more questions about that, about what your
3 knowledge was in '21 when this popped up. And -- and my
4 question is about the language that shows up in Mr.
5 Cowlishaw's letter to Mr. Jarvis and then is repeated
6 back in Mr. Jarvis' letter in '21. And it's very
7 specific, and it says that, uh, that Liz says that she
8 does now and she has not in the past lived with
9 David Jones.
10 Do you remember that?
11 A. Yes.
12 Q. So what I want to know is what was the source of
13 that? Were you told that by Liz?
14 A. Yes.
15 Q. And -- and so I want you to just be very
16 specific in what she told you and when she told you.
17 A. Okay.
18 Q. Can you be specific and tell me as much as you
19 can recall what were the words she said and when did she
20 tell you?
21 A. Uh, that she, uh, did not live with Judge Jones,
22 that they had not even seen each other for over a year.
23 Q. And what about the part about they'd never lived
24 together, how did that come up?
25 A. Uh, I don't recall.

Page 311

1 Q. Did you ask her whether she had lived or was
2 living with Jones? Or -- or did somebody ask her or did
3 she just volunteer that?
4 A. She volunteered to me that she did not live with
5 Judge Jones.
6 MR. HARDIN: May I? You didn't get the
7 when. Do you want the when, too? You asked for both,
8 how and when.
9 MR. LEMMON: Yeah. Yeah, I -- that's a
10 good point.
11 Q. Now, was this -- was this I believe you said
12 March 30 of '21?
13 A. No, this would have been around March 10 of '21.
14 Q. March 10 of '21. Okay.
15 A. Yes.
16 Q. And, uh, so just after the hearing took place.
17 A. Yes.
18 Q. Now, I want to -- I want to shift away from that
19 time period and I want to go to what you know now,
20 right, about the relationship. And I know that you
21 don't know exactly when they were together or what the
22 nature of the relationship was, but you did learn again
23 in '22 that, uh, in fact, she had rekindled her
24 relationship with Judge Jones and that, uh, in fact, she
25 was living with him.

Page 312

1 A. No, sir.
2 Q. Okay. I got that wrong. Now, correct me,
3 please.
4 A. Yes. I learned that she had, uh, resumed a
5 relationship with Judge Jones that is also in March of
6 2022 when I learned about, uh, the right of survivorship
7 for the house that she lived in --
8 Q. Uh-huh.
9 A. -- but she continued, uh, to deny that they were
10 living together at that time.
11 Q. Okay. Now, I'm going to ask you the same kind
12 of question. Can you recall exactly what she said, and
13 you know, what were the circumstances of her telling you
14 that?
15 A. Uh, yes. She said that she was being asked
16 questions by members of the firm about their living
17 situation. She said they did not live together. She
18 said that, uh -- she made a reference to a -- the
19 survivorship agreement for her house, but said that that
20 was just an estate planning vehicle and that they did
21 not live together and that he had no financial interest
22 in that house.
23 Q. An estate planning vehicle for who?
24 A. I don't know.
25 Q. So did you have the impression that this was an

Min-U-Script®

EXHIBIT 2
Page 7 of 8

BEHMKE REPORTING AND VIDEO SERVICES, INC.
(415) 597-5600

(78) Pages 309 - 312

**Page 313**

1  estate planning vehicle where she could leave the house
2  to David?
3  A.  Uh, or -- yes.
4  Q.  JCPenney's filed in the middle of May, 2020 and
5  it was confirmed in I think late November of '20.
6  A.  That, uh, that sounds right.
7  Q.  To your knowledge were David and Liz living
8  together during the case at any time?
9  A.  Not to my knowledge.
10 Q.  (Flipping pages.)  Why was Liz terminated?
11 A.  Uh, I don't know if, uh, she was terminated or
12 resigned or separated, but she -- she separated from the
13 firm.
14 Q.  From reading the emails it looks to me like you,
15 Matt Cavenaugh, were given the delicate job of trying to
16 find out what Liz exactly was going to do.
17 A.  Yes.
18 Q.  And that -- and so when were you first kind of
19 given that task?
20 A.  Uh, sometime after March of 2022.
21 Q.  Okay.  Was it in June of '22 or before June?
22 A.  I don't remember.
23 Q.  Okay.  I don't want to go into excruciating
24 detail, but can you describe for us generally what you
25 did, uh, on behalf of the firm to interact with Liz to

**Page 314**

1  find out what -- what course she was going to take?
2  A.  I encouraged her to hire counsel and that, uh, I
3  served as a go-between between Mr. Kirkendall and the
4  firm and, uh, sometimes between for myself and Ms.
5  Freeman, but it was primarily through, uh, Mr.
6  Kirkendall.
7  Q.  So -- and I don't want to dig it up right now
8  'cause I don't want to stay here any longer than we have
9  to, but do you recall some emails where finally, uh, at
10 some point in November -- it was fairly late in the
11 game -- you finally discerned that Liz was going to go
12 start her own practice?  Right?
13 A.  Yes.
14 Q.  And you reported that back to the firm, right?
15 A.  Yes.
16 Q.  Can you tell us about the circumstances of how
17 you found that out?
18 A.  Uh, it was shortly after my meeting in November
19 of, uh, '22 when I met with Judge Jones in his chambers
20 and he provided that form of disclosure that we talked
21 about earlier.
22 Q.  Uh-huh.
23 A.  And after I discussed it with Mr. Ruzinsky and,
24 uh, Mr. Cooper, I discussed it with Liz.  And she
25 indicated that she did not want to make that disclosure

**Page 315**

1  and that she would be separating from the firm.
2  Q.  Now, let me be clear that she didn't want the
3  firm to make that disclosure or she didn't want Judge
4  Jones to make that disclosure?
5  A.  Uh, I don't know.
6  Q.  The disclosure that Judge Jones gave you --
7  A.  Yes.
8  Q.  -- in that meeting, was that for the firm to
9  make or for Judge Jones to make?
10 A.  For the firm.
11 Q.  Did Jones explain why he didn't want to make
12 disclosures?
13 A.  Uh, yes.
14 Q.  And it was because of, uh, there were a number
15 of other people that he had relationships with and he
16 didn't know where the disclosures would stop?  Is that a
17 fair way to put it?
18 A.  Uh, he maintained that it was his disclosure
19 obligation and his alone and that, uh, he, uh, did not
20 think it was necessary to do.
21 Q.  Okay.  Because this is -- this is important and
22 I'm sorry to go over it again.
23 A.  That's okay.
24 Q.  I just want to make sure I've got it down.  So
25 you get called back into Judge Jones' chambers.  You go

**Page 316**

1  in there.  He apologizes to you for the position that
2  this put Jackson Walker in.
3       Does he say, uh, You shouldn't let Liz go?
4  Y'all will be making a big mistake?
5  A.  No.
6  Q.  Okay.  And -- but he does say, uh, the part
7  about disclosure.  He feels like, uh, it's his decision
8  whether to disclose, but if Jackson Walker wants to make
9  a disclosure, here's a sample disclosure.  And he hands
10 you a piece of paper, right?
11 A.  Correct.
12 Q.  Did you go into any of the details of the
13 disclosure with him at that time?
14 A.  Uh, I don't think so.
15 Q.  Okay.  Now, I'm not trying to put words in your
16 mouth, right?  I'm just trying to figure out what
17 happened.  Were you surprised and stunned and so you
18 weren't in a position to have that discussion with him?
19 A.  Like most conversations with judges, they're
20 usually not two way.
21 Q.  Okay.  Fair enough.  At what time did you learn
22 that the firm had made a decision that it wanted to
23 separate from this?
24 A.  Uh, I -- I think it was around that same time in
25 November of 2022.

EXHIBIT 2
Page 8 of 13

# In The Matter Of:

*In Re: Professional Fee Matters Concerning*
*The Jackson Walker Law Firm*

---

*Albert Alonzo*
*September 18, 2024*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California 94104*
*(415) 597-5600*

Original File 43334AlonzoUSTP_nl.txt
**Min-U-Script® with Word Index**

**EXHIBIT 8**
**Page 1 of 2**

Page 65

1 Q. So intimate?
2 A. Uh-huh.
3 Q. Sexual?
4 A. Close, personal relationship is what I would
5 say, you know, two adults in the office. Kind of mind
6 your own business kind of thing, you know what I mean.
7 Q. What about their -- where they lived? Do you
8 believe that they -- boyfriend/girlfriend, are they
9 spending the night at each other's house; or did they
10 actually live together? What did you understand in
11 2013?
12 A. In 2013, you know, I don't know. I don't know
13 where she lived. I know he lived in Hunters Creek. But
14 they drove in separately. They left separately.
15 Q. Do you know why they drove separately?
16 A. No. I don't know why they drove separately.
17 Q. After this revelation did you have the occasion
18 to speak with Ms. Staples or Ms. Miller about the
19 relationship?
20 A. You know, not that I can -- I have no
21 recollection of saying anything to them about it. It
22 was just kind of business as usual. And that's kind of
23 how it was left. It's like nothing will change in
24 chambers, and nothing did.
25 Q. And were you worried that it would change the

Page 66

1 dynamic in chambers if there was a relationship between
2 Ms. Freeman and Mr. Jones?
3 A. Was I worried? No. I wasn't worried.
4 Q. Were there -- to your knowledge, were there
5 times where the relationship was rocky or things weren't
6 going well in their relationship?
7 A. Early on, or throughout the whole time?
8 Q. Say 2013 when you learned about it. So go to
9 2014.
10 A. No. I mean, at least when they came into
11 chambers, I never saw them -- I never saw a change from
12 the day she told me to the day she left.
13 Q. Did she ever tell you that the relationship had
14 ended or was old?
15 A. No.
16 Q. So you assumed the entire time that she worked
17 for the judge that they were in a relationship?
18 A. I did.
19 Q. Did you and Ms. Freeman share inside jokes
20 about Mr. Jones?
21 A. About his mom jeans. But inside jokes like
22 what?
23 Q. You know, just sort of rubbing him or sort
24 of -- like sort of, Oh, that's Jones or, you know, just
25 sort of --

Page 67

1 A. Nobody in chambers is off-limits to a joke,
2 Jones included. But, I mean, nothing that stands out
3 like she and I had a thing like that, you know.
4 (U.S. Trustee's Exhibit 220 was marked for
5 identification.)
6 BY MS. STEELE:
7 Q. Let's go to Exhibit 220. We'll show it on the
8 screen, too, Mr. Alonzo. You don't have to mess around
9 with the very large binder there.
10 All right, Mr. Alonzo. Would you e-mail
11 with Ms. Freeman at her Jackson Walker account?
12 A. Yes.
13 Q. And you still had a relationship with
14 Ms. Freeman after she left chambers in 2018. Is that
15 correct?
16 A. Yes, ma'am.
17 Q. Exhibit 220 is an e-mail that's from
18 Ms. Freeman to you at your uscourts account. And it
19 states "Subject, Legacy Reserves LP."
20 Have you seen this e-mail before? Are you
21 familiar with it?
22 A. I mean, it clearly has my e-mail address on it,
23 so I obviously have seen it.
24 Q. Okay. Do you know what this e-mail -- so
25 starting in the middle of the page there, on June 18,

Page 68

1 2019 it looks like Ms. Freeman is forwarding to you a
2 reorg article on Legacy Reserves. Do you see that?
3 A. Yes, ma'am.
4 Q. And then you reply -- or I'm sorry. You reply
5 on June 18, 2019 at 7:44 p.m., "Jones got the second
6 filed case which will be the lead. Isgur got the
7 first."
8 Do you recall sending this message to
9 Ms. Freeman?
10 A. No, I don't recall.
11 Q. On June 19, 2019 at 12:50 a.m., she goes,
12 "Yeah, I thought you'd find that funny."
13 Do you know why she thought you would find
14 this funny?
15 A. No. I mean, if you give me more context or
16 maybe I can see who's on Legacy or something. But just
17 looking at this, something that's sent five years ago, I
18 don't really get the context yet.
19 Q. When Liz told you about their relationship, did
20 you make some comment that, you know, it made sense that
21 the two of you could stand each other?
22 A. I mean, I'm sure I would have said that. That
23 sounds like something I would have said.
24 Q. And what did you mean by that, that you two can
25 only each other?

EXHIBIT 8
Page 3925600

**In The Matter Of:**

*In Re: Professional Fee Matters*
*Concerning Jackson Walker Law Firm*

---

*Veronica A. Polnick*
*October 3, 2024*

---

*Behmke Reporting and Video Services, Inc.*

*550 California Street, Suite 820*

*San Francisco, California 94104*

*(415) 597-5600*

Original File 43413PolnickUSTP_nl.txt

**Min-U-Script® with Word Index**

**EXHIBIT 4**
**Page 1 of 4**

In Re:  Professional Fee Matters
Concerning Jackson Walker Law Firm

Veronica A. Polnick
October 3, 2024

Page 133

1  Q.  Ms. Freeman is a trial lawyer and litigator;
2  right?
3  A.  Yes.
4  Q.  And she's upset by somebody saying she's
5  having an affair with the Judge to this point?  Did
6  that seem reasonable to you?
7  A.  Yes.
8  Q.  All right.  Well, then the last thing is,
9  "Trying to.  She's got her brave face on, but it's just
10  a face."
11     Do you see that, where you respond to that?
12  A.  Yes.
13  Q.  It'd be fair to say that you and Liz Freeman
14  were very close friends at that point in March of 2021.
15  Wouldn't that be a fair statement?
16  A.  We were close friends, yes.
17  Q.  As a matter of fact, you were so close that
18  when you saw her in distress, you reached out to her
19  and then reached out her and reached out her to make
20  sure was okay emotionally; right?
21  A.  I was checking on her, yes.
22  Q.  All right.  Let's go to page 166.  Let's start
23  almost at the middle of the page.  I don't want to
24  waste too much time.  But let's start right there.
25     And it says, "Sent you the motion."

Page 134

1     Correct?
2  A.  Yes.
3  Q.  Oh, this is on Monday at 12:25.  Okay.  What
4  are you sending to Mr. Cavenaugh?
5  A.  I believe it's the Motion to Seal.
6  Q.  Okay.  Let's talk about that.  So who drafted
7  the Motion to Seal?
8  A.  Matt and I did.
9  Q.  As a matter of fact, a fair statement is that
10  you drafted it and he approved it; right?
11  A.  No.  I think we both drafted it.
12  Q.  Okay.  Well, who took the first shot at it --
13  first draft?
14  A.  Probably me.
15  Q.  All right.  And then what was the process
16  after the draft was generated?  Did it go to Matt
17  Cavenaugh for review?
18  A.  Yes.
19  Q.  And he -- certainly at some point, he's going
20  to be signing the thing, so he's gotta approve it;
21  right?
22  A.  Yes.
23  Q.  Where did you get the facts associated with
24  the Motion to Seal and what it would contain?
25  A.  I don't remember.  I haven't seen the

Page 135

1  motion --
2  Q.  Well --
3  A.  -- since 2021.
4  Q.  All right.  Well, let's go there.  Let's go to
5  page 270 and it's what's been marked as trust -- US
6  Trustees Exhibit 138.
7  A.  Page 270?
8  Q.  Yes.  Go to 270.  And I'll get there in just a
9  second.
10     (Exhibit 138 was marked for
11     identification.)
12     BY MR. PENA:
13  Q.  All right.  All right.  Do you -- are you
14  there on the paper copy?
15  A.  Yes, I am.
16  Q.  All right.  Do you see that document?
17  A.  Yes.
18  Q.  Is that the document that was generated as a
19  result of your conversations with Matt Cavenaugh that
20  weekend?
21  A.  Yes.
22  Q.  All right.  And this is filed in the McDermott
23  case; right?
24  A.  It is filed in an adversary proceeding
25  within the McDermott case.

Page 136

1  Q.  All right.  But it certainly involves the
2  McDermott case.  Is that a fair statement?
3  A.  Yes.
4  Q.  Let's go to page 2 of that document.
5  A.  Okay.
6  Q.  All right.  So it says in Paragraph 5,
7  "McDermott seeks authority to file these communications
8  and their response thereto under seal."
9     Do you see that?
10  A.  I do.
11  Q.  Okay.  What are the Van Deelan communications,
12  as far as you know?
13  A.  The email and the anonymous letter.
14  Q.  All right.  So, at that point, when this was
15  filed, you had the anonymous letter also.  Did you have
16  the envelope that went with that?
17  A.  I did not.
18  Q.  Okay.  Was that subsequently provided to you?
19  A.  Not that I remember.
20  Q.  Okay.  And then here in Paragraph 6, "The Van
21  Deelan communications contain defamatory statements and
22  should be sealed pursuant to 11 USC,
23  Section 107(b)(2)."
24     What defamatory statements did the Van
25  Deelan communication have in it?

BEHMKE REPORTING AND VIDEO SERVICES, INC.
(415) 597-5600

(34) Pages 133 - 136

Page 137

1 A. At minimum, that there was a trading of
2 sexual favors for rulings. But there were likely
3 others.
4 Q. All right. What about the romantic
5 relationship? Did you consider that to be a defamatory
6 statement when you wrote this?
7 A. I don't remember.
8 Q. All right. Well, let's go to page 40 of the
9 exhibits, and it's going to be marked as Exhibit No. 5,
10 but it's on page 40.
11      (Exhibit 5 was marked for
12      identification.)
13      BY MR. PENA:
14 Q. Let's see if we can get there quickly. Oh,
15 right here on the page before that -- on the page
16 before that -- if you could go to page 39.
17 A. Sure.
18 Q. Here's the communication between yourself,
19 David Jones, and Liz Freeman with regards to, "General
20 Order 2021 - Filing Sealed Documents."
21      Do you see that?
22 A. Yes.
23 Q. And he's responding directly himself; correct?
24 A. It looks like he sent the initial email,
25 yes.

Page 138

1 Q. Okay. Was it common practice for yourself or
2 Liz Freeman to reach out directly to the Judge to get
3 forms that are available on a website?
4 A. I don't think that's what's happening here.
5 Q. Okay. What's happening here then?
6 A. I believe that he was asking us to
7 circulate a new general order that had just been
8 issued.
9 Q. Circulate to whom?
10 A. To the bar.
11 Q. And what position did you have relative to the
12 bar that would allow you to do that?
13 A. Liz was on the complex case committee, I
14 believe.
15 Q. And you?
16 A. I was just her associate.
17 Q. All right. Okay. So let's go to this
18 exhibit. It's on page 40, and it's marked US Trustee
19 Exhibit No. 5. And let's work through this. Okay.
20      The third paragraph -- and I've got my
21 cursor on it on the screen in front of you -- says
22 -- and correct me if I'm wrong -- "The romantic
23 relationship between Judge Jones and Elizabeth
24 Freeman is publicly known, and because of that, the
25 largest corporations and the clients willingly

Page 139

1 choose to work with JW lawyers, knowing that they
2 will likely have the Court and the Judge in their
3 favor."
4      Do you see that?
5 A. I do.
6 Q. Okay. There's a reference to the romantic
7 relationship between Judge Jones and Elizabeth Freeman.
8      Do you see that?
9 A. Yes.
10 Q. Okay. Did you ever ask Elizabeth Freeman if
11 she was in a romantic relationship with Judge Jones?
12 A. No.
13 Q. Why?
14 A. I didn't think her personal life was my
15 business, so I didn't ask her.
16 Q. All right. Three weeks later or four weeks
17 later, you're having a conversation with her about her
18 personal life, and now you're telling me that you
19 didn't think it was your business?
20 A. I didn't ask her about it that night
21 either.
22 Q. All right. But you reached out her to make
23 sure she was okay, and you -- at least, according to
24 your testimony -- were making jokes about her
25 relationship between Judge Jones and Elizabeth Freeman;

Page 140

1 correct?
2 A. I was making jokes with her, not about
3 their relationship, but just to lighten her mood,
4 yes.
5 Q. And as a matter of fact, this is the reason
6 that she was distressed from that point all the way up
7 until the end of April when you were consoling her;
8 right?
9 A. I don't know.
10      THE COURT REPORTER: Can you repeat that
11 response, please?
12      THE WITNESS: Oh, I said I don't know.
13      BY MR. PENA:
14 Q. Let's go back to page 166 and finish that line
15 of questioning -- 166, yes. All right. I think that
16 we left -- okay. We were talking about the motion.
17 And then you say, "Order and notice coming."
18      Do you see that? Is that a --
19 A. Yes.
20 Q. -- "yes"?
21 A. Yes. Sorry. Was taking a sip of water.
22 Q. All right. So you have a motion, you have an
23 order and notice. Are -- you're drafting them and
24 sending them to Matt Cavenaugh; correct?
25 A. Yes.

EXHIBIT
Page 3 of 4

In Re: Professional Fee Matters
Concerning Jackson Walker Law Firm

Veronica A. Polnick
October 3, 2024

---

Page 353

1 Q. Okay. Now, did you -- did you have occasion
2 at any time to -- I think you talked about it -- to go
3 and look on the real estate records to see about who
4 owns what? Well, not who owns what, but Judge Jones?
5 A. I did not.
6 Q. Okay. Now, did you ever learn anything about
7 a joint tenancy or anything?
8 A. Yes.
9 Q. When did you learn that?
10 A. Somewhere between 2017 and '18.
11 Q. And what was the occasion for you learning
12 that?
13 A. I looked up Liz Freeman in the property
14 records and found that agreement.
15 Q. Okay. And why were you doing that?
16 A. At that time, I was curious to see where
17 she lived.
18 Q. Just because -- she was -- or what -- why were
19 you curious?
20 A. Yeah. I was curious as to where she lived
21 and whether she had a house somewhere on the west
22 side of Houston.
23 Q. Okay. All right. And so when did you do that,
24 did you do it for any other reason, just that -- or
25 just that reason itself?

---

Page 354

1 A. I think this was around the time that we
2 saw the HAR listing for Judge Jones' old house.
3 Q. All right. And I was also curious as to
4 whether she was on that property or not? Okay. And
5 was she?
6 A. No.
7 Q. All right. And then at the end of the day,
8 when you -- what did you -- what was your view or
9 understanding of their living arrangements at the time
10 of March 6, '21 when Mr. Van Deelan sent his
11 allegations?
12 A. I did not have one.
13 Q. You hadn't even thought about it?
14 A. No.
15 Q. Did you have any knowledge one way or the
16 other?
17 A. No.
18 Q. Now, the final thing I have, really, for you
19 is, did you ever tell anyone in management about
20 anything having to do with the Judge Jones and her
21 relationship with Ms. -- his relationship with Ms.
22 Freeman?
23 A. Sorry. No, I did not.
24 Q. Did you ever -- were you ever involved in
25 any -- I may just do it with two or three just straight

---

Page 355

1 questions.
2 A, just what I just asked.
3 A. No.
4 Q. I would understand you've never ever told
5 management any of the information that we're now
6 talking about?
7 A. No.
8 Q. No?
9 A. No, I didn't.
10 Q. Did you ever?
11 A. No, I did not ever.
12 Q. That's my fault.
13 A. Sorry.
14 Q. The way I asked the question. All right.
15 And were you ever in any conversations that
16 management, before March of '22, had -- anybody in
17 management -- had any knowledge of the nature of the
18 relationship that was rekindled in '22 until they
19 were informed?
20 A. I'm sorry. Could you do that one more
21 time?
22 Q. It's a horrible question.
23 A. I'm sorry.
24 Q. I don't want to repeat it, but you may. It's
25 too bad.

---

Page 356

1 What I really mean is -- was that, do you
2 know of anybody in the management position in
3 Jackson Walker that before January or February of
4 '22 had any idea that they were having a current
5 sexual, romantic relationship?
6 A. No. I'm not aware of anyone in management
7 that knew that.
8 Q. And were you ever in any conversations with
9 anyone in management that indicated any of them knew
10 anything about that?
11 A. No.
12 Q. Were you then or after that [sic] of any
13 attempts by management to decide how to come to grips
14 with the issue?
15 A. No.
16 MR. HARDIN: If you give me -- not 10, not
17 15, but 5 minutes, and -- to just -- to gather stuff
18 here, and then we'll -- I think I'm just about
19 through.
20 MR. PENA: That's reasonable. We'll see
21 you in 5 minutes.
22 MR. HARDIN: Five minutes. Very good.
23 THE COURT REPORTER: Okay. It's 5:45.
24 We're off the record.
25 (Recess taken.)

---

EXHIBIT
Page 4 of 4

Messages · Michael ▊▊▊▊▊

> We had dinner for over 3 hours. She is really cool, but her career seems up in the air right now.

So is yours

> True, but she will likely go back to Brazil.

6/13/2016 10:31:08 AM

> Any feed back from her?

6/13/2016 8:28:12 PM

She had a great time. Seems at a very uncertain point in life. Maybe she got a job offer today.

> Ok.

Try to hit it before she leaves town.

> Not sure she is that into me, but think she enjoyed dinner. I will try to stay in touch with her. Are we still on for Sat? Alex has basketball game and then I can get a sitter for a few hours. Liz is headed to NC to pick up Jones.

No. Saturday is off. Now my parents are flying in Saturday. Keeps getting more complicated.

I think she likes you but has a lot of open issues

Maybe she will get a job here.

> Bring your Dad out. He can be the wingman that you have always failed to be.

My mom is coming too

They arrive at 5

EXHIBIT _109_    PLTF.    DEFT.
WITNESS _N. Simms_
CONSISTING OF _26_    PAGES
DATE _08-08-24_
BEHMKE REPORTING AND VIDEO SERVICES, INC.

6/15/2016 11:51:24 AM

Dude we are at brc

> Deviled eggs all the way around

6/17/2016 1:30:50 PM

> When are you guys going to Chama? I made reservations for me and kids Sunday at 5:30.

*U.S. Trustee's Exhibit 109*

UST_3631

**EXHIBIT 5**
**Page 1 of 26**

Messages Bryan S. & Gary



goin' on here in h town fo Week.

Gary

Gary

6/21/2019 11 37 57 PM

Bryan S
I resemble that remark

6/22/2019 2:41:36 PM

So Dume, if you buy a place in Livingston, could I keep an RV up there - assuming I get drunk enough one weekend to make a purchase? You would be free to gently soil it if so and I could pay for power usage with BBQ/Wine.

Kids said that the Liz/Jones casa is in a gated community called cape royale.

Bryan
That there's an RV Clark. But don't go falling in love with it. We'll be taking it with us when we leave next month

*U.S. Trustee's Exhibit 109*

**UST_3632**

**EXHIBIT 5**
**Page 2 of 26**

Messages · Bryan S███████, Gary█████

Bryan S. Dumesnil



https://youtu.be/lr4jKevcm-M

Gary█████
Wait. Why is Dume buying a place in Livingston?

Yeppers

Bryan S█████
Maybe. Just thinking about it.

Bryan S█████
To be closer to Liz

Gary█████
That makes sense.

8/28/2019 12:40:23 PM

Are you guys going to Dove Hunt? They picked weekend of Auburn game and Raiders have Sunday Noon game. If you guys don't go, I will probably skip as well.

Gary█████
I'm not sure yet. Have to talk to Carrie. We were planning on going to CS for Auburn game.

Guessing it's too much of an ass whipping to do both and Sunday am hunts are hit or miss. Maybe we can request a diff weekend?

Gary█████
I could ask McGriff when their hunt is, and maybe we could tag on?

*U.S. Trustee's Exhibit 109*

UST_3633

**EXHIBIT 5**
**Page 3 of 26**

Messages - Bryan S          Gary

10/8/2023 10:47:19 AM

Bryan S

Bankruptcy Judge Jones Named in a Lawsuit Over Romantic
Relationship With Local Lawyer https://www.wsj.com/articles/bankruptcy-
judge-jones-named-in-a-lawsuit-over-romantic-relationship-with-local-
lawyer-71df2c00

Bryan S

Jones hasn't formally responded to Van Deelen's claims in court and
declined to comment on the merits of the lawsuit. He also said he was
under no obligation to recuse himself from cases involving Jackson
Walker or Freeman's new solo firm, the Law Office of Liz Freeman.

"If for any reason I thought that I should have done something more, I
would have done it," the judge said. "I'm certainly not afraid of my
relationship, I just simply think I'm entitled to a certain degree of privacy.
I and I alone made the call that so long as she never appeared in front of
me, that was sufficient."

Bryan S

Jones said that he would have had a recusal obligation for cases
involving Freeman's firm only if they had been married and had
communal property. Judge Jones owns the home in Houston which he
and Freeman reside in, and pays utilities and other expenses on the
home

Gary George

That sucks. Worried about how my kids will react.

Bryan S

Are they aware that this was a possibility?

Going to be a rough week.

https://www.businessinsider.com/prison-health-provider-corizon-
bankruptcy-clouded-by-judge-romantic-relationship-2023-10

Bryan S

I'm afraid this is going to get ugly if Jones digs in

*U.S. Trustee's Exhibit 109*

UST_3634

**EXHIBIT 5**
**Page 4 of 26**

Messages - Gary ▮▮▮

Haha. Me too. I hate the niners more than any team outside of the nfc east

1/16/2022 7:53:52 PM

That was brutal, you guys are too talented to have a coach like that.

Terribly coached all year. Its worth it if Jerry fires that fat piece of shit.

1/17/2022 4:03:07 PM

Any word on whether he is on the hot seat? Jerry was way too patient with last coach.

Stephen Jones said this afternoon that he does not expect a change. Total bullshit.

Such a waste of a talented roster on both sides of the ball. Think of how good they would be with Shanahan or Mcvay.

Yep. But shanahan and Mcvay won't kiss Jerry's ass

1/31/2022 6:43:47 PM

Is Liz still living with Jones?

Yes

3/9/2022 7:18:07 PM

Send that Kraft text to the Murdock string. Hilarious.

3/28/2022 2:46:59 PM

Can you call me? Both of our names have apparently come up at JW's deal with Liz.

*U.S. Trustee's Exhibit 109*

**EXHIBIT 5**
**Page 5 of 26**





Who reached out to you from JW?





Sorry again.

*U.S. Trustee's Exhibit 109*

**UST_3636**

EXHIBIT 5
Page 6 of 26

Messages - Gary ███████



3/20/2022 7 49 13 PM

Anything new on your end?

3/29/2022 10 38 14 AM

I left Ross a message this morning. I'll let you know after I talk to him.

3/29/2022 7 24 57 PM

Please give me a call when you get a chance

3/29/2022 8 31 16 PM



Just saw this. Been at a dinner with Sandy Pierce.

*U.S. Trustee's Exhibit 109*

UST_3637

**EXHIBIT 5**
**Page 7 of 26**

Messages - Liz (Liz) C. Freeman

4/15/2020 10:24:41 AM



4/16/2020 1:58:52 PM

So Holden is coming in today?

Yep

Rae is grabbing him. She's on her way home

4/17/2020 8:01:08 PM

Alex mentioned he might be at the lake for a week. What's the plan?

Whut? No plan.

Jones will come back Sunday

I'm working from here.

The kids are driving each other nuts, so keeping them apart is all good

Ok. Rae is at your place swimming with friends.

Yes. She asked if that was ok

Saw her come in on camera

4/18/2020 1:33:30 PM

How far is your Livingston place from Onalaska? One of my fraternity brothers in Vegas just moved there.

*U.S. Trustee's Exhibit 109*

UST_3638

**EXHIBIT 5**
**Page 8 of 26**

Messages - Liz (Liz) C. Freeman

Very close

What in the heck is he doing there?



> Retired from Vegas Metro police. Was CSI specialist. Maybe his wife has family nearby.

Ah. Gotcha.

Not a bad place to retire.

4/18/2020 3:46:49 PM

> How is Alex doing? Looks like storms headed your way.



Cool. We're fishing

*U.S. Trustee's Exhibit 109*

*UST_3639*

**EXHIBIT 5**
**Page 9 of 26**

Messages - Liz (Liz) C. Freeman

4/19/2020 8:47:16 AM

Storms supposed to hit really hard late this am including possible tornadoes north of Houston.

Yeah. They are starting to roll in

A wave of storms is about to hit here

Yeah. I see that on the radar

Rae is sleeping at your house

Boys went fishing a couple of times yesterday.

Yes. She had several girls over

They were swimming past midnight

She called me at Midnight but I was already asleep.

Ah. She called me too

Woke me up

4/19/2020 12:41:45 PM

Have boys decided to stay up there?

Yes. They are going to hang here a while

Ok

4/19/2020 4:27:59 PM

Just sent you an email from Alex's biology teacher. Alex told me he was caught up last week.

Grr.

Little butthead. I'll get him on it. Got the same email from Rae regarding environmental studies

Rae is on her way to your house on Rolla to meet Carmen. Her mom called the police about damage to Carmen's vehicle.

*U.S. Trustee's Exhibit 109*

*UST_3640*

**EXHIBIT 5**
**Page 10 of 26**

Messages - Liz (Liz) C. Freeman

> Yes, Dume said he did his on his southwest card and wrote himself a check. She has about $252k in two accounts. It's about 85% bonds/ short term now. Not the best return but better than trying to find cash now to pay for college.

5/19/2021 6:52:12 PM

How many tux do you need for graduation?

Mom, dad and I are going

I see no need to make Al go

> Just me but I think Alex should go. I think Jack will be working.

> I don't have any issue if Jones wants to go.

He's going to let it be a family night

5/21/2021 6:43:11 PM

> I was going to leave with Alex at 7.

> Rae probably won't walk until 9 pm plus.

Ok

> His girlfriend will be there, which is why he bought new clothes.

Hahahaha

Got it

5/21/2021 8:19:57 PM



*U.S. Trustee's Exhibit 109*

UST_3641

**EXHIBIT 5**
**Page 11 of 26**

Messages - Liz (Liz) C. Freeman

**The boy is up in the stands with his buddies**

5/23/2021 9:22:05 PM

What was the name of the storm where all of us at Waterhill banded together? Covered the tarp before?

Ike



5/27/2021 10:20:57 AM

Alex didn't submit his name for the parking lottery and he will not be able to park at the school next year. We will need to find some alternate parking for him or see if he can ride with a friend. The principal's office said that they have been making announcements on this for the last month.

5/27/2021 8:35:47 PM

I sent a text to David Wall to see if he had an available spot and offered to pay in cash or in bbq.

*U.S. Trustee's Exhibit 109*

UST_3642

**EXHIBIT 5
Page 12 of 26**

Messages - Liz (Liz) C. Freeman

We traded our old ones in.

I give my old ones to my parents

It should have been waterproof

Or was it cracked?

Don't know

9/12/2021 2:10:30 PM

Alex is not feeling well. He rarely complains. Any chance you or Jones or fam could take him to clinic?

Sure

Probably a cold but could be Covid b/c too early for flu season.

He's reluctant to go, how soon can someone meet him at the clinic?

I talked to him

It's rag weed

I told him to take an antihistamine and decongestant.

I will take him when I get back

I'm out on the boat with Adam and Madhavi

It's not. I will call Ron.

How far away are you - he's going to Entrust now.

I am at the lake

We were in Onalaska in the boat

9/13/2021 9:27:43 AM

Have you spoken to Alex this am? He's not answered when I called.

9/13/2021 12:05:35 PM

Pretty sweet that Rae told me she really misses Alex.

*U.S. Trustee's Exhibit 109*

UST_3643

**EXHIBIT 5**
**Page 13 of 26**

Messages - Liz (Liz) C. Freeman

> I bet Rae will love that. Alex asked for some SAT prep and was going to check advantage Testing's availability or see if his tutor offers that as well. I prepaid for sessions and Alex has only had one so far this Semester.

3/3/2022 3:33:31 PM

> Might trade in my truck. Can sell to you if you are interested and they low ball me. Less than 20k miles on replacement engine, one of last steel ones and over $3k in lights/front camera.

Haha

What are you asking for it?

> Just enough over their offer to cover sales tax and hassle. Probably $26-27k. Trucks my year without upgrades were $29-$35k on car gurus retail.

> They offered me $22500. Tax savings are 1400. I might run by car max.

3/4/2022 6:44:15 PM

> Car Max offered $25k, they will spend $500 on replacing front tires and they will probably list it for $31k.

That's great

Just had sushi with Rae

3/11/2022 12:16:19 PM

I'm trying to get into Vanguard

A reset email just got sent to you

3/11/2022 1:52:30 PM

> Sorry, have been out getting oil changed. I will have to be at my laptop b/c of spam filter. I can do it this evening or tomorrow am.

> Did you ever log into your Fidelity one?

No. Have t been able to get into it either

> I think you can call Fidelity and they can reset. User name was _____ think. I can see if yours still show up when I look at combined statements. I haven't had online access to the accounts since early 13.

*U.S. Trustee's Exhibit 109*

UST_3644

**EXHIBIT 5**
**Page 14 of 26**

Liked "I think you can call Fidelity and they can reset.  User name was
█████████ I think.  I can see if yours still show up when I look at
combined statements.  I haven't had online access to the accounts since
early 13.  "

3/12/2022 8:20:16 PM

We need to have a quick call tomorrow am to discuss scheduling etc.

Ok

I can talk in 10 mins if you have time

Sure

Thank you

Our convesaffions will not be shared with anyone and we can label this
as attorney client privileged.  We have two great kids and I will protect
them no matter what.  I will cover whatever you need me to do.

That's.

Thanks

I'd never ask you to fudge

I just won't

I am curious how this came to you. It's odd

I will tell you that I don't appear on Jones matters

We're free that line.

And we don't discuss them

I have friends in strange places and normally never interfer.  But I did this
time.  I was a sked not to say anything but I couldn't stand by with the
mom  of my kids.

Got it

Did this friend know the situation?

Or were they asking you?

*U.S. Trustee's Exhibit 109*

UST_3645

**EXHIBIT 5**
**Page 15 of 26**

Messages - Liz (Liz) C. Freeman

3/13/2022 11:22:42 AM

I can call you. No one has asked me anything.

Cool

3/14/2022 8:22:36 PM

Your son is. A human garbage disposal

He ordered two chicken strip lunches.  He ate them both.

Then fed again a few hours late.  And just ate again.

3/17/2022 12:35:12 PM

A plane just made it in. We may just get outta here

3/17/2022 2:11:22 PM

Has Alex made it to the airport yet?

He's waiting for the shuttle

It's a five minute drive

He's in the security line

Alex is at the gate. The plane he is on took off from Denver.

So far so good

3/17/2022 4:08:27 PM

Cool

His plane made it to Aspen

It currently shows on schedule.

He's kinda proud of himself for his solo ski day, transit to airport and travel

That's great.

He's boarding now.  He's planning on grabbing a Lyft home

Ok, hopefully Rae didn't lose his car keys.

Page 540 of 809

*U.S. Trustee's Exhibit 109*

*UST_3646*

**EXHIBIT 5**
**Page 16 of 26**

Messages - Liz (Liz) C. Freeman

Let's home not

She has a bunch of papers due tomorrow

Have you noticed if she's been working on them?

> Don't think so, she just took my car keys and is off to the mall.  I will ask her.

Ok

I offered to edit

She needs to get that stuff done and down we'll

It's her ticket out

Alex is in flight. He's set to land just after 7

3/17/2022 7:16:37 PM

The boy landed

> Cool

3/20/2022 9:17:08 AM

I'm on a call

Rae missed her flight

3/20/2022 4:35:05 PM

I suggested to Alex that he might want to clean up his room because it's incredibly disrespectful to you for it to be in the condition it's in.

Might want to pile on.

3/20/2022 6:17:44 PM

> He took some out last night.  I've been on him for a month.  I just told him maid's not coming to your room till it's done.  Didn't work.

I cleaned it out some when we were looking for my credit card

It was disgusting

Moldy food and all manor or horrors

*U.S. Trustee's Exhibit 109*

**UST_3647**

**EXHIBIT 5**
**Page 17 of 26**

Messages - Liz (Liz) C. Freeman

Make him ride the bus

He might clean it



3/21/2022 9:40.33 AM

We're at the airport

Problems with Raes test

Finally got it just now. But it's not in a form we can upload

We got it

Uploading now

We're through security

Hardest.  Tripp.  Ever

3/21/2022 12:06:38 PM

Geez, hopefully be worth it when  you get there.

She better enjoy it or else!



This has been bananas

She did get upgraded to first class but gave it to me

Kinda a waste.

She better have!

We're taking off.

Thanks for the help in getting Rae together

Page 542 of 809

*U.S. Trustee's Exhibit 109*

*UST_3648*

**EXHIBIT 5**
**Page 18 of 26**

Messages - Liz (Liz) C. Freeman

NP, have fun

3/28/2022 2:23:04 PM

I haven't called her back yet. Do you know anything about her? I don't recall having any dealings with her at Jenkens.

**Hold please**

**I'll call you in a few**

Ok

**She's calling you about me / Gary █ info.**

Do you want me to not return the call or just tell her I don't know anything?

**Can you not return it just yet?**

**Can you visit later tonight?**

I won't call her until we talk. I am fine with not returning her call.

**Thx.**

**By the way, You didn't tell me Gary. They did. You're clear**

If you want to talk to Gary - his cell is █████████ He will keep everything confidential and neither of us will talk to JW about anything.

**Thanks. I don't want to bug Gary. I feel bad that he's in the middle of this**

He will help in anyway that he can

3/28/2022 4:48:51 PM

Let me know if you want to have a call with me and Gary. JW knows that we won't be involved and will not be talking to Julia or anyone else at JW.

FYI - I can talk to Julia if you want me to and will chat with you before hand.

*U.S. Trustee's Exhibit 109*

UST_3649

**EXHIBIT 5**
**Page 19 of 26**

Messages - Liz (Liz) C. Freeman

Thanks. I'll noodle on it.

I'm pretty cranky. I need to settle down

I really. Really really appreciate your support

> No worries, it's bullshit. I will tell them whatever you want to tell them. PH and other firms would hire you in a second.

3/29/2022 4:05:19 PM

> Can you send me Alex's proof of insurance so I can get him a registration sticker?



3/29/2022 7:43:01 PM

> If you decide to leave JW, I would support you coming to PH 100%.

That means a lot

> I just spoke to Gary and he didn't know anything about Rae's party thing and obviously wouldn't have spoken to Ross about it. He says you can call him if you want.

3/31/2022 9:49:47 AM

> Do you have the renewal notice for Alex's registration? If so, I can a new sticker from Kroger v. Harris county tax office.

Page 544 of 809

*U.S. Trustee's Exhibit 109*

**UST_3650**

**EXHIBIT 5**
**Page 20 of 26**

Messages - Liz (Liz) C. Freeman

**I didn't get one. Which was weird**

3/31/2022 11:05:37 AM

Alex's truck has been inspected and I put a new registration sticker on it.

3/31/2022 12:19:22 PM

**Thanks so much**

I called to schedule his driving test appointment and they asked if he finished all of the online chapters. She said they do it after the permit is issued and site is called aceable"?

**Uh. He did do it all.**

**He might remember** the site

He will have to print out a certification to take the test. The lady said DPS is not as backed up as it was last year and in 2020.

**Cool**

4/2/2022 11:18:11 AM

I am going to buy a catalytic converter cover for Alex's truck. His truck is one of the most targeted by thieves. Bryan junior had his stolen at same parking lot that Alex goes to 6 days a week. Cost $3000 for Bryan to get it fixed. Cover costs $367 and Texas express can install.

**Good idea**

4/11/2022 1:22:42 PM

I will sell ▮▮▮▮ in the next day or so and transfer $ to you for apartment. I paid the tuition a while ago. She had a ▮▮▮ scholarship from ▮▮▮ all in for Freshman year will be about ▮▮ (including her laptop). All the $ so far has come from her Fidelity account v. the College Invest account.

**Cool**

4/13/2022 6:37:38 PM

Feel free to edit this request - "This is for a friend with another firm - Please let me know if you can recommend someone with maritime/ admiralty experience to assist with a bankruptcy filing with those and related issues, such as Jones Act cases."

*U.S. Trustee's Exhibit 109*

UST_3651

**EXHIBIT 5**
**Page 21 of 26**

Messages - Liz (Liz) C. Freeman

Rae and Alex and I talked about a gift. You'll have to go willing with Rae to the store to pick out the size. .

Allen Edmonds is now making a dress shoe with a rubber sole. They look great. Cavenaugh tore his Achilles and now will wear only these

Kids thought you'd like them too

Wow, thanks very much!

6/19/2023 2:33:23 PM

Is it okay if you guys keep Alex's truck at your place? We can only keep one vehicle in front of the house and it has to have a parking tag.

Yes. I suggested that to Rae today.

Liked "Yes. I suggested that to Rae today."

Do you have kids winter clothes? They have some at my house I think. Supposed to be pretty cold for next week in Australia. Lows in mid 40's.

Uh. Maybe. Send them
Over to look

Rae said she will, Alex is in Gavelston and probably won't pack until an hour before we leave.

Idiot

6/19/2023 7:19:17 PM

How much would you charge for a storage unit? I am eventually going to declutter and may have Jack do some of it when we get back.

Nothing

I don't have climate controlled storage

Not yet

If it's stuff that can go into a building, and heat is ok, sure thing. Tons of space

It's mostly old army stuff and mom's stuff. Does Jones or your dad like old electronics? I have two pieces here and two more with Trace in Vegas. Morantz receiver is best piece but also have tec record player. Tried to sell them but would rather they go to someone who would appreciate what they are.

*U.S. Trustee's Exhibit 109*

*UST_3652*

**EXHIBIT 5**
**Page 22 of 26**

Messages - Liz (Liz) C. Freeman

I'll ask



*U.S. Trustee's Exhibit 109*                    UST_3653

**EXHIBIT 5**
**Page 23 of 26**

Messages - Liz (Liz) C. Freeman



*U.S. Trustee's Exhibit 109*

UST_3654

**EXHIBIT 5**
**Page 24 of 26**

Messages - Liz (Liz) C. Freeman

6/20/2023 1:14:53 PM

Partner Retreat Canceled

I wasn't going to this anyways b/c of Oz trip. Didn't realize it was going to hit PR.

Assume your parents aren't there.

They are not

They have a guy watching their boat

Cool

6/21/2023 11:27:42 PM

How's Winnie doing? She's quickly become my fav.

6/22/2023 12:25:08 AM

Haha. She's greT

Also. Great

She and my pup play great

She sleeps next to me every night and she's a sweetheart.

6/22/2023 6:51:42 AM

Winnie is doing great. She and Rosie have been playing nonstop.

*U.S. Trustee's Exhibit 109*

UST_3655

**EXHIBIT 5**
**Page 25 of 26**

iMessage
6/17/2023 2:37:51 PM

Also, thanks for organizing a place for the draft

No worries, might need your help in case I can't get finalized.

You'll get it done

There is also the steakhouse at circus circus, decent and a bit cheaper considering it's in such a shithole

A lot of riff raff around that hotel.

Certainly. Cab in and cab out...

6/27/2023 8:42:08 PM

If you're awake down under, I've got a case that's going to mediate with the chief bankruptcy judge of the SDTX (David Jones) . Do you know him or have any advice about him? Case is pending before BK judge Christopher Lopez of the SDTX. Any thoughts there?

You should call Dume.

Done. Thanks for pointing me the right way.

How is the penal colony?

Sorry for asking the wrong person (Dume told me). Fuck him.

He did me a favor.  No ill will.  Weather is awesome here and kids having a blast with cousins.

Great! Keep enjoying it. And encourage your kids to keep challenging the locals to drinking contests.

*U.S. Trustee's Exhibit 109*

*UST_3656*

**EXHIBIT 5**
**Page 26 of 26**

**In The Matter Of:**

*In Re:  Professional Fee Matters Concerning*
*The Jackson Walker Law Firm*

---

*Deposition of Nicholas A. Simms*
*August 8, 2024*

---

*Behmke Reporting and Video Services, Inc.*
*550 California Street, Suite 820*
*San Francisco, California  94104*
*(415) 597-5600*

Original File 43139SimmsUSTP_nl.txt
Min-U-Script® with Word Index

EXHIBIT 6
Page 1 of 6

Page 61

1 A. It's -- I knew he was getting -- he was studying
2 for his LL.M. I don't know if it was his final or not
3 at that point. I just knew that, uh, that he was
4 studying -- getting his LL.M. at Duke part time.
5 Q. Why don't I ask it this way. What did you mean
6 by picking Jones up -- "... headed to NC to pick up
7 Jones"? What did you mean by that?
8 A. I think helping him move his stuff back 'cause
9 I -- I don't -- my recollection is he was there for
10 various periods of time and she was maybe helping him
11 move his stuff back to Houston.
12 Q. Had you told Michael Hopkins prior to June, 2016
13 that Liz Freeman and David Jones were in a romantic
14 relationship?
15    MR. LEE: Objection.
16 A. I had told, uh, him that I suspected they were
17 in one.
18 Q. Do you recall when you told him?
19 A. Probably it would have been late '12 when I told
20 Michael.
21 Q. What specifically did you tell him about what
22 you believed the nature of the relationship to be?
23 A. Uh, that I suspected there was a relationship
24 and that I had -- either was going to or had filed for
25 divorce.

Page 62

1 Q. Did you ever specifically tell Mr. Hopkins that
2 Liz Freeman and David Jones were, in fact, in a romantic
3 relationship?
4 A. I don't think -- I don't think so.
5 Q. Now, if you'd turn to the pages stamped UST 3638
6 through 363 -- excuse me, 3640 on U.S. Trustee Exhibit
7 109.
8 A. So the Bates page ending, uh, 39?
9 Q. Uh, no, 3 -- 3640. It looks like a string of
10 emails between you and Liz Freeman; is that correct?
11 A. Yes.
12 Q. Where were you when you and Liz Freeman
13 exchanged these emails?
14    MR. LEE: Objection.
15    MS. RYCZEK: What's the objection?
16    MR. LEE: These are texts (indicating).
17    MS. RYCZEK: I know, but I'm asking where
18 Mr. Simms physically was at the time.
19    MR. LEE: They weren't exchanging emails.
20 They were exchanging texts.
21 Q. I'm sorry. I'm sorry, I said emails. Text
22 messages.
23    MS. RYCZEK: I apologize.
24    MR. LEE: It's all right.
25 A. I think I was at, uh, my house.

Page 63

1 Q. All right. And where -- where was Liz Freeman?
2 A. I think she was at the lake, at their place up
3 at Cape Royale at Lake Livingston.
4 Q. If you look at UST 3638, there is a text from
5 you to Liz Freeman dated April 17th, 2020 at 8:01
6 p.m. --
7 A. Yes.
8 Q. -- in which you -- you stated, "Alex mentioned
9 he might be at the lake for a week." And you're
10 referring to your son, correct?
11 A. Yes.
12 Q. And by the lake, you meant that's the home that
13 Liz Freeman and David Jones had?
14 A. Yes.
15 Q. And your text back to Liz Freeman stated, "Jones
16 will come back Sunday." And Jones is David Jones?
17 A. Yes.
18 Q. In the text at the bottom of UST 3638 dated
19 April 18th, 2020, you asked Liz Freeman, How far,
20 quote, ... your Livingston place, end quote, is from
21 Onalaska. What did you mean by your Livingston place?
22 A. The place at Lake Livingston, the same one that
23 we referred to earlier as the lake.
24 Q. And toward the bottom of UST 3638 you said,
25 quote, Rae is at your place swimming with friends, end

Page 64

1 quote. And Rae is your daughter, Raegan --
2 A. Yes.
3 Q. -- is that right?
4 A. Yes.
5 Q. And what did you mean by your place?
6 A. At the house on Rolla.
7 Q. And if you look at the bottom of the page
8 stamped UST 3640, there's a text dated April 19th, 2020
9 from you to Liz Freeman in which you stated that "Rae is
10 on her way to your house on Rolla ..." Is that the same
11 location, the same house?
12 A. Yes, the same house in Houston, not the Lake
13 Livingston house. This was the house in Houston.
14 Q. And is that how Liz Freeman referred to the home
15 on Rolla as her house?
16 A. Uh, sometimes. In the context of kids stuff,
17 we -- I would say your place or your house. I would
18 mean either -- either her -- the place on Rolla or on --
19 in Lake Livingston.
20 Q. At the bottom of, uh, the page that is stamped
21 UST 3643 there are some texts that appear to be between
22 you and Liz Freeman exchanged on September 12th, 2021
23 concerning your son's not feeling well. You see those?
24 A. Yes.
25 Q. In your text message to her you asked

EXHIBIT 3
Page 2 of 6
(405) 397-2500

Page 65

1 Liz Freeman whether she, quote, Jones, end quote, or,
2 quote, fam, end quote, could take your son to a clinic.
3 When you said Jones, did you mean David Jones?
4 A. Yes.
5 Q. Did David Jones sometimes take your children to
6 medical appointments?
7 A. No.
8 Q. Or medical visits?
9 A. No.
10 Q. Is there a reason you suggested that maybe he
11 could take your son to a clinic on this particular
12 occasion?
13 A. Because I believe that Liz told me he was back
14 in town and she think was at the lake, but that I
15 think I was stuck at work or some kind of project where
16 I couldn't take him. And so I asked if he was in town,
17 if he could, you know, take Alex or pick Alex up.
18 Q. Now, if you'd turn to the pages that are stamped
19 UST 3635 to 3636. So we're going backwards a little
20 bit.
21 MR. LEE: Okay.
22 A. Yeah, I'm at page 3635.
23 Q. Do these pages, uh, contain true and correct
24 copies of text messages you and your friend, Gary
25 George, exchanged?

Page 66

1 A. Uh, (reading) yes.
2 Q. And according to the page stamped UST 3635, on
3 January 31st, 2022, Gary George sent you a text that
4 read "Is Liz still living with Jones?" And you answered
5 "Yes." And there don't seem to be any other text
6 messages related to that surrounding this one.
7 So what was going on in January, 2022 that
8 Gary George asked you about Liz Freeman and David Jones
9 living together?
10 A. Yeah, I understood he was at dinner with a
11 Jackson Walker partner, Ross Forbes. And I didn't get
12 that until after the text, but I was in D.C. concluding
13 an arbitration and then he sent me the text and then I
14 responded to it. And I believe either the next day or
15 the day after, I called Gary or he called me to get more
16 context about what his question was.
17 Q. So just to be clear, uh, Gary George works
18 where?
19 A. He works for a company called Warren Equipment,
20 and he's their general counsel out at Midland, Texas.
21 Q. Was this a business dinner he had with Ross
22 Forbes or were they just friends going out together? Do
23 you know?
24 A. I don't know. There was probably aspects of
25 both.

Page 67

1 Q. All right. And was anyone else at this dinner
2 as far as you know?
3 A. I don't know.
4 Q. So, uh, is all the information you have about
5 this dinner what you have gleaned from Gary George?
6 A. Yes.
7 Q. Now, when, uh, you spoke to Gary George, you
8 said that was the next day. So February 1st, 2022
9 about?
10 A. It would have been February 1st or the 2nd
11 because my hearing ended on February 1 and I think we
12 flew out the next day. So I don't know if I called him
13 at the end of the day on the first after my hearing was
14 over or the next day on the way to the airport, but it
15 was within a day or two of the dinner.
16 Q. Well, what did Mr. George tell you about this
17 dinner, you know, where it occurred and how the subject
18 of the --
19 MR. LEE: Objection, compound.
20 Q. Well, okay. What did Mr. George tell you about
21 where this dinner occurred?
22 A. I don't remember him saying where it was. I
23 knew they were out to dinner.
24 Q. All right. So he and Ross --
25 A. Ross Forbes.

Page 68

1 Q. -- Ross Forbes --
2 A. Yes.
3 Q. -- okay, who's -- who's a Jackson Walker
4 partner.
5 A. Yes.
6 Q. What did Mr. George tell you about how the
7 subject of Liz Freeman and David Jones came up in his
8 conversation with Mr. Forbes?
9 A. I believe Ross was -- Ross and Gary were talking
10 about the, uh, Cowboys game that I went with Gary and
11 two other law school friends in -- on Thanksgiving of
12 20, uh, 21 and that I had had a case that I handed off
13 to Ross at -- in Jackson Walker. And so I don't know if
14 the context was them talking about the case or, uh,
15 about the game, but Ross did mention the game and then,
16 you know, Gary thanked him. And then I think Ross
17 brought up that I he understood at one point was married
18 to Elizabeth Freeman and that he had mentioned to Gary
19 that there had been some investigation based on an
20 anonymous letter and that they had interviewed Liz and
21 that, uh, had asked her about what the status was of the
22 relationship with Jones. And I -- my recollection was,
23 uh, that Liz said they had had a relationship, but it
24 had ended at some point.
25 And so the question to me was, were they

EXHIBIT 7
Page 3 of 6

Page 69

1 living together or still in a relationship? And I said
2 my assumption is, yes, 'cause I knew the kids would go
3 back and forth to that house. I wasn't aware of them
4 moving to any other place. I understood them still
5 having both houses at that point in time. And then I
6 told him I, you know, I assumed there was a
7 relationship, but, you know, Liz and I never talked
8 about the details of her relationship with Jones. I
9 just assumed because, you know, I knew that the kids
10 would occasionally go to either place, that they were
11 still in a relationship.
12 Q. Is there anything else you can recall about what
13 Mr. George told you about his communication with Mr.
14 Forbes?
15 A. Just that there was some anonymous letter that
16 was sent to the general counsel that they had tried to
17 reach out to Jones and he wasn't engaging and that, uh,
18 something about that they were -- had bonded over --
19 that Liz had said they'd bonded over working on engines
20 of some kind.
21 Q. Who had bonded?
22 A. That Liz and Jones had -- for some reason were
23 working on some engines together. And that's just what
24 was passed on to, uh, the Jackson Walker -- well, her
25 response to Jackson Walker and that's what Gary

Page 70

1 communicated to me.
2 Q. Now, if you'd look at the, uh, page of U.S.
3 Trustee Exhibit 109, it is stamped UST 3645, which shows
4 texts between you and Liz Freeman dated March 12th,
5 2022.
6 A. Yes, I'm there.
7 Q. Toward the middle of the page, there is a text
8 from you to Liz Freeman in which you told her that your
9 conversation would not be shared with anyone, end quote.
10 "... we can label this ... attorney client privileged.
11 We have two great kids and I will protect them no matter
12 what. I will cover whatever you need me to do."
13 First of all, what was going on around
14 March 12th, 2022 that led to this text exchange you had
15 with Liz Freeman?
16 A. I think I'd called Liz and told her that, uh, I
17 had heard that there was an investigation of her at
18 Jackson Walker.
19 Q. And were you referring to the investigation that
20 Mr. George had related to you?
21 A. Yes. And then for some reason, I think Gary
22 might have mentioned to me that they were kind of
23 reinvestigating it after the conversation he had had
24 with Ross Forbes at that dinner in February of '22.
25 Q. So you reached out to Liz Freeman sometime in

Page 71

1 March, '22?
2 A. Yes.
3 Q. What were you, uh, referring to when you said
4 you would cover for her?
5 A. It wasn't covering for her. It was because of
6 the context is that, you know, I was worried that if she
7 was going to lose her job with the kids, that I would
8 handle everything with the kids if she ended up seeking
9 employment elsewhere or was -- somehow her employment
10 was terminated.
11 Q. What was the attorney-client privileged aspect
12 of that?
13 A. Just that we're both attorneys and thinking that
14 some day it may get produced. So I just said, We're
15 both lawyers. So this would be privileged, you know,
16 but in reality I was not representing Liz at the time.
17 So it was just sort of a comment.
18 Q. Further down on UST Exhibit 109 that's stamped
19 on the page stamped UST 3645, there's a text from you in
20 which you stated, "I have friends in strange places and
21 normally ..." don't "interfer. But I did this time. I
22 was asked not to say anything but I couldn't stand by
23 with the mom of my kids." First of all, what do you
24 mean or what did you mean by "I have friends in strange
25 places ..."?

Page 72

1 A. Just kind of like neutral friends. And it
2 referred to, uh, with meeting Gary that, you know, I
3 don't know if she was aware that Gary was friends with
4 Ross and had known Ross for a long time. So that was
5 what that referred to.
6 Q. When you said, "I was asked not to say anything
7 but I couldn't stand by with the mom of my kids," what
8 were you referring to? Who asked -- well, let me stop.
9 Who asked you not to say anything?
10 A. No one asked me to, but I think Gary mentioned
11 that the concept or what his discussions with Jackson
12 Walker is that they weren't going to mention us and I
13 believe they -- that maybe Ross or someone else at
14 Jackson Walker -- it must have been Ross -- made a
15 comment like, you know, well, don't talk to Liz about it
16 or don't tell Liz about this, something to that effect.
17 MS. RYCZEK: Could you, please, read that
18 back? I'm a little confused.
19 THE REPORTER: ANSWER: "No one asked me
20 to, but I think Gary mentioned that the concept or what
21 his discussions with Jackson Walker is that they weren't
22 going to mention us and I believe they -- that maybe
23 Ross or someone else at Jackson Walker -- it must have
24 been Ross -- made a comment like, you know, ... don't
25 talk to Liz about it or don't tell Liz about this,

---

Page 77

1 Liz Freeman know that Jackson Walker was looking into
2 this issue again?
3 A. Like I said, because she's the mother of my kids
4 and it would maybe impact her negatively. So I just
5 said, I just want you to be aware of it. So, you know,
6 if you meet with them or talk with them, you know, that
7 they're -- you know, they're -- they're reinvestigating
8 it.
9 Q. What did you think might happen if you didn't
10 tell her?
11 A. Uh, that they might terminate her.
12 Q. And if you look at page UST 3646, at the top of
13 the page there's a text from you to Liz Freeman dated
14 March 13th, 2022. Is that, uh -- well, actually,
15 let's -- let's stay on 3645 for a second. She, you
16 know, did -- she responds to your text by saying, "Got
17 it. Does this friend know the situation? Or were they
18 asking you?"
19     What did you understand her to mean when
20 she said, the situation?
21 A. The, uh -- her living arrangement with, uh, with
22 David Jones.
23 Q. And by this friend, who do you think she or who
24 was she referencing there?
25 A. Gary George.

---

Page 78

1 Q. All right. And then at the top of page 3646,
2 you said, "I can call you. No one has asked me
3 anything." What did you mean by "No one has asked me
4 anything"?
5 A. No one from Jackson Walker directly has asked me
6 anything.
7 Q. Now, if you'd turn to the page of U.S. Trustee
8 Exhibit 109 that is stamped UST 3649.
9 A. Yes, I'm there.
10 Q. At the top of the page there's a message that's
11 dated March 28th, 2022. You see that at 2:23:04 p.m.?
12 A. Yes.
13 Q. And that appears to have that voicemail message
14 you mentioned, correct?
15 A. Yes.
16 Q. Do you still have that on your phone?
17 A. I don't think so.
18 Q. When was that deleted?
19 A. It wasn't deleted. When I downloaded the texts
20 on iMazing, all the -- uh, anything audio doesn't seem
21 to come up anymore.
22 Q. Have you tried to listen to it?
23 A. I've clicked on it and nothing comes up.
24 Q. To the best of your recollection, what did Julia
25 Mann say in that message to you?

---

Page 79

1 A. It was a very short message. She said like
2 basically to the effect of this is Julia Mann, you know,
3 a former fellow shareholder at Jenkens & Gilchrist. And
4 I believe she was traveling and going to an airport or
5 coming from an airport and just asked me to give her a
6 quick call. She didn't mention any of the context or
7 anything.
8 Q. Did you call her back?
9 A. No.
10 Q. And looking at page 3649 you said in your text
11 message to Liz Freeman, "I haven't called her back yet.
12 Do you know anything about her? I don't recall having
13 any dealings with her at Jenkens." And then further
14 down the page, uh, there is a text from Liz Freeman to
15 you saying, "She's calling you about me/Gary George ..."
16 information. Do you see that?
17 A. Yes.
18 Q. And that you understood that to be the, uh,
19 information that Gary George shared with Ross Forbes?
20 A. Yes, on, uh, February 1 of '22.
21 Q. And you responded, "Do you want me ... not" to
22 "return the call or just tell her I don't know
23 anything?" And, uh, and then apparently you and Liz
24 Freeman talked later; is that correct?
25 A. Uh, yes.

---

Page 80

1 Q. So what -- when did -- when did you and Liz
2 Freeman have that conversation?
3 A. I think it would have been on the same day.
4 Q. And you told her, "I won't call her until we
5 talk." And by her you're referring to Julia Mann?
6 A. Yes.
7 Q. After that, Liz Freeman says, "Thx. By the way,
8 You didn't tell me Gary. They did. You're clear."
9 Do you understand what that means?
10 A. Yes.
11 Q. What does it mean?
12 A. That, uh -- well, Gary -- I guess through Gary,
13 we communicated to Jackson Walker that we didn't want to
14 be involved in this if they were going to investigate
15 Liz. We didn't want to be the sources of it. And Ross
16 had agreed with that. And so I think Liz is saying that
17 I didn't tell Liz that it was Gary was the source of the
18 reinvestigation, that Jackson Walker told her that they
19 had got this information from Gary.
20 Q. And then in the next testimony -- text message
21 you gave Liz Freeman Gary George's cell phone number?
22 A. Yes.
23 Q. And you said that "He will keep everything
24 confidential and neither of us will talk to JW about
25 anything," meaning Jackson Walker?

---

EXHIBIT 7
Page 5 of 6

Page 81

1  A.  Yes.
2  Q.  Do you know if Gary George had any additional
3     communications with anyone from Jackson Walker?
4  A.  I think after this he did.  He had a -- either a
5     conversation.  I know he had a text exchange with Ross
6     Forbes.
7  Q.  How do you know that?
8  A.  It's part of the text string with -- with Gary
9     towards the end.  I believe it's March.  It's in my, uh,
10    string with Gary George right around the same timeframe,
11    March 28th or 29th.
12 Q.  Yeah, there are a few screenshots in here that
13    are a little bit difficult to read.  If you are able to
14    find those, uh, Mr. Simms, I would appreciate that.
15    Perhaps on UST 3636 and UST 3637?
16 A.  Yes, that's it.  It actually starts on 3636 and
17    then continues on to 3637.
18 Q.  Okay.  Can you make out anything that's on that
19    first screenshot?
20 A.  The top one on 3636?
21 Q.  Yes.
22 A.  It's just the, uh -- it's the same page that,
23    uh, that you alluded to earlier with Liz Freeman on
24    (flipping pages) -- I took a screenshot of my
25    conversation with Liz where she says, uh -- yeah, it

Page 82

1     should be the same as the Bates page ending 3649.  I
2     took a screenshot of part of that 'cause you will see
3     the term "Hold please" is in both.
4  Q.  Okay.  And then, uh, what -- what appears in the
5     next screenshot?
6  A.  Uh, the one below on 3636?
7  Q.  Yes.  And it looks like it's -- there's a text
8     from Gary George to you; is that correct, that says,
9     "Who reached out to you from JW?"
10 A.  Yes.  And that -- that screenshot is a text
11    string between Gary and Ross Forbes.
12 Q.  All right.  Are you able to read that out loud?
13 A.  Yeah.
14 Q.  It's a little bit difficult.
15 A.  Yeah.  It says, "Sorry about all the Liz stuff.
16    I have let Pat" -- I'm not going to pronounce it
17    right -- "Cowlishaw and Julia know that Nick does not
18    plan to respond to them or have any involvement in
19    whatever we decide to do.  I also told them the same for
20    you" and it says, "and Pat let me know" that "they
21    didn't and don't have any plan to contact you on this
22    issue.  If you hear anything to the contrary from Nick,
23    please let me know."
24 Q.  And do you know if Gary George ever responded to
25    that text message from Ross Forbes?

Page 83

1  A.  I think he did on the next page at the top.
2  Q.  Okay.  And again, it's a little bit difficult to
3     read.  And you're talking about the top left corner of
4     UST 3637; is that correct?
5  A.  Yes, that top one above the blue line is the
6     same -- the end of the same string that, uh, I read
7     allowed on 3636 and then it's a continuation of the
8     string between Gary and Ross Forbes.
9  Q.  All right.  Can you tell what Gary George said
10    in response to Ross Forbes' text to him?
11 A.  I think it says, "Thanks for the" full
12    "update" -- or "Thanks for the update."
13 Q.  And then it looks like there's an additional
14    message from Ross Forbes; is that correct?
15 A.  Yes.
16 Q.  And can you read into the record what he said?
17 A.  He said, "FYI - I just got a fuller recap of the
18    discussion.  Liz invited Pat and Julia to reach out to
19    Nick.  Doesn't change anything we discussed earlier
20    regarding him talking to Julia or not, but that was
21    Liz's suggestion to them.  No need to discuss" any
22    "further unless you have any questions."  And then it
23    says, "What a mess!"
24 Q.  So it says that Liz Freeman invited someone from
25    Jackson Walker to reach out to you?

Page 84

1  A.  Yes.
2  Q.  Did anyone do that other than Julia Mann?
3  A.  No.
4  Q.  Beneath that screenshot, there's a message from
5     Gary George to you.  It says, "Anything new on your
6     end?"  No response from you.  And then there's another
7     text dated it looks like March 29th, 2022 at 10:38 a.m.
8     Do you see that?
9  A.  Yes.
10 Q.  It says, "I left Ross a message this morning.
11    I'll let you know after I talk to him."  Do you know
12    what the nature of that communication was about?
13 A.  No.
14 Q.  Your response to Gary George was, "Please give
15    me a call when you get a chance."  What did you want to
16    talk to Gary George about?
17 A.  Just to find out what the status was as to, uh,
18    the investigation that they were doing with, uh --
19    regarding Liz.
20 Q.  Did he, in fact, call you?
21 A.  Uh, yes.
22 Q.  When did he call you?
23 A.  Probably that same timeframe.
24 Q.  And was anyone else on the call besides you and
25    Gary George?

EXHIBIT 7
Page 6 of 6

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 89 | Date Range: 5/12/2020 - 5/13/2020 |

### Outline of Conversations

 + ███████ • 89 messages between 5/12/2020 - 5/13/2020 • <████5251> • Veronica Polnick <████████ • _$!<Other>!$_ <████████@yahoo.com>

**EXHIBIT 7**
**Page 1 of 36**

**Messages in chronological order** (times are shown in GMT -05:00)



Confidential

**EXHIBIT 7**
**Page 2 of 36**



>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:42 PM
>>>>> ███
VP

>>>>> <███5251> ► 5/12/2020, 9:42 PM
>>>>> ███
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:42 PM]

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:42 PM
>>>>> ███
VP

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:42 PM
>>>>> ███
VP

>>>>> <███5251> ► 5/12/2020, 9:42 PM
>>>>> ███
#

Receipts • Veronica Polnick <6313750279> [R:5/12/2020, 9:42 PM]

>>>>> <███5251> ► 5/12/2020, 9:43 PM
>>>>> ███
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:43 PM]

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:43 PM
>>>>> ███
VP

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:43 PM
>>>>> ███
VP

>>>>> <███5251> ► 5/12/2020, 9:43 PM
>>>>> JCP is going to Corpus
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:43 PM]

>>>>> <███5251> ► 5/12/2020, 9:43 PM
>>>>> Shhhh
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:43 PM]

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:43 PM
>>>>> Shiiiiiiiiittttttttt
VP

>>>>> **Veronica Polnick** ◄ 5/12/2020, 9:43 PM
>>>>> Isgur gonna be BIG mad
VP

>>>>> <███5251> ► 5/12/2020, 9:43 PM
>>>>> They need the help
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:43 PM]

>>>>> <███5251> ► 5/12/2020, 9:44 PM
>>>>> Talked to Jones. He's got us. Ultra will go to Isgur
#

Receipts • Veronica Polnick <███0279> [R:5/12/2020, 9:44 PM]

>>>>> <███5251> ► 5/12/2020, 9:44 PM
>>>>> There are too many fights. They company can't afford The process hawk. They know Jones will cut through the bullshit

**EXHIBIT 7**
**Page 3 of 36**

JW_00025858



**EXHIBIT 7**
**Page 4 of 36**

Confidential



**EXHIBIT 7**
**Page 5 of 36**

Confidential

JW_00025860



**EXHIBIT 7**
**Page 6 of 36**

Confidential

JW_00025861





**EXHIBIT 7**
**Page 7 of 36**

Confidential

JW_00025862

**EXHIBIT 7**
**Page 8 of 36**

Confidential

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 9 | Date Range: 3/6/2021 |

### Outline of Conversations

 +⬛⬛⬛⬛⬛ • 9 messages on 3/6/2021 • <⬛⬛⬛5251> • Veronica Polnick <⬛⬛⬛⬛⬛ • _$!<Other>!$_ <⬛⬛⬛⬛⬛@yahoo.com>

**EXHIBIT 7**
**Page 9 of 36**

**Messages in chronological order** (times are shown in GMT -06:00)

---

💬    +▮▮▮▮▮▮▮▮

VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 1:55 PM
      You in cold spring today?

>\#    <▮▮▮5251>          ► 3/6/2021, 2:00 PM
      Yes

      Receipts • Veronica Polnick <▮▮▮0279> [R:3/6/2021, 2:00 PM]

>> VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 3:12 PM
      Patio

>>>\#    <▮▮▮5251>          ► 3/6/2021, 3:26 PM
      Ok. Arrive

      Receipts • Veronica Polnick <▮▮▮0279> [R:3/6/2021, 3:26 PM]

>>>>\#    <▮▮▮5251>          ► 3/6/2021, 3:26 PM
      Arrived

      Receipts • Veronica Polnick <▮▮▮0279> [R:3/6/2021, 3:26 PM]

>>>>> VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 3:26 PM
      I'm sitting on the patio

>>>>> > VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 3:27 PM
      I have guacamole

>>>>> >> VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 3:48 PM

      *File **"31ac176c-40b7-41ec-b712-d7e85b6f455e.PNG"** is missing.*
      *Image: ~_Library_SMS_Attachments_d2_02_at_0_4051A0B1-B87A-4BCF-9E7A-400255D7E8E0_IMG_4498.PNG*

>>>>> >>> VP    **Veronica Polnick** <▮▮▮▮▮▮>          ◄ 3/6/2021, 3:48 PM
      IMG_4498.PNG
      https://p64-
      content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

<div align="center">

**EXHIBIT 7**
**Page 10 of 36**

</div>

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 15 | Date Range: 3/8/2021 - 3/9/2021 |

### Outline of Conversations



█████ 5251 · 15 messages between 3/8/2021 - 3/9/2021 · <█████ 5251> · Veronica Polnick · <█████ · _$!<Other>!$_ █████ @yahoo.com>

**EXHIBIT 7**
**Page 11 of 36**

**Messages in chronological order** (times are shown in GMT -06:00)

💬     ▇▇▇▇5251

>>>>>    ▇▇▇▇5251>
>>>#    Can you check with L2 on the mediation conference in CHk Delasandro Alex emailed about?

              ▶ 3/9/2021, 3:21 PM

Receipts · Veronica Polnick <▇▇▇▇0279> [R:3/9/2021, 3:42 PM]

<span style="color:red">**EXHIBIT 7**
**Page 12 of 36**</span>

```
>>>>>      ███████5251>                                          ▶  3/9/2021, 3:22 PM
>>>>>#   I'm going to cut back on Jones cases for the time being   I can still advise, but not FaceTime or billable time for now

         Receipts • Veronica Polnick <█████0279> [R:3/9/2021, 3:42 PM]

>>>>>   Veronica Polnick <███████                                 ◀  3/9/2021, 3:43 PM
>>>>>   Call you in a few
   VP
>>>>>   Veronica Polnick <███████                                 ◀  3/9/2021, 3:43 PM
>>>>>   Just wrapping up
   VP
>>>>>   Veronica Polnick <███████                                 ◀  3/9/2021, 4:50 PM
>>>>>   Wyd call me pls
   VP
```

**EXHIBIT 7**
**Page 13 of 36**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 132 | Date Range: 3/17/2021 - 3/18/2021 |

### Outline of Conversations



**e70173cd-923c-468e-9528-7d19a6c88096** • 132 messages between 3/17/2021 - 3/18/2021 • ████████5251> • Veronica Polnick <████████ • _S!<Other>!$_████████@yahoo.com>

**EXHIBIT 7**
**Page 14 of 36**

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 e70173cd-923c-468e-9528-7d19a6c88096

| VP | Veronica Polnick < ████ > | 3/17/2021, 2:05 PM |



| # | < ████ 5251> | 3/17/2021, 2:50 PM |

I just wrapped up diving. I feel more. . . Like myself.

| VP | Veronica Polnick < ████ > | 3/17/2021, 2:51 PM |

Loved "I just wrapped up diving. I feel more. . . Like myself. "

| # | < ████ 5251> | 3/17/2021, 2:51 PM |

I am going to go back and finally get a little drunk.

| # | < ████ 5251> | 3/17/2021, 2:51 PM |

How are things there?

| VP | Veronica Polnick < ████ > | 3/17/2021, 2:51 PM |

Liked "I am going to go back and finally get a little drunk. "

| VP | Veronica Polnick < ████ > | 3/17/2021, 2:52 PM |

Fine. Enjoy yourself. We'll dump the truckload of shit on you when you get back. 😄

| # | < ████ 5251> | 3/17/2021, 2:52 PM |

Great.

| VP | Veronica Polnick < ████ > | 3/17/2021, 2:52 PM |

What are friends for?

**EXHIBIT 7**
**Page 15 of 36**

| # | **5251>** | 3/17/2021, 2:52 PM |
|---|---|---|
| | True | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:52 PM |
|---|---|---|
| | Literally nothing about the Jones stuff. Just regular work. Don't panic. | |

| # | **5251>** | 3/17/2021, 2:52 PM |
|---|---|---|
| | I've heard nothing about my bullshit. Any new info there? | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:52 PM |
|---|---|---|
| | Jinx | |

| # | **5251>** | 3/17/2021, 2:52 PM |
|---|---|---|
| | Cool | |

| # | **5251>** | 3/17/2021, 2:52 PM |
|---|---|---|
| | Hahah | |

| # | **5251>** | 3/17/2021, 2:53 PM |
|---|---|---|
| | The rest of it is manageable | |

| # | **5251>** | 3/17/2021, 2:53 PM |
|---|---|---|
| | I've decided I'm tired of being nice | |

| # | **5251>** | 3/17/2021, 2:53 PM |
|---|---|---|
| | Fuck it | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:53 PM |
|---|---|---|
| | Ooooohhhh | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:53 PM |
|---|---|---|
| | This should be fun | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:53 PM |
|---|---|---|
| | 👋 | |

| # | **5251>** | 3/17/2021, 2:53 PM |
|---|---|---|
| | Poor everyone when I get home | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:53 PM |
|---|---|---|
| | I'd warn folks but I'm also not nice | |

| # | **5251>** | 3/17/2021, 2:54 PM |
|---|---|---|
| | You may be one of the few people I don't have a little beef with. | |

| VP | **Veronica Polnick <** | 3/17/2021, 2:54 PM |
|---|---|---|

**EXHIBIT 7**
**Page 16 of 36**

JW_00025871



Image: ~_Library_SMS_StickerCache_9790fd9b86543ed53560454372fef8bb-F16EADAE-6D52-4B0C-89BC-
D76EA784326F_AK299002_6adfca99b0cf0b4b58fa574225fd31bc_smiling_face_with_open_mouth_and_smiling_eyes_F
16EADAE-6D52-4B0C-89BC-
D76EA784326F_AK299002_6adfca99b0cf0b4b58fa574225fd31bc_smiling_face_with_open_mouth_and_smiling_eyes.p
ng (97 KB)

| | | |
|---|---|---|
| VP | **Veronica Polnick** <████████> | 3/17/2021, 2:54 PM |
| | F16EADAE-6D52-4B0C-89BC-<br>D76EA784326F_AK299002_6adfca99b0cf0b4b58fa574225fd31bc_smiling_face_with_open_mouth_and_smiling_eyes.<br>png<br>https://p49-<br>content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00 | |
| # | <████5251> | 3/17/2021, 2:54 PM |
| | Give me time, I'm sure I can think of something | |
| VP | **Veronica Polnick** <████████> | 3/17/2021, 2:54 PM |
| | Emphasized "You may be one of the few people I don't have a little beef with. " | |
| VP | **Veronica Polnick** <████████> | 3/17/2021, 2:54 PM |
| | Yeah you're not trying hard enough | |
| # | <████5251> | 3/17/2021, 2:54 PM |
| | Problem is ...  people in glass houses.  So, you're shit is fiiiine | |
| # | ████5251> | 3/17/2021, 2:55 PM |
| | Ds gotta stick together | |
| # | <████5251> | 3/17/2021, 2:55 PM |
| | People are gonna see my D | |
| VP | **Veronica Polnick** <████████> | 3/17/2021, 2:55 PM |
| | Heh | |
| VP | **Veronica Polnick** <████████> | 3/17/2021, 2:55 PM |
| | Heh | |
| # | <████5251> | 3/17/2021, 2:55 PM |
| | Nicely. Ish. | |
| # | <7████5251> | 3/17/2021, 2:55 PM |

**EXHIBIT 7**
**Page 17 of 36**

JW_00025872

DT is fine too.

| | | |
|---|---|---|
| # | <██████5251>  And Gen | 3/17/2021, 2:55 PM |
| # | <██████5251>  All good | 3/17/2021, 2:55 PM |
| # | <██████5251>  And Vienna. | 3/17/2021, 2:55 PM |
| # | <██████5251>  This is weird. | 3/17/2021, 2:56 PM |
| VP | **Veronica Polnick** <██████ | 3/17/2021, 2:56 PM |
| VP | **Veronica Polnick** <██████  41454825-7A9E-4C8E-AF42-F6B8E8253FEB.gif  https://p72-content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00 | 3/17/2021, 2:56 PM |
| VP | **Veronica Polnick** <██████  Yeah soooo | 3/17/2021, 2:56 PM |
| # | <██████5251>  Liked an image | 3/17/2021, 2:56 PM |
| VP | **Veronica Polnick** <██████  Like Kristhy and Jennifer? | 3/17/2021, 2:56 PM |
| VP | **Veronica Polnick** <██████  Lololol | 3/17/2021, 2:56 PM |
| # | <7████5251>  Yes | 3/17/2021, 2:56 PM |
| # | <██████5251>  Matt and I will need to hug it out | 3/17/2021, 2:57 PM |
| VP | **Veronica Polnick** <██████  Liked "Matt and I will need to hug it out " | 3/17/2021, 2:57 PM |
| # | <██████5251>  I feel bad for keeping him in the dark | 3/17/2021, 2:57 PM |
| VP | **Veronica Polnick** <██████  You will. He's all pent up. | 3/17/2021, 2:57 PM |
| # | ██████5251>  But he's been working his ass off | 3/17/2021, 2:57 PM |
| VP | **Veronica Polnick** <██████  It's a "blame freeman" week | 3/17/2021, 2:57 PM |

**EXHIBIT 7**
**Page 18 of 36**

| # | 5251> | 3/17/2021, 2:57 PM |
| | Yep | |
| VP | **Veronica Polnick** < | 3/17/2021, 2:57 PM |
| | That's helping him | |
| # | <5251> | 3/17/2021, 2:57 PM |
| | Wait. Wasn't that last week? | |
| VP | **Veronica Polnick** < | 3/17/2021, 2:57 PM |
| | We're blaming you for everything in your absence | |
| VP | **Veronica Polnick** < | 3/17/2021, 2:58 PM |
| | No actually lol | |
| # | <5251> | 3/17/2021, 2:58 PM |
| | Hahahah | |
| # | <5251> | 3/17/2021, 2:58 PM |
| | I'll take it | |
| VP | **Veronica Polnick** < | 3/17/2021, 2:58 PM |
| | That's making him feel better | |
| # | 5251> | 3/17/2021, 2:58 PM |
| | Good | |
| # | <5251> | 3/17/2021, 2:58 PM |
| | I'll resume working my ass of next week.  I hope he gets to have fun tonight. | |
| VP | **Veronica Polnick** < | 3/17/2021, 2:58 PM |
| | I do too | |



**EXHIBIT 7**
**Page 19 of 36**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 211 | Date Range: 4/14/2021 - 4/15/2021 |

### Outline of Conversations



+██████5251 • 211 messages between 4/14/2021 - 4/15/2021 • <████5251> • Veronica Polnick
<██████> • _$!<Other>!$_██████@yahoo.com>

**EXHIBIT 7**
**Page 20 of 36**

**Messages in chronological order** (times are shown in GMT -05:00)

---



💬    +█████5251

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:43 PM]

| | | |
|---|---|---|
| >># | <█████5251> | ▶ 4/14/2021, 8:45 PM |
| | Just saw you called. | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:46 PM]

| | | |
|---|---|---|
| >>># | █████5251> | ▶ 4/14/2021, 8:45 PM |
| | Ringer was off | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:46 PM]

| | | |
|---|---|---|
| >>>># | <█████5251> | ▶ 4/14/2021, 8:46 PM |
| | How goes it | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:46 PM]

| | | |
|---|---|---|
| >>>>> VP | **Veronica Polnick** <█████ | ◀ 4/14/2021, 8:46 PM |
| | Good. I had a funny anecdote to end our chat with. I'll call you when this stretto thing is over | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:46 PM]

| | | |
|---|---|---|
| >>>>> ># | █████5251> | ▶ 4/14/2021, 8:46 PM |
| | Fun | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:46 PM]

| | | |
|---|---|---|
| >>>>> >># | █████5251> | ▶ 4/14/2021, 8:47 PM |
| | Still at the office | |

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 8:47 PM]

| | | |
|---|---|---|
| >>>>> >>> VP | **Veronica Polnick** <█████ | ◀ 4/14/2021, 8:47 PM |
| | Figured | |

<span style="color:red">**EXHIBIT 7**</span>
<span style="color:red">**Page 21 of 36**</span>

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:53 PM] | |
|---|---|---|

>>>>> <​​​5251>
>>>>> Whut?
\#
► 4/14/2021, 9:51 PM

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:53 PM] | |

>>>>> <​​​5251>
>>>>> Nice lunch
\#
► 4/14/2021, 9:53 PM

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:53 PM] | |

>>>>> 5251>
>>>>> But I hate this afternoon.
\#
► 4/14/2021, 9:53 PM

| | Receipts • Veronica Polnick 0279> [R:4/14/2021, 9:53 PM] | |

>>>>> <​​​5251>
>>>>> Weak is not my happy place
\#
► 4/14/2021, 9:53 PM

| | Receipts • Veronica Polnick 0279> [R:4/14/2021, 9:53 PM] | |

>>>>> **Veronica Polnick <**
>>>>> WE ARE NOT HOSPITALS FOR BROKEN MEN
VP
◄ 4/14/2021, 9:53 PM

>>>>> <​​​5251>
>>>>> Yuh huh
\#
► 4/14/2021, 9:53 PM

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:53 PM] | |

>>>>> **Veronica Polnick <**
>>>>> no weak ass shit
VP
◄ 4/14/2021, 9:54 PM

>>>>> 5251>
>>>>> Mmm hmm
\#
► 4/14/2021, 9:54 PM

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:54 PM] | |

>>>>> 5251>
>>>>> It would be easier if he was no big deal
\#
► 4/14/2021, 9:55 PM

| | Receipts • Veronica Polnick <​​​0279> [R:4/14/2021, 9:55 PM] | |

>>>>> **Veronica Polnick <**
>>>>> Lemme tell you this
VP
◄ 4/14/2021, 9:55 PM

>>>>> **Veronica Polnick <**
>>>>> If he doesn't get his shit together and start acting right he IS no big deal
VP
◄ 4/14/2021, 9:55 PM

>>>>> **Veronica Polnick <**
>>>>> And that's that on that
◄ 4/14/2021, 9:55 PM

**EXHIBIT 7**
**Page 22 of 36**

Confidential

VP
>>>>>  **Veronica Polnick** <████████  ◄ 4/14/2021, 9:56 PM
>>>>>  Know who's a big deal?
VP
>>>>>  **Veronica Polnick** <████████  ◄ 4/14/2021, 9:56 PM
>>>>>  You.
VP
>>>>>  **Veronica Polnick** <████████  ◄ 4/14/2021, 9:57 PM
>>>>>
VP

*File* **"4c042a98-55b8-4766-83b4-ceb7d58c1abb.gif"** *is missing.*
*Image: ~_Library_SMS_Attachments_fc_12_at_0_7AF33262-5E7F-42F7-B4EF-C15AED46D756_19F28C69-C7B1-44E4-8F00-21A695CBDCFB.gif*

>>>>>  **Veronica Polnick** <████████  ◄ 4/14/2021, 9:57 PM
>>>>>  19F28C69-C7B1-44E4-8F00-21A695CBDCFB.gif
VP      https://p13-
       content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00



**EXHIBIT 7**
**Page 23 of 36**



>>>>> **Veronica Polnick** <​█████> ◄ 4/14/2021, 10:06 PM
>>>>> There's always higher heights to reach for
VP

>>>>> ████5251> ► 4/14/2021, 10:07 PM
>>>>> And I aim hiiiiigh
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:07 PM]

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:07 PM
>>>>> Emphasized "And I aim hiiiiigh"
VP

>>>>> <████5251> ► 4/14/2021, 10:08 PM
>>>>> Not that high. I'm lame. Imma gonna go home now and go to sleep. Under a pile of cat and dog.
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:08 PM]

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:08 PM
>>>>> Don't recommend the punching if he's sober
VP

>>>>> ████5251> ► 4/14/2021, 10:09 PM
>>>>> But just one cat. And mom has my favorite dog at the lake
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:09 PM]

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:09 PM
>>>>> An accidental kick to the spine in the middle of the night would be ok
VP

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:09 PM
>>>>> Like a twitch
VP

>>>>> <████5251> ► 4/14/2021, 10:09 PM
>>>>> Laughed at "An accidental kick to the spine in the middle of the night would be ok"
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:09 PM]

>>>>> ████5251> ► 4/14/2021, 10:09 PM
>>>>> He'll be so asleep
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:09 PM]

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:09 PM
>>>>> It's not for him it's for you
VP

>>>>> ████5251> ► 4/14/2021, 10:09 PM
>>>>> I know
#

Receipts • Veronica Polnick <█████0279> [R:4/14/2021, 10:09 PM]

>>>>> **Veronica Polnick** <█████> ◄ 4/14/2021, 10:09 PM
>>>>> 😊
VP

**EXHIBIT 7**
**Page 24 of 36**

>>>>> <■■■5251>
>>>>> Unless he senses how unhinged I am.
#                                                                                    ▶ 4/14/2021, 10:10 PM

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:10 PM]

>>>>> <■■■5251>
>>>>> Then he'll be faux asleep
#                                                                                    ▶ 4/14/2021, 10:10 PM

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:10 PM]

>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:10 PM
>>>>> Perfect for a spine kick
VP
>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:10 PM
>>>>> Not saying I've done it 👀
VP
>>>>> <■■■5251>                                                                      ▶ 4/14/2021, 10:10 PM
>>>>> Ever get tired of being the responsible adult?
#

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:10 PM]

>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:11 PM
>>>>> I'm suggesting you kick someone in the spine in the middle of the night. How exactly am I the responsible one?
VP
>>>>> <■■■5251>                                                                      ▶ 4/14/2021, 10:11 PM
>>>>> Pretty fucking responsible
#

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:11 PM]

>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> That's scary
VP
>>>>> <■■■5251>                                                                      ▶ 4/14/2021, 10:12 PM
>>>>> He does outfight need by 100+lbs
#

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:12 PM]

>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> Yeah but you're scrappy
VP
>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> And faster
VP
>>>>> ■■■5251>                                                                       ▶ 4/14/2021, 10:12 PM
>>>>> Gimp!
#

Receipts • Veronica Polnick <■■■0279> [R:4/14/2021, 10:12 PM]

>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> Good point
VP
>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> Perfect
VP
>>>>> Veronica Polnick <■■■                                                          ◀ 4/14/2021, 10:12 PM
>>>>> A leg spasm!
VP
>>>>> <■■■5251>                                                                      ▶ 4/14/2021, 10:13 PM
>>>>> I am so fast on my scooter

**EXHIBIT 7**
**Page 25 of 36**



# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:13 PM]

>>>>> **Veronica Polnick <■■■■■**
>>>>> He can't catch you and he can't prove you're lying about a leg spasm
VP
◀ 4/14/2021, 10:13 PM

>>>>> **<■■■■5251>**
>>>>> True
▶ 4/14/2021, 10:13 PM

# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:13 PM]

>>>>> **<■■■■5251>**
>>>>> But I can't lie
▶ 4/14/2021, 10:14 PM

# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:14 PM]

>>>>> **Veronica Polnick <■■■■■**
>>>>> But he will have a sore back tomorrow
VP
◀ 4/14/2021, 10:14 PM

>>>>> **■■■■5251>**
>>>>> I suck at it
▶ 4/14/2021, 10:14 PM

# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:14 PM]

>>>>> **Veronica Polnick <■■■■■**
>>>>> I feel like you should make an exception on this
VP
◀ 4/14/2021, 10:14 PM

>>>>> **Veronica Polnick <■■■■■**
>>>>> It doesn't have to be convincing
VP
◀ 4/14/2021, 10:14 PM

>>>>> **Veronica Polnick <■■■■■**
>>>>> In fact it's scarier if he knows your lying
VP
◀ 4/14/2021, 10:14 PM

>>>>> **<■■■■5251>**
>>>>> Hahah
▶ 4/14/2021, 10:14 PM

# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:14 PM]

>>>>> **Veronica Polnick <■■■■■**
>>>>> Bc then you really just kicked him in the spine Bc you're mad
VP
◀ 4/14/2021, 10:14 PM

>>>>> **■■■■5251>**
>>>>> It could be a good game
▶ 4/14/2021, 10:14 PM

# Receipts • Veronica Polnick <■■■■0279> [R:4/14/2021, 10:14 PM]

>>>>> **Veronica Polnick <■■■■■**
>>>>> I've kicked David in the spine a million times
VP
◀ 4/14/2021, 10:15 PM

>>>>> **Veronica Polnick <■■■■■**
>>>>> No permanent damage
VP
◀ 4/14/2021, 10:15 PM

>>>>> **Veronica Polnick <■■■■■**
>>>>> Totally safe
VP
◀ 4/14/2021, 10:15 PM

**EXHIBIT 7**
**Page 26 of 36**

JW_00025888

>>>>> <███5251>
>>>>> Hahaha
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:15 PM]
▶ 4/14/2021, 10:15 PM

>>>>> **Veronica Polnick** <███
>>>>> Other passive aggressive suggestions:
VP
◀ 4/14/2021, 10:16 PM

>>>>> **Veronica Polnick** <███
>>>>> Bake him an apple pie
VP
◀ 4/14/2021, 10:16 PM

>>>>> **Veronica Polnick** <███
>>>>> Wash only your clothes and not his next time you do laundry
VP
◀ 4/14/2021, 10:16 PM

>>>>> <███5251>
>>>>> 😬
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:16 PM]
▶ 4/14/2021, 10:16 PM

>>>>> **Veronica Polnick** <███
>>>>> Switch out shampoo with hair
VP
◀ 4/14/2021, 10:17 PM

>>>>> **Veronica Polnick** <███
>>>>> Nair
VP
◀ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> On the laundry. Cool
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:17 PM]
▶ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> Laughed at "Switch out shampoo with hair"
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:17 PM]
▶ 4/14/2021, 10:17 PM

>>>>> **Veronica Polnick** <███
>>>>> Add 40% sun in to his shampoo
VP
◀ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> Laughed at "Add 40% sun in to his shampoo"
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:17 PM]
▶ 4/14/2021, 10:17 PM

>>>>> **Veronica Polnick** <███
>>>>> Take his suit pants to the tailor and have them taken in 2 inches
VP
◀ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> So
#
>>>>> Much blonde
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:17 PM]
▶ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> Laughed at "Take his suit pants to the tailor and have them taken in 2 inches"
#
     Receipts • Veronica Polnick <███0279> [R:4/14/2021, 10:17 PM]
▶ 4/14/2021, 10:17 PM

>>>>> <███5251>
>>>>> He's already in his gat suits
▶ 4/14/2021, 10:18 PM

**EXHIBIT 7**
**Page 27 of 36**

| | | |
|---|---|---|
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:18 PM] | |
| >>>>> | ████5251> | ▶ 4/14/2021, 10:18 PM |
| >>>>> | Fat | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:18 PM] | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:18 PM |
| >>>>> | The have them taken in 4 inches | |
| VP | | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:18 PM |
| >>>>> | Replace toothpaste with preparation H | |
| VP | | |
| >>>>> | ████5251> | ▶ 4/14/2021, 10:19 PM |
| >>>>> | Righteous oh. I'm sorry. Have I gained 10 lbs in 10 yrs | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:19 PM] | |
| >>>>> | <████5251> | ▶ 4/14/2021, 10:19 PM |
| >>>>> | Fu | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:19 PM] | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:19 PM |
| >>>>> | Hide his fancy screwdrivers | |
| VP | | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:19 PM |
| >>>>> | Emphasized "Righteous oh. I'm sorry. Have I gained 10 lbs in 10 yrs" | |
| VP | | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:19 PM |
| >>>>> | Maybe one gets nicked | |
| VP | | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:19 PM |
| >>>>> | Who knows | |
| VP | | |
| >>>>> | <████5251> | ▶ 4/14/2021, 10:19 PM |
| >>>>> | Ooooo | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:19 PM] | |
| >>>>> | <████5251> | ▶ 4/14/2021, 10:19 PM |
| >>>>> | I dunno | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:19 PM] | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:20 PM |
| >>>>> | There's lots of options. | |
| VP | | |
| >>>>> | <████5251> | ▶ 4/14/2021, 10:21 PM |
| >>>>> | That may be too far | |
| # | Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:21 PM] | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:21 PM |
| >>>>> | It should scare the ever loving shit out of him | |
| VP | | |
| >>>>> | **Veronica Polnick** <████ | ◀ 4/14/2021, 10:21 PM |
| >>>>> | That you're capable of such things | |

**EXHIBIT 7**
**Page 28 of 36**

JW_00025890



VP
>>>>>  <████5251>                                                          ▶ 4/14/2021, 10:22 PM
>>>>>  I have a dark side
#
           Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:22 PM]

>>>>>  **Veronica Polnick <████>**                                          ◀ 4/14/2021, 10:22 PM
>>>>>  Yes
VP
>>>>>  <7135625251>                                                         ▶ 4/14/2021, 10:22 PM
>>>>>  Cray Liz only comes out on special occasions
#
           Receipts • Veronica Polnick <████0279> [R:4/14/2021, 10:22 PM]

>>>>>  **Veronica Polnick <████>**                                          ◀ 4/14/2021, 10:23 PM
>>>>>  No time like the present
VP
>>>>>  **Veronica Polnick <████>**                                          ◀ 4/14/2021, 10:24 PM
>>>>>
VP

           *File* **"cdafa50d-e915-4c0a-9883-0e8c9dbd949e.gif"** *is missing.*
           *Image: ~_Library_SMS_Attachments_b5_05_at_0_69D73115-50BD-47D1-952A-D074322A3EBD_53BA5C56-86FF-*
           *45EA-BD0D-2ECA664D3D61.gif*

>>>>>  **Veronica Polnick <████>**                                          ◀ 4/14/2021, 10:24 PM
>>>>>  53BA5C56-86FF-45EA-BD0D-2ECA664D3D61.gif
VP     https://p42-
           content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00



**EXHIBIT 7**
**Page 29 of 36**



>>>>> <██████5251> ► 4/15/2021, 7:57 AM
>>>>> Sorry about the emotion dump.   I clearly have some issues bottled up.
#

Receipts • Veronica Polnick <██████0279> [R:4/15/2021, 7:57 AM]

>>>>> **Veronica Polnick** <██████████ ◄ 4/15/2021, 7:58 AM
>>>>> If you apologize one more time daaaaaniel, you will not wake up the following MORNING
VP
>>>>> <██████5251> ► 4/15/2021, 7:58 AM
>>>>> Loved "If you apologize one more time daaaaaniel, you will not wake up the following MORNING"
#

Receipts • Veronica Polnick <██████0279> [R:4/15/2021, 7:58 AM]

>>>>> **Veronica Polnick** <██████████ ◄ 4/15/2021, 7:59 AM
>>>>> we all have our shit and we don't get through work or life unless we talk about it and deal with it. And that's what friends
VP     are for.

>>>>> <██████5251> ► 4/15/2021, 8:08 AM
>>>>> How are you holding up?  Feeling OK today?
#

Receipts • Veronica Polnick <██████0279> [R:4/15/2021, 8:24 AM]

>>>>> **Veronica Polnick** <██████████ ◄ 4/15/2021, 8:24 AM
>>>>> Yeah not terrible actually
VP
>>>>> **Veronica Polnick** <██████████ ◄ 4/15/2021, 8:24 AM
>>>>> Just took my exciting Tylenol
VP
>>>>> <██████5251> ► 4/15/2021, 8:25 AM
>>>>> Fun!
#

Receipts • Veronica Polnick <██████0279> [R:4/15/2021, 8:25 AM]

**EXHIBIT 7**
**Page 30 of 36**



>>>>> &lt;███5251&gt;
>>>>> Did one of us yell at Jones?  He's being really nice
#
　　　　 Receipts • Veronica Polnick &lt;███0279&gt; [R:4/15/2021, 8:25 AM]

▶ 4/15/2021, 8:25 AM

>>>>> **Veronica Polnick** &lt;██████
>>>>> I didn't!
VP

◀ 4/15/2021, 8:26 AM

>>>>> **Veronica Polnick** &lt;██████
>>>>> It was on my list
VP

◀ 4/15/2021, 8:26 AM

>>>>> **Veronica Polnick** &lt;██████
>>>>> You must have scared him
VP

◀ 4/15/2021, 8:26 AM

>>>>> &lt;███5251&gt;
>>>>> Hahah
#
　　　　 Receipts • Veronica Polnick &lt;███0279&gt; [R:4/15/2021, 8:26 AM]

▶ 4/15/2021, 8:26 AM

>>>>> **Veronica Polnick** &lt;██████
>>>>> Did you go for the spine?
VP

◀ 4/15/2021, 8:26 AM

>>>>> &lt;███5251&gt;
>>>>> I don't think so.    But he usually senses when I'm on the edge
#
　　　　 Receipts • Veronica Polnick &lt;███0279&gt; [R:4/15/2021, 8:27 AM]

▶ 4/15/2021, 8:27 AM

>>>>> **Veronica Polnick** &lt;██████
>>>>> Well at least he's got that going for him 😂
VP

◀ 4/15/2021, 8:27 AM

**EXHIBIT 7**
**Page 31 of 36**



**EXHIBIT 7**
**Page 32 of 36**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 36 | Date Range: 5/4/2021 - 5/5/2021 |

### Outline of Conversations

💬 **921845de-66bc-4ccc-ab14-b3f3412890e6** • 36 messages between 5/4/2021 - 5/5/2021 •
[ ]5251> • Veronica Polnick <[ ]> • _S!<Other>!$_[ ]@yahoo.com>

**EXHIBIT 7**
**Page 33 of 36**

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 **921845de-66bc-4ccc-ab14-b3f3412890e6**

\#  < ████ 5251>                                                      5/4/2021, 4:15 PM
I found a note from Gen today.  She is entirely too kind

\#  < ████ 5251>                                                      5/4/2021, 4:15 PM
What exactly did you tell her?

VP  Veronica Polnick < ████                                          5/4/2021, 4:16 PM
We really don't deserve her

\#  < ████ 5251>                                                      5/4/2021, 4:16 PM
Nope

VP  Veronica Polnick < ████                                          5/4/2021, 4:16 PM
She left you that note before I told her that I told you that she knew.

VP  Veronica Polnick < ████                                          5/4/2021, 4:17 PM
She obviously knows you have a relationship with Jones and she now knows that it quasi came out in McDermott and
that there's high level firm shit going on

VP  Veronica Polnick < ████                                          5/4/2021, 4:17 PM
And that your life is generally not great as a result

\#  < ████ 5251>                                                      5/4/2021, 4:18 PM
Got it



**EXHIBIT 7**
**Page 34 of 36**

Confidential                                                     JW_00025897

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 35 | Date Range: 8/25/2021 - 8/26/2021 |

### Outline of Conversations



**c22bd2ac-881e-476b-8d0c-bbf82d762d90** • 35 messages between 8/25/2021 - 8/26/2021 •
5251> • Veronica Polnick < • _S!<Other>!$_ @yahoo.com>

**EXHIBIT 7**
**Page 35 of 36**

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 **c22bd2ac-881e-476b-8d0c-bbf82d762d90**

| VP | **Veronica Polnick <■■■■■■** | 8/25/2021, 6:08 PM |
| | I did get a nice call from Jones this afternoon | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:08 PM |
| | Re JCP | |

| # | **<■■■5251>** | 8/25/2021, 6:08 PM |
| | That's cool | |

| # | **<■■■5251>** | 8/25/2021, 6:09 PM |
| | He bragged on you to me | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:09 PM |
| | Aww so sweet | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:09 PM |
| | He said I did a good job. He knew I hated it. | |

| # | **<■■■5251>** | 8/25/2021, 6:09 PM |
| | Yep. He did too. You were in it together | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:09 PM |
| | Albert's texts during the hearing kept me going | |

| # | **<■■■5251>** | 8/25/2021, 6:09 PM |
| | Awww | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:09 PM |
| | I'll have to show you tomorrow | |

| VP | **Veronica Polnick <■■■■■** | 8/25/2021, 6:10 PM |
| | He was fucking hilarious. On 👆 | |

| # | **<■■■5251>** | 8/25/2021, 6:10 PM |
| | Liked "I'll have to show you tomorrow" | |

| # | **<■■■5251>** | 8/25/2021, 6:10 PM |
| | Hahaha | |



**EXHIBIT 7**
**Page 36 of 36**

Message

| From: | Cavenaugh, Matthew [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MCAVENAUGH] |
|---|---|
| Sent: | 3/7/2021 5:56:44 PM |
| To: | Cowlishaw, Pat (pcowlishaw@jw.com) [pcowlishaw@jw.com] |
| Subject: | FW: Elizabeth Freeman and Judge Jones |

**Matthew D. Cavenaugh**
Partner
mcavenaugh@jw.com | T: +1.713.752.4284 | M: +1.832.496.2338

**Jackson Walker LLP**
1401 McKinney Street, Suite 1900 | Houston, TX | 77010

**From:** Michael Van Deelen <michaelvandeelen@gmail.com>
**Sent:** Saturday, March 6, 2021 11:44 AM
**To:** Cavenaugh, Matthew <mcavenaugh@jw.com>; Michael Van Deelen <michaelvandeelen@gmail.com>
**Subject:** Elizabeth Freeman and Judge Jones

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Mr. Cavenaugh:

I received a most disturbing communication yesterday concerning Elizabeth Freeman and Judge Jones.

The communication stated that Jackson Walker attorney Elizabeth Freeman clerked for Judge Jones for six years before joining Jackson Walker and that she has had a romantic relationship with Judge Walker.

I am aware that Ms. Freeman is working on the McDermott bankruptcy.

Is Ms. Freeman currently in a relationship with Judge Jones?

Is Judge Jones favoring Jackson Walker clients because of his (past/present) relationship with Ms. Freeman?

Is your firm and are your clients (including McDermott) trading sexual favors to Judge Jones in return for favorable rulings?

Please respond to this email as soon as possible. Time is of the essence.

Regards,

Michael Van Deelen

EXHIBIT 72 PLTF. DEFT.
WITNESS M. Cavenaugh
CONSISTING OF 2 PAGES
DATE 08-50-24
BEHMKE REPORTING AND VIDEO SERVICES, INC.

**EXHIBIT 8**
*U.S. Trustee's Exhibit 72*

JW_00015253

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 13 | Date Range: 3/6/2021 |

### Outline of Conversations

 **2338** • 13 messages on 3/6/2021 • Matthew Cavenaugh < ████ 2338> • Veronica Polnick < ████ 0279> • _$!<Other>!$_ < ████ @yahoo.com>

**EXHIBIT 9**
**Page 1 of 45**

**Messages in chronological order** (times are shown in GMT -06:00)

---

💬 ⬛️2338

| | | |
|---|---|---|
| MC | **Matthew Cavenaugh** ⬛️2338> <br> Please call me when you get a sec | ▶ 3/6/2021, 11:51 AM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 12:19 PM) | |
| > MC | **Matthew Cavenaugh** ⬛️2338> <br> It's important and a bit delicate | ▶ 3/6/2021, 12:10 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 12:19 PM) | |
| >> VP | **Veronica Polnick** <⬛️0279> <br> Liked "It's important and a bit delicate" | ◀ 3/6/2021, 12:19 PM |
| >>> <br> VP | **Veronica Polnick** <⬛️0279> <br> I'm on my way | ◀ 3/6/2021, 1:02 PM |
| >>>> <br> MC | **Matthew Cavenaugh** <⬛️2338> <br> K | ▶ 3/6/2021, 1:04 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 1:05 PM) | |
| >>>>> <br> MC | **Matthew Cavenaugh** <⬛️2338> <br> Should I tell freeman to come over? | ▶ 3/6/2021, 1:08 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 1:09 PM) | |
| >>>>> <br> > MC | **Matthew Cavenaugh** ⬛️2338> <br> Or wait? | ▶ 3/6/2021, 1:08 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 1:09 PM) | |
| >>>>> <br> >> VP | **Veronica Polnick** ⬛️0279> <br> Wait | ◀ 3/6/2021, 1:09 PM |
| >>>>> <br> >>> <br> VP | **Veronica Polnick** <⬛️0279> <br> Plus I bet she's in cold spring. But we may need her to come back later | ◀ 3/6/2021, 1:09 PM |
| >>>>> <br> >>>> <br> MC | **Matthew Cavenaugh** <⬛️2338> <br> Ok | ▶ 3/6/2021, 1:09 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 1:09 PM) | |
| >>>>> <br> >>>>> <br> VP | **Veronica Polnick** <⬛️0279> <br> Here | ◀ 3/6/2021, 1:47 PM |
| >>>>> <br> >>>>> <br> MC | **Matthew Cavenaugh** <⬛️2338> <br> On a call | ▶ 3/6/2021, 4:21 PM |
| | Receipts • Veronica Polnick ⬛️0279> (R 3/6/2021, 4:21 PM) | |
| >>>>> <br> >>>>> <br> VP | **Veronica Polnick** <⬛️0279> <br> K whenever you're done | ◀ 3/6/2021, 4:21 PM |

<div align="center">

**EXHIBIT 9**
**Page 2 of 45**

</div>

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 87 | Date Range: 3/7/2021 - 3/8/2021 |

### Outline of Conversations

💬    **+18324962338** · 87 messages between 3/7/2021 - 3/8/2021 · Matthew Cavenaugh <8324962338> · Veronica Polnick ███████0279> · _$!<Other>!$_ ████████@yahoo.com>

**EXHIBIT 9**
**Page 3 of 45**

**Messages in chronological order** (times are shown in GMT -06:00)



**EXHIBIT 9**
**Page 4 of 45**

content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

| >>>>> | Veronica Polnick          0279> | ◄ 3/7/2021, 9:20 PM |
|---|---|---|
| >>>>> VP | | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:22 PM |
|---|---|---|
| >>>>> MC | He's good. It's been a day. Just so you know, the circle includes Bruce, chip, and Cowlishaw. | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:23 PM) | |

| >>>>> | Matthew Cavenaugh     2338> | ► 3/7/2021, 9:23 PM |
|---|---|---|
| >>>>> MC | They are all good | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:23 PM) | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:23 PM |
|---|---|---|
| >>>>> MC | They are also signed off on the plan | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:23 PM) | |

| >>>>> | Veronica Polnick <          0279> | ◄ 3/7/2021, 9:23 PM |
|---|---|---|
| >>>>> VP | This is literally freeman's worst nightmare. She's the most private person I know. | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:24 PM |
|---|---|---|
| >>>>> MC | I know. I feel so terrible. But if we want to protect her, this is the route. It's gonna be fiiiiiine | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:24 PM) | |

| >>>>> | Veronica Polnick          0279> | ◄ 3/7/2021, 9:25 PM |
|---|---|---|
| >>>>> VP | You think we get out of this with 1) freeman still at JW, 2) Jones still on the bench and panel, and 3) still working with KE? | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:25 PM |
|---|---|---|
| >>>>> MC | All 3 | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:26 PM) | |

| >>>>> | Veronica Polnick          0279> | ◄ 3/7/2021, 9:26 PM |
|---|---|---|
| >>>>> VP | If you're right I'm buying you the biggest and most expensive bottle of brown booze I can find | |

| >>>>> | Veronica Polnick <     0279> | ◄ 3/7/2021, 9:26 PM |
|---|---|---|
| >>>>> VP | And then we're gonna drink the entire thing in one sitting | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:27 PM |
|---|---|---|
| >>>>> MC | Better buy 2 bottles then | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:28 PM) | |

| >>>>> | Veronica Polnick <     0279> | ◄ 3/7/2021, 9:29 PM |
|---|---|---|
| >>>>> VP | Loved "Better buy 2 bottles then" | |

| >>>>> | Matthew Cavenaugh <     2338> | ► 3/7/2021, 9:38 PM |
|---|---|---|
| >>>>> MC | But check in on Freeman on the reg, ok? | |
| | Receipts • Veronica Polnick          0279> (R 3/7/2021, 9:38 PM) | |

| >>>>> | Veronica Polnick <     0279> | ◄ 3/7/2021, 9:38 PM |
|---|---|---|
| >>>>> | Trying to. She's got her brave face on but it's just a face. | |

<div align="center">

**EXHIBIT 9**
**Page 5 of 45**

</div>



VP
>>>>>  Matthew Cavenaugh < ███ 2338>                                    ► 3/7/2021, 9:50 PM
>>>>>  Yup
MC

        Receipts • Veronica Polnick ███ 0279~ |R 3/7/2021, 10:09 PM|

>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 10:49 AM
>>>>>  Call when you can
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 10:57 AM
>>>>>
VP

        File "16c76264-4486-44cd-b1a8-5b34b0e97cd5.gif" is missing.
        Image: ~_Library_SMS_Attachments_b0_00_at_0_05300B7A-FEBF-4991-A083-D009898E3343_2F2D354C-EA07-
        4273-95D6-BE4CC890E130.gif

>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 10:57 AM
>>>>>  2F2D354C-EA07-4273-95D6-BE4CC890E130.gif
VP     https://p15-
        content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 12:25 PM
>>>>>  Sent you the motion
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 12:25 PM
>>>>>  Order and notice coming
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 12:25 PM
>>>>>  And I'm gonna need you to send me the email again Bc I also deleted it
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 12:47 PM
>>>>>  Go easy today
VP
>>>>>  Matthew Cavenaugh < ███ 2338>                                    ► 3/8/2021, 12:47 PM
>>>>>  On who?
MC

        Receipts • Veronica Polnick ███ 0279~ |R 3/8/2021, 12:47 PM|

>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 12:47 PM
>>>>>  ......
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 1:08 PM
>>>>>  Notice sent
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 1:08 PM
>>>>>  Prepping docs while you review
VP
>>>>>  Matthew Cavenaugh < ███ 2338>                                    ► 3/8/2021, 1:10 PM
>>>>>  Checked out
MC

        Receipts • Veronica Polnick ███ 0279~ |R 3/8/2021, 1:10 PM|

>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 1:10 PM
>>>>>  Sorry
VP
>>>>>  Veronica Polnick < ███ 0279>                                     ◄ 3/8/2021, 1:10 PM
>>>>>  Try now

**EXHIBIT 9**
**Page 6 of 45**



| | | |
|---|---|---|
| VP | | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 1:18 PM |
| >>>>> | ▓▓▓▓▓▓▓▓▓▓▓▓ | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ 3/8/2021, 1:18 PM | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:28 PM |
| >>>>> | I have to trash the ones I printed earlier. I blacked everything out with sharpie and am going to OS to shred it myself. | |
| VP | Think that's enough protection? | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 1:31 PM |
| >>>>> | Whaaa? | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓ ▓▓▓▓ 3/8/2021, 1:31 PM | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:31 PM |
| >>>>> | Questioned "Whaaa?" | |
| VP | | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:32 PM |
| >>>>> | Donde esta el confusion. | |
| VP | | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:35 PM |
| >>>>> | Fun fact | |
| VP | | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:35 PM |
| >>>>> | JW doesn't have a shredder | |
| VP | | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:35 PM |
| >>>>> | Maybe something to bring up at next partner mtg | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 1:36 PM |
| >>>>> | There is a bin with a pad lock. But if it helps you sleep at night, take them home for kindling 🔥 | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓ ▓▓▓▓ 3/8/2021, 1:36 PM | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 1:36 PM |
| >>>>> | Will do | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 1:52 PM |
| >>>>> | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓ ▓▓▓▓ 3/8/2021, 2:05 PM | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 1:52 PM |
| >>>>> | ▓▓▓▓▓▓▓▓▓ | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓ ▓▓▓▓ 3/8/2021, 2:05 PM | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 2:06 PM |
| >>>>> | ▓▓▓▓ | |
| VP | | |
| >>>>> | Veronica Polnick < ▓▓ 0279> | ◀ 3/8/2021, 2:10 PM |
| >>>>> | ▓▓▓▓▓▓ | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▓▓▓ 2338> | ▶ 3/8/2021, 2:10 PM |
| >>>>> | ▓▓▓▓ | |
| MC | | |
| | Receipts · ▓▓▓▓▓▓▓▓ ▓▓▓▓ 3/8/2021, 2:10 PM | |

**EXHIBIT 9**
**Page 7 of 45**



EXHIBIT 9
Page 8 of 45



**EXHIBIT 9**
**Page 9 of 45**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 74 | Date Range: 3/8/2021 - 3/9/2021 |

### Outline of Conversations



▪ ████2338 • 74 messages between 3/8/2021 - 3/9/2021 • Matthew Cavenaugh < ████2338> • Veronica Polnick ████0279> • _$!<Other>!$_ ████████@yahoo.com>

EXHIBIT 9
Page 10 of 45

JW_00025804

**Messages in chronological order** (times are shown in GMT -06:00)



| | +          2338 | |
| --- | --- | --- |
| VP | Veronica Polnick <          0279> | ◄ 3/8/2021, 6:03 PM |

File **"6b05120a-76f7-4c17-a489-d94fa8c5e2ed.gif"** is missing.
Image: ~_Library_SMS_Attachments_d6_06_at_0_FDBF2D11-247B-413D-B41F-577897D64A37_3C540CB4-8F2E-4C1F-91E4-BAB3FC25FAF6.gif

| > VP | Veronica Polnick <6313750279> | ◄ 3/8/2021, 6:03 PM |
| --- | --- | --- |

3C540CB4-8F2E-4C1F-91E4-BAB3FC25FAF6.gif
https://p61-content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

| > VP | Veronica Polnick <          0279> | ◄ 3/8/2021, 6:03 PM |
| --- | --- | --- |

| >> MC | Matthew Cavenaugh <          2338> | ► 3/8/2021, 6:17 PM |
| --- | --- | --- |

Receipts • Veronica Polnick <          0279> |R 3/8/2021, 6:17 PM|

| >>><br>MC | Matthew Cavenaugh <          2338> | ► 3/8/2021, 6:17 PM |
| --- | --- | --- |

Receipts • Veronica Polnick <          0279> |R 3/8/2021, 6:17 PM|

| >>>>><br>VP | Veronica Polnick <          0279> | ◄ 3/8/2021, 6:17 PM |
| --- | --- | --- |

| >>>>><br>VP | Veronica Polnick <          0279> | ◄ 3/8/2021, 6:17 PM |
| --- | --- | --- |
| | The KE pings have been an avalanche today on an already chaotic day | |

| >>>>>><br>> MC | Matthew Cavenaugh <          2338> | ► 3/8/2021, 7:55 PM |
| --- | --- | --- |

File **"0dda4ccb-9a10-4b9b-b13f-eb458337f1b2.jpeg"** is missing.
Image: ~_Library_SMS_Attachments_b7_07_at_0_74665A78-797C-4780-A582-5BF02A185F9A_documents filed today.jpeg

Receipts • Veronica Polnick <          0279> |R 3/8/2021, 7:56 PM|

| >>>>>><br>>> MC | Matthew Cavenaugh          2338> | ► 3/8/2021, 7:55 PM |
| --- | --- | --- |
| | documents filed today.jpeg<br>https://p09-content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN00 | |

Receipts • Veronica Polnick <          0279> |R 3/8/2021, 7:56 PM|

| >>>>>><br>>> MC | Matthew Cavenaugh <          2338> | ► 3/8/2021, 8:00 PM |
| --- | --- | --- |

**EXHIBIT 9**
**Page 11 of 45**

JW_00025805

*File "c66009cb-ba3c-4edd-9d3e-37c9d5b7a268" is missing*
*Attachment: 85625a44-c962-4384-a764-d3d68351350b*

Receipts • Veronica Polnick ████████ 0279> (R:3/8/2021, 8:00 PM)

>>>>> Matthew Cavenaugh <████ 2338>                                    ► 3/8/2021, 8:00 PM
>>>
MC      addendum to motion to recuse judge.doc
        https://p43-
        content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN0
        0

Receipts • Veronica Polnick ████████ 0279> (R:3/8/2021, 8:00 PM)

>>>>> Matthew Cavenaugh <████ 2338>                                    ► 3/8/2021, 8:28 PM
>>>
MC

*File "029f9259-dd50-4c81-bd0c-3f0e263262c0" is missing.*
*Attachment: 7c744485-633e-41d0-bba4-11a9865dcd95*

Receipts • Veronica Polnick ████████ 0279> (R:3/8/2021, 8:28 PM)

>>>>> Matthew Cavenaugh <████ 2338>                                    ► 3/8/2021, 8:28 PM
>>>>
MC      030621 corruption letter and envelope.pdf
        https://p43-
        content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN0
        0

Receipts • Veronica Polnick ████████ 0279> (R:3/8/2021, 8:28 PM)

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:32 PM
>>>>
VP      Ok Matt need you to focus buddy. Call me back when you're off your call

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:33 PM
>>>>>
VP

*File "0975bf6f-2337-4852-a06c-36b0453d5a59.gif" is missing.*
*Image: ~_Library_SMS_Attachments_e9_09_at_0_A504C43F-15F5-48EC-9C99-35E5C25E32CC_6B5E0DEA-1A57-*
*4C65-8CB9-E474CAACAD94.gif*

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:33 PM
>>>>>
VP      6B5E0DEA-1A57-4C65-8CB9-E474CAACAD94.gif
        https://p13-
        content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:55 PM
>>>>>
VP      Most importantly

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:55 PM
>>>>>
VP      It's going. To be. Ok.

>>>>> Veronica Polnick <████ 0279>                                     ◄ 3/8/2021, 8:56 PM
>>>>>
VP      There's going to be some embarrassment. But it's going to be ok. Make sure she knows that.

**EXHIBIT 9**
**Page 12 of 45**

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 8:56 PM
>>>>> Ok. Do you believe it?
MC

Receipts • Veronica Polnick 0279> |R 3/8/2021, 8:56 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:56 PM
>>>>> More today than yesterday, yes.
VP

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:56 PM
>>>>> Mainly Bc Isgur is ok
VP

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:56 PM
>>>>> Doesn't mean it's not gonna suck for a bit
VP

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 8:57 PM
>>>>> Yup. Just FYI, the firm is going to have a reaction, regardless of what the court does. It will probably mean that Liz
MC    can't work on DRJ cases until the dust settles. So we need to be prepared for that

Receipts • Veronica Polnick 0279> |R 3/8/2021, 8:57 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:58 PM
>>>>> Yup. Not surprised. Like walled off you mean. It'll be ok. We can handle that.
VP

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 8:58 PM
>>>>> Yes
MC

Receipts • Veronica Polnick 0279> |R 3/8/2021, 8:58 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:58 PM
>>>>> We know what he'll do, we can cover until that passes.
VP

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 8:59 PM
>>>>> Liked "We know what he'll do, we can cover until that passes."
MC

Receipts • Veronica Polnick 0279> |R 3/8/2021, 8:59 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 8:59 PM
>>>>> The team is gonna find out aren't they?
VP

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 9:24 PM
>>>>> She ok?
VP

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 9:42 PM
>>>>> Told her. She says she's ok. She's not
MC

Receipts • Veronica Polnick 0279> |R 3/8/2021, 9:42 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 9:42 PM
>>>>> Well she's nothing if not consistent
VP

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 9:47 PM
>>>>> What can we do for her? I'm looking for a thing to do. Whattttt can that thing beeeee?
VP

>>>>> **Matthew Cavenaugh** < 2338>    ▶ 3/8/2021, 10:08 PM
>>>>> Just love on her
MC

Receipts • Veronica Polnick 0279> |R 3/8/2021, 10:08 PM]

>>>>> **Veronica Polnick** < 0279>    ◀ 3/8/2021, 10:09 PM

**EXHIBIT 9**
**Page 13 of 45**

```
>>>>>   ....you sure she like that?
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:09 PM
>>>>>
VP      😁
>>>>>   Matthew Cavenaugh <        2338>                          ► 3/8/2021, 10:09 PM
>>>>>
MC
```

File "2f1fb877-34ea-42d7-9103-2685b6dee1c1.gif" is missing.
Image: ~_Library_SMS_Attachments_e9_09_at_0_82621BFF-6536-4B4C-8D8A-16826C54DDFA_IMG_4357.gif

Receipts • Veronica Polnick        0279> (R 3/8/2021, 10:09 PM)

```
>>>>>   Matthew Cavenaugh <        2338>                          ► 3/8/2021, 10:09 PM
>>>>>   IMG_4357.gif
MC      https://p52-
        content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD80AE3489350C2A.C01USN0
        0
```

Receipts • Veronica Polnick        0279> (R 3/8/2021, 10:09 PM)

```
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:10 PM
>>>>>   Yeah thatsssss about as touchy feely as I get
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:10 PM
>>>>>   I can def make fun of her tho 😂
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:12 PM
>>>>>   MATT SHE ACCEPTED MY OOO TODAY
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:12 PM
>>>>>   SHE ...ACCEPTED.... IT
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:12 PM
>>>>>
VP
```

File "5fab7d71-479f-4d89-9f98-198a5b207b5f.PNG" is missing.
Image: ~_Library_SMS_Attachments_9e_14_at_0_650160EC-2879-4693-AB5B-9B72D7227961_IMG_4650.PNG

```
>>>>>   Veronica Polnick        0279>                            ◄ 3/8/2021, 10:12 PM
>>>>>   IMG_4650.PNG
VP      https://p68-
        content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>>   Veronica Polnick        0279>                            ◄ 3/8/2021, 10:12 PM
>>>>>   She's not ok
VP
>>>>>   Matthew Cavenaugh        2338>                            ► 3/8/2021, 10:14 PM
>>>>>   Nope. Should we troll her with obscene OOO's?
MC
```

Receipts • Veronica Polnick        0279> (R 3/8/2021, 10:14 PM)

```
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:14 PM
>>>>>   Great idea. Inviting her only.
VP
>>>>>   Veronica Polnick <        0279>                          ◄ 3/8/2021, 10:14 PM
```

**EXHIBIT 9**
**Page 14 of 45**



>>>>> Copy each other for LOLz
VP

>>>>> Matthew Cavenaugh ▇▇2338>                                    ▶ 3/8/2021, 10:14 PM
>>>>> Yes
MC

Receipts • Veronica Polnick ▇▇0279▇ (▶ 3/8/2021, 10:14 PM)

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:15 PM
>>>>> Yessssssss
VP

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:18 PM
>>>>> Beat that
VP

>>>>> Matthew Cavenaugh ▇▇2338>                                    ▶ 3/8/2021, 10:19 PM
>>>>> Check it
MC

Receipts • Veronica Polnick ▇▇0279▇ (▶ 3/8/2021, 10:19 PM)

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:20 PM
>>>>> I have no calendar invite from you
VP

>>>>> Matthew Cavenaugh ▇▇2338>                                    ▶ 3/8/2021, 10:20 PM
>>>>>
MC

*File "f3a26512-54a4-42e1-98c7-a2f4d2e08e0e.jpeg" is missing.*
*Image: ~_Library_SMS_Attachments_20_00_at_0_467EE8AE-8CAF-47D3-AA08-77C3DB48B7F4_Out of Office.jpeg*

Receipts • Veronica Polnick ▇▇0279▇ (▶ 3/8/2021, 10:20 PM)

>>>>> Matthew Cavenaugh ▇▇2338>                                    ▶ 3/8/2021, 10:20 PM
>>>>> Out of Office.jpeg
MC     https://p52-
       content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN0
       0

Receipts • Veronica Polnick ▇▇0279▇ (▶ 3/8/2021, 10:20 PM)

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:21 PM
>>>>> Liked an image
VP

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:24 PM
>>>>> Omg Brooklyn so good
VP

>>>>> Veronica Polnick ▇▇0279>                                    ◀ 3/8/2021, 10:30 PM
>>>>> BEAT THAT
VP

>>>>> Matthew Cavenaugh ▇▇2338>                                    ▶ 3/8/2021, 10:33 PM
>>>>> Hahahaha
MC

Receipts • Veronica Polnick ▇▇0279▇ (▶ 3/8/2021, 10:34 PM)

>>>>> Matthew Cavenaugh <▇▇2338>                                   ▶ 3/8/2021, 10:38 PM
>>>>>
MC

*File "e8915456-4f46-445d-80c2-7b0af6825bff.HEIC" is missing.*
*Attachment: ~_Library_SMS_Attachments_f8_08_at_0_2F82427D-DF4D-466A-8650-*
*464EFAEA9BC1_63695748405___658FC0BD-CF0B-44CA-9901-D2F2E618D0FF.HEIC*

**EXHIBIT 9**
**Page 15 of 45**



VP
>>>>> Veronica Polnick < ███ 0279>                              ◀ 3/9/2021  10:33 AM
>>>>> Best of luck with that
VP
>>>>> Veronica Polnick < ███ 0279>                              ◀ 3/9/2021  10:33 AM
>>>>> I don't see that he filed a we list
VP
>>>>> Veronica Polnick < ███ 0279>                              ◀ 3/9/2021  11:38 AM
>>>>> Call you in a sec
VP

**EXHIBIT 9**
**Page 17 of 45**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 141 | Date Range: 3/9/2021 - 3/10/2021 |

### Outline of Conversations



💬 **+ ▓▓▓▓ 2338** · 141 messages between 3/9/2021 - 3/10/2021 · Matthew Cavenaugh < ▓▓▓▓ 2338> · Veronica Polnick < ▓▓▓▓ 0279> · _$!<Other>!$_ < ▓▓▓▓▓▓▓ @yahoo.com>

<span style="color:red">**EXHIBIT 9**</span>
<span style="color:red">**Page 18 of 45**</span>

**Messages in chronological order** (times are shown in GMT -06:00)

---

💬 **+18324962338**

| | | | |
|---|---|---|---|
| VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:05 PM |

| > MC | Matthew Cavenaugh <8324962338> ▉ | ► 3/9/2021, 7:09 PM |

Receipts • Veronica Polnick <6313750279> (R 3/9/2021, 7:09 PM]

| >> VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>> VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>>> VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>>>> VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>>>> > VP | Veronica Polnick <6313750279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>>>> >> MC | Matthew Cavenaugh <8324962338> ▉ | ► 3/9/2021, 7:10 PM |

Receipts • Veronica Polnick <▉0279> (R 3/9/2021, 7:10 PM]

| >>>>> >>> VP | Veronica Polnick <▉0279> ▉ | ◄ 3/9/2021, 7:10 PM |

| >>>>> >>>> MC | Matthew Cavenaugh <▉2338> | ► 3/9/2021, 7:12 PM |

File **"0c1bcaab-f66b-4ce8-b45d-5a61a35c21c1.jpeg"** is missing
Image: ~_Library_SMS_Attachments_35_05_at_0_AB27B1DD-7FDE-4131-A001-F3ECEBAD1EFD_Screenshot 2021-
03-09 at 7.11.54 PM.jpeg

Receipts • Veronica Polnick <▉0279> (R 3/9/2021, 7:12 PM]

| >>>>> >>>>> MC | Matthew Cavenaugh <▉2338> Screenshot 2021-03-09 at 7.11.54 PM.jpeg https://p67-content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN00 | ► 3/9/2021, 7:12 PM |

Receipts • Veronica Polnick <▉0279> (R 3/9/2021, 7:12 PM]

| >>>>> >>>>> VP | Veronica Polnick <▉0279> Loved an image | ◄ 3/9/2021, 7:12 PM |

| >>>>> >>>>> | Matthew Cavenaugh <▉2338> ☺ | ► 3/9/2021, 7:51 PM |

<span style="color:red">**EXHIBIT 9**
**Page 19 of 45**</span>



Confidential

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 7:56 PM |
| >>>>> | You and I included | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 7:59 PM |
| >>>>> | I made the same exact point to her today. | |
| MC | | |
| | Receipts • Veronica Polnick < ████ 0279> [R:3/9/2021, 7:59 PM] | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 7:59 PM |
| >>>>> | THE SAME | |
| MC | | |
| | Receipts • Veronica Polnick < ████ 0279> [R:3/9/2021, 7:59 PM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 7:59 PM |
| >>>>> | Liked "I made the same exact point to her today." | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 7:59 PM |
| >>>>> | And she's going to resist it but the best thing we can do to protect her is force her to protect herself | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 7:59 PM |
| >>>>> | And I had a recommendation, but I've retracted it | |
| MC | | |
| | Receipts • Veronica Polnick < ████ 0279> [R:3/9/2021, 7:59 PM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 7:59 PM |
| >>>>> | Who was it | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 8:00 PM |
| >>>>> | Who would you recommend? | |
| MC | | |
| | Receipts • Veronica Polnick < ████ 0279> [R:3/9/2021, 8:00 PM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:00 PM |
| >>>>> | Fak | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:01 PM |
| >>>>> | Pat Hughes | |
| VP | Bill Greendyke is perfect but maybe too soft. | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:01 PM |
| >>>>> | Big T prob can't | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:01 PM |
| >>>>> | But maybe | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 8:02 PM |
| >>>>> | Sylvia? | |
| MC | | |
| | Receipts • Veronica Polnick < ████ 0279> [R:3/9/2021, 8:02 PM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:02 PM |
| >>>>> | Mayer? | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick < ████ 0279> | ◁ 3/9/2021, 8:02 PM |
| >>>>> | Also great | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh < ████ 2338> | ▶ 3/9/2021, 8:02 PM |
| >>>>> | Just trying to get a female perspective | |

**EXHIBIT 9**
**Page 21 of 45**

JW_00025815

MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:02 PM]

>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:03 PM
>>>>>  Who else did jones appoint on that westmoreland panel
VP
>>>>>  **Matthew Cavenaugh** ████████2338>                                       ► 3/9/2021, 8:03 PM
>>>>>  Allyson Byman
MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:03 PM]

>>>>>  **Veronica Polnick** ████████50279>                                       ◄ 3/9/2021, 8:03 PM
>>>>>  No
VP
>>>>>  **Matthew Cavenaugh** ████████2338>                                       ► 3/9/2021, 8:03 PM
>>>>>  Agree
MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:03 PM]

>>>>>  **Matthew Cavenaugh** ████████2338>                                       ► 3/9/2021, 8:03 PM
>>>>>  Can't be a trustee
MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:03 PM]

>>>>>  **Veronica Polnick** ████████50279>                                       ◄ 3/9/2021, 8:03 PM
>>>>>  Also no
VP
>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:05 PM
>>>>>  Who reps Jan
VP
>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:05 PM
>>>>>  Not Wayne
VP
>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:06 PM
>>>>>  Her good one
VP
>>>>>  **Matthew Cavenaugh** ████████2338>                                       ► 3/9/2021, 8:06 PM
>>>>>  In what?
MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:06 PM]

>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:06 PM
>>>>>  In her real shit
VP
>>>>>  **Matthew Cavenaugh** ████████2338>                                       ► 3/9/2021, 8:06 PM
>>>>>  Josh
MC

Receipts • Veronica Polnick ███████0279> [R:3/9/2021, 8:06 PM]

>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:06 PM
>>>>>  Yeah no
VP
>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:06 PM
>>>>>  No PG
VP
>>>>>  **Veronica Polnick** ████████0279>                                        ◄ 3/9/2021, 8:06 PM
>>>>>  PH
VP
>>>>>  **Veronica Polnick** ████████50279>                                       ◄ 3/9/2021, 8:10 PM

**EXHIBIT 9**
**Page 22 of 45**

>>>>> Pat or Shelly
VP
>>>>> Matthew Cavenaugh ████2338>                                    ▶ 3/9/2021, 8:12 PM
>>>>> Shelly?
MC

Receipts • Veronica Polnick ████279> [R:3/9/2021, 8:12 PM]

>>>>> Veronica Polnick ████0279>                                    ◀ 3/9/2021, 8:12 PM
>>>>> Sylvia
VP
>>>>> Veronica Polnick <████0279>                                   ◀ 3/9/2021, 8:12 PM
>>>>> Sorry lol
VP



>>>>> Veronica Polnick ████0279>                                    ◀ 3/9/2021, 9:28 PM
>>>>>
VP

*File "4aedacaf-ae66-45b3-96bf-b56d6d2a308f.gif" is missing.*
*Image: ~_Library_SMS_Attachments_98_08_at_0_52825677-8552-43DE-A718-1673702ADDB4_DB08D745-E9BC-4CB4-9C1A-A5DF887808AD.gif*

>>>>> Veronica Polnick ████0279>                                    ◀ 3/9/2021, 9:28 PM
>>>>> DB08D745-E9BC-4CB4-9C1A-A5DF887808AD.gif
VP     https://p38-
       content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>> Veronica Polnick ████0279>                                    ◀ 3/9/2021, 9:28 PM
>>>>> Don't come for my Liz
VP

<div align="center">**EXHIBIT 9**
**Page 23 of 45**</div>

>>>>> **Matthew Cavenaugh** ████████ 2338>                    ▶ 3/9/2021, 9:28 PM
>>>>> Dude. YES
MC

    Receipts • Veronica Polnick ████████ 0279> [R:3/9/2021, 10:31 PM]

>>>>> **Matthew Cavenaugh** ████████ 2338>                    ▶ 3/9/2021, 10:29 PM
>>>>> I think we got this
MC

    Receipts • Veronica Polnick < ███████ 0279> [R:3/9/2021, 10:31 PM]

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:32 PM
>>>>> I do too
VP

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:32 PM
>>>>> ████████████████████████████████████
VP

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:32 PM
>>>>> Does Bruce know that I know now?
VP

>>>>> **Matthew Cavenaugh** < ███████ 2338>                   ▶ 3/9/2021, 10:32 PM
>>>>> Yes
MC

    Receipts • Veronica Polnick < ███████ 0279> [R:3/9/2021, 10:32 PM]

>>>>> **Veronica Polnick** < ███████ 0279>                    ◀ 3/9/2021, 10:32 PM
>>>>> Ok
VP

>>>>> **Matthew Cavenaugh** < ███████ 2338>                   ▶ 3/9/2021, 10:32 PM
>>>>> I told him I had to loop you in for the filings
MC

    Receipts • Veronica Polnick - ███████ 0279> [R:3/9/2021, 10:32 PM]

>>>>> **Veronica Polnick** < ███████ 0279>                    ◀ 3/9/2021, 10:33 PM
>>>>> That's fine. Doesn't bother me if he knew that I knew before anyway. But I won't volunteer that
VP

>>>>> **Matthew Cavenaugh** ████████ 2338>                    ▶ 3/9/2021, 10:33 PM
>>>>> He does not know that
MC

    Receipts • Veronica Polnick - ███████ 0279> [R:3/9/2021, 10:33 PM]

>>>>> **Veronica Polnick** < ███████ 0279>                    ◀ 3/9/2021, 10:39 PM
>>>>> I know there's a lot of things to unpack in what I'm about to send but....
VP

    Watching other people's chaos brings me great peace.

    If you're also like that pls enjoy 18 mins of a crack head freaking out in a trap house

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:39 PM
>>>>> https://fb.watch/481K-OY4P9/
VP

    *Attachment: ~_Library_SMS_Attachments_a2_02_at_0_BF7E2E78-1058-4660-98B0-11948A14D1E0_4F170A21-BEA5-41DB-9EA4-373241B53B67.pluginPayloadAttachment (6 KB)*

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:39 PM
>>>>> 4F170A21-BEA5-41DB-9EA4-373241B53B67.pluginPayloadAttachment
VP

>>>>> **Veronica Polnick** ████████ 0279>                     ◀ 3/9/2021, 10:40 PM
>>>>> I feel zen AF

<span style="color:red">**EXHIBIT 9**
**Page 24 of 45**</span>

| | | |
|---|---|---|
| VP | | |
| >>>>> | Matthew Cavenaugh ███████2338> | ▶ 3/9/2021, 10:50 PM |
| >>>>> | Wtf? | |
| MC | | |
| | Receipts • Veronica Polnick ███████0279> (R 3/9/2021, 10:50 PM† | |
| >>>>> | Matthew Cavenaugh ███████2338> | ▶ 3/9/2021, 10:50 PM |
| >>>>> | Only if that is your baseline | |
| MC | | |
| | Receipts • Veronica Polnick ███████0279> (R 3/9/2021, 10:50 PM| | |
| >>>>> | Veronica Polnick ███████0279> | ◀ 3/9/2021, 10:51 PM |
| >>>>> | Hoarders, intervention, 1000lb sisters, all just make me feel zen. Chill AF. Ready for tomorrow. 😊🙏 | |
| VP | | |
| >>>>> | Matthew Cavenaugh ███████2338> | ▶ 3/9/2021, 11:05 PM |
| >>>>> | ████████████████████████ | |
| MC | | |
| | Receipts • Veronica Polnick ███████0279> (R 3/9/2021, 11:05 PM| | |
| >>>>> | Veronica Polnick ◀███████0279> | ◀ 3/9/2021, 11:05 PM |
| >>>>> | █████████████████████ | |
| VP | | |
| >>>>> | Veronica Polnick ◀███████0279> | ◀ 3/9/2021, 11:05 PM |
| >>>>> | ███████ | |
| VP | | |
| >>>>> | Veronica Polnick ◀███████0279> | ◀ 3/9/2021, 11:06 PM |
| >>>>> | █████████████ | |
| VP | | |
| >>>>> | Veronica Polnick ███████0279> | ◀ 3/9/2021, 11:06 PM |
| >>>>> | █████████ | |
| VP | | |
| >>>>> | Matthew Cavenaugh ███████2338> | ▶ 3/9/2021, 11:06 PM |
| >>>>> | Ok. Imma gonna go to bed. Otherwise, I'm gonna over think it | |
| MC | | |
| | Receipts • Veronica Polnick ███████0279> (R 3/9/2021, 11:06 PM| | |
| >>>>> | Veronica Polnick ███████0279> | ◀ 3/9/2021, 11:06 PM |
| >>>>> | Liked "Ok. Imma gonna go to bed. Otherwise, I'm gonna over think it" | |
| VP | | |
| >>>>> | Veronica Polnick ◀███████0279> | ◀ 3/9/2021, 11:06 PM |
| >>>>> | Watch a quick intervention clip and call it a night. Trust me. 😊 | |
| VP | | |
| >>>>> | Matthew Cavenaugh ◀███████2338> | ▶ 3/9/2021, 11:07 PM |
| >>>>> | I only got 1 hour of sleep last night. 4 hours of just energy calls, and 3 hours of re reading all of my declarations in prior cases | |
| MC | | |
| | Receipts • Veronica Polnick ◀███████0279> (R 3/9/2021, 11:07 PM| | |
| >>>>> | Veronica Polnick ███████0279> | ◀ 3/9/2021, 11:07 PM |
| >>>>> | JFC. Go to sleep | |
| VP | | |
| >>>>> | Veronica Polnick <███████0279> | ◀ 3/9/2021, 11:08 PM |
| >>>>> | This is gonna be ok | |
| VP | | |
| >>>>> | Veronica Polnick ◀███████0279> | ◀ 3/9/2021, 11:08 PM |
| >>>>> | I can feel it | |
| VP | | |
| >>>>> | Matthew Cavenaugh <███████2338> | ▶ 3/9/2021, 11:08 PM |
| | Loved "I can feel it" | |

**EXHIBIT 9**
**Page 25 of 45**



**EXHIBIT 9**
**Page 26 of 45**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 120 | Date Range: 3/10/2021 - 3/11/2021 |

### Outline of Conversations



💬   ▪ ████ 2338 • 120 messages between 3/10/2021 - 3/11/2021 • Matthew Cavenaugh <████ 2338> • Veronica Polnick <████ 0279> • _$!<Other>!$_ <████████ @yahoo.com>

**EXHIBIT 9**
**Page 27 of 45**

**Messages in chronological order** (times are shown in GMT -06:00)

---

💬 ████2338

| | | | |
|---|---|---|---|
| MC | **Matthew Cavenaugh <**████2338**>** | ▶ | 3/10/2021, 8:00 PM |
| | Was I too rough? | | |

Receipts • Veronica Polnick <████0279> [R:3/10/2021, 8:00 PM]

| | | | |
|---|---|---|---|
| > VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:00 PM |
| | No you were fine. | | |

| | | | |
|---|---|---|---|
| >> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:00 PM |
| | I'm glad you told her about Monica | | |

| | | | |
|---|---|---|---|
| >>> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:00 PM |
| | And I also spoke to big guy again | | |

| | | | |
|---|---|---|---|
| >>>> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:01 PM |
| | She just went home too. Which I think is good | | |

| | | | |
|---|---|---|---|
| >>>>> MC | **Matthew Cavenaugh <**████2338**>** | ▶ | 3/10/2021, 8:03 PM |
| | What did big guy say? | | |

Receipts • Veronica Polnick <████0279> [R:3/10/2021, 8:04 PM]

| | | | |
|---|---|---|---|
| >>>>> > VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:57 PM |
| | Monday is low if I can't bill like Willie but it's not as bad as I thought! | | |

*File "3336f792-0c96-4d05-8da7-88c690a0da2c.HEIC" is missing.*
*Attachment: ~_Library_SMS_Attachments_fc_12_at_0_5F5D73B8-5F3D-4B89-874A-5E839BEB507D_IMG_4700.HEIC*

| | | | |
|---|---|---|---|
| >>>>> >> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:57 PM |
| | IMG_4700.HEIC | | |
| | https://p47- | | |
| | content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00 | | |

| | | | |
|---|---|---|---|
| >>>>> >> MC | **Matthew Cavenaugh <**████2338**>** | ▶ | 3/10/2021, 8:59 PM |
| | Ha! | | |

Receipts • Veronica Polnick <████0279> [R:3/10/2021, 8:59 PM]

| | | | |
|---|---|---|---|
| >>>>> >>> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:59 PM |
| | 😂😂😂 | | |

| | | | |
|---|---|---|---|
| >>>>> >>>> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:59 PM |
| | I also didn't bill for the hearings today 😂😂 | | |

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | **Veronica Polnick <**████0279**>** | ◀ | 3/10/2021, 8:59 PM |
| | This is fun | | |

| | | | |
|---|---|---|---|
| >>>>> >>>>> MC | **Matthew Cavenaugh <**████2338**>** | ▶ | 3/10/2021, 8:59 PM |
| | Well yah! | | |

Receipts • Veronica Polnick <████0279> [R:3/10/2021, 8:59 PM]

<span style="color:red">**EXHIBIT 9**
**Page 28 of 45**</span>

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:00 PM
>>>>> Was I too hard on her?
MC

    Receipts • Veronica Polnick <███0279> [R:3/10/2021, 9:00 PM]

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:00 PM
>>>>> You really weren't. She's just fucking miserable right now
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:00 PM
>>>>> You didn't say anything mean to her
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:00 PM
>>>>> Just telling her what's happened and what we need to do 😥
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:00 PM
>>>>> She thinks her entire world is crumbling
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:01 PM
>>>>> And she thinks she's taking us and the district down with her
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:01 PM
>>>>> The asshole side of me (3/4 of me really) wants to tell her to stop thinking so highly of herself 😩😩😩
VP

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:01 PM
>>>>> Ha. Yah
MC

    Receipts • Veronica Polnick <███0279> [R:3/10/2021, 9:01 PM]

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:04 PM
>>>>> Between you and me, I'm very angry at 400. Not because of what happened, but because of the dismissiveness of the
MC issues. Shit like "glass houses" etc is so not fucking helpful

    Receipts • Veronica Polnick <███0279> [R:3/10/2021, 9:04 PM]

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:04 PM
>>>>> I know. He's not ok either.
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:04 PM
>>>>> He's just better at faking it
VP

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:05 PM
>>>>> Attitudes like that can only end in bad results for our friend. He will be fine. But she will be not
MC

    Receipts • Veronica Polnick <███0279> [R:3/10/2021, 9:05 PM]

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:05 PM
>>>>> It's fucking selfish
MC

    Receipts • Veronica Polnick <███0279> [R:3/10/2021, 9:05 PM]

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:05 PM
>>>>> I know. That's why I called him and told him to give her a hug and be nice.
VP

>>>>> **Veronica Polnick <███0279>** ◀ 3/10/2021, 9:05 PM
>>>>> Because let the world burn is his default setting
VP

>>>>> **Matthew Cavenaugh <███2338>** ▶ 3/10/2021, 9:06 PM
>>>>> Yup

**EXHIBIT 9**
**Page 29 of 45**



MC

Receipts · Veronica Polnick <████████0279> [R:3/10/2021, 9:07 PM]

>>>>> Matthew Cavenaugh <████ 2338>                                    ▶ 3/10/2021, 9:07 PM
>>>>> And it's a fucking selfish attitude
MC

Receipts · Veronica Polnick <████████0279> [R:3/10/2021, 9:07 PM]

>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:07 PM
>>>>> Well he wouldn't dispute that
VP

>>>>> Matthew Cavenaugh <████ 2338>                                    ▶ 3/10/2021, 9:07 PM
>>>>> Yup.  Which is why she needs to have independent advice
MC

Receipts · Veronica Polnick <████████0279> [R:3/10/2021, 9:07 PM]

>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:07 PM
>>>>> He's thinking of this too much like David jones and a judge
VP
>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:07 PM
>>>>> And not like what he is
VP
>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:08 PM
>>>>> In addition to those things
VP
>>>>> Matthew Cavenaugh <████████ 2338>                                ▶ 3/10/2021, 9:10 PM
>>>>> Yup.  But he needs to not be like that
MC

Receipts · Veronica Polnick <████ 0279> [R:3/10/2021, 9:11 PM]

>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:11 PM
>>>>> I know. And now he does too. Usually freeman is the one to tell him "stop it, don't do that."
VP
>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:12 PM
>>>>> But when it's about her.....there's no one to body check him
VP
>>>>> Matthew Cavenaugh <████ 2338>                                    ▶ 3/10/2021, 9:23 PM
>>>>> Yup
MC

Receipts · Veronica Polnick <████ 0279> [R:3/10/2021, 9:23 PM]

>>>>> Matthew Cavenaugh <████ 2338>                                    ▶ 3/10/2021, 9:24 PM
>>>>> We don't want Monica to be right, right?
MC

Receipts · Veronica Polnick <████████ 0279> [R:3/10/2021, 9:24 PM]

>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:24 PM
>>>>> About women taking it the hardest?
VP
>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:25 PM
>>>>> Won't let that happen. And I won't let him let that happen. And at the end of the day he won't let that happen.
VP
>>>>> Veronica Polnick <████ 0279>                                     ◀ 3/10/2021, 9:26 PM
>>>>> Protective Matt is fantastic though
VP

**EXHIBIT 9**
**Page 30 of 45**



>>>>> **Matthew Cavenaugh** <████████338>   ▶ 3/10/2021, 9:27 PM
>>>>> It's not my favorite look. It's reactionary and instinctual
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 9:55 PM]

>>>>> **Matthew Cavenaugh** <████2338>   ▶ 3/10/2021, 9:30 PM
>>>>> But it's 💯 dna. Since my dad died when I was 16 and left me with my mom and 3 younger sisters. You can fucking
MC      google map it. Freeman is my big sis. Anyone fucks with her (including 400) you will see a fucking scary monster.

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 9:55 PM]

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 9:55 PM
>>>>> I get it. And it's the reason you can handle this entire crew.
VP

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 9:56 PM
>>>>> An important tip to remember: it's dna for Jones too. Big time family issues too. It's his armor. It's not all real.
VP

>>>>> **Matthew Cavenaugh** <████2338>   ▶ 3/10/2021, 10:05 PM
>>>>> Yup
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 10:08 PM]

>>>>> **Matthew Cavenaugh** <████2338>   ▶ 3/10/2021, 10:05 PM
>>>>> And it's a blind spot
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 10:08 PM]

>>>>> **Matthew Cavenaugh** <████2338>   ▶ 3/10/2021, 10:05 PM
>>>>> It's mine
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 10:08 PM]

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 10:08 PM
>>>>> Everyone has them
VP

>>>>> **Matthew Cavenaugh** <████████338>   ▶ 3/10/2021, 10:09 PM
>>>>> Yes. But 400 needs to get real about his
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 10:09 PM]

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 10:09 PM
>>>>> Agree
VP

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 10:14 PM
>>>>> I AM IN A STABLE 19 YEAR RELATIONSHIP WHY AM I EMOTIONALLY EXHAUSTED
VP

>>>>> **Matthew Cavenaugh** <████2338>   ▶ 3/10/2021, 10:16 PM
>>>>> Because life
MC

Receipts • Veronica Polnick ████████0279> [R:3/10/2021, 10:16 PM]

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 10:16 PM
>>>>> Emphasized "Because life "
VP

>>>>> **Veronica Polnick** <████0279>   ◀ 3/10/2021, 10:17 PM
>>>>>
VP

*File "2044092a-a843-4a49-8382-61890e2e70f4.gif"* is missing.
*Image: ~_Library_SMS_Attachments_cc_12_at_0_8891EE6E-17D8-4BF0-8383-1E07A41B6A74_013A80AC-90BC-*

**EXHIBIT 9**
**Page 31 of 45**

*456F-B527-A314E1A6972B.gif*

| | | | |
|---|---|---|---|
| >>>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:17 PM |
| >>>>>> | 013A80AC-90BC-456F-B527-A314E1A6972B.gif | | |
| VP | https://p46-content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN0 | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:19 PM |
| >>>>> | Yes, VAP | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:19 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:30 PM |
| >>>>> | So he did talk to Suss or he's going to talk to suss? | | |
| MC | | | |
| | Receipts • Veronica Polnick <6313750279> [R:3/10/2021, 10:31 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:31 PM |
| >>>>> | Already did | | |
| VP | | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:31 PM |
| >>>>> | ████████████████████████████ | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:32 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:32 PM |
| >>>>> | ███████ | | |
| VP | | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:32 PM |
| >>>>> | That's interesting. Who called who? | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:32 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:32 PM |
| >>>>> | Jones called Suss | | |
| VP | | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:33 PM |
| >>>>> | Those 'tinis still hittin? Bc I told you all about his convo with Suss a couple hours ago | | |
| VP | | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:33 PM |
| >>>>> | K fine it was super vague yo | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:34 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:34 PM |
| >>>>> | Info I got was vague too lol | | |
| VP | | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:34 PM |
| >>>>> | You also said he said it was a good idea | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:34 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Matthew Cavenaugh <_____2338> | ► | 3/10/2021, 10:34 PM |
| >>>>> | Which made me think he hadn't yet | | |
| MC | | | |
| | Receipts • Veronica Polnick <_____0279> [R:3/10/2021, 10:34 PM] | | |

| | | | |
|---|---|---|---|
| >>>>> | Veronica Polnick <_____0279> | ◄ | 3/10/2021, 10:34 PM |
| >>>>> | Oh no he had | | |

**EXHIBIT 9**
**Page 32 of 45**



| VP | | |
|---|---|---|
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:34 PM |
| >>>>> | ▮▮▮▮▮▮▮▮▮▮ | |
| VP | | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:35 PM |
| >>>>> | But Jones acknowledged that even if Suss was freaking out he might jot say it | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/10/2021, 10:35 PM |
| >>>>> | ▮▮▮▮▮ | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/10/2021, 10:35 PM] | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:35 PM |
| >>>>> | ▮▮ | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/10/2021, 10:35 PM |
| >>>>> | ▮ | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/10/2021, 10:35 PM] | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:35 PM |
| >>>>> | ▮▮▮ | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/10/2021, 10:35 PM |
| >>>>> | I'm done | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/10/2021, 10:35 PM] | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:35 PM |
| >>>>> | ▮▮▮▮ | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/10/2021, 10:35 PM |
| >>>>> | Need to get the download from freeman | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/10/2021, 10:35 PM] | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:36 PM |
| >>>>> | Yes tomorrow am we need to FaceTime her | |
| VP | | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:36 PM |
| >>>>> | She needs to get some rest in her own bed. Get her feet back under her and ground herself tonight. | |
| VP | | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/10/2021, 10:36 PM |
| >>>>> | Tomorrow back at it | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/11/2021, 4:15 AM |
| >>>>> | Liked "Tomorrow back at it" | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/11/2021, 7:52 AM] | |
| >>>>> | Veronica Polnick < ▮0279> | ◄ 3/11/2021, 11:03 AM |
| >>>>> | You talk to her yet today? | |
| VP | | |
| >>>>> | Matthew Cavenaugh < ▮2338> | ► 3/11/2021, 11:29 AM |
| >>>>> | Yes. | |
| MC | | |
| | Receipts • Veronica Polnick < ▮0279> [R:3/11/2021, 11:32 AM] | |

**EXHIBIT 9**
**Page 33 of 45**

JW_00025829



>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:30 AM
>>>>> She seems much better
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:32 AM]

>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:30 AM
>>>>> I'm supposed to roll by 400 today
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:32 AM]

>>>>> Matthew Cavenaugh <████338>    ► 3/11/2021, 11:30 AM
>>>>> When he frees up
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:32 AM]

>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:32 AM
>>>>> Yep I heard
VP
>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:32 AM
>>>>> She looks better
VP
>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:32 AM
>>>>> He was nice to her
VP
>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:32 AM
>>>>> GOOD
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:32 AM]

>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:32 AM
>>>>> Good thing he didn't see that dress
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:32 AM]

>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:32 AM
>>>>> Oh he did
VP
>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:33 AM
>>>>> I showed him a pic
VP
>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:33 AM
>>>>> Zero percent chance of me not doing that
VP
>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:33 AM
>>>>> It haunts me
MC

Receipts • Veronica Polnick <████0279> [R:3/11/2021, 11:33 AM]

>>>>> Veronica Polnick <████0279>    ◄ 3/11/2021, 11:33 AM
>>>>> Also this week he did the research you guys asked me to do so I'm gonna copy his homework and still double check
VP
>>>>> Matthew Cavenaugh <████2338>    ► 3/11/2021, 11:34 AM
>>>>>
MC

File **"b6343b9a-4bbd-4423-a260-1fc3c9aeeaad.gif"** is missing.
Image: ~_Library_SMS_Attachments_00_00_at_0_6AF06C9F-C9D9-42EF-86A7-680AA457897C_IMG_3905.gif

Receipts • Veronica Polnick <████0279> [R:3/██████ AM]

**EXHIBIT 9**
**Page 34 of 45**

| | | | |
|---|---|---|---|
| >>>>> >>>>> MC | **Matthew Cavenaugh** <██████2338> IMG_3905.gif https://p21-content.icloud.com/M550D8ACDB82CF05F5934A5901AD2DE2CE92B60493AFA5B1CDD60AE3489350C2A.C01USN00 | ▶ | 3/11/2021, 11:34 AM |

Receipts • Veronica Polnick <██████0279> [R:3/11/2021, 11:34 AM]

| | | | |
|---|---|---|---|
| >>>>> >>>>> MC | **Matthew Cavenaugh** <██████2338> NICE.  So we were asking the right questions, huh? | ▶ | 3/11/2021, 11:34 AM |

Receipts • Veronica Polnick <██████0279> [R:3/11/2021, 11:34 AM]

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Yup | ◀ | 3/11/2021, 11:34 AM |
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Yeah Matt start us off | ◀ | 3/11/2021, 2:15 PM |
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Anything new? | ◀ | 3/11/2021, 2:15 PM |
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Have we considered hiring a PR firm? | ◀ | 3/11/2021, 2:53 PM |
| >>>>> >>>>> MC | **Matthew Cavenaugh** <██████2338> We have. And we did | ▶ | 3/11/2021, 2:53 PM |

Receipts • Veronica Polnick <██████0279> [R:3/11/2021, 2:53 PM]

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Oh great | ◀ | 3/11/2021, 2:53 PM |
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Who did we hire? | ◀ | 3/11/2021, 2:53 PM |
| >>>>> >>>>> MC | **Matthew Cavenaugh** <██████2338> Androvett | ▶ | 3/11/2021, 2:53 PM |

Receipts • Veronica Polnick <██████0279> [R:3/11/2021, 2:53 PM]

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> Very cool | ◀ | 3/11/2021, 2:53 PM |
| >>>>> >>>>> MC | **Matthew Cavenaugh** <██████2338> And Lisa lemaster | ▶ | 3/11/2021, 2:53 PM |

Receipts • Veronica Polnick <██████0279> [R:3/11/2021, 2:53 PM]

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | **Veronica Polnick** <██████0279> | ◀ | 3/11/2021, 2:54 PM |

*File **"c2f61f01-ea0d-4aa8-aee2-86bc363799f4.gif"** is missing.*
*Image: ~_Library_SMS_Attachments_f1_01_at_0_6188E39D-261C-44A0-AEE1-AF171DECD00D_567AA0A8-6118-4378-8E8F-30AAB621BD4F.gif*

| | | | |
|---|---|---|---|
| >>>>> >>>>> | **Veronica Polnick** <██████0279> 567AA0A8-6118-4378-8E8F-30AAB621BD4F.gif | ◀ | 3/11/2021, 2:54 PM |

**EXHIBIT 9**
**Page 35 of 45**

VP    https://p27-
      content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>>  **Veronica Polnick <▮▮▮▮0279>**                          ◁ 3/11/2021, 2:54 PM
>>>>>  That's great. Does Liz know?
VP
>>>>>  **Matthew Cavenaugh <▮▮▮▮2338>**                         ▶ 3/11/2021, 2:58 PM
>>>>>  No
MC
      Receipts • Veronica Polnick <▮▮▮▮0279> [R:3/11/2021, 2:59 PM]

>>>>>  **Veronica Polnick <▮▮▮▮0279>**                          ◁ 3/11/2021, 2:59 PM
>>>>>  Ok
VP
>>>>>  **Veronica Polnick <▮▮▮▮0279>**                          ◁ 3/11/2021, 2:59 PM
>>>>>  Vault: activated
VP
>>>>>  **Veronica Polnick <▮▮▮▮0279>**                          ◁ 3/11/2021, 2:59 PM
>>>>>  ...again
VP
>>>>>  **Veronica Polnick <▮▮▮▮0279>**                          ◁ 3/11/2021, 4:14 PM
>>>>>  Welp Ciara saw the van deelen stuff
VP

**EXHIBIT 9**
**Page 36 of 45**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 8 | Date Range: 4/12/2021 |

### Outline of Conversations

💬 ▮▮▮▮▮2338 · 8 messages on 4/12/2021 · Matthew Cavenaugh < ▮▮▮2338> · Veronica Polnick < ▮▮▮0279> · _$!<Other>!$_ < ▮▮▮▮@yahoo.com>

**EXHIBIT 9**
**Page 37 of 45**

JW_00025833

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬    +▮▮▮▮2338

| | | | |
|---|---|---|---|
| VP | **Veronica Polnick** <▮▮▮▮0279> | ◄ | 4/12/2021, 10:48 AM |
| | De-fucking-equitization and Priya isn't talking to Liz? I've been living in your field!!!! | | |

| | | | |
|---|---|---|---|
| > MC | **Matthew Cavenaugh** <▮▮▮2338> | ► | 4/12/2021, 10:49 AM |
| | She's not being de-equalitized. Over my dead body. There will be some voodoo math to extricate any financial interest from Jones cases. That is the last I heard. | | |

Receipts • Veronica Polnick <▮▮▮▮0279> [R:4/12/2021, 10:49 AM]

| | | | |
|---|---|---|---|
| >> VP | **Veronica Polnick** <▮▮▮0279> | ◄ | 4/12/2021, 10:50 AM |
| | This is fucking bananas | | |

| | | | |
|---|---|---|---|
| >>> VP | **Veronica Polnick** <▮▮▮0279> | ◄ | 4/12/2021, 10:50 AM |
| | That's half of her work! | | |

| | | | |
|---|---|---|---|
| >>>> MC | **Matthew Cavenaugh** <▮▮▮2338> | ► | 4/12/2021, 10:50 AM |
| | The Priya thing is pissing me off the most. Not only is she not talking to Liz, she hasn't talked to me in 1.5months | | |

Receipts • Veronica Polnick <▮▮▮0279> [R:4/12/2021, 10:50 AM]

| | | | |
|---|---|---|---|
| >>>>> VP | **Veronica Polnick** <▮▮▮0279> | ◄ | 4/12/2021, 10:50 AM |
| | Is she pissed you guys didn't talk to her sooner? | | |

| | | | |
|---|---|---|---|
| >>>>> > VP | **Veronica Polnick** <▮▮▮0279> | ◄ | 4/12/2021, 10:53 AM |
| | Matt this is fucking crazy | | |

| | | | |
|---|---|---|---|
| >>>>> >> MC | **Matthew Cavenaugh** <▮▮▮2338> | ► | 4/12/2021, 10:53 AM |
| | Yes | | |

Receipts • Veronica Polnick <▮▮▮0279> [R:4/12/2021, 10:55 AM]

**EXHIBIT 9**
**Page 38 of 45**

JW_00025834

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 2 | Date Range: 5/3/2021 |

**Outline of Conversations**



💬　　　■■■■2338 • 2 messages on 5/3/2021 • Matthew Cavenaugh <■■■2338> • Veronica Polnick <■■■279> • _$!<Other>!$_ <■■■■@yahoo.com>

**EXHIBIT 9**
**Page 39 of 45**

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬　**+█████2338**

VP　**Veronica Polnick <█████0279>**　　　　　◀ 5/3/2021, 4:24 PM
I know you're emailing and you know to leave Liz off the email re van deelen but don't forget to leave off jwdebtor team too

> MC　**Matthew Cavenaugh <█████2338>**　　　　　▶ 5/3/2021, 4:24 PM
Ok thx

Receipts • Veronica Polnick <█████0279> [R:5/3/2021, 4:24 PM]

**EXHIBIT 9**
**Page 40 of 45**

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 46 | Date Range: 5/20/2021 |

### Outline of Conversations

 + ████2338 • 46 messages on 5/20/2021 • Matthew Cavenaugh <████2338> • Veronica Polnick <████0279> • _$!<Other>!$_ <████████@yahoo.com>

<span style="color:red">**EXHIBIT 9**</span>
<span style="color:red">**Page 41 of 45**</span>

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬 ▮▮▮▮▮2338

| | | |
|---|---|---|
| MC | **Matthew Cavenaugh** ◂▮▮▮▮2338> | ▶ 5/20/2021, 10:41 AM |
| | Is freeman alive? | |
| | Receipts · Veronica Polnick ◂▮▮▮▮0279> [R:5/20/2021, 10:41 AM] | |

\> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:41 AM
GREAT QUESTION

\>\> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:41 AM
wtf happened last night?

\>\>\> MC    **Matthew Cavenaugh** ▮▮▮2338>      ▶ 5/20/2021, 10:42 AM
Great dinner. Crushed it. Walked back to office. We sat down on curb halfway cause her leg hurt. She broke down and cried for an hour

Receipts · Veronica Polnick ◂▮▮▮0279> [R:5/20/2021, 10:42 AM]

\>\>\>\> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:43 AM
JW? Jones? Both?

\>\>\>\>\> MC    **Matthew Cavenaugh** ◂▮▮▮2338>      ▶ 5/20/2021, 10:43 AM
JW mainly

Receipts · Veronica Polnick ◂▮▮▮0279> [R:5/20/2021, 10:43 AM]

\>\>\>\>\> > VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:43 AM
Yeah that's consistent with what I've been getting

\>\>\>\>\> >> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:43 AM
Sounds like the Jones stuff is actually on the up and up

\>\>\>\>\> >>> MC    **Matthew Cavenaugh** ◂▮▮▮2338>      ▶ 5/20/2021, 10:44 AM
Kinda

Receipts · Veronica Polnick ◂▮▮▮0279> [R:5/20/2021, 10:44 AM]

\>\>\>\>\> >>>> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:44 AM
Kinda

\>\>\>\>\> >>>>> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:45 AM
Better than 45 days agbefore

\>\>\>\>\> >>>>> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:45 AM
Ago*

\>\>\>\>\> >>>>> MC    **Matthew Cavenaugh** ◂▮▮▮2338>      ▶ 5/20/2021, 10:45 AM
They've been very careful. Taken a lot of steps. Legal, very good. But the fact that they've taken so many steps makes it problematic from a pr standpoint

Receipts · Veronica Polnick ◂▮▮▮0279> [R:5/20/2021, 10:45 AM]

\>\>\>\>\> >>>>> VP    **Veronica Polnick** ◂▮▮▮0279>      ◂ 5/20/2021, 10:46 AM
Right

<span style="color:red">**EXHIBIT 9**
**Page 42 of 45**</span>

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:46 AM |
| >>>>> | They saw this coming 10 years ago | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh <████2338> | ► 5/20/2021, 10:46 AM |
| >>>>> | She needs to engage Chip. | |
| MC | | |
| | Receipts • Veronica Polnick <████0279> [R:5/20/2021, 10:46 AM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:46 AM |
| >>>>> | She really does!! That's what I said! She needs a champion at JW who is a big swinging dick | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:47 AM |
| >>>>> | On mancom | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh <████2338> | ► 5/20/2021, 10:47 AM |
| >>>>> | She needs an advocate that mancom will listen too.  Absent that, she needs to accept the operating parameters...or not | |
| MC | | |
| | Receipts • Veronica Polnick <████0279> [R:5/20/2021, 10:47 AM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:47 AM |
| >>>>> | Loved "She needs an advocate that mancom will listen too.  Absent that, she needs to accept the operating parameters...or not" | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:47 AM |
| >>>>> | Yup yup yup | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:48 AM |
| >>>>> | She didn't want to bug him Bc of the whole ████case and other stuff he's busy on | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:48 AM |
| >>>>> | But that's her only Avenue | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh <████2338> | ► 5/20/2021, 10:48 AM |
| >>>>> | Agree | |
| MC | | |
| | Receipts • Veronica Polnick <████0279> [R:5/20/2021, 10:48 AM] | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh <████2338> | ► 5/20/2021, 10:49 AM |
| >>>>> | And he may very well agree with Pat and Wade, even after he hears her out.  But either way, it would be better from Chip | |
| MC | | |
| | Receipts • Veronica Polnick <████0279> [R:5/20/2021, 10:49 AM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:49 AM |
| >>>>> | Apparently wade only knows that they're friends and socialize and while he may suspect more he apparently doesn't know know. And he's still telling her no Jones cases and if THATS the case it makes NO sense because what makes me different then? Gen? You? | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Matthew Cavenaugh <████2338> | ► 5/20/2021, 10:49 AM |
| >>>>> | Is the audio better? | |
| MC | | |
| | Receipts • Veronica Polnick <████0279> [R:5/20/2021, 10:49 AM] | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:49 AM |
| >>>>> | Liked "Is the audio better?" | |
| VP | | |

| | | |
|---|---|---|
| >>>>> | Veronica Polnick <████0279> | ◄ 5/20/2021, 10:50 AM |
| >>>>> | I hung out with Jones on Friday and Saturday night last week. Why is that ok and I can go work on chk today? | |
| VP | | |

**EXHIBIT 9**
**Page 43 of 45**

>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 10:51 AM
>>>>> Taking the other side? Or you want my opinion?
MC

Receipts • Veronica Polnick <​0279> [R:5/20/2021, 10:51 AM]

>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:51 AM
>>>>> Well now I'm scared
VP
>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:51 AM
>>>>> But sure
VP

>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 10:54 AM
>>>>> Taking the other side, it's the past relationship. Not the current. You can't unring that bell. It's not the legal exposure. It's the PR exposure. It's not the existence of anything inappropriate. It's the appearance that there might be or might have been. And the fact that they did so much to insulate themselves only informs that appearance.
MC

Receipts • Veronica Polnick <​0279> [R:5/20/2021, 10:55 AM]

>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 10:54 AM
>>>>> My opinion is that we are all adults and professionals and we should act like it
MC

Receipts • Veronica Polnick <​0279> [R:5/20/2021, 10:55 AM]

>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:56 AM
>>>>> If past relationships are an issue then I have a list of women who can't appear before Jones
VP
>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:56 AM
>>>>> Or bill to his cases
VP
>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:57 AM
>>>>> Liked "My opinion is that we are all adults and professionals and we should act like it"
VP
>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 10:58 AM
>>>>> Yeah, but is that really helpful? I've never won an argument with goose gander. If you're explaining, you're losing.
MC

I'm pushing and I think Chip can get this to the right place. But if the ruling comes down that freemen needs to separate any financial interest from Jones cases, as draconian as it may be, she needs to decide if she can make that work and live with it. I don't want that, but I think we can make it work.

Receipts • Veronica Polnick <​0279> [R:5/20/2021, 10:58 AM]

>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:59 AM
>>>>> It's not helpful in terms of fixing freeman's situation but it's a comment on the premise
VP
>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:59 AM
>>>>> What's the right place?
VP
>>>>> **Veronica Polnick <​0279>**  ◀ 5/20/2021, 10:59 AM
>>>>> Part of the problem is that middle aged white guys are straight terrified to talk to freeman about this
VP
>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 11:02 AM
>>>>> Yes
MC

Receipts • Veronica Polnick <​0279> [R:5/20/2021, 11:02 AM]

>>>>> **Matthew Cavenaugh <​2338>**  ▶ 5/20/2021, 11:02 AM
>>>>> But I suspect the real adversaries are the younger women
MC

Receipts • Veronica Polnick <​0279> [R:5/2... :02 AM]

**EXHIBIT 9**
**Page 44 of 45**

>>>>>  **Matthew Cavenaugh** <&#9608;&#9608;2338>                          ▶  5/20/2021, 11:03 AM
>>>>>  Just a suspicion, but informed
MC

       Receipts • Veronica Polnick <&#9608;&#9608;0279> [R:5/20/2021, 11:03 AM]

>>>>>  **Veronica Polnick** <&#9608;&#9608;0279>                          ◀  5/20/2021, 11:03 AM
>>>>>  Oh you're probably right
VP
>>>>>  **Veronica Polnick** <&#9608;&#9608;0279>                          ◀  5/20/2021, 11:03 AM
>>>>>  No shock there
VP

**EXHIBIT 9**
**Page 45 of 45**

**In The Matter Of:**

*In Re:  Professional Fee Matters Concerning the Jackson Walker Law Firm, Debtor.*

_____

*Patrick R. Cowlishaw*

*August 1, 2024*

_____

*Behmke Reporting and Video Services, Inc.*

*550 California Street, Suite 820*

*San Francisco, California  94104*

*(415) 597-5600*

Original File 43097CowlishawUSTP_Confidential_NL.txt

Min-U-Script® with Word Index

**EXHIBIT 10**
**Page 1 of 2**

Page 85

1  Q.  Were you aware of Mr. Kirkendall's
2  involvement in the issue involving Ms. Freeman and
3  former Judge Jones?
4  A.  I was.  And I should -- it's possible I
5  was on a phone conversation with Tom Kirkendall at
6  some point, but I don't recall that.  But I know he
7  was involved at a point.
8  Q.  And what was Mr. Kirkendall's
9  involvement?
10  A.  Was in the spring of 2022, he began to
11  advise Ms. Freeman.
12  Q.  So Mr. Kirkendall was representing
13  Ms. Freeman.
14      Was that your understanding?
15  A.  That was my understanding.
16  Q.  And were you, as general counsel, also
17  representing Ms. Freeman at the time, Mr. Cowlishaw?
18  A.  No.
19      MS. ROFAEL:  Before I continue,
20  Mr. Hardin, I won't be able to conclude this
21  deposition today.  I'm going to continue with my
22  questions, but I think there's a gatekeeping issue
23  with this attorney-client privilege.  I'll continue,
24  but we won't be able to conclude the deposition
25  today.  I just want to make sure that's clear for

Page 86

1  everyone.
2  Q.  (By Ms. Rofael)  Mr. Cowlishaw, I want
3  to go back to the exhibit we're looking at,
4  Exhibit 53.
5      Looking at page -- pardon.  I'm
6  looking at paragraph 28.  And we just discussed --
7  I'm gonna read it, just because it's been a while
8  since --
9  A.  I'm sorry.  Say it again.  You said
10  page 53 and --
11  Q.  Pardon.  No.  Exhibit 53, page 25 of
12  101.
13  A.  All right.  I'm there.
14  Q.  Paragraph 28.  And I read this
15  previously, but I want read it again because we
16  had some exchanges after I read this quote.
17      It states, "Ms. Freeman did not
18  disclose that she lived with former Judge Jones or
19  that they co-owned residential property.  JW had no
20  reason to believe otherwise.  And even to this date,
21  JW does not know the true state or history of the
22  relationship between former Judge Jones and
23  Ms. Freeman."
24      Mr. Cowlishaw, are you aware of
25  Ms. -- Ms. Freeman's living situation?

Page 87

1  A.  No.
2  Q.  Were you aware that Ms. Freeman lived
3  with former Judge Jones?
4      MR. HARDIN:  Can you give him a time
5  frame?
6  Q.  (By Ms. Rofael)  During your time as
7  general counsel.
8  A.  During my time as general counsel.
9  Throughout my time as general counsel, Ms. Freeman
10  denied living with Judge Jones.
11  Q.  Did you or anyone at Jackson Walker, to
12  your knowledge, perform a property record search of
13  Ms. Freeman's residential properties?
14  A.  I did not.  And I don't know otherwise.
15  Q.  Mr. Cowlishaw, if you could please take
16  a look at the document that has been tabbed as
17  Exhibit 72.
18      MS. ROFAEL:  And I'll ask the court
19  reporter to mark this as Exhibit 72.
20      (Exhibit Number 72 marked.)
21  Q.  (By Ms. Rofael)  Mr. Cowlishaw, if you
22  want to look through, it's a one-page document.  Let
23  me know once you've reviewed the document.
24      (Document review.)
25  A.  I see it.

Page 88

1  Q.  (By Ms. Rofael)  Mr. Cowlishaw, have you
2  seen this document marked as Exhibit 72 before
3  today?
4  A.  Yes.
5  Q.  Let's start at the bottom of this page.
6  The email -- it's an email from Michael Van Deelan
7  sent on March 6th, 2021, at 11:44 a.m. to Cavenaugh,
8  Matthew.  And he cc'd himself.  The subject line
9  reads "Elizabeth Freeman and Judge Jones."
10      Mr. Cowlishaw, do you know who
11  Michael Van Deelan is?
12  A.  I know he was a litigant in the
13  McDermott bankruptcy proceeding.
14  Q.  Have you ever met Mr. Van Deelan?
15  A.  No.
16  Q.  The text of Mr. Van Deelan's email to
17  Mr. Cavenaugh states, "Mr. Cavenaugh, I received a
18  most disturbing communication yesterday concerning
19  Elizabeth Freeman and Judge Jones.  The
20  communication stated that Jackson Walker attorney,
21  Elizabeth Freeman, clerked for Judge Jones for six
22  years before joining Jackson Walker and that she had
23  a romantic relationship with Judge Walker."  I think
24  he's referring to Judge Jones there.  "I'm aware
25  that Ms. Freeman is working on the McDermott

EXHIBIT 10
Page 2 of 3

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 61 | Date Range: 3/7/2021 - 3/8/2021 |

### Outline of Conversations

 **7656** · 61 messages between 3/7/2021 - 3/8/2021 · ██████7656> · Veronica Polnick
<*****0279 · _$!<Other>!$_ ██████@yahoo.com>

**EXHIBIT 11**
**Page 1 of 14**

**Messages in chronological order** (times are shown in GMT -06:00)

---

💬  ██████7656

| | | |
|---|---|---|
| VP | **Veronica Polnick** <██████0279> | ◄ 3/7/2021, 7:20 PM |
| | Who's working tomorrow | |

| | | |
|---|---|---|
| >#  | ████37656> | ► 3/7/2021, 8:09 PM |
| | Miller and V | |

Receipts • Veronica Polnick <████████0279> [R:3/7/2021, 8:09 PM]

| | | |
|---|---|---|
| >> VP | **Veronica Polnick** <████0279> | ◄ 3/7/2021, 8:10 PM |
| | Ok | |

| | | |
|---|---|---|
| >>>  VP | **Veronica Polnick** <████0279> | ◄ 3/7/2021, 8:10 PM |
| | Miller isn't a clerks office employee is she? | |

| | | |
|---|---|---|
| >>>>#  | <██████7656> | ► 3/7/2021, 8:10 PM |
| | Yes | |

Receipts • Veronica Polnick <████████0279> [R:3/7/2021, 8:10 PM]

| | | |
|---|---|---|
| >>>>>  VP | **Veronica Polnick** ██████50279> | ◄ 3/7/2021, 8:10 PM |
| | Oh cool | |

| | | |
|---|---|---|
| >>>>>  > VP | **Veronica Polnick** <██████50279> | ◄ 3/7/2021, 8:11 PM |
| | Don't forget to call later | |

| | | |
|---|---|---|
| >>>>>  >> VP | **Veronica Polnick** <████0279> | ◄ 3/7/2021, 8:11 PM |
| | Gonna be a filing tomorrow | |

| | | |
|---|---|---|
| >>>>>  >>>  VP | **Veronica Polnick** <████0279> | ◄ 3/8/2021, 11:49 AM |
| | Miller knows about the email? | |

| | | |
|---|---|---|
| >>>>>  >>>>#  | ██████7656> | ► 3/8/2021, 11:49 AM |
| | I don't know | |

Receipts • Veronica Polnick <████████0279> [R:3/8/2021, 11:49 AM]

| | | |
|---|---|---|
| >>>>>  >>>>>  VP | **Veronica Polnick** ██████0279> | ◄ 3/8/2021, 11:49 AM |
| | Oh ok | |

| | | |
|---|---|---|
| >>>>>  >>>>>  VP | **Veronica Polnick** <6████0279> | ◄ 3/8/2021, 11:49 AM |
| | Well. Does Jones want to give her a heads up before I hand it to her this afternoon? | |

| | | |
|---|---|---|
| >>>>>  >>>>>  #  | <████7656> | ► 3/8/2021, 11:49 AM |
| | I'll call her | |

Receipts • Veronica Polnick ████████0279> [R:3/8/2021, 11:49 AM]

| | | |
|---|---|---|
| >>>>>  >>>>>  #  | <████7656> | ► 3/8/2021, 11:49 AM |
| | Let me call him | |

Receipts • Veronica Polnick <████████0279> [R:3/8/2021, 11:49 AM]

| | | |
|---|---|---|
| >>>>>  | **Veronica Polnick** <████0279> | ◄ 3/8/2021, 11:49 AM |

<span style="color:red">**EXHIBIT 11**<br>**Page 2 of 14**</span>

JW_00025843

| >>>>> VP | Liked "I'll call her" | | |

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** K | ◄ | 3/8/2021, 11:49 AM |

| >>>>> >>>>> # | **<████7656>** She knows about it | ► | 3/8/2021, 11:51 AM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 11:51 AM]

| >>>>> >>>>> # | **<████7656>** When will you be filing it | ► | 3/8/2021, 11:51 AM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 11:51 AM]

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** Ok | ◄ | 3/8/2021, 11:51 AM |

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** I'm drafting the motion and notice now | ◄ | 3/8/2021, 11:51 AM |

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** Prob in the next couple hours | ◄ | 3/8/2021, 11:51 AM |

| >>>>> >>>>> # | **<8████7656>** Ok | ► | 3/8/2021, 11:51 AM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 11:51 AM]

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** I'll call you and her before I go in | ◄ | 3/8/2021, 11:51 AM |

| >>>>> >>>>> VP | **Veronica Polnick <█████0279>** Motion to seal will be filed before I leave the office | ◄ | 3/8/2021, 11:51 AM |

| >>>>> >>>>> # | **<████7656>** Ok | ► | 3/8/2021, 11:53 AM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 11:53 AM]

| >>>>> >>>>> # | **<████7656>** I'm coordinating with intake now | ► | 3/8/2021, 11:53 AM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 11:53 AM]

| >>>>> >>>>> VP | **Veronica Polnick <6████0279>** Liked "I'm coordinating with intake now" | ◄ | 3/8/2021, 11:53 AM |

| >>>>> >>>>> # | **█████7656>** Told George to expect a filing at 2pmish | ► | 3/8/2021, 12:09 PM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 12:10 PM]

| >>>>> >>>>> # | **█████7656>** Told him to give it to Miller | ► | 3/8/2021, 12:09 PM |

Receipts • Veronica Polnick <█████0279> [R:3/8/2021, 12:10 PM]

| >>>>> | **Veronica Polnick <█████0279>** | ◄ | 3/8/2021, 12:10 PM |

**EXHIBIT 11
Page 3 of 14**

| | | | |
|---|---|---|---|
| >>>>> VP | Perfect. I'll make sure she's with me when I go in too. | | |
| >>>>> >>>>> VP | Veronica Polnick <████0279> So there's no delay | ◄ | 3/8/2021, 12:10 PM |
| >>>>> >>>>> # | <████7656> Perfect | ► | 3/8/2021, 12:11 PM |
| | Receipts • Veronica Polnick <████0279> [R:3/8/2021, 12:12 PM] | | |
| >>>>> >>>>> # | <████7656> I just talked to her too | ► | 3/8/2021, 12:11 PM |
| | Receipts • Veronica Polnick <████0279> [R:3/8/2021, 12:12 PM] | | |
| >>>>> >>>>> VP | Veronica Polnick ████0279> Cool | ◄ | 3/8/2021, 12:12 PM |
| >>>>> >>>>> VP | Veronica Polnick ████0279> https://youtu.be/Tgf4zq0bi_w | ◄ | 3/8/2021, 12:12 PM |

*Attachment: ~_Library_SMS_Attachments_bc_12_at_1_2A13F161-5FB2-40C8-834E-BE294E797378_1BF2659C-CAE6-4E20-B619-D74C08735175.pluginPayloadAttachment (6 KB)*

*Attachment: ~_Library_SMS_Attachments_bb_11_at_0_2A13F161-5FB2-40C8-834E-BE294E797378_272C1062-4F68-4441-83E8-27D20DB4CA76.pluginPayloadAttachment (15 KB)*

| | | | |
|---|---|---|---|
| >>>>> >>>>> VP | Veronica Polnick ████0279> 1BF2659C-CAE6-4E20-B619-D74C08735175.pluginPayloadAttachment | ◄ | 3/8/2021, 12:12 PM |
| >>>>> >>>>> VP | Veronica Polnick <████0279> 272C1062-4F68-4441-83E8-27D20DB4CA76.pluginPayloadAttachment | ◄ | 3/8/2021, 12:12 PM |
| >>>>> >>>>> # | ████7656> Yes | ► | 3/8/2021, 12:12 PM |
| | Receipts • Veronica Polnick ████0279> [R:3/8/2021, 12:12 PM] | | |
| >>>>> >>>>> # | ████7656> It will be | ► | 3/8/2021, 12:12 PM |
| | Receipts • Veronica Polnick <████0279> [R:3/8/2021, 12:12 PM] | | |
| >>>>> >>>>> VP | Veronica Polnick ████50279> Just gonna vomit real quick then back to drafting | ◄ | 3/8/2021, 12:13 PM |
| >>>>> >>>>> # | ████7656> Haha | ► | 3/8/2021, 12:15 PM |
| | Receipts • Veronica Polnick <████0279> [R:3/8/2021, 12:15 PM] | | |
| >>>>> >>>>> # | ████37656> How's Freeman today | ► | 3/8/2021, 12:15 PM |
| | Receipts • Veronica Polnick <████0279> [R:3/8/2021, 12:15 PM] | | |

<div style="text-align:center; color:red;">
**EXHIBIT 11**
**Page 4 of 14**
</div>



>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 12:16 PM
>>>>>
VP     She was getting her shot this am. She's on her way in now. I'll see when she gets here. I'm trying to walk the line of making sure she's ok and not asking her if she's ok every 5 mins which is what I'd like to do

>>>>> ██████ 7656>   ► 3/8/2021, 12:17 PM
>>>>>
#      I bet

Receipts • Veronica Polnick <██████ 0279> [R:3/8/2021, 12:17 PM]

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 12:19 PM
>>>>>
VP     I know she's not ok. That much I know.

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 12:26 PM
>>>>>
VP     You guys have your Nathan stamp yet?

>>>>> **Veronica Polnick** ██████ 50279>   ◄ 3/8/2021, 1:46 PM
>>>>>
VP     Heading to courthouse. Gotta drop off some stuff for vriana and then we'll call you before Miller and I head up to 5

>>>>> ██████ 7656>   ► 3/8/2021, 1:48 PM
>>>>>
#      No need to call me. Look for George, he's Asian

Receipts • Veronica Polnick <6313750279> [R:3/8/2021, 1:48 PM]

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 1:48 PM
>>>>>
VP     Ok cool

>>>>> ██████ 7656>   ► 3/8/2021, 1:48 PM
>>>>>
#      He knows what tod o

Receipts • Veronica Polnick <██████ 0279> [R:3/8/2021, 1:48 PM]

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 1:48 PM
>>>>>
VP     Liked "He knows what tod o"

>>>>> **Veronica Polnick** ██████ 50279>   ◄ 3/8/2021, 1:48 PM
>>>>>
VP

*File **"1031a23a-93ed-4b60-8b91-604adc18d4ee.gif"** is missing.*
*Image: ~_Library_SMS_Attachments_ba_10_at_0_C31D5A0E-4B90-444F-8194-5BB1C417484D_0B771356-2718-454B-A937-80704F125EAC.gif*

>>>>> **Veronica Polnick** ██████ 50279>   ◄ 3/8/2021, 1:48 PM
>>>>>
VP     0B771356-2718-454B-A937-80704F125EAC.gif
       https://p09-
       content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 1:49 PM
>>>>>
VP

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 1:49 PM
>>>>>
VP

>>>>> **Veronica Polnick** ██████ 0279>   ◄ 3/8/2021, 1:49 PM
>>>>>
VP

>>>>> <██████ 7656>   ► 3/8/2021, 1:50 PM

**EXHIBIT 11**
**Page 5 of 14**



**EXHIBIT 11**
**Page 6 of 14**

JW_00025847

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 33 | Date Range: 4/28/2021 |

### Outline of Conversations

 **7656** · 33 messages on 4/28/2021 · ▮▮▮7656> · Veronica Polnick ▮▮0279> · _$!<Other>!$_ ▮▮▮@yahoo.com>

**EXHIBIT 11**
**Page 7 of 14**

Confidential

JW_00025848

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬    ▮▮▮▮▮▮**7656**

VP    **Veronica Polnick** ▮▮▮▮▮**0279>**                              ◄ 4/28/2021, 1:58 PM
      Non work related. Call me ASAP

>#    ▮▮▮▮▮**7656>**                                                   ► 4/28/2021, 1:58 PM
      Ok. 45 sec

      Receipts • Veronica Polnick ▮▮▮▮▮0279> [R:4/28/2021, 1:58 PM]

>> VP  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:16 PM
      Plan is to try to convince Matt to let me drive by alone Bc if it is Jones stuff she won't say anything with Matt there. If
      Jones tells you "yeah it's not great just let her be" we will abort mission. But if he's clueless I'm going

>>>#   ▮▮▮▮▮**7656>**                                                  ► 4/28/2021, 2:22 PM
      Agreed

      Receipts • Veronica Polnick ▮▮▮▮▮0279> [R:4/28/2021, 2:22 PM]

>>>>#  ▮▮▮▮▮**7656>**                                                  ► 4/28/2021, 2:23 PM
      I haven't gotten him alone

      Receipts • Veronica Polnick <6313750279> [R:4/28/2021, 2:23 PM]

>>>>>   ▮▮▮▮▮**7656>**                                                 ► 4/28/2021, 2:23 PM
#      Isgur took him to work on complex procedures

      Receipts • Veronica Polnick <6313750279> [R:4/28/2021, 2:23 PM]

>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:23 PM
> VP   I got her

>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:25 PM
>> VP  Well whatever it is it ain't good

>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:25 PM
>>>    But she ain't talking right now
VP
>>>>>  ▮▮▮▮▮**7656>**                                                  ► 4/28/2021, 2:26 PM
>>>>#  Isn't she supposed to call it off when Jones, move out or quit

      Receipts • Veronica Polnick <6313750279> [R:4/28/2021, 2:26 PM]

>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:26 PM
>>>>>  Laughed at "Isn't she supposed to call it off when Jones, move out or quit "
VP
>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:26 PM
>>>>>  Oh sweet baby
VP
>>>>>  **Veronica Polnick** ▮▮▮▮▮**0279>**                             ◄ 4/28/2021, 2:26 PM
>>>>>  We should talk
VP

**EXHIBIT 11**
**Page 8 of 14**

Confidential



>>>>> **Veronica Polnick** <▮▮▮▮0279>                          ◄ 4/28/2021, 5:07 PM
>>>>> Well! Best of luck to him tonight!
VP

>>>>> **Veronica Polnick** <▮▮▮▮0279>                          ◄ 4/28/2021, 5:07 PM
>>>>>
VP

   *File* **"10177813-04a8-4b62-ae8d-2f840013d127.gif"** *is missing.*
   *Image: ~_Library_SMS_Attachments_a9_09_at_0_32D4B532-0610-42E7-B542-A2D0BE9381CD_516FE7C4-24B3-*
   *426D-B5F3-A251945C3F2E.gif*

>>>>> **Veronica Polnick** <▮▮▮50279>                          ◄ 4/28/2021, 5:07 PM
>>>>> 516FE7C4-24B3-426D-B5F3-A251945C3F2E.gif
VP    https://p57-
      content.icloud.com/M3AF91A17122B807DD37F46EB364AE71F8ADA73245841EE1D81776B404CB777B4.C01USN00


>>>>> <▮▮▮▮7656>                                               ► 4/28/2021, 5:08 PM
>>>>> Bueno
#

   Receipts • Veronica Polnick <▮▮▮▮0279> [R:4/28/2021, 5:08 PM]

**EXHIBIT 11**
**Page 10 of 14**

Confidential                                                          JW_00025851

## Short Message Report

| Conversations: 1 | Participants: 3 |
|---|---|
| Total Messages: 28 | Date Range: 5/13/2021 |

### Outline of Conversations



⬛⬛⬛_ **7656** • 28 messages on 5/13/2021 • ⬛⬛ 7656> • Veronica Polnick ⬛⬛ 0279> • _$!<Other>!$_ ⬛⬛@yahoo.com>

**EXHIBIT 11**
**Page 11 of 14**

JW_00025852

**Messages in chronological order** (times are shown in GMT -05:00)

---

💬  +▮▮▮▮7656

VP  **Veronica Polnick** ▮▮▮▮0279>                                    ◄ 5/13/2021, 10:03 AM

> File **"d2d52f9a-10a5-467a-a3fd-a072befea617.jpeg"** is missing.
Image: ~_Library_SMS_Attachments_21_01_at_0_AAB21AD5-FFC1-48C5-A80E-
BC9EE48E6285_httpsecf.txsb.uscourts.govdoc1178046911613pdf_header=&magic_num=43502196&de_seq_num=650
&caseid=443974.jpeg

> VP  **Veronica Polnick** ▮▮▮▮0279>                                 ◄ 5/13/2021, 10:03 AM

[redacted]

> VP  **Veronica Polnick** ▮▮▮0279>                                  ◄ 5/13/2021, 10:03 AM

[redacted]

>> VP  **Veronica Polnick** <▮▮▮0279>                                ◄ 5/13/2021, 10:14 AM

[redacted]

>>> VP  **Veronica Polnick** <▮▮▮0279>                               ◄ 5/13/2021, 10:15 AM

[redacted]

>>>># <▮▮▮7656>                                                      ► 5/13/2021, 10:25 AM

[redacted]

Receipts • Veronica Polnick <▮▮▮0279> [R:5/13/2021, 10:25 AM]

>>>># <▮▮▮7656>                                                      ► 5/13/2021, 10:25 AM

[redacted]

Receipts • Veronica Polnick <▮▮▮0279> [R:5/13/2021, 10:25 AM]

>>>>> VP  **Veronica Polnick** <▮▮▮0279>                             ◄ 5/13/2021, 10:25 AM
>

[redacted]

>>>>> VP  **Veronica Polnick** ▮▮▮0279>                              ◄ 5/13/2021, 10:25 AM
>>

[redacted]

>>>>> <▮▮▮7656>                                                      ► 5/13/2021, 11:45 AM
>>># Did Liz get invited to Zachs wedding

Receipts • Veronica Polnick <6313750279> [R:5/13/2021, 11:45 AM]

>>>>> **Veronica Polnick** ▮▮▮0279>                                 ◄ 5/13/2021, 11:45 AM
>>>> No
VP

>>>>> ▮▮▮7656>                                                      ► 5/13/2021, 11:46 AM
>>>>> Ok
#

Receipts • Veronica Polnick <▮▮▮0279> [R:5/13/2021, 11:47 AM]

**EXHIBIT 11**
**Page 12 of 14**



>>>>> <_____7656>
>>>>> I guess they don't really hang
#                                                                    ▶ 5/13/2021, 11:46 AM

Receipts • Veronica Polnick <_____0279> [R:5/13/2021, 11:47 AM]

>>>>> <_____7656>
>>>>> I guess jones could have invited her as his plus 1
#                                                                    ▶ 5/13/2021, 11:47 AM

Receipts • Veronica Polnick <_____0279> [R:5/13/2021, 11:47 AM]

>>>>> <_____7656>
>>>>> To soon
#                                                                    ▶ 5/13/2021, 11:47 AM

Receipts • Veronica Polnick <_____0279> [R:5/13/2021, 11:47 AM]

>>>>> Veronica Polnick <_____0279>
>>>>> L
VP                                                                   ◀ 5/13/2021, 11:47 AM

>>>>> Veronica Polnick <_____0279>
>>>>> M
VP                                                                   ◀ 5/13/2021, 11:47 AM

>>>>> Veronica Polnick <_____0279>
>>>>> A
VP                                                                   ◀ 5/13/2021, 11:47 AM

>>>>> Veronica Polnick <_____0279>
>>>>> O
VP                                                                   ◀ 5/13/2021, 11:47 AM

>>>>> Veronica Polnick <_____0279>
>>>>> Jones is going?
VP                                                                   ◀ 5/13/2021, 11:48 AM

>>>>> <_____7656>
>>>>> Yes
#                                                                    ▶ 5/13/2021, 11:49 AM

Receipts • Veronica Polnick <_____0279> [R:5/13/2021, 11:49 AM]

>>>>> Veronica Polnick <_____0279>
>>>>> Well I guess we know Zach doesn't know lol
VP                                                                   ◀ 5/13/2021, 11:49 AM

>>>>> <_____7656>
>>>>> Haha
#                                                                    ▶ 5/13/2021, 11:52 AM

Receipts • Veronica Polnick <_____0279> [R:5/13/2021, 11:53 AM]

>>>>> Veronica Polnick <_____0279>
>>>>>
VP                                                                   ◀ 5/13/2021, 3:47 PM

>>>>> Veronica Polnick <_____0279>
>>>>>
VP                                                                   ◀ 5/13/2021, 3:47 PM

>>>>> Veronica Polnick <_____0279>
>>>>>
VP                                                                   ◀ 5/13/2021, 4:12 PM

**EXHIBIT 11**
**Page 13 of 14**



EXHIBIT 11
Page 14 of 14

JW_00025855

**From:** Cowlishaw, Pat[pcowlishaw@jw.com]
**Sent:** Mon 3/8/2021 11:30:49 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Our Call

*[External email]*

Peter,

I'm still uncertain (or failed to take good notes) on what rule our lawyer may have violated.  Are you seeing a conflict under Texas 1.06 arising out of the lawyer's interest in a matter in which the judge presided?  Other?

I'm not meaning to omit rules of good judgment, common sense, etc., but rather trying to understand more strictly whether she may have violated DRs here. Thanks.

Pat

**EXHIBIT 12**
**Page 1 of 42**

From: Cowlishaw, Pat[pcowlishaw@jw.com]
Sent: Fri 3/12/2021 5:21:38 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Cc: Heredia, Christopher R (CHI - X65710)[Christopher.Heredia@hklaw.com]
Subject: RE: Project

---

*[External email]*
Thanks. And an interesting thought.

Pat

From: Peter.Jarvis@hklaw.com <Peter.Jarvis@hklaw.com>
Sent: Friday, March 12, 2021 11:10 AM
To: Cowlishaw, Pat <pcowlishaw@jw.com>
Cc: Christopher.Heredia@hklaw.com
Subject: RE: Project

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Pat,

I am in a CLE. My involvement should end at about 12:30 Central. I will call you then or as close to then as possible. By copy of this email, I am asking Chris Heredia to set up a call-in number.

With respect to the financial interest issue, how about reconfiguring your partner's share so that it EXCLUDES any part of revenues from cases before Judge Jones?

Regards,
Peter

From: Cowlishaw, Pat <pcowlishaw@jw.com>
Sent: Friday, March 12, 2021 6:59 AM
To: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
Subject: Project

---

*[External email]*
Peter,

I would like to speak today before 1 pm Central if that is possible for you. Any update on Potashnik progeny and another question to run by you. I'm going to be out of pocket after that time through most of the weekend. Feel free to call any time between now and then or let me know a good time that that simply won't work for you, that's ok. Thanks.

Pat

Patrick R. Cowlishaw
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

 **Jackson Walker** LLP

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 12**
**Page 2 of 42**

 H&K_0000280

From: Jarvis, Peter R (POR - X55877)[/O=HOLLAND & KNIGHT/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JARVIS, PETER R (POR - X55801)9BF]
**Sent:** Wed 9/1/2021 4:02:49 PM Coordinated Universal Time
**To:** Heredia, Christopher R (CHI - X65710)[Christopher.Heredia@hklaw.com]
**Subject:** FW: Disqualification Question [IMAN-JWDOCS.FID560826]
**Attachment:** 29874899_4_2021.08.18 DRAFT letter re DQ issue.docx

Re the email I just sent you.

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Friday, August 27, 2021 11:39 AM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** Disqualification Question [IMAN-JWDOCS.FID560826]
**Importance:** High
**Sensitivity:** Private

*[External email]*
Peter,

Attached is a draft letter requesting your response on the matter we have discussed. I have sent this in draft form to be sure I have included the inform
you need. Please let me know, and I'll be glad to sign and send in final form. Best regards.

Pat

Patrick R. Cowlishaw
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

 Jackson Walker LLP

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or
other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-
mail message in error, please e-mail the sender and delete all copies.

**EXHIBIT 12**
**Page 3 of 42**

 **Jackson Walker** LLP

Patrick R Cowlishaw
(Direct Dial)
(Direct Fax)

# DRAFT

August __, 2021

*Privileged and Confidential – Attorney-Client Communication*

Mr. Peter Jarvis
Holland & Knight LLP
601 Southwest 2nd Avenue #1800
Portland, Oregon 97204

    Re:  Judicial Disqualification Matter

Dear Peter:

    This letter concerns the relationship between one of our law firm's partners and a federal bankruptcy judge, which you and I have discussed on several occasions going back to March of this year. I describe below the pertinent circumstances and the measures that the firm and our partner have taken in response. On behalf of Jackson Walker, I ask for your advice regarding the propriety and sufficiency of these measures, both in terms of our professional ethical posture and minimizing the risk that the firm's participation in future contested matters before the judge, through our partner or others, might result in disqualification of the judge or of us.

    **Background**

    Elizabeth Freeman joined Jackson Walker as a partner in our bankruptcy practice group on May 14, 2018. As with virtually all lateral partner hires, she joined the firm as an "income partner" (salaried). Elizabeth had been a licensed Texas lawyer for 20 years at that time. For the six years preceding her joining Jackson Walker, Elizabeth had worked as a law clerk to Chief Bankruptcy Judge David R. Jones of the Bankruptcy Court of the United States for the Southern District of Texas, Houston Division. Prior to her clerkship, Elizabeth had been a partner in the bankruptcy practice of Porter Hedges in Houston. Prior to his taking the bench October 1, 2011, Judge Jones and Elizabeth were law partners at Porter Hedges. Consistent with this background, Elizabeth and Judge Jones were and remain close personal friends. Both individuals are, and at all relevant times have been, divorced.

    Elizabeth enjoyed quick and substantial success at Jackson Walker. From the time of her arrival through today, Houston has become a favored venue for complex debtor cases, in the

**EXHIBIT 12**
**Page 4 of 42**

DALLAS  2323 Ross Avenue, Suite 600 • Dallas, Texas 75201, UNITED STATES OF AMERICA | [ HYPERLINK "http://www.jw.com" ] | Member of GLOBA

CONFIDENTIAL                               H&K_0000675

Mr. Peter Jarvis
[ STYLEREF  Date  \* MERGEFORMAT ]
Page [ PAGE ]
_____

energy industry and more broadly.  Complex cases filed in the Southern District are assigned either to Judge Marvin Isgur or Judge Jones.  Jackson Walker's debtor practice grew very substantially during this time, including cases in which we took an expansive local counsel role, with Kirkland Ellis acting as lead counsel, and cases in which we were lead debtor's counsel.  Much of this work was in cases before either Judge Isgur or Judge Jones.  This success was a team effort, involving other bankruptcy partners as well, but Elizabeth's leadership and contribution were recognized as integral.  Throughout, Elizabeth adhered to guidelines set by Judge Jones in respect of her status as his former law clerk.  Under those guidelines, she could and did work on cases in his court, and the firm's fees for her work could be included in fee applications that came before him for review, but she could not (and did not) appear in his court or sign pleadings to be filed in his court.  Elizabeth's understanding has been that Judge Jones expects those guidelines to apply to her for at least as long as the six years she served as his clerk, i.e., at least through May 2024.

In view of her success and contributions, Elizabeth was elected an equity partner in the firm, effective January 1, 2021.

**Van Deelen/McDermott Claim**

Among our debtor cases in progress early this year was a Chapter 11 reorganization proceeding for McDermott International, where we acted as local counsel with Kirkland as lead, and Judge Jones presiding.  *In re McDermott International, Inc.,* Case No. 20-30336.  In that proceeding Michael Van Deelen, a McDermott shareholder, pursued a *pro se* adversary action against certain Kirkland officers, complaining of actions they had taken in the bankruptcy.  *Michael Van Deelen v. David Dickson,* et al., Adversary No. 20-3309.  Van Deelen had moved to recuse Judge Jones, citing adverse rulings as evidence of bias.  That motion was set for hearing March 10, 2020.

On Saturday, March 6, 2021, Van Deelen sent an e-mail to Matt Cavenaugh, a JW bankruptcy partner who was leading our work in the McDermott case.  Van Deelen claimed to have received a "most disturbing communication," which indicated that Elizabeth Freeman had had a romantic relationship with Judge Jones.  Van Deelen questioned whether Judge Jones was favoring Jackson Walker and its clients because of his relationship with our partner.  Van Deelen provided a copy of what he said was the referenced communication, in the form of an anonymous, unsigned letter, accompanied by an envelope with no return address.

Matt promptly contacted me as the firm's general counsel.  We conferred with our managing partner and another long-time firm leader, one of our senior trial partners, that weekend.  The latter reached out to Elizabeth, who confirmed that there had been a romantic relationship.  No further details were sought at that time.  At the firm's request, Elizabeth stopped work on all matters in Judge Jones' court, pending the firm's assessment of the matter.

One of our lawyers delivered a courtesy copy of the Van Deelen communication to Judge Jones' chambers.  We also disclosed these matters to our Kirkland co-counsel, who disclosed

**EXHIBIT 12**
**Page 5 of 42**

Mr. Peter Jarvis
[ STYLEREF  Date  \* MERGEFORMAT ]
Page [ PAGE ]

_____

them to the client.  At Judge Jones' request, Judge Isgur presided at the hearing on the motion.  Kirkland appeared on behalf of McDermott and argued at the virtual hearing March 10.  Judge Isgur denied the motion, based on Van Deelen's failure to present any competent evidence in support of his allegations, and he ordered that the anonymous letter Van Deelen had proffered be sealed.  Van Deelen subsequently sought mandamus relief, which was denied.

**Jackson Walker Review**

With the Van Deelen matter resolved, the firm undertook a more complete assessment.  From a legal standpoint, we reviewed judicial disqualification precedent inside and outside the Fifth Circuit based on relationships between counsel and judges, as well as opinions and commentary on relevant ethics requirements applicable to lawyers and the distinct requirements applicable to judges.  I also conferred with you, beginning on March 8, and continuing from time to time as we learned more facts and were able to confer within firm management.  Factually, our managing partner has met with Elizabeth on several occasions, both to better understand the relationship, in particular on a current and going-forward basis, and to keep her apprised of firm management's thinking.

Elizabeth has confirmed that there is no current romantic relationship between herself and Judge Jones and that none is expected going forward.  According to Elizabeth, there has been no romantic relationship since prior to the time in March 2020 when COVID caused so many of us to shift to remote work and virtual-only meetings.  Judge Jones and Elizabeth each own their own homes; they do not and have not lived together.

The firm, for its part, had concluded and has advised Elizabeth that any romantic, intimate, or sexual relationship between a firm lawyer and a federal judge would create too much risk of disqualification to be compatible with any lawyer in the firm continuing to appear before that judge.  There is direct authority that a lawyer appearing before a judge with whom he or she is in a relationship is cause for immediate disqualification of the judge.  *In re Schwarz*, 255 P.3 299 (N.M. 2011).  *See*  ABA Opinion No. 488 at 6 (2018).  While we found no authority regarding judicial disqualification based on the appearance of a lawyer whose law partner has a romantic relationship with the judge, but does not herself appear, the Fifth Circuit has taken a strict approach to disqualifying judges based on other kinds of prohibited relationships between a judge and an equity partner of the lawyer who is appearing before the judge.  *In re Billedeaux*, 972 F.2d 104 (5th Cir. 1992); *Potashnik v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir. 1980).

We understand that a close personal relationship remains.  We expect that Elizabeth and Judge Jones may see one another socially as friends with some frequency.  They enjoy shared interests.  Elizabeth assures us that at all times since she left her clerkship and joined Jackson Walker, she and Judge Jones have avoided any discussion of active cases and will continue to do so.  With these facts as context, we understand the ethics authorities to agree that a friendship between lawyer and judge is not disqualifying.  ABA Opinion No. 488 at 5.  As stated by the Seventh Circuit: "In today's legal culture friendships among judges and lawyers are common.  They are more than common; they are desirable. . . . Many courts therefore have held that a

**EXHIBIT 12**
**Page 6 of 42**

H&K_0000677

Mr. Peter Jarvis
[ STYLEREF Date \* MERGEFORMAT ]
Page [ PAGE ]

_____

judge need not disqualify himself just because a friend – even a close friend – appears as a lawyer." *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985).

The cases we have reviewed treat friendship relationships as a matter of degree. In an extreme circumstance, such as a judge and trial lawyer who frequently vacation together, including shortly after a trial in which the lawyer had appeared before the judge, a close friendship might provide grounds for disqualification. As long as such extremes are avoided, however, we do not understand a continuing close friendship between Elizabeth and Judge Jones to create a basis for disqualifying Judge Jones when Jackson Walker represents clients in his court, through other lawyers or Elizabeth herself.

**Recommended Actions**

After careful consideration of all of these matters, the firm's Management Committee concluded that it would be prudent to maintain separation between Elizabeth and our firm's representation of clients in matters before Judge Jones for some reasonable time following the conclusion of any romantic relationship, and to adjust her compensation during that time so that she does not receive any portion of the profits that may be earned by the firm attributable to cases before him. The objective of these actions is to place any alleged appearance of impropriety well into the past.

More specifically, the Management Committee has determined to take the following steps:

1) Continue to require Elizabeth to refrain from working on matters in Judge Jones' court through March 2022, at which point it will have been at least two years since the relationship returned to one of close friendship alone. Since the firm first became aware of this issue last March, Elizabeth has done more than avoid appearing in Judge Jones' court; she has, at our request refrained from all work on any matters before Judge Jones. With the firm's concurrence, she has continued to work on complex bankruptcy matters that are planned to be filed in Houston, prior to the filing of a bankruptcy petition. That is, Elizabeth has worked during the planning stages on cases that may wind up being assigned to Judge Jones after they are filed, but she has refrained from further work once a case is filed if it is assigned to Judge Jones. At present, with only six months remaining until March 2022, we also consider that it will be appropriate for Elizabeth to work on certain matters after the effective date of a confirmed plan in cases assigned to Judge Jones. Her work will be limited to post-effective date matters that will not come before Judge Jones for decision. This includes such matters as advising on plan mechanics and interpretation, or on post-effective date asset sales outside of the bankruptcy court that were authorized under a plan. None of these activities would come before Judge Jones for decision, nor would they result in fees to be recovered from the estate or presented to the court for approval.

2) Adjust Elizabeth's 2021 distribution of net income to remove any portion of firm net profits derived from cases before Judge Jones. As an equity partner at JW, Elizabeth has been

**EXHIBIT 12**
**Page 7 of 42**

CONFIDENTIAL                                                                    H&K_0000678

assigned a percentage share of firm profits for 2021.  Her share is 1.31219%[1], which would result in net income of $ 1,200,000 at budgeted firm net income of $ 91,450,000.  During the year, equity partners receive a monthly draw at 60% of their share of budgeted net income.  Additional distributions may be authorized around estimated tax dates, but at year end all equity partners will have received substantially less than their shares of budgeted net income.  Net income is budgeted very conservatively, actual net income regularly exceeds budgeted net income by a substantial margin, and is expected to do so in 2021 based on performance to date.  Once actual net income for the year has been determined, the balance is distributed to each equity partner in mid-January.  In Elizabeth's case, her final distribution will be calculated by multiplying her assigned percentage share times actual net income, but excluding the portion of actual net income derived from fees received for firm work on cases before Judge Jones.  For example, if fees from those cases accounts for 2% of total firm revenues in 2021, then Elizabeth's net income for 2021 would be calculated by multiplying her percentage share times 98% of actual net income, rather than 100%.  Her final distribution in January 2022 will reflect this adjustment.

### Conclusion

We will appreciate your careful review of this matter.  Please let us know whether you have questions or require additional information.  Please let us know whether, in your judgment, the measures we have described are appropriate and sufficient to address these circumstances, from the standpoint of avoiding disqualification of Judge Jones or Jackson Walker when we appear in cases before him and in terms of our own ongoing compliance with applicable ethical requirements.  We look forward to hearing from you.

Sincerely,

**DRAFT**

Patrick R Cowlishaw

---

[1] This percentage reflects small adjustments to her assigned share for departures of other equity partners that have taken place during 2021.

**EXHIBIT 12**
**Page 8 of 42**

CONFIDENTIAL

From: Jenkins, William[wjenkins@jw.com]
Sent: Tue 5/3/2022 5:50:34 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]
Subject: PRIVILEGED AND CONFIDENTIAL FW: confidential - disqualification issue [IMAN-JWDOCS.FID4392283]

*[External email]*

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



From: Cooper, Wade <wcooper@jw.com>
Sent: Thursday, April 28, 2022 3:23 PM
To: Ruzinsky, Bruce <bruzinsky@jw.com>
Cc: Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
Subject: confidential - disqualification issue [IMAN-JWDOCS.FID4392283]

Bruce,

Thanks for this. I think it might be hard to visit tonight, but we ought to try to get us together as soon as we can. Maybe you could start by advising as to your schedule and we can go from there. Meantime, Pat helped me catalogue some additional thoughts and concerns.

We genuinely appreciate the effort being directed toward seeking a solution here. Disclosure is a subject we have considered, even before we knew the facts most recently disclosed. It brings with it a number of questions that would have to be thought through, and will require some time. Some of those arise out of the federal judicial disqualification statute itself, which addresses disclosure and waiver as follows:

"No justice, judge, or magistrate judge shall accept from the parties to a proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."

28 USC § 455(e).

Questions to be considered include:

- Is "close personal relationship" sufficient to constitute "full disclosure" under the circumstances?

- Does the reference to "waiver" mean that, in addition to disclosure, the court must provide parties the opportunity to make an affirmative waiver of the grounds for disqualification (and, if granted by all "parties", the Judge may preside but if not granted by all parties, he must reassign the matter)? If so, is that a procedure that Judge Jones would consider undertaking whenever JW appears before him?
  - In the context of a bankruptcy proceeding, who all constitute the "parties" from whom a waiver is to be requested? How does the disclosure/waiver rule apply to parties who join later in the proceeding?

- Subsection (e) above limits use of waiver to subsection (a) cases, i.e., cases in which the judge's impartiality may reasonably be questioned on grounds other than the specific prohibited relationships in subsection (b). One of the prohibited relationships is that of a spouse who appears as a lawyer in the proceeding. § 455(b)(5). Our understanding of Fifth Circuit precedent is that this rule would prohibit any equity partner of the judge's spouse from appearing before him and, because a spousal relationship was involved, there could be no curative disclosure or waiver. One guidance document to federal judges includes the comment that "recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." *Guide to Judiciary Policy, Vol. 2A at 12* (comment to Canon 3C). What is the risk that a reviewing court may view disclosure/waiver as inadequate in these circumstances, leaving our cases vulnerable to collateral attack?

Research may provide answers to some of the questions above, and we will undertake to have Peter Jarvis address them promptly. Other questions also may warrant consideration by all of us:

- How are Liz, Judge Jones, and the Firm going to address press and other inquiries that may follow the making of such a disclosure, e.g., "what is meant by 'close personal relationship'"?, "Does this disclosure mean that Mr. Van Deelen's allegations of a romantic relationship were correct? Or that such a relationship now exists? If so, why wasn't this disclosure made earlier? Has this

**EXHIBIT 12**
**Page 9 of 42**

relationship been a factor, or the driving factor, in the rise to prominence of JW's bankruptcy practice in Houston?

- The draft disclosure disclaims any financial interest in cases before the Judge and asserts that no compensation is based on the firm's cases there. For the Firm to stand behind those assertions, Comp Committee would need to consider whether her compensation should be set without credit for any WAC or originations associated with cases in that court, as well as making the net income adjustment to eliminate sharing in profits derived from fees for cases in that court. This of course would need to be considered by all concerned.

- If the draft disclosure were made, what opportunity will that create for collateral attack on our recent cases in this court, at least going back to McDermott? Should any cases be reopened, what risk does that raise of claims by our clients against the firm for the additional expense they will incur?

Along with all of this, but perhaps on a separate or parallel track, is the question of candor in Liz's communications with the firm, both in 2021 and during the recent meeting with Pat and Julia. When the most recently disclosed facts are presented to the full Management Committee, there may be members who, even after careful and dispassionate consideration, conclude that a serious question is raised regarding fitness for partnership. When and how to address that issue also is going to take some time and care.

All of these are matters that we are glad and anxious to discuss with you. We too are anxious to move forward, but just want to share our sense that there is a lot of ground to cover yet.

---

**From:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Sent:** Thursday, April 28, 2022 12:29 PM
**To:** Cooper, Wade <wcooper@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** RE: Disqualification Issue

Thanks Wade.

My flight lands a little after 4:00 and I was planning on going straight to the hotel to drop off my bags and check in, and then head over to the reception.

Let me know where and when you want to meet.

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Cooper, Wade <wcooper@jw.com>
**Sent:** Thursday, April 28, 2022 12:27 PM
**To:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Re: Disqualification Issue

Bruce,
When do you arrive? Lets get together asap.
On Apr 28, 2022, at 12:20 PM, Ruzinsky, Bruce <bruzinsky@jw.com> wrote:

Gentlemen, here is a slightly revised version received this morning from Tom.

Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court. Ms. Freeman does not have any financial interest in the Firm's cases in Judge Jones' court in that the Firm does not provide to her any compensation based on the Firm's cases in Judge Jones' court and her partner share of the Firm's profits does not include a share in any of the Firm's profits attributable to cases in Judge Jones' court.

Looking forward to discussing this soon.

**EXHIBIT 12**
**Page 10 of 42**

CONFIDENTIAL

H&K_0000891

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

**From:** Ruzinsky, Bruce
**Sent:** Wednesday, April 27, 2022 7:07 PM
**To:** Cooper, Wade <wcooper@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Disqualification Issue

Gentlemen, Matt and Liz and I met today with the attorney that Liz is consulting with (Tom Kirkendall). The meeting included a discussion about disclosures in bankruptcy cases, and Tom said he envisioned adding to the regular disclosures made specific information on JW attorneys who clerked for SDTX bankruptcy judges (and maybe those who clerked for SDTX USDC judges as well as since they ordinarily hear appeals from SDTX bankruptcy cases).

I asked what he had in mind for the disclosure regarding Liz, and he offered the following:

Elizabeth Freeman is a partner in the Firm and a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011 and a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on cases in Judge Jones' court. She also does not derive any financial benefit or compensation from the Firm's cases in Judge Jones' court, and her share of the Firm's profits does not include a share of any of the Firm's profits attributable to cases in Judge Jones' court.

We expect to have a follow-up call with Tom tomorrow to at least discuss the filing of such disclosures in both existing cases and new cases, or just in new cases.

In the meantime, I hope you will share your imput on this type of filed disclosure, and that we can discuss it soon (maybe tomorrow night in Dallas).

Thanks.

**Bruce J. Ruzinsky**
**Jackson Walker L.L.P.**
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4204 (phone)
(713) 857-0220 (cell)
(713) 308-4155 (fax)
bruzinsky@jw.com
www.jw.com



**EXHIBIT 12**
**Page 11 of 42**

CONFIDENTIAL                                                                                                    H&K_0000892

**From:** Jenkins, William[wjenkins@jw.com]
**Sent:** Mon 5/9/2022 5:53:15 PM Coordinated Universal Time
**To:** Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
**Cc:** Cowlishaw, Pat[pcowlishaw@jw.com]; Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Re: Liz-Related Matters

*[External email]*
That works for me. Not sure about Pat.

William R. Jenkins, Jr.
Partner
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone 817-334-7214
Telecopier 817-334-7290

On May 9, 2022, at 12:51 PM, Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com> wrote:

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Thank you William, and apologies for the delayed response. Does 2 p.m. central / 12 p.m. PST still work with your schedules? If so, I'll send a call invitation shortly.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Sunday, May 8, 2022 5:19 PM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** Re: Liz-Related Matters

*[External email]*
Pat says He has conflicts 9:30-10:30 and 11:30-1:30 but could join the remainder of the day.

William R. Jenkins, Jr.
Partner
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone 817-334-7214
Telecopier 817-334-7290

On May 8, 2022, at 10:21 AM, Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com> wrote:

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
William,
We set up a call with Tom for Tuesday. Are you available for a call tomorrow with us? If so, please send us times that work for you, and we will try to get something on calendar.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910

**EXHIBIT 12**
**Page 12 of 42**

jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 6, 2022 11:57 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** RE: Liz-Related Matters

*[External email]*
Jacqueline and Peter,

My partner Bruce Ruzinsky just spoke with Tom. He will reach out directly to Peter about availability over the weekend or Tuesday for an introductory call.

Wm.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

 Jackson Walker LLP

**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Friday, May 6, 2022 12:07 PM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Subject:** RE: Liz-Related Matters

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Hi William,
Let's plan for a call today at 11 a.m. PST / 1 p.m. Central. I'll send a calendar invitation shortly.

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 6, 2022 5:57 AM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

*[External email]*
Peter, let's keep the advice on this matter oral at this point. Also, we discussed this internally yesterday. We think it makes sense for just an introductory call with Tom to throw out the idea that the two of you could work independently to try to find a solution. Once you have the answers to the various questions we have poised, maybe you can address them with Tom and try to find a solution. We are hoping that a solution by the two advisors would be accepted by all.

Thanks! I have a hearing at 10 – 11:30 Central this morning but am happy to chat any other time today.

Wm.

**William R. Jenkins, Jr.** | Partner

**EXHIBIT 12**
**Page 13 of 42**

777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Thursday, May 5, 2022 11:10 PM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** Re: Liz-Related Matters

<div style="text-align:center"><strong style="color:red">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</strong></div>

Between 10 am and noon Pacific?

Sent from my iPhone

> On May 5, 2022, at 4:26 AM, Jenkins, William <wjenkins@jw.com> wrote:

*[External email]*
Peter, what is your schedule like Friday for a call with Tom?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Wednesday, May 4, 2022 6:15 PM
**To:** Jenkins, William <wjenkins@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

<div style="text-align:center"><strong style="color:red">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</strong></div>

William,

Several thoughts/responses re the Liz-related matters:

- Yes, I should have a pretty good sense of where things stand next week, and I agree that this should be kept moving.
- I think it makes sense to speak with Tom Kuykendall sooner rather than later—even if the initial discussion is preliminary.How about some time on Friday?

i will write separately re ▮▮▮▮-related matters.

Regards,
Peter

---

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Wednesday, May 4, 2022 3:03 PM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: William and Pat, For your review and comment

*[External email]*
Peter,

Do you think it will be possible for you to provide at least your preliminary thoughts sometime next week? We would like to keep this on a fast track if possible.

Also, Liz has hired Tom Kuykendall, a lawyer in Houston who is very well thought of, to assist her in attempting to resolve this issue. We envision that the next step once you have a handle on the questions we presented you would be for you to meet with Tom to discuss the issue and possible resolutions, hopefully in Houston. What are your thoughts on that idea?

<div style="text-align:center"><strong style="color:red">EXHIBIT 12<br/>Page 14 of 42</strong></div>

H&K_0001991

Thanks again for your help!

Wm.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

 **Jackson Walker** LLP

---

**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Tuesday, May 3, 2022 6:53 PM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Jenkins, William <wjenkins@jw.com>
**Subject:** RE: William and Pat, For your review and comment

<div align="center">**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***</div>

Yes it does, and we are all helping each other flesh out our thoughts!

---

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, May 3, 2022 4:51 PM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Jenkins, William <wjenkins@jw.com>
**Subject:** Re: William and Pat, For your review and comment

*[External email]*
Maybe you are helping me slowly flesh out my thought. I believe our bankruptcy colleagues and the lawyer advising Liz may have the disinterested statement in mind as the vehicle for disclosure and that that disclosure plus silence would suffice. To the extent the 455 cases require more than that - in terms of substance or form of disclosure by the subject lawyer, the judge, or by way of affirmative waiver from parties, I would want to be able to relay all of that.Does this help clarify?

Sent from my iPhone

> On May 3, 2022, at 6:44 PM, Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com> wrote:

<div align="center">**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***</div>

Pat,

If I understand you correctly, you are talking about a bankruptcy law-required disclosure (of disinterestedness?) as distinct from a section 455 judicially required disclosure and are asking whether, assuming that the bankruptcy law-required disclosure would meet the definition of "full disclosure" under section 455, whether that plus a non-objection by other parties would give rise to legally sufficient consent under section 455 in those instances in which consent can be obtained.Is this what you have in mind?

Somewhat relatedly, there is at least some mention in the cases of a need for a party who becomes aware of the facts giving rise to a section 455 problem to act timely. Is this another way of stating the above or is this a separate avenue to be pursued?

Regards,
Peter

---

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, May 3, 2022 4:36 PM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Jenkins, William <wjenkins@jw.com>
**Subject:** Re: William and Pat, For your review and comment

*[External email]*
No, I too assume the lawyer disclosure would be of record. There is a disclosure document filed routinely by debtors counsel at the outset of a case in which they identify relationships with interested parties, e.g., unrelated representation of o e or more creditors). That is where we have thought about disclosure if one were to be made.

We looked at the rules related to this disclosure very early on and concluded that it technically requires disclosures only of relationships with interested parties, a term of art that does not include the presiding judge.So maybe it would be some other form if disclosure on the record.

<div align="center" style="color:red">**EXHIBIT 12**
**Page 15 of 42**</div>

My question is more whether it is enough for the lawyer to disclose the relationship, with no expression of opinion about whether it may disqualify the judge, or whether the judge must himself make a disclosure of the facts and inform the parties that in the absence of waiver he will recuse. (Rather than just say the relationship exists and effectively shift the burden to the parties of requesting him to recuse by taking the position that silence = waiver).

Sent from my iPhone

> On May 3, 2022, at 6:25 PM, Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com> wrote:

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Pat,

By way of clarification, I was thinking that the lawyer would make an "on the record" disclosure to opposing counsel with a copy to the court. Should I instead be considering as "disclosure" the lawyer telling opposing counsel without putting anything on the record?

Thanks,
Peter

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, May 3, 2022 4:19 PM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Jenkins, William <wjenkins@jw.com>
**Subject:** Re: William and Pat, For your review and comment

*[External email]*
Only thing I might add is whether the 455(e) cases indicate whether it is sufficient for the lawyer with the relationship to make the disclosure (in the bankruptcy setting, in a disclosure of relationships with interested parties) or whether the judge must make the disclosure in order for the waiver to be effective.Thanks

Pat

Sent from my iPhone

> On May 3, 2022, at 5:17 PM, Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com> wrote:

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

**Liz-Related Issues**

1. If a judge does not disclose a potential issue arising under §455 with respect to a case before the judge but a lawyer for one of the parties in the case actually knows of the issue, does the lawyer have a duty—either under the statute or under the Texas Rules--to make disclosure?
2. If a judge has an intimate personal relationship with a lawyer at a firm and also lives with that lawyer, is it sufficiently "full disclosure" (to the extent that full disclosure can be a cure under §455(a)) for the judge to say to counsel/parties to litigation pending before the judge that the judge has "a close personal relationship" with that lawyer (assuming for the sake of this question that the lawyer who lives with the judge is not actually involved in the representation and will not receive any fees as a result of the litigation)?
3. To the extent that disclosure plus waiver/consent in this situation can cure a potential problem under §455, does the party who receives the disclosure need affirmatively to express a waiver/consent or is the passage of time after disclosure and without objection sufficient?
4. To what extent does it seem that this situation is not within §455(a) but must be treated as the equivalent of a marital relationship?

▮▮▮ **Related Issues**



Regards,
Peter

<div style="text-align:center">

**EXHIBIT 12**
**Page 16 of 42**

</div>

H&K_0001993

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 12**
**Page 17 of 42**

CONFIDENTIAL H&K_0001994

**From:** Tom Kirkendall[bigtkirk@gmail.com]
**Sent:** Tue 5/10/2022 5:27:41 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]; Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
**Subject:** JW

*[External email]*
Here is the language I proposed. No pride of authorship. No problem including Peter's suggestion of including the word "intimate":

Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court, and Ms. Freeman has no financial interest in the Firm's cases in Judge Jones' court.

TK

Tom Kirkendall, Lawyer
Houston and The Woodlands, Texas
713.703.3536 (phone + text)
281.819.3435 (conference)


Sent via Superhuman

**EXHIBIT 12**
**Page 18 of 42**

H&K_0002001

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
Sent: Tue 5/10/2022 11:39:43 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: RE: Jackie, If you have the time still today, please read these and then call me. Thanks, Peter

Peter—will do. Working on it now.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Tuesday, May 10, 2022 4:20 PM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** Jackie, If you have the time still today, please read these and then call me. Thanks, Peter
**Importance:** High

**EXHIBIT 12**
**Page 19 of 42**

CONFIDENTIAL

H&K_0002243

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)CN=RECIPIENTS/CN=USERB8CE9C8C]
Sent: Wed 5/11/2022 12:06:32 AM Coordinated Universal Time
To: Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
Cc: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Call regarding tomorrow's disclosure

William, Pat,

I filled Peter in that the firm has a disclosure due to the Court tomorrow. Are you available to discuss the disclosure language tonight or early tomorrow before the filing is due? Also, is it your understanding that an extension for filing this disclosure cannot be sought?

Please let us know your availability at your earliest convenience.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 20 of 42**

H&K_0002244

From: Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Sent: Wed 5/11/2022 12:06:32 AM Coordinated Universal Time
To: Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
Cc: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Call regarding tomorrow's disclosure

William, Pat,

I filled Peter in that the firm has a disclosure due to the Court tomorrow. Are you available to discuss the disclosure language tonight or early tomorrow before the filing is due? Also, is it your understanding that an extension for filing this disclosure cannot be sought?

Please let us know your availability at your earliest convenience.

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 21 of 42**

CONFIDENTIAL                                                                                                    H&K_0002245

From: Jenkins, William[wjenkins@jw.com]
Sent: Wed 5/11/2022 12:41:20 AM Coordinated Universal Time
To: Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]; Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Re: Call regarding tomorrow's disclosure

*[External email]*
We are not going to include the proposed disclosure at this time. We may amend once we have a game plan.

William R. Jenkins, Jr.
Partner
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone 817-334-7214
Telecopier 817-334-7290

On May 10, 2022, at 7:09 PM, Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com> wrote:

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

William, Pat,

I filled Peter in that the firm has a disclosure due to the Court tomorrow. Are you available to discuss the disclosure language tonight or early tomorrow before the filing is due? Also, is it your understanding that an extension for filing this disclosure cannot be sought?

Please let us know your availability at your earliest convenience.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 12**
**Page 22 of 42**

From: Jenkins, William[wjenkins@jw.com]
Sent: Wed 5/11/2022 12:41:20 AM Coordinated Universal Time
To: Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]; Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Re: Call regarding tomorrow's disclosure

*[External email]*
We are not going to include the proposed disclosure at this time. We may amend once we have a game plan.

William R. Jenkins, Jr.
Partner
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone 817-334-7214
Telecopier 817-334-7290

On May 10, 2022, at 7:09 PM, Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com> wrote:

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

William, Pat,

I filled Peter in that the firm has a disclosure due to the Court tomorrow. Are you available to discuss the disclosure language tonight or early tomorrow before the filing is due? Also, is it your understanding that an extension for filing this disclosure cannot be sought?

Please let us know your availability at your earliest convenience.

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**EXHIBIT 12**
**Page 23 of 42**

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
Sent: Tue 5/31/2022 4:36:07 AM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Harvey, Jacqueline (POR - X52939) has shared a document with you : 2022.05.31 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct.docx (52 KB)
Attachment: 2022.05.31 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct(158042289.1).docx.url
Attachment: 2022.05.31 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct(158042289.1).docx

Peter,
Attached is the draft memorandum for Jackson Walker. Please let me know what revisions you have, and I will plan to try to get the final version to the client tomorrow.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 24 of 42**

CONFIDENTIAL

H&K_0002701

hkdocs.hklaw.com

!nrtdms:0:!session:hkdocs.hklaw.com:!database:Active:!document:158042289,1:

**EXHIBIT 12**
**Page 25 of 42**

CONFIDENTIAL

H&K_0002702

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

**Memorandum**

Date:     May 31, 2022

**Contents Covered by Attorney-Client Privilege and Work Product Doctrine**
**Privileged and Confidential: Attorney-Client Communication**

To:       Jackson Walker LLP

From:     Peter R. Jarvis & Jacqueline N. Harvey

Re:       Duties of Attorney Knowing of Judicial Misconduct

---

## I.     INTRODUCTION AND SUMMARY

This memorandum addresses what duties attorneys have when they know the judge presiding over their case has an undisclosed conflict of interest. In summary, the lawyer has a duty to (1) disclose the conflict of interest to his or her client and (2) disclose the conflict of interest in the proceedings.

Additionally, this memorandum suggests a solution for a law firm and its attorneys when a lawyer at the law firm has an ongoing romantic relationship with a judge. Under the facts outlined below, we recommend that Ms. Elizabeth Freeman associate with Jackson Walker LLP ("JW") as co-counsel on cases assigned to all other judges besides U.S. Bankruptcy Court Judge David R. Jones ("Judge Jones"). This helps JW limit its liability, limits the likelihood that JW attorneys are subject to bar discipline, allows JW to still appear before Judge Jones, and limits the likelihood that future JW cases before Judge Jones are vacated.

## II.    FACTS

It is our understanding that Ms. Freeman, who is a current partner at JW, and Judge Jones previously had a romantic relationship that terminated several years ago. Since then,[1] Ms. Freeman and Judge Jones have resumed their romantic relationship and are now living together (the "Relationship").

The firm leadership was not made aware of the Relationship until the last month or so. However, it appears several attorneys in JW's bankruptcy practice were aware of the standing of the Relationship for longer than a few months.

---

[1] At this time, it is unknown the precise date that their romantic relationship resumed.

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
Richmond | San Francisco | Stamford | Tallahassee | Tampa | Washington, D.C. | West Palm Beach
[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

**EXHIBIT 12**
**Page 26 of 42**

H&K_0002703

May 31, 2022
Page [ PAGE ]

There are presently several JW debtor and creditor cases before Judge Jones, but neither Judge Jones nor JW has disclosed on the record, or sought waiver for, the Relationship in any of these cases. It is our understanding that Ms. Freeman has not personally appeared before Judge Jones in these cases, but often assists on the cases prior to their assignment to Judge Jones.

## III.    LEGAL AUTHORITY AND ANALYSIS

### A.    Judge Jones is in Violation of 28 U.S.C. § 455.

1.    A well-informed, objective observer would question Judge Jones' impartiality so waiver is required.

Judge Jones is likely in violation of 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might be reasonably be questioned." "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *See Potashnick v. Port City Const. Co*., 609 F.2d 1101, 1111 (5th Cir. 1980); *see also Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1 ("The United States Supreme Court has made clear '[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.'") (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004)). "The Fifth Circuit has interpreted this mandate to mean that '[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person,' while remaining 'mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary' would be. *Ayati-Ghaffari,* 2019 WL 452756 at *1 (citing *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995)).

But, a conflict under § 455(a) may be waived by the parties after "full disclosure on the record of the basis for disqualification." *Id.* at § 455(e).

Here, there is little doubt that a reasonable person knowing all the facts would believe that Judge Jones is impartial towards Ms. Freeman or JW when she or it appears in front of him. Although it appears that Ms. Freeman does not personally appear before Judge Jones in Court, she is often attached to the case. Specifically, prior to a case being assigned to a bankruptcy judge, Ms. Freeman often does some billable work on the case. If this case is then assigned to Judge Jones, it is a case that Ms. Freeman has done work on and, likely, has some sort of stake in the outcome of the case even if it is a non-financial interest.

Even if Ms. Freeman does no work on a case, but a JW bankruptcy attorney appears in cases before Jude Jones, a reasonable person knowing all the facts would nonetheless believe that Judge Jones' impartiality towards Ms. Freeman's firm's bankruptcy practice, of which she is a leading member, would be affected.

Given the status of the Relationship at this time and the perception of impartiality of Judge Jones towards JW's bankruptcy practice group as a result of the Relationship, Judge Jones

**EXHIBIT 12**
**Page 27 of 42**

[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

H&K_0002704

May 31, 2022
Page [ PAGE ]

is required to disclose the Relationship on the record and seek waiver from the parties if he wishes to remain overseeing the case. To date he has failed to do so even though there are JW cases pending before him.

Therefore, Judge Jones is currently in violation of § 455(a) because there is a continuing perception of impartiality in JW cases before him that was not disclosed and waived by the parties.

> 2. Judge Jones and Ms. Freeman are not "spouses" requiring his immediate recusal.

Judge Jones is likely not in violation of 28 U.S.C. § 455(b), which requires a judge to recuse themselves if their spouse is acting as a lawyer in the proceeding before them. *Id.* at § 455(b)(5). Whether the term "spouse" under this rule includes a co-habitant relationship remains unresolved. If this conflict exists, it is unable to be waived. *Id.* at § 455(e).

Although Judge Jones and Ms. Freeman are living together and their Relationship could theoretically be interpreted to be akin to "spouses," there is a non-frivolous argument that this does not apply to the Relationship because they are unmarried.

If they get married in the future, then this conflict is unwaiveable and Judge Jones must recuse himself. But, until then, Judge Jones is not necessarily in violation of 28 U.S.C. § 455(b) at this time for failing to recuse himself from JW cases.

**B.     JW Attorneys Have a Duty to Disclose the Conflict.**

> 1. The conflict must be disclosed to JW clients whose cases are before Judge Jones.

Texas Rules of Professional Conduct ("RPC"), Rule 1.3 requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Here, there are several ways that the client's case may be impacted. First, if the relationship goes undiscovered then there is the possibility of beneficial or negative bias on the client's case as a result of the status of the Relationship. For example, if the Relationship was terminated then there is a chance Judge Jones may be biased negatively towards JW and its clients.

Even more impactful would be if the conflict was subsequently discovered because the case may be required to start from the beginning. *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 726–27 (5th Cir. 2010) ("'Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." ' ") (citing *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988))). *See, e.g., In re Cleveland*, 420 Fed. Appx. 435, 437 (2011) (concluding that

**EXHIBIT 12**
**Page 28 of 42**
[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

CONFIDENTIAL                                                                H&K_0002705

May 31, 2022
Page [ PAGE ]

because the judge was disqualified under § 455 that the order must be vacated); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (2010) (concluding where no disclosure and waiver occurred the judgment had to be vacated and remanded to a different judge). It would be extremely costly for the client to re-litigate the entire case, and even if JW covered the legal costs on the basis of failure to disclose and waive this conflict, the client would be set back months or years from resolving the bankruptcy.

Finally, the client could face terrible publicity if the conflict were discovered.

The Relationship, therefore, must be disclosed and waived by the clients in order for them to make an informed decision regarding JW's continuing representation of them.

2. The conflict must be disclosed to the Court for waiver on the record.

Lawyers are prohibited from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." RPC Rule 8.04(a)(3). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (orig. proceeding) (*citing Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).

Lawyers are similar prohibited from "knowingly assit[ing] a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." RPC Rule 8.04(a)(6).

Here, JW attorneys are regularly required to make disclosures regarding conflicts to the Court and, as discussed above, Judge Jones is required to make similar disclosures on the record of conflicts. It is believed that several JW attorneys in the bankruptcy group have known about the Relationship for some time, but have failed to make any disclosures on the record that JW has a conflict in appearing before Judge Jones. Similarly, JW attorneys have failed to make a disclosure knowing that Judge Jones himself has a conflict in violation of § 455 and failed to disclose and seek waiver for it.

Thus, by failing to disclose either JW's or Judge Jones' conflicts, JW attorneys who knew of the Relationship may be in violation of RPC 8.04 and subject to bar discipline.

## IV. CONCLUSION AND RECOMMENDATION.

In conclusion, Judge Jones is most likely in violation of 28 U.S.C. § 455(a). Because of the Relationship, JW is required to disclose the Relationship to both its clients with cases before Judge Jones as well as on the record in those cases before Judge Jones. Failure to disclose the Relationship on the record may result in discipline from the Bar for violating RPC Rule 8.04(a)(3) & (6).

Therefore, in order to keep Ms. Freeman working with the JW bankruptcy group while avoiding future conflicts and liability, we would recommend a co-counsel relationship between her and JW. Specifically, Ms. Freeman would create her own business and would have the ability

[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

**EXHIBIT 12**
**Page 29 of 42**

CONFIDENTIAL

H&K_0002706

May 31, 2022
Page [ PAGE ]

to appear as co-counsel on any JW cases that were assigned to any other bankruptcy judge besides Judge Jones.

This helps in several ways for future cases: (i) there is no need for client disclosure and waiver; (ii) there is no need for Judge Jones disclosure and waiver; (iii) JW can still practice in front of Judge Jones; (iv) no JW attorneys will be subject to disciplinary action for failure to disclose and waive the relationship; and (v) Ms. Freeman still gets to work on all the bankruptcy cases that are not before Judge Jones with the JW group.

As for present cases before Judge Jones, disclosures on the record and to clients are still necessary.

[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

**EXHIBIT 12**
**Page 30 of 42**

CONFIDENTIAL

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
**Sent:** Thur 6/2/2022 4:55:24 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** FW: JW - Attorney's Duties with Knowledge of Judicial Misconduct
**Attachment:** 2022.06.02 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct.pdf
**Attachment:** 2022.06.02 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct.docx

Peter,

I showed Pat and William the email below. They both really liked it, but Pat had two comments:

(1) We should add a sentence that the option of the firm doing nothing in front of Jones was considered, but it is not practical because it would mean telling the client that there is a 50% chance that JW cannot continue with the case if it is assigned to him.

(2) We should consider a more neutral way of saying the judge unwilling to make disclosure.

With these two revisions in mind, I've made edits below and highlighted them in green.

Pat and William said that they do not need to review it again, and once we've made these revisions we are okay to send to them. I've updated the date on the memo here as well for you to send to them.

Please let me know if you'd like to discuss.

DRAFT

Dear William and Pat,

Attached please find a copy of a memo that Jackie Harvey and I have prepared which assesses the disciplinary risk to lawyers in your firm's bankruptcy practice who assist in the representation of clients with cases pending before Judge Jones. This risk described in this memo is in addition to whatever risk partners and supervising lawyers at the firm may have under Texas RPC 5.01(a), which provides that a partner or supervising lawyer is subject to discipline for another lawyer's RPC violations if the partner or supervising lawyer "orders, encourages, or knowingly permits the conduct involved," or under Texas RPC 5.01(b) which provides for discipline of a lawyer with "direct supervisory authority" over another lawyer if the supervisory lawyer "knowingly fails to take reasonable remedial action to avoid or mitigate the consequences of the other lawyer's violation."

Weighing the risk to your firm, its lawyers, and its bankruptcy clients as a whole, Jackie and I do not presently believe that there is a reasonably safe way forward as long as Elizabeth Freeman remains a part of your firm and her relationship with Judge Jones remains undisclosed. We also do not believe that the situation can be cured by having Ms. Freeman assume a non-partnership role at the firm such as associate, independent counsel, or "of counsel." Further, we do not believe that it is a practical solution that the firm recuse itself from all cases assigned to Judge Jones going forward. It is our understanding that there is only one other bankruptcy judge available for these complex cases, and thus, a 50% chance that the firm would have to remove itself from the case absent a disclosure.

In other words, and although we remain ready, willing, and able to consider any and all potential options, our present view is that the best and clearest way forward is likely to be for Ms. Freeman to leave your firm and either set up her own separate firm or join another firm. In cases that are not assigned to Judge Jones, your firm and she could then agree to work as co-counsel if your clients so desire and if you and she thought it appropriate to do so. Co-counsel arrangements would, however, have to be made on a case-by-case basis with the clients' best interests in mind and not on the basis of any *quid pro quo* or other mandatory cross-referral requirements. *See* Texas RPC 7.03(e)(2).

As we have explained, Jackie and I believe based on our last conversation with him that Tom Kirkendall, who represents Ms. Freeman, either agrees already or is coming around to the view that Ms. Freeman cannot remain at your firm absent, at a minimum, disclosures on the record that Judge Jones has not yet made and we do not know if he will make in the future.

There are other issues that will have to be addressed as a part of an overall solution. For example, an assessment of what, if anything, to do with each of the cases that have been pending before Judge Jones during the present status of his relationship with Ms. Freeman seems appropriate, and the economic terms of Ms. Freeman's separation from your firm will need attention. If your colleagues and you agree, we would propose to address these matters with Tom as well as to assess whether or how his, or his client's, views may have evolved since we last spoke with him.

Best regards,

Peter

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111

**EXHIBIT 12**
**Page 31 of 42**

 H&K_0002772

Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 32 of 42**

H&K_0002773

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

**Memorandum**

Date:     June 2, 2022

**Contents Covered by Attorney-Client Privilege and Work Product Doctrine**
**Privileged and Confidential: Attorney-Client Communication**

To:     Jackson Walker LLP

From:   Peter R. Jarvis & Jacqueline N. Harvey

Re:     Duties of Attorney Knowing of Judicial Misconduct

## I.     INTRODUCTION AND SUMMARY

This memorandum addresses the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. § 455 but has not disclosed. For purposes of this memorandum, we assume that the judge's conflict is a result of the lawyer's firm's involvement in the case in light of the lawyers who are a part of the firm but is also a conflict that could be waived by the parties.

Although we cannot say that the matter is entirely free from doubt, it is our opinion that the lawyer has a duty to disclose the judicial conflict to the lawyer's client and seek to obtain the client's agreement to make disclosure. If the client directs the lawyer to make disclosure, the lawyer must either see to it that the judicial conflict is disclosed or withdraw. If the client directs the lawyer not to make any disclosure, the lawyer must withdraw.

## II.     LEGAL AUTHORITY AND ANALYSIS

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might be reasonably be questioned." "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *See Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).[1]  But, a conflict under § 455(a) may be waived by the parties after

---

[1] *See also Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1 ("The United States Supreme Court has made clear '[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.'") (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004)). "The Fifth Circuit has interpreted this mandate to mean that '[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

**EXHIBIT 12**
**Page 33 of 42**

June 2, 2022
Page 2

"full disclosure on the record of the basis for disqualification." *Id.* at § 455(e). The question here is therefore what a lawyer must do in a situation in which the lawyer is unwilling simply to withdraw from the case and the judge has not made any disclosure even though, to the lawyer's knowledge, the judge is aware of the underlying facts, which would appear to give rise to need for disclosure or recusal.

### A.     Texas RPC 1.03

Rule 1.03 of the Texas Disciplinary Rules of Professional Conduct (the "RPCs") provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Or as stated in Comment [1] to RPC 1.03, "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued to the extent the client is willing and able to do so."

On the facts assumed here, RPC 1.03 requires communication by the lawyer to the client of the judicial disclosure or recusal issue. In fact, RPC 1.03 would require communication with the client even if the lawyer was not personally certain that the judge had failed to make a necessary disclosure but just believed that there was a material risk that this was so. This follows not only because of the risk of the case taking a turn unfavorable to the lawyer's client as a result of the future rulings by the judge but also because a subsequent revelation of the conflict may require that the client's matter be re-litigated from the beginning. *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 726–27 (5th Cir. 2010) ("'Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." ' ") (citing *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988))); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (absent disclosure and waiver, the judgment had to be vacated and remanded to a different judge). *See also, In re Cleveland*, 420 Fed. Appx. 435, 437 (5th Cir. 2011) (because the judge was disqualified under § 455, the judge's the order must be vacated); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (concluding where no disclosure and waiver occurred the judgment had to be vacated and remanded to a different judge). If nothing else, communicating this risk to the client allows the client to decide whether the client wishes to change counsel in order to address and hopefully eliminated the judicial disqualification issue.

---

than the hypersensitive, cynical, and suspicious person,' while remaining 'mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary' would be. *Ayati-Ghaffari,* 2019 WL 452756 at \*1 (citing *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995)).

**EXHIBIT 12**
**Page 34 of 42**

CONFIDENTIAL                                                                                    H&K_0002775

June 2, 2022
Page 3

**B.    RPC 8.04(a)(6)**

If the client directs the lawyer to make disclosure, then the lawyer must either do so or withdraw. *See*, *e.g.*, RPC 1.02(a). That does not mean, however, that the lawyer is free to proceed without disclosure if the client directs the lawyer to do so. Under RPC 8.04(a)(6), a lawyer cannot "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." RPC 8.04(a)(6). The questions thus become what is meant by "knowingly" and what is meant by "assist."[2]

**1.    Defining "Knowingly"**

The Terminology section of the RPCs provides that "'knowingly' … denotes actual knowledge of the facts in question. A person's knowledge may be inferred from circumstances." Actual knowledge requires proof beyond what is required to establish what a reasonably prudent (and therefore non-negligent) person should have known. In the present situation, however, it appears that the lawyer with the case before the judge has actual knowledge of all of the facts which appear to give rise to the judicial conflict. Consequently, the most that that lawyer could say is that the lawyer does not "know" that the law requires judicial disclosure or recusal on these facts--perhaps on the ground that since the judge also knows the facts, the judge must have reached a reasoned decision that disclosure or recusal is not required.

We are not aware of any Texas authority directly on point. Nonetheless, it is our opinion that the likelihood of the lawyer prevailing on such a defense is low. At least at present, we do not see a strong argument to the effect that judicial disclosure or recusal is not required. And even if the lawyer is able to identify a plausible and non-frivolous argument as to why disclosure or recusal is not necessary, we are not certain that that would protect the lawyer from discipline. Although we have found no Texas authority on point, disciplinary decisions in several other jurisdictions use language that, at least if taken literally, would move the "actual knowledge/must have known" standard under ABA Model Rule 8.3 (the counterpart to RPC 8.03) very close to a "should have known" standard. *See* Geoffrey C. Hazard, Jr., W. William Hodes & Peter R. Jarvis, The Law of Lawyering §68.04 (last updated 12/21).

**2.    Defining "Assist"**

Texas Ethics Opinion 692 (2021) addresses whether a lawyer who merely remains silent and says nothing can be held to have failed to disclose a material fact when doing so was otherwise "necessary to avoid assisting a criminal or fraudulent act" under RPC 3.03(a)(2). The opinion provides that:

> This Committee agrees with the latter view that "assisting" a client's criminal or fraudulent act—at least in these circumstances—requires more than mere silence

---

[2] For the sake of completeness, we note that in addition to RPC 8.04(a)(6), RPC 8.03(b) provides that "Except as permitted in paragraphs (c) or (d), a lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority" and that RPC 8.04(a)(3) prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." In light of our analysis of RPC 8.04(a)(6), we do not believe it is necessary to explore these other sections further at this time.

**EXHIBIT 12**
**Page 35 of 42**

CONFIDENTIAL                                                    H&K_0002776

June 2, 2022
Page 4

or inaction. Although the term "assisting" is not defined in the Rules, the ordinary legal meaning of that term implies some kind of affirmative and knowing participation in the client's lie. By way of example, "assisting" crimes generally require proof that the defendant solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2); *see also Rodriguez v. MumboJumbo, L.L.C.*, 347 S.W.3d 924 (Tex. App.—Dallas 2011, no pet.). Rodriguez involved allegations that a lawyer had suborned perjury by failing "to clarify or pull back" allegedly false testimony. 347 S.W.3d at 926-27. But, the court noted, "[f]or subornation of perjury to occur, the suborner must act with the intent to promote or assist the witness in providing false testimony." *Id*. at 927. "One does not suborn perjury merely because one knows it has occurred and fails to disclose it." *Id*. In other words, a lawyer's failure to "clarify or pull back" a client's false testimony is not the same as promoting or assisting a client in providing false testimony as required for the crime of suborning perjury. In the same way, this Committee concludes that a lawyer does not "assist" in the client's false testimony under Rule 3.03(a)(2) by passively witnessing that testimony on cross-examination and remaining silent.

In the present circumstances, however, it would appear difficult to conclude that the lawyer's participation in a case before a judge who is required either to disclose a conflict or implement recusal is equivalent to mere silence which does not constitute impermissible assistance. In other words, it is our opinion that conducting a case before and seeking favorable rulings from a judge who is required to make disclosure or implement recusal would therefore constitute impermissible assistance to a judge under RPC 8.04(a)(6).

If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how best to raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw.  At least at present, we cannot say that a particular approach must be followed.  For example, it may be best to begin by speaking with opposing counsel about the matter and then addressing the matter jointly with the court rather than by simply making a filing with the court before communicating with other counsel.

## III.   <u>CONCLUSION AND RECOMMENDATION</u>

In our opinion, disclosure by the lawyer to firm clients about the judicial conflict is necessary.  If the client decides to change lawyers and firms, no duty to take any further action may exist. If the client wishes to stay with the present lawyer and firm, however, then the firm lawyers who participate in the case with knowledge of the facts giving rise to the need for judicial disclosure or recusal are running a material risk of lawyer discipline.

**EXHIBIT 12**
**Page 36 of 42**

CONFIDENTIAL

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

**Memorandum**

Date:      June 2, 2022

**Contents Covered by Attorney-Client Privilege and Work Product Doctrine
Privileged and Confidential: Attorney-Client Communication**

To:        Jackson Walker LLP

From:      Peter R. Jarvis & Jacqueline N. Harvey

Re:        Duties of Attorney Knowing of Judicial Misconduct

## I.   INTRODUCTION AND SUMMARY

This memorandum addresses the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. § 455 but has not disclosed. For purposes of this memorandum, we assume that the judge's conflict is a result of the lawyer's firm's involvement in the case in light of the lawyers who are a part of the firm but is also a conflict that could be waived by the parties.

Although we cannot say that the matter is entirely free from doubt, it is our opinion that the lawyer has a duty to disclose the judicial conflict to the lawyer's client and seek to obtain the client's agreement to make disclosure. If the client directs the lawyer to make disclosure, the lawyer must either see to it that the judicial conflict is disclosed or withdraw. If the client directs the lawyer not to make any disclosure, the lawyer must withdraw.

## II.   LEGAL AUTHORITY AND ANALYSIS

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might be reasonably be questioned." "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *See Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).[1]  But, a conflict under § 455(a) may be waived by the parties after

---

[1] *See also Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1 ("The United States Supreme Court has made clear '[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.'") (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004)). "The Fifth Circuit has interpreted this mandate to mean that '[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
Richmond | San Francisco | Stamford | Tallahassee | Tampa | Washington, D.C. | West Palm Beach
[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

EXHIBIT 12
Page 37 of 42

CONFIDENTIAL                                                                           H&K_0002778

June 2, 2022
Page [ PAGE ]

"full disclosure on the record of the basis for disqualification." *Id.* at § 455(e).  The question here is therefore what a lawyer must do in a situation in which the lawyer is unwilling simply to withdraw from the case and the judge has not made any disclosure even though, to the lawyer's knowledge, the judge is aware of the underlying facts, which would appear to give rise to need for disclosure or recusal.

### A.  <u>Texas RPC 1.03</u>

Rule 1.03 of the Texas Disciplinary Rules of Professional Conduct (the "RPCs") provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Or as stated in Comment [1] to RPC 1.03, "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued to the extent the client is willing and able to do so."

On the facts assumed here, RPC 1.03 requires communication by the lawyer to the client of the judicial disclosure or recusal issue.  In fact, RPC 1.03 would require communication with the client even if the lawyer was not personally certain that the judge had failed to make a necessary disclosure but just believed that there was a material risk that this was so. This follows not only because of the risk of the case taking a turn unfavorable to the lawyer's client as a result of the future rulings by the judge but also because a subsequent revelation of the conflict may require that the client's matter be re-litigated from the beginning.  *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 726–27 (5th Cir. 2010) ("'Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." ' ") (citing *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988))); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (absent disclosure and waiver, the judgment had to be vacated and remanded to a different judge).  *See also, In re Cleveland*, 420 Fed. Appx. 435, 437 (5th Cir. 2011) (because the judge was disqualified under § 455, the judge's the order must be vacated); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (concluding where no disclosure and waiver occurred the judgment had to be vacated and remanded to a different judge).  If nothing else, communicating this risk to the client allows the client to decide whether the client wishes to change counsel in order to address and hopefully eliminated the judicial disqualification issue.

---

than the hypersensitive, cynical, and suspicious person,' while remaining 'mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary' would be. *Ayati-Ghaffari*, 2019 WL 452756 at *1 (citing *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995)).

**EXHIBIT 12**
**Page 38 of 42**

[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

June 2, 2022
Page [ PAGE ]

### B. RPC 8.04(a)(6)

If the client directs the lawyer to make disclosure, then the lawyer must either do so or withdraw. *See, e.g.*, RPC 1.02(a). That does not mean, however, that the lawyer is free to proceed without disclosure if the client directs the lawyer to do so. Under RPC 8.04(a)(6), a lawyer cannot "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." RPC 8.04(a)(6). The questions thus become what is meant by "knowingly" and what is meant by "assist."[2]

#### 1. Defining "Knowingly"

The Terminology section of the RPCs provides that "'knowingly' … denotes actual knowledge of the facts in question. A person's knowledge may be inferred from circumstances." Actual knowledge requires proof beyond what is required to establish what a reasonably prudent (and therefore non-negligent) person should have known. In the present situation, however, it appears that the lawyer with the case before the judge has actual knowledge of all of the facts which appear to give rise to the judicial conflict. Consequently, the most that that lawyer could say is that the lawyer does not "know" that the law requires judicial disclosure or recusal on these facts--perhaps on the ground that since the judge also knows the facts, the judge must have reached a reasoned decision that disclosure or recusal is not required.

We are not aware of any Texas authority directly on point. Nonetheless, it is our opinion that the likelihood of the lawyer prevailing on such a defense is low. At least at present, we do not see a strong argument to the effect that judicial disclosure or recusal is not required. And even if the lawyer is able to identify a plausible and non-frivolous argument as to why disclosure or recusal is not necessary, we are not certain that that would protect the lawyer from discipline. Although we have found no Texas authority on point, disciplinary decisions in several other jurisdictions use language that, at least if taken literally, would move the "actual knowledge/must have known" standard under ABA Model Rule 8.3 (the counterpart to RPC 8.03) very close to a "should have known" standard. *See* Geoffrey C. Hazard, Jr., W. William Hodes & Peter R. Jarvis, The Law of Lawyering §68.04 (last updated 12/21).

#### 2. Defining "Assist"

Texas Ethics Opinion 692 (2021) addresses whether a lawyer who merely remains silent and says nothing can be held to have failed to disclose a material fact when doing so was otherwise "necessary to avoid assisting a criminal or fraudulent act" under RPC 3.03(a)(2). The opinion provides that:

> This Committee agrees with the latter view that "assisting" a client's criminal or
> fraudulent act—at least in these circumstances—requires more than mere silence

---

[2] For the sake of completeness, we note that in addition to RPC 8.04(a)(6), RPC 8.03(b) provides that "Except as permitted in paragraphs (c) or (d), a lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority" and that RPC 8.04(a)(3) prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." In light of our analysis of RPC 8.04(a)(6), we do not believe it is necessary to explore these other sections further at this time.

CONFIDENTIAL

June 2, 2022
Page [ PAGE ]

or inaction. Although the term "assisting" is not defined in the Rules, the ordinary legal meaning of that term implies some kind of affirmative and knowing participation in the client's lie. By way of example, "assisting" crimes generally require proof that the defendant solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2); *see also Rodriguez v. MumboJumbo, L.L.C.*, 347 S.W.3d 924 (Tex. App.—Dallas 2011, no pet.). Rodriguez involved allegations that a lawyer had suborned perjury by failing "to clarify or pull back" allegedly false testimony. 347 S.W.3d at 926-27. But, the court noted, "[f]or subornation of perjury to occur, the suborner must act with the intent to promote or assist the witness in providing false testimony." *Id*. at 927. "One does not suborn perjury merely because one knows it has occurred and fails to disclose it." *Id*. In other words, a lawyer's failure to "clarify or pull back" a client's false testimony is not the same as promoting or assisting a client in providing false testimony as required for the crime of suborning perjury. In the same way, this Committee concludes that a lawyer does not "assist" in the client's false testimony under Rule 3.03(a)(2) by passively witnessing that testimony on cross-examination and remaining silent.

In the present circumstances, however, it would appear difficult to conclude that the lawyer's participation in a case before a judge who is required either to disclose a conflict or implement recusal is equivalent to mere silence which does not constitute impermissible assistance. In other words, it is our opinion that conducting a case before and seeking favorable rulings from a judge who is required to make disclosure or implement recusal would therefore constitute impermissible assistance to a judge under RPC 8.04(a)(6).

If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how best to raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw. At least at present, we cannot say that a particular approach must be followed. For example, it may be best to begin by speaking with opposing counsel about the matter and then addressing the matter jointly with the court rather than by simply making a filing with the court before communicating with other counsel.

## III.   CONCLUSION AND RECOMMENDATION

In our opinion, disclosure by the lawyer to firm clients about the judicial conflict is necessary. If the client decides to change lawyers and firms, no duty to take any further action may exist. If the client wishes to stay with the present lawyer and firm, however, then the firm lawyers who participate in the case with knowledge of the facts giving rise to the need for judicial disclosure or recusal are running a material risk of lawyer discipline.

[ DOCPROPERTY "DOCID" \* MERGEFORMAT ]

**EXHIBIT 12
Page 40 of 42**

CONFIDENTIAL

**From:** Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
**Sent:** Fri 6/10/2022 3:52:29 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Notes from call with Tom

Peter,

Here are my notes from the call with Tom yesterday in preparation for our call at 9 a.m.:

- We suggested for the first time that Liz may have to decamp
- He responded asking if she were to decamp, what does that mean for the firm's continuing disclosure obligation prospectively for cases before Jones?
  - Does not want litigation to ensure where the firm and Liz are both criticized for coming up with this decamping solution as a way to get around the disclosure obligation.
- Agrees that disclosures need to be made to current clients before Jones and, if Liz stays, all clients going forward.
- If the judge starts making disclosures, would Liz want to stay at the firm?
  - That is her preference, but he is aware that the question remains whether the firm/Liz can afford that
- If judge does not disclose, then Tom is hoping that Jones does not take any JW cases at least for a period of time, but if that does not happen then JW must disclose despite the Judge not doing so.
- Discussed Judge Isgur's daughter's husband. Judge Isgur recused from all cases for that firm the husband worked at.
  - Became a weapon. JW is similarly concerned that it could be weaponized here for them.
- Tom is holding off speaking to Jones until he gets the okay from JW

**Jacqueline Harvey | Holland & Knight | PRIDE**
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Mobile 805.680.8187
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 41 of 42**

**From:** Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
**Sent:** Tue 5/10/2022 9:21:32 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Jenkins Williams - Disclosure due tomorrow

Peter,

I talked to William and updated him on the matter. I told him that Tom agrees that a disclosure by the firm is necessary, but that an agreement around the wording of that disclosure has yet to be determined. The firm has a disclosure to the Court due tomorrow. William believes at this point, they should continue with the old disclosure until this is sorted out, but wanted our confirmation.

Let me know if you would like a call to discuss, or have an answer for William that I can pass along to him.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**EXHIBIT 12**
**Page 42 of 42**

CONFIDENTIAL  H&K_0002087

Appointment

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 11:46:45 PM |
| **To:** | mark@androvett.com; Kit Frieden [Kit@androvett.com]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |

| | |
|---|---|
| **Subject:** | JW/Androvett Call |
| **Location:** | https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09 |

| | |
|---|---|
| **Start:** | 3/9/2021 12:30:00 AM |
| **End:** | 3/9/2021 1:30:00 AM |
| **Show Time As:** | Tentative |

| | |
|---|---|
| **Required Attendees:** | mark@androvett.com; Kit Frieden; Cowlishaw, Pat |

Barbara Malin is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09

Meeting ID: 955 4057 4116
Password: 420138
One tap mobile
+13462487799,,95540574116#,,,,O#,420138# US (Houston)
+12532158782,,95540574116#,,,,O#,420138# US (Tacoma)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 253 215 8782 US (Tacoma)
        +1 669 900 6833 US (San Jose)
        +1 312 626 6799 US (Chicago)
        +1 929 205 6099 US (New York)
        +1 301 715 8592 US (Washington DC)
        833 548 0276 US Toll-free
        833 548 0282 US Toll-free
        877 853 5257 US Toll-free
        888 475 4499 US Toll-free
Meeting ID: 955 4057 4116
Password: 420138
Find your local number: https://jwllp.zoom.us/u/adGINTwPiw

Join by SIP
95540574116@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
64.211.144.160 (Brazil)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)
Meeting ID: 955 4057 4116
Password: 420138

**EXHIBIT 13**
**Page 1 of 143**

Confidential

| | |
|---|---|
| Message | |
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 5:57:09 PM |
| **To:** | Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw]; Mark Annick [Mark@androvett.com] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat

**Patrick R. Cowlishaw**

**EXHIBIT 13**
**Page 2 of 143**
Confidential

2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

 **Jackson Walker** LLP

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls

**EXHIBIT 13**
**Page 3 of 143**

Confidential

should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com  

Voted Best PR Firm.

Confidential

**EXHIBIT 13**
**Page 4 of 143**

JW_00029826

| From: | Malin, Barbara[bmalin@jw.com] |
|---|---|
| Sent: | Tue 3/9/2021 10:56:37 AM (UTC-06:00) |
| To: | Mark Annick[Mark@androvett.com]; Cowlishaw, Pat[pcowlishaw@jw.com] |
| Cc: | Kit Frieden[Kit@androvett.com] |
| Subject: | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

Thanks, Mark. Pat and I will touch base and be back in touch.
Barbara
**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com
**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review
**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Barbara,
Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.
This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.
As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.
**DRAFT Statement**
    Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.
Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:
- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.
Thanks,
Mark
**Mark Annick**

Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

<div align="center">

**EXHIBIT 13**
**Page 5 of 143**

</div>

     JW_00029827

androvett.com  

Voted Best PR Firm

Confidential

EXHIBIT 13
Page 6 of 143

JW_00029828

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 6:13:17 PM |
| **To:** | Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw]; Mark Annick [Mark@androvett.com] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

I do believe it is important to affirm Liz. There is definitely an audience who will be of the mindset that in matters like this one it is always the woman who bears the consequences and who is the subject of disapproving gossip. For that reason, my view is that it is important for the firm not to be perceived as throwing Liz to the sharks at the first opportunity.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 12:08 PM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I look to Mark and Kit here. I appreciate Barbara's point. I also think there is going to a strong desire to say something pretty strong and affirming our partner as a person and lawyer, without speaking directly to the propriety of her conduct in this instance. Maybe "consider" gets there.

Pat

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 11:57 AM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 7 of 143**

Confidential

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat

**Patrick R. Cowlishaw**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com



The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 8 of 143**
Confidential                                                                                     JW_00029830

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com  

**EXHIBIT 13**
**Page 9 of 143**
Confidential

Voted Best PR Firm.

EXHIBIT 13
Page 10 of 143

Confidential

JW_00029832

Message

| From: | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
|---|---|
| **Sent**: | 3/8/2021 5:46:30 PM |
| **To**: | 'mark@androvett.com' [mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC**: | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject**: | Apologies but how about 6:30? [IMAN-JWDOCS.FID3955096] |

**Importance**: High

Pat and Wade are on another call that appears unlikely to end before 6:30. Pat says Wade may be able to join us at 6:30. Sorry for pushing another meeting.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Malin, Barbara
**Sent:** Monday, March 8, 2021 5:28 PM
**To:** mark@androvett.com; Kit Frieden <Kit@androvett.com>
**Subject:** Can we get on another call with Pat at 6? [IMAN-JWDOCS.FID3955096]
**Importance:** High

It sounds like Pat has more information.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

 **Jackson Walker** LLP

**EXHIBIT 13**
**Page 11 of 143**

Confidential

JW_00030017

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 2:00:34 PM |
| **To:** | 'mark@androvett.com' [mark@androvett.com] |
| **CC:** | 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | Call this afternoon [IMAN-JWDOCS.FID3955096] |

Can you be available for a call this afternoon with me and Pat Cowlishaw, our general counsel. Per Pat, Wade's general inclination is to obtain your advice on and assistance with talking points and a statement for both of these possible situations: a) if it is determined that no relationship exists and b) if it is determined that a relationship does exist.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com



**EXHIBIT 13**
**Page 12 of 143**

Confidential

JW_00030018

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 5:28:27 PM |
| **To:** | 'mark@androvett.com' [mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | Can we get on another call with Pat at 6? [IMAN-JWDOCS.FID3955096] |
| **Importance:** | High |

It sounds like Pat has more information.

Barbara Malin | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com



**EXHIBIT 13**
**Page 13 of 143**

Confidential

Message

| From: | Mark Annick [Mark@androvett.com] |
|---|---|
| Sent: | 3/23/2021 10:20:04 AM |
| To: | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| CC: | Kit Frieden [Kit@androvett.com] |
| Subject: | Checking In |
| Attachments: | image001.gif; image002.gif; image003.gif |

<p style="text-align:center;color:red;">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</p>

Barbara,

Good morning.

I just wanted to check in and see if there are any new developments in the matter we were chatting about last week.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 14 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 10:29:05 AM |
| **To:** | 'mark@androvett.com' [mark@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | Crisis communications need [IMAN-JWDOCS.FID3955096] |
| **Importance:** | High |

Mark – I left a message but wanted to reach out to you by email as well. I need to engage crisis communications assistance today. I've got a call with firm management at 1:00 p.m. to discuss.

Barbara Malin | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com



**EXHIBIT 13**
**Page 15 of 143**
Confidential                    JW_00030024

| | |
|---|---|
| **Message** | |
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 10:43:41 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | DRAFT Statement - For Review |
| **Attachments:** | image001.gif; image002.gif; image003.gif |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

**EXHIBIT 13**
**Page 16 of 143**

Confidential



EXHIBIT 13
Page 17 of 143

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 5:03:25 PM |
| **To:** | Mark Annick [Mark@androvett.com]; Kit Frieden [Kit@androvett.com] |
| **BCC:** | {F3955096}.JWDOCS@JWimanage.jwllp.com |
| **Subject:** | FW: Comment [IMAN-JWDOCS.FID3955096] |

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 18 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/11/2021 3:39:34 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559

**EXHIBIT 13**
**Page 19 of 143**

Confidential

bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 20 of 143**

Confidential

JW_00030032

Appointment

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 5:30:01 PM |
| **To:** | mark@androvett.com; Kit Frieden [Kit@androvett.com]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **Subject:** | JW/Androvett Call |
| **Location:** | https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09 |
| **Start:** | 3/8/2021 6:00:00 PM |
| **End:** | 3/8/2021 7:00:00 PM |
| **Show Time As:** | Tentative |

| | |
|---|---|
| **Required Attendees:** | 'mark@androvett.com'; 'Kit Frieden'; Cowlishaw, Pat |

```
Barbara Malin is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09

Meeting ID: 955 4057 4116
Password: 420138
One tap mobile
+13462487799,,95540574116#,,,,0#,420138# US (Houston)
+12532158782,,95540574116#,,,,0#,420138# US (Tacoma)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 253 215 8782 US (Tacoma)
        +1 669 900 6833 US (San Jose)
        +1 312 626 6799 US (Chicago)
        +1 929 205 6099 US (New York)
        +1 301 715 8592 US (Washington DC)
        833 548 0276 US Toll-free
        833 548 0282 US Toll-free
        877 853 5257 US Toll-free
        888 475 4499 US Toll-free
Meeting ID: 955 4057 4116
Password: 420138
Find your local number: https://jwllp.zoom.us/u/adGINTwPiw

Join by SIP
95540574116@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
64.211.144.160 (Brazil)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)
Meeting ID: 955 4057 4116
Password: 420138
```

**EXHIBIT 13**
**Page 21 of 143**

Appointment

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 2:05:51 PM |
| **To:** | mark@androvett.com; Kit Frieden [Kit@androvett.com]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **Subject:** | JW/Androvett Call |
| **Location:** | https://jwllp.zoom.us/j/92319115122?pwd=bGd1OVNHUGZCTzcyZEpmam82TEtXdz09 |
| **Start:** | 3/8/2021 3:45:00 PM |
| **End:** | 3/8/2021 4:45:00 PM |
| **Show Time As:** | Tentative |
| **Required Attendees:** | 'mark@androvett.com'; 'Kit Frieden'; Cowlishaw, Pat |

```
Barbara Malin is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://jwllp.zoom.us/j/92319115122?pwd=bGd1OVNHUGZCTzcyZEpmam82TEtXdz09

Meeting ID: 923 1911 5122
Password: 711433
One tap mobile
+13462487799,,92319115122#,,,0#,711433# US (Houston)
+12532158782,,92319115122#,,,0#,711433# US (Tacoma)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 253 215 8782 US (Tacoma)
        +1 669 900 6833 US (San Jose)
        +1 301 715 8592 US (Washington DC)
        +1 312 626 6799 US (Chicago)
        +1 929 205 6099 US (New York)
        877 853 5257 US Toll-free
        888 475 4499 US Toll-free
        833 548 0276 US Toll-free
        833 548 0282 US Toll-free
Meeting ID: 923 1911 5122
Password: 711433
Find your local number: https://jwllp.zoom.us/u/ac8yqrJaAV

Join by SIP
92319115122@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
64.211.144.160 (Brazil)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)
Meeting ID: 923 1911 5122
Password: 711433
```

**EXHIBIT 13**
**Page 22 of 143**

Confidential

**Appointment**

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 5:46:45 PM |
| **To:** | mark@androvett.com; Kit Frieden [Kit@androvett.com]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |

| | |
|---|---|
| **Subject:** | JW/Androvett Call |
| **Location:** | https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09 |

| | |
|---|---|
| **Start:** | 3/8/2021 6:30:00 PM |
| **End:** | 3/8/2021 7:30:00 PM |
| **Show Time As:** | Tentative |

| | |
|---|---|
| **Required Attendees:** | mark@androvett.com; Kit Frieden; Cowlishaw, Pat |

Barbara Malin is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://jwllp.zoom.us/j/95540574116?pwd=MllKbWd6d2hzTElmRkJpbVVIWWtLQT09

Meeting ID: 955 4057 4116
Password: 420138
One tap mobile
+13462487799,,95540574116#,,,,0#,420138# US (Houston)
+12532158782,,95540574116#,,,,0#,420138# US (Tacoma)

Dial by your location
        +1 346 248 7799 US (Houston)
        +1 253 215 8782 US (Tacoma)
        +1 669 900 6833 US (San Jose)
        +1 312 626 6799 US (Chicago)
        +1 929 205 6099 US (New York)
        +1 301 715 8592 US (Washington DC)
        833 548 0276 US Toll-free
        833 548 0282 US Toll-free
        877 853 5257 US Toll-free
        888 475 4499 US Toll-free
Meeting ID: 955 4057 4116
Password: 420138
Find your local number: https://jwllp.zoom.us/u/adGINTwPiw

Join by SIP
95540574116@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
64.211.144.160 (Brazil)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)
Meeting ID: 955 4057 4116
Password: 420138

**EXHIBIT 13**
**Page 23 of 143**

JW_00030036

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/12/2021 6:34:36 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | Out of Office Next Week [IMAN-JWDOCS.FID3955096] |

I leave tomorrow morning for Alabama to assist my parents with their move from their home of 50 years into a retirement community. JW firm culture is such that we don't turn on external out of office messages, but I wanted to let you know given the matter we've been working on. I will be checking email periodically but may be a bit delayed in responses. I will be back in Dallas on Sunday, March 20th.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

 Jackson Walker LLP

**EXHIBIT 13**
**Page 24 of 143**

Confidential
JW_00030037

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/8/2021 2:01:17 PM |
| **To:** | 'mark@androvett.com' [mark@androvett.com] |
| **CC:** | 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Call this afternoon [IMAN-JWDOCS.FID3955096] |

Sorry – forgot to mention the proposed time 3:45.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Malin, Barbara
**Sent:** Monday, March 8, 2021 2:01 PM
**To:** 'mark@androvett.com' <mark@androvett.com>
**Cc:** 'Kit Frieden' <Kit@androvett.com>
**Subject:** Call this afternoon [IMAN-JWDOCS.FID3955096]

Can you be available for a call this afternoon with me and Pat Cowlishaw, our general counsel. Per Pat, Wade's general inclination is to obtain your advice on and assistance with talking points and a statement for both of these possible situations: a) if it is determined that no relationship exists and b) if it is determined that a relationship does exist.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com



**EXHIBIT 13**
**Page 25 of 143**

Confidential                                                                JW_00030038

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/8/2021 2:02:16 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Call this afternoon [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

3:45 is fine. Would you like to circulate a number?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Monday, March 8, 2021 2:01 PM
**To:** Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: Call this afternoon [IMAN-JWDOCS.FID3955096]

Sorry – forgot to mention the proposed time 3:45.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Malin, Barbara
**Sent:** Monday, March 8, 2021 2:01 PM
**To:** 'mark@androvett.com' <mark@androvett.com>
**Cc:** 'Kit Frieden' <Kit@androvett.com>
**Subject:** Call this afternoon [IMAN-JWDOCS.FID3955096]

Can you be available for a call this afternoon with me and Pat Cowlishaw, our general counsel. Per Pat, Wade's general inclination is to obtain your advice on and assistance with talking points and a statement for both of these possible situations: a) if it is determined that no relationship exists and b) if it is determined that a relationship does exist.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

**EXHIBIT 13**
**Page 26 of 143**

JW_00030039

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/8/2021 5:29:27 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Can we get on another call with Pat at 6? [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

<div align="center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</div>

Sure. We can do that.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Monday, March 8, 2021 5:28 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** Can we get on another call with Pat at 6? [IMAN-JWDOCS.FID3955096]
**Importance:** High

It sounds like Pat has more information.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

<div align="center">**EXHIBIT 13**
**Page 27 of 143**</div>

JW_00030041



EXHIBIT 13
Page 28 of 143

Confidential

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/10/2021 11:15:49 AM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

It doesn't appear to have arrived for me, unless it is sitting in the firmwide spam filter. I will check.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 11:15 AM
**To:** Kit Frieden <Kit@androvett.com>; Malin, Barbara <bmalin@jw.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</div>

I just sent both of you an invitation.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Kit Frieden <Kit@androvett.com>
**Sent:** Wednesday, March 10, 2021 11:09 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Sure

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 11:08 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I just got the download from the hearing. If you want to hop on a call, that's probably the best way to give you the update.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 10:29 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</div>

<div align="center">**EXHIBIT 13**
**Page 29 of 143**</div>

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM

**EXHIBIT 13**
**Page 30 of 143**
Confidential

**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**EXHIBIT 13**
**Page 31 of 143**
Confidential                                                                                                          JW_00030045

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 32 of 143**

Confidential

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<p style="text-align:center"><strong style="color:red">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</strong></p>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark


**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

<p style="text-align:center"><strong>EXHIBIT 13</strong><br><strong>Page 33 of 143</strong></p>

JW_00030047

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

EXHIBIT 13
Page 34 of 143

Confidential

JW_00030048

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 11:09:11 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Ok, thanks. I'll send you and Kit a Zoom link in email.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 11:08 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I just got the download from the hearing. If you want to hop on a call, that's probably the best way to give you the update.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 10:29 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

**EXHIBIT 13**
**Page 35 of 143**
Confidential

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade


**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

### **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM

**EXHIBIT 13**
**Page 36 of 143**

Confidential

**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**EXHIBIT 13**
**Page 37 of 143**
Confidential

JW_00030051

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

**EXHIBIT 13**
**Page 38 of 143**

JW_00030052

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 39 of 143**

Confidential

Message

| | |
|---|---|
| **From:** | Kit Frieden [Kit@androvett.com] |
| **Sent:** | 3/10/2021 11:09:26 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Mark Annick [Mark@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Sure

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 11:08 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I just got the download from the hearing. If you want to hop on a call, that's probably the best way to give you the update.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 10:29 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

**EXHIBIT 13**
**Page 40 of 143**

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

**EXHIBIT 13**
**Page 41 of 143**

Confidential

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**EXHIBIT 13**
**Page 42 of 143**

JW_00030056

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**EXHIBIT 13**
**Page 43 of 143**

JW_00030057

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 44 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/10/2021 11:07:32 AM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

I just got the download from the hearing. If you want to hop on a call, that's probably the best way to give you the update.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 10:29 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

**EXHIBIT 13**
**Page 45 of 143**

JW_00030059

Wade

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 46 of 143**

Confidential

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**EXHIBIT 13**
**Page 47 of 143**

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

---

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

---

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

---

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

**EXHIBIT 13**
**Page 48 of 143**

Confidential

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

---

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 49 of 143**

Confidential

JW_00030063

Message
| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 10:29:20 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | 3-10-21 Internal Statement - DRAFT.docx |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

**EXHIBIT 13**
**Page 50 of 143**

JW_00030064

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
</div>

Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
</div>

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

<div align="center">

**EXHIBIT 13**
**Page 51 of 143**
</div>

JW_00030065

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

**EXHIBIT 13**
**Page 52 of 143**

JW_00030066

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark


**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

**EXHIBIT 13**
**Page 53 of 143**

JW_00030067

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

EXHIBIT 13
Page 54 of 143

Confidential

Dear Colleagues,

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade

**EXHIBIT 13**
**Page 55 of 143**

Confidential

JW_00030069

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 9:56:58 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

OK, thank you.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

**EXHIBIT 13**
**Page 56 of 143**

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

</div>

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**EXHIBIT 13**
**Page 57 of 143**

</div>

**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**EXHIBIT 13**
**Page 58 of 143**
Confidential                                                  JW_00030072

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 59 of 143**

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 9:55:14 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

**EXHIBIT 13**
**Page 60 of 143**

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

</div>

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

<div align="center">

**EXHIBIT 13**
**Page 61 of 143**

</div>

JW_00030075

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<span style="color:red">**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***</span>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

<span style="color:red">**EXHIBIT 13**
**Page 62 of 143**</span>

Confidential                                                                 JW_00030076

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 63 of 143**

Confidential

Message
| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent**: | 3/10/2021 9:56:23 AM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM

**EXHIBIT 13**
**Page 64 of 143**
Confidential

**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**EXHIBIT 13**
**Page 65 of 143**

JW_00030079

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 66 of 143**

JW_00030080

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 67 of 143**

Confidential

JW_00030081

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/10/2021 9:48:19 AM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

**EXHIBIT 13**
**Page 68 of 143**

Confidential

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<p style="text-align:center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</p>

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<p style="text-align:center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</p>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

<p style="text-align:center">**EXHIBIT 13**<br>**Page 69 of 143**</p>

JW_00030083

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 70 of 143**
Confidential
JW_00030084

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 9:22:34 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**EXHIBIT 13**
**Page 71 of 143**

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

---

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

---

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

---

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

**EXHIBIT 13**
**Page 72 of 143**

JW_00030086

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

---

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 73 of 143**

Confidential

JW_00030087

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent**: | 3/9/2021 8:44:53 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<span style="color:red">**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***</span>

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM

<div align="center" style="color:red">**EXHIBIT 13**
**Page 74 of 143**</div>

**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

</div>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark


**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

<div align="center">

**EXHIBIT 13**
**Page 75 of 143**

</div>

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

EXHIBIT 13
Page 76 of 143

JW_00030090

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 8:32:27 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**EXHIBIT 13**
**Page 77 of 143**

JW_00030091

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 78 of 143**

Confidential     JW_00030092

| | |
|---|---|
| Message | |
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 8:20:18 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

<div align="center">**RECEIVED FROM EXTERNAL SENDER – USE CAUTION**</div>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark


**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

<div align="center">**EXHIBIT 13**
**Page 79 of 143**</div>

Confidential

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 80 of 143**

Confidential

JW_00030094

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 6:56:07 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com]; 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

Thanks, Mark and Kit. I will pass along.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**EXHIBIT 13**
**Page 81 of 143**

Confidential

Barbara Bell Malin | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 82 of 143**

Confidential

JW_00030096

| Message | |
| --- | --- |
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 6:19:54 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

<div align="center">**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***</div>

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

<div align="center">**EXHIBIT 13**
**Page 83 of 143**</div>

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 84 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 5:27:10 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

### **RECEIVED FROM EXTERNAL SENDER – USE CAUTION**

Thanks, Barbara. Kit and I are reviewing this and will be in touch.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 85 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 11:14:54 AM |
| **To:** | Kit Frieden [Kit@androvett.com]; Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **Subject:** | RE: Comment [IMAN-JWDOCS.FID3955096] |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

I just sent both of you an invitation.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Kit Frieden <Kit@androvett.com>
**Sent:** Wednesday, March 10, 2021 11:09 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Sure

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 11:08 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I just got the download from the hearing. If you want to hop on a call, that's probably the best way to give you the update.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 10:29 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

As indicated, Kit and I have been working on an internal memo, which I'm attaching and pasting here for your consideration.

Perhaps this is something you can use in concert with your draft.

Thanks,

Mark

Dear Colleagues,

**EXHIBIT 13**
**Page 86 of 143**

Confidential

I'm writing to provide some information about a matter involving one of our partners and the U.S. District and Bankruptcy Court for the Southern District of Texas.

In a court hearing today, one of the parties raised a question about the relationship between our partner Liz Freeman and Judge David R. Jones. As many of you know, Liz clerked for Judge Jones for many years.

Please know that the firm does not intend to comment on the specific question raised here or for that matter on any relationships our attorneys may have.

What we will say is that we have a 100-year history of serving our clients with skill, commitment and integrity. That's something I'm very proud of and I know all of you feel likewise.

Because the matter that was raised is a serious one, we are reviewing the facts and circumstances involved in order to make certain our work here has been consistent with our history and our principles.

It's possible you may hear from media about this. If so, I'd ask that you forward their requests please to Barbara Malin.

Thank you,

Wade

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:56 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

I don't. I haven't gotten an update yet and would expect that it might run for a while if they get into this issue.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:55 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Ok, thanks. Given your note, we've been working on some internal communications as well. We'll be prepared to provide input on your draft and/or see what works from ours – whatever is best for you and the firm.

FYI, in checking the court's docket, it appeared this was set for 9 a.m. Do you know whether it has happened already?

Thanks,

Mark

**EXHIBIT 13**
**Page 87 of 143**

Confidential

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 9:48 AM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

At this point, you have all the information that I do. I think we need to be prepared for the possibility that at today's hearing Judge Jones may acknowledge the relationship, but we don't have any specific reason to believe that may will happen.

Pat and I have a draft of a possible internal statement and it is currently in front of Wade for his input. Once we have Wade's thoughts on whether it is consistent with the general direction he is inclined to take, we had planned to send it to you for your input. Obviously, once the hearing ends we probably won't have much time to get our ducks in a row.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 9:23 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. Kit and I will work on internal and external statements and will be in touch.

In the meantime, is there any additional information the firm was able to gather yesterday that we should know about? My sense is we last had a download Monday night and it might benefit the work to have an update.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:45 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Certainly. At this juncture it appears that two JW lawyers who are on the pleadings in the matter will attend and will debrief Wade and Pat. I'm not sure whether it is a matter of public knowledge yet, but Judge Isgur will hear the motion. It isn't unusual for a judge against whom recusal is sought to refer the motion to another judge to be determined to avoid any question of conflict of interest.

**EXHIBIT 13**
**Page 88 of 143**

Confidential

I don't expect that Judge Isgur will rule from the bench on the motion, but it is possible. Even if the judge doesn't rule, we must anticipate that we will have to be prepared to make internal statements and most likely external statements tomorrow ahead of the news cycle.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 8:32 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Understood, thanks. Perhaps someone there can give us a report afterward.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 8:20 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

Apparently the hearing is public, but you would be identifiable if you attend. Because we believe it might be cause for speculation if it became known we had a PR team in attendance, we don't think it is advisable for anyone from Androvett to sit in on the hearing.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 6:20 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Comment [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks for this. In reviewing it, our feeling was that the language regarding an "assertion to the contrary" might strike some as defensive. What we suggest is that we remove that and arrive at:

> For more than 100 years, Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We are reviewing the facts and circumstances in this situation to make certain that our work is consistent with these principles.

**EXHIBIT 13**
**Page 89 of 143**

Confidential

Also, with regard to tomorrow's court hearing on the motion to recuse, do you know what time that is docketed for and whether Judge Jones allows the public to listen in or watch in any way? I see a GoToMeeting link on his website, but I'm not sure.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 5:03 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Comment [IMAN-JWDOCS.FID3955096]

See below for the comments from Wade Cooper and Chip Babcock.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 4:25 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Cooper, Wade <wcooper@jw.com>; Babcock, Chip <cbabcock@jw.com>
**Subject:** Comment

Barbara,

Here is what has come thus far from Wade and Chip's review:

"For more than 100 years Jackson Walker lawyers have served their clients with skill, commitment, and integrity. We take any assertion to the contrary very seriously and will review the facts and circumstances to make certain that our work here is consistent with these principles."

We understand the comments about "highest standards". Our judgment, for better or worse, is that we need to stay away from that or like phrases.

Please send on for review by Mark and Kit, and in the meanwhile consider this our working document.

Pat

**EXHIBIT 13**
**Page 90 of 143**

Confidential

Message

| | |
|---|---|
| **From:** | Kit Frieden [Kit@androvett.com] |
| **Sent:** | 3/11/2021 3:27:16 PM |
| **To:** | Mark Annick [Mark@androvett.com]; Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **Subject:** | RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Yes, that's a little worrisome that she is calling Wade.

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Thursday, March 11, 2021 3:26 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Barbara,

I do, but given all that's going on, I don't know that I would advise getting on the phone with her right now.

Instead, I would send her an email and just very casually say something such as, "Wade mentioned you gave him a buzz, but he was getting on a plane. What's up?"

If you want to discuss this, I'm happy to jump on a call.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:21 PM
**To:** Kit Frieden <Kit@androvett.com>; Mark Annick <Mark@androvett.com>
**Subject:** Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Do you have a contact number for Brenda Jeffries? Wade got a call from her as he was getting on a plane and would like me to return the call but didn't give me the number. He doesn't know the subject.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

**EXHIBIT 13**
**Page 91 of 143**

Confidential

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/11/2021 3:26:27 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

I do, but given all that's going on, I don't know that I would advise getting on the phone with her right now.

Instead, I would send her an email and just very casually say something such as, "Wade mentioned you gave him a buzz, but he was getting on a plane. What's up?"

If you want to discuss this, I'm happy to jump on a call.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:21 PM
**To:** Kit Frieden <Kit@androvett.com>; Mark Annick <Mark@androvett.com>
**Subject:** Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Do you have a contact number for Brenda Jeffries? Wade got a call from her as he was getting on a plane and would like me to return the call but didn't give me the number. He doesn't know the subject.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

**EXHIBIT 13**
**Page 92 of 143**

Confidential

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/11/2021 3:27:57 PM |
| **To:** | Kit Frieden [Kit@androvett.com]; Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **Subject:** | RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Agreed.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Kit Frieden <Kit@androvett.com>
**Sent:** Thursday, March 11, 2021 3:27 PM
**To:** Mark Annick <Mark@androvett.com>; Malin, Barbara <bmalin@jw.com>
**Subject:** RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Yes, that's a little worrisome that she is calling Wade.

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Thursday, March 11, 2021 3:26 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Barbara,

I do, but given all that's going on, I don't know that I would advise getting on the phone with her right now.

Instead, I would send her an email and just very casually say something such as, "Wade mentioned you gave him a buzz, but he was getting on a plane. What's up?"

If you want to discuss this, I'm happy to jump on a call.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:21 PM
**To:** Kit Frieden <Kit@androvett.com>; Mark Annick <Mark@androvett.com>
**Subject:** Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]

Do you have a contact number for Brenda Jeffries? Wade got a call from her as he was getting on a plane and would like me to return the call but didn't give me the number. He doesn't know the subject.

**EXHIBIT 13**
**Page 93 of 143**

JW_00030109

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

**EXHIBIT 13**
**Page 94 of 143**

Confidential

JW_00030110

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 12:13:17 PM |
| **To:** | Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw]; Mark Annick [Mark@androvett.com] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **BCC:** | {F3955096}.JWDOCS@JWimanage.jwllp.com |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

I do believe it is important to affirm Liz. There is definitely an audience who will be of the mindset that in matters like this one it is always the woman who bears the consequences and who is the subject of disapproving gossip. For that reason, my view is that it is important for the firm not to be perceived as throwing Liz to the sharks at the first opportunity.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 12:08 PM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I look to Mark and Kit here. I appreciate Barbara's point. I also think there is going to a strong desire to say something pretty strong and affirming our partner as a person and lawyer, without speaking directly to the propriety of her conduct in this instance. Maybe "consider" gets there.

Pat

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 11:57 AM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

<div align="center">

**EXHIBIT 13**
**Page 95 of 143**

</div>

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat


**Patrick R. Cowlishaw**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com



The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.


**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 96 of 143**

Confidential

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

> Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com  

**EXHIBIT 13**
**Page 97 of 143**
Confidential

Voted Best PR Firm.

EXHIBIT 13
Page 98 of 143

JW_00030115

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 11:58:56 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image004.gif; image003.gif; image002.gif; image001.jpg |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Thanks, Barbara. We'll fold in your thoughts here and will work up a revised version.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 11:57 AM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."

**EXHIBIT 13**
**Page 99 of 143**

- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat

**Patrick R. Cowlishaw**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

**EXHIBIT 13**
**Page 100 of 143**

Confidential

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

> Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630
androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 101 of 143**

Confidential

| | |
|---|---|
| Message | |
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 11:57:09 AM |
| **To:** | Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw]; Mark Annick [Mark@androvett.com] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **BCC:** | {F3955096}.JWDOCS@JWimanage.jwllp.com |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*


Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat


**Patrick R. Cowlishaw**

**EXHIBIT 13**
**Page 102 of 143**
Confidential

2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

 Jackson Walker LLP

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls

**EXHIBIT 13**
**Page 103 of 143**

Confidential

should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

Confidential

**EXHIBIT 13**
**Page 104 of 143**

JW_00030125

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 11:51:46 AM |
| **To:** | Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw]; Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image007.gif; image006.gif; image005.gif; image004.jpg |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Pat,

Thanks. Kit and I will review this and will get back to you with a revised version of the statement.

Barbara, if there's any feedback you'd like us to consider in that process, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat

**Patrick R. Cowlishaw**

**EXHIBIT 13**
**Page 105 of 143**
Confidential JW_00030126

2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls

**EXHIBIT 13**
**Page 106 of 143**

JW_00030127

should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 107 of 143**

Confidential

JW_00030128

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 10:59:50 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image003.gif; image002.gif; image001.gif |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Thanks, Barbara.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

> Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

**EXHIBIT 13**
**Page 108 of 143**

Confidential

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 109 of 143**

Confidential                                                                                              JW_00030134

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/9/2021 10:56:37 AM |
| **To:** | Mark Annick [Mark@androvett.com]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **BCC:** | {F3955096}.JWDOCS@JWimanage.jwllp.com |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

</div>

Barbara,

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

> Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

<div align="center">

**EXHIBIT 13**
**Page 110 of 143**

</div>

Confidential

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations



DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 111 of 143**

Confidential

JW_00030139

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/9/2021 12:25:38 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Cowlishaw, Pat [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=pcowlishaw] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image004.gif; image003.gif; image002.gif; image001.jpg |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara/Pat,

First off, thanks for all of your very good input on the draft statement. Having several brains thinking and working on a problem such as this always makes the product better.

Kit and I have considered what you sent over and have developed a revised version of the statement, which appears below. We're suggesting that we adopt the "100 years" language, but that we re-insert the notion of highest ethical standards. Our recommendation here is based on the notion this is a PR statement, not a legal one. If we can't affirm a commitment to the highest ethical standards, an outside observer or reader may wonder what sort of mid-level standards we do follow.

Beyond that, we also feel an obligation – as your advocates in the PR and media space – to say that reporters and others encountering this are bound to see it as a clear conflict of interest, at the very least. Given that, while it is honorable to stand up and defend Liz and her work, we should bear in mind that once we say something on her behalf, we own it, even as the story develops, the questions come in and the facts – potentially – get worse. And Barbara – we agree with your point, i.e. the notion that women too often end up being the focus of such coverage, even though it was a man – in this case a federal judge – who took part as well.

Perhaps it would be best to hash out the various possibilities, options and concerns on another call and, if so, Kit and I can be available for that. But in the meantime, what we're going to recommend is something that goes right down the middle, that neither endorses Liz and her conduct nor condemns her and it. Our feeling is that to do more than that at this time is not the best course to follow.

Thanks,

Mark

**DRAFT Statement - Revised**

> For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with the highest ethical and professional requirements. The firm is reviewing the facts and circumstances of what happened here to make certain our work in this court, as in all courts, is in keeping with those high standards.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 12:13 PM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

**EXHIBIT 13**
**Page 112 of 143**

JW_00030140

I do believe it is important to affirm Liz. There is definitely an audience who will be of the mindset that in matters like this one it is always the woman who bears the consequences and who is the subject of disapproving gossip. For that reason, my view is that it is important for the firm not to be perceived as throwing Liz to the sharks at the first opportunity.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 12:08 PM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I look to Mark and Kit here. I appreciate Barbara's point. I also think there is going to a strong desire to say something pretty strong and affirming our partner as a person and lawyer, without speaking directly to the propriety of her conduct in this instance. Maybe "consider" gets there.

Pat

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 11:57 AM
**To:** Cowlishaw, Pat <pcowlishaw@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

I wonder whether we should soften "know" with one of the other options, I've suggested. This is based on Mark's concern yesterday that going all in on support for Liz might be a strategic mistake if it turns out that there is something more nefarious here than meets the eye. Although those of us who know Liz don't in any way believe the worst possible case scenarios are a possibility, it doesn't take a whole lot of imagination to come up with some pretty bad options.

*For more than 125 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements. We know [believe, consider, regard?] our partner, Liz Freeman, to be an extraordinary lawyer and a person of integrity. We are reviewing this matter to ensure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements.*

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Sent:** Tuesday, March 9, 2021 11:27 AM
**To:** Malin, Barbara <bmalin@jw.com>; Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Mark, Kit,

**EXHIBIT 13**
**Page 113 of 143**

JW_00030141

Couple of quick thoughts following a conversation with others here this morning:

- I would avoid holding us to higher than applicable standards and requirements (i.e., no "highest standards"). Maybe something along the lines of "For more than 100 years, Jackson Walker has served its clients with skill, commitment, and in compliance with ethical and professional requirements."
- We may want to say something supportive of our partner personally – e.g., "We know Liz Freeman to be an extraordinary lawyer and a person of integrity."
- Not sure about "investigation" – maybe "reviewing this matter to make sure our work in this court, as in all courts, is in compliance with all legal and professional ethical requirements." Trying to sound the theme of "we have a long history of doing things right", we know our partner to be someone who cares and does things right, and we're making sure that we will continue to do right in the future."

For your consideration. Maybe take this into account, along with anything Barbara has to add, and provide us a revised draft that we might circulate to Wade and a couple others. Thanks.

Pat

**Patrick R. Cowlishaw**
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6049 | pcowlishaw@jw.com

The information contained in this e-mail message may be privileged, confidential and protected from disclosure, and no waiver of any attorney-client, work product or other privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies.

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Tuesday, March 9, 2021 10:57 AM
**To:** Mark Annick <Mark@androvett.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: DRAFT Statement - For Review [IMAN-JWDOCS.FID3955096]

Thanks, Mark. Pat and I will touch base and be back in touch.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Tuesday, March 9, 2021 10:44 AM
**To:** Malin, Barbara <bmalin@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** DRAFT Statement - For Review

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

**EXHIBIT 13**
**Page 114 of 143**

Pasted here is an initial draft statement for you, Pat and the firm to consider using with media.

This is designed to be something of a holding statement, envisioning that a reporter comes to us today. Our goal in such a scenario is to avoid anything to the effect of "Jackson Walker had no comment," but rather to say something indicating we know and understand the situation, and are working on gathering additional information.

As we go forward, and as you, Pat and the firm learn more, we might advocate changing this to provide different or additional detail. But for right now, our recommendation is that something in this form is the best course to follow.

**DRAFT Statement**

> Jackson Walker and its lawyers adhere to the highest standards of ethics and professionalism. The firm is conducting an internal investigation into this matter. When that investigation is complete and all the facts are known, we will take what steps may be necessary to maintain those standards.

Here are some other items to consider that I know are on your radar, but I want to put them down as placeholders:

- **Internal** – At some point, we'll want to give some thought to whether and how to communicate what's happened to the other lawyers at the firm. Doing so would help put everyone on notice that any reporter calls should be funneled to you. But more than that, I know you would want to be careful about having the group learn about this from media coverage rather than from the firm itself.

- **External** – Again, this may not be something for today, but we should also consider whether and how we should say something to firm clients. This may not be something you would communicate to all clients, but rather to those with whom the firm has a key business relationship. We have been involved in matters previously where this kind of communication – from the firm to its key outside audiences – put the firm in a better position to weather any storm.

As I said, I don't know that any of that is something for today, but I do feel obligated to mention it. If you'd like to get on a call to discuss the statement or any of the other items, please let me know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630
androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 115 of 143**

JW_00030143

Message

| | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/12/2021 2:40:28 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |

So far no further word from Wade.

Pat has asked me not to share the letter at this point. I also have not seen the letter that Van Deelen filed, but my understanding is that it does not go beyond the allegations we've discussed.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 2:33 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

I'm just checking back in to see if we've heard anything from Wade.

I also wanted to follow up on the anonymous letter, if I may, and see if there's a chance you could send that over to us please. Though it is sealed, I'd like us to know about anything that's part of the public record, as those things do have a habit of finding their way around, often into the hands of reporters.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Friday, March 12, 2021 9:11 AM
**To:** Mark Annick <Mark@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

I haven't heard anything at this point.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**EXHIBIT 13**
**Page 116 of 143**

Confidential

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 9:06 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

> Brenda,
>
> Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?
>
>
> **Barbara Malin** | Chief Business Development & Marketing Officer
> 2323 Ross Avenue, Suite 600 | Dallas, TX | 75201

**EXHIBIT 13**
**Page 117 of 143**

JW_00030149

V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

 **Jackson Walker** LLP

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 118 of 143**

Confidential

JW_00030150

| Message | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/12/2021 2:33:03 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

### **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

I'm just checking back in to see if we've heard anything from Wade.

I also wanted to follow up on the anonymous letter, if I may, and see if there's a chance you could send that over to us please. Though it is sealed, I'd like us to know about anything that's part of the public record, as those things do have a habit of finding their way around, often into the hands of reporters.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Friday, March 12, 2021 9:11 AM
**To:** Mark Annick <Mark@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

I haven't heard anything at this point.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 9:06 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

### **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**EXHIBIT 13**
**Page 119 of 143**
Confidential                                    JW_00030151

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559

**EXHIBIT 13**
**Page 120 of 143**

JW_00030152

bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 121 of 143**

Confidential                                                                          JW_00030153

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/12/2021 9:12:57 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Ok, thanks. Please let us know if we can help.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Friday, March 12, 2021 9:11 AM
**To:** Mark Annick <Mark@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

I haven't heard anything at this point.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 9:06 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

**EXHIBIT 13**
**Page 122 of 143**

JW_00030155

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

---

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

### \*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\*

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 123 of 143**
Confidential                                                          JW_00030156

Message

| From: | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| Sent: | 3/12/2021 9:10:30 AM |
| To: | 'Mark Annick' [Mark@androvett.com] |
| BCC: | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| Subject: | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |

I haven't heard anything at this point.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 9:06 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

**EXHIBIT 13**
**Page 124 of 143**

Confidential

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <<u>bmalin@jw.com</u>> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | <u>bmalin@jw.com</u>

 **Jackson Walker** LLP

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
<u>bjeffreys@alm.com</u>
@BrendaSJeffreys

**EXHIBIT 13**
**Page 125 of 143**

Confidential

JW_00030159

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/12/2021 9:05:36 AM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**EXHIBIT 13**
**Page 126 of 143**

Confidential

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 127 of 143**

Confidential

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/11/2021 3:51:27 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c]; Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Thanks. I would respond to Brenda with something such as, "Thanks. I'll ask Wade to give you a call when he's on the ground or tomorrow, if that works."

Brenda can be a tough reporter, but Kit and I don't think she would go this far to set up Wade for an ambush. Just make sure please that Wade knows we don't believe this has anything to do with the Liz story and therefore he should be careful not to volunteer the thing we fear the most. Forgive me for stating the obvious, but I've seen people do exactly that.

If, in the worst case scenario, she gets him on the phone and says, "So, tell me about Liz Freeman and Judge Jones," his response should be, "Brenda, we have a statement on that and I'll have the office send it to you." Period. If she were to ask a follow-up question, he should respond with the very same answer.

Also, do we have a copy of the anonymous letter that was filed with the court? If so, it would be very helpful for Kit and me to see it please.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

**EXHIBIT 13**
**Page 128 of 143**

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?


Barbara Malin | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 129 of 143**
Confidential

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/12/2021 2:56:44 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image001.png |

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Thanks, Barbara.

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Friday, March 12, 2021 2:40 PM
**To:** Mark Annick <Mark@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

So far no further word from Wade.

Pat has asked me not to share the letter at this point. I also have not seen the letter that Van Deelen filed, but my understanding is that it does not go beyond the allegations we've discussed.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 2:33 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

## **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

I'm just checking back in to see if we've heard anything from Wade.

I also wanted to follow up on the anonymous letter, if I may, and see if there's a chance you could send that over to us please. Though it is sealed, I'd like us to know about anything that's part of the public record, as those things do have a habit of finding their way around, often into the hands of reporters.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**EXHIBIT 13**
**Page 130 of 143**

JW_00030166

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Friday, March 12, 2021 9:11 AM
**To:** Mark Annick <Mark@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

I haven't heard anything at this point.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Friday, March 12, 2021 9:06 AM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
</div>

Barbara,

Good morning. I'm just checking back on this one to see what, if anything, happened.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:40 PM
**To:** Mark Annick <Mark@androvett.com>; Kit Frieden <Kit@androvett.com>
**Subject:** FW: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

Here's the response. Thoughts?

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Brenda Sapino Jeffreys <bjeffreys@alm.com>
**Sent:** Thursday, March 11, 2021 3:37 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Subject:** Re: Outreach to Wade Cooper [IMAN-JWDOCS.FID3955096]

<div align="center">

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***
</div>

No. I had a question for him. (nothing about the firm.) Will he be available tomorrow? I did leave him my number. Thanks.

<div align="center">

**EXHIBIT 13**
**Page 131 of 143**
</div>

Confidential

On Thu, Mar 11, 2021 at 3:36 PM Malin, Barbara <bmalin@jw.com> wrote:

Brenda,

Wade Cooper reached out to me and let me know that you had called just as his plane was getting ready to depart. Anything I can help you with?

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

--

Brenda Sapino Jeffreys
Senior Reporter, Texas Lawyer
Business of Law Desk, ALM
713 222 2559
bjeffreys@alm.com
@BrendaSJeffreys

**EXHIBIT 13**
**Page 132 of 143**
Confidential                                                                                    JW_00030168

| Message | |
|---|---|
| **From:** | Malin, Barbara [/O=JW EXCHANGE/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=BARBARA MALINC5C] |
| **Sent:** | 3/10/2021 4:29:10 PM |
| **To:** | 'Mark Annick' [Mark@androvett.com] |
| **CC:** | 'Kit Frieden' [Kit@androvett.com] |
| **BCC:** | '{F3955096}.JWDOCS@JWimanage.jwllp.com' [{F3955096}.JWDOCS@JWimanage.jwllp.com] |
| **Subject:** | RE: Statement [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | Shareholder of Bankrupt McDermott Accused of Threats, Vulgarity.pdf |

Thanks, Mark. I will pass your recommendations along. I'm attaching one of the two Bloomberg articles. He's also been a litigant in a substantial number of cases in other areas of the country – always pro se and asserting insupportable arguments.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 4:12 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** Statement

### **\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Kit and I have reviewed the draft media statement and our recommendation is that for now, we maintain it as it is.

We say that knowing that the court hearing has bought us perhaps a little bit of cover and time, but also knowing that should the story find its way to a reporter, it's likely that the very same questions we anticipated before the hearing would be the ones we get now.

We also would advise caution as it appears Mr. Van Deelen has gone to media before. Here's a link to a 2014 story by Houston's KTRK on a lawsuit he filed against his then-employer, a school district.

https://abc13.com/klein-forest-high-school-teacher-lawsuit-sues/73594/

Regarding McDermott, there are actually a couple Bloomberg stories – you may have seen these already – about his behavior vis-à-vis the court and some of the parties. Note: The two pieces here are from Bloomberg Law and we don't have a subscription, but you can get the gist of what's going on even without one.

https://news.bloomberglaw.com/bankruptcy-law/shareholder-of-bankrupt-mcdermott-accused-of-threats-vulgarity

https://news.bloomberglaw.com/bankruptcy-law/mcdermott-shareholder-avoids-sanctions-for-alleged-threats

Granted the Bloomberg reporter, Daniel Gill, may think Van Deelen is a bit of a nut, but it's not beyond the realm of possibility that Van Deelen might sent Gill a copy of the letter and see what happens.

Given all of that, we're inclined to maintain the status quo, but if you think otherwise or would like to discuss it some more, please let us know.

Thanks,

<div align="center">

**EXHIBIT 13**
**Page 133 of 143**

</div>

Confidential                                                                                         JW_00030170

Mark

**Mark Annick**
Vice President, News & Public Relations


**ANDROVETT**
LEGAL MEDIA & MARKETING

DALLAS | HOUSTON

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630

androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 134 of 143**

Confidential

JW_00030171

Prepared for: Caren Luckie

✉ **Manage Subscription**

Bankruptcy Law
**Shareholder of Bankrupt McDermott Accused of Threats, Vulgarity**
By Daniel Gill
March 18, 2020, 5:01 PM

- Company says shareholder has history of abusive behavior

- Shareholder denies all accusations

Bankruptcy Law 2021-03-08T11:53:47897-05:00
**Shareholder of Bankrupt McDermott Accused of Threats, Vulgarity**

By Daniel Gill 2020-03-18T18:01:38000-04:00
Company says shareholder has history of abusive behavior
Shareholder denies all accusations

A shareholder of bankrupt engineering giant McDermott International Inc. who allegedly called a judge "son of a bitch" during a recent hearing could be facing sanctions for his behavior.

Michael Van Deelen made vulgar remarks inside and out of the courtroom and appeared at the home of a former company director, rattling his wife, according to an emergency motion McDermott filed Tuesday in the U.S. Bankruptcy Court for the Southern District of Texas. Lawyers for the company are asking the court to order him to show cause why he shouldn't be sanctioned.

Van Deelen can be heard calling Chief Judge David R. Jones a "son of a bitch" on an audio transcript, McDermott said. He also allegedly confronted the company's bankruptcy attorney near the courthouse restroom.

Van Deelen declined Bloomberg Law's request for comment, but denied the allegations in a filing Wednesday.

He didn't refer to the judge in any vulgar or disrespectful matter, and urged the court to listen to the audio transcript from the hearing.

He acknowledged speaking with the company officer's wife outside their home, but he was at all times polite, he said. "At no time during the encounter was Van Deelen disrespectful," nor did he ever raise his voice, he said. The officer's wife didn't submit an affidavit or other evidence in support of McDermott's claims, he said.

**EXHIBIT 13**
**Page 135 of 143**

JW_00030172

Van Deelen said the court lacks jurisdiction over his out-of-court conduct and he wasn't violating any law or court order. He also was "terribly frightened" by McDermott's lawyer during a hallway exchange.

But Van Deelen has a history of abusive and sanctionable behavior, McDermott said. During a 2006 case in the Western District of Missouri, he interrupted and argued with the judge, "made flippant and disrespectful remarks," and even fabricated evidence to support his claims, according to the company's motion.

The engineering, procurement, and construction company filed Chapter 11 in January to reduce overwhelming debt tied to its $3.5 billion acquisition of Chicago Bridge & Iron Co. in 2018.

The court approved McDermott's reorganization plan March 14, giving most of the company's equity to secured creditors. The court also approved a sale of McDermott unit Lummus Technology for more than $2.7 billion.

A group of shareholders, whose interests will be wiped out under McDermott's proposed reorganization plan, had objected to the plan as unfair and possibly in bad faith. Other creditors also objected.

The case is In re McDermott International, Inc. , Bankr. S.D. Tex., No. 20-30336, Emergency Motion 3/17/20 .

To contact the reporter on this story: Daniel Gill in Washington at dgill@bloomberglaw.com

To contact the editor responsible for this story: Seth Stern at sstern@bloomberglaw.com

## 📎 Documents

**Emergency Motion**

**Michael Van Deelen's Response**

**Docket**

© 2021 The Bureau of National Affairs, Inc.    All Rights Reserved

Contact Us

View Full Desktop Site

BLAW ® 24 / 7 Help Desk (888) 560-2529

**EXHIBIT 13**
**Page 136 of 143**

JW_00030173

Terms of service , Privacy , Copyright , Accessibility

© 2021 The Bureau of National Affairs, Inc.
All Rights Reserved

**EXHIBIT 13**
**Page 137 of 143**

JW_00030174

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 4:38:35 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | RE: Statement [IMAN-JWDOCS.FID3955096] |
| **Attachments:** | image003.gif; image002.gif; image001.gif |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Thanks, Barbara. And thanks for the article.

Mark

**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Wednesday, March 10, 2021 4:29 PM
**To:** Mark Annick <Mark@androvett.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** RE: Statement [IMAN-JWDOCS.FID3955096]

Thanks, Mark. I will pass your recommendations along. I'm attaching one of the two Bloomberg articles. He's also been a litigant in a substantial number of cases in other areas of the country – always pro se and asserting insupportable arguments.

Barbara

**Barbara Bell Malin** | Chief Business Development & Marketing Officer
V: (214) 953-6106 | bmalin@jw.com

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Wednesday, March 10, 2021 4:12 PM
**To:** Malin, Barbara <bmalin@jw.com>
**Cc:** Kit Frieden <Kit@androvett.com>
**Subject:** Statement

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Kit and I have reviewed the draft media statement and our recommendation is that for now, we maintain it as it is.

We say that knowing that the court hearing has bought us perhaps a little bit of cover and time, but also knowing that should the story find its way to a reporter, it's likely that the very same questions we anticipated before the hearing would be the ones we get now.

We also would advise caution as it appears Mr. Van Deelen has gone to media before. Here's a link to a 2014 story by Houston's KTRK on a lawsuit he filed against his then-employer, a school district.

https://abc13.com/klein-forest-high-school-teacher-lawsuit-sues/73594/

**EXHIBIT 13**
**Page 138 of 143**

Confidential

Regarding McDermott, there are actually a couple Bloomberg stories – you may have seen these already – about his behavior vis-à-vis the court and some of the parties. Note: The two pieces here are from Bloomberg Law and we don't have a subscription, but you can get the gist of what's going on even without one.

https://news.bloomberglaw.com/bankruptcy-law/shareholder-of-bankrupt-mcdermott-accused-of-threats-vulgarity

https://news.bloomberglaw.com/bankruptcy-law/mcdermott-shareholder-avoids-sanctions-for-alleged-threats

Granted the Bloomberg reporter, Daniel Gill, may think Van Deelen is a bit of a nut, but it's not beyond the realm of possibility that Van Deelen might sent Gill a copy of the letter and see what happens.

Given all of that, we're inclined to maintain the status quo, but if you think otherwise or would like to discuss it some more, please let us know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630
androvett.com
Voted Best PR Firm.

**EXHIBIT 13**
**Page 139 of 143**

Confidential

JW_00030176

Message

| | |
|---|---|
| **From:** | Kit Frieden [Kit@androvett.com] |
| **Sent:** | 3/11/2021 3:32:13 PM |
| **To:** | Mark Annick [Mark@androvett.com]; Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **Subject:** | Re: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261] |
| **Attachments:** | image001.png |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara
Her email is bjeffreys@alm.com in case you don't have it.

Sent from my iPhone

On Mar 11, 2021, at 3:27 PM, Mark Annick <Mark@androvett.com> wrote:

Agreed.
**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Kit Frieden <Kit@androvett.com>
**Sent:** Thursday, March 11, 2021 3:27 PM
**To:** Mark Annick <Mark@androvett.com>; Malin, Barbara <bmalin@jw.com>
**Subject:** RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]
Yes, that's a little worrisome that she is calling Wade.

**From:** Mark Annick <Mark@androvett.com>
**Sent:** Thursday, March 11, 2021 3:26 PM
**To:** Malin, Barbara <bmalin@jw.com>; Kit Frieden <Kit@androvett.com>
**Subject:** RE: Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]
Barbara,
I do, but given all that's going on, I don't know that I would advise getting on the phone with her right now.
Instead, I would send her an email and just very casually say something such as, "Wade mentioned you gave him a buzz, but he was getting on a plane. What's up?"
If you want to discuss this, I'm happy to jump on a call.
Thanks,
Mark
**Mark Annick**
Vice President, News & Public Relations
214-559-4630

**From:** Malin, Barbara <bmalin@jw.com>
**Sent:** Thursday, March 11, 2021 3:21 PM
**To:** Kit Frieden <Kit@androvett.com>; Mark Annick <Mark@androvett.com>
**Subject:** Contact Number for Brenda Jeffries? [IMAN-JWDOCS.FID3558261]
Do you have a contact number for Brenda Jeffries? Wade got a call from her as he was getting on a plane and would like me to return the call but didn't give me the number. He doesn't know the subject.

**Barbara Malin** | Chief Business Development & Marketing Officer
2323 Ross Avenue, Suite 600 | Dallas, TX | 75201
V: (214) 953-6106 | F: (214) 661-6606 | bmalin@jw.com

**EXHIBIT 13**
**Page 140 of 143**

JW_00030180

&lt;image001.png&gt;

EXHIBIT 13
Page 141 of 143

Confidential

JW_00030181

Message

| | |
|---|---|
| **From:** | Mark Annick [Mark@androvett.com] |
| **Sent:** | 3/10/2021 4:12:22 PM |
| **To:** | Malin, Barbara [/o=JW Exchange/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Barbara Malinc5c] |
| **CC:** | Kit Frieden [Kit@androvett.com] |
| **Subject:** | Statement |
| **Attachments:** | image003.gif; image002.gif; image001.gif |

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Barbara,

Kit and I have reviewed the draft media statement and our recommendation is that for now, we maintain it as it is.

We say that knowing that the court hearing has bought us perhaps a little bit of cover and time, but also knowing that should the story find its way to a reporter, it's likely that the very same questions we anticipated before the hearing would be the ones we get now.

We also would advise caution as it appears Mr. Van Deelen has gone to media before. Here's a link to a 2014 story by Houston's KTRK on a lawsuit he filed against his then-employer, a school district.

https://abc13.com/klein-forest-high-school-teacher-lawsuit-sues/73594/

Regarding McDermott, there are actually a couple Bloomberg stories – you may have seen these already – about his behavior vis-à-vis the court and some of the parties. Note: The two pieces here are from Bloomberg Law and we don't have a subscription, but you can get the gist of what's going on even without one.

https://news.bloomberglaw.com/bankruptcy-law/shareholder-of-bankrupt-mcdermott-accused-of-threats-vulgarity

https://news.bloomberglaw.com/bankruptcy-law/mcdermott-shareholder-avoids-sanctions-for-alleged-threats

Granted the Bloomberg reporter, Daniel Gill, may think Van Deelen is a bit of a nut, but it's not beyond the realm of possibility that Van Deelen might sent Gill a copy of the letter and see what happens.

Given all of that, we're inclined to maintain the status quo, but if you think otherwise or would like to discuss it some more, please let us know.

Thanks,

Mark

**Mark Annick**
Vice President, News & Public Relations

Direct 214-420-1154 | cell 214-213-1754 | main 214-559-4630



androvett.com

**EXHIBIT 13**
**Page 142 of 143**
Confidential

Voted Best PR Firm.

**EXHIBIT 13**
**Page 143 of 143**

Confidential

JW_00030184