# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | **Civil Action No. 4:23-cv-04787** |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM** | § | |
| | § | |

## MOTION FOR ENTRY OF ORDER APPROVING COMPROMISE OF CONTROVERSY UNDER BANKRUPTCY RULE 9019

**TO THE HONORABLE ALIA MOSES, CHIEF UNITED STATES DISTRICT JUDGE:**

Patrick Bartels, as Plan Agent (the "**Plan Agent**") for the Wind-Down Debtors[1] in jointly administered Case No. 23-90055, *In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.)*, files this Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Procedure 9019 (the "**Motion**") and respectfully states as follows:

### Summary of Relief Requested

1.     The Trustee seeks entry of an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between the Plan Agent and Jackson Walker, LLP ("**JW**").  Pursuant to the terms of the Settlement Agreement, JW will pay the Trustee the total amount of $500,000.00 (the "**Settlement Amount**") and the parties will exchange mutual releases.

2.     A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion.

---

[1] The Wind-Down Debtor entities in jointly administered Bankruptcy Case No. 23-90055 (formerly Bankruptcy Case No. 23-90054), styled *In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.)* are: IEH Auto Parts Holding LLC; AP Acquisition Company Clark LLC; AP Acquisition Company Gordon LLC; AP Acquisition Company Massachusetts LLC; AP Acquisition Company Missouri LLC; AP Acquisition Company New York LLC; AP Acquisition Company North Carolina LLC; AP Acquisition Company Washington LLC; Auto Plus Auto Sales LLC; IEH AIM LLC; IEH Auto Parts LLC; IEH Auto Parts Puerto Rico, Inc.; and IEH BA LLC.

**Jurisdiction and Venue**

3.　　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

4.　　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.　　　The basis for the relief requested herein is Rule 9019[2] of the Federal Rules of Bankruptcy Procedure.

**Background**

**A. The Auto Plus Cases.**

6.　　　On January 31, 2023 (the "**Petition Date**"), thirteen Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3]　On February 1, 2023, the Bankruptcy Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases under the case of IEH Auto Parts Holding LLC, Case No. 23-90054 (the "**Bankruptcy Case**").

7.　　　On March 2, 2023, the Debtors filed their Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession [Bankr. Case No. 23-90054, Docket No. 181].

8.　　　On March 28, 2023, the Bankruptcy Court entered an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession [Bankr. Case No. 23-90054, Docket No. 273].

---

[2] Article IV.A.3. of the Plan (defined below) provides that the Plan Agent may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, the Plan Agent files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court to provide transparency to the Court and parties-in-interest with regard to their settlement with JW.

[3] As of the Petition Date, Ms. Elizabeth Freeman was no longer a partner with JW.

9.      On August 10, 2023, the Bankruptcy Court entered its Order Confirming the Third Amended Combined Disclosure Statement and Joint Plan of Liquidation of IEH Auto Parts Holding LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "**Confirmation Order**") [Bankr. Case No. 23-90054, Docket No. 749], confirming the Debtors' Amended Chapter 11 Plan (the "**Plan**") [Bankr. Case No. 23-90054, Docket No. 738]. On October 6, 2023, the Plan went effective (the "**Effective Date**"). Pursuant to the Plan, the Wind-Down Debtors shall continue in existence for purposes of resolving Claims that are not General Unsecured Claims and otherwise administering the Plan. *See* Plan at 25.

10.     On September 29, 2023, JW filed its First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period From January 31, 2023 Through June 16, 2023 [Bankr. Case No. 23-90054, Docket No. 911].

11.     On November 4, 2023, the Bankruptcy Court entered a Final Order Granting Jackson Walker LLP's First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period from January 31, 2023 Through June 16, 2023 [Bankr. Case No. 23-90054, Docket No. 981].

**B.  The Miscellaneous Proceeding.**

12.     On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "**UST**"), filed his Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications For Compensation and Reimbursement of Expenses (the "**Rule 60(b) Motion**") [Bankr. Case No. 23-90054, Docket No. 1471].

13.     On December 8, 2023, a Case Management Order was entered noting that Chief Bankruptcy Judge Eduardo Rodriguez ("**Chief Judge Rodriguez**") had commenced and would

preside over Miscellaneous Proceeding No. 23-00645, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* (the "**JW Proceeding**") in the Bankruptcy Court.

14.     On February 29, 2024, the U.S. Trustee filed his Amended Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief (the "**Amended Rule 60(b) Motion**"). The Rule 60(b) and the Amended Rule 60(b) Motions are referred to as the "**UST Motions**."

15.     On May 22, 2024, JW filed its Response in Opposition to the UST's Motions [Bankr. Case No. 23-90054, Docket No. 1603].

16.     On July 1, 2024, the UST filed his Reply to JW Response in Opposition [Bankr. Case No. 23-90054, Docket No. 1695].

17.     On August 12, 2024, JW filed its Sur-Reply to the UST's Reply [Bankr. Case No. 23-90054, Docket No. 1750].

18.     JW disputes the merits of the UST's Motion. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case. The Plan Agent disagrees with JW's alleged defenses and believes that the release and exculpation provisions of the Plan will provide no defense for JW in a trial of the UST Motions.

19.     The Plan Agent and JW had arms-length communications over several months which resulted in the execution of the Settlement Agreement.

### **Proposed Settlement and Compromise**

20.    As more fully set forth in the Settlement Agreement, JW and the Plan Agent have

agreed to the following:

- ▪    Within three (3) business days after the Effective Date in the Settlement Agreement, JW will pay the sum of $500,000 (the "Settlement Payment") to the Plan Agent; and

- ▪    The Plan Agent and JW will provide each other broad mutual releases, including any claims related to the relationship between Elizabeth Freeman and former Judge Jones.

### **Merits of Compromise**

21.    The merits of a proposed compromise should be judged under the criteria set forth

in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414

(1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390

U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984).

The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior

interests; and (ii) the settlement is reasonable in relation to the likely rewards of litigation.  *In re*

*Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624

F.2d 599, 602 (5th Cir. 1980).

22.    In determining whether a proposed compromise is fair and equitable, a Court should

consider the following factors:

(i)    the probabilities of ultimate success should the claim be litigated;

(ii)    the complexity, expense, and likely duration of litigating the claim;

(iii)    the difficulties of collecting a judgment rendered from such litigation;

(iv)    the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(v)     whether other parties in interest support the settlement;

(vi)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the nature and breadth of releases to be obtained by [the settling party]; and

(vii)   the extent to which the settlement is the product of arm's length bargaining.

*TMT Trailer*, 390 U.S. at 424.  The Plan Agent believes that the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer*.

## **Analysis of Proposed Compromise**

### **A.  Probabilities of Ultimate Success.**

23.     The Plan Agent believes that if the matter was fully litigated, there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that JW would have to disgorge some of its fees from the Bankruptcy Cases.  With that said, the Plan Agent acknowledges that former Judge Jones only served as the mediator in the Bankruptcy Cases; he was not the presiding judge.  Nor was Ms. Freeman a partner at JW as the time the Bankruptcy Cases were commenced.  These factors, among others, were considered by the Plan Agent.  Additionally, JW has alleged numerous defenses to the claim and has expressed its commitment to fully defending through trial and appeal, if necessary.  Accordingly, there are substantial questions concerning: (i) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (ii) the amount of recovery the Plan Agent will realize through litigation when balanced against the cost of continued litigation.

24.     The Settlement Amount provides a significant recovery to the Plan Agent that will be distributed in accordance with the Plan.  The settlement eliminates the risk in litigation and the cost of continued litigation with JW.

25.     Both parties acknowledge that a certain degree of uncertainty always exists with respect to litigation.  The Plan Agent believes that the proposed settlement and compromise fairly recognizes his anticipated recovery on the claims without continued litigation. The parties have attempted to achieve a resolution that minimizes the potential damage and risk to all parties.

26.     The Plan Agent believes that the proposed compromise is in the best interest of the Wind-Down Debtors. The compromise provides for a payment by JW of $500,000.00.  Given the inherent risk in litigation, the Plan Agent believes this is a reasonable compromise. For these reasons, the Plan Agent believes this factor weighs in favor of the proposed compromise.

**B.  Complexity, Expense and Likely Duration.**

27.     The litigation is quite factually and legally complex, and it will undoubtedly be hotly contested at any trial and beyond.  The litigation has already spanned almost two (2) years. As of this filing, no trial date has been set, thus requiring continued monitoring, which comes with its own accruing costs. Additionally, absent settlement, the Plan Agent will be forced to attend any future trial which would result in substantially more costs and fees being incurred by the Wind-Down Debtors.

28.     More significantly, the JW Fee Dispute is one of the few remaining open items in the Bankruptcy Cases.  Approval of this Settlement Agreement will allow for a quicker distribution to unsecured creditors and end the continued expenses that have been accruing, including but not limited to the UST's fees.

29.     The Plan Agent believes this factor strongly weighs in favor of the proposed compromise.

**C. Difficulties in Collection.**

30.　　If a judgment were rendered in an amount sought by the Plan Agent, the Plan Agent believes he would be able to recover from JW.  This factor is neutral with respect to the proposed compromise.

**D. Paramount Interests of Creditors and Support of the Settlement.**

31.　　The Plan Agent has conferred with counsel for the American Entertainment Properties Corp. ("**AEP**") in the case.  Pursuant to the terms of the Plan, AEP is the party in interest who will receive the largest portion of the funds from the settlement. Counsel for AEP has confirmed that it supports the proposed settlement.

**E. Nature and Breadth of Releases.**

32.　　The aim of the Settlement Agreement was to bring finality to the disputes between the Plan Agent and JW.  Accordingly, the Settlement Agreement contains broad mutual releases between the Plan Agent and JW. Accordingly, the Trustee believes this factor supports the proposed settlement.

**F. Competency, Experience, Knowledge, and Arms-Length Nature of Settlement.**

33.　　Counsel for the Plan Agent and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates. The Settlement Agreement was reached after twenty (20) months of litigation, over seven (7) months of discovery, and following extensive arms-length negotiations.

34.　　While uncertainty always exists with continued litigation, the Plan Agent believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Agent has attempted to achieve a resolution that maximizes value for the Wind-Down Debtors.

The Plan Agent believes that the Settlement Agreement is fair, equitable, and in the best interest of the estates.

Accordingly, the Plan Agent requests that this Court approve the proposed settlement and compromise set forth above and grant such other relief as is just.

**Dated: September 24, 2025.**

Respectfully submitted,

**McCLOSKEY ROBERSON WOOLLEY, PLLC**

By: */s/ Thomas A. Woolley, III*
Thomas A. Woolley, III
SBOT: 24042193
Timothy M. McCloskey
SBOT: 13417650
Carissa N. Brewster
SBOT: 24122933
190 TC Jester Blvd., Suite 400
Houston, TX 77007
713-337-3900
713-337-3915 (fax)
rwoolley@mrwpllc.com
tmccloskey@mrwpllc.com
cbrewster@mrwpllc.com
***Counsel for Patrick Bartels, Plan Agent***

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served via ECF on parties receiving ECF service in the above-referenced case on September 24, 2025.

*/s/ Thomas A. Woolley, III*
Thomas A. Woolley, III