**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

In re:

PROFESSIONAL FEE MATTERS
CONCERNING THE JACKSON WALKER
LAW FIRM

Civil Action No. 4:23-cv-04787

**LITIGATION TRUSTEE'S REPLY BRIEF IN SUPPORT OF THE MOTION FOR
ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH
JACKSON WALKER LLP**

[Relates to ECF Nos. 100 and 105]

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

A.    The Proposed Settlement Was the Product of Arm's-Length Negotiations that Did Not Involve Ms. Freeman, any "Collusion," or any Conflicts of Interest. ...... 1

    1.    The Proposed Settlement Was the Product of an Arm's-Length Negotiation and Mediation Before Two Nationally Recognized Retired Federal Judges ............................................................................................. 1

    2.    The Litigation Trustee Did Not Seek Ms. Freeman's Input on the Proposed Settlement with Jackson Walker. ................................................ 2

    3.    The Litigation Trustee Has No Conflicts of Interest and Is Not Part of Some Conspiracy to Protect Ms. Freeman ................................................. 2

    4.    That Ms. Freeman's Ex-Husband's Law Firm Served as Local Counsel for the Bondholder Committee Does Not Constitute a Conflict of Interest ............................................................................................................ 3

    5.    Ms. Freeman is Not "On Both Sides of the Agreement" and Will Not Pay Herself Out of Settlement Proceeds That Will be Paid to the Litigation Trust. ......................................................................................... 4

    6.    The Inclusion of a Mutual Release in the Settlement is Not Remotely Probative of any Conspiracy or Wrongdoing on the Part of the Litigation Trustee. .......................................................................................... 5

B.    The Objectors Misapprehend the Gives and Gets of the Proposed Settlement. ..... 5

    1.    The Objectors Are Mistaken in Asserting that the Proposed Settlement is a "Net Gain" for Jackson Walker and/or Ms. Freeman .......................... 5

    2.    The Objectors Misconstrue the Scope of Releases Contained in the Proposed Settlement Because the Trustee Does Not Possess Post-Confirmation Claims or Purport to Release Claims the Litigation Trust Does Not Possess. ..................................................................................... 6

    3.    That Jackson Walker Alone is Funding the Proposed Settlement Does Not Mean that the Consideration is Inadequate. .......................................... 7

    4.    The Settlement is Not Unreasonable Merely Because Bondholders Suffered Significant Losses, as those Losses Are Not Recoverable by the Litigation Trust. .................................................................................. 8

C.    The Objectors' Grossly Overestimate the Value of the Released Claims. ............. 8

    1.    The Amount of the Proposed Settlement Represents a Significant Percentage Recovery of the Litigation Trust's Most Viable Claim ........... 8

2.    The Objectors' Other Theories Are Dubious and Speculative, and the Litigation Trust Does Not Have Other Valuable Claims. ........................... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Int'l Refinery, Inc.*,
    676 F.3d 455 (5th Cir. 2012) ........................................................................................9

Michael I. Goldberg, in his capacity as the Trustee of the GWG Litigation Trust (the "Litigation Trustee"), files this Reply Brief in support of the motion requesting entry of an order approving the settlement agreement (the "Proposed Settlement") between the Litigation Trustee and Jackson Walker LLP ("Jackson Walker") and in support thereof, states as follows.

## INTRODUCTION

The public allegations swirling around Ms. Freeman's undisclosed relationship with Judge Jones are troubling. But that is no justification for making federal court filings full of factually baseless, demonstrably false, and inflammatory statements in a misguided attempt to exploit the unfortunate situation (and perhaps chase headlines). Yet that is exactly what the Seller Trust bondholders (the "Objectors")—stirred up by Murray Holland, a former GWG officer whom the Litigation Trustee sued for breaching his fiduciary duties—have done in objecting to the Litigation Trustee's Rule 9019 motion for Court approval of the Proposed Settlement. Nearly all the Objectors' contentions are based on a combination of: (a) a fundamental misunderstanding of the Plan and the Litigation Trust's purview; and (b) false factual premises that are unsupported and based on speculative conspiracy theories. None have merit.

## ARGUMENT

**A.      The Proposed Settlement Was the Product of Arm's-Length Negotiations that Did Not Involve Ms. Freeman, any "Collusion," or any Conflicts of Interest.**

### *1.      The Proposed Settlement Was the Product of an Arm's-Length Negotiation and Mediation Before Two Nationally Recognized Retired Federal Judges.*

The Proposed Settlement was reached through extensive negotiations and with the involvement of two, well-respected retired Federal District Court judges acting as mediators. (*See* Motion at 11-12, 31). The Objectors wholly overlook those facts in suggesting that the settlement was a "collusive," sweet-heart deal as part of some broader conspiracy.

1

**2.    *The Litigation Trustee Did Not Seek Ms. Freeman's Input on the Proposed Settlement with Jackson Walker.***

As the Motion states, "the Litigation Trustee independently negotiated and determined that the Proposed Settlement was fair, reasonable, and in the best interests of the Litigation Trust and its ultimate beneficiaries ***without any input from Ms. Freeman in her capacity as the Wind Down Trustee***." (Motion at 4-5 (emphasis added)). While the Plan and Litigation Trust Agreement contemplate that the Litigation Trustee will consult with the Wind Down Trustee and generally confer and cooperate in carrying out their respective duties under the Plan, the Plan and Litigation Trust Agreement are clear: the Litigation Trustee has the "sole authority," "sole discretion," and the "sole and absolute right" to decide whether to pursue, compromise, settle or abandon the Litigation Trust's claims.[1] In fact, the Litigation Trust Agreement expressly says that the Wind Down Trustee does not have "a consent or other right with respect to decisions made by" the Litigation Trustee.[2] And here, given the Wind Down Trustee's conflict of interest, the Litigation Trustee ***did not seek*** her input on the Proposed Settlement. As such, the Objectors' assertions of "collusion" are baseless. (Objection at 1, 4, 11-13).

**3.    *The Litigation Trustee Has No Conflicts of Interest and Is Not Part of Some Conspiracy to Protect Ms. Freeman.***

As the Motion explains, prior to the Litigation Trustee's appointment and formal assumption of his role as Litigation Trustee on August 1, 2023, "the Litigation Trustee did not know and had never met Ms. Freeman or Judge Jones and had never participated in any case pending before Judge Jones." (Motion at 4). Nor did the Litigation Trustee play any role whatsoever in GWG's bankruptcy case, let alone the mediation before Judge Jones prior to Plan confirmation. (*Id.*) Nevertheless, the Objectors ignore those facts and attack the Litigation Trustee

---

[1] Case No. 22-90032, ECF No. 1952 ("Confirmation Order"), Ex. A at Art. IV.E; Ex. C at §§ 1.5(a), 3.2(a).
[2] *Id.*, Ex. C at § 2.1.

as beholden to Ms. Freeman and conflicted. In the Objectors' view, the Litigation Trustee must be engaged in some sinister conspiracy to defraud them and protect Ms. Freeman and Judge Jones, all because he has not pursued actions they deem warranted. They are mistaken.

First, while the Objectors suggest that the Litigation Trustee must be beholden to Ms. Freeman because he has not sought to remove her as Wind Down Trustee, they ignore that the Litigation Trustee has *no* standing or ability whatsoever to remove Ms. Freeman as Wind Down Trustee. Specifically, as explained in the Motion and made clear in the Wind Down Trust Agreement, the Wind Down Trustee may *only* be removed "for Cause … by: (a) the Bankruptcy Court on its own initiative, or (b) the Bankruptcy Court upon a motion from 25% or more of the Wind Down Trust Beneficiaries," including the Objectors.[3] (Motion at 9).

Second, the Objectors suggest that the Litigation Trustee is engaged in some conspiracy to protect Ms. Freeman because he has not pursued the claims asserted by the Objectors in their action against her and others. But the Litigation Trustee has not pursued claims set forth in the Objectors' complaint because (as discussed below and more fully in the Motion) those claims: (a) are speculative, non-meritorious, and lack evidentiary support, and/or (b) do not belong to the Litigation Trust (to the extent they arose post-confirmation). (*See generally* Motion at 17-29). The Litigation Trustee's reasoned decision not to bring frivolous claims or claims that the Litigation Trust does not own is not a valid reason to impugn his motives.

### 4. *That Ms. Freeman's Ex-Husband's Law Firm Served as Local Counsel for the Bondholder Committee Does Not Constitute a Conflict of Interest.*

Further grasping at straws to establish a conspiracy where there is none, the Objectors suggest that the Litigation Trustee is beholden to Ms. Freeman because her *ex-husband's* law firm served as local counsel to the Bondholder Committee, and the Bondholder Committee nominated

---

[3] *See* Case No. 22-90032, ECF No. 2734 (filed August 4, 2025).

3

the Litigation Trustee to his position. (Objection at 3, 11). But there is no apparent reason why Ms. Freeman's *ex-husband*—a non-bankruptcy lawyer who does not appear as a timekeeper in Porter Hedges, LLP's final fee application[4]—would be supportive of any conspiracy or concealed relationship between Ms. Freeman and Judge Jones, let alone any evidentiary support for this assertion. Nor is there any basis to believe that local counsel called the shots for a Bondholder Committee with independent decision-makers represented by Akin Gump as lead counsel in nominating the Litigation Trustee. Finally, the Litigation Trustee does not answer to the Bondholder Committee, which was dissolved on the Plan's Effective Date, much less its former local counsel. (Confirmation Order ¶34).

### 5. *Ms. Freeman is Not "On Both Sides of the Agreement" and Will Not Pay Herself Out of Settlement Proceeds That Will be Paid to the Litigation Trust.*

While the Objectors complain that Ms. Freeman is "on both sides of the agreement," (Objection at 3), this is untrue. The Litigation Trust and the Wind Down Trust are distinct, and only the Litigation Trust—and not the Wind Down Trust—would release any claims in the Proposed Settlement. Moreover, the Litigation Trustee clearly has "the sole authority to make decisions and take action" with respect to the Litigation Trust's claims pursuant to Article IV.E.2 of the Plan. Ms. Freeman, whether in her capacity as Wind Down Trustee or otherwise, is simply not on the putative-plaintiff Litigation Trustee's side of the Proposed Settlement.

That the proceeds of the Proposed Settlement will flow from the Litigation Trust through the Wind Down Trust to estate creditors does not change this analysis. To be clear, settlement proceeds will flow to creditors, not to pay any fees to Ms. Freeman as Wind Down Trustee. Specifically, Article IV.E.1 of the Plan provides that "all proceeds of the Litigation Trust distributed to the Wind Down Trust on account of" the reversionary interest held by the Wind

---

[4] *See* https://www.porterhedges.com/professionals-NicholasASimms; Case No. 22-90032, ECF No. 2146-1 at 2.

Down Trust as the sole beneficiary of the Litigation Trust "shall be for the sole purpose of distributions to the holders" of Wind Down Trust interests, *i.e.*, creditors.  Moreover, Article IV.A.3 of the Plan contemplates that the Wind Down Trustee will *not* be paid fees and expenses out of proceeds of the Litigation Trust's litigation recoveries, but instead provides that "[t]he Wind Down Trustee shall use the Wind Down Amount (and any subsequent monetization proceeds from the Wind Down Trust) to fund all expenses related to its duties under this Plan."  Finally, like the Plan, sections 1.9 and 4.2 of the Wind Down Trust Agreement provide that: (a) "all proceeds of the Litigation Trust received by the Wind Down Trust from the Litigation Trust … shall be used solely to make … distributions" to the Wind Down Trust's beneficiaries; and (b) the Wind Down Trustee "may not deduct" expenses from proceeds received from the Litigation Trust.  While the foregoing restrictions are subject to exceptions to the extent that the Bankruptcy Court orders otherwise or the Litigation Trustee gives his written consent, the Litigation Trustee has not—and will not—consent to Ms. Freeman paying her fees out of the proceeds of the Proposed Settlement.

> **6.      The Inclusion of a Mutual Release in the Settlement is Not Remotely Probative of any Conspiracy or Wrongdoing on the Part of the Litigation Trustee.**

The Objectors suggest that the mutual release contained in the Proposed Settlement shows that the Litigation Trustee is "hopelessly conflicted" and engaged in collusion.  (Objection at 13). But mutual releases are a standard term in almost any settlement agreement between sophisticated litigants, as parties typically want to ensure global and final peace.  There is nothing remotely unusual or suggestive about a mutual release.

**B.      The Objectors Misapprehend the Gives and Gets of the Proposed Settlement.**

> **1.      The Objectors Are Mistaken in Asserting that the Proposed Settlement is a "Net Gain" for Jackson Walker and/or Ms. Freeman.**

As explained in the Motion, the Litigation Trustee's strongest claim is for disgorgement of fees earned during the GWG bankruptcy case after a motion was filed to appoint Judge Jones as

mediator on November 30, 2022.  (*See* Motion at 2-3, 16-17).  While Jackson Walker received interim payments during the bankruptcy case, the $1.3 million fees and expenses it billed throughout the case (including $592,729.31 billed after filing the motion to appoint Judge Jones as mediator) are subject to Jackson Walker's disputed Final Fee Application, which has not been resolved.  (*See* Motion at 3, 9-11).

Given this reality, the Proposed Settlement is conditioned on Court approval of the Final Fee Application.  If the Court denies the Final Fee Application, then the Proposed Settlement automatically terminates and the parties revert to their prior positions, *i.e.*, the Litigation Trust would not release any claims and would seek to claw back the interim payments Jackson Walker has received (to the extent the Court does not *sua sponte* order the return of those payments in denying the Final Fee Application).  Conversely, if the Court approves the Final Fee Application, then a substantial portion of the fees Jackson Walker receives will be paid to the Litigation Trust.

Critically, whether the Court approves or denies Jackson Walker's Final Fee Application is an entirely extrinsic event.  The Objectors fail to grasp this important point in suggesting that the Proposed Settlement itself somehow results in a net payment to Jackson Walker.  The Proposed Settlement itself does no such thing; Jackson Walker will only receive any fees *if* the Court independently approves Jackson Walker's Final Fee Application.

### 2.    *The Objectors Misconstrue the Scope of Releases Contained in the Proposed Settlement Because the Trustee Does Not Possess Post-Confirmation Claims or Purport to Release Claims the Litigation Trust Does Not Possess.*

The Litigation Trustee cannot release claims that do not belong to the Litigation Trust, and the Litigation Trustee has not purported to do so in the Proposed Settlement.  Under the Plan, the Litigation Trust only holds the Retained Causes of Action that belonged to the Debtors or their Estates.  The definition of Retained Causes of Action does not encompass any claims against Ms. Freeman for any post-confirmation acts or omissions as Wind Down Trustee.  Nor does it include

claims that the Wind Down Trust itself (or its beneficiaries individually) might hold. Accordingly, because the Litigation Trust does not hold such claims and is not purporting to release any claims against Ms. Freeman arising out of any acts or omissions in her role as Wind Down Trustee following confirmation of the Plan, the Objectors misconstrue the terms of the Proposed Settlement. And, in turn, the Objectors' assertions surrounding post-confirmation events (while also factually untrue) are irrelevant; such matters are outside the Litigation Trust's purview and the scope of the Proposed Settlement.

### 3. *That Jackson Walker Alone is Funding the Proposed Settlement Does Not Mean that the Consideration is Inadequate.*

In the Proposed Settlement, Jackson Walker procured a release of claims against its present and former partners, as is the norm in settlements involving claims against professional firms. Likewise, as is commonplace in such litigation, Jackson Walker itself—as opposed to the individual partners who exposed the firm to liability—is funding the settlement. While it is true that the release covers Ms. Freeman and that the Proposed Settlement will be funded by Jackson Walker, the same is true for all other present or former Jackson Walker partners too.

There is nothing unusual or inappropriate about this. Professional firms routinely fund settlements without individual partners also chipping in. This stems from the practical reality that law firms are typically more able to fund a settlement than are individual attorneys, and because what ultimately matters is the size of the total settlement consideration, not who pays it. The Litigation Trustee's mission is to maximize recoveries for the benefit of GWG's creditors. While the Objectors might have preferred that the Litigation Trustee accept less money in exchange for attempting to extract a pound of flesh from Ms. Freeman, their vitriol and animus is no reason to reject a larger settlement than their vengeful path would have obtained.

7

**4.    *The Settlement is Not Unreasonable Merely Because Bondholders Suffered Significant Losses, as those Losses Are Not Recoverable by the Litigation Trust.***

The Objectors attack the size of the Proposed Settlement relative to bondholder losses. But the Litigation Trust owns the Debtors' claims and can only recover for injuries suffered by the Debtors and the Estates, not for bondholder injuries. Moreover, reasonableness of a settlement is determined by reference to expected recoveries on the claims at issue if the litigation were to proceed, which is small for the reasons discussed in the Motion and below.

**C.    The Objectors' Grossly Overestimate the Value of the Released Claims.**

Again, the Litigation Trust only holds claims arising out of events that transpired before or during the GWG bankruptcy case prior to Plan confirmation and is releasing only those claims in the Proposed Settlement. As set forth more fully above, the Litigation Trustee, after careful consideration and exercise of his business judgment, determined that the value of those claims is modest, and consequently that the amount of the Proposed Settlement is fair, reasonable, and in the best interests of the Litigation Trust and its ultimate beneficiaries. (*See* Motion at 2-4, 16-31). Notwithstanding all their handwringing, the Objectors have not shown otherwise.

**1.    *The Amount of the Proposed Settlement Represents a Significant Percentage Recovery of the Litigation Trust's Most Viable Claim.***

Setting aside expenses, the total fees potentially subject to disgorgement (if Jackson Walker's Final Fee Application is approved) are approximately $1.03 million (along with $47,164 in paraprofessional fees). But only $592,729.31 of such fees were billed after Jackson Walker filed a motion seeking appointment of Judge Jones as mediator. The $405,000 settlement recovery is a significant percentage recovery of the fees billed after the motion to appoint Judge Jones as mediator (68%), and of total fees. The Objectors' attacks on the amount miss the mark.

<u>First</u>, the Objectors ignore the possibility that the Court, even if it determined that Jackson Walker violated applicable disclosure rules or breached its fiduciary duties, might order only

partial disgorgement rather than total disgorgement of the fee. (*See* Motion at 16-17). The Fifth Circuit has made clear that courts have broad discretion to determine the extent of disgorgement that is warranted when counsel violates applicable disclosure statutes and rules. *See In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466 (5th Cir. 2012) (affirming partial disgorgement).

Second, and relatedly, the Objectors miss the forest for the trees in suggesting that the relevant disclosure violations first occurred when Jackson Walker filed a supplemental declaration of disinterestedness on October 6, 2022. (Objection at 7). As of that time, Judge Jones had no involvement in the GWG bankruptcy case, as mediator or otherwise. But even if it were a technical violation to fail to disclose Ms. Freeman's relationship with Judge Jones at that time, the amount of disgorgement remains in the Court's discretion. And it is far from certain that the Court would order full disgorgement of the $388,897.50 in fees billed from October 1, 2022, through November 30, 2022 (in addition to later fees) at trial under the facts. Regardless, the settlement consideration of $405,000 is fair and reasonable relative to the total fees billed from October 1, 2022 onward, and relative to the total amount of fees billed in the bankruptcy case.

## 2. The Objectors' Other Theories Are Dubious and Speculative, and the Litigation Trust Does Not Have Other Valuable Claims.

In the Motion, the Litigation Trustee addressed the fundamental flaws with the Objectors' claims that there was some conspiracy on the part of Ms. Freeman and Judge Jones to intentionally destroy the value of GWG's assets, and thus the Litigation Trustee will not repeat each of those points here. (*See* Motion at 17-29). That said, the Objection itself provides further illustration of why the Litigation Trustee believes that the Objectors' speculative claims lack factual support.

In particular, in criticizing the scope of the Litigation Trustee's investigation, the Objectors double-down on counterfactual narratives surrounding the value of Beneficient and GWG's former malfeasant CEO (Holland). (Objection at 9, 22-24). For instance, the Objectors repeat the

falsehood that: "The BEN stock became worthless because Freeman filed an emergency motion … to sell all the stock on the day of the IPO which caused the price to plummet as they quickly then flooded the market with GWG's substantial holdings." (Objection at 9). But Freeman did not become Wind Down Trustee until August 1, 2023 (the Plan's Effective Date)—two months after BEN went public in June 2023—or sell a single share until October 20, 2023, at which time BEN's stock price had already collapsed. (*See* Motion at 27-28 & n.74).

Similarly, the Objectors continue to parrot Holland's false narratives surrounding the events of a March 2021 board meeting and related SEC filings, even though an independent Investigations Committee (represented by Katten Muchin—not Jackson Walker) determined that the SEC filings were misleading based on the depositions of the resigning directors who attended that meeting. (Motion at 20-22). While the SEC ultimately opted not to take regulatory enforcement action against a defunct company in liquidation, the Objectors overlook that there is an ongoing investigation by the U.S. Department of Justice. And regardless, the exercise of regulatory or prosecutorial discretion either way does not change the reality of what transpired: that Holland engaged in significant fiduciary misconduct actionable at common law throughout his tenure as GWG's CEO, and that Holland is now trying to scapegoat others.

Finally, it is notable that, in responding to a Motion explaining that the Litigation Trustee did not find evidence to corroborate their central theories, the Objectors did not come forward with any concrete facts—let alone evidence—to support them. Instead, they attacked the Litigation Trustee's investigation, revealing that they have nothing other than conjecture and their say-so.

## **CONCLUSION**

WHEREFORE, the Litigation Trustee respectfully requests that the Court, (i) grant the Motion; (ii) approve the Proposed Settlement by granting the Proposed Order (ECF No. 100-4); and (iii) grant all other relief that is appropriate under the circumstances.

**Dated**: October 31, 2025

**REID COLLINS & TSAI LLP**

By: _/s/ Nathaniel Palmer_
    William T. Reid, IV
    Tex. Bar No. 00788817
    S.D. Tex. Bar No. 17074
    Nathaniel J. Palmer (admitted *pro hac vice*)
    Tex. Bar No. 24065864
    Taylor A. Lewis (admitted *pro hac vice*)
    Tex. Bar No. 24138317
    1301 S. Capital of Texas Hwy
    Building C, Suite 300
    Austin, Texas 78746
    (512) 647-6100
    wreid@reidcollins.com
    npalmer@reidcollins.com
    tlewis@reidcollins.com

    *Counsel for the GWG Litigation Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I, Nathaniel J. Palmer, certify that on October 31, 2025, I caused a true and correct copy of this Reply Brief in Support of the Motion for Entry of an Order Approving Settlement Agreement to be served by the Court's CM/ECF system on all parties entitled to notice.


*/s/ Nathaniel Palmer*
Nathaniel J. Palmer