IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Civil Action No. 4:23-cv-04787 |

**MOTION FOR ORDER APPROVING COMPROMISE AND
SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

TO THE HONORABLE ALIA MOSES
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Steven Balasiano, solely in his capacity as Plan Administrator (the "Plan Administrator")[1] for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc. (collectively, the "Debtors" or the "Wind-Down Debtors"),[2] and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Motion"), and in support thereof, respectfully shows the Court as follows:

**I.   RELIEF REQUESTED**

1.   By this Motion and in accordance with Bankruptcy Rule 9019(a),[3] the Plan Administrator requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement Agreement") between Jackson Walker LLP ("JW"), the Wind-Down Debtors and the Plan Administrator that would resolve any and all claims and causes of action of

---

[1]   As defined in the *Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Dkt. No. 694] (the "Plan") filed in the Bankruptcy Case (as defined herein).

[2]   The Debtors/Wind-Down Debtors include Stage Stores, Inc. and Specialty Retailers, Inc.

[3]   Article IV.D and M of the Plan provide that the Plan Administrator is "the sole representative of, and shall act for, the Wind-Down Debtors" and the Wind-Down Debtors may, among other things, prosecute, compromise, or settle any Causes of Action (as defined in the Plan) without the consent or approval of any third party, including the Bankruptcy Court.  Notwithstanding the foregoing, the Plan Administrator files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court.

1

any kind held by the Wind-Down Debtors, their estates, and/or the Plan Administrator, in his capacity as such, against JW arising out of or related to *In re Stage Stores, Inc., et al.*, Chapter 11 Case No. 20-32564, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"), *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "Misc. Proceeding"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the full mutual releases set forth in the Settlement Agreement, JW shall pay the Wind-Down Debtors $75,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Administrator confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## III. BACKGROUND

**A.   The Debtors' Chapter 11 Cases**

4. On May 10, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Bankruptcy Case was pending before former Judge Jones.

5. On June 4, 2020, the Debtors filed their *Application to Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession* [Dkt. No. 385]. JW's employment application was approved by former Judge Jones on July 10, 2020 [Dkt. No. 583].

6. On May 21, 2020, the Debtors filed their *Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 297].

7. On July 1, 2020, the Debtors filed the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* (the "Disclosure Statement"). *See* Dkt. No. 535. The Disclosure Statement estimated that general unsecured creditors would recover between 0% and 6% on their allowed claims. Disclosure Statement at 7. On July 1, 2020, the Court entered an Order [Dkt. No. 540] conditionally approving the Disclosure Statement.

8. On August 13, 2020, Debtors filed their Plan, which was confirmed by the Court on August 14, 2020 [Dkt. No. 705].

9. On October 30, 2020, the effective date of the Plan occurred (the "Effective Date") [Dkt. No. 898].

10. On the Effective Date, Steven Balasiano, in his capacity as Plan Administrator, became the sole representative of the Debtors' estates for the purpose of, *inter alia*, reviewing, settling, and compromising disputes regarding claims filed against the Debtors' estates and

facilitating distributions to creditors pursuant to Articles IV.D and VII.B of the Plan.

11.     On November 13, 2020, JW filed its *First and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from May 10, 2020 through August 14, 2020* (the "Fee Application") [Dkt. No. 931]. JW's Fee Application was approved, without objection, by former Judge Jones on December 16, 2020, awarding compensation and reimbursement of expenses in the amount of $184,746.15, including $29,295.00 billed by Elizabeth Freeman, JW's now-former partner. *See* Dkt. No. 983.

### B.    The Miscellaneous Proceeding

12.     On or about November 2, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 1216]. An amended Rule 60(b) motion was filed on February 29, 2024 (the "Rule 60(b) Motion"). *See* Dkt. No. 1241. The basis of the Rule 60(b) Motion was the alleged undisclosed relationship between former Judge Jones and Ms. Freeman.

13.     On December 9, 2023, an Order was entered commencing the Misc. Proceeding in the Bankruptcy Court.

14.     On April 12, 2024, the Plan Administrator, on behalf of himself and the Wind-Down Debtors, filed a *Notice of Standing and Indispensable Party Status* [Dkt. No. 1253] in the Bankruptcy Case.

15.     On December 16, 2024, the Wind-Down Debtors filed their *Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions,*

4

*and (3) Related Relief* (the "Joinder") [Dkt. No. 1280].

16. On May 22, 2024, JW filed its response in opposition to the Rule 60(b) Motion [Dkt. No. 1258].

17. On July 1, 2024, the U.S. Trustee filed his reply [Dkt. No. 1261].

18. On August 12, 2024, JW filed its sur-reply [Dkt. No. 1272].

19. On May 20, 2025 and May 21, 2025, the U.S. Trustee filed objections to motions to approve settlement agreements between JW and certain parties holding claims against JW related to the Jones-Freeman relationship. *See* Dkt Nos. 68, 69, 71, 93.

20. On August 15, 2025, the U.S. Trustee filed an objection to additional settlement motions between JW and other parties holding claims against JW related to the Jones-Freeman relationship and supplemented the previous objections filed by the U.S. Trustee. *See* Dkt. No. 93.[4]

21. JW disputes the merits of the UST's Motion and the Joinder. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case. The Wind-Down Debtors and the Plan Administrator vigorously disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW in the Chapter 11 Case.

22. The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying

---

[4] The Plan Administrator notes these objections due to the similarity between this Motion and the other settlement motions. The UST does not consent to the relief requested in this Motion.

5

on the UST's office to lead the litigation. However, counsel for the Plan Administrator reviewed all substantive pleadings in the Bankruptcy Case, the Misc. Proceeding, and all other proceedings relevant to the undisclosed relationship between former Judge Jones and Ms. Freeman, reviewed available documents, attended numerous hearings, meetings, and settlement conferences, and participated in calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases.

23.     On February 25, 2025, the Plan Administrator's counsel met with Judge Royal Furgeson (Ret.), one of the two mediators retained in the matter, to discuss the estates' potential claims against JW related to the Misc. Proceeding. Following that meeting, the Plan Administrator worked to resolve the dispute directly with JW and its counsel and did not participate in any formal mediation. As a result of those discussions, JW and the Plan Administrator reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

## IV.     SUMMARY OF SETTLEMENT TERMS[5]

24.     The Settlement Agreement is straightforward.  Within five (5) business days of entry of an Order granting this Motion and such Approval Order becoming a Final Order (as defined therein), JW will pay to the Wind-Down Debtors $75,000.00, which settlement payment will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case. In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases.

---

[5] The summary of the settlement terms is being provided herein for convenience only. To the extent of any inconsistency between this summary and the Settlement Agreement attached hereto, the Settlement Agreement prevails. Capitalized terms not otherwise defined in this section shall have the meanings ascribed to such terms in the Settlement Agreement.

## V.    ARGUMENTS AND AUTHORITIES

25.    Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007) (quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

26.    "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…." *Id.* at 462. Those factors are:

   i.    The balance between the litigation's possibility of success and the settlement's future benefits;

   ii.   The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

   iii.  The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

   iv.   Whether other parties in interest support the settlement;

   v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

   vi.   The nature and breadth of releases to be obtained by [the settling party]; and

   vii.  The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

27. The Plan Administrator contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Administrator and the Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense and uncertainty of continued and protracted litigation, and will enable the Plan Administrator to move further towards closure of the Bankruptcy Case as this dispute is one of the last unresolved issues remaining in the Bankruptcy Case.

### A. The balance between the litigation's possibility of success and the settlement's future benefits

28. The Plan Administrator contends that the possibility of success in the litigation against JW is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Administrator will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides an additional source of recovery for general unsecured creditors in accordance with the confirmed Plan, which are estimated to be between 0% and 6%, and eliminates the litigation risk of continuing to litigate the claims against JW.

29. The Plan Administrator submits there is a significant likelihood that the orders approving JW's fee applications will be vacated, thus opening up the possibility that fees paid to JW will be clawed back for the benefit of the Wind-Down Debtors, and therefore general unsecured creditors, under the Plan. However, the Plan Administrator acknowledges that case law does not necessarily mandate full disgorgement, thus there is some litigation risk. Even if the Plan Administrator's claims against JW are successful at trial, appeals could also follow further extending the litigation timeline and increasing the costs, which is significant in the Bankruptcy

Case given the relatively small amount of fees and expenses paid to JW and the low recoveries estimated for general unsecured creditors in the Bankruptcy Case.

30. The Settlement Agreement and Settlement Amount provides the Liquidation Trust with approximately 40% of the fees awarded to JW, which is also over 2.5 times the $29,295.00 billed by Ms. Freeman in the Bankruptcy Case, upon an order approving the Settlement Amount becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan. Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case to maximize any recovery for general unsecured creditors.

### B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment

31. There is a high likelihood that litigation will be complex and protracted, which has already proven to be the case with this litigation commencing approximately two (2) years ago in November 2023. Indeed, while trial was set to commence in May 2025, that trial date has now been abated in light of the withdrawal of the reference and JW's mediation with the UST and thus continued monitoring costs will only continue to accrue to the detriment of the Wind-Down Debtors' estates.

32. Additionally, as mentioned above, even if the orders approving JW's retention and/or final fee applications are vacated, such result may not necessarily result in disgorgement of 100% of fees given the case law and other considerations. Indeed, as this Court noted at the hearing held on May 22, 2025, it is not clear that a court would find that JW is solely responsible for the damages to the Wind-Down Debtors. If a finding was made that former Judge Jones and Ms. Freemen should be held at least partially responsible, it is possible that the Wind-Down Debtors would recover less than 100% of the fees and could be left to litigate with former Judge Jones and

9

Ms. Freeman for any remaining unpaid amounts – leading again to further litigation and costs. A settlement now brings finality and eliminates any meaningful litigation and/or collection risk, and puts an end to litigation costs after over two (2) years of litigation, including motion practice.

> **C.     The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

33.     The Plan Administrator is of the firm belief that the Settlement Agreement is in the best interest of general unsecured creditors as the Settlement Agreement removes any uncertainty of litigation, stops the Wind-Down Debtors from incurring further attorney's fees and expenses in connection with these disputes, and provides an additional source of recovery for the benefit of the general unsecured creditors in light of the relatively small amount of fees and expenses at issue in the Bankruptcy Case. This is also a substantial step towards the completing the Wind Down (as defined in the Plan), dissolution of the Wind-Down Debtors' estates, and closing the Bankruptcy Case.

> **D.     The nature and breadth of releases to be obtained by JW and the Plan Administrator**

34.     The Settlement Agreement contains customary mutual releases between JW and the Plan Administrator on behalf of the bankruptcy estates. This is to bring finality to the claims and disputes between the Plan Administrator and JW.

> **E.     The competency and experience of counsel supporting, and the experience and knowledge of the judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

35.     Counsel for the Plan Administrator and JW, as well as Chief Judge Moses, are competent and experienced. The Settlement Agreement was reached after extensive litigation and discovery in the Bankruptcy Case and the Misc. Proceeding and after the parties exchanged

multiple settlement proposals. The settlement was reached following extensive arms-length negotiations.

36. The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Administrator has attempted to achieve a resolution that maximizes value for the Wind-Down Debtors' estates. Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the Wind-Down Debtors' estates and all concerned parties.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Plan Administrator respectfully request that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

DATED: November 10. 2025

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280*)*
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: dgeoghan@coleschotz.com

- and -

Seth Van Aalten, Esq. (Admitted Pro Hac Vice)
Sarah A. Carnes, Esq. (Admitted Pro Hac Vice)
Bryant P. Churbuck, Esq.
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: svanaalten@coleschotz.com
         scarnes@coleschotz.com
         bchurbuck@coleschotz.com

*Counsel to Steven Balasiano as Plan Administrator of Stage Stores, Inc., et al*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2025, a true and correct copy of the foregoing *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case, and on all beneficiaries under the Plan who otherwise stand to recover under the terms of the Settlement Agreement and Plan.

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan