**Exhibit 1**

# EXHIBIT 1

*(Execution Version)*

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated July __, 2025 is made and entered into by and between Jackson Walker LLP ("JW") and the Seadrill Partners, LLC Reorganized Debtors ("Seadrill Partners"), and the Seadrill Limited Reorganized Debtors ("Seadrill Limited", and collectively with Seadrill Partners, the "Reorganized Debtors", and the Reorganized Debtors collectively with JW, the "Parties"), with respect to the bankruptcy case of Seadrill Partners, LLC, et al. (jointly administered under case number 20-35740), the bankruptcy case of Seadrill Limited, et al. (jointly administered under case number 21-30427) and the bankruptcy case of Seadrill New Finance Limited, et al. (jointly administered under case number 22-90001) (collectively, the "Bankruptcy Case"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A. On or about November 2, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel. The U.S. Trustee also filed related motions seeking to withdraw the reference of the Rule 60(b) motions.

B. On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

C. On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

D. On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

E. The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Case (collectively, the "Bankruptcy Disputes").

F. The Parties engaged in discovery from May 2024 through December 2024.

G. On March 6, 2025, the Parties participated in a mediation regarding the U.S. Trustee Filings with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

*(Execution Version)*

H. On April 9, 2025, the United States District Court for the Western District of Texas under case number 4:23-CV-4787-AM (the "District Court") withdrew the reference of the Bankruptcy Case to the District Court.

I. As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1. Recitals. The above recitals are incorporated herein by reference.

2. Effective Date.

    (a) The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived: (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; (ii) the Bankruptcy Court or the District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined); and (iii) the Settlement Payment (defined below) has been received pursuant to paragraph 3 below. For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review. If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Case or any other action or proceeding.

    (b) With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings. Consistent with the preceding sentences, Reorganized Debtors will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other

*(Execution Version)*

applicable rule(s) as may be applicable (the "Settlement Motion"). Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion. The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Reorganized Debtors and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Seadrill Partners, LLC, et al. bankruptcy case and the Seadrill Limited, et al. bankruptcy case, and that this Agreement adequately sanctions JW for any alleged violations of any law, rule, procedure, or statute. The Settlement Motion will be filed in the District Court under case number 4:23-CV-4787-AM.

3. Settlement Payment. Within five (5) business days after the Approval Order becoming a Final Order, JW shall pay or cause to be paid to Seadrill Limited (receipt of which shall be promptly confirmed by Seadrill Limited) the sum of $485,000.00 USD (the "Settlement Payment"). Payment shall be made payable to Seadrill Limited's account by wire transfer using the following instructions:

Account Name: Seadrill Limited
Bank Name: DNB Bank ASA
SWIFT: DNBANOKK
IBAN: NO26 12510579 907
Account Number: 12510579907

The Settlement Payment shall be paid to Seadrill Limited and shall vest in the Reorganized Debtors pursuant to the terms of the confirmed plans in the Bankruptcy Case.

4. Mutual Releases.

   (a) *Release in Favor of JW.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, Reorganized Debtors hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that

*(Execution Version)*

relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Reorganized Debtors against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b) *Release in Favor of the Reorganized Debtors.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Reorganized Debtors and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

5. **Waiver of Future and Unknown Claims**. Each of the Parties acknowledges that he or it has been advised by his or its attorney(s) concerning, and is familiar with, the provisions of California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each of the Parties acknowledges that he or it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs or expenses as the Party may have sustained might give rise to additional damages, losses, fees, costs or expenses in the future. Nevertheless, each of the Parties who/which have provided releases herein acknowledges that the releases herein have been negotiated and agreed upon in light of such possible damages, losses, fees, costs or expenses, and each expressly waives any and all rights

*(Execution Version)*

under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect concerning any potential presently-unknown claims.

6. <u>Bar</u>. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Reorganized Debtors against JW or any other released parties as well as any possible claim by JW against the Reorganized Debtors or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

7. *<u>Express Waiver of Fraudulent Inducement Claims</u>.*

THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.

MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.

8. <u>No Admission / Liability Denied</u>. This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation. The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied. This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

9. <u>Representations and Warranties</u>. The following representations and warranties in this Agreement shall survive its execution and performance.

*(Execution Version)*

(a) *Representations and Warranties by the Reorganized Debtors.*

    (i)    The Reorganized Debtors have all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Reorganized Debtors;

    (ii)    The execution, delivery and performance by the Reorganized Debtors of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Reorganized Debtors may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Reorganized Debtors are a party to which the Reorganized Debtors may be bound;

    (iii)    The Reorganized Debtors are the only persons or entities who, to the Reorganized Debtors' knowledge, have any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

    (iv)    The Reorganized Debtors has freely and voluntarily entered into this Agreement and has been fully advised by the Reorganized Debtors' attorneys concerning the Reorganized Debtors' rights and have further been advised by the Reorganized Debtors' attorneys as to the terms and effects of this Agreement.

(b) *Representations and Warranties by JW.*

    (i)    JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

    (ii)    The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver,

*(Execution Version)*

        violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii)     JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

10.     Cooperation and Dismissal or Withdrawal with Prejudice. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, and the Reorganized Debtors shall, within three (3) business days after the Effective Date, withdraw any related joinder or separate pleading or proceeding with prejudice, if any.

11.     Retention of Jurisdiction. The District Court or the Bankruptcy Court, as applicable, shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

12.     Return of Documents / Prohibition on Further Disclosure of Discovery Materials. Within 30 days of the Effective Date, the Reorganized Debtors and its counsel, any testifying and consulting experts, any other third-party vendor or consultant engaged by the Reorganized Debtors or its counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Case, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party.

13.     Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

14.     Dispute Resolution. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court or the District Court, as applicable.

15.     Successors and Assigns. This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

16.     Headings and Construction. Headings in this Agreement are for convenience and are not to be used in construing this Agreement. This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

*(Execution Version)*

    17.    <u>Entire Agreement / No Oral Agreements</u>. The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement. No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

    18.    <u>Expenses, Fees, and Costs</u>. The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

    19.    <u>Severability</u>. Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

    20.    <u>Waiver</u>. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

    21.    <u>Counterparts</u>. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

*(Execution Version)*

DATED: July 22, 2025

TODD STRICKLER, as Authorized Signatory on behalf of the Seadrill Partners, LLC Reorganized Debtors and the Seadrill Limited Reorganized Debtors, and not in his individual capacity

*[signature]*

DATED: July 16, 2025

Jackson Walker LLP

*[signature]*

Name: William R. Jenkins, Jr.
Title: Partner + General Counsel