Message
_____

**From:**        Cowlishaw, Pat [/O=JW EXCHANGE/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=PCOWLISHAW]
**Sent:**        11/30/2022 7:54:41 PM
**To:**          Alex Simms [freemanliz@hotmail.com]
**CC:**          Cooper, Wade [/o=JW Exchange/ou=First Administrative Group/cn=Recipients/cn=wcooper]
**BCC:**         {F560826}.JWDOCS@JWimanage.jwllp.com
**Subject:**     FW: Signed agreement
**Attachments:** [Untitled].pdf

**Sensitivity:** Private

Liz,

Attached is a copy of the fully-executed agreement.

Pat

USTP (Common) Ex. 7
Page 1 of 4

JW_00017326

## Confidential Withdrawal Agreement

This is to confirm that, in consideration of the mutual promises between the parties, and for other consideration, the sufficiency of which each party hereby acknowledges, Elizabeth Freeman ("you") and Jackson Walker L.L.P. ("JW") have agreed as follows.

1.      You have agreed to withdraw as an Equity Partner from the JW Partnership Your signature on this Agreement shall constitute delivery of a Withdrawal Notice. You and JW agree that December 1, 2022 shall be your Withdrawal Date, and that your withdrawal is effective as of that date.

2.      JW will continue your group medical coverage, at your cost, through December 1, 2022. You acknowledge that you may maintain coverage for any group medical, group dental, or other group health insurance subject to and in accordance with the Consolidated Omnibus Budget and Reconciliation Act ("COBRA"), after December 1, 2022. You understand and agree that the Firm has no obligation to pay COBRA premiums for any period after December 1, 2022.

3.      As of October 31, 2022, you had an ███████ Account of ████████ as reflected on the books of the Partnership. As of October 31, 2022, you also had a ██████ Account balance of ███████ as reflected on the books of the Partnership. JW shall pay you your ███████ Account balance, updated through November 30, 2022, plus your ███████ Account balance (which will not change between October 31 and November 30, 2022). JW shall deduct from these amounts the following:

a.      An amount equal to the product of your 2021 Participation Percentage times the amount of 2021 JW Net Income attributable to matters venued before United States Bankruptcy Judge Jones in the United States Bankruptcy Court for the Southern District of Texas; and

b.      An amount equal to the product of your 2022 Participation Percentage times the amount of 2022 JW Net Income through October 31, 2022 attributable to matters venued before Judge Jones; and

c.      Any other amounts owed by you JW, which JW will itemize to you in a statement accompanying they payment provided for in the following sentence.

JW shall pay you your ██████ Account and ██████ Account balances, net of those deductions, by doing either of the following by January 31, 2023: (i) mailing a check to you at an address you provide to JW, or (ii) sending a wire transfer to you via written wire instructions you provide to JW.

4.      JW represents ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████ Some of the professional services provided by JW in

USTP (Common) Ex. 7
Page 2 of 4

1

34295918v.1

                                                    JW_00017327

that matter have been and are being provided under a ███████████████ set forth in the engagement letter. JW recognizes you as the originator of that matter. To the extent that JW receives ███████████ in that matter after December 1, 2022, or receives ███████████ in that matter before December 1, 2022 that is not distributed until after December 1, 2022, JW agrees to include you in any distribution. The amount of your distribution will be determined by the Compensation Committee, applying the same factors that it commonly applies in distributing ███████████ the same as if you remained a JW Equity Partner.

5.    You agree that the amounts provided for in paragraph 3 and 4, together with amounts previously paid to you by JW, shall constitute full and complete compensation as an Equity Partner under the terms of the JW Partnership Agreement for your participation as a partner through December 1, 2022.

6.    Confidentiality.  JW and you agree that this Agreement, all of its terms and conditions, and all preceding discussions between you and JW, regarding your relationship with Judge Jones ("Covered Matters") are confidential and shall not be disclosed or revealed to any third party, except as specified below.  JW and you agree that the existence, terms and conditions of the Agreement, and the content of the preceding discussions, may be disclosed only (a) by either party to their tax advisor, the IRS, accountants, insurers, or attorneys as each party deems necessary; (b) in the course of defending a legal or regulatory proceeding commenced by someone other than the disclosing party; (c) in a proceeding to enforce this Agreement, or (d) as otherwise may be required by law.  The parties acknowledge that, within JW, Covered Matters have been discussed within the Management and Compensation Committees and with JW internal and outside counsel, and the parties agree that the resolution of these matters in the reaching of this agreement may be disclosed within those Committees.  You agree that JW also may disclose the terms of this Agreement to the members of its Compensation Committee and, as needed in order to carry out its terms, its accounting and administrative personnel.

7.    The parties acknowledge that they have discussed the opportunity, subsequent to your withdrawal, to work together as co-counsel in future matters, excluding matters before Judge Jones.  The parties also acknowledge that any work together following your withdrawal, and the terms of such work, will require client consent on a matter by matter basis, and, in the case of some bankruptcy matters, may require court approval.  JW and you each commit to use reasonable best efforts to realize future opportunities to work together to our mutual benefit, but each also agrees that neither has made any commitment to the other regarding any volume of work or any compensation.

8.    Through December 1, 2022, you may continue to use your JW office and to remotely use and access JW systems, on the terms ordinarily available to any JW equity partner, for business purposes.  During this time you will be under no obligation to perform billable work, except as necessary to discharge your responsibility to clients on matters under your supervision.  Otherwise you may devote as much time as you wish to seeking other employment.  You agree that you will not remove from JW or copy any

USTP (Common) Ex. 7
Page 3 of 4

2

34295918v.1

                                                JW_00017328

client file materials for your future use, or arrange for anyone else to remove or copy such materials, except by JW personnel responsible for executing client file transfers in response to a transfer request signed by the client. Consistent with our interest in continued opportunities to work together, JW and you expect and intend to confer and cooperate in good faith with respect to future relationships with existing JW bankruptcy practice clients, including the potential transfer of any client matters, in whole or in part, to you and a future employer, all subject to client direction. To that end it is agreed that, both before and after December 1, 2022, you, together with Bruce Ruzinsky and/or Matt Cavenaugh, may discuss with current and prospective clients the possibility of your working as co-counsel with JW following your withdrawal, so that your continued involvement might be as seamless as possible.

Agreed to and effective this 29th day of NOVEMBER, 2022.

**JACKSON WALKER L.L.P.**

By:    Wade Cooper
Its    Managing Partner

**ELIZABETH FREEMAN**

34295918v.1

Confidential

JW_00017329