UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

- - - - - - - - - - - - - - -

IN RE:                        )

PROFESSIONAL FEE MATTERS   ) CASE NO.

CONCERNING THE JACKSON      ) 23-00645 (EVR)

WALKER LAW FIRM,            )

          Debtor            )

- - - - - - - - - - - - - - -

DEPOSITION OF MATTHEW D. CAVENAUGH

FRIDAY, AUGUST 30, 2024

BEMKE REPORTING AND VIDEO SERVICES, INC.

BY:  CAMILLE A. BRUESS, RPR, TEXAS CSR NO. 3824

550 CALIFORNIA STREET, SUITE 820

SAN FRANCISCO, CALIFORNIA  94104

(415) 597-5600

USTP (Common) Ex. 10
Page 1 of 8

APPEARANCES OF COUNSEL (CONTINUED):

FOR PATRICK BARTELS, TRUSTEE:

    McCLOSKEY ROBERSON WOOLEY, PLLC

    BY:  CARISSA BREWSTER, ATTORNEY AT LAW

       (VIA VIDEOCONFERENCE)

    190 TC Jester Boulevard, Suite 400

    Houston, Texas  77007

    Telephone:  (713) 337-3902

    Email:  cbrewster@mrwpllc.com


FOR JCPENNEY PLAN ADMINISTRATORS:

    STREUSAND, LANDON, OZBURN & LEMMON, LLP

    BY:  STEPHEN LEMMON, ATTORNEY AT LAW

       RHONDA MATES, ATTORNEY AT LAW

       (VIA VIDEOCONFERENCE)

    1801 South Mopac Expressway, Suite 320

    Austin, Texas  78746

    Telephone:  (512) 220-2688

    Email:  lemmon@slollp.com

       mates@slollp.com

USTP (Common) Ex. 10
Page 2 of 8

BEHMKE REPORTING AND VIDEO SERVICES, INC.          5
(415) 597-5600

Q.  When did you first know about that?

A.  -- the first time I knew about that was on or about March 30, 2022.  And what I was --

Q.  How did it happen?

A.  It was in a conversation with Liz following a confrontation that she had had with, uh, members of the firm wherein she was upset.  She said that she had been asked questions about, uh, whether or not she lived with Judge Jones.  She, uh, emphatically denied that they lived together and, uh, said that his only connection to her house was that there was a right of survivorship that was an estate planning vehicle, but that that was his only, uh, connection to that house.

Q.  Okay.  Now, that conversation you're talking about again was on what date?

A.  Uh, on or about March 30 it was, uh ...

Q.  Of '22?

A.  Of '22, yes.

Q.  All right.  Now, when you say she was upset, was there something having to do with her children that had her upset --

A.  Yes.

Q.  -- that caused this meeting?

A.  Yes.

Q.  Can you tell everyone exactly what happened

USTP (Common) Ex. 10
Page 3 of 8

there?

A.   Uh, she indicated to me that members of the firm had asked her very personal questions about her children, who they lived with and their interactions with Judge Jones and that they had asked for her permission to talk to her children directly.

(Whereupon, Mr. Jenkins left.)

Q.   Now, when you say persons, let's be more specific.  Who was she talking about that was asking her these questions?

A.   Julie Mann and Pat Cowlishaw.

Q.   Okay.  So it was the general counsel and another partner?

A.   Yes.

Q.   And did you understand that they were tasked with trying to find out what had happened in light of what they had in a matter of a few days or however heard?

A.   That's what I came to understand, yes.

Q.   Okay.  And was she mad about their confronting her?

A.   Yes.

Q.   And so when that happened, is that what produced the meeting with several people?

A.   Yes.

USTP (Common) Ex. 10
Page 4 of 8

Q. And who was in that meeting?

A. Uh, to the best of my recollection, it included Wade Cooper, Bruce Ruzinsky, Liz Freeman, myself, and I think Veronica Polnick.

Q. Now, that meeting at that time when you heard her side of what she was upset about, initially what was -- when she told you that at the time she told you and you went to this meeting with her, what was the state of your knowledge in terms of her involvement with the judge?

A. Uh, that it was the same as in March of the prior year, that they were not in a relationship. They had not resumed a relationship. They did not live together and they did not have any, uh, financial connection. It was basically the same situation, uh, that had been conveyed the year prior.

Q. So who asked for this meeting?

A. I did.

Q. And what was your state of mind when you heard from her her side of it combined with what you're still saying with the '21 knowledge? The year '20 -- the things you learned in '21 --

A. Uh, I was very --

Q. -- you still had that. So what was your reaction when you heard -- once you heard her version of

USTP (Common) Ex. 10
Page 5 of 8

what she was upset about?

A. I was very angry.

Q. And who were you angry at?

A. I was angry at firm management and Mr. Cowlishaw and Ms. Mann.

Q. And why were you angry at them?

A. Because I did not think that that was an appropriate way to treat our partners.

Q. Okay. Now, what happened in the meeting?

A. I expressed my frustration and disappointment. And during -- during that expression, uh, Liz interrupted me and waved me off.

Q. When she waved you out, were you in the process of fussing at the people senior to you?

A. I was fussing at the managing partner of our firm.

Q. That's how strongly you felt she was being improperly treated at the moment?

A. Yes.

Q. And then how did it come about that she waved you off?

A. Uh, she started crying and, uh, physically touched my arm and, uh, I stopped talking.

Q. What did you think she meant?

A. I -- I didn't know. She -- she just started

USTP (Common) Ex. 10
Page 6 of 8

crying.

Q. Did she say anything else in that meeting?

A. Uh, I don't think she did.

Q. What happened then?

A. After a period of time, Bruce asked her, uh, if, uh, he --

Q. In the same meeting?

A. In the same meeting.

Q. Go ahead.

A.        -- if, uh, her and Judge Jones were back together.

Q. Do you recall what words he used?

A. I think it was back together or rekindle, but I don't know specifically which one.

Q. Okay.  And what did she say?

A. She nodded yes.

Q. Did she --

A. She nodded yes.

Q. Did she say anything at the time?

A. She did not.

Q. What did you do?

A. I, uh, was just kind of stunned.  I didn't do anything.

Q. What do you remember thinking?

A. Uh, I -- I was -- just remember being shocked.

USTP (Common) Ex. 10
Page 7 of 8

STATE OF TEXAS        )

                      ) ss.

COUNTY OF HARRIS    )

       I, Camille A. Bruess, Certified Shorthand Reporter in and for the State of Texas and Registered Professional Reporter, hereby certify to the following:

       That the witness, MATTHEW D. CAVENAUGH, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness to the best of my ability;

       I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties in the action in which this testimony was taken.

       Further, I am not a relative or employee of any attorney of record in this cause, nor am I financially or otherwise interested in the outcome of the action.

       Subscribed and sworn to on this 7th day of September, 2024.

    Reading and signing was: requested.

       CAMILLE A. BRUESS, RPR, TEXAS CSR NO. 3824

       Expiration Date:  4/30/25

USTP (Common) Ex. 10
Page 8 of 8