In the Matter of:

**Professional Fee Matters Concerning the Jackson Walker Law Firm**

**Case No. 23-cv-04787-AM**

---

**Witness:**

**W. Ross Forbes**

*February 17, 2026*

---



2201 Old Court Road
Baltimore, Maryland 21208

410-821-4888
www.crcsalomon.com
crc-ustp@crcsalomon.com

USTP (Common) Ex. 19
Page 1 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026

```
 1            IN THE UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF TEXAS

 3

 4   - - - - - - - - - - - - - - - -

 5   IN RE:                    )  CASE NO. 23-cv-04787-AM

 6   PROFESSIONAL FEE MATTERS   )  CHIEF U.S. DISTRICT JUDGE

 7   CONCERNING THE JACKSON WALKER )  ALIA MOSES

 8   LAW FIRM                  )  U.S. DISTRICT JUDGE

 9   - - - - - - - - - - - - - - - -

10

11

12            REMOTE RULE 30(b)(6) DEPOSITION OF

13                   W. ROSS FORBES

14         AS REPRESENTATIVE FOR JACKSON WALKER LLP

15              TUESDAY, FEBRUARY 17, 2026

16

17

18

19

20

21

22        CRC SALOMON

23        BY:  ELIZABETH CANTANDO, CER

24        2201 OLD COURT ROAD, BALTIMORE, MARYLAND 21208

25        410-821-4888
```

USTP (Common) Ex. 19
Page 2 of 272

W. Ross Forbes                              30(b)(6)
Proceedings on 02/17/2026                                    Page 2

1

2

3

4

5

6

7

8            Remote Rule 30(b)(6) deposition of W. ROSS FORBES, as

9    representative for JACKSON WALKER LLP, taken on behalf of the

10   United States Trustee via videoconference, commencing at 9:44

11   a.m. Central Time, February 17, 2026, before Elizabeth

12   Cantando, CER.

13

14

15

16

17

18

19

20

21

22

23

24

25

USTP (Common) Ex. 19
Page 3 of 272

Office: (410) 821-4888        CRC Salomon        crc-ustp@crcsalomon.com
Fax: (410) 821-4889    2201 Old Court Road, Baltimore MD 21208    www.crcsalomon.com

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                        Page 3

```
 1   APPEARANCES OF COUNSEL (VIA VIDEOCONFERENCE)

 2   FOR THE UNITED STATES TRUSTEE:

 3       OFFICE OF THE UNITED STATES TRUSTEE

 4       LAURA STEELE, TRIAL ATTORNEY

 5       JOEL CHARBONEAU, TRIAL ATTORNEY

 6       VIANEY GARZA, TRIAL ATTORNEY

 7       ELVINA ROFAEL, TRIAL ATTORNEY

 8       BRIAN THILL, TRIAL ATTORNEY

 9       SPENCER EZELL, TRIAL ATTORNEY

10       MILLIE APONTE SALL, ASSISTANT UNITED STATES TRUSTEE

11       Laura.Steele@usdoj.gov

12       Joel.Charboneau@usdoj.gov

13       Vianey.Garza@usdoj.gov

14       Elvina.Rofael@usdoj.gov

15       Brian.P.Thill@usdoj.gov

16       Spencer.Ezell@usdoj.gov

17       Millie.Sall@usdoj.gov

18

19   FOR PATRICK BARTELS, TRUSTEE FOR THE STRIKE LIQUIDATING TRUST;

20   AND PATRICK BARTELS, PLAN AGENT FOR THE WIND-DOWN DEBTORS IN

21   JOINTLY ADMINISTERED CASES OF IN RE AUTO PLUS AUTO SALES LLC:

22       MCCLOSKEY ROBERSON WOOLLEY, PLLC

23       THOMAS "RUSTY" WOOLLEY, ATTORNEY AT LAW

24       CARISSA BREWSTER, ATTORNEY AT LAW

25
```

USTP (Common) Ex. 19
Page 4 of 272

```
 1   APPEARANCES OF COUNSEL (CONT'D)

 2        RWoolley@mrwpllc.com

 3        CBrewster@mrwpllc.com

 4

 5   FOR SEADRILL LIMITED:

 6        TROUTMAN PEPPER LOCKE LLP

 7        Phil Eisenberg, Attorney at Law

 8        Philip.Eisenberg@troutman.com

 9

10   FOR DAVID DUNN, PLAN AGENT AND SOLE MANAGER, SOLE DIRECTOR,

11   SOLE OFFICER, AND SOLE REPRESENTATIVE OF 4E BRANDS NORTHAMERICA

12   LLC; AND DAVID DUNN, LIQUIDATION TRUSTEE FOR THE BASIC ENERGY

13   LIQUIDATION TRUST:

14        BONDS ELLIS EPPICH SCHAFER JONES LLP

15        KEN GREEN, ATTORNEY AT LAW

16        AARON GUERRERO, ATTORNEY AT LAW

17        BRYAN PRENTICE, ATTORNEY AT LAW

18        Ken.Green@bondsellis.com

19        Aaron.Guerrero@bondsellis.com

20        Bryan.Prentice@bondsellis.com

21

22   FOR JC PENNEY WIND-DOWN ESTATE:

23        HAYNES AND BOONE, LLP

24        ELI COLUMBUS, ATTORNEY AT LAW

25        JORDAN CHAVEZ, ATTORNEY AT LAW
```

USTP (Common) Ex. 19
Page 5 of 272

```
 1    APPEARANCES OF COUNSEL (CONT'D)

 2         Eli.Columbus@haynesboone.com

 3         Jordan.Chavez@haynesboone.com

 4

 5    FOR STEVEN BALASIANO, PLAN ADMINISTRATOR FOR THE WIND-DOWN

 6    DEBTORS IN THE JOINTLY ADMINISTERED CASES OF STAGE STORES,

 7    INC.:

 8         COLE SCHOTZ, P.C.

 9         DAN GEOGHAN, ATTORNEY AT LAW

10         DGeoghan@coleschotz.com

11

12    FOR THE WITNESS AND JACKSON WALKER LLP:

13         NORTON ROSE FULBRIGHT US LLP

14         JASON BOLAND, ATTORNEY AT LAW

15         JULIE HARRISON, ATTORNEY AT LAW

16         Jason.Boland@nortonrosefulbright.com

17         Julie.Harrison@nortonrosefulbright.com

18

19         RUSTY HARDIN & ASSOCIATES, LLP

20         EMILY SMITH, ATTORNEY AT LAW

21         ESmith@rustyhardin.com

22

23    ALSO PRESENT:

24         William Jenkins, Jackson Walker LLP General Counsel

25
```

USTP (Common) Ex. 19
Page 6 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                    Page 6

```
 1                        INDEX

 2  WITNESS                                      PAGE

 3  W. ROSS FORBES

 4      Examination by MS. STEELE                10

 5

 6

 7

 8

 9                    ---oOo---

10

11        QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

12                  PAGE    LINE

13                   48      2

14                   49      3

15                   51      12

16

17                    ---oOo---

18

19

20

21

22

23

24

25
```

USTP (Common) Ex. 19
Page 7 of 272

W. Ross Forbes                              30(b)(6)
Proceedings on 02/17/2026                                              Page 7

```
 1                          EXHIBITS

 2   NUMBER                  DESCRIPTION                     PAGE

 3   Exhibit 1     Subpoena Notice - 7 pages               13

 4   Exhibit 2     JW Responses - 7 pages                  16

 5   Exhibit 3     4E 9019 Motion - 22 pages               20

 6   Exhibit 4     JW Dunn 9019 Motion - 22 pages          32

 7   Exhibit 5     IEH Agreement - 20 pages                33

 8   Exhibit 6     Brilliant 9019 Motion - 21 pages        35

 9   Exhibit 7     Sungard Settlement Motion - 25 pages    36

10   Exhibit 8     Stage Stores Settlement Motion - 26 pages  37

11   Exhibit 9     Strike Settlement Agreement - 21 pages  37

12   Exhibit 12    December 9 Transcript - 8 pages         38

13   Exhibit 13    JW Response GWG - 6 pages               42

14   Exhibit 14    JW Reply to UST 9019 - 11 pages         42

15   Exhibit 15    UST Agenda - 4 pages                    22

16   Exhibit 16    Texas Lawbook Article - 3 pages         48

17

18

19

20

21

22

23

24

25
```

USTP (Common) Ex. 19
Page 8 of 272

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889      2201 Old Court Road, Baltimore MD 21208      www.crcsalomon.com

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                        Page 8

```
 1              TUESDAY, FEBRUARY 17, 2026; 9:44 A.M.

 2                        ---oOo---

 3              COURT REPORTER:  Okay.  We're ready to go on the

 4    record.  The time is 9:44 a.m. Central Standard Time.  The date

 5    is February 17, 2026.  My name is Elizabeth Cantando.  I am the

 6    digital reporter scheduled by CRC Salomon to cover this remote

 7    proceeding.  I request that all parties stipulate and agree

 8    that by videoconference technology this will be the remote

 9    deposition of Ross Forbes in the matter of In Re Professional

10    Fee Matters Concerning the Jackson Walker Law Firm, Case Number

11    4:23-cv-04787.

12              This deposition is being taken using a video

13    connection before a court reporter who is not in the same

14    location as the witness.  I therefore request that the parties

15    stipulate that the deposition may be taken remotely before this

16    court reporter pursuant to Federal Rules of Bankruptcy

17    Procedure 7029 and 9014.

18              Before going on the record, the witness positively

19    identified themselves to me as Ross Forbes.  And the witness is

20    presently located at the Rusty Hardin & Associates Law Firm.

21              Counsel, will you please state your appearances for

22    the record, your firm, who you represent, and that you agree to

23    stipulate that I may place this witness under oath and report

24    this proceeding remotely.

25              MS. STEELE:  Good morning.  Laura Steele for the
```

USTP (Common) Ex. 19
Page 9 of 272

 1   United States Trustee.  Along with me this morning are Joel

 2   Charboneau, Brian Thill, Millie Sall, Vianey Garza, and Spencer

 3   Ezell.  And the U.S. Trustee so stipulates.

 4           MR. HARDIN:  Rusty Hardin on behalf of Jackson Walker

 5   of the law firm Rusty Hardin & Associates.  Jason Boland on

 6   behalf of Jackson Walker and the law firm of Norton Rose

 7   Fulbright.

 8           MS. STEELE:  And if we can have other appearances on

 9   the Zoom, please.

10           MR. EISENBERG:  Philip Eisenberg for Seadrill

11   Limited.

12           MS. CHAVEZ:  Jordan Chavez and Eli Columbus for the

13   JC Penney Wind-Down Debtors.

14           MR. GEOGHAN:  Dan Geoghan from Cole Schotz for

15   Sungard.

16           MS. BREWSTER:  Carissa Brewster for Patrick Bartels

17   as Liquidating Trustee in the Strike case and as Plan Agent in

18   the Auto Plus cases.

19           MR. GREEN:  Good morning.  This is Ken Green with

20   Bonds Ellis.  I also have Aaron Guerrero and Bryan Prentice,

21   and appearing on behalf of David Dunn in the 4E Brands and

22   Basic Energy Services cases.

23           MS. STEELE:  I think that's everyone.  I'll just also

24   add that Elvina Rofael is also appearing for the U.S. Trustee.

25   Before we get started, I just want to place U.S. Trustee's

USTP (Common) Ex. 19
Page 10 of 272

1    reservation and rights on the record.  For the record, the U.S.

2    Trustee is conducting this discovery in compliance with the

3    Bankruptcy Court's orders, but the U.S. Trustee does not waive

4    and hereby explicitly reserves all rights and defenses to the

5    order, to the extent it exceeds the District Court's abatement

6    and limited referral of these matters.

7             All right.  Ms. Cantando, would you please swear in

8    the witness?

9             COURT REPORTER:  Yes.  Would you please raise your

10   right hand?

11        Whereupon,

12                        W. ROSS FORBES,

13        having been duly sworn, was examined and testified as

14        follows:

15             COURT REPORTER:  Thank you.  Counsel, you may

16   proceed.

17                        EXAMINATION

18   BY MS. STEELE:

19        Q.   Good morning, Mr. Forbes.  We've met before.  My name

20   is Laura Steele.  I'm an attorney with the U.S. Trustee's

21   office.  I'm here today for the Rule 30(b)(6) deposition of

22   Jackson Walker.  And are you the designated witness for Jackson

23   Walker today?

24        **A.   Yes.**

25        Q.   And could you please state your name for the record?

USTP (Common) Ex. 19
Page 11 of 272

W. Ross Forbes                    30(b)(6)
Proceedings on 02/17/2026                                        Page 11

1       A.    My full name is William Ross Forbes, Junior.

2       Q.    And could you please spell your name as well?

3       A.    W-I-L-L-I-A-M R-O-S-S F-O-R-B-E-S J-R period.

4       Q.    Thank you.  Mr. Forbes, where are you currently

5   employed?

6       A.    Jackson Walker.

7       Q.    And in what capacity are you employed?

8       A.    I'm a partner.

9       Q.    And are you also a lawyer?

10      A.    I am a lawyer.

11      Q.    How long have you been employ -- or how long have you

12  been a partner with Jackson Walker?

13      A.    I'm not exactly sure.  I started working at Jackson

14  Walker in May of 2000.  I became a partner sometime in the

15  early 2000s.

16      Q.    Mr. Forbes, I understand that you were Jackson

17  Walker's 30(b)(6) witness in a previous deposition in this

18  matter.  So I understand that you're aware of how this will

19  proceed today generally.

20            But I just want to go over a few items just to make

21  sure that we're on the same page.  First of all, is Jackson

22  Walker represented by counsel today?

23      A.    Yes.

24      Q.    And who is Jackson Walker's counsel?

25      A.    In the room with me are Mr. Hardin and Mr. Boland.

USTP (Common) Ex. 19
Page 12 of 272

1  **There might be others on the Zoom.  I'm not sure.**

2      Q.   Are those the only two law firms, Mr. Hardin's firm

3  and Mr. Boland's firm, those are the only two firms

4  representing Jackson Walker in this matter?

5      **A.   Well, I mean, I would say, since I'm a lawyer and I**

6  **don't know if Mr. Jenkins is on the call, he's the general**

7  **counsel for Jackson Walker.  But I consider myself somewhat**

8  **representative of myself, and I'll say, if William is on, he**

9  **would be representing me as well.  But those are the two law**

10  **firms that are representing me for purposes of this deposition.**

11      Q.   Okay.  And you are testifying on behalf of the

12  corporate -- or the company or Jackson Walker LLP, correct, not

13  yourself?

14      **A.   The partnership.  It's an LLC.**

15      Q.   All right.  Has Jackson Walker signed or approved any

16  conflicts of interest waivers relating to these matters?

17      **A.   I don't know what you're talking about.**

18      Q.   For example, Jackson Walker still has a -- is still

19  representing one of the Plan Administrators in the Auto Plus,

20  also known as the IEH matter.  Are you familiar with that?

21      **A.   Yes.**

22      Q.   And are you aware whether there's a conflict waiver

23  in that representation?

24      **A.   My understanding is that -- sorry about that.  Sorry.**

25  **Can you repeat that?  I understand where you're going.  I just**

USTP (Common) Ex. 19
Page 13 of 272

1    had a phone call.  I apologize.

2         Q.   And if you could just silence any --

3         A.   I just did.

4         Q.   Okay.  Thank you.  So you understand that Jackson

5    Walker -- my understanding is that Jackson Walker is still

6    representing the Plan Administrator in IEH, also known as Auto

7    Plus.  Are you familiar with that?

8         A.   Yes.

9         Q.   And do you know whether there's a conflict waiver in

10   effect in that representation?

11        A.   I have seen a waiver signed by Mr. Bartel, and I

12   believe it's a conflict waiver.

13        Q.   Are there any other similar conflict waivers that

14   you're aware of?

15        A.   No.

16        Q.   I'm sorry.  No?

17        A.   No.

18        Q.   Thank you.  All right.  I'm going to show you what

19   I've marked as Exhibit 1, Mr. Forbes.

20                          (Whereupon, Exhibit 1 was marked for

21                          identification.)

22   BY MS. STEELE:

23        Q.   You should see in front of you a Subpoena to Testify

24   at a Deposition in a Civil Action.  Do you see this document?

25        A.   Yes.

USTP (Common) Ex. 19
Page 14 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                              Page 14

1        Q.    And this document I've marked as Exhibit 1, have you

2   seen this subpoena prior to today?

3        **A.    Yes.**

4        Q.    And if I go to Page 6, there were some lists of

5   topics for examination.  Have you reviewed this list of topics

6   for examination prior to today?

7        **A.    I have read Exhibit 1.**

8        Q.    Do you understand that you have been designated by

9   Jackson Walker to testify with regard to these topics?

10       **A.    Yes.**

11       Q.    And are you prepared to testify about the topics that

12  are identified on Pages 6 to 7 of Exhibit 1?

13       **A.    Yes, subject to our objections to certain of the**

14  **topics.**

15       Q.    And there's no topic that you are not prepared to

16  discuss, subject to your objections?

17       **A.    That's right.**

18       Q.    What, if anything, did you do to prepare for today's

19  deposition, Mr. Forbes?

20       **A.    I met with counsel last week, and I looked over some**

21  **exhibits.  I read the subpoena.  I read the objections to the**

22  **subpoena.**

23       Q.    When you say exhibits, what exhibits are you

24  referring to?

25       **A.    They were exhibits to other depositions in this phase**

USTP (Common) Ex. 19
Page 15 of 272

1    of the litigation.

2         Q.   And with regards to the 9019 motions?

3         A.   Yes.  The settlements is the way I would describe it

4    as a non-bankruptcy practitioner.

5         Q.   Okay.  And you're aware that depositions have been

6    conducted of each representative of the 9019 movements?

7         A.   I don't know that.  I know that there have been some.

8         Q.   Have you reviewed or did you attend any of those

9    depositions?

10        A.   No.  Well, that was a compound question.  I reviewed

11   at least one, and I did not attend any.

12        Q.   Which one did you review?

13        A.   Mr. -- I think it's Williams.

14        Q.   The Brilliant Energy case, Randy Williams?

15        A.   Yes.

16        Q.   And what exactly did you review in that case?

17        A.   I read the transcript.

18        Q.   Have you discussed these depositions with anyone

19   other than Jackson Walker's counsel?

20        A.   No.

21        Q.   Have you had any discussions with the entity

22   representatives of the settling parties?

23        A.   No.

24        Q.   Have you reviewed any court hearing transcripts in

25   preparation for today?

USTP (Common) Ex. 19
Page 16 of 272

1      A.   I attended a hearing on December 9th of 2025 that I

2  believe pertains to today, and I reviewed my notes to that

3  hearing, but I don't believe I've reviewed any transcripts that

4  I can recall.

5      Q.   After the subpoena was issued, did you communicate

6  with anyone about the topics within Exhibit 1 other than

7  Jackson Walker's attorneys?

8      A.   No.

9                       (Whereupon, Exhibit 2 was marked for

10                      identification.)

11  BY MS. STEELE:

12     Q.   We're going to go to Exhibit Number 2, Mr. Forbes.

13  Exhibit Number 2 I'll represent to you is the response and

14  objections provided to my office from Jackson Walker.  Are you

15  familiar with this document?

16     A.   Yes.

17     Q.   Did you review this document before today?  I believe

18  you did say that.

19     A.   I did.

20     Q.   Did you also review the documents that were produced

21  to the U.S. Trustee pursuant to our subpoena?

22     A.   It's possible that I produced some.  I don't

23  remember.

24     Q.   Did you review the documents that were produced?

25     A.   Same answer.  I don't remember.

USTP (Common) Ex. 19
Page 17 of 272

1    Q.   Do you know whether the document production is

2    complete, to your knowledge?

3        **A.   You'll have to ask our counsel.**

4    Q.   All right.  Mr. Forbes, we're going to go ahead and

5    launch into Topic Number 1, which was the -- and I'll just show

6    you.  It will be easier to discuss this way.  So Topic Number 1

7    is settlement agreements, including but not limited to their

8    terms, timing, consideration exchanged or to be exchanged,

9    claims or relief sought, settled or compromised, defenses

10    contemplated or benefits received as a result, effect on others

11    and alternatives that would best serve the interests of the

12    affected parties, while preserving the merits of the U.S.

13    Trustee's vacatur motions.

14          All right.  So, Mr. Forbes, is it your understanding

15    that there are nine settlement agreements that are pending

16    before the Court currently?

17        **A.   I'll take your word for it.  It's either 9 or 10.  I**

18    **can't remember specifically.**

19    Q.   Okay.  And there are 10 settlement agreements.  The

20    GWG matter has been abated for trial.

21        **A.   Okay.**

22    Q.   Do you understand that?

23        **A.   That sounds right.**

24    Q.   Okay.  In each of the nine cases that are pending

25    before the Court at this moment, do you know who drafted the

USTP (Common) Ex. 19
Page 18 of 272

1  settlement agreements in each of those cases?

2       A.   I don't.

3       Q.   Do you know if they were drafted by Jackson Walker?

4       A.   I don't believe so.

5       Q.   Do you know who did draft them?

6       A.   I don't know.

7       Q.   Have you reviewed the settlement agreements before

8  today?

9       A.   Some of them, probably all of them, but I don't

10 remember specifically, but I've reviewed some of them.

11      Q.   Okay.  Are you familiar with the terms in each of the

12 -- are you familiar with each of the terms within the

13 settlement agreements?

14      A.   As I sit here today, I would say no.  I've read them

15 and I -- to the extent I've read them, I've familiarized myself

16 at some point in time.  But can I tell you verbatim off the top

17 of my head?  No.

18      Q.   And I just want to go back to my question about

19 drafting.  Do you know whether Norton Rose drafted the

20 settlement agreements?

21      A.   My answer, again, is I don't know who drafted the

22 settlements.

23      Q.   Are you aware that the settlement agreements include

24 severability provisions?

25      A.   I saw a severability provision in at least one that I

USTP (Common) Ex. 19
Page 19 of 272

1   **reviewed.**

2       Q.   Do you know -- are you aware that the -- those

3   provisions provide that if the Court finds any provision void

4   or illegal, that the agreement can still be carried out even if

5   that particular provision is struck?

6       **A.   You're asking me to make a legal conclusion.  I've**

7   **read the severability provisions in some of the settlement**

8   **agreements, and the document speaks for itself.**

9       Q.   So, Mr. Forbes, if the Court strikes any bar as to

10  monetary recovery, the agreement can still be carried out; is

11  that correct?

12      **A.   I don't know.  I would object to your calling for**

13  **speculation.  It's a hypothetical question, but I don't know.**

14      Q.   Okay.  And if the Court declines to enter any order

15  that restricts the Court's ability to order disgorgement, the

16  agreement could still also be carried out; is that correct?

17      **A.   I'll again object, as it calls for speculation and a**

18  **legal conclusion.  I don't know the consequences of that.**

19      Q.   So, Mr. Forbes, you do have counsel there with you in

20  the room?  I would leave the objections to them.  You, as a

21  witness, your obligation is to answer the question unless your

22  counsel objects.  So if your answer is --

23      **A.   I'm a lawyer.  I'm a lawyer representing myself in**

24  **some capacity, and I'm going to object if I think the question**

25  **is objectionable.**

USTP (Common) Ex. 19
Page 20 of 272

```
 1                        (Whereupon, Exhibit 3 was marked for

 2                        identification.)

 3   BY MS. STEELE:

 4       Q.    So, Mr. Forbes, let me just show you what I've marked

 5   as Exhibit 3, and I'll show you the (indiscernible).  All

 6   right.  Are you aware that in the 4E case, Mr. Forbes, there

 7   was a 9019 motion filed?

 8       A.    I assume so.

 9       Q.    Have you specifically reviewed the 4E settlement

10   motion?

11       A.    It's possible, but I don't remember.

12       Q.    All right.  Did you review the settlement agreement

13   itself that was attached to the 9019 motion?

14       A.    I don't remember reviewing it.  I do remember

15   reviewing most, if not all, the settlement agreements.

16       Q.    All right.  With regard to the terms of the 4E

17   motion, you're familiar generally with the outline of the

18   agreement?  There's a settlement agreement and release, the

19   recitals, the agreement itself, the express waiver of

20   fraudulent inducement claims, and then, in paragraph 21,

21   there's a severability clause.  Have you read this clause

22   specifically before today?

23       A.    I believe I have.  I don't remember specifically.

24       Q.    And so, if any term, any clause, paragraph, or part

25   of the agreement is declared to be void or illegal, does the
```

USTP (Common) Ex. 19
Page 21 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                    Page 21

1   agreement stand?

2       A.   You're asking me to speculate on something that I

3   don't know whether that's gonna happen or not.   The

4   severability clause speaks for itself.

5       Q.   Is there any term of the settlement agreement that is

6   not essential to Jackson Walker?

7       A.   I would say that all the terms are essential to

8   Jackson Walker.

9       Q.   So how does that --

10      A.   And I would assume our counterparty as well.

11      Q.   Okay.  So if the -- if, for example, the bar

12  provision is struck from the settlement agreement itself, would

13  Jackson Walker still pay the settlement amount to 4E?

14      A.   I don't know.

15      Q.   What clause would allow Jackson Walker to exit the

16  settlement agreement if a term is severed as provided in this

17  agreement?

18      A.   You're asking me to speculate on something that I

19  don't know.

20      Q.   When these 9019 motions were filed with the Court,

21  did Jackson Walker and its counsel review the motions?

22      A.   I didn't review them.

23      Q.   Did Jackson Walker's counsel review them?

24      A.   You would have to ask them.  I don't know.

25      Q.   Do you know whether that was a provision on these

USTP (Common) Ex. 19
Page 22 of 272

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889    2201 Old Court Road, Baltimore MD 21208    www.crcsalomon.com

```
 1   settlement agreements, that Jackson Walker's counsel would be

 2   able to review the 9019 motions before they were filed?

 3       A.   Is it in the settlement agreements?

 4       Q.   I believe so, Mr. Forbes, but I'm asking if you've

 5   reviewed it and if you know.

 6       A.   If you want to show it to me, I can tell you one way

 7   or the other, but I don't remember that clause specifically.

 8                         (Whereupon, Exhibit 15 was marked for

 9                          identification.)

10   BY MS. STEELE:

11       Q.   All right.  Next, Mr. Forbes, I want to show you what

12   I've marked as Exhibit Number 15, and we will return to the

13   settlement agreements themselves, but I want to work through

14   another issue first.  So Exhibit 15, and I'll share my screen,

15   this is the U.S. Trustee's Notice of Proposed Agenda that was

16   filed in advance of that January 9th -- or, I'm sorry, January

17   14th hearing, I believe.  Right.  And it was filed as docket

18   number 152.  Have you seen this document before today?

19       A.   I don't believe so.

20       Q.   Okay.  Would you like a moment to read through it?

21       A.   Why don't you just direct me to what you want to ask

22   me about.  I don't need to read it.

23       Q.   So you don't know whether you, on behalf of Jackson

24   Walker, have ever seen this document before?

25       A.   I don't believe I've ever seen that document before.
```

USTP (Common) Ex. 19
Page 23 of 272

1      Q.   Do you know whether anyone in Jackson Walker has seen

2   this document before?

3      **A.   I don't know.**

4      Q.   Do you know whether counsel -- or I'll strike that.

5   So the agenda included in the agenda item number one, and then

6   in the second -- that addressed Judge Moses' concern about

7   whether an alternative exists that would best serve the

8   interests of the affected parties while preserving the merits

9   of the vacatur motions.  Had you seen Judge Moses' order,

10  docket number 140, before today?

11     **A.   I don't believe so.  Is this part of the topics?**

12     Q.   Yes.  This is about --

13     **A.   Which one?**

14     Q.   -- the settlement motions.  So I'm going to ask you,

15  Mr. Forbes, so, notwithstanding any -- so the U.S. Trustee did

16  provide some proposed settlement or alternative settlement

17  language to the parties.  And that language is included here on

18  Page 3 of Exhibit 15.  And you have never seen this language

19  before today; is that correct?

20     **A.   I don't believe so.**

21     Q.   Okay.  So Jackson Walker has never seen this language

22  before today?

23     **A.   It's possible that others at Jackson Walker have seen**

24  **this language before today, but I don't recall seeing it before**

25  **today.**

USTP (Common) Ex. 19
Page 24 of 272

1    Q.    So the proposed language for the U.S. Trustee states,

2   "notwithstanding any contrary provision in this order or the

3   settlement agreement, the settlement agreement's approval shall

4   not in any way affect any vacatur motion or the settling

5   party's ability to accept or distribute funds the Court may

6   order Jackson Walker LLP to pay as a result of the vacatur

7   your motion."  Do you understand that first sentence, Mr.

8   Forbes?

9        **A.    You've read it correctly.  What should I understand**

10   **about it?**

11       Q.    Okay.  Would -- or does Jackson Walker oppose

12   including such language in any order approving the settlement

13   agreements?

14       **A.    I would answer it this way.  The Trustee is not --**

15   **the U.S. Trustee is not a party to the settlement agreements.**

16   **And so I don't have a position one way or the other.**

17       Q.    So Jackson Walker will not include any proposed

18   alternative language that the U.S. Trustee proposes?

19       **A.    I would have to see the proposal.  We've attempted to**

20   **settle with the U.S. Trustee to no avail to date.**

21       Q.    Okay.  But my specific question, and we are here in

22   the matter, the contested matter, of these 9019s, and this is

23   the proposal right in front of you.  So item number one, again,

24   provides that the agreement shall not in any way affect any

25   vacatur motion.  Are you familiar with the vacatur motions?

USTP (Common) Ex. 19
Page 25 of 272

```
 1        A.    Generally.

 2        Q.    And you understand that those vacatur motions are the

 3   U.S. Trustee's motions, correct?

 4        A.    I understand that.

 5        Q.    Okay.  And does Jackson Walker oppose including

 6   language in an order that states the settlements shall not in

 7   any way affect any vacatur motion?

 8        A.    As I sit here today, I would say yes, but I don't

 9   know what that has to do with our agreements with parties that

10   the U.S. Trustee is not -- you're not a party to our

11   agreements.

12        Q.    Okay.  Do the settlement agreements affect the U.S.

13   Trustee's vacatur motions?

14        A.    I don't believe so.

15        Q.    The sentence goes on to state that the settlement

16   agreements' approval shall not in any way affect the settling

17   party's ability to accept or distribute funds the Court may

18   order Jackson Walker to pay as a result of the vacatur notion.

19   Does Jackson Walker oppose including that language in any order

20   approving the settlement agreement?

21        A.    As I sit here today, I'll say yes.  That's not what

22   you were reading from there.  You're not a party to our

23   settlement agreements.

24        Q.    So, Mr. Forbes, do you understand that part of the

25   relief sought in the U.S. Trustee's vacatur motion is complete
```

USTP (Common) Ex. 19
Page 26 of 272

1  disgorgement of all fees paid by the settling entities to

2  Jackson Walker?

3        **A.   I understand that that's the U.S. Trustee's position.**

4        Q.   Okay.  And the settlement agreements, as I understand

5  it, essentially set a cap on the recovery that the settling

6  parties can receive; is that correct?

7        **A.   I believe -- well, I don't really understand your**

8  **question, but we have come to an agreement with the settling**

9  **parties as to the amount they can recover in these cases.**

10       Q.   To include language that the U.S. Trustee proposes,

11  which is to not affect the settling party's ability to accept

12  or distribute funds the Court may order, that does not

13  correlate to these settlement agreements; is that correct?

14       **A.   Well, I think what you're trying to get at is, can**

15  **the U.S. Trustee get disgorgement from Jackson Walker?  And our**

16  **legal position, as you know through briefing, is that it**

17  **cannot.  It doesn't have standing to do so.  That's my answer.**

18  **I don't think -- I think you're mixing apples and oranges, and**

19  **you're not a party to these agreements and so --**

20       Q.   Okay.  So Jackson Walker opposes including the U.S.

21  Trustee's alternative language that provides that the

22  settlement agreements shall not in any way affect the vacatur

23  motion or the settling parties' ability to accept or distribute

24  funds the Court may order Jackson Walker to pay as a result of

25  the vacatur motion; is that correct?

USTP (Common) Ex. 19
Page 27 of 272

1          MR. HARDIN:  Object to the form.

2          **THE WITNESS:  You're not a party to our settlement**

3    **agreements.  The U.S. Trustee is not a party to our settlement**

4    **agreements.  So I don't think you are permitted to tell us how**

5    **to settle with other parties.**

6    BY MS. STEELE:

7          Q.   Okay.  And then the proposed language goes on to

8    state, or contemplates, that a provision would be included

9    stating no final fee order shall be entered until the vacatur

10   motion is resolved.  Does Jackson Walker oppose adopting that

11   alternative language in the orders approving settlement

12   agreements?

13         MR. HARDIN:  Object to the form.

14         **THE WITNESS:  I don't know.  I think you're asking**

15   **for a legal conclusion, and you can ask the Court to do what**

16   **you want it to do, and I don't have a position one way or the**

17   **other.**

18   BY MS. STEELE:

19         Q.   So if a -- what if a Plan Administrator is willing to

20   adopt this language?  Does Jackson Walker oppose the Plan

21   Administrator's agreement to adopt such language?

22         MR. HARDIN:  Object to the form.

23         **THE WITNESS:  I'm not going to speculate on a**

24   **hypothetical.**

25   BY MS. STEELE:

USTP (Common) Ex. 19
Page 28 of 272

```
 1        Q.   Mr. Forbes, are you aware that, I believe, three of

 2   the settlement agreements seek final fee orders?

 3        A.   I think I understand what you're talking about, yes.

 4        Q.   Okay.  And so Jackson Walker believes that a final

 5   fee order should be entered once the settlement agreement is

 6   approved in at least three of the cases?

 7             MR. HARDIN:  Object to the form.

 8             THE WITNESS:  As I understand it, I think what you're

 9   trying to get at is there is a provision in certain of the

10   agreements that brings up the vacatur word and, as a non-

11   bankruptcy practitioner, my understanding is those settlements

12   were concluded prior to the time that Judge Moses removed the

13   reference in the cases, and so the legal issues changed in some

14   manner.  And so in subsequent agreements after that order that

15   provision is not included.

16   BY MS. STEELE:

17        Q.   How did the legal issues change, in Jackson Walker's

18   view, when Judge Moses withdrew the reference?

19        A.   You're asking me for a legal conclusion and --

20             MR. HARDIN:  Object to the form.

21             THE WITNESS:  -- attorney-client privilege, and I'm

22   not gonna -- I don't understand it.

23   BY MS. STEELE:

24        Q.   Well, you're telling me the strategy of the

25   settlement agreements changed, and those settlement agreements
```

USTP (Common) Ex. 19
Page 29 of 272

```
 1   are now motions pending before the Court in the idea of

 2   transparency and full disclosure, and so I'm trying to

 3   understand, you know, if the legal basis has changed to request

 4   a final fee order.  That's not correct?

 5        A.    That's not what I said.

 6        Q.    Okay.  All right.  So, Mr. Forbes, sitting here

 7   today, has Jackson Walker identified any possible alternative

 8   language that would best serve the interests of the affected

 9   parties while preserving the merits of the vacatur motion?

10             MR. HARDIN:  Object to the form.

11             THE WITNESS:  I don't understand your question.

12   BY MS. STEELE:

13        Q.    Has Jackson Walker taken another look at the proposed

14   orders approving settlement agreements and identified whether

15   there's any alternative language?

16             MR. HARDIN:  Object to the form.

17             THE WITNESS:  Not that I know of.

18   BY MS. STEELE:

19        Q.    There is no alternative language that Jackson Walker

20   will present to the Court; is that correct?

21             MR. HARDIN:  Object to the form.  I don't know how

22   you get by the fact that you're asking him attorney-client

23   questions and decisions made by his lawyers.  I'm trying not to

24   instruct him not to answer, but you're making it very difficult

25   for him.
```

USTP (Common) Ex. 19
Page 30 of 272

```
 1              MS. STEELE:  So, Mr. Hardin, one of the evidentiary
 2   matters for the hearing in March is whether there are
 3   alternatives that exist.  And I'm asking Mr. Forbes whether
 4   there are alternatives to the language that exists today.
 5   That's not a legal question.  So this is --
 6              MR. HARDIN:  I'm just not familiar with the process
 7   in which a witness is asked to speculate as to the legal
 8   conclusions and the legal strategy that his firm isn't
 9   following.  I don't understand how you can do this.  It feels
10   like you parachuted it into another world.
11   BY MS. STEELE:
12      Q.   Okay.  Mr. Forbes, does Jackson Walker intend to
13   present any alternative language at the trial starting on March
14   17th?
15      A.   I don't have an answer to that question.  You're
16   asking me to speculate on what we're going to present at trial.
17   I don't have it.
18      Q.   Mr. Forbes, are you aware whether any of the settling
19   parties have proposed alternative language to Jackson Walker?
20      A.   I don't know of any.
21      Q.   Are you aware that Mr. Green alerted the parties at
22   the deposition of 4E and Basic Energy last week that his client
23   was proposing alternative language to Jackson Walker?
24      A.   I have not reviewed his deposition.  I didn't attend
25   it.  I have no idea what you're talking about.
```

USTP (Common) Ex. 19
Page 31 of 272

 1      Q.   Has Jackson Walker reviewed the proposed language

 2   from Mr. Green's clients?

 3      **A.   I have not.**

 4      Q.   Has Jackson Walker reviewed it?

 5      **A.   I don't know.**

 6      Q.   Who at Jackson Walker would know whether alternative

 7   language has been proposed by the settling parties?

 8      **A.   I don't know.**

 9      Q.   So when a plan administrator has -- wants to discuss

10   the settlement motion, who does that settling party discuss

11   that matter with at Jackson Walker?

12      **A.   You'll have to ask them.  I don't know.**

13      Q.   Do they discuss it with Mr. Boland?

14      **A.   I don't know.**

15      Q.   Has Mr. Boland's firm brought any alternative

16   language to Jackson Walker to discuss?

17           MR. HARDIN:  Object on attorney-client.  This gets

18   more ludicrous as you continue.

19   BY MS. STEELE:

20      Q.   All right.  So, Mr. Forbes, we're going to go back to

21   the settlement agreements.  We talked about, Exhibit 3, which

22   was the 4E 9019 motion, and I just want to ask you some -- I'm

23   going to ask you questions.  I'm sorry, they're going to get

24   repetitive, but we have nine different ones to go through, and

25   each of them are private-entry hearings, so we will be going

USTP (Common) Ex. 19
Page 32 of 272

1   through each of them, I think, pretty quickly, but I want to

2   confirm my understanding with you about each of these

3   settlement agreements.

4           So Exhibit 3, that is the 4E settlement agreement.

5   Mr. Forbes, with regard to the 4E settlement agreement, does

6   Jackson Walker consider all of the terms and conditions to be

7   integral to the agreement?

8       **A.   Yes.**

9       Q.   And none of the terms are severable?

10      **A.   I didn't catch the last part.  You'd say severable?**

11      Q.   Correct.

12      **A.   Not that I'm aware of.**

13                          (Whereupon, Exhibit 4 was marked for

14                           identification.)

15      Q.   And then with regard to, I'm going to show you what

16   I've marked as Exhibit 4.  This is the 9019 settlement motion

17   for Basic Energy Services.  Have you reviewed this settlement

18   motion and the attached agreement, before today?

19      **A.   I don't believe I've reviewed the motion, but I**

20   **believe I've reviewed the settlement.**

21      Q.   Does Jackson Walker consider all of the terms and

22   conditions in the Basic Energy Settlement Agreement to be

23   integral to the agreement, i.e., non-severable?

24           MR. HARDIN:  Object to form.

25      **THE WITNESS:  I would -- yes, I would agree that**

USTP (Common) Ex. 19
Page 33 of 272

1    **terms of the settlement agreements are all integral to the**

2    **settlement agreements.**

3    BY MS. STEELE:

4        Q.    And there's no part of the agreement that is not

5    important to Jackson Walker?

6        **A.    Not that I'm aware of as I sit here today.**

7        Q.    Mr. Forbes, if the Court determines that any

8    provision of the Basic Energy Agreement impacts its ability to

9    require the full return of fees and other monetary sanctions as

10   void, is it Jackson Walker's position that the agreement is

11   terminated?

12       **A.    You're asking me to speculate on something.  I don't**

13   **know.**

14                         (Whereupon, Exhibit 5 was marked for

15                          identification.)

16   BY MS. STEELE:

17       Q.    All right.  The next one I'm gonna show you is

18   Exhibit 5.  This is the settlement motion and agreement that

19   were filed on behalf of IEH and Auto Plus.  Have you reviewed

20   this settlement motion and agreement before today?

21       **A.    I believe I reviewed the settlement agreement for the**

22   **Auto Plus case.**

23       Q.    Does Jackson Walker consider all of the terms and

24   conditions within the settlement agreement to be integral to

25   the agreement, i.e., non-severable?

USTP (Common) Ex. 19
Page 34 of 272

```
 1              MR. HARDIN:  Object to the form.

 2              THE WITNESS:  Jackson Walker believes all

 3    (indiscernible) essential to the settlement agreement.

 4    BY MS. STEELE:

 5        Q.    I think you dropped out there a little bit, Mr.

 6    Forbes.  If you could please restate.

 7        A.    I'm sorry.  Jackson Walker, I think, subject to my

 8    counsel's objection, Jackson Walker believes the terms of the

 9    settlements agreement -- the settlement agreement, this one,

10    and all of them were essential to the settlement agreements.

11        Q.    And if the Court says that all of the fees have to be

12    returned in the IEH matter, is it Jackson Walker -- I'm sorry?

13              MR. HARDIN:  Object to the form.

14              MS. STEELE:  I hadn't even finished the question, Mr.

15    Hardin.

16              MR. HARDIN:  I don't see how you could ever save that

17    question.

18              MS. STEELE:  So, Mr. Hardin, Mr. Forbes is here as

19    the corporate representative of Jackson Walker.  He should know

20    their position about these motions and the agreements and what

21    they mean.

22              MR. HARDIN:  I still don't understand how you can

23    just put the lawyer on the stand and ask him what the legal

24    conclusions and stuff of other people who drafted things are.

25              MS. STEELE:  So --
```

USTP (Common) Ex. 19
Page 35 of 272

```
 1                    (Whereupon, Exhibit 6 was marked for

 2                    identification.)

 3   BY MS. STEELE:

 4        Q.   All right.  Let's move on.  Mr. Forbes, I'm going to

 5   show you what has been marked as Exhibit 6.  This is the

 6   Brilliant Energy LLC matter.  Have you reviewed this motion and

 7   agreement before today?

 8        A.   (Indiscernible) the settlement agreement.

 9        Q.   And Mr. Forbes --

10             COURT REPORTER:  Would the witness, please, repeat

11   what he just said?  I was unable to hear him.

12             THE WITNESS:  Sorry.  I have reviewed the settlement

13   agreement.

14   BY MS. STEELE:

15        Q.   You were breaking up a little bit, Mr. Forbes.  I

16   don't know if it's possible to get closer to a microphone to

17   make life easier for us.

18        A.   I'm sorry.  I'll try to speak louder.

19        Q.   Thank you.  All right.  With regard to the Brilliant

20   settlement agreement, does Jackson Walker consider all of the

21   terms and conditions to be integral to the agreement?

22        A.   Yes.

23        Q.   And none of the terms are severable?

24             THE WITNESS:  I don't know.

25             MR. HARDIN:  Object to the form.
```

USTP (Common) Ex. 19
Page 36 of 272

1        **THE WITNESS:  I'm not aware of any.**

2                          (Whereupon, Exhibit 7 was marked for

3                          identification.)

4   BY MS. STEELE:

5        Q.    All right.  Next, I'm going to show you what I've

6   marked as Exhibit Number 7, Mr. Forbes.  This is the Sungard AS

7   New Holdings LLC settlement motion and attached agreement.

8   Have you reviewed this motion and agreement before today?

9        **A.    I reviewed the settlement agreement.**

10       Q.    Does Jackson Walker consider all of the terms and

11  conditions in the Sungard settlement agreement to be integral

12  to the agreement?

13       **A.    Yes.**

14           MR. HARDIN:  Object to the form.  What are you

15  looking at?

16           MS. STEELE:  And Mr. Hardin, what are you -- what

17  form objection are you identifying?

18           MR. HARDIN:  You once again are asking him for legal

19  conclusions that I object to the form rather than instructing

20  him not to understand -- not answer.  Every one of your

21  questions asked him to speculate about what other people meant.

22           MS. STEELE:  So I'm not going to argue with you

23  today, Mr. Hardin.  But I expect the witness will answer to the

24  best of his ability as he is prepared for today to testify on

25  behalf of Jackson Walker.

USTP (Common) Ex. 19
Page 37 of 272

 1              MR. HARDIN:  (Cross talk) you had an opportunity to

 2    review the deposition previously that we conducted and the

 3    series of instructions that your counsel repeatedly gave not to

 4    answer?

 5              MS. STEELE:  I don't know how that's relevant today.

 6    BY MS. STEELE:

 7        Q.   All right.  So is the intention, Mr. Forbes, in all

 8    these agreements, that all of the terms are integral?

 9        **A.   Yes.  I mean, generally, when parties enter a**

10    **settlement agreement, the words matter.**

11                            (Whereupon, Exhibit 8 was marked for

12                            identification.)

13    BY MS. STEELE:

14        Q.   And you would say that's true for all of the

15    settlement agreements, so, for example, Exhibit 8, which is the

16    Stage Stores settlement agreement and motion?

17        **A.   I would say -- you keep on asking about the motions.**

18    **I didn't read the motions.  We're not a party to the motions.**

19    **But I've read the settlement agreements, and the words in the**

20    **settlement agreements were essential to us reaching an**

21    **agreement with the counterparty to the settlement agreements.**

22                            (Whereupon, Exhibit 9 was marked for

23                            identification.)

24    BY MS. STEELE:

25        Q.   Okay.  And then for Exhibit 9, you would say the

USTP (Common) Ex. 19
Page 38 of 272

1  same, which is the -- I'm sorry -- Exhibit 9 is the Strike

2  settlement agreements.  Would you say that -- the same answer

3  for Strike?

4      **A.   My answer to all of the settle -- I have reviewed the**

5  **settlement agreements, and I believe that the words in the**

6  **settlement agreements are essential to the parties who reached**

7  **the agreement on them.**

8      Q.   All right, Mr. Forbes, I'm going to switch topics

9  here.  All right.  Switch examination areas here.  So you did

10 attend the December 9th hearing when Mr. Boland represented

11 Jackson Walker; is that correct?

12     **A.   Yes.  Mr. Boland, among others.**

13                         (Whereupon, Exhibit 12 was marked for

14                          identification.)

15 BY MS. STEELE:

16     Q.   So I'm going to show you what I've marked as Exhibit

17 12, but I want to ask you some preliminary questions first.

18 Isn't it true that Jackson -- I'm sorry -- Jason Boland of

19 Norton Rose is Jackson Walker's counsel?

20     **A.   One of them.**

21     Q.   Isn't it true that Mr. Boland speaks for Jackson

22 Walker when making statements in pleadings?

23     **A.   He's representing us in litigation.**

24     Q.   So is that true?

25     **A.   I don't like the way you said it.  I would say that**

USTP (Common) Ex. 19
Page 39 of 272

1   he's our counsel.

2        Q.    And when he makes statements on behalf of Jackson

3   Walker, those statements reflect Jackson Walker's positions?

4             MR. HARDIN:  Object to the form.

5             THE WITNESS:  He represents us in court.

6   BY MS. STEELE:

7        Q.    And to that question, Mr. Boland does speak for

8   Jackson Walker when making statements in court?

9        A.    He's arguing on our behalf.

10       Q.    So, Mr. Forbes, I'm going to show you what's been

11  marked as Exhibit 9 -- I'm sorry -- Exhibit 12.  It's a

12  transcript of the December 9th hearing that you attended.  And

13  it's just an excerpt.  It's not the whole thing.  Sorry to

14  disappoint you if you wanted to see the whole thing.  But let

15  me show you my screen and I'll share this with you.

16            Have you reviewed the December 9th transcript before

17  today, Mr. Forbes?

18       A.    I've probably reviewed parts of it.

19       Q.    And again, this has been marked as Exhibit 12.  And

20  you agree with me that Mr. Boland appeared on behalf of Jackson

21  Walker at this hearing?

22       A.    I saw him there.

23       Q.    The transcript on Page 3 of Exhibit 12 has some

24  statements by Mr. Boland.  And I was going to read these to

25  you, unless you would just like to read them silently and let

USTP (Common) Ex. 19
Page 40 of 272

1   me know when you're done.

2       **A.    I'm familiar with this part of the transcript.**

3       Q.    And so here, Mr. Boland states that "from our

4   perspective," and that means Jackson Walker's perspective,

5   correct?

6       **A.    He's making arguments in front of Judge Rodriguez.**

7       Q.    Okay.  And when he says "our perspective," that's

8   Jackson Walker's perspective, correct?

9       **A.    I would assume he's talking about his client when**

10  **he's making arguments on our behalf.**

11      Q.    And it states, "We've settled with the estates.  If

12  we offer to pay $50 back, that's the amount that they would be

13  owed, and they would release the ability to recover $51 back."

14  Do you see that statement?

15      **A.    I see it.**

16      Q.    Is there -- is anything inaccurate or wrong about

17  that statement?

18      **A.    I agree with it.**

19      Q.    All right.  And then it goes on, starting on Line 10.

20  Mr. Boland states, "They could pursue non-monetary relief, but

21  from a monetary standpoint, Your Honor, we believe we've

22  settled with the party of interest that has standing, that owns

23  the client, that owns the right to receive the monies.  And so

24  from our -- from Jackson Walker's perspective, that issue would

25  be settled on the monetary perspective."  Do you see that?

USTP (Common) Ex. 19
Page 41 of 272

1        A.   I see that.

2        Q.   And you agree with the statement?

3             MR. HARDIN:  I object to this entire line of

4    questioning.  What in the world does his reaction to what a

5    lawyer in court says have to do with the fourth notices that

6    you put down here?

7             MS. STEELE:  So again, Mr. Hardin, this goes to the

8    settlement agreements themselves and what they mean and what

9    the relief the Court is being asked to enter.  And so we're

10   trying to understand what these mean.

11   BY MS. STEELE:

12       Q.   So I want to confirm that these are statements of

13   Jackson Walker's counsel.  Is that correct, Mr. Forbes?

14       **A.   You're reading a transcript when our outside lawyer**

15   **is making arguments to Judge Rodriguez, and I was sitting in**

16   **the gallery for that hearing.**

17       Q.   So let's move on to Page 4 of Exhibit 12, starting at

18   Line 3.  Mr. Boland states, "It's clear the estates are

19   providing a release, and they're releasing the ability to

20   recover additional monies."  Those are statements of counsel on

21   behalf of Jackson Walker?

22       **A.   I'm sorry.  There was a noise outside.  Can you**

23   **repeat the question?**

24       Q.   So these Lines 3 through 5 that I just read, those

25   are statements of counsel on behalf of Jackson Walker?

USTP (Common) Ex. 19
Page 42 of 272

1    A.    This is a continuation of our outside counsel making

2    arguments to Judge Rodriguez at the December 9th hearing that I

3    attended.

4    Q.    And you agree with those statements of counsel?

5    A.    Let me read it.  I think I agree with that it's our

6    position, which is we believe that these Plan Agents that we've

7    settled with have standing to settle their dispute with us.  We

8    do not believe that the U.S. Trustee has standing to get money,

9    this same money, from us.  So if that was what Mr. Boland was

10   trying to convey, and I think it was, I agree with it.

11                        (Whereupon, Exhibit 13 was marked for

12                            identification.)

13   BY MS. STEELE:

14   Q.    All right.  I want to show you Exhibit Number 13, Mr.

15   Forbes.  Have you seen this document before?  This is ECF 138.

16   It was filed on December 16, 2025, in response to the December

17   9th status conference.  Oh, I'm so sorry.  I am not sharing

18   this.  So this again has been marked as Exhibit Number 13.

19   A.    Can you go to the top?

20   Q.    Sure.  It is Document Number 138.

21   A.    I have not reviewed this.

22   Q.    Did Jackson Walker review this document before it was

23   filed with the Court?

24   A.    I don't know.

25                        (Whereupon, Exhibit 14 was marked for

USTP (Common) Ex. 19
Page 43 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                        Page 43

```
 1                        identification.)

 2   BY MS. STEELE:

 3        Q.   Who at Jackson Walker -- okay.  Mr. Forbes, I'm gonna

 4   show you what I've marked as Exhibit Number 14.  This is

 5   Jackson Walker's omnibus reply to the U.S. Trustee's objections

 6   to motions for entry of order approving compromise or

 7   controversy under Rule 9019.  It was filed as document number

 8   179 on January 29, '26.  Have you seen this document before

 9   today?

10        A.   No.

11        Q.   Did you review any of the pleadings filed by Jackson

12   Walker with regard to the 9019 matters before today?

13        A.   It's possible that I did.  I don't remember any

14   specifically.

15        Q.   Do you know whether Jackson Walker authorized this

16   document to be filed with the Court?

17        A.   I would assume we did.  I don't know.

18        Q.   Who would know at Jackson Walker whether this was

19   authorized to be filed with the Court?

20        A.   I don't know.

21        Q.   Is there a point person at Jackson Walker who

22   approves filings on behalf of the entity?

23        A.   I don't know the answer to that question.

24        Q.   All right.  Mr. Forbes, I'm going to move along to

25   our topic number four, which was with regard to Jackson
```

USTP (Common) Ex. 19
Page 44 of 272

1  Walker's ability to satisfy the monetary relief sought by the

2  U.S. Trustee in connection with the vacatur motions.  Are you

3  familiar with that topic that we identified?

4       **A.    I'm familiar with topic four.**

5       Q.    Okay.  What does Jackson Walker understand that it

6  may have to return if all the fees and expenses are required to

7  be repaid?

8            MR. HARDIN:  Object to the form.

9            **THE WITNESS:  I don't understand that question.  You**

10 **mean with regard to these settlement agreements or with regard**

11 **to the U.S. Trustee's lawsuit against us?**

12 BY MS. STEELE:

13      Q.    So let me restate the question.  So with regard to

14 the vacatur motions, what is the amount of the fees and

15 expenses that Jackson Walker understands would have to be

16 returned if the U.S. Trustee is successful?

17           MR. HARDIN:  Object to the form.

18           **THE WITNESS:  I don't know.  That's not what I viewed**

19 **that topic as, but I don't know the answer to your question.**

20 BY MS. STEELE:

21      Q.    Mr. Forbes, are you a member of the management

22 committee at Jackson Walker?

23      **A.    I was elected last weekend for another two-year term.**

24      Q.    And as a member of the management committee, are you

25 familiar with the financial --

USTP (Common) Ex. 19
Page 45 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                                    Page 45

1      A.   So, yes.

2      Q.   Okay.  So, as a member of that management committee,

3   are you familiar --

4      A.   You broke up for a second.

5      Q.   I think, Mr. Forbes, you're frozen or moving in a

6   delayed fashion.

7      A.   Why don't you -- we had a -- we got a message that

8   said unstable Internet.  If you want to start again.  Can you

9   hear us now?

10     Q.   Okay.  So, Mr. Forbes, I just want to make sure we

11  have the complete (indiscernible).  So you are a member of the

12  management committee, correct?

13     A.   Yes.

14     Q.   And you've been renewed for another two-year term?

15     A.   Yes.

16     Q.   I think we're still having some connectivity issues

17  here.

18          MR. HARDIN:  You're frozen.  I'm sorry.

19          MS. STEELE:  I'm frozen?  I think that Mr. Forbes --

20  especially, the video quality is kind of degraded, too.  Why

21  don't we take about a five-minute break and maybe -- I don't

22  know if you want to get an IT person have

23          MS. HARDIN:  I can do that.

24          MS. STEELE:  Let's take about a five-minute break.

25  Let's come back at 10:41, please.

USTP (Common) Ex. 19
Page 46 of 272

```
 1              COURT REPORTER:  The time is 10:37 a.m.  Central

 2   Standard Time.  And we are off the record.

 3              (Whereupon, a recess occurred.)

 4              COURT REPORTER:  Very well.  I'll take us back on.

 5   The time is 10:44 a.m. Central Standard Time.  And we are back

 6   on the record.

 7                       EXAMINATION (CONT'D)

 8   BY MS. STEELE:

 9       Q.   So, Mr. Forbes, we were talking about the ability to

10   pay, topic number four, and I'll state a new question.  So, Mr.

11   Forbes, if all of the fees and expenses were ordered to be

12   returned, is there any dispute that that amount would be a

13   little more than $20 million?

14              MR. HARDIN:  Object to the form.

15              THE WITNESS:  I don't know, but that sounds in the

16   ballpark.  And you're talking about all the fees that the U.S.

17   Trustee is seeking to recover?

18   BY MS. STEELE:

19       Q.   Correct.

20       A.   That sounds in the ballpark.

21       Q.   Has Jackson Walker inquired of the settling parties

22   the amount of attorneys' fees and expenses they've incurred as

23   a result of this litigation?

24              MR. HARDIN:  Object to the form.

25              THE WITNESS:  I don't believe so.  You mean the
```

USTP (Common) Ex. 19
Page 47 of 272

1  people that we settled with, how much money they have spent?

2  BY MS. STEELE:

3      Q.   Right.

4      A.   I don't think so, but I don't know.

5      Q.   Who would know?

6           MR. HARDIN:  Object to the form.

7           THE WITNESS:  I don't know.

8  BY MS. STEELE:

9      Q.   Since the filing of the vacatur motion, so the Rule

10 60 motions, has Jackson Walker set aside any earnings to

11 satisfy any potential judgments?

12     A.   No.

13     Q.   And is that because Jackson Walker believes it could

14 pay any such judgment in the ordinary course?

15     A.   You're asking me to speculate but I'll ask -- I'll

16 answer it in a simple manner.  We're a partnership and

17 (indiscernible).

18     Q.   Mr. Forbes, I'm so sorry but you froze there.

19     A.   Can you hear me now?

20     Q.   Yes.  The video distorted again too.

21     A.   My answer to the question is the way our business

22 entity is set up, we have to -- we don't hold reserves.  It's

23 not like a corporation.

24     Q.   And so does Jackson Walker believe it could pay a 20

25 plus million dollar judgment in the ordinary course?

USTP (Common) Ex. 19
Page 48 of 272

1       A.    I'm not going to speculate on that.

2       Q.    Who ultimately would be responsible for paying a

3  judgment at Jackson Walker?

4             MR. HARDIN:   Object to form.   I'm going to instruct

5  you not to answer.   I think that's contrary to what y'all's

6  agreement was here.   If you want to know if Jackson Walker

7  feels that it is capable of satisfying a judgment entered by a

8  Court, the answer would be yes.   After that, we're not going to

9  answer any questions about Jackson Walker's finances or who

10  makes those decisions or anything else related.

11                        (Whereupon, Exhibit 16 was marked for

12                         identification.)

13  BY MS. STEELE:

14      Q.    Mr. Forbes, I just want to show you what I've marked

15  as Exhibit Number 16.   Are you aware of a Texas Lawbook article

16  regarding financial aspects of various firms that was published

17  on May 20, 2025?

18      A.    I have not seen that one.

19      Q.    Do you know what the Texas Lawbook is?

20      A.    I'm familiar with the Texas Lawbook.

21      Q.    And so the headline here states "Lawbook 50: Eight

22  Firms, All Texas, All The Time, All Profitable."   And this

23  article goes on to interview Mr. Wade Cooper.   Do you know who

24  Wade Cooper is?

25      A.    Yes.

USTP (Common) Ex. 19
Page 49 of 272

1        Q.    And who is he?

2        **A.    He's the managing partner of Jackson Walker.**

3        Q.    And I'll let you know that the Texas Lawbook

4   interviewed Mr. Cooper for this article.  So I'll read you what

5   he stated or what was stated about -- here it says, "The Texas-

6   only eight are led by Jackson Walker, a Dallas-based full-

7   service corporate law firm that ranks number three overall in

8   the 2024 Texas Lawbook 50 rankings by Texas revenue and number

9   one in Texas headcount with a full-time equivalent of 484

10  attorneys."  To your understanding, to Jackson Walker's

11  understanding is that -- are those statements true or correct

12  as of May 2025?

13             MR. HARDIN:  I'm going to instruct him not to answer

14  any questions about the finances of Jackson Walker.  That

15  article speaks for itself.  I have no idea whether it's

16  accurate one way or the other.  In all due respect, it's none

17  of your business.

18  BY MS. STEELE:

19       Q.    Okay.  And so, Mr. Forbes, do you know whether Texas

20  Lawbook is a public news source?

21       **A.    I'm familiar with the Texas Lawbook.**

22       Q.    And do you agree that this is publicly available

23  information?

24       **A.    I believe that people subscribe to the Texas Lawbook**

25  **and can read the story (indiscernible) answer your questions.**

USTP (Common) Ex. 19
Page 50 of 272

```
 1        Q.   And I'll represent to you that I found this on the

 2   Internet.  So do you disagree that this is public?

 3        A.   I have no reason to disagree with that statement.

 4        Q.   I'm sorry?

 5        A.   I said I have no reason to disagree with your

 6   statement that you can find us on the Internet.

 7        Q.   Okay.  And so do you agree that this is public

 8   information, that Jackson Walker was ranked by the Texas

 9   Lawbook number three in revenue and number one in Texas

10   headcount?

11             MR. HARDIN:  Object as speculative and to the form.

12   Excuse me.

13             THE WITNESS:  I agree that this is a story that the

14   Texas Lawbook has posted.

15   BY MS. STEELE:

16        Q.   And does Jackson Walker have any basis to believe

17   that the facts reported in this article are not correct?

18        A.   I haven't --

19             MR. HARDIN:  Object to the form.

20             THE WITNESS:  I haven't read the article.  I don't

21   know.

22   BY MS. STEELE:

23        Q.   Okay.  Would you like to take a few minutes?  I can

24   scroll you through and let you read it.

25             MR. HARDIN:  No.
```

USTP (Common) Ex. 19
Page 51 of 272

```
 1   BY MS. STEELE:

 2        Q.   Mr. Forbes?

 3             MR. HARDIN:  I'm saying as his lawyer we're not gonna

 4   take time to read this article.

 5   BY MS. STEELE:

 6        Q.   Do you have any reason to believe that Wade Cooper

 7   would not give correct information to the Texas Lawbook?

 8             MR. HARDIN:  Object to the form.

 9             THE WITNESS:  I find Wade to be a very truthful and

10   honest person.

11   BY MS. STEELE:

12        Q.   And this article states, Jackson Walker managing

13   partner, Wade Cooper, said he also regularly gets calls from

14   out-of-state firms seeking a merger, but he lets them know that

15   the firm has no interest.  And there's a quote from him

16   stating, "We like doing it the hard way, adding one lawyer at a

17   time," said Cooper, who noted the firm has added 97 lawyers

18   over the past three years, including 25 in 2024.  Hours are up,

19   rates are up, work is up.  Any reason to doubt the accuracy of

20   Mr. Cooper's Texas Lawbook (cross talk)?

21             MR. HARDIN:  I not only object to the form.  I'm

22   going to instruct him not to answer.  It's my understanding

23   that in the meet-and-confer, y'all specifically agreed not to

24   do this kind of thing.  I wasn't at the meeting first, so if

25   you on the record, want to, as an officer of the Court, want to
```

USTP (Common) Ex. 19
Page 52 of 272

1  represent to the judge that you did not make that agreement and

2  you did not say that, then we'll talk further about it.  But my

3  understanding is you're doing exactly what you agreed not to do

4  in the meet-and-confer.

5         MS. STEELE:  So, Mr. Hardin, this is not privileged

6  information.  This is public information that's in a public

7  record.

8         MR. HARDIN:  I'm not claiming that's privileged

9  information.  I am claiming that you had an agreement not to do

10 this.  We have -- you have every right to know whether or not

11 we think we are capable of making the judgment, and indeed --

12 well, here's part of the problem with what you're doing.  You

13 are arguing in the face of exactly our position.  We take the

14 position we're able to satisfy the judgment, and that's really

15 all you need to know.

16        And you're now putting me on an article and want to

17 ask him about something that proves up that point from the

18 article.  So they should not be subject to something you agreed

19 not to do in this deposition.  If you want to take this up with

20 the judge, you can.  I'm instructing him not to answer any more

21 questions about it.

22 BY MS. STEELE:

23    Q.   So, Mr. Forbes, does Jackson Walker have the ability

24 to pay a 20-plus million dollar judgment?

25        MR. HARDIN:  I'm going --

USTP (Common) Ex. 19
Page 53 of 272

1              THE WITNESS:  Well, I object to form.

2              MR. HARDIN:  I think that's the only thing.  But I

3    think you need to go ahead on that particular question.  Object

4    to the form, but go ahead.

5              **THE WITNESS:  Because you're asking me to speculate.**

6    **I would assume that we would be able to cover a judgment of 20**

7    **million dollars.**

8              MS. STEELE:  If I could take about five minutes and

9    then I think we can wrap up today.  So if you wouldn't mind,

10   I'd just like to go for a five-minute break and then come back

11   at 11 o'clock, I guess.

12             MR. HARDIN:  Yes.

13             MS. STEELE:  All right.

14             MR. HARDIN:  Thank you.

15             COURT REPORTER:  The time is 10:54 a.m.  Central

16   Standard Time.  And we are off the record.

17             (Whereupon, a recess occurred.)

18             COURT REPORTER:  The time is 11 a.m. Central Standard

19   Time, and we are back on the record.

20                       EXAMINATION (CONT'D)

21   BY MS. STEELE:

22      Q.   Mr. Forbes, are you ready to proceed?

23      **A.   Yes.**

24      Q.   So, Mr. Forbes, based on your understanding of

25   Jackson Walker's revenue and profits, Jackson Walker could pay

USTP (Common) Ex. 19
Page 54 of 272

 1  a $20 million judgment or so in a reasonable amount of time?

 2          MR. HARDIN:  I'm sorry, Laura.  I had trouble with

 3  the connection.  Could you repeat your question, please?

 4  BY MS. STEELE:

 5      Q.   Sure.  So, Mr. Forbes -- can you hear me okay, Mr.

 6  Forbes?

 7      **A.   I can now.**

 8      Q.   Okay.  Mr. Forbes, based on your understanding of

 9  Jackson Walker's revenue and profit, Jackson Walker could pay

10  an approximately $20 million judgment within a reasonable

11  amount of time; is that correct?

12          MR. HARDIN:  Object to the form.

13          **THE WITNESS:  I mean, it's calling for speculation.**

14  **I don't know when the judgment would be, but typically, do I --**

15  **I think that's something that we could cover.**

16          MS. STEELE:  Thank you.  Those are all my questions

17  for this afternoon.  Does anyone else have any questions?  I

18  pass the witness.

19          MR. HARDIN:  I have none.

20          MS. STEELE:  Hearing nothing else, we are concluded.

21  Thank you, Mr. Forbes, for your appearance today.  That's it.

22  Thank you so much.

23          **THE WITNESS:  We would like to read and sign.**

24          MS. STEELE:  Yes.  So just to clarify for the

25  reporter, Mr. Forbes is asking to read and sign, so will you

USTP (Common) Ex. 19
Page 55 of 272

W. Ross Forbes                        30(b)(6)
Proceedings on 02/17/2026                                    Page 55

1    make note of that?

2              COURT REPORTER:  Understood.  The time is 11:02 a.m.

3    Central Standard Time, and we are off the record.

4              (Whereupon, the proceeding concluded at 11:02 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

USTP (Common) Ex. 19
Page 56 of 272

```
 1                        J U R A T

 2          I declare under penalty of perjury that the

 3   foregoing is true and correct:

 4                  (  ) without corrections, or

 5                  (  ) with the attached corrections.

 6

 7   Subscribed at _____ (City),

 8   _____ (State), this _____ day of

 9   _____, 20_____.

10

11                  _____

12                        W. Ross Forbes

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USTP (Common) Ex. 19
Page 57 of 272

```
 1                    E R R A T A   S H E E T

 2    PAGE_____ LINE_____  CHANGE_____

 3    _____

 4    REASON_____

 5    PAGE_____ LINE_____  CHANGE_____

 6    _____

 7    REASON_____

 8    PAGE_____ LINE_____  CHANGE_____

 9    _____

10    REASON_____

11    PAGE_____ LINE_____  CHANGE_____

12    _____

13    REASON_____

14    PAGE_____ LINE_____  CHANGE_____

15    _____

16    REASON_____

17    PAGE_____ LINE_____  CHANGE_____

18    _____

19    REASON_____

20

21

22        _____    _____

23             W. ROSS FORBES                  DATE

24

25
```

USTP (Common) Ex. 19
Page 58 of 272

```
 1   STATE OF VIRGINIA      )

 2   COUNTY OF MONTGOMERY  ) ss.

 3

 4         I hereby certify that I have duly sworn the

 5   witness(es) in the foregoing deposition, to testify to the

 6   truth, the whole truth, and nothing but the truth, in the

 7   within-entitled cause; that said deposition was taken at the

 8   time and place herein named; and that the deposition is a true

 9   record of the testimony of the witness(es) as reported by me,

10   and was thereafter transcribed into typewriting by computer.

11         I further certify that I am not interested in the

12   outcome of the said action, not connected with nor related to

13   any of the parties in said action, nor to their respective

14   counsel.

15         IN WITNESS WHEREOF, I have hereunto set my hand this

16   17th day of February, 2026.

17

18   Reading and signing was:

19   ( x ) requested (  ) waived (  ) not requested

20

21   Elizabeth Cantando

22   _____

23   ELIZABETH CANTANDO, CER

24   Notary Public

25   My Commission Expires:  11/30/2029
```

USTP (Common) Ex. 19
Page 59 of 272

W. Ross Forbes
Proceedings on 02/17/2026

30(b)(6)

Index: $20..9th

## Exhibits

**Ex 1 JW Subpoena Notice and Rider 1 22 26** 7:3 13:19,20 14:1,7,12 16:6

**Ex 2 In re Professional Fees Matters, JW's Responses and Objections** 7:4 16:9,12,13

**Ex 3 - 4e 9019 Motion** 7:5 20:1,5 31:21 32:4

**Ex 4 1884 - 9019 Mtn. JW-DavidDunn Basic** 7:6 32:13,16

**Ex 5 97 IEH Motion Agreement and Order** 7:7 33:14,18

**Ex 6 Brilliant 9019 Motion (Dkt. 57)** 7:8 35:1,5

**Ex 7 91 Sungard Settlement Motion** 7:9 36:2,6

**Ex 8 108 Stage Stores 9019** 7:10 37:11,15

**Ex 9 98 Strike** 7:11 37:22,25 38:1 39:11

**Ex 12 Dec 9 partial tr** 7:12 38:13,16,17 39:11,19,23 41:17

**Ex 13 138 - JW Response Re GWG** 7:13 42:11,14,18

**Ex 14 179 - JW Obj. to UST 9019 Objs.** 7:14 42:25 43:4

**Ex 15 152 US Trustee Agenda** 7:15 22:8,12,14 23:18

**Ex 16 Lawbook50EightFirms AllTexasAlltheTimeAllProfitable** 7:16 48:11,15

## $

**$20** 46:13 54:1,10

**$50** 40:12

**$51** 40:13

**-**

USTP (Common) Ex. 19
Page 60 of 272

---ooo--- 8:2

## 1

**1** 13:19,20 14:1,7,12 16:6 17:5,6

**10** 17:17,19 40:19

**10:37** 46:1

**10:41** 45:25

**10:44** 46:5

**10:54** 53:15

**11** 53:11,18

**11:02** 55:2,4

**12** 38:13,17 39:11,19,23 41:17

**13** 42:11,14,18

**138** 42:15,20

**14** 42:25 43:4

**140** 23:10

**14th** 22:17

**15** 22:8,12,14 23:18

**152** 22:18

**16** 42:16 48:11,15

**17** 8:1,5

**179** 43:8

**17th** 30:14

## 2

**2** 16:9,12,13

**20** 47:24 48:17 53:6

**20-plus** 52:24

**2000** 11:14

**2000s** 11:15

**2024** 49:8 51:18

**2025** 16:1 42:16 48:17 49:12

**2026** 8:1,5

**21** 20:20

**25** 51:18

**26** 43:8

**29** 43:8

## 3

**3** 20:1,5 23:18 31:21 32:4 39:23 41:18,24

**30(b)(6)** 10:21 11:17

## 4

**4** 32:13,16 41:17

**484** 49:9

**4:23-cv-04787** 8:11

**4E** 9:21 20:6,9,16 21:13 30:22 31:22 32:4,5

## 5

**5** 33:14,18 41:24

**50** 48:21 49:8

## 6

**6** 14:4,12 35:1,5

**60** 47:10

## 7

**7** 14:12 36:2,6

**7029** 8:17

## 8

**8** 37:11,15

## 9

**9** 17:17 37:22,25 38:1 39:11

**9014** 8:17

**9019** 15:2,6 20:7,13 21:20 22:2 31:22 32:16 43:7,12

**9019s** 24:22

**97** 51:17

**9:44** 8:1,4

**9th** 16:1 22:16 38:10 39:12,16 42:2,17

W. Ross Forbes
Proceedings on 02/17/2026

30(b)(6)

Index: a.m...Brian

## A

**a.m.** 8:1,4 46:1,5 53:15,18 55:2,4

**Aaron** 9:20

**abated** 17:20

**abatement** 10:5

**ability** 19:15 24:5 25:17 26:11,23 33:8 36:24 40:13 41:19 44:1 46:9 52:23

**accept** 24:5 25:17 26:11,23

**accuracy** 51:19

**accurate** 49:16

**Action** 13:24

**add** 9:24

**added** 51:17

**adding** 51:16

**additional** 41:20

**addressed** 23:6

**administrator** 13:6 27:19 31:9

**Administrator's** 27:21

**Administrators** 12:19

**adopt** 27:20,21

**adopting** 27:10

**advance** 22:16

**affect** 24:4,24 25:7,12,16 26:11, 22

**affected** 17:12 23:8 29:8

**afternoon** 54:17

**agenda** 22:15 23:5

**Agent** 9:17

**Agents** 42:6

**agree** 8:7,22 32:25 39:20 40:18 41:2 42:4,5,10 49:22 50:7,13

**agreed** 51:23 52:3,18

**agreement** 19:4,10,16 20:12,18, 19,25 21:1,5,12,16,17 24:3,24 25:20 26:8 27:21 28:5 32:4,5,7, 18,22,23 33:4,8,10,18,20,21,24, 25 34:3,9 35:7,8,13,20,21 36:7,8, 21 38:7 48:6

**agreement's** 24:3

**agreements** 17:7,15,19 18:1,7, 13,20,23 19:8 20:15 22:1,3,13 24:13,15 25:9,11,12,23 26:4,13, 19,22 27:3,4,12 28:2,10,14,25 29:14 31:21 32:3 33:1,2 34:10,20 37:8,15,19,20,21 38:2,5,6 41:8 44:10

**agreements'** 25:16

**ahead** 17:4 53:3,4

**alerted** 30:21

**alternative** 23:7,16 24:18 26:21 27:11 29:7,15,19 30:13,19,23 31:6,15

**alternatives** 17:11 30:3,4

**amount** 21:13 26:9 40:12 44:14 46:12,22 54:1,11

**apologize** 13:1

**appearance** 54:21

**appearances** 8:21 9:8

**appeared** 39:20

**appearing** 9:21,24

**apples** 26:18

**approval** 24:3 25:16

**approved** 12:15 28:6

**approves** 43:22

**approving** 24:12 25:20 27:11 29:14 43:6

**approximately** 54:10

**areas** 38:9

**argue** 36:22

**arguing** 39:9 52:13

**arguments** 40:6,10 41:15 42:2

**article** 48:15,23 49:4,15 50:17,20 51:4,12 52:16,18

**aspects** 48:16

**Associates** 8:20 9:5

**assume** 20:8 21:10 40:9 43:17 53:6

**attached** 20:13 32:18 36:7

**attempted** 24:19

**attend** 15:8,11 30:24 38:10

**attended** 16:1 39:12 42:3

**attorney** 10:20

**attorney-client** 28:21 29:22 31:17

**attorneys** 16:7 49:10

**attorneys'** 46:22

**authorized** 43:15,19

**Auto** 9:18 12:19 13:6 33:19,22

**avail** 24:20

**aware** 11:18 12:22 13:14 15:5 18:23 19:2 20:6 28:1 30:18,21 32:12 33:6 36:1 48:15

## B

**back** 18:18 31:20 40:12,13 45:25 46:4,5 53:10,19

**ballpark** 46:16,20

**bankruptcy** 8:16 10:3 28:11

**bar** 19:9 21:11

**Bartel** 13:11

**Bartels** 9:16

**based** 53:24 54:8

**Basic** 9:22 30:22 32:17,22 33:8

**basis** 29:3 50:16

**behalf** 9:4,6,21 12:11 22:23 33:19 36:25 39:2,9,20 40:10 41:21,25 43:22

**believes** 28:4 34:2,8 47:13

**benefits** 17:10

**bit** 34:5 35:15

**Boland** 9:5 11:25 31:13 38:10, 12,18,21 39:7,20,24 40:3,20 41:18 42:9

**Boland's** 12:3 31:15

**Bonds** 9:20

**Brands** 9:21

**break** 45:21,24 53:10

**breaking** 35:15

**Brewster** 9:16

**Brian** 9:2

USTP (Common) Ex. 19
Page 61 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                        Index: briefing..describe

**briefing** 26:16

**Brilliant** 15:14 35:6,19

**brings** 28:10

**broke** 45:4

**brought** 31:15

**Bryan** 9:20

**business** 47:21 49:17

---

**C**

**call** 12:6 13:1

**calling** 19:12 54:13

**calls** 19:17 51:13

**Cantando** 8:5 10:7

**cap** 26:5

**capable** 48:7 52:11

**capacity** 11:7 19:24

**Carissa** 9:16

**carried** 19:4,10,16

**case** 8:10 9:17 15:14,16 20:6 33:22

**cases** 9:18,22 17:24 18:1 26:9 28:6,13

**catch** 32:10

**Central** 8:4 46:1,5 53:15,18 55:3

**change** 28:17

**changed** 28:13,25 29:3

**Charboneau** 9:2

**Chavez** 9:12

**Civil** 13:24

**claiming** 52:8,9

**claims** 17:9 20:20

**clarify** 54:24

**clause** 20:21,24 21:4,15 22:7

**clear** 41:18

**client** 30:22 40:9,23

**clients** 31:2

**closer** 35:16

**Columbus** 9:12

**committee** 44:22,24 45:2,12

**communicate** 16:5

**company** 12:12

**complete** 17:2 25:25 45:11

**compliance** 10:2

**compound** 15:10

**compromise** 43:6

**compromised** 17:9

**concern** 23:6

**concluded** 28:12 54:20 55:4

**conclusion** 19:6,18 27:15 28:19

**conclusions** 30:8 34:24 36:19

**conditions** 32:6,22 33:24 35:21 36:11

**conducted** 15:6 37:2

**conducting** 10:2

**conference** 42:17

**confirm** 32:2 41:12

**conflict** 12:22 13:9,12,13

**conflicts** 12:16

**connection** 8:13 44:2 54:3

**connectivity** 45:16

**consequences** 19:18

**consideration** 17:8

**CONT'D** 46:7 53:20

**contemplated** 17:10

**contemplates** 27:8

**contested** 24:22

**continuation** 42:1

**continue** 31:18

**contrary** 24:2 48:5

**controversy** 43:7

**convey** 42:10

**Cooper** 48:23,24 49:4 51:6,13,17

**Cooper's** 51:20

**corporate** 12:12 34:19 49:7

**corporation** 47:23

**correct** 12:12 19:11,16 23:19 25:3 26:6,13,25 29:4,20 32:11 38:11 40:5,8 41:13 45:12 46:19 49:11 50:17 51:7 54:11

**correctly** 24:9

**correlate** 26:13

**counsel** 8:21 10:15 11:22,24 12:7 14:20 15:19 17:3 19:19,22 21:21,23 22:1 23:4 37:3 38:19 39:1 41:13,20,25 42:1,4

**counsel's** 34:8

**counterparty** 21:10 37:21

**court** 8:3,13,16 10:9,15 15:24 17:16,25 19:3,9,14 21:20 24:5 25:17 26:12,24 27:15 29:1,20 33:7 34:11 35:10 39:5,8 41:5,9 42:23 43:16,19 46:1,4 48:8 51:25 53:15,18 55:2

**Court's** 10:3,5 19:15

**cover** 8:6 53:6 54:15

**CRC** 8:6

**cross** 37:1 51:20

---

**D**

**Dallas-based** 49:6

**Dan** 9:14

**date** 8:4 24:20

**David** 9:21

**Debtors** 9:13

**December** 16:1 38:10 39:12,16 42:2,16

**decisions** 29:23 48:10

**declared** 20:25

**declines** 19:14

**defenses** 10:4 17:9

**degraded** 45:20

**delayed** 45:6

**deposition** 8:9,12,15 10:21 11:17 12:10 13:24 14:19 30:22,24 37:2 52:19

**depositions** 14:25 15:5,9,18

**describe** 15:3

USTP (Common) Ex. 19
Page 62 of 272

W. Ross Forbes
Proceedings on 02/17/2026

30(b)(6)

Index: designated..Forbes

**designated** 10:22 14:8

**determines** 33:7

**difficult** 29:24

**digital** 8:6

**direct** 22:21

**disagree** 50:2,3,5

**disappoint** 39:14

**disclosure** 29:2

**discovery** 10:2

**discuss** 14:16 17:6 31:9,10,13, 16

**discussed** 15:18

**discussions** 15:21

**disgorgement** 19:15 26:1,15

**dispute** 42:7 46:12

**distorted** 47:20

**distribute** 24:5 25:17 26:12,23

**District** 10:5

**docket** 22:17 23:10

**document** 13:24 14:1 16:15,17 17:1 19:8 22:18,24,25 23:2 42:15, 20,22 43:7,8,16

**documents** 16:20,24

**dollar** 47:25 52:24

**dollars** 53:7

**doubt** 51:19

**draft** 18:5

**drafted** 17:25 18:3,19,21 34:24

**drafting** 18:19

**dropped** 34:5

**due** 49:16

**duly** 10:13

**Dunn** 9:21

**E**

**early** 11:15

**earnings** 47:10

**ECF** 42:15

**effect** 13:10 17:10

**Eisenberg** 9:10

**elected** 44:23

**Eli** 9:12

**Elizabeth** 8:5

**Ellis** 9:20

**Elvina** 9:24

**employ** 11:11

**employed** 11:5,7

**Energy** 9:22 15:14 30:22 32:17, 22 33:8 35:6

**enter** 19:14 37:9 41:9

**entered** 27:9 28:5 48:7

**entire** 41:3

**entities** 26:1

**entity** 15:21 43:22 47:22

**entry** 43:6

**equivalent** 49:9

**essential** 21:6,7 34:3,10 37:20 38:6

**essentially** 26:5

**estates** 40:11 41:18

**evidentiary** 30:1

**examination** 10:17 14:5,6 38:9 46:7 53:20

**examined** 10:13

**exceeds** 10:5

**excerpt** 39:13

**exchanged** 17:8

**Excuse** 50:12

**Exhibit** 13:19,20 14:1,7,12 16:6, 9,12,13 20:1,5 22:8,12,14 23:18 31:21 32:4,13,16 33:14,18 35:1,5 36:2,6 37:11,15,22,25 38:1,13,16 39:11,19,23 41:17 42:11,14,18,25 43:4 48:11,15

**exhibits** 14:21,23,25

**exist** 30:3

**exists** 23:7 30:4

**exit** 21:15

**expect** 36:23

**expenses** 44:6,15 46:11,22

**explicitly** 10:4

**express** 20:19

**extent** 10:5 18:15

**Ezell** 9:3

**F**

**F-O-R-B-E-S** 11:3

**face** 52:13

**fact** 29:22

**facts** 50:17

**familiar** 12:20 13:7 16:15 18:11, 12 20:17 24:25 30:6 40:2 44:3,4, 25 45:3 48:20 49:21

**familiarized** 18:15

**fashion** 45:6

**February** 8:1,5

**Federal** 8:16

**fee** 8:10 27:9 28:2,5 29:4

**feels** 30:9 48:7

**fees** 26:1 33:9 34:11 44:6,14 46:11,16,22

**filed** 20:7 21:20 22:2,16,17 33:19 42:16,23 43:7,11,16,19

**filing** 47:9

**filings** 43:22

**final** 27:9 28:2,4 29:4

**finances** 48:9 49:14

**financial** 44:25 48:16

**find** 50:6 51:9

**finds** 19:3

**finished** 34:14

**firm** 8:10,20,22 9:5,6 12:2,3 30:8 31:15 49:7 51:15,17

**firms** 12:2,3,10 48:16,22 51:14

**five-minute** 45:21,24 53:10

**Forbes** 8:9,19 10:12,19 11:1,4,16 13:19 14:19 16:12 17:4,14 19:9, 19 20:4,6 22:4,11 23:15 24:8 25:24 28:1 29:6 30:3,12,18 31:20

USTP (Common) Ex. 19
Page 63 of 272

W. Ross Forbes                          30(b)(6)
Proceedings on 02/17/2026                          Index: form..Jason

32:5 33:7 34:6,18 35:4,9,15 36:6
37:7 38:8 39:10,17 41:13 42:15
43:3,24 44:21 45:5,10,19 46:9,11
47:18 48:14 49:19 51:2 52:23
53:22,24 54:5,6,8,21,25

**form**  27:1,13,22 28:7,20 29:10,
16,21 32:24 34:1,13 35:25 36:14,
17,19 39:4 44:8,17 46:14,24 47:6
48:4 50:11,19 51:8,21 53:1,4
54:12

**found**  50:1

**fourth**  41:5

**fraudulent**  20:20

**front**  13:23 24:23 40:6

**froze**  47:18

**frozen**  45:5,18,19

**Fulbright**  9:7

**full**  11:1 29:2 33:9

**full-**  49:6

**full-time**  49:9

**funds**  24:5 25:17 26:12,24

---

### G

**gallery**  41:16

**Garza**  9:2

**gave**  37:3

**general**  12:6

**generally**  11:19 20:17 25:1 37:9

**Geoghan**  9:14

**give**  51:7

**Good**  8:25 9:19 10:19

**Green**  9:19 30:21

**Green's**  31:2

**Guerrero**  9:20

**guess**  53:11

**GWG**  17:20

---

### H

**hand**  10:10

**hard**  51:16

**Hardin**  8:20 9:4,5 11:25 27:1,13,
22 28:7,20 29:10,16,21 30:1,6
31:17 32:24 34:1,13,15,16,18,22
35:25 36:14,16,18,23 37:1 39:4
41:3,7 44:8,17 45:18,23 46:14,24
47:6 48:4 49:13 50:11,19,25 51:3,
8,21 52:5,8,25 53:2,12,14 54:2,
12,19

**Hardin's**  12:2

**head**  18:17

**headcount**  49:9 50:10

**headline**  48:21

**hear**  35:11 45:9 47:19 54:5

**hearing**  15:24 16:1,3 22:17 30:2
38:10 39:12,21 41:16 42:2 54:20

**hearings**  31:25

**hold**  47:22

**Holdings**  36:7

**honest**  51:10

**Honor**  40:21

**Hours**  51:18

**hypothetical**  19:13 27:24

---

### I

**i.e.**  32:23 33:25

**idea**  29:1 30:25 49:15

**identification**  13:21 16:10 20:2
22:9 32:14 33:15 35:2 36:3 37:12,
23 38:14 42:12 43:1 48:12

**identified**  8:19 14:12 29:7,14
44:3

**identifying**  36:17

**IEH**  12:20 13:6 33:19 34:12

**illegal**  19:4 20:25

**impacts**  33:8

**important**  33:5

**inaccurate**  40:16

**include**  18:23 24:17 26:10

**included**  23:5,17 27:8 28:15

**including**  17:7 24:12 25:5,19
26:20 51:18

**incurred**  46:22

**indiscernible**  20:5 34:3 35:8
45:11 47:17 49:25

**inducement**  20:20

**information**  49:23 50:8 51:7
52:6,9

**inquired**  46:21

**instruct**  29:24 48:4 49:13 51:22

**instructing**  36:19 52:20

**instructions**  37:3

**integral**  32:7,23 33:1,24 35:21
36:11 37:8

**intend**  30:12

**intention**  37:7

**interest**  12:16 40:22 51:15

**interests**  17:11 23:8 29:8

**Internet**  45:8 50:2,6

**interview**  48:23

**interviewed**  49:4

**issue**  22:14 40:24

**issued**  16:5

**issues**  28:13,17 45:16

**item**  23:5 24:23

**items**  11:20

---

### J

**J-R**  11:3

**Jackson**  8:10 9:4,6 10:22 11:6,
12,13,16,21,24 12:4,7,12,15,18
13:4,5 14:9 15:19 16:7,14 18:3
21:6,8,13,15,21,23 22:1,23 23:1,
21,23 24:6,11,17 25:5,18,19 26:2,
15,20,24 27:10,20 28:4,17 29:7,
13,19 30:12,19,23 31:1,4,6,11,16
32:6,21 33:5,10,23 34:2,7,8,12,19
35:20 36:10,25 38:11,18,19,21
39:2,3,8,20 40:4,8,24 41:13,21,25
42:22 43:3,5,11,15,18,21,25 44:5,
15,22 46:21 47:10,13,24 48:3,6,9
49:2,6,10,14 50:8,16 51:12 52:23
53:25 54:9

**January**  22:16 43:8

**Jason**  9:5 38:18

USTP (Common) Ex. 19
Page 64 of 272

W. Ross Forbes                    30(b)(6)
Proceedings on 02/17/2026                    Index: JC..notion

**JC** 9:13

**Jenkins** 12:6

**Joel** 9:1

**Jordan** 9:12

**judge** 23:6,9 28:12,18 40:6 41:15 42:2 52:1,20

**judgment** 47:14,25 48:3,7 52:11, 14,24 53:6 54:1,10,14

**judgments** 47:11

**Junior** 11:1

### K

**Ken** 9:19

**kind** 45:20 51:24

**knowledge** 17:2

### L

**language** 23:17,18,21,24 24:1, 12,18 25:6,19 26:10,21 27:7,11, 20,21 29:8,15,19 30:4,13,19,23 31:1,7,16

**launch** 17:5

**Laura** 8:25 10:20 54:2

**law** 8:10,20 9:5,6 12:2,9 49:7

**Lawbook** 48:15,19,20,21 49:3,8, 20,21,24 50:9,14 51:7,20

**lawsuit** 44:11

**lawyer** 11:9,10 12:5 19:23 34:23 41:5,14 51:3,16

**lawyers** 29:23 51:17

**leave** 19:20

**led** 49:6

**legal** 19:6,18 26:16 27:15 28:13, 17,19 29:3 30:5,7,8 34:23 36:18

**lets** 51:14

**life** 35:17

**limited** 9:11 10:6 17:7

**Lines** 41:24

**Liquidating** 9:17

**lists** 14:4

**litigation** 15:1 38:23 46:23

**LLC** 12:14 35:6 36:7

**LLP** 12:12 24:6

**located** 8:20

**location** 8:14

**long** 11:11

**looked** 14:20

**louder** 35:18

**ludicrous** 31:18

### M

**made** 29:23

**make** 11:20 19:6 35:17 45:10 52:1 55:1

**makes** 39:2 48:10

**making** 29:24 38:22 39:8 40:6,10 41:15 42:1 52:11

**management** 44:21,24 45:2,12

**managing** 49:2 51:12

**manner** 28:14 47:16

**March** 30:2,13

**marked** 13:19,20 14:1 16:9 20:1, 4 22:8,12 32:13,16 33:14 35:1,5 36:2,6 37:11,22 38:13,16 39:11, 19 42:11,18,25 43:4 48:11,14

**matter** 8:9 11:18 12:4,20 17:20 24:22 31:11 34:12 35:6 37:10

**matters** 8:10 10:6 12:16 30:2 43:12

**means** 40:4

**meant** 36:21

**meet-and-confer** 51:23 52:4

**meeting** 51:24

**member** 44:21,24 45:2,11

**merger** 51:14

**merits** 17:12 23:8 29:9

**message** 45:7

**met** 10:19 14:20

**microphone** 35:16

**Millie** 9:2

**million** 46:13 47:25 52:24 53:7 54:1,10

**mind** 53:9

**minutes** 50:23 53:8

**mixing** 26:18

**moment** 17:25 22:20

**monetary** 19:10 33:9 40:21,25 44:1

**money** 42:8,9 47:1

**monies** 40:23 41:20

**morning** 8:25 9:1,19 10:19

**Moses** 28:12,18

**Moses'** 23:6,9

**motion** 20:7,10,13,17 24:4,7,25 25:7,25 26:23,25 27:10 29:9 31:10,22 32:16,18,19 33:18,20 35:6 36:7,8 37:16 47:9

**motions** 15:2 17:13 21:20,21 22:2 23:9,14 24:25 25:2,3,13 29:1 34:20 37:17,18 43:6 44:2,14 47:10

**move** 35:4 41:17 43:24

**movements** 15:6

**moving** 45:5

### N

**news** 49:20

**noise** 41:22

**non-** 28:10

**non-bankruptcy** 15:4

**non-monetary** 40:20

**non-severable** 32:23 33:25

**Norton** 9:6 18:19 38:19

**note** 55:1

**noted** 51:17

**notes** 16:2

**Notice** 22:15

**notices** 41:5

**notion** 25:18

USTP (Common) Ex. 19
Page 65 of 272

W. Ross Forbes                        30(b)(6)
Proceedings on 02/17/2026      Index: notwithstanding..provided

**notwithstanding** 23:15 24:2

**number** 8:10 16:12,13 17:5,6
22:12,18 23:5,10 24:23 36:6
42:14,18,20 43:4,7,25 46:10
48:15 49:7,8 50:9

---

**O**

**oath** 8:23

**object** 19:12,17,24 27:1,13,22
28:7,20 29:10,16,21 31:17 32:24
34:1,13 35:25 36:14,19 39:4 41:3
44:8,17 46:14,24 47:6 48:4 50:11,
19 51:8,21 53:1,3 54:12

**objection** 34:8 36:17

**objectionable** 19:25

**objections** 14:13,16,21 16:14
19:20 43:5

**objects** 19:22

**obligation** 19:21

**occurred** 46:3 53:17

**offer** 40:12

**office** 10:21 16:14

**officer** 51:25

**omnibus** 43:5

**opportunity** 37:1

**oppose** 24:11 25:5,19 27:10,20

**opposes** 26:20

**oranges** 26:18

**order** 10:5 19:14,15 23:9 24:2,6,
12 25:6,18,19 26:12,24 27:9 28:5,
14 29:4 43:6

**ordered** 46:11

**orders** 10:3 27:11 28:2 29:14

**ordinary** 47:14,25

**out-of-state** 51:14

**outline** 20:17

**owed** 40:13

**owns** 40:22,23

---

**P**

**paid** 26:1

**parachuted** 30:10

**paragraph** 20:20,24

**part** 20:24 23:11 25:24 32:10
33:4 40:2 52:12

**parties** 8:7,14 15:22 17:12 23:8,
17 25:9 26:6,9 27:5 29:9 30:19,21
31:7 37:9 38:6 46:21

**parties'** 26:23

**partner** 11:8,12,14 49:2 51:13

**partnership** 12:14 47:16

**parts** 39:18

**party** 24:15 25:10,22 26:19 27:2,
3 31:10 37:18 40:22

**party's** 24:5 25:17 26:11

**pass** 54:18

**past** 51:18

**Patrick** 9:16

**pay** 21:13 24:6 25:18 26:24 40:12
46:10 47:14,24 52:24 53:25 54:9

**paying** 48:2

**pending** 17:15,24 29:1

**Penney** 9:13

**people** 34:24 36:21 47:1 49:24

**period** 11:3

**permitted** 27:4

**person** 43:21 45:22 51:10

**perspective** 40:4,7,8,24,25

**pertains** 16:2

**phase** 14:25

**Philip** 9:10

**phone** 13:1

**place** 8:23 9:25

**plan** 9:17 12:19 13:6 27:19,20
31:9 42:6

**pleadings** 38:22 43:11

**point** 18:16 43:21 52:17

**position** 24:16 26:3,16 27:16
33:10 34:20 42:6 52:13,14

**positions** 39:3

**positively** 8:18

**posted** 50:14

**potential** 47:11

**practitioner** 15:4 28:11

**preliminary** 38:17

**Prentice** 9:20

**preparation** 15:25

**prepare** 14:18

**prepared** 14:11,15 36:24

**present** 29:20 30:13,16

**presently** 8:20

**preserving** 17:12 23:8 29:9

**pretty** 32:1

**previous** 11:17

**previously** 37:2

**prior** 14:2,6 28:12

**private-entry** 31:25

**privilege** 28:21

**privileged** 52:5,8

**problem** 52:12

**Procedure** 8:17

**proceed** 10:16 11:19 53:22

**proceeding** 8:7,24 55:4

**process** 30:6

**produced** 16:20,22,24

**production** 17:1

**Professional** 8:9

**profit** 54:9

**Profitable** 48:22

**profits** 53:25

**proposal** 24:19,23

**proposed** 22:15 23:16 24:1,17
27:7 29:13 30:19 31:1,7

**proposes** 24:18 26:10

**proposing** 30:23

**proves** 52:17

**provide** 19:3 23:16

**provided** 16:14 21:16

USTP (Common) Ex. 19
Page 66 of 272

W. Ross Forbes
Proceedings on 02/17/2026

30(b)(6)

Index: providing..Ross

**providing** 41:19

**provision** 18:25 19:3,5 21:12,25 24:2 27:8 28:9,15 33:8

**provisions** 18:24 19:3,7

**public** 49:20 50:2,7 52:6

**publicly** 49:22

**published** 48:16

**purposes** 12:10

**pursuant** 8:16 16:21

**pursue** 40:20

**put** 34:23 41:6

**putting** 52:16

## Q

**quality** 45:20

**question** 15:10 18:18 19:13,21, 24 24:21 26:8 29:11 30:5,15 34:14,17 39:7 41:23 43:23 44:9, 13,19 46:10 47:21 53:3 54:3

**questioning** 41:4

**questions** 29:23 31:23 36:21 38:17 48:9 49:14,25 52:21 54:16, 17

**quickly** 32:1

**quote** 51:15

## R

**R-O-S-S** 11:3

**raise** 10:9

**Randy** 15:14

**ranked** 50:8

**rankings** 49:8

**ranks** 49:7

**rates** 51:19

**reached** 38:6

**reaching** 37:20

**reaction** 41:4

**read** 14:7,21 15:17 18:14,15 19:7 20:21 22:20,23 24:9 37:18,19 40:2,8,12,19,22,25 49:4,25 50:20,24 51:4 54:23,25

**reading** 25:22 41:14

**ready** 8:3 53:22

**reason** 50:3,5 51:6,19

**reasonable** 54:1,10

**recall** 16:4 23:24

**receive** 26:6 40:23

**received** 17:10

**recess** 46:3 53:17

**recitals** 20:19

**record** 8:4,18,22 10:1,25 46:2,6 51:25 52:7 53:16,19 55:3

**recover** 26:9 40:13 41:20 46:17

**recovery** 19:10 26:5

**reference** 28:13,18

**referral** 10:6

**referring** 14:24

**reflect** 39:3

**regard** 14:9 20:16 32:5,15 35:19 43:12,25 44:10,13

**regularly** 51:13

**related** 48:10

**relating** 12:16

**release** 20:18 40:13 41:19

**releasing** 41:19

**relevant** 37:5

**relief** 17:9 25:25 40:20 41:9 44:1

**remember** 16:23,25 17:18 18:10 20:11,14,23 22:7 43:13

**remote** 8:6,8

**remotely** 8:15,24

**removed** 28:12

**renewed** 45:14

**repaid** 44:7

**repeat** 12:25 35:10 41:23 54:3

**repeatedly** 37:3

**repetitive** 31:24

**reply** 43:5

**report** 8:23

**reported** 50:17

**reporter** 8:3,6,13,16 10:9,15 35:10 46:1,4 53:15,18 54:25 55:2

**represent** 8:22 16:13 50:1 52:1

**representation** 12:23 13:10

**representative** 12:8 15:6 34:19

**representatives** 15:22

**represented** 11:22 38:10

**representing** 12:4,9,10,19 13:6 19:23 38:23

**represents** 39:5

**request** 8:7,14 29:3

**require** 33:9

**required** 44:6

**reservation** 10:1

**reserves** 10:4 47:22

**resolved** 27:10

**respect** 49:16

**response** 16:13 42:16

**responsible** 48:2

**restate** 34:6 44:13

**restricts** 19:15

**result** 17:10 24:6 25:18 26:24 46:23

**return** 22:12 33:9 44:6

**returned** 34:12 44:16 46:12

**revenue** 49:8 50:9 53:25 54:9

**review** 15:12,16 16:17,20,24 20:12 21:21,22,23 22:2 37:2 42:22 43:11

**reviewed** 14:5 15:8,10,24 16:2,3 18:7,10 19:1 20:9 22:5 30:24 31:1,4 32:17,19,20 33:19,21 35:6, 12 36:8,9 38:4 39:16,18 42:21

**reviewing** 20:14,15

**rights** 10:1,4

**Rodriguez** 40:6 41:15 42:2

**Rofael** 9:24

**room** 11:25 19:20

**Rose** 9:6 18:19 38:19

**Ross** 8:9,19 10:12 11:1

USTP (Common) Ex. 19
Page 67 of 272

```
W. Ross Forbes                        30(b)(6)
Proceedings on 02/17/2026                        Index: Rule..talked
```

**Rule** 10:21 43:7 47:9

**Rules** 8:16

**Rusty** 8:20 9:4,5

---

## S

**Sall** 9:2

**Salomon** 8:6

**sanctions** 33:9

**satisfy** 44:1 47:11 52:14

**satisfying** 48:7

**save** 34:16

**scheduled** 8:6

**Schotz** 9:14

**screen** 22:14 39:15

**scroll** 50:24

**Seadrill** 9:10

**seek** 28:2

**seeking** 46:17 51:14

**sentence** 24:7 25:15

**series** 37:3

**serve** 17:11 23:7 29:8

**service** 49:7

**Services** 9:22 32:17

**set** 26:5 47:10,22

**settle** 24:20 27:5 38:4 42:7

**settled** 17:9 40:11,22,25 42:7 47:1

**settlement** 17:7,15,19 18:1,7,13, 20,23 19:7 20:9,12,15,18 21:5,12, 13,16 22:1,3,13 23:14,16 24:3,12, 15 25:12,15,20,23 26:4,13,22 27:2,3,11 28:2,5,25 29:14 31:10, 21 32:3,4,5,16,17,20,22 33:1,2, 18,20,21,24 34:3,9,10 35:8,12,20 36:7,9,11 37:10,15,16,19,20,21 38:2,5,6 41:8 44:10

**settlements** 15:3 18:22 25:6 28:11 34:9

**settling** 15:22 24:4 25:16 26:1,5, 8,11,23 30:18 31:7,10 46:21

**severable** 32:9,10 35:23

**severed** 21:16

**share** 22:14 39:15

**sharing** 42:17

**show** 13:18 17:5 20:4,5 22:6,11 32:15 33:17 35:5 36:5 38:16 39:10,15 42:14 43:4 48:14

**sign** 54:23,25

**signed** 12:15 13:11

**silence** 13:2

**silently** 39:25

**similar** 13:13

**simple** 47:16

**sit** 18:14 25:8,21 33:6

**sitting** 29:6 41:15

**sought** 17:9 25:25 44:1

**sounds** 17:23 46:15,20

**source** 49:20

**speak** 35:18 39:7

**speaks** 19:8 21:4 38:21 49:15

**specific** 24:21

**specifically** 17:18 18:10 20:9, 22,23 22:7 43:14 51:23

**speculate** 21:2,18 27:23 30:7,16 33:12 36:21 47:15 48:1 53:5

**speculation** 19:13,17 54:13

**speculative** 50:11

**spell** 11:2

**Spencer** 9:2

**spent** 47:1

**Stage** 37:16

**stand** 21:1 34:23

**Standard** 8:4 46:2,5 53:16,18 55:3

**standing** 26:17 40:22 42:7,8

**standpoint** 40:21

**start** 45:8

**started** 9:25 11:13

**starting** 30:13 40:19 41:17

**state** 8:21 10:25 25:15 27:8 46:10

**stated** 49:5

**statement** 40:14,17 41:2 50:3,6

**statements** 38:22 39:2,3,8,24 41:12,20,25 42:4 49:11

**states** 9:1 24:1 25:6 40:3,11,20 41:18 48:21 51:12

**stating** 27:9 51:16

**status** 42:17

**Steele** 8:25 9:8,23 10:18,20 13:22 16:11 20:3 22:10 27:6,18, 25 28:16,23 29:12,18 30:1,11 31:19 33:3,16 34:4,14,18,25 35:3, 14 36:4,16,22 37:5,6,13,24 38:15 39:6 41:7,11 42:13 43:2 44:12,20 45:19,24 46:8,18 47:2,8 48:13 49:18 50:15,22 51:1,5,11 52:5,22 53:8,13,21 54:4,16,20,24

**stipulate** 8:7,15,23

**stipulates** 9:3

**Stores** 37:16

**story** 49:25 50:13

**strategy** 28:24 30:8

**strike** 9:17 23:4 38:1,3

**strikes** 19:9

**struck** 19:5 21:12

**stuff** 34:24

**subject** 14:13,16 34:7 52:18

**subpoena** 13:23 14:2,21,22 16:5,21

**subscribe** 49:24

**subsequent** 28:14

**successful** 44:16

**Sungard** 9:15 36:6,11

**swear** 10:7

**switch** 38:8,9

**sworn** 10:13

---

## T

**talk** 37:1 51:20 52:2

**talked** 31:21

USTP (Common) Ex. 19
Page 68 of 272

```
Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889 2201 Old Court Road, Baltimore MD 21208  www.crcsalomon.com
```

W. Ross Forbes
Proceedings on 02/17/2026

30(b)(6)

Index: talking..Zoom

**talking** 12:17 28:3 30:25 40:9 46:9,16

**technology** 8:8

**telling** 28:24

**term** 20:24 21:5,16 44:23 45:14

**terminated** 33:11

**terms** 17:8 18:11,12 20:16 21:7 32:6,9,21 33:1,23 34:8 35:21,23 36:10 37:8

**testified** 10:13

**testify** 13:23 14:9,11 36:24

**testifying** 12:11

**Texas** 48:15,19,20,22 49:3,8,9, 19,21,24 50:8,9,14 51:7,20

**Texas-** 49:5

**Thill** 9:2

**thing** 39:13,14 51:24 53:2

**things** 34:24

**time** 8:4 18:16 28:12 46:1,2,5 48:22 51:4,17 53:15,16,18,19 54:1,11 55:2,3

**timing** 17:8

**today** 10:21,23 11:19,22 14:2,6 15:25 16:2,17 18:8,14 20:22 22:18 23:10,19,22,24,25 25:8,21 29:7 30:4 32:18 33:6,20 35:7 36:8,23,24 37:5 39:17 43:9,12 53:9 54:21

**today's** 14:18

**top** 18:16 42:19

**topic** 14:15 17:5,6 43:25 44:3,4, 19 46:10

**topics** 14:5,9,11,14 16:6 23:11 38:8

**transcript** 15:17 39:12,16,23 40:2 41:14

**transcripts** 15:24 16:3

**transparency** 29:2

**trial** 17:20 30:13,16

**trouble** 54:2

**true** 37:14 38:18,21,24 49:11

26:10,15 27:3 42:8 44:2,16 46:17

**Trustee's** 9:25 10:20 17:13 22:15 25:3,13,25 26:3,21 43:5 44:11

**truthful** 51:9

**TUESDAY** 8:1

**two-year** 44:23 45:14

**typically** 54:14

___

**U**

**U.S.** 9:3,24,25 10:1,3,20 16:21 17:12 22:15 23:15 24:1,15,18,20 25:3,10,12,25 26:3,10,15,20 27:3 42:8 43:5 44:2,11,16 46:16

**ultimately** 48:2

**unable** 35:11

**understand** 11:16,18 12:25 13:4 14:8 17:22 24:7,9 25:2,4,24 26:3, 4,7 28:3,8,22 29:3,11 30:9 34:22 36:20 41:10 44:5,9

**understanding** 12:24 13:5 17:14 28:11 32:2 49:10,11 51:22 52:3 53:24 54:8

**understands** 44:15

**Understood** 55:2

**United** 9:1

**unstable** 45:8

___

**V**

**vacatur** 17:13 23:9 24:4,6,25 25:2,7,13,18,25 26:22,25 27:9 28:10 29:9 44:2,14 47:9

**verbatim** 18:16

**Vianey** 9:2

**video** 8:12 45:20 47:20

**videoconference** 8:8

**view** 28:18

**viewed** 44:18

**void** 19:3 20:25 33:10

___

**W**

**W-I-L-L-I-A-M** 11:3

**Wade** 48:23,24 51:6,9,13

**waive** 10:3

**waiver** 12:22 13:9,11,12 20:19

**waivers** 12:16 13:13

**Walker** 8:10 9:4,6 10:22,23 11:6, 12,14,22 12:4,7,12,15,18 13:5 14:9 16:14 18:3 21:6,8,13,15,21 22:24 23:1,21,23 24:6,11,17 25:5, 18,19 26:2,15,20,24 27:10,20 28:4 29:7,13,19 30:12,19,23 31:1, 4,6,11,16 32:6,21 33:5,23 34:2,7, 8,12,19 35:20 36:10,25 38:11,22 39:3,8,21 41:21,25 42:22 43:3,12, 15,18,21 44:5,15,22 46:21 47:10, 13,24 48:3,6 49:2,6,14 50:8,16 51:12 52:23 53:25 54:9

**Walker's** 11:17,24 15:19 16:7 21:23 22:1 28:17 33:10 38:19 39:3 40:4,8,24 41:13 43:5 44:1 48:9 49:10 53:25 54:9

**wanted** 39:14

**week** 14:20 30:22

**weekend** 44:23

**William** 11:1 12:8

**Williams** 15:13,14

**Wind-down** 9:13

**withdrew** 28:18

**word** 17:17 28:10

**words** 37:10,19 38:5

**work** 22:13 51:19

**working** 11:13

**world** 30:10 41:4

**wrap** 53:9

**wrong** 40:16

___

**Y**

**y'all** 51:23

**y'all's** 48:5

**years** 51:18

___

**Z**

**Zoom** 9:9 12:1

USTP (Common) Ex. 19
Page 69 of 272

Office: (410) 821-4888         CRC Salomon         crc-ustp@crcsalomon.com
Fax: (410) 821-4889 2201 Old Court Road, Baltimore MD 21208  www.crcsalomon.com

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

| Professional Fee Matters Concerning the Jackson Walker Law Firm | ) | | |
|---|---|---|---|
| *Plaintiff* | ) | | |
| v. | ) | Civil Action No. | 23-CV-4787-AM |
| | ) | | |
| | ) | | |
| *Defendant* | ) | | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Jackson Walker LLP

*(Name of person to whom this subpoena is directed)*

☑ Testimony: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Office of the U.S. Trustee 515 Rusk Street, Suite 3401 Houston, TX 77002 | Date and Time: 9 a.m. CST on February 17, 2026, or as agreed |
|---|---|

The deposition will be recorded by this method:   Court reporter via Zoom

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   As requested in the attached Rider

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   1/22/26

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | *Jam D. Steele* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
U.S. Trustee                                                                , who issues or requests this subpoena, are:

Laura D. Steele, laura.steele@usdoj.gov; 202-603-5188

USTP (Common) Ex. 19
Page 70 of 272

**Notice to the person who issues or requests this subpoena**
\_\_\_\_ ls the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



UST
Exhibit
1

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   23-CV-4787-AM

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

USTP (Common) Ex. 19
Page 72 of 272

UST Exhibit 1
JW 30b6
Page 3 of 7

# RIDER[1]

### *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*
### Case No. 23-CV-4787-AM

As used herein, the following terms will have the meanings set forth below:

(a)    **"Communication"** shall mean any transmittal of information, including phone calls, voicemails, social media posts, letters, emails, text messages (including SMS messages, instant messages or other communication from third party apps, such as WhatsApp, GroupMe, Facebook Messenger), call records, voice memos, and any documented verbal communications.

(b)    **"Document"** or **"documents"** means and is intended to have the broadest possible meaning and includes any writings whatsoever, whether written, typed, printed, photographic, recorded, or stored by any electronic or computerized form or otherwise preserved by any means, whether draft or final, and whether original or reproduced. electronic transmissions, e-mails and attachments thereto, computerized records, facsimiles, invoices drawings, reports, records, notes, instructions, memoranda, drafts (whether or not they resulted in a final document), audio recordings, billing statements (including drafts), communications, correspondence, contracts, graphs, charts, photographs, filings, forms, journals, ledgers, letters, lists, minutes, notations, notes, opinions, orders, pamphlets, papers, publications, receipts, summaries, screenshots, social media posts, telegrams, telephone records, text messages, video recordings, voicemail messages, disks, tapes, compact disks, transcripts of oral conversations or statements however made, paper, and forms filed with courts or other governmental bodies, notices, messages, calendar and diary entries, or any other memoranda.

(c)    **"Settlement Agreements"** means the documents described as follows:

| Dkt. No. | Matter |
|---|---|
| Dkt. No. 96 | 20-20184 & 25-2002 - Old Copper Co. Inc.: "Motion for Order Approving Compromise and Settlement Pursuant to the Bankruptcy Rule 9019" |
| Dkt. No. 108 | 20-32564 - Stage Stores, Inc: "Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019" |
| Dkt. No. 90 | 20-35740 & 21-30427 - Seadrill: "Motion for Order Approving Compromise and Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019" |

---

[1] In compliance with the Bankruptcy Court's Order Setting In-Person Evidentiary Hearing [ECF No. 156] ("Order"), the U.S. Trustee serves this discovery but does not waive, and hereby explicitly reserves, all rights and defenses to the Order to the extent it exceeds the District Court's abatement and limited referral of these matters. *See* ECF Nos. 109, 140.

USTP (Common) Ex. 19
Page 73 of 272

UST Exhibit 1
JW 30b6
Page 4 of 7

| Dkt. No. 57. | 21-30936 - Brilliant Energy, LLC: "Motion For Order Approving Compromise And Settlement Pursuant To Bankruptcy Rule 9019" |
| Bankr. No. 21-90002; Dkt. No. 1884 | 21-90002 - Basic Energy Liquidation Trust: "Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019" |
| Bankr. No. 22-50009; Dkt. No. 715 | 22-50009 - 4E Brands Northamerica, LLC: "Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019" |
| Dkt. No. 98 | 21-90054 - Strike Liquidating Trust: "Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Procedure 9019" |
| Dkt. No. 97 | 23-90055 - Auto Plus Auto Sales LLC: "Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Rule 9019" |
| Dkt. No. 91 | 22-90018 - Sungard AS New Holdings, LLC: "Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019" |

(d)  "**Settling Parties**" means any or all of the following and any of their post-confirmation representatives (1) Old Copper Company Inc. F/K/A J. C. Penney Company Inc. and Copper Sub Corporation, Inc. F/K/A J. C. Penney Corporation, Inc., As Wind Down Debtors In J. C. Penney Direct Marketing Services LLC, by and through its Plan Administrators; (2) Steven Balasiano, solely in his capacity as Plan Administrator for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc.; (3) Seadrill Partners, LLC Reorganized Debtors and the Seadrill Limited Reorganized Debtors; (4) Randy W. Williams, Chapter 7 trustee for Brilliant Energy, LLC; (5) David Dunn, Liquidation Trustee for the Basic Energy Liquidation Trust; (6) David Dunn, Plan Agent and sole manager, sole director, sole officer and sole representative of 4E Brands Northamerica LLC; (7) Patrick Bartels, as Trustee for the Strike Liquidating Trust; (8) Patrick Bartels, as Plan Agent for the Wind-Down Debtor In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.); and (9) Sungard AS New Holdings, LLC, the wind-down debtor, by and through Drivetrain LLC, the Plan Administrator.

(e)  "**Relate(d) to**" or "**relating to**" means constituting, defining, concerning, embodying, reflecting, identifying, stating, referring to, bearing upon, dealing with, or pertaining to a subject matter.

(f)  The disjunctive "**or**" shall include the conjunctive "**and**."

USTP (Common) Ex. 19
Page 74 of 272

2

UST Exhibit 1
JW 30b6
Page 5 of 7

## INSTRUCTIONS

Please produce the following documents in **native format** and submit via email (or emails) to Jennifer.R.Toth@usdoj.gov no later than 5:00 p.m. CST February 5, 2026, with the case number in the subject line. The documents must be organized by the numbered request and must clearly indicate the request(s) to which they relate.

## LIST OF TOPICS FOR EXAMINATION

1. The Settlement Agreements, including but not limited to their terms, timing, consideration exchanged or to be exchanged, claims or relief sought settled or compromised, defenses contemplated or benefits received as a result, effect on others, and alternatives that would best serve the interests of affected parties while preserving the merits of the U.S. Trustee's Vacatur Motions, *see* Case No. 4:23-CV-4787, ECF No. 140 ("**Vacatur Motions**").

2. Jackson Walker LLP's or its then- or now-present attorneys' post-confirmation relationships to or with the Settling Parties, including but not limited to duration, circumstances relating to hiring or termination, conflict waivers, retainer agreements and other terms of representation, services rendered and costs expended, and amounts received by, demanded from, returned, or to be returned by Jackson Walker LLP.

3. The mediations between Jackson Walker LLP and the Settling Parties, including but not limited to scheduling, agreements, mediation expenses, and conclusion.

4. Jackson Walker LLP's ability to satisfy the monetary relief sought by the U.S. Trustee in connection with the Vacatur Motions.

## DOCUMENTS TO BE PRODUCED

1. Documents reasonably relating to the post-confirmation retention or termination of Jackson Walker LLP as counsel for Settling Parties, including but not limited to engagement agreements, conflict waivers, notices, pitch decks, calendar appointments, and reasonably related non-privileged communications.

2. Documents reasonably relating to post-confirmation consideration requested, exchanged, or to be exchanged between or for Jackson Walker LLP and Settling Parties, including but not limited to invoices, fee statements, payment confirmations, demands, reminders and other notices, and reasonably related non-privileged communications.

3. Documents reasonably relating to the scheduling of, agreement to, completion or conclusion of, and mediation expenses for mediation(s) between Settling Parties and Jackson Walker LLP, including but not limited to agreements, calendar appointments, invoices, fee statements, notices, and reasonably related non-privileged communications.

#### ####

USTP (Common) Ex. 19
Page 75 of 272

3

UST Exhibit 1
JW 30b6
Page 6 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                                          )
                                                )       CASE NO. 4:23-CV-4787-AM
Professional Fee Matters Concerning             )
the Jackson Walker Law Firm                     )
                                                )

**NOTICE OF DEPOSITION**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6) and 45:

The United States Trustee will take the depositions upon oral examination, to be recorded by stenographic means, via Zoom.

Jackson Walker LLP ("Jackson Walker") is requested to designate the person or persons most knowledgeable and prepared to testify on behalf of Jackson Walker concerning the subject matter described on the attached Rider. The deposition(s) will commence on February 17, 2026, at 9:00 a.m. CST, or at such other mutually agreeable date and time. If necessary, the deposition will be adjourned until completed.

                                        KEVIN M. EPSTEIN
                                        UNITED STATES TRUSTEE


Dated: January 22, 2026.            By:    /s/ Laura D. Steele
                                        Laura D. Steele, Trial Attorney
                                        U.S. Department of Justice
                                        Office of the United States Trustee
                                        515 Rusk Street, Suite 3516
                                        Houston, Texas 77002
                                        Laura.Steele@usdoj.gov
                                        (713) 718-4663

USTP (Common) Ex. 19
Page 76 of 272

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § |
| | § |
| Professional Fee Matters Concerning the | §    Case No. 4:23-cv-04787-AM |
| Jackson Walker Law Firm | § |
| | § |
| | § |
| | § |

**JACKSON WALKER LLP'S RESPONSES AND OBJECTIONS TO
U.S. TRUSTEE'S SUBPOENA TO TESTIFY AT A DEPOSITION
<u>IN A BANKRUPTCY CASE</u>**

**To: Kevin M. Epstein, United States Trustee for Region 7, by and through
his counsel of record, Laura Steele, Millie Aponte Sall, and Vianey Garza,
515 Rusk, Suite 3516, Houston, Texas 77002.**

Pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure (the "<u>Federal</u>

<u>Rules</u>"), Rules 7030, 9014, and 9016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), and the Local Rules of the Bankruptcy Court for the Southern District of

Texas (the "<u>Local Rules</u>"), and in accordance with the meet and confer call held on January

28, 2026 (the "<u>Meet and Confer Call</u>"), Jackson Walker LLP ("<u>Jackson Walker</u>"), by its

undersigned counsel, hereby responds and objects (the "<u>Responses and Objections</u>") to the U.S.

Trustee's *Subpoena to Testify at a Deposition in a Bankruptcy Case* (the "<u>Subpoena</u>")[1] served

on January 22, 2026, by the United States Trustee (the "<u>U.S. Trustee</u>").

USTP (Common) Ex. 19
Page 77 of 272

ot defined herein shall have the meanings ascribed to them in the Subpoena.

UST
Exhibit
**2**

## GENERAL OBJECTIONS

These General Objections apply to each topic for examination ("Topic") and request for documents ("Document Request") listed in the Subpoena and are incorporated into all the specific responses and objections hereinafter set forth. These objections form a part of the response to each and every Topic and Document Request and are set forth here to avoid duplication and repetition. Where a General Objection is expressly incorporated in a specific response, it is for emphasis only.

Jackson Walker objects to the location of the deposition, which was unilaterally set. To the extent the deposition is not taken virtually, Jackson Walker's Rule 30(b)(6) witness(es) will be presented for deposition at Rusty Hardin & Associates, 1401 McKinney, Suite 2250, Houston, Texas 77010.

Jackson Walker objects to the Topics and Document Requests to the extent they seek information other than information in the possession, custody, or control of Jackson Walker. In response to the Topics and Document Requests, Jackson Walker will respond for itself only, and not for any other party.

Jackson Walker objects to the Topics and Document Requests to the extent they call for information or material protected by the attorney-client privilege, the work product doctrine, mediation privilege, or any other applicable privilege, doctrine, or immunity. Jackson Walker does not intend to produce any privileged material. Any disclosure or production of any privileged material shall be inadvertent and shall not be deemed a waiver of any privilege. Additionally, pursuant to the Meet and Confer Call, Jackson Walker will not prepare or produce a privilege log as agreed.

Jackson Walker objects to the Topics and Document Requests to the extent they are beyond the scope of permissible discovery, seek information that is not relevant to any party's claim or defense in these proceedings, and/or are not proportional to the needs of these proceedings.

Jackson Walker objects to the Topics, Document Requests, the definitions, and the instructions to the extent they purport to impose on Jackson Walker any requirement beyond or inconsistent with the Federal Rules, the Bankruptcy Rules, the Local Rules, or any other applicable rule or court order. Jackson Walker specifically objects to the instruction to organize documents produced by the numbered request and to clearly indicate the request to which they relate. Jackson Walker will not produce documents in this manner.

Jackson Walker objects to the U.S. Trustee's demand that documents be produced in native format. Jackson Walker will produce documents in standard TIFF format with accompanying text extraction, searchable OCR, and metadata in a Concordance load file. Jackson Walker will produce Excel, PowerPoint, audio, audiovisual, and video files in their native format. All Documents and Communications will be produced with sufficient metadata to convey where these items begin and end (including attachments), the original file name, and the original timestamps and attributes, including the following metadata fields: "BEGBATES," "ENDBATES," "BEGATTACH," "ENDATTACH," "to," "from," "cc," "bcc," "subject," "custodian," "creation date," "last modified," "date sent," "time sent," and "MD5HASH."

Jackson Walker objects to the Topics and Document Requests to the extent they are [ ]ne and/or duplicative. To this point and pursuant to the Meet and Confer Call

USTP (Common) Ex. 19
Page 78 of 272

UST Exhibit 2
JW 30b6
Page 2 of 7

and as agreed, Jackson Walker will not produce duplicative Documents and Communications that are also in the possession, custody, and control of the various Settling Parties. Jackson Walker further reserves the right to seek appropriate relief from Topics and Document Requests that are unduly burdensome and/or unreasonably duplicative.

Jackson Walker's answers to any Topic or Document Request are not intended to be and should not be construed as an acknowledgement that the requested information is relevant to the subject matter of these proceedings. By presenting a corporate representative(s) on these Topics or by producing documents, Jackson Walker does not waive, but instead expressly reserves, any and all objections to the admission of any of the answers into evidence, at hearings, trial, or otherwise.

## SPECIFIC RESPONSES AND OBJECTIONS TO THE TOPICS OF EXAMINATION

**Topic 1:** The Settlement Agreements, including but not limited to their terms, timing, consideration exchanged or to be exchanged, claims or relief sought settled or compromised, defenses contemplated or benefits received as a result, effect on others, and alternatives that would best serve the interests of affected parties while preserving the merits of the U.S. Trustee's Vacatur Motions, *see* Case No. 4:23-cv-4787, ECF No. 140 ("Vacatur Motions").

> **Response and Objection**: Jackson Walker objects to this Topic to the extent that it calls for information or material that is protected by the attorney-client privilege, mediation privilege, and/or the work product doctrine and to the extent it calls for legal conclusions or invites speculation. Subject to and without waiving the foregoing objections, Jackson Walker will present a corporate representative on this Topic.

**Topic 2:** Jackson Walker LLP's or its then- or now-present attorneys' post-confirmation relationships to or with the Settling Parties, including but not limited to duration, circumstances relating to hiring or termination, conflict waivers, retainer agreements and other terms of representation, services rendered and costs expended, and amounts received by, demanded from, returned, or to be returned by Jackson Walker LLP.

> **Response and Objection**: Jackson Walker objects to this Topic to the extent it seeks information or materials protected by the attorney-client privilege, the work product doctrine, the mediation privilege, or any other applicable privilege, doctrine, or immunity, and to the extent it calls for legal conclusions or invites speculation. Jackson Walker objects to the phrase "Jackson Walker LLP's or its then- or now-present attorneys'" as vague, ambiguous, and confusing. Pursuant to the Meet and Confer Call, Jackson Walker understands that the reference to "then- or now-present attorneys" means attorneys of Jackson Walker LLP, and not attorneys retained by Jackson Walker. Jackson Walker further objects to the term "relationships" as vague and confusing. Jackson Walker construes the term "relationships" to mean attorney-client relationships. Subject to and without waiving the foregoing objections, Jackson Walker will present a corporate representative on this Topic.

**Topic 3:** The mediations between Jackson Walker LLP and the Settling Parties, including but not limited to scheduling, agreements, mediation expenses, and conclusion.

> **Response and Objection**: Jackson Walker objects to this Topic to the extent that it calls for information or material that is protected by the attorney-client privilege, mediation privilege, and/or the work product doctrine. Subject to and without waiving the foregoing objections, Jackson Walker will present a corporate representative on this

UST Exhibit 2
JW 30b6
Page 3 of 7

Topic solely regarding scheduling, agreements, mediation expenses, and conclusion of mediation and will not present a corporate representative to testify on any substantive nature of the mediations.

**Topic 4:** Jackson Walker LLP's ability to satisfy the monetary relief sought by the U.S. Trustee in connection with the Vacatur Motions.

<u>**Response and Objection**</u>:  Jackson Walker objects to this Topic as irrelevant and harassing.  Jackson Walker LLP's ability to satisfy the monetary relief sought by the U.S. Trustee in connection with the Vacatur Motion has no relevance to any party's claim or defense regarding the instant contested matter arising from the Settlement Motions.  Jackson Walker further objects to this topic as calling for a legal conclusion and inviting speculation.  Subject to and without waiving the foregoing objections, and pursuant to the Meet and Confer Call, Jackson Walker understands that this Topic will be limited to a couple of general questions regarding Jackson Walker's ability to satisfy the settlement amounts proposed in the Settlement Motions or any additional amounts that may be ordered by the Court (which again, is speculation).  Jackson Walker will present a corporate representative on this Topic as limited during the Meet and Confer Call and reserves its right to assert the objections raised herein.

USTP (Common) Ex. 19
Page 80 of 272

UST Exhibit 2
JW 30b6
Page 4 of 7

## SPECIFIC RESPONSES AND OBJECTIONS
## TO THE DOCUMENTS TO BE PRODUCED

**Document Request 1:** Documents reasonably relating to the post-confirmation retention or termination of Jackson Walker LLP as counsel for Settling Parties, including but not limited to engagement agreements, conflict waivers, notices, pitch decks, calendar appointments, and reasonably related non-privileged communications.

> **Response and Objection**:  Jackson Walker objects to this Document Request to the extent it seeks information or materials protected by the attorney-client privilege, the work product doctrine, the mediation privilege, or any other applicable privilege, doctrine, or immunity, and to the extent it seeks documents in the possession, custody, or control of a Settling Party that could be obtained from that party.  Pursuant to the Meet and Confer Call, and the U.S. Trustee's follow-up email dated February 2, 2026, the parties agreed that Jackson Walker will not produce documents that are duplicative of materials reasonably expected to be produced by the Settling Parties, including documents relating to the post-confirmation retention or termination of Jackson Walker as counsel, post-confirmation invoices or fee statements, mediation agreements, or related notices.  Subject to and without waiving the foregoing objections, Jackson Walker will produce post-confirmation engagement letters, if any, as agreed on the Meet and Confer call.

**Document Request 2:** Documents reasonably relating to post-confirmation consideration requested, exchanged, or to be exchanged between or for Jackson Walker LLP and Settling Parties, including but not limited to invoices, fee statements, payment confirmations, demands, reminders and other notices, and reasonably related non-privileged communications.

> **Response and Objection**:  Jackson Walker objects to this Document Request to the extent it seeks information or materials protected by the attorney-client privilege, the work product doctrine, the mediation privilege, or any other applicable privilege, doctrine, or immunity, and to the extent it seeks documents in the possession, custody, or control of a Settling Party that could be obtained from that party.  Pursuant to the Meet and Confer Call, and the U.S. Trustee's follow-up email dated February 2, 2026, the parties agreed that Jackson Walker will not produce documents that are duplicative of materials reasonably expected to be produced by the Settling Parties, including invoices, fee statements, payment confirmations, demands, reminders, notices, or related non-privileged communications concerning any post-confirmation consideration requested, exchanged, or to be exchanged.  Subject to and without waiving the foregoing objections, to the extent any non-duplicative, non-privileged documents responsive to this request exist, Jackson Walker will produce such documents only upon a follow up request from the U.S. Trustee as agreed on the Meet and Confer Call.

**Document Request 3:** Documents reasonably relating to the scheduling of, agreement to, completion or conclusion of, and mediation expenses for mediation(s) between Settling Parties and Jackson Walker LLP, including but not limited to agreements, calendar appointments, invoices, fee statements, notices, and reasonably related non-privileged communications.

> **Response and Objection**:  Jackson Walker objects to this Document Request to the
> eeks information or materials protected by the attorney-client privilege, the

USTP (Common) Ex. 19
Page 81 of 272

UST Exhibit 2
JW 30b6
Page 5 of 7

work product doctrine, the mediation privilege, or any other applicable privilege, doctrine, or immunity, and to the extent it seeks documents in the possession, custody, or control of a Settling Party that could be obtained from that party.  Jackson Walker will produce responsive, non-privileged documents.  Pursuant to the Meet and Confer Call, and the U.S. Trustee's follow-up email dated February 2, 2026, the parties agreed that Jackson Walker will not produce documents that are duplicative of materials reasonably expected to be produced by the Settling Parties, including mediation agreements.  Subject to and without waiving the foregoing objections, Jackson Walker will produce documents responsive to this request.  As agreed on the Meet and Confer Call, Jackson Walker will not produce any documents protected by the attorney-client privilege, mediation privilege, and/or the work product doctrine and will not include such documents on a privilege log.

Dated: February 5, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
*Attorney-in-Charge*
Federal I.D. No. 37238
William Greendyke (SBT 08390450)
Federal I.D. No. 576573
Julie Harrison (SBT 24092434)
Federal I.D. No. 3017799
Maria Mokrzycka (SBT 24119994)
Federal I.D. No. 3610759
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone:  (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Federal I.D. No. 563869
Emily Wolf (SBT 24106595)
Federal I.D. No. 3892373
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**
Russell Hardin, Jr. (SBT 08972800)
*Attorney-in-Charge*
Federal I.D. No. 19424
Leah M. Graham (SBT 24073454)
Federal I.D. No. 2192848
Jennifer E. Brevorka (SBT 24082727)
Federal I.D. No. 1725400
Emily Smith (SBT 24083876)
Federal I.D. No. 1890677
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Co-Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I certify that on February 5, 2026, I served the foregoing via electronic mail to counsel for the U.S. Trustee as indicated below:

Laura Steele (Laura.Steele@usdoj.gov)
Millie Aponte Sall (Millie.Sall@usdoj.gov)
Vianey Garza (vianey.garza@usdoj.gov)

By: */s/ Jason L. Boland*

USTP (Common) Ex. 19
Page 83 of 272

UST Exhibit 2
JW 30b6
Page 7 of 7

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 4E BRANDS NORTH AMERICA LLC,[1] | ) | Case No. 22-50009 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**MOTION FOR ORDER APPROVING COMPROMISE AND**
**SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 8, 2025 at 10:00 AM in Courtroom 401, 4th floor, 515 Rusk, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearance must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, _____ America, LLC (0130). The Debtor's principal place of business is 6 IH-10W, Suite 300, San _____ 7. The Debtor's service address is: 41 W. Putnam Ave., STE 103, Greenwich, CT 06830.

USTP (Common) Ex. 19
Page 84 of 272

1



UST
Exhibit
3

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES, David Dunn (the "Plan Agent"), Plan Agent and sole manager, sole director, sole officer and sole representative of 4E Brands Northamerica LLC, and files this Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion"), and in support thereof respectfully show the Court as follows:

## I.     RELIEF REQUESTED

1. By this Motion, and in accordance with Bankruptcy Rule 9019(a),[2] the Plan Agent requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement") between Jackson Walker LLP ("JW") and the Plan Agent that would resolve any and all claims and causes of action of any kind held by the Plan Agent and the Debtor's estate against JW arising out of or related to Case No. 22-50009; *In re 4E Brands Northamerica LLC*; in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"), Case No. 23-00645; *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* in the United States Bankruptcy Court for the Southern District of Texas (the "Misc. Proceeding"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the releases set forth in the Settlement Agreement, JW shall pay the Plan Agent $617,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan (defined below) in the Bankruptcy Case.

---

[2] Article IV.C of the Plan (defined below) provides that the Plan Agent may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy ... the Plant Agent files this Motion under Bankruptcy Rule 9019 and seeks approval from this

USTP (Common) Ex. 19
Page 85 of 272

UST Exhibit 3
JW 30b6
Page 2 of 22

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Agent confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## III.    BACKGROUND

4.    On February 22, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Bankruptcy Case was before former Judge Jones.

5.    On March 24, 2022, the Debtor filed its *Application to Retain Jackson Walker LLP as Counsel for the Debtor and Debtor-in-Possession* [Doc. No. 72]. JW's employment application was approved by former Judge Jones on May 2, 2022 [Docket No. 120].

6.    On August 9, 2022, the Debtor filed the *Combined Disclosure Statement and Joint Plan of Liquidation of 4E Brands Northamerica, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 212]. On August 9, 2022, the *Order (I) Conditionally Approving the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures; (III) and Granting Related Relief* was entered [Docket No. 218].

7.    JW filed its *First Interim Fee Application for Allowance and Payment of Fees and*

USTP (Common) Ex. 19
Page 86 of 272

UST Exhibit 3
JW 30b6
Page 3 of 22

*Expenses as Counsel to the Debtors for the Period from February 22, 2022 Through May 31, 2022* [Doc. No. 317] on October 5, 2022. Former Judge Jones approved JW's First Interim Fee Application on November 6, 2022 [Doc. No. 367].

8. On October 25, 2022, Debtor filed the *First Amended Combined Disclosure Statement and Joint Plan of Liquidation of 4E Brands Northamerica LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Doc. No. 343] (as amended, "Plan and Disclosure Statement" or "Plan"). On October 27, 2022, the Court entered an *Order Confirming the Debtor's Combined Disclosure Statement and Joint Plan of Liquidation of 4E Brands Northamerica LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Doc. No. 353] (the "Confirmation Order") [Docket No. 1436].

9. On November 1, 2022, the effective date of the Plan occurred (the "Effective Date") and the Debtor filed the *Notice of (i) Entry of Confirmation Order, (ii) Occurrence of the Effective Date, and (iii) Related Bar Dates* [Docket No. 362].

10. JW filed its *Second Interim Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from June 1, 2022 Through October 26, 2022* [Doc. No. 389] on December 1, 2022. Also on December 1, 2022, JW filed its *Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from February 22, 2022 Through October 26, 2022* (the "Final Fee Application") [Docket No. 391].

11. Former Judge Jones approved JW's Final Fee Application [Docket No. 427] on December 29, 2022.

12. On or about November 2, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the

USTP (Common) Ex. 19
Page 87 of 272

4

UST Exhibit 3
JW 30b6
Page 4 of 22

Federal Rules of Civil Procedure [Docket No. 517]. On February 29, 2024, the U.S. Trustee filed an amended Rule 60(b)(6) motion in the Bankruptcy Case [Docket No. 645]. The basis of the U.S. Trustee's motions was the undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

13. On December 9, 2023, an Order was entered commencing the Misc. Proceeding.

14. On February 27, 2024, the Plan Agent filed his *Joinder in United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses* [Docket No. 644].

15. On May 22, 2024, JW filed its response in opposition to the U.S. Trustee's motions [Docket No. 692].

16. On July 1, 2024, the U.S. Trustee filed his reply [Docket No. 699].

17. On August 12, 2024, JW filed its sur-reply [Docket No. 705].

18. JW disputes the merits of the U.S. Trustee's motion and the Plan Agent's joinder. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Case.

19. The Plan Agent has participated in the Misc. Proceeding since its inception, including his counsel attending in excess of 30 fact witness and expert depositions, as well as propounded written discovery to JW, reviewed thousands of documents produced and attended numerous hearings. The Plan Agent has attended multiple meetings and participated in regular calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other

USTP (Common) Ex. 19
Page 88 of 272

UST Exhibit 3
JW 30b6
Page 5 of 22

bankruptcy cases. The parties to Misc. Proceeding engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee application raised in the U.S. Trustee's motion is currently set before the Honorable Chief Judge Eduardo V. Rodriguez in May 2025.

20.    On March 5, 2025, JW and the Plan Agent participated in a mediation regarding the allegations in the U.S. Trustee's motion, as joined by the Plan Agent, and the Plan Agent's claims (or potential claims) against JW with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

21.    As a result thereof, JW and the Plan Agent reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

### IV.    SUMMARY OF SETTLEMENT AGREEMENT

22.    Within 3 business days of an order granting this Motion becoming a Final Order (as defined therein), JW will pay to the Plan Agent $617,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case.

23.    In exchange for the Settlement Amount, JW and the Plan Agent are providing mutual releases. The Plan Agent, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date, including claims and causes of action arising from or relating to the Bankruptcy Case, the U.S. Trustee's motion, the Plan Agent's joinder and the relationship between Elizabeth Freeman and former Judge Jones.  JW, as more fully set forth in the Settlement Agreement, will release the Plan Agent from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of

USTP (Common) Ex. 19
Page 89 of 272

6

UST Exhibit 3
JW 30b6
Page 6 of 22

action arising from or related to the Bankruptcy Case, the U.S. Trustee's motion, the Plan Agent's joinder and the relationship between Elizabeth Freeman and former Judge Jones.

## V. <u>ARGUMENTS AND AUTHORITIES</u>

24. Rule 9019(a) states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

25. "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id.* at 462. Those factors are:

  i.   The balance between the litigation's possibility of success and the settlement's future benefits;

  ii.  The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

  iii. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

  iv.  Whether other parties in interest support the settlement;

  v.   The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

USTP (Common) Ex. 19
Page 90 of 272

UST Exhibit 3
JW 30b6
Page 7 of 22

vi. The nature and breadth of releases to be obtained by [the settling party]; and

vii. The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

26. The Plan Agent contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Agent and Liquidation Trust the full benefit of the Settlement Amount without the time, expense and uncertainty of litigation.

## A. The balance between the litigation's possibility of success and the settlement's future benefits

27. The Plan Agent contends that the possibility of success in the litigation against JW is high but there are a substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Agent will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides a significant recovery for the Liquidation Trust for payment to creditors in accordance with the confirmed Plan and eliminates the litigation risk of continuing to litigate the claims against JW.

28. The Plan Agent submits there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Liquidation Trust. However, the trial currently set to commence in May will not determine the amount of fees to be recovered, if any. The Plan Agent would then be required to pursue additional litigation to recover fees and, more importantly, the amount of fees

USTP (Common) Ex. 19
Page 91 of 272

at this time, is uncertain. Appeals could also follow further extending the litigation

UST Exhibit 3
JW 30b6
Page 8 of 22

timeline.

29. The Settlement Agreement and Settlement Amount provides the Liquidation Trust with more than 70% of the fees awarded to JW, upon an order approving the Settlement Amount becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan.

**B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

30. There is a high likelihood that litigation will be complex and protracted. As discussed above, the trial set to commence in May 2025 only addresses the issue of whether the orders approving JW's Final Fee Application will be vacated. Even if the Plan Agent prevails at trial in May 2025, the issue of sanctions and/or disgorgement and how much will be disgorge is left unresolved, and the Plan Agent recognizes that, under applicable law, even if the order approving JW's Final Fee Application is vacated, such result is unlikely to result in disgorgement of 100% of fees in any later disgorgement or sanctions hearing. Additionally, the Plan Agent has retained counsel with respect to the U.S. Trustee's motions and will continue to need to retain and pay counsel with respect to any sanctions and/or disgorgement proceeding. A settlement now brings finality and eliminates any meaningful litigation and collection risk. However, that risk could increase with the passage of time and continued litigation.

**C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

31. The Plan Agent is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the incurrence of further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery for the benefit of the creditors. This is also a substantial step in bringing the administration of this matter to an end.

USTP (Common) Ex. 19
Page 92 of 272

9

UST Exhibit 3
JW 30b6
Page 9 of 22

### D. Whether other parties in interest support the settlement

32.     At this time, it is unclear whether other parties in interest support the settlement but the Plan Agent will work with parties in interest to address the benefits of the settlement to general unsecured creditors and parties in interests' concerns.

### E. The nature and breadth of releases to be obtained by JW and the Plan Agent

33.     The Settlement Agreement contains customary broad mutual releases among JW and the Plan Agent on behalf of the bankruptcy estate. This is to bring finality to the claims and disputes between the Plan Agent and JW.

### F. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations

34.     Counsel for the Plan Agent and JW, as well as Judge Lopez, are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates. The Settlement Agreement was reached after fifteen (15) months of litigation, over seven (7) months of discovery, after the parties exchanged settlement proposals both prior to and at mediation. The settlement was reached following extensive arms-length negotiations conducted during mediation with two experienced mediators and retired Federal Judges.

35.     The Plan Agent recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Plan Agent believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Agent has attempted to achieve a resolution that maximizes value for the estate. Consequently, the Plan Agent urges that the Settlement Agreement is fair, equitable, and in the best interest of the estate and all concerned

USTP (Common) Ex. 19
Page 93 of 272

UST Exhibit 3
JW 30b6
Page 10 of 22

parties.

WHEREFORE, the Plan Agent respectfully request that the Court enter an order approving the Settlement Agreement and granting the Plan Agent such other legal or equitable relief as the Court may deem just and proper.

DATED: April 7, 2025                    Respectfully submitted,

                                        **BONDS ELLIS EPPICH SCHAFER JONES LLP**

                                        */s/ Aaron M. Guerrero*
                                        Ken Green (Texas State Bar No. 24036677)
                                        Aaron M. Guerrero (Texas State Bar No. 24050698)
                                        Bryan Prentice (Texas State Bar No. 24099787)
                                        402 Heights Boulevard
                                        Houston, Texas 77007
                                        (713) 335-4990 telephone
                                        (832) 740-1411 facsimile
                                        ken.green@bondsellis.com
                                        aaron.guerrero@bondsellis.com
                                        bryan.prentice@bondsellis.com

                                        **COUNSEL FOR DAVID DUNN,**
                                        **PLAN AGENT OF THE BASIC ENERGY**
                                        **LIQUIDATION TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, a true and correct copy of the foregoing Notice of Appearance was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

                                        */s/ Aaron M. Guerrero*
                                        Aaron M. Guerrero

USTP (Common) Ex. 19
Page 94 of 272

11

UST Exhibit 3
JW 30b6
Page 11 of 22

EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated [•], 2025 is made and entered into by and between Jackson Walker LLP ("JW") and David Dunn, in his capacity as the Plan Agent and sole manager, sole director, sole officer and sole representative of 4E Brands Northamerica LLC (the "Plan Agent", and collectively with JW, the "Parties"), with respect to the Case No. 22-50009; *In re 4E Brands Northamerica LLC* (the "Bankruptcy Case"), filed in the United States Bankruptcy Court for the Southern District of Texas.

### RECITALS

A.    On or about November 2, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel.

B.    The basis of the U.S. Trustee's motions was the undisclosed relationship between former JW partner Elizabeth Freeman and former Bankruptcy Judge David R. Jones;

C.    On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

D.    On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

E.    On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

F.    On February 27, 2024, the Plan Agent filed a joinder to the U.S. Trustee Filings.

G.    The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Case (collectively, the "Bankruptcy Disputes").

H.    The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings is set before the Honorable Chief Judge Rodriguez in May 2025.

USTP (Common) Ex. 19
Page 95 of 272

UST Exhibit 3
JW 30b6
Page 12 of 22

I.      On March 5, 2025, the Parties participated in a mediation regarding the U.S. Trustee Filings with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

J.      As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.      <u>Recitals</u>.  The above recitals are incorporated herein by reference.

2.      <u>Effective Date</u>.

(a)      The effective date of this Agreement (the "<u>Effective Date</u>") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court has entered an order (the "<u>Approval Order</u>") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "<u>Final Order</u>" when:  (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur:  (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Case or any other action or proceeding.

(b)      With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings.  Consistent with the preceding sentences, the Plan Agent will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "<u>Settlement Motion</u>").  Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion.  The Settlement Motion and related Approval Order shall be in

USTP (Common) Ex. 19
Page 96 of 272

UST Exhibit 3
JW 30b6
Page 13 of 22

form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Plan Agent and the bankruptcy estate of 4E Brands Northamerica LLC and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Case, that this Agreement is fair, reasonable, and equitable pursuant to the requirements established under Rule 9019 of the Bankruptcy Rules.

3. <u>Settlement Payment</u>. No later than one (3) business days after the Effective Date, JW shall pay or cause to be paid to the Plan Agent (receipt of which shall be promptly confirmed by the Plan Agent) the sum of $617,000.00 (the "<u>Settlement Payment</u>"). Payment shall be made payable to the Plan Agent's account by wire transfer using the following instructions:

Account Name:
Bank Name:
Account Number:
Wire Routing Number:
ACH Routing Number:
SWIFT Number:
Reference Number:

The Settlement Payment shall be paid to the Plan Agent and distributed pursuant to the terms of the confirmed plan in the Bankruptcy Case.

4. <u>Vacatur of Final Fee Order</u>. Subject to the approval of the Bankruptcy Court, the Parties agree that the *Final Order Allowing Compensation and Reimbursement of Expenses* [Dkt. No. 427] shall be vacated and the Approval Order shall approve, on a final basis, JW's compensation and reimbursement of expenses in the amount of $249,726.31.

5. <u>Mutual Releases</u>.

(a) *Release in Favor of JW*. On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Plan Agent, on behalf of 4E Brands Northamerica LLC, hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any

USTP (Common) Ex. 19
Page 97 of 272

UST Exhibit 3
JW 30b6
Page 14 of 22

way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Plan Agent and the estate of 4E Brands Northamerica LLC against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b)     *Release in Favor of the Plan Agent and 4E Brands Northamerica LLC*. On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Plan Agent, 4E Brands Northamerica LLC and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

6.     Bar. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Plan Agent or 4E Brands Northamerica LLC and its estate against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

7.     ***Express Waiver of Fraudulent Inducement Claims***.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF**

USTP (Common) Ex. 19
Page 98 of 272

**TION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY**

SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.

MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.

8.  <u>No Admission / Liability Denied</u>.  This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation.  The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied.  This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

9.  <u>Representations and Warranties</u>.  The following representations and warranties in this Agreement shall survive its execution and performance.

(a)  *Representations and Warranties by the Plan Agent.*

(i)  Subject to approval by the Bankruptcy Court, the Plan Agent has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Plan Agent;

(ii)  Subject to approval by the Bankruptcy Court, the execution, delivery and performance by the Plan Agent of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plan Agent may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plan Agent is a party to which the Plan Agent may be bound;

USTP (Common) Ex. 19
Page 99 of 272

UST Exhibit 3
JW 30b6
Page 16 of 22

(iii)    The Plan Agent and 4E Brands Northamerica LLC are the only persons or entities who, to the Plan Agent's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(iv)    The Plan Agent has freely and voluntarily entered into this Agreement and has been fully advised by the Plan Agent's attorneys concerning the Plan Agent's rights and have further been advised by the Plan Agent's attorneys as to the terms and effects of this Agreement.

(b)    *Representations and Warranties by JW.*

(i)    JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii)    The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii)    JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

10.    <u>Notice in the Miscellaneous Proceeding</u>.  Within three (3) business days after the Effective Date, the Plan Agent and JW shall file a joint notice in the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "<u>Miscellaneous Proceeding</u>"), attaching a copy of the Final Order and notifying the Honorable Chief Judge Rodriguez of the settlement of the claims related to the Bankruptcy Case.  The Parties may file a notice in the Miscellaneous Proceeding in advance of the Approval Order becoming a Final Order informing Chief Judge Rodriguez of the settlement and this Agreement.

USTP (Common) Ex. 19
Page 100 of 272

UST Exhibit 3
JW 30b6
Page 17 of 22

11.     <u>Cooperation and Withdrawal with Prejudice</u>. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, the Plan Agent withdrawing the joinder to the U.S. Trustee Filings with prejudice within three (3) business days after the Effective Date.

12.     <u>Bankruptcy Court Retention of Jurisdiction</u>. The Bankruptcy Court shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

13.     <u>Prohibition on Further Disclosure of Discovery Materials</u>. The Plan Agent shall be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party. The Parties understand and agree that the counsel for the Plan Agent represents Matthew Ray (the "<u>Bouchard Administrator</u>"), as the Plan Administrator of the Tug J. Bouchard Corporation bankruptcy case, in related proceedings, including the Miscellaneous Proceeding. Notwithstanding anything to the contrary herein, the Bouchard Administrator's use of any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or the Tug Robert J. Bouchard Corporation bankruptcy case shall not be prohibited by this Agreement. Upon final resolution, by settlement, final judgment or order, or otherwise, of the claims and causes of action in the Miscellaneous Proceeding and the Tug Robert J. Bouchard Corporation bankruptcy case, the Plan Agent and his, her or its counsel, any testifying and consulting experts, any third party vendor or consultant engaged by the Plan Agent or his, her or its counsel, and any employee of any of the foregoing persons or entities shall destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Case, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits.

14.     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

15.     <u>Dispute Resolution</u>. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court.

16.     <u>Successors and Assigns</u>. This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

17.     <u>Headings and Construction</u>. Headings in this Agreement are for convenience and are not to be used in construing this Agreement. This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

18.     <u>Entire Agreement / No Oral Agreements</u>. The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully set forth in the Agreement in respect of such matters. The Parties have not relied on any facts,

statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement. No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

19. <u>Expenses, Fees, and Costs</u>. The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

20. <u>Severability</u>. Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

21. <u>Waiver</u>. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

22. <u>Counterparts</u>. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

David Dunn, as Plan Agent and sole manager, sole director, sole officer and sole representative for 4E Brands Northamerica, LLC, and not in his individual capacity

DATED: 4/1/25

Jackson Walker LLP.

DATED: 4/1/2025

Name: William R. Jenkins, Jr.
Title: Partner & General Counsel

USTP (Common) Ex. 19
Page 103 of 272

UST Exhibit 3
JW 30b6
Page 20 of 22

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 4E BRANDS NORTH AMERICA LLC, | ) | Case No. 22-50009 (CML) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER APPROVING COMPROMISE AND SETTLEMENT
## PURSUANT TO BANKRUPTCY RULE 9019

Upon the hearing on the Motion (the "**Motion**") for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 filed by David Dunn, in his capacity as the Plan Agent and sole manager, sole director, sole officer and sole representation for 4E Brands Northamerica LLC (the "Plan Agent"), the Court having considered the Motion, all responses or objections thereto, the evidence presented at the hearing, the arguments of counsel, and the law, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; that this is a core proceeding under 28 U.S.C. § 157; that notice of the Motion and the opportunity for hearing on the Motion was appropriate under the particular circumstances; that no other or further notice need be provided; that the terms of the Settlement Agreement are fair, equitable, and in the best interest of the Debtor, the Debtor's estate, the creditors, and all other parties-in-interests; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Settlement as described in the Motion and Settlement Agreement (attached hereto as **Exhibit A**) is approved. The Settlement Agreement and the terms and conditions thereof, including, without limitation, the mutual releases contained therein, are incorporated by reference herein and approved in their entirety as if set forth herein; and it is further

USTP (Common) Ex. 19
Page 104 of 272

UST Exhibit 3
JW 30b6
Page 21 of 22

**ORDERED** that all objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice; and it is further

**ORDERED** that the Plan Agent is authorized to enter into the Settlement Agreement, execute all other documents, and take any and all actions necessary to effectuate the Settlement Agreement; and it is further

**ORDERED** that this Order is binding in all respects upon all parties in interest in this case, creditors of the Debtor or the estate, and the successors and assigns of each of the foregoing; and it is further

**ORDERED** that the *Final Order Allowing Compensation and Reimbursement of Expenses* [Dkt. No. 427] is VACATED; and it is further

**ORDERED** that Jackson Walker LLP's compensation and reimbursement of expenses are approved on a final basis in the amount of $249,726.31; and it is further

**ORDERED** that this Order shall be effective immediately upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _____

                  Christopher Lopez

                  United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| BASIC ENERGY SERVICES, INC., *et al.*[1], | § | Case No. 21-90002 (CML) |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

## MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 8, 2025 at 1:00 PM in Courtroom 401, 4th floor, 515 Rusk, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearance must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basic Energy Services, L.P. (1819); Basic Energy Services, Inc. (1194); C&J Well Services, Inc. (5684); KVS Transportation, Inc. (4882); Indigo Injection #3, LLC (7657); Basic Energy Services GP, LLC (1197); Basic Energy Services LP, LLC (1195); Taylor Industries, LLC (7037); SCH Disposal, L.L.C. (8335); Agua Libre Holdco LLC (3092); Agua Libre Asset Co LLC (1409); Agua Libre Midstream LLC (6701); and Basic ESA, Inc. (2279). The ___s and service address for the purposes of these chapter 11 cases is 801 Cherry Street, Suite 2100, ___5102

USTP (Common) Ex. 19
Page 106 of 272



UST Exhibit 4

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES, David Dunn (the "Trustee"), Liquidation Trustee for the Basic Energy Liquidation Trust, and files this Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 (the "Motion"), and in support thereof respectfully show the Court as follows:

## I.     RELIEF REQUESTED

1.      By this Motion, and in accordance with Bankruptcy Rule 9019(a),[2] the Trustee requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement") between Jackson Walker LLP ("JW") and the Trustee that would resolve any and all claims and causes of action of any kind held by the Trustee and the Debtors' estates against JW arising out of or related to Case No. 21-90002; *In re Basic Energy Services, Inc., et al.*; in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"), Case No. 23-00645; *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* in the United States Bankruptcy Court for the Southern District of Texas (the "Misc. Proceeding"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the releases set forth in the Settlement Agreement, JW shall pay the Trustee $783,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan (defined below) in the Bankruptcy Case.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is

---

[2] Article V.C.10 of the Plan (defined below) provides that the Trustee may compromise or settle any claims without ____ val by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy ____ the Trustee files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court.

USTP (Common) Ex. 19
Page 107 of 272

UST Exhibit 4
JW 30b6
Page 2 of 22

a core proceeding under 28 U.S.C. § 157. The Trustee confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### III.     <u>BACKGROUND</u>

4.     On August 17, 2021 (the "<u>Petition Date</u>"), each Debtor[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"). The Bankruptcy Case was before former Judge Jones.

5.     On December 13, 2021, the Debtors filed their *Application for Entry of an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel to the Debtors* [Docket No. 809]. JW's employment application was approved by former Judge Jones on January 19, 2022 [Docket No. 997].

6.     On June 25, 2022, the Debtors filed the *Combined Plan of Liquidation and Disclosure Statement of Basic Energy Services, Inc., and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1266]. On June 28, 2022, the Court entered an Order [Docket No. 1272] conditionally approving the disclosure statement. On August 9, 2022,

---

[3] For purposes of this Motion, the term "Debtor" means each of the following and the term "Debtors" means all of the following: Basic Energy Services, L.P.; Basic Energy Services, Inc.; C&J Well Services, Inc.; KVS Transportation, Inc.; Indigo Injection #3, LLC; Basic Energy Services GP, LLC; Basic Energy Services LP, LLC; Taylor Industries, L.L.C.; Agua Libre Holdco LLC; Agua Libre Asset Co LLC; Agua Libre Midstream LLC; and

USTP (Common) Ex. 19
Page 108 of 272

UST Exhibit 4
JW 30b6
Page 3 of 22

Debtors filed the *Amended Combined Disclosure Statement and Joint Plan of Liquidation of Basic Energy Services, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1421] (as amended, "Plan and Disclosure Statement" or "Plan"). Also on August 9, 2022, the Court entered an *Order Confirming the Debtors' Combined Plan of Liquidation and Approving on a Final Basis the Disclosure Statement of Basic Energy Services, Inc., and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 1436].

7.　　On August 26, 2022, the effective date of the Plan occurred (the "Effective Date") and the Debtors filed the *Notice of (i) Entry of Confirmation Order, (ii) Occurrence of the Effective Date, and (iii) Related Bar Dates* [Docket No. 1454].

8.　　On September 2, 2022, JW filed its *First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period from November 10, 2021 through August 9, 2022* (the "Fee Application") [Docket No. 1459]. JW's Fee Application was approved by order entered by former Judge Jones on September 29, 2022, awarding compensation and reimbursement of expenses in the amount of $1,543,432.34 [Docket No. 1511].

9.　　On or about November 2, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Docket No. 1759]. On February 29, 2024, the U.S. Trustee filed an amended Rule 60(b)(6) motion in the Bankruptcy Case [Docket No. 1791]. The basis of the U.S. Trustee's motions was the undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

10.　　On December 9, 2023, an Order was entered commencing the Misc. Proceeding.

USTP (Common) Ex. 19
Page 109 of 272

UST Exhibit 4
JW 30b6
Page 4 of 22

11.     On February 28, 2024, the Trustee filed his *Joinder in United States Trustee's Motion for Relief from Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications for Compensation and Reimbursement of Expenses* [Docket No. 1788].

12.     On May 22, 2024, JW filed its response in opposition to the U.S. Trustee motions [Docket No. 1834].

13.     On July 1, 2024, the U.S. Trustee filed his reply [Docket No. 1846].

14.     On August 12, 2024, JW filed its sur-reply [Docket No. 1849].

15.     JW disputes the merits of the U.S. Trustee's motion and the Trustee's joinder. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Case.

16.     The Trustee has participated in the Misc. Proceeding since its inception, including his counsel attending in excess of 30 fact witness and expert depositions, as well as propounded written discovery to JW, reviewed thousands of documents produced, and attended numerous hearings. The Trustee has attended multiple meetings and participated in regular calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases. The parties to Misc. Proceeding engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee application as raised in the U.S. Trustee's motion is currently set before the Honorable Chief Judge Eduardo V. Rodriguez in May 2025.

17.     On March 5, 2025, JW and the Trustee participated in a mediation regarding the allegations in the U.S. Trustee motion, as joined by the Trustee, and the Trustee's claims (or

USTP (Common) Ex. 19
Page 110 of 272

UST Exhibit 4
JW 30b6
Page 5 of 22

potential claims) against JW with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

18.     As a result thereof, JW and the Trustee reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

## IV.    SUMMARY OF SETTLEMENT AGREEMENT[4]

19.     Within 3 business days of an order granting this Motion becoming a Final Order (as defined therein), JW will pay to the Trustee $783,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case.

20.     In exchange for the Settlement Amount, JW and the Trustee are providing mutual releases. The Trustee, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date, including claims and causes of action arising from or relating to the Bankruptcy Case, the U.S. Trustee's motion, the Trustee's joinder and the relationship between Elizabeth Freeman and former Judge Jones.  JW, as more fully set forth in the Settlement Agreement, will release the Trustee from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of action arising from or related to the Bankruptcy Case, the U.S. Trustee's motion, the Trustee's joinder, and the relationship between Elizabeth Freeman and former Judge Jones.

## V.    ARGUMENTS AND AUTHORITIES

21.     Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing,

---

[4] The summary of the settlement terms is being provided herein for convenience only.  To the extent of any ___ en this summary and the Settlement Agreement attached hereto, the Settlement Agreement

USTP (Common) Ex. 19
Page 111 of 272

UST Exhibit 4
JW 30b6
Page 6 of 22

the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

22. "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id.* at 462. Those factors are:

    i.    The balance between the litigation's possibility of success and the settlement's future benefits;

    ii.    The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

    iii.    The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

    iv.    Whether other parties in interest support the settlement;

    v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

    vi.    The nature and breadth of releases to be obtained by [the settling party]; and

    vii.    The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d

USTP (Common) Ex. 19
Page 112 of 272

UST Exhibit 4
JW 30b6
Page 7 of 22

285, 292 (2d Cir. 1992)).

23. The Trustee contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Trustee and Liquidation Trust the full benefit of the Settlement Amount without the time, expense and uncertainty of litigation.

**A. The balance between the litigation's possibility of success and the settlement's future benefits**

24. The Trustee contends that the possibility of success in the litigation against JW is high but there are a substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Trustee will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides a significant recovery for the Liquidation Trust for payment to creditors in accordance with the confirmed Plan and eliminates the litigation risk of continuing to litigate the claims against JW.

25. The Trustee submits there is a significant likelihood that the orders approving JW's fee applications will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Liquidation Trust. However, the trial currently set to commence in May will not determine the amount of fees to be recovered, if any. The Trustee would then be required to pursue additional litigation to recover fees and, more importantly, the amount of fees to be recovered, at this time, is uncertain. Appeals could also follow further extending the litigation timeline.

26. The Settlement Agreement and Settlement Amount provides the Liquidation Trust with more than half of the fees awarded to JW, upon an order approving the Settlement Amount becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan.

USTP (Common) Ex. 19
Page 113 of 272

**B. The likelihood of complex and protracted litigation, with its attendant expense,**

UST Exhibit 4
JW 30b6
Page 8 of 22

**inconvenience, and delay, including the difficulty in collecting on the judgment**

27.     There is a high likelihood that litigation will be complex and protracted. As discussed above, the trial set to commence in May 2025 only addresses the issue of whether the orders approving JW's fee applications will be vacated.  Even if the Trustee prevails in at trial in May 2025, the issue of sanctions and/or disgorgement and how much will be left unresolved, and the Trustee recognizes that, under applicable law, even if the order approving JW's final fee application is vacated, such result is unlikely to result in disgorgement of 100% of fees in any later disgorgement or sanctions hearing.  Additionally, the Trustee has retained counsel with respect to the U.S. Trustee's motions and will continue to need to retain and pay counsel with respect to any sanctions and/or disgorgement proceeding.  A settlement now brings finality and eliminates any meaningful litigation and collection risk. However, that risk could increase with the passage of time and continued litigation.

**C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

28.     The Trustee is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the Litigation Trust from incurring further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery for the benefit of the creditors.  This is also a substantial step in bringing the administration of the Liquidation Trust to an end.

**D. Whether other parties in interest support the settlement**

29.     The Trustee submits this factor favors settlement. The confirmed Plan and Liquidation Trust Agreement (as defined in the Plan) in this case established a Liquidation Trust Oversight Committee, which includes representatives designated by the primary creditor

USTP (Common) Ex. 19
Page 114 of 272

UST Exhibit 4
JW 30b6
Page 9 of 22

constituencies in this case, including the official committee of unsecured creditors. The Liquidation Trust Oversight Committee, who represents the interests of the major creditor constituencies, supports the settlement, which the Trustee submits reflects the support of creditors for the settlement.

**E. The nature and breadth of releases to be obtained by JW and the Trustee**

30.     The Settlement Agreement contains customary broad mutual releases among JW and the Trustee on behalf of the bankruptcy estates. This is to bring finality to the claims and disputes between the Trustee and JW.

**F. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

31.     Counsel for the Trustee and JW, as well as Judge Lopez, are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates.  The Settlement Agreement was reached after fifteen (15) months of litigation, over seven (7) months of discovery, and after the parties exchanged settlement proposals both prior to and at mediation. The settlement was reached following extensive arms-length negotiations conducted during mediation with two experienced mediators and retired Federal Judges.

32.     The Trustee recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation.  The Trustee believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses.  The Trustee has attempted to achieve a resolution that maximizes value for the estate.  Consequently, the Trustee urges that the Settlement Agreement is fair, equitable, and in the best interest of the estate and all concerned parties.

USTP (Common) Ex. 19
Page 115 of 272

UST Exhibit 4
JW 30b6
Page 10 of 22

WHEREFORE, the Trustee respectfully request that the Court enter an order approving the Settlement Agreement and granting the Trustee such other legal or equitable relief as the Court may deem just and proper.

DATED: April 4, 2025              Respectfully submitted,

**BONDS ELLIS EPPICH SCHAFER JONES LLP**

*/s/ Aaron M. Guerrero*
Ken Green (Texas State Bar No. 24036677)
Aaron M. Guerrero (Texas State Bar No. 24050698)
Bryan Prentice (Texas State Bar No. 24099787)
402 Heights Boulevard
Houston, Texas 77007
(713) 335-4990 telephone
(832) 740-1411 facsimile
ken.green@bondsellis.com
aaron.guerrero@bondsellis.com
bryan.prentice@bondsellis.com

**COUNSEL FOR DAVID DUNN, LIQUIDATION TRUSTEE OF THE BASIC ENERGY LIQUIDATION TRUST**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 4, 2025, a true and correct copy of the foregoing Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Aaron M. Guerrero*
Aaron M. Guerrero

USTP (Common) Ex. 19
Page 116 of 272

UST Exhibit 4
JW 30b6
Page 11 of 22

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated [•], 2025 is made and entered into by and between Jackson Walker LLP ("JW") and David Dunn, in his capacity as the Liquidation Trustee of the Basic Energy Liquidation Trust (the "Liquidation Trustee", and collectively with JW, the "Parties"), with respect to the bankruptcy cases jointly administered under Case No. 21-90002; *In re Basic Energy Services, Inc., et al.* (the "Bankruptcy Case"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A.      On or about November 2, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel.

B.      The basis of the U.S. Trustee's motions was the undisclosed relationship between former JW partner Elizabeth Freeman and former Bankruptcy Judge David R. Jones;

C.      On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases").    All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

D.      On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

E.      On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

F.      On February 28, 2024, the Liquidation Trustee filed a joinder to the U.S. Trustee Filings.

G.      The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Case (collectively, the "Bankruptcy Disputes").

H.      The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings is set before the Honorable Chief Judge Rodriguez in May 2025.

USTP (Common) Ex. 19
Page 117 of 272

UST Exhibit 4
JW 30b6
Page 12 of 22

I.    On March 5, 2025, the Parties participated in a mediation regarding the U.S. Trustee Filings with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

J.    As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.    <u>Recitals</u>.  The above recitals are incorporated herein by reference.

2.    <u>Effective Date</u>.

(a)    The effective date of this Agreement (the "<u>Effective Date</u>") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court has entered an order (the "<u>Approval Order</u>") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "<u>Final Order</u>" when:  (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur:  (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Case or any other action or proceeding.

(b)    With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings.  Consistent with the preceding sentences, [the Liquidation Trustee will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "<u>Settlement Motion</u>").  Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion.  The Settlement Motion and related Approval Order shall

USTP (Common) Ex. 19
Page 118 of 272

UST Exhibit 4
JW 30b6
Page 13 of 22

be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Liquidation Trustee and the bankruptcy estates of Basic Energy Services, Inc. and its affiliated debtors and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Case, that this Agreement is fair, reasonable, and equitable pursuant to the requirements established under Rule 9019 of the Bankruptcy Rules.

3.   <u>Settlement Payment</u>.   No later than one (3) business days after the Effective Date, JW shall pay or cause to be paid to the Basic Energy Liquidation Trust (receipt of which shall be promptly confirmed by the Liquidation Trustee) the sum of $783,000.00 (the "<u>Settlement Payment</u>"). Payment shall be made payable to the Basic Energy Liquidation Trust's account by wire transfer using the following instructions:

Account Name:
Bank Name:
Account Number:
Wire Routing Number:
ACH Routing Number:
SWIFT Number:
Reference Number:

The Settlement Payment shall be paid to the Basic Energy Liquidation Trust and distributed pursuant to the terms of the confirmed plan in the Bankruptcy Case.

4.   <u>Vacatur of Final Fee Order</u>.   Subject to the approval of the Bankruptcy Court, the Parties agree that the *Final Order Allowing Compensation and Reimbursement of Expenses* [Dkt. No. 1511] shall be vacated and the Approval Order shall approve, on a final basis, JW's compensation and reimbursement of expenses in the amount of $760,432.34.

5.   <u>Mutual Releases</u>.

(a)   *Release in Favor of JW*. On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Liquidation Trustee, on behalf of the Basic Energy Liquidation Trust, hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial,

USTP (Common) Ex. 19
Page 119 of 272

UST Exhibit 4
JW 30b6
Page 14 of 22

disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Basic Energy Liquidation Trust and the estates of Basic Energy Services, Inc. and its affiliated debtors against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b) *Release in Favor of the Liquidation Trustee and the Basic Energy Liquidation Trust.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Liquidation Trustee, the Basic Energy Liquidation Trust and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

6. <u>Bar</u>. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Liquidation Trustee or the estates of Basic Energy Services Inc. and its affiliated debtors against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

7. ***<u>Express Waiver of Fraudulent Inducement Claims</u>***.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, ISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS**

USTP (Common) Ex. 19
Page 120 of 272

UST Exhibit 4
JW 30b6
Page 15 of 22

**OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.**

8.   <u>No Admission / Liability Denied</u>.   This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation.  The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied.  This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

9.   <u>Representations and Warranties</u>.  The following representations and warranties in this Agreement shall survive its execution and performance.

(a)   *Representations and Warranties by the Liquidation Trustee.*

(i)   Subject to approval by the Bankruptcy Court, the Liquidation Trustee has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Liquidation Trustee;

(ii)   Subject to approval by the Bankruptcy Court, the execution, delivery and performance by the Liquidation Trustee of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Liquidation

USTP (Common) Ex. 19
Page 121 of 272

UST Exhibit 4
JW 30b6
Page 16 of 22

Trustee may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Liquidation Trustee is a party to which the Liquidation Trustee may be bound;

(iii) The Liquidation Trustee and Basic Energy Liquidation Trust are the only persons or entities who, to the Liquidation Trustee's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(iv) The Liquidation Trustee has freely and voluntarily entered into this Agreement and has been fully advised by the Liquidation Trustee's attorneys concerning the Liquidation Trustee's rights and have further been advised by the Liquidation Trustee's attorneys as to the terms and effects of this Agreement.

(b) *Representations and Warranties by JW.*

(i) JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii) The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii) JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

10. <u>Notice in the Miscellaneous Proceeding</u>. Within three (3) business days after the Effective Date, the Liquidation Trustee and JW shall file a joint notice in the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, 645, pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court

USTP (Common) Ex. 19
Page 122 of 272

UST Exhibit 4
JW 30b6
Page 17 of 22

(the "Miscellaneous Proceeding"), attaching a copy of the Final Order and notifying the Honorable Chief Judge Rodriguez of the settlement of the claims related to the Bankruptcy Case. The Parties may file a notice in the Miscellaneous Proceeding in advance of the Approval Order becoming a Final Order informing Chief Judge Rodriguez of the settlement and this Agreement.

11.     Cooperation and Withdrawal with Prejudice. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, the Liquidation Trustee withdrawing the joinder to the U.S. Trustee Filings with prejudice, within three (3) business days after the Effective Date, .

12.     Bankruptcy Court Retention of Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

13.     Prohibition on Further Disclosure of Discovery Materials. The Liquidation Trustee shall be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party. The Parties understand and agree that the counsel for the Liquidation Trustee represents Matthew Ray (the "Bouchard Administrator"), as the Plan Administrator of the Tug J. Bouchard Corporation bankruptcy case, in related proceedings, including the Miscellaneous Proceeding. Notwithstanding anything to the contrary herein, the Bouchard Administrator's use of any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or the Tug Robert J. Bouchard Corporation bankruptcy case shall not be prohibited by this Agreement. Upon final resolution, by settlement, final judgment or order, or otherwise, of the claims and causes of action in the Miscellaneous Proceeding and the Tug Robert J. Bouchard Corporation, the Liquidation Trustee and his, her or its counsel, any testifying and consulting experts, any third party vendor or consultant engaged by the Liquidation Trustee or his, her or its counsel, and any employee of any of the foregoing persons or entities shall destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Case, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits.

14.     Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

15.     Dispute Resolution. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court.

16.     Successors and Assigns. This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

17.     Headings and Construction. Headings in this Agreement are for convenience and are not to be used in construing this Agreement. This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be

USTP (Common) Ex. 19
Page 123 of 272

UST Exhibit 4
JW 30b6
Page 18 of 22

construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

18. <u>Entire Agreement / No Oral Agreements</u>. The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement. No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

19. <u>Expenses, Fees, and Costs</u>. The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

20. <u>Severability</u>. Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

21. <u>Waiver</u>. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

22. <u>Counterparts</u>. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

USTP (Common) Ex. 19
Page 124 of 272

UST Exhibit 4
JW 30b6
Page 19 of 22

David Dunn, as Liquidation Trustee for the Basic
Energy Liquidation Trust, and not in his individual
capacity

DATED: 4/1/25

Jackson Walker LLP

DATED: 4/1/2025

Name: William R. Jenkins, Jr.
Title: **Partner** & General Counsel

UST Exhibit 4
JW 30b6
Page 20 of 22

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| BASIC ENERGY SERVICES, INC., *et al.*, | § | Case No. 21-90002 (CML) |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

### ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

Upon the hearing on the Motion (the "**Motion**") for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 filed by David Dunn, in his capacity as the Liquidation Trustee of the Basic Energy Liquidation Trust, the Court having considered the Motion, all responses or objections thereto, the evidence presented at the hearing, the arguments of counsel, and the law, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; that this is a core proceeding under 28 U.S.C. § 157; that notice of the Motion and the opportunity for hearing on the Motion was appropriate under the particular circumstances; that no other or further notice need be provided; that the terms of the Settlement Agreement are fair, equitable, and in the best interest of the Debtors, the Debtors' estates, the creditors, the Basic Energy Liquidation Trust, the beneficiaries of the Basic Energy Liquidation Trust, and all other parties-in-interests; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Settlement as described in the Motion and Settlement Agreement (attached hereto as **Exhibit A**) is approved. The Settlement Agreement and the terms and conditions thereof, including, without limitation, the mutual releases contained therein, are incorporated by reference herein and approved in their entirety as if set forth herein; and it is further

USTP (Common) Ex. 19
Page 126 of 272

UST Exhibit 4
JW 30b6
Page 21 of 22

**ORDERED** that all objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice; and it is further

**ORDERED** that the Liquidation Trustee is authorized to enter into the Settlement Agreement, execute all other documents, and take any and all actions necessary to effectuate the Settlement Agreement; and it is further

**ORDERED** that this Order is binding in all respects upon all parties in interest in this case, creditors of the Debtors or the estates, beneficiaries of the Basic Energy Liquidation Trust, and the successors and assigns of each of the foregoing; and it is further

**ORDERED** that the *Final Order Allowing Compensation and Reimbursement of Expenses* [Dkt. No. 1511] is VACATED; and it is further

**ORDERED** that Jackson Walker LLP's compensation and reimbursement of expenses are approved on a final basis in the amount of $760,432.34; and it is further

**ORDERED** that this Order shall be effective immediately upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: _____

Christopher Lopez
United States Bankruptcy Judge

USTP (Common) Ex. 19
Page 127 of 272

UST Exhibit 4
JW 30b6
Page 22 of 22

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | **Civil Action No. 4:23-cv-04787** |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM** | § | |
| | § | |

## MOTION FOR ENTRY OF ORDER APPROVING COMPROMISE OF CONTROVERSY UNDER BANKRUPTCY RULE 9019

**TO THE HONORABLE ALIA MOSES, CHIEF UNITED STATES DISTRICT JUDGE:**

Patrick Bartels, as Plan Agent (the "**Plan Agent**") for the Wind-Down Debtors[1] in jointly administered Case No. 23-90055, *In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.)*, files this Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Procedure 9019 (the "**Motion**") and respectfully states as follows:

### Summary of Relief Requested

1.     The Trustee seeks entry of an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between the Plan Agent and Jackson Walker, LLP ("**JW**").  Pursuant to the terms of the Settlement Agreement, JW will pay the Trustee the total amount of $500,000.00 (the "**Settlement Amount**") and the parties will exchange mutual releases.

2.     A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion.

---

[1] The Wind-Down Debtor entities in jointly administered Bankruptcy Case No. 23-90055 (formerly Bankruptcy Case No. 23-90054), styled *In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.)* are: IEH Auto Parts Holding LLC; AP Acquisition Company Clark LLC; AP Acquisition Company Gordon LLC; AP Acquisition Company Massachusetts LLC; AP Acquisition Company Missouri LLC; AP Acquisition Company New York LLC; AP Acquisition Company North Carolina LLC; AP Acquisition Company Washington LLC; Auto Plus Auto Sales LLC; IEH AIM LLC; IEH Auto Parts LLC; IEH Auto Parts Puerto Rico, Inc.; and IEH BA LLC.

USTP (Common) Ex. 19
Page 128 of 272

UST
Exhibit
**5**

**Jurisdiction and Venue**

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

4.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The basis for the relief requested herein is Rule 9019[2] of the Federal Rules of Bankruptcy Procedure.

**Background**

**A.  The Auto Plus Cases.**

6.    On January 31, 2023 (the "**Petition Date**"), thirteen Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.3   On February 1, 2023, the Bankruptcy Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases under the case of IEH Auto Parts Holding LLC, Case No. 23-90054 (the "**Bankruptcy Case**").

7.    On March 2, 2023, the Debtors filed their Application to Retain Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession [Bankr. Case No. 23-90054, Docket No. 181].

8.    On March 28, 2023, the Bankruptcy Court entered an Order Authorizing the Retention and Employment of Jackson Walker LLP as Counsel for the Debtors and Debtors in Possession [Bankr. Case No. 23-90054, Docket No. 273].

---

[2] Article IV.A.3. of the Plan (defined below) provides that the Plan Agent may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, the Plan Agent files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court to provide transparency to the Court and parties-in-interest with regard to their settlement with JW.

USTP (Common) Ex. 19
Page 129 of 272

...ate, Ms. Elizabeth Freeman was no longer a partner with JW.

2

UST Exhibit 5
JW 30b6
Page 2 of 20

9.      On August 10, 2023, the Bankruptcy Court entered its Order Confirming the Third Amended Combined Disclosure Statement and Joint Plan of Liquidation of IEH Auto Parts Holding LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "**Confirmation Order**") [Bankr. Case No. 23-90054, Docket No. 749], confirming the Debtors' Amended Chapter 11 Plan (the "**Plan**") [Bankr. Case No. 23-90054, Docket No. 738]. On October 6, 2023, the Plan went effective (the "**Effective Date**"). Pursuant to the Plan, the Wind-Down Debtors shall continue in existence for purposes of resolving Claims that are not General Unsecured Claims and otherwise administering the Plan. *See* Plan at 25.

10.      On September 29, 2023, JW filed its First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period From January 31, 2023 Through June 16, 2023 [Bankr. Case No. 23-90054, Docket No. 911].

11.      On November 4, 2023, the Bankruptcy Court entered a Final Order Granting Jackson Walker LLP's First and Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtors for the Period from January 31, 2023 Through June 16, 2023 [Bankr. Case No. 23-90054, Docket No. 981].

**B.  The Miscellaneous Proceeding.**

12.      On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "**UST**"), filed his Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications For Compensation and Reimbursement of Expenses (the "**Rule 60(b) Motion**") [Bankr. Case No. 23-90054, Docket No. 1471].

13.      On December 8, 2023, a Case Management Order was entered noting that Chief Bankruptcy Judge Eduardo Rodriguez ("**Chief Judge Rodriguez**") had commenced and would

USTP (Common) Ex. 19
Page 130 of 272

3

UST Exhibit 5
JW 30b6
Page 3 of 20

preside over Miscellaneous Proceeding No. 23-00645, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* (the "**JW Proceeding**") in the Bankruptcy Court.

14.     On February 29, 2024, the U.S. Trustee filed his Amended Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief (the "**Amended Rule 60(b) Motion**"). The Rule 60(b) and the Amended Rule 60(b) Motions are referred to as the "**UST Motions**."

15.     On May 22, 2024, JW filed its Response in Opposition to the UST's Motions [Bankr. Case No. 23-90054, Docket No. 1603].

16.     On July 1, 2024, the UST filed his Reply to JW Response in Opposition [Bankr. Case No. 23-90054, Docket No. 1695].

17.     On August 12, 2024, JW filed its Sur-Reply to the UST's Reply [Bankr. Case No. 23-90054, Docket No. 1750].

18.     JW disputes the merits of the UST's Motion. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case. The Plan Agent disagrees with JW's alleged defenses and believes that the release and exculpation provisions of the Plan will provide no defense for JW in a trial of the UST Motions.

19.     The Plan Agent and JW had arms-length communications over several months which resulted in the execution of the Settlement Agreement.

USTP (Common) Ex. 19
Page 131 of 272

UST Exhibit 5
JW 30b6
Page 4 of 20

### Proposed Settlement and Compromise

20.　　As more fully set forth in the Settlement Agreement, JW and the Plan Agent have agreed to the following:

- Within three (3) business days after the Effective Date in the Settlement Agreement, JW will pay the sum of $500,000 (the "Settlement Payment") to the Plan Agent; and

- The Plan Agent and JW will provide each other broad mutual releases, including any claims related to the relationship between Elizabeth Freeman and former Judge Jones.

### Merits of Compromise

21.　　The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the settlement is reasonable in relation to the likely rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

22.　　In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

(i)　　the probabilities of ultimate success should the claim be litigated;

(ii)　　the complexity, expense, and likely duration of litigating the claim;

(iii)　　the difficulties of collecting a judgment rendered from such litigation;

(iv)　　the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

USTP (Common) Ex. 19
Page 132 of 272

UST Exhibit 5
JW 30b6
Page 5 of 20

(v)     whether other parties in interest support the settlement;

(vi)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the nature and breadth of releases to be obtained by [the settling party]; and

(vii)   the extent to which the settlement is the product of arm's length bargaining.

*TMT Trailer*, 390 U.S. at 424.  The Plan Agent believes that the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer*.

## **Analysis of Proposed Compromise**

**A. Probabilities of Ultimate Success.**

23.     The Plan Agent believes that if the matter was fully litigated, there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that JW would have to disgorge some of its fees from the Bankruptcy Cases.  With that said, the Plan Agent acknowledges that former Judge Jones only served as the mediator in the Bankruptcy Cases; he was not the presiding judge.  Nor was Ms. Freeman a partner at JW as the time the Bankruptcy Cases were commenced.  These factors, among others, were considered by the Plan Agent.  Additionally, JW has alleged numerous defenses to the claim and has expressed its commitment to fully defending through trial and appeal, if necessary.  Accordingly, there are substantial questions concerning: (i) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (ii) the amount of recovery the Plan Agent will realize through litigation when balanced against the cost of continued litigation.

24.     The Settlement Amount provides a significant recovery to the Plan Agent that will be distributed in accordance with the Plan.  The settlement eliminates the risk in litigation and the cost of continued litigation with JW.

USTP (Common) Ex. 19
Page 133 of 272

UST Exhibit 5
JW 30b6
Page 6 of 20

25.     Both parties acknowledge that a certain degree of uncertainty always exists with respect to litigation.  The Plan Agent believes that the proposed settlement and compromise fairly recognizes his anticipated recovery on the claims without continued litigation. The parties have attempted to achieve a resolution that minimizes the potential damage and risk to all parties.

26.     The Plan Agent believes that the proposed compromise is in the best interest of the Wind-Down Debtors. The compromise provides for a payment by JW of $500,000.00.  Given the inherent risk in litigation, the Plan Agent believes this is a reasonable compromise. For these reasons, the Plan Agent believes this factor weighs in favor of the proposed compromise.

**B.  Complexity, Expense and Likely Duration.**

27.     The litigation is quite factually and legally complex, and it will undoubtedly be hotly contested at any trial and beyond.  The litigation has already spanned almost two (2) years. As of this filing, no trial date has been set, thus requiring continued monitoring, which comes with its own accruing costs. Additionally, absent settlement, the Plan Agent will be forced to attend any future trial which would result in substantially more costs and fees being incurred by the Wind-Down Debtors.

28.     More significantly, the JW Fee Dispute is one of the few remaining open items in the Bankruptcy Cases.  Approval of this Settlement Agreement will allow for a quicker distribution to unsecured creditors and end the continued expenses that have been accruing, including but not limited to the UST's fees.

29.     The Plan Agent believes this factor strongly weighs in favor of the proposed compromise.

USTP (Common) Ex. 19
Page 134 of 272

UST Exhibit 5
JW 30b6
Page 7 of 20

### C. Difficulties in Collection.

30.     If a judgment were rendered in an amount sought by the Plan Agent, the Plan Agent believes he would be able to recover from JW. This factor is neutral with respect to the proposed compromise.

### D. Paramount Interests of Creditors and Support of the Settlement.

31.     The Plan Agent has conferred with counsel for the American Entertainment Properties Corp. ("**AEP**") in the case. Pursuant to the terms of the Plan, AEP is the party in interest who will receive the largest portion of the funds from the settlement. Counsel for AEP has confirmed that it supports the proposed settlement.

### E. Nature and Breadth of Releases.

32.     The aim of the Settlement Agreement was to bring finality to the disputes between the Plan Agent and JW. Accordingly, the Settlement Agreement contains broad mutual releases between the Plan Agent and JW. Accordingly, the Trustee believes this factor supports the proposed settlement.

### F. Competency, Experience, Knowledge, and Arms-Length Nature of Settlement.

33.     Counsel for the Plan Agent and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates. The Settlement Agreement was reached after twenty (20) months of litigation, over seven (7) months of discovery, and following extensive arms-length negotiations.

34.     While uncertainty always exists with continued litigation, the Plan Agent believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Agent has attempted to achieve a resolution that maximizes value for the Wind-Down Debtors.

USTP (Common) Ex. 19
Page 135 of 272

UST Exhibit 5
JW 30b6
Page 8 of 20

The Plan Agent believes that the Settlement Agreement is fair, equitable, and in the best interest of the estates.

Accordingly, the Plan Agent requests that this Court approve the proposed settlement and compromise set forth above and grant such other relief as is just.

**Dated: September 24, 2025.**

Respectfully submitted,

**McCLOSKEY ROBERSON WOOLLEY, PLLC**

By:*/s/ Thomas A. Woolley, III*
　　Thomas A. Woolley, III
　　SBOT: 24042193
　　Timothy M. McCloskey
　　SBOT: 13417650
　　Carissa N. Brewster
　　SBOT: 24122933
　　190 TC Jester Blvd., Suite 400
　　Houston, TX 77007
　　713-337-3900
　　713-337-3915 (fax)
　　rwoolley@mrwpllc.com
　　tmccloskey@mrwpllc.com
　　cbrewster@mrwpllc.com
　　***Counsel for Patrick Bartels, Plan Agent***

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served via ECF on parties receiving ECF service in the above-referenced case on September 24, 2025.

*/s/ Thomas A. Woolley, III*
Thomas A. Woolley, III

USTP (Common) Ex. 19
Page 136 of 272

UST Exhibit 5
JW 30b6
Page 9 of 20

# Exhibit A

USTP (Common) Ex. 19
Page 137 of 272

UST Exhibit 5
JW 30b6
Page 10 of 20

## SETTLEMENT AGREEMENT AND RELEASE

      This settlement agreement (the "Agreement") dated September 23, 2025 is made and entered into by and between Jackson Walker LLP ("JW") and Patrick Bartels (the "Plan Agent"), as Plan Agent for the Wind-Down Debtors (collectively with JW and the Plan Agent, the "Parties"), with respect to the bankruptcy cases jointly administered under Bankruptcy Case No. 23-90055 (formerly Bankruptcy Case No. 23-90054), styled *In re Auto Plus Auto Sales LLC* (formerly *In re IEH Auto Parts Holding, LLC, et al.*) (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

      A.    On or about November 2-3, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel. The U.S. Trustee also filed related motions seeking to withdraw the reference of the Rule 60(b) motions.

      B.    On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, including the above-referenced Bankruptcy Cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

      C.    On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

      D.    On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

      E.    The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's acts or omissions in relation to the Bankruptcy Cases, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases (collectively, the "Bankruptcy Disputes").

      F.    The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings was initially set before the Honorable Chief Judge Rodriguez in May 2025.

      G.    On April 9, 2025, Chief District Court Judge Alia Moses entered a *Memorandum Opinion and Order* withdrawing the Rule 60(b) motions, including the motion filed in the

UST Exhibit 5
JW 30b6
Page 11 of 20

Bankruptcy Case, to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court" or "District Court Proceeding", as applicable).

H.     In order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.     Recitals.  The above recitals are incorporated herein by reference.

2.     Effective Date.

(a)     The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court or District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Cases, the District Court Proceeding, or any other action or proceeding.

(b)     With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings related to approval of the Settlement Motion (defined below).  Consistent with the preceding sentences, the Plan Agent will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "Settlement Motion").  Before the Settlement Motion is filed, JW

UST Exhibit 5
JW 30b6
Page 12 of 20

will be given an opportunity to review and comment on the Settlement Motion. The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Plan Agent and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Cases, and that this Agreement meets the standards required for approval under Rule 9019 of the Bankruptcy Rules.

3.    Settlement Payment.    Within three (3) business days after the Effective Date, JW shall pay or cause to be paid to the Plan Agent (receipt of which shall be promptly confirmed by the Plan Agent) the sum of $500,000.00 (the "Settlement Payment"). Payment shall be made payable to the Plan Agent's account by wire transfer using wire transfer instructions separately provided to JW. The Settlement Payment shall be paid to the Plan Agent and distributed pursuant to the terms of the confirmed plan in the Bankruptcy Cases.

4.    Mutual Releases.

(a)    *Release in Favor of JW.*    Upon receipt of the entire Settlement Payment, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Plan Agent on behalf of the Wind-Down Debtors hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Plan Agent against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b)    *Release in Favor of the Plan Agent and the Wind-Down Debtors.*    On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby

USTP (Common) Ex. 19
Page 140 of 272

3

UST Exhibit 5
JW 30b6
Page 13 of 20

releases, acquits, and forever discharges the Plan Agent and Wind-Down Debtors and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

5.  Bar. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Plan Agent or Wind-Down Debtors against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

6.  ***Express Waiver of Fraudulent Inducement Claims***.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY**

USTP (Common) Ex. 19
Page 141 of 272

4

UST Exhibit 5
JW 30b6
Page 14 of 20

**AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.**

7.  <u>No Admission / Liability Denied</u>.  This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation. The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied. This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

8.  <u>Representations and Warranties</u>.  The following representations and warranties in this Agreement shall survive its execution and performance.

    (a)   *Representations and Warranties by the Plan Agent.*

        (i)    Subject to approval by the Bankruptcy Court or District Court, as applicable, the Plan Agent has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Wind-Down Debtors;

        (ii)   Subject to approval by the Bankruptcy Court or District Court, as applicable, the execution, delivery and performance by the Plan Agent of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Wind-Down Debtors may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plan Agent is a party to which the Wind-Down Debtors may be bound;

        (iii)  The Plan Agent and the Wind-Down Debtors are the only person or entity who, to the Plan Agent's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; *provided however*, that JW acknowledges that the U.S. Trustee has also asserted claims against JW in the pending Rule 60 Motions, including the Rule 60 Motion filed in the Bankruptcy Cases; and

USTP (Common) Ex. 19
Page 142 of 272

5

UST Exhibit 5
JW 30b6
Page 15 of 20

(iv)     the Plan Agent has freely and voluntarily entered into this Agreement and has been fully advised by his attorneys concerning the Wind-Down Debtor's rights and have further been advised by his attorneys as to the terms and effects of this Agreement.

(b)     *Representations and Warranties by JW.*

(i)     JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii)    The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii)   The Plan Agent and the Wind-Down Debtors are the only person or entity who, to JW's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; *provided however*, that the Plan Agent and Wind-Down Debtors acknowledge that the U.S. Trustee has also asserted claims against JW in the pending Rule 60 Motions, including the Rule 60 Motion filed in the Bankruptcy Cases; and

(iv)    JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

9.     <u>Notice in the Miscellaneous Proceeding or Bankruptcy Case</u>.  Within three (3) business days after the Effective Date, the Plan Agent may file a notice in the Bankruptcy Cases or the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, previously pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "<u>Miscellaneous Proceeding</u>"), as may be applicable, attaching a copy of the Final Order and notifying the applicable judge of the settlement of the

USTP (Common) Ex. 19
Page 143 of 272

6

UST Exhibit 5
JW 30b6
Page 16 of 20

Docusign Envelope ID: 2C025468-79F1-4274-9A35-455244D2C91A

claims related to the Rule 60(b) motion and the Bankruptcy Cases. The Plan Agent may file a notice in the Bankruptcy Cases and/or the Miscellaneous Proceeding, as applicable, in advance of the Approval Order becoming a Final Order informing the applicable pending judge of the settlement and this Agreement.

10.  <u>Cooperation</u>. The Parties will cooperate with each other to give effect to the Agreement.

11.  <u>Retention of Jurisdiction</u>. The Bankruptcy Court or District Court, as applicable, shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

12.  <u>Return of Documents / Prohibition on Further Disclosure of Discovery Materials</u>. Within 30 days of the Effective Date, the Plan Agent and his counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Cases, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Cases to any third party.

13.  <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

14.  <u>Dispute Resolution</u>. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court or District Court, as applicable.

15.  <u>Successors and Assigns</u>. This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

16.  <u>Headings and Construction</u>. Headings in this Agreement are for convenience and are not to be used in construing this Agreement. This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

17.  <u>Entire Agreement / No Oral Agreements</u>. The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement. No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

18. <u>Expenses, Fees, and Costs</u>. The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

19. <u>Severability</u>. Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

20. <u>Waiver</u>. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

21. <u>Counterparts</u>. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

USTP (Common) Ex. 19
Page 145 of 272

8

UST Exhibit 5
JW 30b6
Page 18 of 20

Patrick Bartels, as Plan Agent for the Wind-Down
Debtors, and not in his individual capacity

DATED: 9/23/2025 _____

DocuSigned by:

_____
95A8F578458A4F8...

Jackson Walker LLP

DATED: 9/23/2025 _____

Name: William R. Jenkins, Jr.
Title: Partner + General Counsel

USTP (Common) Ex. 19
Page 146 of 272

9

UST Exhibit 5
JW 30b6
Page 19 of 20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | **Civil Action No. 4:23-cv-04787** |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM** | § | |
| | § | |

**ORDER APPROVING**
<u>**COMPROMISE AND SETTLEMENT WITH JACKSON WALKER, LLP**</u>
**(relates to Docket No. _____)**

The Court has considered the Motion to Compromise Controversy under Bankruptcy Rule 9019 with Jackson Walker, LLP ("<u>JW</u>") filed by Patrick Bartels, as Plan Agent (the "<u>Plan Agent</u>") for the Wind-Down Debtors in jointly administered Bankruptcy Case No. 23-90055 (formerly Bankruptcy Case No. 23-90054), styled *In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.)*. The Court finds that notice of the proposed compromise is sufficient. The proposed compromise meets the requirements for a compromise as outlined in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

Accordingly, it is therefore **ORDERED THAT:**

1.      The Motion to Compromise Controversy under Bankruptcy Rule 9019 with Jackson Walker, LLP is **GRANTED**.

2.      The Settlement Agreement attached hereto as **Exhibit A** is hereby approved, and the Trustee is authorized to enter into and consummate the Settlement Agreement.

3.      All objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice

4.      Each party shall bear its respective fees and costs.

5.      All parties to this compromise and settlement shall execute and deliver all documents reasonably necessary to effectuate the intent of this compromise and settlement.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed:

USTP (Common) Ex. 19
Page 147 of 272

UST Exhibit 5
JW 30b6
Page 20 of 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning | § | Civil Action No. 4:23-cv-04787 |
| the Jackson Walker Law Firm. | § | |
| | § | |

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| BRILLIANT ENERGY, LLC, | § | Case No. 21-30936 (EVR) |
| | § | |
| DEBTOR. | § | |

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT**
**PURSUANT TO BANKRUPTCY RULE 9019**

TO THE HONORABLE ALIA MOSES
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Randy W. Williams, Chapter 7 trustee for Brilliant Energy, LLC (the "Trustee") and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Motion"), and in support thereof, respectfully shows the Court as follows:

**RELIEF REQUESTED**

USTP (Common) Ex. 19
Page 148 of 272 this Motion, and in accordance with Bankruptcy Rule 9019(a), the Trustee

1



UST
Exhibit
**6**

requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement") between Jackson Walker LLP ("JW") and the Trustee that would resolve any and all claims and causes of action of any kind held by the Trustee and the Debtor's estate against JW arising out of or related to *In re Brilliant Energy, LLC*, Case No. 21-30936 pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"), Case No. 23-00645, and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the releases set forth in the Settlement Agreement, JW shall pay the Trustee $100,000.00, which will be distributed by the Trustee in accordance with the final orders entered in this case and the Bankruptcy Code.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

4.      On March 16, 2021 (the "Petition Date"), Brilliant Energy, LLC (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Bankruptcy Case was pending before former Judge Jones.

5.      On April 13, 2021, the Trustee filed its *Application to Employ Jackson Walker LLP as Special Counsel Pursuant to 11 U.S.C. § 327* [Dkt. No. 68]. JW's employment application was

USTP (Common) Ex. 19
Page 149 of 272

approved by former Judge Jones on June 4, 2021.  *See* Dkt. No. 131.

6.      On October 19, 2022, the Trustee filed its *Motion for Miscellaneous Relief in Aid of Case Conclusion* [Dkt. No. 230], which was granted by the Court on December 4, 2022.  *See* Dkt. No. 233.

7.      On December 5, 2022, JW filed its *Final Fee Application for Compensation of Fees and Reimbursement of Expenses as Special Counsel for Randy W. Williams, Chapter 7 Trustee for the Period from March 16, 2021 Through November 28, 2022* [Dkt. No. 234] (the "Fee Application").  JW's Fee Application was approved by the Court on December 30, 2022, awarding compensation and reimbursement of expenses in the amount of $188,609.13.  *See* Dkt. No. 241.

8.      On or about November 2, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 254.  An amended Rule 60(b) motion was filed on February 29, 2024 [Dkt. No. 284] (the "Rule 60(b) Motion").  The basis of the Rule 60(b) Motion was the undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

9.      On December 9, 2023, an Order was entered commencing a miscellaneous proceeding styled *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, pending before Chief Bankruptcy Judge Eduardo V. Rodriguez (the "Misc. Proceeding") .

10.     On March 12, 2024, the Trustee filed a *Notice of Standing and Indispensable Party Status* [Dkt. No. 285] (the "Notice of Standing"), stating, among other things, that the Trustee "adopts and agrees with the allegations and arguments put forth by the U.S. Trustee in [its

USTP (Common) Ex. 19
Page 150 of 272

3

UST Exhibit 6
JW 30b6
Page 3 of 21

pleadings]."

11.     On May 22, 2024, JW filed its response in opposition to the Rule 60(b) Motion. *See* Dkt. No. 286.

12.     On July 1, 2024, the U.S. Trustee filed its reply, and on August 12, 2024, JW filed its sur-reply. *See* Dkt. Nos. 287 & 289.

13.     The parties to Misc. Proceeding engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee application as raised in the Rule 60(b) Motion was previously set before the Chief Judge Rodriguez in May 2025.

14.     In or around February and March of 2025, the parties began discussions regarding the possibility of settlement.  Those efforts were successful, with the parties reaching a settlement in principle on March 12, 2025, which fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

15.     On April 9, 2025, the Honorable Chief United States District Judge Alia Moses entered a Memorandum Opinion and Order withdrawing the reference of this Bankruptcy Case, among others.  See Civil Action No. 4:23-CV-4787-AM at Dkt. No. 31; see also Misc. Proc. No. 23-00645, at Dkt. No. 623

## SUMMARY OF SETTLEMENT AGREEMENT[1]

16.     The Settlement Agreement is straightforward.  Within five business days of entry of an Order granting this Motion and such Approval Order becoming a Final Order (as defined therein), JW will pay to the Trustee $100,000.00, which settlement payment will be distributed pursuant to orders entered in the Bankruptcy Case and any applicable provisions of the Bankruptcy

---

[1]     The summary of the settlement terms is being provided herein for convenience only.  To the extent of any inconsistency between this summary and the Settlement Agreement attached hereto, the Settlement Agreement ~~controls~~lized terms not otherwise defined in this section shall have the meanings ascribed to such terms ~~in the Settlement~~ Agreement.

USTP (Common) Ex. 19
Page 151 of 272

4

UST Exhibit 6
JW 30b6
Page 4 of 21

Code. The final fee order originally entered in the Bankruptcy Case will be vacated, and the Approval Order will approve JW's fees and expenses incurred in the Bankruptcy Case in a reduced amount taking into account the above-referenced settlement payment. The Trustee intends to use the settlement payment, subject to further Bankruptcy Court approval, to pay the fees and expenses of Byman & Associates, PLLC for its work related to the Misc. Proceeding (anticipated to be approximately $56,000) and return the balance of the payment to DTE Energy Trading, Inc., the secured creditor who provided a carve out of its cash collateral to pay the JW fees and expenses ("DTE").

17. In exchange for this settlement payment, JW and the Trustee are providing mutual releases.

## **ARGUMENTS AND AUTHORITIES**

18. Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement ... ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

19. "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id*. at 462. Those factors are:

  i. The balance between the litigation's possibility of success and the settlement's future benefits;

  The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

USTP (Common) Ex. 19
Page 152 of 272

5

UST Exhibit 6
JW 30b6
Page 5 of 21

iii.    The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

iv.    Whether other parties in interest support the settlement;

v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

vi.    The nature and breadth of releases to be obtained by [the settling party]; and

vii.    The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

20.    The Trustee contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*.  The Settlement Agreement gives the Trustee and the Debtor's estate the full benefit of the Settlement Amount without the time, expense and uncertainty of continued and protracted litigation.

## A.  The balance between the litigation's possibility of success and the settlement's future benefits

21.    The Trustee contends that the possibility of success in the litigation against JW is high but there are significant legal issues and questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Trustee will realize through litigation when balanced against the cost of continued litigation.  As the Court and parties in interest are aware, the Brilliant case is but one of a large number of matters related to the Rule 60 Motions filed by the U.S. Trustee, and the amount in controversy in the other cases is much larger than the fees and expenses awarded in this case.  The

USTP (Common) Ex. 19
Page 153 of 272

Settlement provides a significant recovery for the Debtor's estate for payment to creditors

6

in accordance with existing orders entered in the Bankruptcy Case and applicable provisions of the Bankruptcy Code, and eliminates the litigation risk of continuing to litigate the claims against JW.

22.     The Trustee submits there is a significant likelihood that the orders approving JW's fee applications will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Debtor's estate.  However, the Trustee acknowledges that case law does not necessarily mandate full disgorgement; thus, there is some litigation risk.  And in any event, appeals could also follow further extending the litigation timeline and increasing the costs, which is significant in the Bankruptcy Case given the relatively small amount of fees and expenses paid to JW.  The Trustee also believes that it is significant that in this case, Elizabeth Freeman not only did not appear in the case, but she did not bill any time on the matter.  Further, an issue presented in this fee dispute that the Trustee has not seen in any of the other reported cases involving lack of disclosure is the fact that the disclosure involved the trial judge.  Here, while still on the bench, David Jones took and maintains the position that he had no obligation to either recuse himself from sitting as Judge in cases where Ms. Freeman's firm was Debtor's counsel, or to disclose to parties in interest the nature and scope of the relationship.

23.     The Trustee retained Jackson Walker with Bankruptcy Court approval to represent him in other cases prior to the Brilliant case.  The Trustee began his career at a firm where Bruce Ruzinsky was at the time a senior associate and worked with him for approximately four (4) years.  The Trustee has always respected Mr. Ruzinsky as an excellent attorney.  The Trustee and Mr. Ruzinsky have been in a number of other cases, where sometimes Mr. Ruzinsky represented the Trustee and in others where he represented creditors in cases where the Trustee also acted as a chapter 7 or chapter 11 Trustee.

USTP (Common) Ex. 19
Page 154 of 272

7

UST Exhibit 6
JW 30b6
Page 7 of 21

24.     The Trustee also knew and worked with Matt Cavanaugh, although he has not known Mr. Cavanaugh as long as Mr. Ruzinsky.  Mr. Cavanaugh also represented the Trustee in other cases as well as represented creditors in cases where the Trustee acted as chapter 7 or chapter 11 trustee.

25.     The Trustee selected JW for the Brilliant case because he knew that both Messrs. Ruzinsky and Cavanaugh had extensive experience in complex cases and also routinely appeared before and had a good relationship with then Judge Jones.  Brilliant Energy was complex because it was a retail energy provider with thousands of customers, and the Trustee was required to obtain court approval to operate the business for a short time while in chapter 7 so as to minimize the disruption to commercial and residential retail customers who relied on Brilliant to provide them with electricity.

26.     While the Trustee has also known Ms. Freeman for a number of years, and she too has also represented the Trustee in other cases, he did not consider her at the time as someone who would work on the Brilliant case.    That said, the Trustee knew that Ms. Freeman had a long-standing association with then Judge Jones.  The Trustee had also known David Jones prior to his appointment as Bankruptcy Judge.  Jones and Freeman had been law partners and, as the Court knows, Freeman became then Judge Jones's law clerk.   Prior to his being appointed as a Bankruptcy Judge, the Trustee retained David Jones, and his partner Elizabeth Freeman, when they were at Porter Hedges, to represent him in a number of chapter 7 cases.  The Trustee was not aware until the article appeared in the Wall Street Journal that their relationship was anything more than a long-standing friendship and close working relationship.

**B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

USTP (Common) Ex. 19
Page 155 of 272

The litigation is complex, and it has been and will continue to be protracted

8

UST Exhibit 6
JW 30b6
Page 8 of 21

(litigation commenced over seventeen (17) months ago in November 2023). Indeed, while trial was set to commence in May 2025, that trial date has now been abated in light of the withdrawal of the reference (a move supported by the Trustee); thus, continued monitoring costs will only continue to accrue. More significantly, there are no other assets or matters to be dealt with in the Brillant case, the only reason it has not been closed and final distribution made is the fee dispute litigation being settled herein.

28. Additionally, even if the order approving JW's final fee application is vacated in this case, such result may not necessarily result in disgorgement of 100% of fees given the case law and other considerations. Again, here, Ms. Freeman did not work on the case. This case was unique because although complex and initially fast moving, there were no unencumbered funds to pay administrative claims. DTE granted a carve out that was subject to budgeting and Mr. Ruzinsky on his own having to do the vast majority of the legal work. A settlement now brings finality and eliminates any meaningful litigation and/or collection risk, and puts an end to litigation costs after over seventeen (17) months of litigation.

**C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

29. The Trustee is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the Debtor's estate from incurring further attorney's fees and expenses in connection with these disputes, and provides a recovery that will not dilute the carve out for unsecured creditors and will allow DTE to recoup some of its costs related to the case. This matter also needs to be concluded in order to allow the Trustee to bring the administration of the Debtor's estate to an end.

**D. The nature and breadth of releases to be obtained by JW and the Trustee**

USTP (Common) Ex. 19
Page 156 of 272

9

UST Exhibit 6
JW 30b6
Page 9 of 21

30.     The Settlement Agreement contains customary mutual releases between JW and the Trustee on behalf of the bankruptcy estate. This is to bring finality to the claims and disputes between the Trustee and JW.

**E. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

31.     Counsel for the Trustee, the Trustee and JW, as well as Chief Judge Moses, are competent and experienced. The Settlement Agreement was reached after seventeen (17) months of litigation and, over seven (7) months of discovery. The settlement was reached following extensive arms-length negotiations.

32.     The Trustee recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Trustee believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Trustee has attempted to achieve a resolution that maximizes value for the estate. Consequently, the Trustee urges that the Settlement Agreement is fair, equitable, and in the best interest of the estate and all concerned parties.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Trustee such other legal or equitable relief as the Court may deem just and proper.

[*Remainder of the page intentionally left blank*]

USTP (Common) Ex. 19
Page 157 of 272

10

DATED: May 13, 2025                    Respectfully submitted,

                                       **BYMAN & ASSOCIATES, PLLC**

                                       */s/ Randy W. Williams*
                                       Randy W. Williams (Texas State Bar No. 21566850)
                                       7924 Broadway, Suite 104
                                       Pearland, TX 77581
                                       281-884-9269 Office Phone
                                       281-884-9263 Fax
                                       rww@bymanlaw.com

                                       *Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2025, a true and correct copy of the foregoing *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case and upon all entities listed on the court's mailing matrix attached hereto.

                                       */s/ Randy W. Williams*
                                       Randy W. Williams

USTP (Common) Ex. 19
Page 158 of 272

Label Matrix for local noticing
0541-4
Case 21-30936
Southern District of Texas
Houston
Tue May 13 16:05:57 CDT 2025

AEP Texas Inc.
c/o Weldon L. Moore, III
Sussman & Moore, LLP
2911 Turtle Creek Blvd.
Ste. 1100
Dallas, TX 75219-7119

Brilliant Energy, LLC
800 Wilcrest Drive
Houston, TX 77042-1369

Byman & Associates PLLC
7924 Broadway, Ste 104
Pearland, TX 77581-7933

CenterPoint Energy Houston Electric LLC
c/o Weldon L. Moore, III
Sussman & Moore, LLP
2911 Turtle Creek Blvd.
Ste. 1100
Dallas, TX 75219-7119

Cyber Manufacturing, LLC
Bui & Nhan, PLLC
3921 OCEE ST
HOUSTON, TX 77063-5417

Frontera Materials, INC.
PO Box 1449
Elsa, TX 78543-1449

Harris County, et al.
Linebarger Goggan Blair & Sampson LLP
c/o John P. Dillman
P.O. Box 3064
Houston, TX 77253-3064

MACCO Restructuring Group, LLC
Pennzoil Place
700 Milam Street, Suite 1300
Houston, TX 77002-2736

Public Utility Commission of Texas,
Office of the Attorney General of Texas
Attn: Jason Binford and Layla Milligan
P.O. Box 12548-MC008
Austin, TX 78711-2548

State of Texas
c/o Texas Attorney General's Office
Bankruptcy & Collections Division
P. O. Box 12548  MC-008
Austin, TX 78711-2548

TPS-West, LLC
12837 Louetta Rd.
Suite 201
Cypress, TX 77429-5611

Texas Comptroller of Public Accounts, Revenu
John Mark Stern
PO Box 12548
Austin, TX 78711-2548

William G. West, P.C., CPA
12837 Louetta Rd.
Suite 201
Cypress, TX 77429-5611

multiple injured and death case tort claiman
c/o Jordan Holzer & Ortiz
500 N Shoreline
Suite 900
Corpus Christi, TX 78401-0658

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

3SEnergy
10333 Harwin Drive Suite 425
Houston, TX 77036-1571

567 Energy LLC
3710 Rena Jane Ln
Pasadena, TX 77503-1817

A Mitchell Holdings LLC
Aaron Mitchell
1590 Edmondson Tr.
Rockwall, TX 75087-6022

A&E Natural Corp
4848 Lemmon Ave Suite 361
Dallas, TX 75219-1400

ADK Solutions LLC
4143 Abigail Dr
Highland Village, TX 75077-1872

AEP Texas Inc.
c/o Melissa A. Gage, Esq.
400 W. 15th St., Ste. 1500
Austin, TX 78701-1677

APRIL MCDOWELL
ROBINS CLOUD LLP
2000 WEST LOOP SOUTH SUITE 2200
HOUSTON, TX 77027-3511

AT&T Mobility
PO Box 6463
Carol Stream, IL 60197-6463

AT&T Services
PO Box 5014
Carol Stream, IL 60197-5014

Abacus Power Broker LLC
381 Casa Linda Plaza # 238
Dallas, TX 75218-3471

Able Power Management
37 Lyerly St
Houston, TX 77022-3007

USTP (Common) Ex. 19
Page 159 of 272

Abner S...
6005 FM 1732
Brownsville, TX 78520-3704

Adjacent Energy
PO Box 330593
Houston, TX 77233-0593

Alan Lammey
7907 Oxfordshire Dr
Spring, TX 77379-4669

Alec Brooker
Attn: Sidney Robert
300 Fannin, Ste 200
Houston, TX 77002-2057

Alliance Energy Consulting
9600 Gulf Lakes Trl #3006
Dallas, TX 75231-5023

Alliance Power Group
2706 Chapel View
Corpus Christi, TX 78414-3410

Alpha Energy Group
1590 Edmondson Trail
Rockwall, TX 75087-6022

American Enerpower Inc
PO Box 941682
Houston, TX 77094-8682

American Express Merchant
2401 W Behrend Drive
#55
Phoenix, AZ 85027-4145

Angel Ortega
131 Iotanes
Laredo, TX 78046-8522

Applied Computer Technology
2712 Fallcreek Dr
Carrollton, TX 75006-2648

Argus Media
2929 Allen Parkway
Suite 700
Houston, TX 77019-7123

Aries Corporation
4420 High Mesa Dr
Plano, TX 75093-3255

Athar Amin
613 Waterchase
Fort Worth, TX 76120-2872

Axiom Power
363 N Sam Houston Pkwy E Suite 1100
Houston, TX 77060-2413

(p)BDO USA  LLP
4250 LANCASTER PIKE
SUITE 120
WILMINGTON DE 19805-1609

BH Energy Services
9140 Paluxy Dr
Tyler, TX 75703-7697

Bank of America Merchant Services
PO Box 15019
Wilmington, DE 19850-5019

Ben Graham
3131 Memorial Ct Apt 16113
Houston, TX 77007-6267

Best Energy
5850 Park Front Dr #110
Houston, TX 77036-2537

Bid Texas Online
PO Box 5370
McAllen, TX 78502-5370

Bottom Line Energy
13803 Wickersham
Houston, TX 77077-5434

Brazos Energy Solutions
2257 Ridgeway Dr
West Columbia, TX 77486

Brent Shellhorse
3112 Wild Plum
Fort Worth, TX 76109-2061

Business Energy Partners
3301 Hoover Dr
McKinney, TX 75071-2209

CDN Enterprises dba Bolt Energy Advisors
12103 Auburn Hills Dr
Tomball, TX 77377-8614

CM Energy
6200 Taprock Dr
McKinney, TX 75070-7968

CNZNet Inc
833 E Arapaho Rd
Richardson, TX 75081-2269

CPG Energy
5211 Birch Glen
Richmond, TX 77406-8634

CTBP Investments
4447 N Central Expy Suite 110-160
Dallas, TX 75205-4245

USTP (Common) Ex. 19
Page 160 of 272

CV Prem
3926 Catania Bay Ct
Missouri City, TX 77459-0020

Camelot Integrated Solutions, Inc.
2000 S Dairy Ashford Road
Suite 265
Houston, TX 77077-5732

Capital Area Energy
14141 W Highway 290 Building 600
Austin, TX 78737-9340

CenterPoint Energy Houston Electric, LLC
c/o Douglas Darrow
1111 Louisiana St.
46th Floor, Office 4661
Houston, TX 77002-5230

Choice Energy Services
5151 San Felipe 22nd Floor
Houston, TX 77056-3726

Community Energy LP
1920 S College Ave
Tyler, TX 75701-4112

Competitive Assets
489 Alines St
Suite 112-104
Bastrop, TX 78602-2156

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX 78711-2548

Concord Energy Consultants
5623 Bear Meadow Ln
Katy, TX 77449-7576

Cybersource
PO Box 742842
Los Angeles, CA 90074-2842

Cybersource Corporation
Attn: Katie Todd
PO Box 947
American Fork, UT 84003-0947

DRF Industries
3600 Rosewood #503
Houston, TX 77004-5539

DTE Energy
414 S. Main
Ann Arbor, MI 48104-2398

DTE Energy Trading
414 S Main
Ann Arbor, MI 48104-2397

DTE Energy Trading, Inc.
c/o Hunton Andrews Kurth LLP
Attn: Robert A. Rich, Esq.
New York, New York 10166

Darcee Grice Consulting
PO Box 2471
Houston, TX 77252-2471

Data & Energy Solutions
5511 Trail Timbers Dr
Humble, TX 77346-3626

David Zdunkewicz
Hunton Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, TX 77002-2929

Diversegy LLC
520 Broad St
Newark, NJ 07102-3121

Diversified Energy Consultants
3123 Bammell Ln
Houston, TX 77098-2021

Do Nguyen
3767 Heritage Colony Dr
Missouri City, TX 77459-4054

Duon Int Resources
1415 S Voss Rd Bldg 110-470
Houston, TX 77057-1086

EBOA dba EnergyRateSaver.com
PO Box 690824
Houston, TX 77269-0824

ERBOA LLC dba Energybidz
PO Box 690824
Houston, TX 77269-0824

EZ Choice Energy LLC
3023 Routh St
Dallas, TX 75201

Eco-Power LLC
4848 Fairmont Pkwy # 265
Pasadena, TX 77505-3765

EcoEnergy Texas
3204 Trailblazer Ave
Edinburg, TX 78541-4412

Eisenbach Consulting
5759 Eagles Nest Blvd Suite 1
Tyler, TX 75703-6228

Elect Energy Inc
3225 Turtle Creek Blvd #948
Dallas, TX 75219-5466

Electric Connection
720 Montrose Trail
Desoto, TX 75115-1745

Electri...
7505 Memorial Woods #60
Houston, TX 77024-3742

Electricity For Less
1109 Montego Rd
Fort Worth, TX 76116-1625

Elias Energy Group LLC
4295 San Felipe Ste 300
Houston, TX 77027-2958

USTP (Common) Ex. 19
Page 161 of 272

Emex Consolidated Partners
11011 Richmond Ave Suite 500
Houston, TX 77042-4833

Enel North America Inc
One Marina Park Dr
Boston, MA 02210-2769

Enerconnex LLC
4140 Clark Shaw Rd
Powell, OH 43065-8086

Energy Auction House
44 Rte 6A
Sandwich, MA 02563-1863

Energy Ogre LLC
24 Greenway Plaza Ste 725
Houston, TX 77046-2446

Energy One Management
2429 Stone Creek Dr
Plano, TX 75075-2941

Energy Providers
20106 Tamerton Dr
Spring, TX 77388-3187

Energy Resources Alliance
9101 Saddle Hornet
Prosper, TX 75078-8826

Energy Services Group
141 Longwater Drive
Suite 113
Norwell, MA 02061-1620

Energy Utility Group LLC
1402 Clearview Loop
Round Rock, TX 78664-6989

Energy in Missions LLC
625 County Rd 2515
Bonham, TX 75418-6837

Entelergy LLC
PO Box 11627
Spring, TX 77391-1627

Equifax
PO Box 71221
Charlotte, NC 28272-1221

Ereica Jones
PO Box 140598
Dallas, TX 75214-0598

Ergos Technology Partners
2704 Timberloch Place
The Woodlands, TX 77380

Evolving Energy Solutions LLC
4848 Lemmon Ave Suite 100-337
Dallas, TX 75219-1401

Executive Portfolio Innovative Consultin
PO Box 822906
North Richland Hills, TX 76182-2906

Experian
Dept 881971
Los Angeles, CA 90068

Farzana LLC
7560 Tournament Rd
Frisco, TX 75035-7119

First Innovative Power
5810 Forest Land Dr
Houston, TX 77084-6736

Frontera Power Brokers LLC
711 W Nolana Suite 102-C
McAllen, TX 78504-3082

Genesis Power USA
1818 Westwood
Abilene, TX 79603-2456

Geovend International LLC
9668 Westheimer RD Suite 78
Houston, TX 77063-3241

Golden Utility Services
3526 Lakeview Pkwy Ste 8208
Rowlett, TX 75088-4176

Greentree Power LLC
2506 Trophy Club Dr
Trophy Club, TX 76262-3420

Guardian Electric and Gas
6619 Bradford Estates Dr
Sachse, TX 75048-3430

HL National Energy
519 College Ave
South Houston, TX 77587-4201

Harris
c/o John P. Dillman
Linebarger Goggan Blair & Sampson LLP
P.O. Box 3064
Houston, TX 77253-3064

USTP (Common) Ex. 19
Page 162 of 272

High Voltage Energy
401 Veatech St #20
Joshua, TX 76058-3067

Highpoint Electric Service
5802 Hamza Circle
Killeen, TX 76542-4802

Houston Energy Exchange
2518 Breaux Trace
Seabrook, TX 77586-3396

IGG Solutions Inc
3501 Ross Ave Suite 3012
Dallas, TX 75204-5484

Ice Data
1415 Louisiana
Suite 3350
Houston, TX 77002-7332

Ideal Energy Group
203 N 17th St
Hidalgo, TX 78557-3903

Imagenet Consulting
913 N Broadway Ave
Oklahoma City, OK 73102-5810

Imperial Utility & Sustainability
4545 Bissonnet St Suite 104
Bellaire, TX 77401-3008

Infiniti Energy Services
PO Box 5545
Round Rock, TX 78683-5545

Infiniti Power Partners LLC
2603 Augusta Dr Suite 450
Houston, TX 77057-5640

Infomax Aggregators LLC
4510 Connies Ct Ln
Missouri City, TX 77459-2936

Information Management Solutions
2416 Brockton St
Suite 105
San Antonio, TX 78217-4909

Innovative Utility Services
10051 Marsh Lane
Dallas, TX 75229

Insight Energy Advisors
7052 Briarmeadow Dr
Dallas, TX 75230-5329

Intellergy LLC
2429 Bissonnet St Suite 535
Houston, TX 77005-1451

International Business Machines
3039 Cornwall Road
Research Trail Park, NC 27709

J&H Energy Consultants
5811 Tidewater Dr
Houston, TX 77085-3357

JC Consultants
PO Box 1864
Cedar Hill, TX 75106-1864

Jan Ward
407 Clearview Ave
Friendswood, TX 77546-4005

Jeffrey Ritter
PO Box 222
Fulshear, TX 77441-0222

Jess Consulting Agency
2627 S Brompton
Pearland, TX 77584-2205

Jim Straker
5315 Green Ln
Houston, TX 77066-5101

John Grubbs
3504 Boxwood Dr
Grapevine, TX 76051-4224

John P Wack
851 White Marsh Circle
Cuyahoga Falls, OH 44223-3818

Jump Energy Solutions
10221 Centre Park #1725
Houston, TX 77043-1362

KWH Brokers LLC
PO Box 1522
Missouri City, TX 77459-8522

KWH Consulting Services LTD
435 S Stewart St
Azle, TX 76020-3014

Kamy Inc
1901 Drew Ln
Richardson, TX 75082-4825

Kathy Packer
5311 Sun Meadow Dr
Grapevine, TX 76051-8413

Kenneth
3019 Redstone Dr
Arlington, TX 76001-5490

USTP (Common) Ex. 19
Page 163 of 272

Kilowatt Partners Inc
PO Box 518
Kemah, TX 77565-0518

Kingdom Consulting Services
2009 Independence Dr Suite 105
Sherman, TX 75090-0216

Lantern Power
6711 Falling Waters Dr
Spring, TX 77379-4851

Lexis Nexis
9443 Springboro Pike
Miamisburg, OH 45342-5490

Linc Energy LP
1022 Glourie Circle
Houston, TX 77055-7504

Linda C Andress
841 Herberle Dr
Burleson, TX 76028-7417

Logix Communications LP
2950 North Loop West
8th Floor
Houston, TX 77092-8846

Logtx Fiber Networks
2950 N. Loop West 10th Floor
Houston, TX 77092-8891

M&S Services
1033 Garden Oaks St
Columbus, TX 78934-1688

MARENDRIA RASHALL
ROBINS CLOUD LLP
2000 WEST LOOP SOUTH SUITE 2200
HOUSTON, TX 77027-3511

MHSC Energy LLC
11990 Old Wellburn Rd St 6
College Station, TX 77845-7938

Matshead Energy Group
7907 Oxfordshire Dr
Spring, TX 77379-4669

Matthew Okin
Okin Adams LLP
1113 Vine St., Suite 240
Houston, TX 77002-1044

Michael A Work
4400 Santa Fe Ln
McKinney, TX 75070-4472

Michael Glenn Forrest
PO Box 503
Pottsboro, TX 75076-0503

Mike Pass Weather Services LLC
1603 Gingerleaf Lane
Houston, TX 77055-3409

Millenergy
6504 Barfield Dr
Dallas, TX 75252-2504

Mitterhofer@Wilcrest
800 Wilcrest Drive
Suite 160
Houston, TX 77042-1461

NRG SimplySmart Solutions LLC
211 Carnegie Center
Princeton, NJ 08540-6299

National Utility Consulting
5712 Garrett Dr
Plano, TX 75093-5929

Nationwide New Energy Management Group
4825 Fox Ridge Ln
McKinney, TX 75071-7884

Net-Zero Power
24 Greenwy Plaza Suite 1515
Houston, TX 77046-2452

Northeastern Energy Advisory Services
12001 Dessau Rd # 1935
Austin, TX 78754-1894

Odyssey Services
12303 Green Trails Dr
Stafford, TX 77477-2273

Oncor Electric Delivery Company LLC
1616 Woodall Rodgers Fwy, Ste 7A-002
Dallas, TX 75202-1234

Optimal Energy Consultants
39005 Shawntelle Dr
Penitas, TX 78576-5017

Option New Energy
PO Box 440625
Houston, TX 77244-0625

Orion Advisors Group LLC
1601 Las Palmas Circle
Beeville, TX 78102-2959

PES Brokers Inc
1305 FM 359 #H
Richmond, TX 77406-2024

USTP (Common) Ex. 19
Page 164 of 272

PG&L LL
1540 Superior Place
Flower Mound, TX 75028-2113

Pal Energy Smart LLC
PO Box 2046
Houston, TX 77252-2046

Pampas Life LLC
2303 Mid Lane #740
Houston, TX 77027-3819

Park Place Power Consulting LLC
2205 Egyptian Way
Grand Prairie, TX 75050-2838

Peter Partee, Sr.
Hunton Andrews Kurth LLP
200 Park Avenue
New York, NY 10166-4499

Pitney Bowes
PO Box 371887
Pittsburgh, PA 15250-7887

Pitney Bowes Inc
27 Waterview Dr, 3rd Fl
Shelton CT 06484-4361

Pods Energy
3911 Waterview Ct
Missouri City, TX 77459-2315

Power Enegy USA
4606 FM 1960 Rd W #400
Houston, TX 77069-4615

Power Experts LLC
13313 SW Fwy Suite 223
Sugar Land, TX 77478-3660

Power Pros
817 Monticello Dr
Burleson, TX 76028-8207

Power Rite Consulting LLC
5005 Still Meadow Ln
Celina, TX 75009-2843

PowerAuditors.com
5211 Westwind Ct
Sugar Land, TX 77479-4120

Prestige Energy Management LLC
PO Box 1422
Wylie, TX 75098-1422

Priority Power Management
5012 Portico Way
Midland, TX 79707-3102

Pro Energy Group Inc
14800 St Marys Ln #250
Houston, TX 77079-2943

Professional Electricity Management LLC
2 Donys Ct
Houston, TX 77040-1503

Prosource Power LLC
55 Possum Trot Hollow Rd
Whitewright, TX 75491-7307

Prudential Energy Services
2400 Augusta Dr Suite 352
Houston, TX 77057-5038

Quadrangle Energy LLC
1616 Wabash St
Fort Worth, TX 76107-6598

Quantum Gas & Power Services
12305 Old Huffmeister Rd
Cypress, TX 77429-3231

Quantum Spectrum Energy
950 E State Hwy 114 Suite 160 PMB 1612
Southlake, TX 76092-5261

QuoteEnergy LLC
99 W Mill Rd
Long Valley, NJ 07853-3465

RANDY ELWOOD
2000 WEST LOOP SOUTH SUITE 2200
HOUSTON, TX 77027-3511

Ray Hoppe
11757 Katy Fwy Suite 1300
Houston, TX 77079-1725

Raymond Energy Club LLC
4138 Kyndra Cir
Richardson, TX 75082-2761

Raynaldo Flores
6910 Renata Circle
Houston, TX 77084-1352

Real Corporation
1703 E Calle Cedro
Edinburg, TX 78541

Red Horse Energy Group LLC
PO Box 265
Desoto, TX 75123-0265

Revenue Stream
102 E Broadway PO Box 1282
Prosper, TX 75078-1282

Reynaldo
PO Box 722393
Houston, TX 77272-2393

USTP (Common) Ex. 19
Page 165 of 272

Rhino Energy
4808 Fairmont Pkwy #265
Pasadena, TX 77505-3722

Rhino Gas & Electric
519 Birdsong
League City, TX 77573-2543

Ridgebrook Energy Group LLC
2311 Canyon Springs Dr
Pearland, TX 77584-3413

Rowe Energy
438 Oleander
Duncanville, TX 75137-3321

SFI Loans LLC
15741 Mapleview Circle
Dallas, TX 75248-4224

Servant Energy Partners
10 Winding Hollow
Coppell, TX 75019-6434

Seven Utility Management
21175 Tomball Pkwy Suite 216
Houston, TX 77070-1655

Shaachja Energy Company
9214 Bristlebrook Dr
Houston, TX 77083-5987

Simply Competitive Energy
PO Box 818
Sulphur Springs, TX 75483-0818

Smart Sales Solutions
8255 Sunbury Ln #1010
Houston, TX 77095-5910

Southern Star Utility
14006 Overbrook Lane
Houston, TX 77077-5318

Steven F. Trimarco
1703 W. Calle Cedro
Houston, Texas 77042

Stratis Energy Services LLC
17330 Preston Rd Ste 2000
Dallas, TX 75252-5728

Symbio Energy Partners LLC
1923 Washington Ave
Houston, TX 77007-6132

TES Energy Services LP
17480 Dallas Pkwy Suite 200
Dallas, TX 75287-7304

TEXAS WORKFORCE COMMISSION
REGULATORY INTEGRITY DIVISION - SAU
101 15TH STREET, ROOM 556
AUSTIN, TX 78778-0001

(c)TFS ENERGY SOLUTIONS
9 W BROAD ST STE 100
STAMFORD CT  06902-3764

TMS Services
1033 Garden Oaks St
Columbus, TX 78934-1688

TPL Energy
10700 Richmond Ave Suite 246
Houston, TX 77042-4926

(p)TELECHECK SERVICES INC
P O BOX 6806
HAGERSTOWN MD 21741-6806

Telvent DTN
26385 Network Place
Chicago, IL 60673-1263

Texa Energy Experts LLC
18207 Willow Ct
Spring, TX 77379-6168

Texas Energy Brokers
7215 Silver Meadow Ct
Houston, TX 77041-1700

Texas Energy Options Inc
3330 N Briarpark Ln
Sugar Land, TX 77479-2295

Texas Energy Services
9207 Buffalo Bend Ln
Houston, TX 77089-5912

Texas Power & Gas LLC
4800 Scottwood Dr
Waco, TX 76708-1247

Texas Utility Advisors
16602 Island Shore Ct
Houston, TX 77095-6563

Timothy Shields
2322 Royal Oaks
Garland, TX 75040-4145

Travis Quinn
14335 Heron Marsh Dr
Cypress, TX 77429-6854

TrueEne...
8117 Preston Rd Suite 30
Dallas, TX 75225-6332

US Energy Experts
1501 San Jacinto Dr
Flower Mound, TX 75028-8293

US Energy Professionals
PO Box 595
Aledo, TX 76008-0595

USTP (Common) Ex. 19
Page 166 of 272

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

USA Power & Lights
8618 Humphrey Dr
Houston, TX 77083-6033

USEC LLC
77 Sugar Creek Blvd Suite 501
Sugar Land, TX 77478

Unified Energy Services
3900 Essex Suite 750
Houston, TX 77027-5489

United Energy Group
2420 Brennan Dr
Plano, TX 75075-6620

United Power Consultants
2001 N Federal Hwy Suite 316
Pompano Beach, FL 33062-1019

United States Trustee's Office
515 Rusk St., Suite 3516
Houston, TX 77002-2604

Verdad Power LLC
15827 Roseview Ln
Cypress, TX 77429-6704

Verdigris Energy LLC
1711 Bur Oak Dr
Allen, TX 75002-6394

Vocalcom
PO Box 120842
Arlington, TX 76012-0842

Vocalcom LLC
c/o Jaimee La Tour
2221 East Lamar Blvd. Suite 225
Arlington, TX 76006-7490

VyBranze LLC
113 W Broadway PO Box 876
Prosper, TX 75078-0876

Watermark Power Soltions
9500 Ray White Suite 200
Keller, TX 76244-9105

Watts Your Rate
3103 Pecan St
Houston, TX 77087-1331

William Burgess
114 Diamond Back Ln
Montgomery, TX 77316-1583

Wizard Energy Savings LLC
3619 Robinson Rd
Missouri City, TX 77459-4313

Your Electric Broker
4607 Cypresswood Dr Apt 407
Spring, TX 77379-8350

Z Champion & Associates LLC
1310 Rayford Park Rd #216
Spring, TX 77386-4691

Zon Energy Inc
16146 Parish Hall Dr
Spring, TX 77379-6630

Matthew Scott Okin
Okin Adams LLP
1113 Vine Street, Suite 240
Houston, TX 77002-1044

Peter Nguyen
PO Box 682046
Houston, TX 77268-2046

Randy W Williams
Byman & Associates PLLC
7924 Broadway
Suite 104
Pearland, TX 77581-7933

Timothy L. Wentworth
Okin Adams, LLP
1113 Vine St., Suite 240
Houston, TX 77002-1044

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BDO USA
4250 Lancaster Pike, Suite 120
Wilmington, DE  19805

Telecheck
PO Box 60028
City of Industry, CA 91716

USTP (Common) Ex. 19
Page 167 of 272

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

TFS Energy Solutions
9 W Broad 9th Floor
Stamford, CT 06902

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)DTE Energy Trading, Inc.                (u)ERCOT                              (u)Jackson Walker LLP


(u)Luminant Energy Company LLC             (u)Aqua Chill Gulf Coast             (d)Brilliant Energy, LLC
                                           PO Box 300964                        800 Wilcrest Drive
                                                                                Houston, TX 77042-1369


(u)Energy Services Group, LLC              End of Label Matrix
                                           Mailable recipients    262
                                           Bypassed recipients      7
                                           Total                  269

USTP (Common) Ex. 19
Page 168 of 272

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

In re:

Professional Fee Matters Concerning the
Jackson Walker Law Firm,

Reorganized Debtors.

Civil Action No. 4:23-cv-04787

## MOTION FOR ORDER APPROVING COMPROMISE AND
## <u>SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019</u>

TO THE HONORABLE ALIA MOSES,
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Sungard AS New Holdings, LLC, the wind-down debtor (together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC,[1] the "**Wind-Down Debtors**"), by and through Drivetrain LLC (the "**Plan Administrator**"), the Plan Administrator appointed pursuant to the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS New Holdings, LLC and Its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**"), and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "**Motion**"), and in support thereof respectfully show the Court as follows:

---

[1]      The Sungard Debtors/Wind Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, LLC; Sungard Availability Services, ailability Services, Ltd.

USTP (Common) Ex. 19
Page 169 of 272

1


UST
Exhibit
**7**

## I.    RELIEF REQUESTED

1.     By this Motion, and in accordance with Bankruptcy Rule 9019(a),[2] the Wind-Down Debtors request that the Court enter an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between Jackson Walker LLP ("**JW**"), the Wind-Down Debtors and the Plan Administrator that would resolve any and all claims and causes of action of any kind held by the Wind-Down Debtors, their estates, and/or the Plan Administrator, in its capacity as such, against JW arising out of or related to *In re Sungard AS New Holdings LLC, et al.,* Chapter 11 Case No. 22-90018, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Chapter 11 Case"), *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "**Misc. Proceeding**"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the mutual releases set forth in the Settlement Agreement, JW shall pay the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan (defined below) in the Chapter 11 Case.

## II.    JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Administrator confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion

---

[2]     Article XII.A. of the Plan (defined below) provides that the Wind-Down Debtors or the Plan Administrator may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, the Wind-Down Debtors file _____ under Bankruptcy Rule 9019 and seek approval from this Court to provide transparency to the _____ arties-in-interest with regard to their settlement with JW in the Chapter 11 Case.

USTP (Common) Ex. 19
Page 170 of 272

2

UST Exhibit 7
JW 30b6
Page 2 of 25

to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## III.      BACKGROUND

### A.      Chapter 11 Case

4.      On April 11, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). The Chapter 11 Case was before former Judge Jones.

5.      On May 10, 2022, the Debtors filed their *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors* [Dkt. No. 211]. JW's employment application was approved without objection by former Judge Jones on June 6, 2022 [Dkt. No. 291].

6.      On June 3, 2022, the Debtors filed their *Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 257] (the "**Original Plan and Disclosure Statement**"). On September 2, 2022, the Debtors filed their *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 627] (the "**First Amended Plan and Disclosure Statement**").

USTP (Common) Ex. 19
Page 171 of 272

UST Exhibit 7
JW 30b6
Page 3 of 25

7.      On August 17, 2022, JW filed *Jackson Walker LLP's First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from April 11, 2022 Through July 31, 2022* [Dkt. No. 570] (the "**First Interim Fee Application**").

8.      On September 7, 2022, the *Order (I) Conditionally Approving the Disclosure Statement; (II) Approving the Combined Hearing Notice; (III) Approving the Solicitation and Notice Procedures; (IV) Approving the Form of Ballot and Notices; (V) Approving Certain Dates and Deadlines in Connection with the solicitation and Confirmation of the Plan; and (VI) Scheduling a Combined Hearing on (A) Final Approval of the Disclosure Statement and (B) Confirmation,* was entered [Dkt. No. 635].

9.      Former Judge Jones approved, without objection, JW's First Interim Fee Application on September 12, 2022 [Dkt. No. 649].

10.     On October 13, 2022, the Debtors filed their *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 734] (the "**Second Amended Plan and Disclosure Statement**", together with the Original Plan and Disclosure Statement and the First Amended Plan and Disclosure Statement, the "**Plan and Disclosure Statement**" or "**Plan**").

11.     On October 17, 2022, the Court entered the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**").

12.     On November 9, 2022, the effective date of the Plan occurred (the "**Effective Date**") and the Debtors filed the *Notice of Occurrence of the Effective Date* [Dkt. No. 835].

USTP (Common) Ex. 19
Page 172 of 272

4

UST Exhibit 7
JW 30b6
Page 4 of 25

13.     On November 29, 2022, JW filed *Jackson Walker LLP's Second Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from August 1, 2022 Through November 9, 2022* [Dkt. No. 850] (the "**Second Interim Fee Application**").  Also on November 29, 2022, JW filed *Jackson Walker LLP's Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from April 11, 2022 Through November 9, 2022* (the "**Final Fee Application**") [Dkt. No. 851].  The Final Fee Application sought approval of fees aggregating $414,495.

14.     Former Judge Jones approved, without objection, JW's Final Fee Application [Dkt No. 899] on December 30, 2022.

## B.     The Miscellaneous Proceeding

15.     On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 1026] (the "**60(b) Motion**").

16.     On December 9, 2023, an Order was entered commencing the Misc. Proceeding in the Bankruptcy Court.

17.     On February 29, 2024, the U.S. Trustee filed an amended Rule 60(b)(6) motion in the Chapter 11 Case [Dkt. No. 1043] (the "**Amended 60(b) Motion**", together with the 60(b) Motion, the "**UST's Motions**").  The basis of the UST's Motions was the alleged undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

18.     On April 15, 2024, the Plan Administrator, on behalf of itself and the Wind-Down Debtors, filed a *Notice of Standing and/or Indispensable Party Status* [Dkt. No. 1053] in the Chapter 11 Cases.

USTP (Common) Ex. 19
Page 173 of 272

UST Exhibit 7
JW 30b6
Page 5 of 25

19.     On December 16, 2024, the Wind-Down Debtors filed the *Wind-Down Debtors Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgement Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [Dkt. No. 1075] (the "**Joinder**").

20.     On May 22, 2024, JW filed its response in opposition to the UST's Motions [Dkt. No. 1057].

21.     On July 1, 2024, the U.S. Trustee filed his reply [Dkt. No. 1062].

22.     On August 12, 2024, JW filed its sur-reply [Dkt. No. 1065].

23.     JW disputes the merits of the UST's Motion and the Joinder.  JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case.  The Wind-Down Debtors and the Plan Administrator vigorously disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW in the Chapter 11 Case.

24.     The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying on the UST's office to lead the litigation. However, when trial appeared inevitable, counsel for the Plan Administrator reviewed more than a thousand documents, attended numerous hearings, meetings, and settlement conferences, and participated in regular calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases.

USTP (Common) Ex. 19
Page 174 of 272

UST Exhibit 7
JW 30b6
Page 6 of 25

25.     The Plan Administrator did not participate in the mediation that occurred among certain parties in March of 2025 but instead sought to resolve the issues through a series of communications directly with JW and its counsel. As a result thereof, JW and the Plan Administrator reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

## IV.    SUMMARY OF SETTLEMENT AGREEMENT

26.     The Settlement Agreement is straightforward.  Within 5 business days of an order granting this Motion and such order becoming a Final Order (as defined therein), JW will pay to the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan in the Chapter 11 Case.

27.     In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases. The Plan Administrator, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date of the Settlement Agreement, including claims and causes of action arising from or relating to the Chapter 11 Case, the UST's Motion, the Joinder, and the relationship between Elizabeth Freeman and former Judge Jones.  JW, as more fully set forth in the Settlement Agreement, will release the Plan Administrator and the Wind-Down Debtors from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of action arising from or related to the Chapter 11 Case, the U.S. Trustee's motion, the Plan Administrator's Joinder, and the relationship between Elizabeth Freeman and former Judge Jones.

USTP (Common) Ex. 19
Page 175 of 272

UST Exhibit 7
JW 30b6
Page 7 of 25

## V.    __ARGUMENTS AND AUTHORITIES__

28.     Rule 9019(a) states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

29.     "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id.* at 462. Those factors are:

     i.    The balance between the litigation's possibility of success and the settlement's future benefits;

    ii.    The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

   iii.    The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

    iv.    Whether other parties in interest support the settlement;

    v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

    vi.    The nature and breadth of releases to be obtained by [the settling party]; and

   vii.    The extent to which the settlement is the product of arm's length bargaining.

USTP (Common) Ex. 19
Page 176 of 272

UST Exhibit 7
JW 30b6
Page 8 of 25

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

30. The Plan Administrator contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Administrator and Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense, and uncertainty of litigation.

**A. The balance between the litigation's possibility of success and the settlement's future benefits**

31. The Plan Administrator contends that the possibility of success in the litigation against JW is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Administrator will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides a significant recovery for the Wind-Down Debtors for payment to creditors in accordance with the confirmed Plan and eliminates the risk of continuing to litigate the claims against JW.

32. The Plan Administrator submits there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Wind-Down Debtors. However, the trial date to vacate the Final Fee Application is currently unscheduled. Once complete, and assuming the Plan Administrator wins, appeals would likely follow further extending the litigation timeline.

33. The Settlement Agreement and Settlement Amount provides the Liquidation Trust ... 3% of the fees awarded to JW, upon an order approving the Settlement Amount

USTP (Common) Ex. 19
Page 177 of 272

UST Exhibit 7
JW 30b6
Page 9 of 25

becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan. Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case to maximize any recovery for its constituents.

**B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

34.     As discussed above, there is a high likelihood that litigation will be complex and protracted leading to appeals and further litigation. As the Court acknowledged at the hearing on May 22, 2025, it's not clear that the court would order 100% disgorgement from JW in light of the actions of former Judge Jones and Ms. Freeman. If a finding was made that former Judge Jones and Ms. Freemen should be held at least partially responsible, it is possible that the Wind-Down Debtors would recover less than 100% of the fees and could be left to litigate with former Judge Jones and Ms. Freeman for any remaining unpaid amounts – leading again to further litigation and costs. The Plan Administrator has retained counsel with respect to the UST's Motions and will continue to need to retain and pay counsel with respect to any further proceedings. A settlement now brings finality and eliminates any meaningful litigation and collection risk, and ends future fees and costs being incurred. However, that risk could increase with the passage of time and continued litigation.

**C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

35.     The Plan Administrator is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the incurrence of further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery for the benefit of the creditors. This is also a substantial step in bringing the administration of this matter to an end.

USTP (Common) Ex. 19
Page 178 of 272

10

UST Exhibit 7
JW 30b6
Page 10 of 25

**D. Whether other parties in interest support the settlement**

36.     The Plan Administrator has communicated the terms of the Settlement Agreement to the DIP Lenders (as the term is defined in the Plan), who would be the recipients of any distributions.  The DIP Lenders support the settlement.

**E. The nature and breadth of releases to be obtained by JW and the Plan Administrator**

37.     The Settlement Agreement contains customary broad mutual releases among JW and the Plan Administrator on behalf of the Wind-Down Debtors.  This is to bring finality to the claims and disputes between the Plan Administrator and JW.

**F. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

38.     Counsel for the Plan Administrator and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates.  The Settlement Agreement was entered into after 20 months of litigation and after the parties exchanged multiple settlement proposals. The settlement was reached following extensive arms-length negotiations.

39.     The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation.  The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Administrator believes it has achieved a resolution that maximizes value for the Wind-Down Debtors while minimizing the cost and uncertainty of litigation.  Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the estates and all concerned parties.

USTP (Common) Ex. 19
Page 179 of 272

UST Exhibit 7
JW 30b6
Page 11 of 25

WHEREFORE, the Plan Administrator respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

DATED: July 29, 2025                   Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*Counsel to the Wind-Down Debtors in the Sungard Chapter 11 Cases*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, a true and correct copy of the foregoing Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Daniel F. X. Geoghan*
Daniel F. X. Geoghan

USTP (Common) Ex. 19
Page 180 of 272

UST Exhibit 7
JW 30b6
Page 12 of 25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

In re:

Professional Fee Matters Concerning the
Jackson Walker Law Firm,

                  **Reorganized Debtors.**

Civil Action No.: 4:23-cv-04787

## ORDER GRANTING MOTION FOR ORDER APPROVING
## COMPROMISE AND SETTLEMENT PURSUANT TO
## FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Upon the hearing on the *Motion for Order Approving Compromise and Settlement Pursuant Bankruptcy Rule 9019* (the "**Motion**")[1] filed by the Sungard AS New Holdings, LLC the wind-down debtor (together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC,[2] the "**Wind-Down Debtors**"), by and through Drivetrain LLC (the "**Plan Administrator**"), the Court having considered the Motion, all responses or objections thereto, the evidence presented at the hearing, the arguments of counsel, and the law, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; that this is a core proceeding under 28 U.S.C. § 157; that notice of the Motion and the opportunity for hearing on the Motion was appropriate under the particular circumstances; that no other or further notice need be provided; that the terms of the Settlement Agreement are fair, equitable, and in the best interest of the Wind-Down Debtors, the Wind-Down Debtors' estates, the creditors, and

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed to them in the Motion.

[2] The Sungard Debtors/Wind Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, ~~rd~~ Availability Services, LP; and Sungard Availability Services, Ltd.

USTP (Common) Ex. 19
Page 181 of 272

UST Exhibit 7
JW 30b6
Page 13 of 25

all other parties-in-interests; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Settlement as described in the Motion and Settlement Agreement (attached hereto as Exhibit A) is approved. The Settlement Agreement and the terms and conditions thereof, including, without limitation, the mutual releases contained therein, are incorporated by reference herein and approved in their entirety as if set forth herein. It is further

**ORDERED** that all objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice. It is further

**ORDERED** that Seadrill is authorized to enter into the Settlement Agreement, execute all other documents, and take any and all actions necessary to effectuate the Settlement Agreement. It is further

**ORDERED** that this Order is binding in all respects upon all parties in interest in this case, creditors of the Debtor or the estate, and the successors and assigns of each of the foregoing. It is further

**ORDERED** that this Order shall be effective immediately upon its entry. And it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

_____
Alia Moses,
Chief United States District Judge

USTP (Common) Ex. 19
Page 182 of 272

UST Exhibit 7
JW 30b6
Page 14 of 25

# <u>EXHIBIT A</u>

Settlement Agreement

USTP (Common) Ex. 19
Page 183 of 272

UST Exhibit 7
JW 30b6
Page 15 of 25

# SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated July 17, 2025 is made and entered into by and between Jackson Walker LLP ("JW"), the Wind-Down Debtors in the chapter 11 cases of Sungard AS New Holdings, LLC and its affiliates (the "Wind-Down Debtors"), and Drivetrain, LLC, as Plan Administrator for the Wind-Down Debtors (the "Plan Administrator", and collectively with JW and the Wind-Down Debtors, the "Parties"), with respect to the bankruptcy cases jointly administered under Bankruptcy Case No. 22-90018, *In re Sungard AS New Holdings, LLC* and certain of its affiliates (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A.      On or about November 2-3, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel. The U.S. Trustee also filed related motions seeking to withdraw the reference of the Rule 60(b) motions.

B.      On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

C.      On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

D.      On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

E.      On December 16, 2024, the Wind-Down Debtors filed a joinder to the U.S. Trustee Filings. *See* Dkt. No. 1075.

F.      The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases (collectively, the "Bankruptcy Disputes").

G.      The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings was previously set before the Honorable Chief Judge Rodriguez in May 2025.

USTP (Common) Ex. 19
Page 184 of 272

UST Exhibit 7
JW 30b6
Page 16 of 25

H.     On April 9, 2025, Chief District Court Judge Alia Moses entered a *Memorandum Opinion and Order* withdrawing the Rule 60(b) motions, including the motion filed in the Bankruptcy Cases, to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court" or "District Court Proceeding", as applicable).

I.     As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.     <u>Recitals</u>.  The above recitals are incorporated herein by reference.

2.     <u>Effective Date</u>.

(a)     The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court or District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Case or any other action or proceeding.

(b)     With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings related to approval of the Settlement Motion (defined below).  Consistent with the preceding sentences, the Wind-Down Debtors and/or the Plan Administrator, as applicable will promptly prepare a motion to

USTP (Common) Ex. 19
Page 185 of 272

67271/0001-50473230v2

2

UST Exhibit 7
JW 30b6
Page 17 of 25

approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "Settlement Motion"). Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion. The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Wind-Down Debtors, the Plan Administrator, and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Cases, and that this Agreement meets the standards required for approval under Rule 9019 of the Bankruptcy Rules. The Settlement Motion will be filed in the District Court under case number 4:23-CV-4787 AM. For the further avoidance of doubt, the Wind-Down Debtors and the Plan Administrator have agreed to file a Settlement Motion seeking approval of their entry into this Agreement out of an abundance of caution and without prejudice to the express terms of the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan or Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 751] (the "Confirmed Plan"), which specifically waives the requirement that the Wind-Down Debtors and the Plan Administrator seek approval of any compromise or settlement of Claims (as that term is defined in the Confirmed Plan) or Causes of Action (as that term is defined in the Confirmed Plan) pursuant to Bankruptcy Rule 9019.

3. <u>Settlement Payment</u>. Within five (5) business days after the Effective Date, JW shall pay or cause to be paid to the Wind-Down Debtors (receipt of which shall be promptly confirmed by the Plan Administrator) the sum of $385,000.00 (the "Settlement Payment"). Payment shall be made payable to the Wind-Down Debtors' account by wire transfer using wire transfer instructions separately provided to JW. The Settlement Payment shall be paid to the Wind-Down Debtors and distributed pursuant to the terms of the Confirmed Plan in the Bankruptcy Case.

4. <u>Vacatur of Final Fee Order</u>. Subject to the approval of the Bankruptcy Court or District Court, as applicable, the Parties agree that the December 30, 2022 *Order* [Dkt. No. 899] shall be vacated and the Approval Order shall approve, on a final basis, JW's compensation and reimbursement of expenses in the amount of $35,461.46, which represents reimbursement of expenses in the amount of $5,966.46 and reduced fees in the amount of $29,495.00.

5. <u>Mutual Releases</u>.

(a) *Release in Favor of JW.* Upon receipt of the entire Settlement Payment, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Plan Administrator on behalf of itself and the Wind-Down Debtors hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants,

USTP (Common) Ex. 19
Page 186 of 272
67271/0001-50473230v2

3

UST Exhibit 7
JW 30b6
Page 18 of 25

contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Wind-Down Debtors or the Plan Administrator against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b) *Release in Favor of the Wind-Down Debtors and the Plan Administrator.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Wind-Down Debtors and the Plan Administrator and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

6. <u>Waiver of Future and Unknown Claims</u>. Each of the Parties acknowledges that it has been advised by its attorney(s) concerning, and is familiar with, the provisions of California Civil Code Section 1542, which provides:

USTP (Common) Ex. 19
Page 187 of 272

UST Exhibit 7
JW 30b6
Page 19 of 25

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR.

Each of the Parties acknowledges that it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs or expenses as the Party may have sustained might give rise to additional damages, losses, fees, costs or expenses in the future. Nevertheless, each of the Parties who/which have provided releases herein acknowledges that the releases herein have been negotiated and agreed upon in light of such possible damages, losses, fees, costs or expenses, and each expressly waives any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect concerning any potential presently-unknown claims.

7.    Bar.  The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Wind-Down Debtors or the Plan Administrator against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

8.    ***Express Waiver of Fraudulent Inducement Claims***.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT.  THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE**

USTP (Common) Ex. 19
Page 188 of 272
67271/0001-50473230v2

UST Exhibit 7
JW 30b6
Page 20 of 25

**PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.**

9.   <u>No Admission / Liability Denied</u>.   This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation.  The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied.  This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

10.   <u>Representations and Warranties</u>.  The following representations and warranties in this Agreement shall survive its execution and performance.

    (a)   *Representations and Warranties by the Wind-Down Debtors and the Plan Administrator.*

       (i)   Subject to approval by the Bankruptcy Court or District Court, as applicable, the Wind-Down Debtors and the Plan Administrator have all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Wind-Down Debtors;

       (ii)   Subject to approval by the Bankruptcy Court or District Court, as applicable, the execution, delivery and performance by the Plan Administrator of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Wind-Down Debtors or the Plan Administrator may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Wind-Down Debtors or the Plan Administrator is a party or to which the Wind-Down Debtors or the Plan Administrator may be bound;

       (iii)   The Wind-Down Debtors and the Plan Administrator are the only persons or entities who, to their knowledge, have any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

       (iv)   The Wind-Down Debtors and the Plan Administrator have freely and voluntarily entered into this Agreement and has been fully

USTP (Common) Ex. 19
Page 189 of 272
67271/0001-50473230v2

6

UST Exhibit 7
JW 30b6
Page 21 of 25

advised by their attorneys concerning their rights and have further been advised by their attorneys as to the terms and effects of this Agreement.

(b) *Representations and Warranties by JW.*

(i) JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii) The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound; and

(iii) JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

11.    Notice in the District Court Proceeding, Miscellaneous Proceeding, or Bankruptcy Case. Within three (3) business days after the Effective Date, the Wind-Down Debtors and/or the Plan Administrator, as applicable and JW may file a joint notice in the District Court Proceeding, the Bankruptcy Case, or the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "Miscellaneous Proceeding"), as may be applicable, attaching a copy of the Final Order and notifying the applicable judge of the settlement of the claims related to the Rule 60(b) motion and the Bankruptcy Case. The Parties may file a notice in the District Court Proceeding, the Bankruptcy Case, and/or the Miscellaneous Proceeding, as applicable, in advance of the Approval Order becoming a Final Order informing the applicable pending judge of the settlement and this Agreement.

12.    Cooperation and Dismissal or Withdrawal with Prejudice. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, the Wind-Down Debtors shall withdraw the joinder to the U.S. Trustee Filings with prejudice within three (3) business days after receipt of the Settlement Payment.

USTP (Common) Ex. 19
Page 190 of 272

67271/0001-50473230v2

7

UST Exhibit 7
JW 30b6
Page 22 of 25

13.     <u>Retention of Jurisdiction</u>.  The Bankruptcy Court or District Court, as applicable, shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

14.     <u>Return of Documents / Prohibition on Further Disclosure of Discovery Materials</u>. Within 30 days of the Effective Date, the Wind-Down Debtors, the Plan Administrator and their counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Case, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party.

15.     <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

16.     <u>Dispute Resolution</u>.  Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court or District Court, as applicable.

17.     <u>Successors and Assigns</u>.  This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

18.     <u>Headings and Construction</u>.  Headings in this Agreement are for convenience and are not to be used in construing this Agreement.  This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

19.     <u>Entire Agreement / No Oral Agreements</u>.  The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters.  The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement.  No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

20.     <u>Expenses, Fees, and Costs</u>.  The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

21.     <u>Severability</u>.  Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

67271/0001-50473230v2

8

22.     _Waiver_.  The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter.  No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

23.     _Counterparts_.  This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original.  All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

USTP (Common) Ex. 19
Page 192 of 272

67271/0001-50473230v2

UST Exhibit 7
JW 30b6
Page 24 of 25

Drivetrain LLC, as Plan Administrator for the Sungard Wind-Down Debtors

DATED: _____ July 17, 2025 _____

_____

Jackson Walker LLP

DATED: _____ 7/17/2025 _____

_____
Name: William R. Jenkins, Jr.
Title: Partner and General Counsel

USTP (Common) Ex. 19
Page 193 of 272
67271/0001-50473230v2

10

UST Exhibit 7
JW 30b6
Page 25 of 25

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Civil Action No. 4:23-cv-04787 |

## MOTION FOR ORDER APPROVING COMPROMISE AND
## SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

TO THE HONORABLE ALIA MOSES
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Steven Balasiano, solely in his capacity as Plan Administrator (the "Plan Administrator")[1] for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc. (collectively, the "Debtors" or the "Wind-Down Debtors"),[2] and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Motion"), and in support thereof, respectfully shows the Court as follows:

## I.  RELIEF REQUESTED

1.      By this Motion and in accordance with Bankruptcy Rule 9019(a),[3] the Plan Administrator requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement Agreement") between Jackson Walker LLP ("JW"), the Wind-Down Debtors and the Plan Administrator that would resolve any and all claims and causes of action of

---

[1]     As defined in the *Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* [Dkt. No. 694] (the "Plan") filed in the Bankruptcy Case (as defined herein).

[2]     The Debtors/Wind-Down Debtors include Stage Stores, Inc. and Specialty Retailers, Inc.

[3]     Article IV.D and M of the Plan provide that the Plan Administrator is "the sole representative of, and shall act for, the Wind-Down Debtors" and the Wind-Down Debtors may, among other things, prosecute, compromise, or settle any Causes of Action (as defined in the Plan) without the consent or approval of any third party, including the Bankruptcy Court.  Notwithstanding the foregoing, the Plan Administrator files this Motion under Bankruptcy ... seeks approval from this Court.

USTP (Common) Ex. 19
Page 194 of 272


UST
Exhibit
8

any kind held by the Wind-Down Debtors, their estates, and/or the Plan Administrator, in his capacity as such, against JW arising out of or related to *In re Stage Stores, Inc., et al.*, Chapter 11 Case No. 20-32564, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Case"), *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "Misc. Proceeding"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the full mutual releases set forth in the Settlement Agreement, JW shall pay the Wind-Down Debtors $75,000.00 (the "Settlement Amount"), which will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case.

## II.     JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Administrator confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## III.     BACKGROUND

### A.     The Debtors' Chapter 11 Cases

4.     On May 10, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for

USTP (Common) Ex. 19
Page 195 of 272

2

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>"). The Bankruptcy Case was pending before former Judge Jones.

5.    On June 4, 2020, the Debtors filed their *Application to Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession* [Dkt. No. 385]. JW's employment application was approved by former Judge Jones on July 10, 2020 [Dkt. No. 583].

6.    On May 21, 2020, the Debtors filed their *Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Dkt. No. 297].

7.    On July 1, 2020, the Debtors filed the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.* (the "<u>Disclosure Statement</u>"). *See* Dkt. No. 535. The Disclosure Statement estimated that general unsecured creditors would recover between 0% and 6% on their allowed claims. Disclosure Statement at 7. On July 1, 2020, the Court entered an Order [Dkt. No. 540] conditionally approving the Disclosure Statement.

8.    On August 13, 2020, Debtors filed their Plan, which was confirmed by the Court on August 14, 2020 [Dkt. No. 705].

9.    On October 30, 2020, the effective date of the Plan occurred (the "<u>Effective Date</u>") [Dkt. No. 898].

10.    On the Effective Date, Steven Balasiano, in his capacity as Plan Administrator, became the sole representative of the Debtors' estates for the purpose of, *inter alia*, reviewing, settling, and compromising disputes regarding claims filed against the Debtors' estates and

USTP (Common) Ex. 19
Page 196 of 272

UST Exhibit 8
JW 30b6
Page 3 of 26

facilitating distributions to creditors pursuant to Articles IV.D and VII.B of the Plan.

11. On November 13, 2020, JW filed its *First and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from May 10, 2020 through August 14, 2020* (the "Fee Application") [Dkt. No. 931]. JW's Fee Application was approved, without objection, by former Judge Jones on December 16, 2020, awarding compensation and reimbursement of expenses in the amount of $184,746.15, including $29,295.00 billed by Elizabeth Freeman, JW's now-former partner. *See* Dkt. No. 983.

### B. The Miscellaneous Proceeding

12. On or about November 2, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 1216]. An amended Rule 60(b) motion was filed on February 29, 2024 (the "Rule 60(b) Motion"). *See* Dkt. No. 1241. The basis of the Rule 60(b) Motion was the alleged undisclosed relationship between former Judge Jones and Ms. Freeman.

13. On December 9, 2023, an Order was entered commencing the Misc. Proceeding in the Bankruptcy Court.

14. On April 12, 2024, the Plan Administrator, on behalf of himself and the Wind-Down Debtors, filed a *Notice of Standing and Indispensable Party Status* [Dkt. No. 1253] in the Bankruptcy Case.

15. On December 16, 2024, the Wind-Down Debtors filed their *Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions,*

USTP (Common) Ex. 19
Page 197 of 272

4

UST Exhibit 8
JW 30b6
Page 4 of 26

*and (3) Related Relief* (the "Joinder") [Dkt. No. 1280].

16.     On May 22, 2024, JW filed its response in opposition to the Rule 60(b) Motion [Dkt. No. 1258].

17.     On July 1, 2024, the U.S. Trustee filed his reply [Dkt. No. 1261].

18.     On August 12, 2024, JW filed its sur-reply [Dkt. No. 1272].

19.     On May 20, 2025 and May 21, 2025, the U.S. Trustee filed objections to motions to approve settlement agreements between JW and certain parties holding claims against JW related to the Jones-Freeman relationship. *See* Dkt Nos. 68, 69, 71, 93.

20.     On August 15, 2025, the U.S. Trustee filed an objection to additional settlement motions between JW and other parties holding claims against JW related to the Jones-Freeman relationship and supplemented the previous objections filed by the U.S. Trustee. *See* Dkt. No. 93.[4]

21.     JW disputes the merits of the UST's Motion and the Joinder.  JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case.  The Wind-Down Debtors and the Plan Administrator vigorously disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW in the Chapter 11 Case.

22.     The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying

---

[4]     The Plan Administrator notes these objections due to the similarity between this Motion and the other settlement ... ST does not consent to the relief requested in this Motion.

USTP (Common) Ex. 19
Page 198 of 272

5

UST Exhibit 8
JW 30b6
Page 5 of 26

on the UST's office to lead the litigation. However, counsel for the Plan Administrator reviewed all substantive pleadings in the Bankruptcy Case, the Misc. Proceeding, and all other proceedings relevant to the undisclosed relationship between former Judge Jones and Ms. Freeman, reviewed available documents, attended numerous hearings, meetings, and settlement conferences, and participated in calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases.

23.     On February 25, 2025, the Plan Administrator's counsel met with Judge Royal Furgeson (Ret.), one of the two mediators retained in the matter, to discuss the estates' potential claims against JW related to the Misc. Proceeding. Following that meeting, the Plan Administrator worked to resolve the dispute directly with JW and its counsel and did not participate in any formal mediation. As a result of those discussions, JW and the Plan Administrator reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

## IV.     SUMMARY OF SETTLEMENT TERMS[5]

24.     The Settlement Agreement is straightforward. Within five (5) business days of entry of an Order granting this Motion and such Approval Order becoming a Final Order (as defined therein), JW will pay to the Wind-Down Debtors $75,000.00, which settlement payment will be distributed pursuant to the terms of the confirmed Plan in the Bankruptcy Case. In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases.

---

[5]    The summary of the settlement terms is being provided herein for convenience only. To the extent of any inconsistency between this summary and the Settlement Agreement attached hereto, the Settlement Agreement prevails. Capitalized terms not otherwise defined in this section shall have the meanings ascribed to such terms in the Settlement Agreement.

USTP (Common) Ex. 19
Page 199 of 272

6

## V.    ARGUMENTS AND AUTHORITIES

25.    Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007) (quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

26.    "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…." *Id.* at 462. Those factors are:

  i.    The balance between the litigation's possibility of success and the settlement's future benefits;

  ii.   The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

  iii.  The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

  iv.   Whether other parties in interest support the settlement;

  v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

  vi.   The nature and breadth of releases to be obtained by [the settling party]; and

  vii.  The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

USTP (Common) Ex. 19
Page 200 of 272

7

UST Exhibit 8
JW 30b6
Page 7 of 26

27.    The Plan Administrator contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Administrator and the Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense and uncertainty of continued and protracted litigation, and will enable the Plan Administrator to move further towards closure of the Bankruptcy Case as this dispute is one of the last unresolved issues remaining in the Bankruptcy Case.

**A.    The balance between the litigation's possibility of success and the settlement's future benefits**

28.    The Plan Administrator contends that the possibility of success in the litigation against JW is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Administrator will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides an additional source of recovery for general unsecured creditors in accordance with the confirmed Plan, which are estimated to be between 0% and 6%, and eliminates the litigation risk of continuing to litigate the claims against JW.

29.    The Plan Administrator submits there is a significant likelihood that the orders approving JW's fee applications will be vacated, thus opening up the possibility that fees paid to JW will be clawed back for the benefit of the Wind-Down Debtors, and therefore general unsecured creditors, under the Plan. However, the Plan Administrator acknowledges that case law does not necessarily mandate full disgorgement, thus there is some litigation risk. Even if the Plan Administrator's claims against JW are successful at trial, appeals could also follow further ... litigation timeline and increasing the costs, which is significant in the Bankruptcy

USTP (Common) Ex. 19
Page 201 of 272

UST Exhibit 8
JW 30b6
Page 8 of 26

Case given the relatively small amount of fees and expenses paid to JW and the low recoveries estimated for general unsecured creditors in the Bankruptcy Case.

30.     The Settlement Agreement and Settlement Amount provides the Liquidation Trust with approximately 40% of the fees awarded to JW, which is also over 2.5 times the $29,295.00 billed by Ms. Freeman in the Bankruptcy Case, upon an order approving the Settlement Amount becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan.  Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case to maximize any recovery for general unsecured creditors.

**B.    The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

31.     There is a high likelihood that litigation will be complex and protracted, which has already proven to be the case with this litigation commencing approximately two (2) years ago in November 2023.  Indeed, while trial was set to commence in May 2025, that trial date has now been abated in light of the withdrawal of the reference and JW's mediation with the UST and thus continued monitoring costs will only continue to accrue to the detriment of the Wind-Down Debtors' estates.

32.     Additionally, as mentioned above, even if the orders approving JW's retention and/or final fee applications are vacated, such result may not necessarily result in disgorgement of 100% of fees given the case law and other considerations.  Indeed, as this Court noted at the hearing held on May 22, 2025, it is not clear that a court would find that JW is solely responsible for the damages to the Wind-Down Debtors.  If a finding was made that former Judge Jones and Ms. Freemen should be held at least partially responsible, it is possible that the Wind-Down Debtors ____ ss than 100% of the fees and could be left to litigate with former Judge Jones and

USTP (Common) Ex. 19
Page 202 of 272

Ms. Freeman for any remaining unpaid amounts – leading again to further litigation and costs.  A settlement now brings finality and eliminates any meaningful litigation and/or collection risk, and puts an end to litigation costs after over two (2) years of litigation, including motion practice.

      **C.**     **The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

33.     The Plan Administrator is of the firm belief that the Settlement Agreement is in the best interest of general unsecured creditors as the Settlement Agreement removes any uncertainty of litigation, stops the Wind-Down Debtors from incurring further attorney's fees and expenses in connection with these disputes, and provides an additional source of recovery for the benefit of the general unsecured creditors in light of the relatively small amount of fees and expenses at issue in the Bankruptcy Case.  This is also a substantial step towards the completing the Wind Down (as defined in the Plan), dissolution of the Wind-Down Debtors' estates, and closing the Bankruptcy Case.

      **D.**     **The nature and breadth of releases to be obtained by JW and the Plan Administrator**

34.     The Settlement Agreement contains customary mutual releases between JW and the Plan Administrator on behalf of the bankruptcy estates.  This is to bring finality to the claims and disputes between the Plan Administrator and JW.

      **E.**     **The competency and experience of counsel supporting, and the experience and knowledge of the judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

35.     Counsel for the Plan Administrator and JW, as well as Chief Judge Moses, are competent and experienced.  The Settlement Agreement was reached after extensive litigation and discovery in the Bankruptcy Case and the Misc. Proceeding and after the parties exchanged

USTP (Common) Ex. 19
Page 203 of 272

UST Exhibit 8
JW 30b6
Page 10 of 26

multiple settlement proposals. The settlement was reached following extensive arms-length negotiations.

36.    The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation.  The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses.  The Plan Administrator has attempted to achieve a resolution that maximizes value for the Wind-Down Debtors' estates. Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the Wind-Down Debtors' estates and all concerned parties.


*[Remainder of Page Intentionally Left Blank]*


USTP (Common) Ex. 19
Page 204 of 272

11

UST Exhibit 8
JW 30b6
Page 11 of 26

WHEREFORE, the Plan Administrator respectfully request that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

DATED: November 10. 2025                    Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280*)*
**COLE SCHOTZ P.C.**
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: dgeoghan@coleschotz.com

- and -

Seth Van Aalten, Esq. (Admitted Pro Hac Vice)
Sarah A. Carnes, Esq. (Admitted Pro Hac Vice)
Bryant P. Churbuck, Esq.
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: svanaalten@coleschotz.com
        scarnes@coleschotz.com
        bchurbuck@coleschotz.com

*Counsel to Steven Balasiano as Plan
Administrator of Stage Stores, Inc., et al*

USTP (Common) Ex. 19
Page 205 of 272

UST Exhibit 8
JW 30b6
Page 12 of 26

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, a true and correct copy of the foregoing *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case, and on all beneficiaries under the Plan who otherwise stand to recover under the terms of the Settlement Agreement and Plan.

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan

USTP (Common) Ex. 19
Page 206 of 272

UST Exhibit 8
JW 30b6
Page 13 of 26

# EXHIBIT A

USTP (Common) Ex. 19
Page 207 of 272

UST Exhibit 8
JW 30b6
Page 14 of 26

# SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated October 23, 2025 is made and entered into by and between Jackson Walker LLP ("JW") and Steven Balasiano, Plan Administrator for the Wind-Down Debtors (the "Plan Administrator", and collectively with JW, the "Parties") in the chapter 11 cases of Stage Stores, Inc. and Specialty Retailers, Inc., Case No. 20-32564 (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A.      On or about November 2, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel.

B.      On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

C.      On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

D.      On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

E.      On December 16, 2024, the Wind-Down Debtors (as defined in the *Joint Second Amended Chapter 11 Plan of Stage Stores, Inc. and Specialty Retailers, Inc.*) filed a joinder to the U.S. Trustee Filings.

F.      The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's acts or omissions in relation to the Bankruptcy Cases, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases (collectively, the "Bankruptcy Disputes").

G.      The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee application in the Bankruptcy Cases as raised in the U.S. Trustee Filings is set before the Honorable Chief Judge Rodriguez in May 2025.

H.      As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued

USTP (Common) Ex. 19
Page 208 of 272

UST Exhibit 8
JW 30b6
Page 15 of 26

Docusign Envelope ID: A87AFFE2-0315-49E3-AB37-D57D697B60D7

litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.   Recitals.  The above recitals are incorporated herein by reference.

2.   Effective Date.

(a)     The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "Final Order" when:  (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Cases or any other action or proceeding.

(b)     With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings.  Consistent with the preceding sentences, Jackson Walker will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "Settlement Motion").  Before the Settlement Motion is filed, the Plan Administrator and the Wind-Down Debtors will be given an opportunity to review and comment on the Settlement Motion.  The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties.  For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Plan Administrator, Wind-Down Debtors and the bankruptcy estates of Stage

UST Exhibit 8
JW 30b6
Page 16 of 26

Docusign Envelope ID: A87AFFE2-0315-49E3-AB37-D57D697B60D7

Stores, Inc. and Specialty Retailers, Inc. and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Cases, and that this Agreement adequately sanctions JW for any alleged violations of any law, rule, procedure, or statute.

3. <u>Settlement Payment</u>. Within five (5) business days after the Approval Order becoming a Final Order, JW shall pay or cause to be paid to the Wind-Down Debtors (receipt of which shall be promptly confirmed by the Plan Administrator) the sum of $75,000 (the "<u>Settlement Payment</u>"). Payment shall be made payable to the Wind-Down Debtors' account by wire transfer using the following instructions:

> Account Name:
> Bank Name:
> Account Number:
> Wire Routing Number:
> ACH Routing Number:
> SWIFT Number:
> Reference Number:

The Settlement Payment shall be paid to the Wind-Down Debtors and distributed pursuant to the terms of the confirmed plan in the Bankruptcy Cases.

4. <u>Mutual Releases</u>.

(a) *Release in Favor of JW.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Plan Administrator, the Debtors' estates, and the Wind-Down Debtors hereby release, acquit, and forever discharge JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Plan Administrator, the Debtors' estates, or the Wind-Down Debtors against JW related to any breach of fiduciary duty,

USTP (Common) Ex. 19
Page 210 of 272

UST Exhibit 8
JW 30b6
Page 17 of 26

negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b)  *Release in Favor of the Plan Administrator, the Debtors' Estates, and the Wind-Down Debtors.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Plan Administrator, the Debtors' estates, the Wind-Down Debtors, and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

5.  **Waiver of Future and Unknown Claims**. Each of the Parties acknowledges that he or it has been advised by his or its attorney(s) concerning, and is familiar with, the provisions of California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each of the Parties acknowledges that he or it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs or expenses as the Party may have sustained might give rise to additional damages, losses, fees, costs or expenses in the future. Nevertheless, each of the Parties who/which have provided releases herein acknowledges that the releases herein have been negotiated and agreed upon in light of such possible damages, losses, fees, costs or expenses, and each expressly waives any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect concerning any potential presently-unknown claims.

6.  Bar. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of

UST Exhibit 8
JW 30b6
Page 18 of 26

Docusign Envelope ID: A87AFFE2-0315-49E3-AB37-D57D697B60D7

action under federal, state or other law relating to any possible claim by the Plan Administrator, the Debtors' estates, or the Wind-Down Debtors against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

7. *Express Waiver of Fraudulent Inducement Claims.*

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.**

8. <u>No Admission / Liability Denied</u>. This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation. The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied. This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

9. <u>Representations and Warranties</u>. The following representations and warranties in this Agreement shall survive its execution and performance.

    (a) *Representations and Warranties by the Plan Administrator and the Wind-Down Debtors.*

        (i) Subject to approval by the Bankruptcy Court, the Plan Administrator and/or the Wind-Down Debtors have all requisite power and authority to execute, deliver and perform this Agreement and the

UST Exhibit 8
JW 30b6
Page 19 of 26

Docusign Envelope ID: A87AFFE2-0315-49E3-AB37-D57D697B60D7

transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Wind-Down Debtors;

(ii)     Subject to approval by the Bankruptcy Court, the execution, delivery and performance by the Plan Administrator and/or the Wind-Down Debtors of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plan Administrator or the Wind-Down Debtors may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plan Administrator or the Wind-Down Debtors are a party to which the Plan Administrator or the Wind-Down Debtors may be bound;

(iii)     The Plan Administrator and Wind-Down Debtors are the only persons or entities who, to the Plan Administrator's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(iv)     The Plan Administrator and the Wind-Down Debtors have freely and voluntarily entered into this Agreement and has been fully advised by their attorneys concerning their rights and have further been advised by their attorneys as to the terms and effects of this Agreement.

(b)     *Representations and Warranties by JW.*

(i)     JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii)     The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or

result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii)    JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

10.    <u>Notice in the Miscellaneous Proceeding</u>.  Within three (3) business days after the Effective Date, the Plan Administrator and/or the Wind-Down Debtors and JW shall file a joint notice in the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "<u>Miscellaneous Proceeding</u>"), attaching a copy of the Final Order and notifying the Honorable Chief Judge Rodriguez of the settlement of the claims related to the Bankruptcy Cases. The Parties may file a notice in the Miscellaneous Proceeding in advance of the Approval Order becoming a Final Order informing Chief Judge Rodriguez of the settlement and this Agreement.

11.    <u>Cooperation and Dismissal or Withdrawal with Prejudice</u>. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, taking all such action as may be necessary to obtain the dismissal or withdrawal of the U.S. Trustee Filings as such relate to the Bankruptcy Cases, and the Plan Administrator and/or the Wind-Down Debtors shall, within three (3) business days after the Effective Date, withdraw any related joinder or separate pleading or proceeding with prejudice.

12.    <u>Bankruptcy Court Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

13.    <u>Return of Documents / Prohibition on Further Disclosure of Discovery Materials</u>. Within 30 days of the Effective Date, the Plan Administrator and/or the Wind-Down Debtors and their counsel, any testifying and consulting experts, any other third-party vendor or consultant engaged by the Plan Administrator and/or the Wind-Down Debtors or their counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Cases, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Cases to any third party.

14.    <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

15.  <u>Dispute Resolution</u>.  Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court.

16.  <u>Successors and Assigns</u>.  This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

17.  <u>Headings and Construction</u>.  Headings in this Agreement are for convenience and are not to be used in construing this Agreement.  This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

18.  <u>Entire Agreement / No Oral Agreements</u>.  The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters.  The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement.  No extrinsic evidence whatsoever may be introduced in any judicial proceeding involving the construction or interpretation of this Agreement.  No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

19.  <u>Expenses, Fees, and Costs</u>.  The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

20.  <u>Severability</u>.  Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

21.  <u>Waiver</u>.  The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter.  No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

22.  <u>Counterparts</u>.  This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original.  All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

UST Exhibit 8
JW 30b6
Page 22 of 26

Docusign Envelope ID: A87AFFE2-0315-49E3-AB37-D57D697B60D7

*[Signature blocks on next page]*

USTP (Common) Ex. 19
Page 216 of 272

UST Exhibit 8
JW 30b6
Page 23 of 26

Steven Balasiano, as Plan Administrator for the Wind-Down Debtors, and not in his individual capacity

DATED: 10/23/2025 | 12:40 PM PDT

DocuSigned by:

Steven Balasiano
6820F4319B2E4B0

Jackson Walker LLP

DATED: 10/24/2025

Name:
Title: William R Jenkins, Jr.
Partner & General Counsel

USTP (Common) Ex. 19
Page 217 of 272

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Civil Action No. 4:23-cv-04787 |
| Professional Fee Matters Concerning the Jackson Walker Law Firm | |

## ORDER APPROVING COMPROMISE AND SETTLEMENT
## PURSUANT TO BANKRUPTCY RULE 9019

Upon the hearing on the *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "Motion")[1] filed by Steven Balasiano, in his capacity as Plan Administrator for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc. (collectively, the "Debtors" or the "Wind-Down Debtors"),[2] the Court having considered the Motion, all responses or objections thereto, the evidence presented at the hearing, the arguments of counsel, and the law, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; that this is a core proceeding under 28 U.S.C. § 157; that notice of the Motion and the opportunity for hearing on the Motion was appropriate under the particular circumstances; that no other or further notice need be provided; that the terms of the Settlement Agreement are fair, equitable, and in the best interest of the Wind-Down Debtors, the Wind-Down Debtors' estates, the creditors, and all other parties-in-interests; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Settlement as described in the Motion and Settlement Agreement (attached hereto as **Exhibit A**) is approved.  The Settlement Agreement and the terms and

---

[1]   Capitalized terms used but not defined herein will have the meaning ascribed to such terms in the Motion.

[2]   The Wind-Down Debtors include Stage Stores, Inc. and Specialty Retailers, Inc.

USTP (Common) Ex. 19
Page 218 of 272

UST Exhibit 8
JW 30b6
Page 25 of 26

conditions thereof, including, without limitation, the mutual releases contained therein, are incorporated by reference herein and approved in their entirety as if set forth herein; and it is further

**ORDERED** that all objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice; and it is further

**ORDERED** that the Plan Administrator is authorized to enter into the Settlement Agreement, execute all other documents, and take any and all actions necessary to effectuate the Settlement Agreement; and it is further

**ORDERED** that this Order is binding in all respects upon all parties in interest in this case, creditors of the Wind-Down Debtors or their estates, and the successors and assigns of each of the foregoing; and it is further

**ORDERED** that this Order shall be effective immediately upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

USTP (Common) Ex. 19
Page 219 of 272

UST Exhibit 8
JW 30b6
Page 26 of 26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | **Civil Action No. 4:23-cv-04787** |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM** | § | |
| | § | |

## MOTION FOR ENTRY OF ORDER APPROVING COMPROMISE OF CONTROVERSY UNDER BANKRUPTCY RULE 9019

**TO THE HONORABLE ALIA MOSES, CHIEF UNITED STATES DISTRICT JUDGE:**

Patrick Bartels, as Trustee for the Strike Liquidating Trust (the "**Trustee**"), files this Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Procedure 9019 (the "**Motion**") and respectfully states as follows:

### Summary of Relief Requested

1.      The Trustee seeks entry of an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between the Trustee and Jackson Walker, LLP ("**JW**"). Pursuant to the terms of the Settlement Agreement, JW will pay the Trustee the total amount of $440,000.00 (the "**Settlement Amount**") and the parties will exchange mutual releases.

2.      A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

USTP (Common) Ex. 19
Page 220 of 272



UST
Exhibit
9

5.      The basis for the relief requested herein is Rule 9019[1] of the Federal Rules of Bankruptcy Procedure.

## Background

### A. The Strike Bankruptcy Cases.

6.      On December 6, 2021 (the "**Petition Date**"), Strike, LLC and certain of its affiliates (the "**Debtors**")[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the chapter 11 cases jointly administered under Bankruptcy Case No. 21-90054 (the "**Strike Bankruptcy Cases**").[3]

7.      On January 6, 2022, the Debtors filed their Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession [Docket No. 363].

8.      On February 4, 2022, the Bankruptcy Court entered an Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession [Docket No. 661] without an objection filed by any party-in-interest.

9.      On May 17, 2022, the Bankruptcy Court entered its Order (I) Approving the Disclosure Statement, (II) Confirming the Debtors' Joint Chapter 11 Plan of Liquidation, and (III) Granting Related Relief [Docket No. 1111] (the "**Confirmation Order**") confirming the Second

---

[1] Article XI.B. of the Plan (defined below) provides that the Trustee may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, the Trustee files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court to provide transparency to the Court and parties-in-interest with regard to their settlement with JW.

[2] The Debtors in the Strike Bankruptcy Cases are Strike, LLC; STH ShellCo LLC (f/k/a Strike HoldCo, LLC); Delta Directional Drilling, LLC; SGH ShellCo LLC (f/k/a Strike Global Holdings, LLC); CIS ShellCo LLC (f/k/a Capstone Infrastructure Services, LLC); and Crossfire, LLC.

[3] ...oted, the docket entries referenced in the Motion refer to the docket in Bankruptcy Case No. 21-

USTP (Common) Ex. 19
Page 221 of 272

2

UST Exhibit 9
JW 30b6
Page 2 of 21

Modified Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of Strike, LLC and Its Affiliated Debtors [Docket No. 1094] (the "**Plan**"). The Effective Date of the Plan occurred on June 6, 2022.

10.     On June 6, 2022, the Debtors filed their Notice of (I) Entry of Confirmation Order (II) Occurrence of the Effective Date, and (III) Related Bar Dates [Docket No. 1151].

11.     On July 12, 2022, JW filed its First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period From December 6, 2021 Through March 31, 2022 [Docket No. 1204]. There were no objections filed to JW's first interim fee application.

12.     On July 21, 2022, JW filed its Second and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period From December 6, 2021 Through May 17, 2022. [Docket No. 1220].  There were no objections filed to JW's final fee application.

13.     On August 18, 2022, the Bankruptcy Court entered a Final Order Allowing Compensation and Reimbursement of Expenses filed by JW [Docket No. 1248].

**B.  The Miscellaneous Proceeding.**

14.     On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "**UST**"), filed his Motion for Relief From Judgment or Order Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving Any Jackson Walker Applications For Compensation and Reimbursement of Expenses (the "**Rule 60(b) Motion**") [Docket No. 1471].

15.     On December 8, 2023, a Case Management Order was entered noting that Chief Bankruptcy Judge Eduardo Rodriguez ("**Chief Judge Rodriguez**") had commenced and would

USTP (Common) Ex. 19
Page 222 of 272

UST Exhibit 9
JW 30b6
Page 3 of 21

preside over Miscellaneous Proceeding No. 23-00645, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* (the "**JW Proceeding**") in the Bankruptcy Court.

16.     On January 12, 2024, the Trustee, on behalf of the Strike Liquidating Trust, filed a Notice in Connection with the Jackson Walker, LLP Fee Dispute asserting standing and/or indispensable party status [Docket No. 1528].

17.     On February 29, 2024, the U.S. Trustee filed his Amended Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief (the "**Amended Rule 60(b) Motion**"). The Rule 60(b) and the Amended Rule 60(b) Motions are referred to as the "**UST Motions**."

18.     On May 22, 2024, JW filed its Response in Opposition to the UST's Motions [Docket No. 1603].

19.     On July 1, 2024, the UST filed his Reply to JW Response in Opposition [Docket No. 1695].

20.     On August 12, 2024, JW filed its Sur-Reply to the UST's Reply [Docket No. 1750].

21.     JW disputes the merits of the UST's Motion. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 case or JW's acts or omissions in relation to the Chapter 11 case and asserts, among other things, that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 case. The Trustee disagrees with JW's alleged defenses and believes that the release and exculpation provisions of the Plan will provide no defense for JW in a trial of the UST Motions.

USTP (Common) Ex. 19
Page 223 of 272

UST Exhibit 9
JW 30b6
Page 4 of 21

22.     The Trustee has participated in this proceeding since its inception by remotely attending depositions, reviewing documents filed in the case, and regularly conferring with the UST.  The Trustee also participated in the mediation that occurred between JW and various parties in March 2025 which resulted in the execution of the Settlement Agreement.  The Honorable (Ret.) District Judge Gary Fees and the Honorable (Ret.) District Judge Royal Ferguson served as co-mediators.

### Proposed Settlement and Compromise

23.     As more fully set forth in the Settlement Agreement, JW and the Trustee have agreed to the following:

- Within three (3) business days after the Effective Date in the Settlement Agreement, JW will pay the sum of $440,000 (the "Settlement Payment") to the Trustee; and

- The Trustee and JW will provide each other broad mutual releases, including any claims related to the relationship between Elizabeth Freeman and former Judge Jones.

### Merits of Compromise

24.     The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  *TMT Trailer* requires that a compromise must be "fair and equitable."  *TMT Trailer*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (i) senior interests are entitled to full priority over junior interests; and (ii) the settlement is reasonable in relation to the likely rewards of litigation.  *In re*

USTP (Common) Ex. 19
Page 224 of 272

UST Exhibit 9
JW 30b6
Page 5 of 21

*Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

25.     In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

(i)     the probabilities of ultimate success should the claim be litigated;

(ii)    the complexity, expense, and likely duration of litigating the claim;

(iii)   the difficulties of collecting a judgment rendered from such litigation;

(iv)    the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(v)     whether other parties in interest support the settlement;

(vi)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the nature and breadth of releases to be obtained by [the settling party]; and

(vii)   the extent to which the settlement is the product of arm's length bargaining.

*TMT Trailer*, 390 U.S. at 424.  The Trustee believes that the proposed settlement satisfies the requirements established by the Supreme Court in *TMT Trailer*.

## **Analysis of Proposed Compromise**

### **A.  Probabilities of Ultimate Success.**

26.     The Trustee believes that if the matter was fully litigated, there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that JW would have to disgorge some of its fees from the Strike Bankruptcy Cases. However, JW has alleged numerous defenses to the claim and has expressed its commitment to fully defending through trial and appeal, if necessary.  Accordingly, there are substantial questions concerning: (i) the amount of time it will take to litigate and/or recover against JW (including any

USTP (Common) Ex. 19
Page 225 of 272

6

UST Exhibit 9
JW 30b6
Page 6 of 21

applicable appeals); and (ii) the amount of recovery the Trustee will realize through litigation when balanced against the cost of continued litigation.

27. The Settlement Amount provides a significant recovery for the Strike Liquidating Trust for payment to its beneficiaries in accordance with the confirmed Plan and eliminates the risk and cost of continued litigation with JW.

28. Both parties acknowledge that a certain degree of uncertainty always exists with respect to litigation. The Trustee believes that the proposed settlement and compromise fairly recognizes his anticipated recovery on the claims without litigation. The parties have attempted to achieve a resolution that minimizes the potential damage and risk to all parties.

29. The Trustee believes that the proposed compromise is in the best interest of the Strike Liquidating Trust. The compromise provides for a payment by JW of $440,000.00. Given the inherent risk in litigation, the Trustee believes this is a reasonable compromise. For these reasons, the Trustee believes this factor weighs in favor of the proposed compromise.

**B. Complexity, Expense and Likely Duration.**

30. The litigation is quite factually and legally complex, and it will undoubtedly be hotly contested at any trial and beyond. The litigation has already spanned almost two (2) years. As of this filing, no trial date has been set, thus requiring continued monitoring, which comes with its own accruing costs. Additionally, absent settlement, the Trustee will be forced to attend any future trial which would result in substantially more costs and fees being incurred by the Strike Liquidating Trust.

31. More significantly, there are less than a handful of remaining unresolved matters in the Strike Bankruptcy Case and all but the JW Fee Dispute are expected to be resolved within the next 90 days. Approval of this Settlement Agreement will allow for a quicker distribution to the

USTP (Common) Ex. 19
Page 226 of 272

7

UST Exhibit 9
JW 30b6
Page 7 of 21

beneficiaries of the Strike Liquidating Trust and end the continued expenses that have been accruing, including but not limited to the UST's fees.

32.     The Trustee believes this factor strongly weighs in favor of the proposed compromise.

### C. Difficulties in Collection.

33.     If a judgment were rendered in an amount sought by the Trustee, the Trustee believes he would be able to recover from JW. This factor is neutral with respect to the proposed compromise.

### D. Paramount Interests of Creditors.

34.     This factor is not directly applicable to the Strike Bankruptcy Cases. The unsecured creditors are beneficiaries of the Strike Liquidating Trust based on their respective allowed claims. Under the terms of the Settlement Agreement, the Settlement Amount will be paid to the Strike Liquidating Trust and distributed to all beneficiaries in accordance with the terms of the Plan. Moreover, the settlement removes any uncertainty of litigation, stops the Trustee from incurring further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery. As noted above, this is also a substantial step in bringing the administration of the Strike bankruptcy cases to an end.

### E. Other Parties Support of the Settlement.

35.     At this time, the Trustee is unaware of whether other parties in interest support the settlement, but the Trustee has disclosed the terms of the settlement to various parties in interest and no parties in interest have provided any opposition to the proposed settlement.

USTP (Common) Ex. 19
Page 227 of 272

UST Exhibit 9
JW 30b6
Page 8 of 21

**F. Nature and Breadth of Releases.**

36.     The aim of the Settlement Agreement was to bring finality to the disputes between the Trustee and JW.  Accordingly, the Settlement Agreement contains broad mutual releases between the Trustee and JW. Accordingly, the Trustee believes this factor supports the proposed settlement.

**G. Competency, Experience, Knowledge, and Arms-Length Nature of Settlement.**

37.     Counsel for the Trustee and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates. The Settlement Agreement was reached after twenty (20) months of litigation, over seven (7) months of discovery, and following extensive arms-length negotiations conducted during mediation with two experienced mediators and retired Federal Judges.

38.     While uncertainty always exists with continued litigation, the Trustee believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Trustee has attempted to achieve a resolution that maximizes value for the Strike Liquidating Trust and its beneficiaries. The Trustee believes that the Settlement Agreement is fair, equitable, and in the best interest of the estates.

Accordingly, the Trustee requests that this Court approve the proposed settlement and compromise set forth above and grant such other relief as is just.

**Dated: September 24, 2025.**

USTP (Common) Ex. 19
Page 228 of 272

UST Exhibit 9
JW 30b6
Page 9 of 21

Respectfully submitted,

**McCLOSKEY ROBERSON WOOLLEY, PLLC**

By: */s/ Thomas A. Woolley, III*
    Thomas A. Woolley, III
    SBOT: 24042193
    Timothy M. McCloskey
    SBOT: 13417650
    Carissa N. Brewster
    SBOT: 24122933
    190 TC Jester Blvd., Suite 400
    Houston, TX 77007
    713-337-3900
    713-337-3915 (fax)
    rwoolley@mrwpllc.com
    tmccloskey@mrwpllc.com
    cbrewster@mrwpllc.com
    *Counsel for Patrick Bartels, Liquidating Trustee*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served via ECF on parties receiving ECF service in the above-referenced case on September 24, 2025.

                  */s/ Thomas A. Woolley, III*
                  Thomas A. Woolley, III

USTP (Common) Ex. 19
Page 229 of 272

UST Exhibit 9
JW 30b6
Page 10 of 21

# Exhibit A

USTP (Common) Ex. 19
Page 230 of 272

UST Exhibit 9
JW 30b6
Page 11 of 21

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated September 23, 2025 is made and entered into by and between Jackson Walker LLP ("JW") and Patrick Bartels (the "Trustee"), as Trustee for the Strike Liquidating Trust (the "Trust") (the "Trust", and collectively with JW, the "Parties"), with respect to the bankruptcy cases jointly administered under Bankruptcy Case No. 21-90054, *In re Strike, LLC* ("Strike") and certain of its affiliates (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A.     On or about November 2-3, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel. The U.S. Trustee also filed related motions seeking to withdraw the reference of the Rule 60(b) motions.

B.     On January 12, 2024 [Dkt. No. 1528], the Trustee filed a notice of standing in connection with the motions by the U.S. Trustee.

C.     On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

D.     On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

E.     On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

F.     The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's acts or omissions in relation to the Bankruptcy Cases, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases (collectively, the "Bankruptcy Disputes").

G.     The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings was set before the Honorable Chief Judge Rodriguez in May 2025.

H.     On March 6, 2025, the Parties participated in a mediation regarding the U.S. Trustee Filings with Judge Royal Ferguson (Ret.) and Judge Gary Feess (Ret.) serving as mediators.

USTP (Common) Ex. 19
Page 231 of 272

UST Exhibit 9
JW 30b6
Page 12 of 21

I.      On April 9, 2025, Chief District Court Judge Alia Moses entered a *Memorandum Opinion and Order* withdrawing the Rule 60(b) motions, including the motion filed in the Bankruptcy Case, to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court" or "District Court Proceeding", as applicable).

J.      In order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.      <u>Recitals</u>. The above recitals are incorporated herein by reference.

2.      <u>Effective Date</u>.

    (a)      The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived: (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court or District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined). For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review. If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Cases, the District Court Proceeding, or any other action or proceeding.

    (b)      With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings related to approval of the Settlement Motion (defined below). Consistent with the preceding sentences, the Trustee will promptly prepare a motion to approve compromise of controversy pursuant to

USTP (Common) Ex. 19
Page 232 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 13 of 21

Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "Settlement Motion"). Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion. The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Trustee and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Cases, and that this Agreement meets the standards required for approval under Rule 9019 of the Bankruptcy Rules.

3.    <u>Settlement Payment</u>. Within three (3) business days after the Effective Date, JW shall pay or cause to be paid to the Trust (receipt of which shall be promptly confirmed by the Trustee) the sum of $440,000.00 (the "<u>Settlement Payment</u>"). Payment shall be made payable to the Truste's account by wire transfer using wire transfer instructions separately provided to JW. The Settlement Payment shall be paid to the Trust and distributed pursuant to the terms of the confirmed plan in the Bankruptcy Cases.

4.    <u>Mutual Releases</u>.

(a)    *Release in Favor of JW*. Upon receipt of the entire Settlement Payment, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Trustee on behalf of the Trust hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Trust against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

USTP (Common) Ex. 19
Page 233 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 14 of 21

(b)    *Release in Favor of the Trustee and the Trust*. On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Trustee and Trust and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

5.    Bar. The Parties agree that this Agreement may be pleaded as a complete bar to any action or suit before any court or administrative body, with respect to any claim or cause of action under federal, state or other law relating to any possible claim by the Trust against JW or any other released parties, except that this Agreement may not be pleaded as a bar to any claims or causes of action that arise in connection with performance, non-performance and/or breach of this Agreement.

6.    **Express Waiver of Fraudulent Inducement Claims**.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS, PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS, REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS**

USTP (Common) Ex. 19
Page 234 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 15 of 21

AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY
COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY
AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT
AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE
PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN
BUSINESS MATTERS.

7.    No Admission / Liability Denied.    This settlement is made to avoid the
uncertainties, annoyance, and expense of further litigation. The payment of the consideration by
or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be
construed, as an admission of liability, which is expressly denied. This Agreement and/or its terms
shall not be admissible in any proceeding against any Party, except in any proceeding to approve,
construe, interpret or enforce the settlement or any of its terms.

8.    Representations and Warranties. The following representations and warranties in
this Agreement shall survive its execution and performance.

(a)    *Representations and Warranties by the Trustee.*

(i)    Subject to approval by the Bankruptcy Court or District Court, as
applicable, the Trustee has all requisite power and authority to
execute, deliver and perform this Agreement and the transactions
contemplated herein and the execution, delivery and performance
by it of this Agreement and the consummation of the transactions
contemplated herein have been duly authorized by all necessary
corporate and/or partnership action on the part of the Trust;

(ii)    Subject to approval by the Bankruptcy Court or District Court, as
applicable, the execution, delivery and performance by the Trust of
this Agreement and the consummation of the transactions
contemplated herein will not, with or without the giving of notice or
the lapse of time, or both, require any consent, approval,
authorization, exemption or waiver, violate any provision of any
law, rule, regulation or any order, judgment or decree to which the
Trust may be subject; or conflict with, or result in, a breach or
default under any term or condition of any agreement or instrument
to which the Trust is a party to which the Trust may be bound;

(iii)    The Trustee and the Trust are the only person or entity who, to the
Trustee's knowledge, has any interest in any claims, causes of
action, costs or demands herein released and none of such claims,
causes of action, costs or demands, nor any part thereof, have been
assigned, granted or transferred in any way to any person, persons,
entity or entities; *provided however*, that JW acknowledges that the
U.S. Trustee has also asserted claims against JW in the pending Rule
60 Motions, including the Rule 60 Motion filed in the Bankruptcy
Cases; and

USTP (Common) Ex. 19
Page 235 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 16 of 21

(iv)     the Trustee has freely and voluntarily entered into this Agreement and has been fully advised by his attorneys concerning the Trust's rights and have further been advised by his attorneys as to the terms and effects of this Agreement.

(b)    *Representations and Warranties by JW.*

(i)     JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii)    The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound;

(iii)   The Trustee and the Trust are the only person or entity who, to JW's knowledge, has any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; *provided however*, that the Trustee and Trust acknowledge that the U.S. Trustee has also asserted claims against JW in the pending Rule 60 Motions, including the Rule 60 Motion filed in the Bankruptcy Cases; and

(iv)    JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

9.      Notice in the District Court Proceeding, Miscellaneous Proceeding, or Bankruptcy Case. Within three (3) business days after the Effective Date, the Trustee may file a notice in the Bankruptcy Cases or in the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, previously pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "Miscellaneous Proceeding"), as may be applicable, attaching a copy of the Final Order and notifying the applicable judge of the

USTP (Common) Ex. 19
Page 236 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 17 of 21

settlement of the claims related to the Rule 60(b) motion and the Bankruptcy Cases. The Parties may file a notice in the Bankruptcy Cases and/or the Miscellaneous Proceeding, as applicable, in advance of the Approval Order becoming a Final Order informing the applicable pending judge of the settlement and this Agreement.

10. <u>Cooperation and Dismissal or Withdrawal with Prejudice</u>. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, the Trustee shall withdraw the joinder to the U.S. Trustee Filings with prejudice within three (3) business days after receipt of the Settlement Payment.

11. <u>Retention of Jurisdiction</u>. The Bankruptcy Court or District Court, as applicable, shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

12. <u>Return of Documents / Prohibition on Further Disclosure of Discovery Materials</u>. Within 30 days of the Effective Date, the Trustee and his counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Cases, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party.

13. <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

14. <u>Dispute Resolution</u>. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court or District Court, as applicable.

15. <u>Successors and Assigns</u>. This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

16. <u>Headings and Construction</u>. Headings in this Agreement are for convenience and are not to be used in construing this Agreement. This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

17. <u>Entire Agreement / No Oral Agreements</u>. The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters. The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement. No extrinsic evidence whatsoever may be introduced in any judicial proceeding

USTP (Common) Ex. 19
Page 237 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 18 of 21

involving the construction or interpretation of this Agreement. No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

18. Expenses, Fees, and Costs. The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

19. Severability. Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

20. Waiver. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

21. Counterparts. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

USTP (Common) Ex. 19
Page 238 of 272

297907746.1

UST Exhibit 9
JW 30b6
Page 19 of 21

Patrick Bartels, as Trustee for the Strike Liquidating Trust, and not in his individual capacity

DATED: 9/23/2025 _____

Jackson Walker LLP

DATED: 9/23/2025

Name: William R. Jenkins, Jr.
Title: Partner & General Counsel

UST Exhibit 9
JW 30b6
Page 20 of 21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **PROFESSIONAL FEE MATTERS** | § | Civil Action No. 4:23-cv-04787 |
| **CONCERNING THE JACKSON** | § | |
| **WALKER LAW FIRM** | § | |
| | § | |

**ORDER APPROVING**
<u>**COMPROMISE AND SETTLEMENT WITH JACKSON WALKER, LLP**</u>
**(relates to Docket No. \_\_\_\_)**

The Court has considered the Motion to Compromise Controversy under Bankruptcy Rule 9019 with Jackson Walker, LLP ("JW") filed by Patrick Bartels, as Liquidating Trustee of the Strike Liquidating Trust in the bankruptcy cases jointly administered under Bankruptcy Case No. 21-90054, *In re Strike, LLC* and certain of its affiliates (the "<u>Trustee</u>").  The Court finds that notice of the proposed compromise is sufficient.  The proposed compromise meets the requirements for a compromise as outlined in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

Accordingly, it is therefore **ORDERED THAT:**

1.      The Motion to Compromise Controversy under Bankruptcy Rule 9019 with Jackson Walker, LLP is **GRANTED**.

2.      The Settlement Agreement attached hereto as **Exhibit A** is hereby approved, and the Trustee is authorized to enter into and consummate the Settlement Agreement.

3.      All objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice

4.      Each party shall bear its respective fees and costs.

5.      All parties to this compromise and settlement shall execute and deliver all documents reasonably necessary to effectuate the intent of this compromise and settlement.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed:

USTP (Common) Ex. 19
Page 240 of 272

UST Exhibit 9
JW 30b6
Page 21 of 21

```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                      .
IN RE:                                .   Case No. 23-00645
                                      .
PROFESSIONAL FEE MATTERS              .   515 Rusk Avenue
CONCERNING THE JACKSON WALKER         .   Houston, TX 77002
LAW FIRM                              .
                                      .   Tuesday, December 9, 2025
. . . . . . . . . . . . . . . . .     .   8:40 a.m.


                     TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE EDUARDO V. RODRIGUEZ
                  CHIEF UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:


For the United States          Department of Justice - U.S. Trustee
Trustee:                       By:  VIANEY GARZA, ESQ.
                                    MILLI APONTE SALL, ESQ.
                                    KEVIN EPSTEIN, ESQ.
                               515 Rusk, Suite 3516
                               Houston, TX 77002
                               (713) 718-4661

                               Department of Justice - U.S. Trustee
                               By:  LAURA STEELE, ESQ.
                               517 East Wisconsin Avenue, Suite 430
                               Milwaukee, WI 53202
                               (414) 297-4499


Audio Operator:                Ana Castro, ECR

Transcription Company:         Access Transcripts, LLC
                               10110 Youngwood Lane
                               Fishers, IN 46048
                               (855) 873-2223
                               www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

USTP (Common) Ex. 19
Page 241 of 272

UST
Exhibit
12

4

APPEARANCES (Continued):

| | |
|---|---|
| Chapter 7 Trustee in Brilliant Energy: | RANDY W. WILLIAMS, ESQ.<br>7924 Broadway, Suite 1044<br>Pearland, TX 77581 |
| For Michael Goldberg, Litigation Trustee of the GWG Litigation Trust: | Reid Collins & Tsai LLP<br>By:  NATHANIEL JOHN PALMER, ESQ.<br>      BILL REID, ESQ.<br>1301 South Capital of Texas Highway<br>Suite C-300<br>Austin, TX 78746<br>(512) 647-6107 |
| For Patrick Bartels, as liquidating trustee of Strike, LLC and Auto Plus: | Law Firm<br>By:  THOMAS ANDREW WOOLLEY III, ESQ.<br>190 T.C. Jester, Suite 400<br>Houston, TX 77007<br>(713) 337-3900 |
| For Matthew Ray, liquidating trustee of Strike, LLC and Auto Plus: | White & Case LLP<br>By:  SEAN GORMAN, ESQ.<br>609 Main Street, Suite 2900<br>Houston, TX 77002<br>(713) 496-9700 |
| For EXCO Resources, Inc.: | Foley & Lardner LLP<br>By:  JOHN MELKO, ESQ.<br>1000 Louisiana Street, Suite 2000<br>Houston, TX 77002-2099<br>(7130 276-5727 |
| For Dan Williams, the plan administrator for Katerra, Inc.: | Fox Rothschild LLP<br>By:  TREY MONSOUR, ESQ.<br>Saint Ann Court<br>2501 N. Harwood Street, Suite 1800<br>Dallas, TX 75201<br>(214) 231-5796 |
| For David R. Jones: | Quinn Emanuel Urquhart & Sullivan LLP<br>By:  BEN FINESTONE, ESQ.<br>295 Fifth Avenue, 9th Floor<br>New York, NY 10016<br>(212) 849-7000 |
| Also Present: | WILLIAM JENKINS, ESQ.<br>W. ROSS FORBES, ESQ. |

USTP (Common) Ex. 19
Page 242 of 272

UST Exhibit 12
JW 30b6
Page 2 of 8



```
1              MR. BOLAND:  Your Honor, I might have a slightly

2    different take, just because we have not ever -- allocations

3    never come up in the conversations.  But from our perspective,

4    Your Honor, we've settled with the estates.  If we offer to pay

5    $50 back, that's the amount that would -- they would be owed,

6    and they would release the ability to recover $51 back.  The

7    U.S. Trustee, Your Honor, if they're seeking non-monetary

8    sanctions, we have an argument about whether that's

9    appropriately teed up or not.

10             That's -- they could pursue non-monetary relief, but

11   from a monetary standpoint, Your Honor, we believe we've

12   settled with the party in interest that has standing, that owns

13   the client, that owns the right to receive the monies.  And so

14   from our -- from Jackson Walker's perspective, that issue would

15   be settled on the monetary perspective.

16             THE COURT:  So then the U.S. Trustee's Real 60

17   disgorgement would go away in your -- at least from your

18   position, your client's position?

19             MR. BOLAND:  Your Honor, our position would be that

20   their disgorgement action, which we don't think they have

21   standing to even seek anyway, would be settled by these

22   settlement agreements.  That's our position, Judge.

23             THE COURT:  And is that clear in the settlement

24   agreement?

              MR. BOLAND:  It's clear --
```

USTP (Common) Ex. 19
Page 243 of 272

```
 1              THE COURT:  That's agreements, there's ten of them,

 2   right?

 3              MR. BOLAND:  Yeah, it's fair, Judge.  It's clear that

 4   the estates are providing a release, and they're releasing the

 5   ability to recover additional monies.  And so to the extent,

 6   you know, an extra dollar was awarded, but I have a release

 7   saying they're not going to take that dollar, that's the

 8   perspective we have, Judge.

 9              THE COURT:  Well, okay.  I've read a couple of these

10   settlement agreements.  I don't read that in the settlement

11   agreements.  But if that's what the parties are asserting, I

12   mean -- and again, we're not hearing the merits.

13              MR. BOLAND:  Sure.

14              THE COURT:  I'm just asking these questions because I

15   need to understand how this could or should be structured if it

16   does go forward.  And so the -- Jackson Walker's position is

17   that should I approve a settlement agreement, the monies

18   disgorged would end essentially the U.S. Trustee's Rule 60

19   disgorgement.

20              MR. BOLAND:  We believe --

21              THE COURT:  And how does that affect the vacatur of

22   the retention order?

23              MR. BOLAND:  Well, Your Honor, I think, you know,

24   if -- one, I do -- I think it resolves the monetary relief
```

USTP (Common) Ex. 19
Page 244 of 272

`e seeking, which, again, we don't think they have`

1    standing to seek.   And I know that's an issue we'll talk about

2    as far as teeing that up with Your Honor as well.

3              But it also goes to mitigation factors.   If Your

4    Honor ends up vacating and/or having a sanctions proceeding,

5    that's the purpose of sanctions, right, to deter future

6    inappropriate conduct by the least coercive means.   Those are

7    facts and evidence that Your Honor would consider in connection

8    with that sort of proceeding that the U.S. Trustee could

9    continue to pursue as far as a nominal.

10              THE COURT:   Okay.  But why should I approve a

11   settlement agreement if we don't allow the U.S. Trustee to

12   bring to trial the vacatur of the retention order to begin with

13   because the vacatur of the retention order would disgorge the

14   entirety of the fees.

15              MR. BOLAND:   I --

16              THE COURT:   And so why should I award a portion of

17   that up front and terminate that proceeding essentially?

18              MR. BOLAND:   I --

19              THE COURT:   One moment.  Does the ERO need a break?

20   Are you okay?   Okay.   Thank you.

21              Go ahead.

22              MR. BOLAND:   Your Honor, I actually disagree, Your

23   Honor, respectfully, with your premise that the vacatur of an

24   employee employment order is a de facto 100 percent disgorgement of

USTP (Common) Ex. 19
Page 245 of 272

We're happy to brief that, Your Honor, if that becomes

33

1  an issue.

2          THE COURT:  We're not going to get into the merits of

3  that.

4          MR. BOLAND:  I understand.

5          THE COURT:  I'm just -- we're --

6          MR. BOLAND:  Understood, Judge.

7          THE COURT:  I need to understand the structure here

8  and how we're going to proceed.

9          MR. BOLAND:  Understood.  I just wanted to state on

10  the -- I disagree with that.  But I understand Your Honor's

11  position.  You have to remind me of the question of the Court.

12          THE COURT:  Okay.  So if -- why should I allow a

13  partial disgorgement of the employment or the fee order?

14  Essentially, given your client's position, it terminates the

15  merits of the U.S. Trustee's Rule 60 vacatur of the retention

16  order to begin with.  And if vacatur of that is granted, then

17  the entirety of the fees, and at least in the U.S. Trustee's

18  position, should be disgorged, not a portion of it.

19          So if I grant a settlement essentially awarding a

20  partial disgorgement without vacatur of the retention order,

21  then essentially the trustee's case is over, at least that

22  portion of it.

23          MR. BOLAND:  I don't --

24          THE COURT:  Now, I mean, I think that's the U.S.

USTP (Common) Ex. 19
Page 246 of 272

e's position.  We can clarify --

UST Exhibit 12
JW 30b6
Page 6 of 8

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)

1          MR. BOLAND:  That portion of it, I think, Your Honor,

2     from a monetary standpoint, our argument would be it would be

3     over.  There would be other non-monetary components.  And Your

4     Honor, I direct -- don't know if you'll recall, but almost two

5     years ago, the very first hearing we had was I think in the

6     connection with the Brilliant Energy case.  And Ms. Eitel stood

7     before you and said, you know, we're not here to advocate on

8     behalf of private parties.  We're here to bring transparency to

9     the process, and we're here to bring parties to the table.

10          And that's the whole purpose of this indispensable

11     party standing motions that we did, was to bring people to the

12     table who have the standing, who have the stake in this case,

13     who have the monetary relief and the ability to seek monetary

14     relief.  That was the entire purpose of us doing that, Your

15     Honor.  So we did that process.  We went through the settlement

16     process.  We went through the mediation process.  And we

17     reached monetary settlements with these folks.  And so we've

18     complied by the book.

19          THE COURT:  Well, that's a portion of it.  I think

20     the basis of the U.S. Trustee's Rule 60 motion is to get down

21     to the point of whether or not Jackson Walker should have

22     amended his disclosure statement or should have been not

23     allowed to proceed in that proceeding in early in the case, or

24     maybe shouldn't have even been allowed to be retained to begin

USTP (Common) Ex. 19
Page 247 of 272

1   how am I going to deal with this particular one --

2              MR. BOLAND:  Understood.  We appreciate you.

3              THE COURT:  -- without prejudicing anybody's rights?

4   Okay.  And I believe that's it.  Is there anything else that

5   you think we need to deal with?

6              MS. STEELE:  No.  Thank you very much, Your Honor.

7              THE COURT:  Mr. Boland?

8              MR. BOLAND:  Nothing further, Judge.  We appreciate

9   Your Honor's time.

10             THE COURT:  Anybody else in the courtroom?  All

11  right.  Thank you.  And we're adjourned.

12        (Proceedings concluded at 1:03 p.m.)

13                      *  *  *  *  *

14

15               C E R T I F I C A T I O N

16

17        I, Heidi Jolliff, court-approved transcriber, hereby

18  certify that the foregoing is a correct transcript from the

19  official electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23

24  HEIDI JOLLIFF, AAERT NO. 2850    DATE: December 11, 2025

    TRANSCRIPTS, LLC

USTP (Common) Ex. 19
Page 248 of 272

UST Exhibit 12
JW 30b6
Page 8 of 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Civil Action No. 4:23-CV-4787-AM |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

**JACKSON WALKER, LLP'S STATEMENT IN RESPONSE**
**TO DECEMBER 9, 2025 STATUS CONFERENCE**

TO CHIEF UNITED STATES BANKRUPTCY JUDGE EDUARDO V. RODRIGUEZ:

While Jackson Walker LLP ("Jackson Walker") recognizes that the settlement motions are currently abated pursuant to the November 12, 2025 *Order* [Dkt. No. 109] entered by Chief District Judge Moses, Jackson Walker files this Statement at the Court's request and in response to the Court's inquiries at the December 9, 2025 status conference (the "Status Conference").

The first section below addresses all of the pending settlement motions other than GWG, and the second section below addresses the pending GWG settlement motion. In support of this Statement, Jackson Walker respectfully states as follows:

**All of the Settlement Motions (Other than GWG)**
**Should be Considered in Advance of Trial**

1.      At the Status Conference, the Court welcomed a further statement on the 10 pending settlement motions, which Jackson Walker provides below. *See* Hr'g Tr. 135:12-136:8.

2.      Jackson Walker's settlements to date are with the entities that have standing to seek disgorgement of the award of fees to Jackson Walker in their respective cases. In those settlements,

USTP (Common) Ex. 19
Page 249 of 272



UST
Exhibit
**13**

the parties agreed that the respective settlement amounts would be the most the estate representatives would receive from Jackson Walker.

3.     The bankruptcy plans[1] do not require the settlements to be approved by the Court as the U.S. Trustee has acknowledged,[2] but the settling parties insisted on it to promote transparency.[3]

4.     It is in the best interest of the bankruptcy estates and ultimate beneficiaries for this Court to recommend to Chief Judge Moses that this Court should hear the settlement motions as soon as possible and in advance of trial.

5.     This Court's consideration of the pending settlement motions in advance of trial on the merits would:

- not impact the U.S. Trustee's ability to present evidence or witnesses on any particular case at trial with respect to its pending Rule 60 motions and fee application objections;

- not impact the U.S. Trustee's ability to seek non-monetary relief, subject to Jackson Walker's rights and objections thereto;

- not impact the U.S. Trustee's ability to argue that a monetary sanction equal to the disgorgement of fees beyond the amounts settled is appropriate, subject to Jackson Walker's rights and objections thereto (including Jackson Walker's objections based on standing and settlement releases);

- not impact the Court's inherent ability to impose sanctions (if it determined any sanctions were indeed appropriate);[4]

---

[1] The *Brilliant Energy* case is a chapter 7 case without a confirmed plan.

[2] *See e.g.*, *The U.S. Trustee's Omnibus Objection to Approval of Private Party Settlements that Preempt Adjudication of the U.S. Trustee's Rule 60(b) Motions* [Dkt. No. 93].

[3] *See* Hr'g Tr. 58:1-10 ("The Court: Given the complexity and uniqueness of this case, I can understand why that has to be done. I agree. I think there has to be complete transparency. . . . But given where we are and the kind of case we have, . . . they have to be reviewed and approved.")

[4] Jackson Walker reserves all rights to argue that the settlement motions (if approved) would impact a settling estate's ability to receive amounts in excess of the settled amount in light of the release provisions set forth in each settlement

USTP (Common) Ex. 19
Page 250 of 272

UST Exhibit 13
JW 30b6
Page 2 of 6

- prevent the unnecessary incurrence of fees and expenses by various estate representatives who would otherwise be forced to attend a multi-week trial;

- allow some of the cases to close,[5] thereby eliminating U.S. Trustee fees and related administrative burdens and costs; and

- allow for the expeditious payment to various estate beneficiaries under the pending settlement motions.

For the foregoing reasons, Jackson Walker respectfully requests that the Court recommend that the settlement motions be heard prior to any trial on the merits.

### The GWG Settlement Motion Can and Should be Considered Concurrently at Trial

6.  At the Status Conference, the Court also requested that Jackson Walker and the U.S. Trustee file a statement addressing these issues:  if the Court determines to go forward and hear the above-referenced settlement motions, how should the settlement motion filed in *In re GWG Holdings, Inc.*, Case No. 22-90032 ("GWG") be treated?  Can this Court hold a hearing on that settlement motion in conjunction with the other settlement motions?  *See* Dec. 9 Hr'g Tr. at 136:12-137:15; 182-185, 191-192.

7.  Jackson Walker agrees with the Court that the pending GWG settlement motion is different from the other pending settlement motions because of its unique procedural posture (*i.e.*, a pending objection to a final fee application as opposed to a Rule 60 motion seeking to vacate orders).  Given this distinction, Jackson Walker requests that the Court consider the *Litigation Trustee's Motion for Entry of an Order Approving Settlement Agreement with Jackson Walker LLP* [Dkt. No. 100] (the "GWG Settlement Motion") concurrently with the consolidated trial on the U.S. Trustee's Rule 60 Motions in the affected cases, which includes (i) *Jackson Walker's Fourth and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-*

---

[5] *See* Hr'g Tr. 19:3-7 (*J.C. Penney* settlement is the last asset to administer before closing the case); 56:11-14 (*4E Brands* is ready to close); 56:15-23 (*Basic Energy* is very close to the end of the case); 41:18-23 (*Brilliant Energy* ... the only item pending before closing the case).

USTP (Common) Ex. 19
Page 251 of 272

UST Exhibit 13
JW 30b6
Page 3 of 6

*Counsel to the Debtors for the Period from April 20, 2022 through June 20, 2023* [Case No. 22-90032, Dkt. No. 2158] (the "GWG Fee Application") and (ii) *United States Trustee's Opposition to Jackson Walker's Final Fee Application as Co-Counsel to the Debtors and Motion for Sanctions and Related Relief* [Case No. 22-90032, Dkt. No. 2415] (the "GWG Fee Objection").

8.      The GWG Fee Objection requests two forms of relief: (1) denial of the GWG Fee Application and return of amounts previously paid; and (2) sanctions against Jackson Walker.

9.      Jackson Walker acknowledges that the U.S. Trustee has standing to object to the GWG Fee Application and that the GWG Fee Objection cannot be fully settled in light of the U.S. Trustee's pending objection which remains the only outstanding objection.

10.     By taking up the GWG Settlement Motion in conjunction with the trial, the Court can (and Jackson Walker argues that it should) consider the GWG Settlement Motion and related settlement agreement in determining the appropriateness of the U.S. Trustee's requested relief in the GWG case.  In doing so, Jackson Walker submits that the Court could set aside a specific time for the GWG Litigation Trustee to appear and be heard on (i) the GWG Settlement Motion and the reasonableness of the settlement agreement, rather than requiring the GWG Litigation Trustee's attendance at the full trial, and (ii) any remaining factual issues regarding section 330 and the *Johnson*[6] factors, which are unique to the GWG Fee Application.

11.     Jackson Walker submits that this procedure would alleviate both the U.S. Trustee's concerns about its pending GWG Fee Objection and this Court's concerns about the unique procedural posture of the GWG cases as compared to the other cases with pending settlement motions.

USTP (Common) Ex. 19
Page 252 of 272

...rgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

UST Exhibit 13
JW 30b6
Page 4 of 6

Dated: December 16, 2025

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
*Attorney-in-Charge*
Federal I.D. No. 37238
William Greendyke (SBT 08390450)
Federal I.D. No. 576573
Julie Harrison (SBT 24092434)
Federal I.D. No. 3017799
Maria Mokrzycka (SBT 24119994)
Federal I.D. No. 3610759
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Federal I.D. No. 563869
Emily Wolf (SBT 24106595)
Federal I.D. No. 3892373
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

- and -

**RUSTY HARDIN & ASSOCIATES, LLP**
Russell Hardin, Jr. (SBT 08972800)
*Attorney-in-Charge*
Federal I.D. No. 19424
Leah M. Graham (SBT 24073454)
Federal I.D. No. 2192848
Jennifer E. Brevorka (SBT 24082727)
Federal I.D. No. 1725400
Emily Smith (SBT 24083876)
Federal I.D. No. 1890677
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010

USTP (Common) Ex. 19
Page 253 of 272

UST Exhibit 13
JW 30b6
Page 5 of 6

Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I caused a copy of this Statement to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Jason L. Boland*
Jason L. Boland

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 15, 2025, counsel for Jackson Walker and the U.S. Trustee conferred via telephone with respect to this Court's request for a submission from the parties following the Status Conference. Counsel for Jackson Walker and the U.S. Trustee agreed that a joint submission would be impractical given their respective positions, and that they would each submit a separate statement in response to this Court's request.

*/s/ Jason L. Boland*
Jason L. Boland

USTP (Common) Ex. 19
Page 254 of 272

UST Exhibit 13
JW 30b6
Page 6 of 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Case No. 4:23-cv-04787-AM |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

**JACKSON WALKER LLP'S OMNIBUS REPLY TO THE
U.S. TRUSTEE'S OBJECTIONS TO MOTIONS FOR ENTRY OF ORDER APPROVING
COMPROMISE OF CONTROVERSY UNDER BANKRUPTCY RULE 9019
FILED BY THE SETTLING PARTIES**

Jackson Walker LLP ("Jackson Walker") files this omnibus Reply (the "Reply") to the

U.S. Trustee's (i) *Objection to Auto Plus Auto Sales, LLC's Motion for Entry of Order Approving*

*Compromise of Controversy under Bankruptcy Rule 9019* [Dkt. No. 170] (the "Auto Plus

Objection"), (ii) *Objection to the Strike Liquidating Trust's Motion for Entry of Order Approving*

*Compromise of Controversy under Bankruptcy Rule 9019* [Dkt. No. 171] (the "Strike Objection"),

and (iii) *Objection to Stage Stores, Inc.'s Motion for Entry of Order Approving Compromise of*

*Controversy under Bankruptcy Rule 9019* [Dkt. No. 172] (the "Stage Stores Objection," and

together with the Auto Plus Objection and Strike Objection, the "Objections"), and in support

thereof, respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The U.S. Trustee's "watchdog" role is not endless.  His authority and duties are

explicitly prescribed by statute (28 U.S.C. § 586) and neither that statute (nor any caselaw)

authorizes the U.S. Trustee to take *de facto* control over estate claims, remedies, and property

under the guise of an enforcement action—particularly in cases where a debtor has long ago exited

chapter 11 through a confirmed plan or otherwise (and, in some instances, where those cases have

USTP (Common) Ex. 19
Page 255 of 272

1


UST
Exhibit
**14**

been closed).  It is for this reason that Jackson Walker has challenged the U.S. Trustee's standing

to seek disgorgement relief on behalf of third parties,[1] which briefing has been complete and which

is now pending before this Court.

2.    Moreover, the U.S. Trustee's Objections are perplexing at best and wholly

inconsistent with the U.S. Trustee's role and prior statements to the Bankruptcy Court.  The U.S.

Trustee told the Bankruptcy Court over 2 years ago:

> As you know, the United States Trustee sits in a unique role in the bankruptcy
> system, and *we don't typically represent the interests of absent parties.  What
> we do is try to preserve -- get notice -- and preserve opportunities to be heard
> for those who may have an interest in a matter and give them the opportunity
> to come in and participate*.[2]

3.    It is because of the U.S. Trustee's "unique role" that the Bankruptcy Courts

previously entered various orders (which the U.S. Trustee did not appeal) in each of the underlying

bankruptcy cases where Rule 60 motions were pending that required parties with an interest in a

matter (and those who would be the beneficiaries of any disgorged funds in any particular case) to

come forward and to participate if they so chose.[3]  Some chose to come forward as evidenced by

the Settlement Motions[4] now pending before this Court; others did not.

---

[1] The U.S. Trustee previously represented to the bankruptcy courts: "The United States is not seeking any monetary relief for itself.  Any relief that would be awarded would go back to – in the Chapter 11 cases, which are all the ones set before you."  *In re Neiman Marcus Group, Ltd., et al.*, Case No. 20-32519, *In re Seadrill Partners, LLC*, Case No. 20-35740, *In re Strike, LLC*, Case No. 21-90054 and *In re 4E Brands Northamerica LLC*, Case No. 22-50009, Dec. 12, 2023 Hr'g Tr. at p. 6:5–8.

[2] *In re Neiman Marcus Group, Ltd., et. al.*, Case No. 20-32519, *In re Seadrill Partners, LLC*, Case No. 20-35740, *In re Strike, LLC*, Case No. 21-90054 and *In re 4E Brands Northamerica LLC*, Case No. 22-50009, Dec. 12, 2023 Hr'g Tr. at p. 49:7–13 (emphasis added).

[3] *See, e.g.*, *In re Auto Plus Auto Sales LLC*, Case No. 23-90055 [Dkt. No. 130]; *In re Strike LLC*, Case No. 21-90054 [Dkt. No. 1521]; *In re Stage Stores, Inc.*, Case No. 20-32564 [Dkt. No. 1250]; *see also In re 4E Brands Northamerica LLC, et al.*, Case No. 22-50009, Feb. 15, 2024 Hr'g Tr. at p. 13:22–24 (Judge Isgur: "I'm trying to get in a position where the party with the legal right to recover the money is here and proceeding.").

[4] "Settlement Motions" mean *Auto Plus Auto Sales, LLC's Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Rule 9019* [Dkt. No. 97], *Strike Liquidating Trust's Motion for Entry of Order Approving Compromise of Controversy under Bankruptcy Rule 9019* [Dkt. No. 98], and *Stage Stores, Inc.'s Motion [for Entry of Order] Approving Compromise of Controversy under Bankruptcy Rule 9019* [Dkt. No. 108], and the

USTP (Common) Ex. 19
Page 256 of 272

UST Exhibit 14
JW 30b6
Page 2 of 11

4.     Yet, now after over two years of litigation and despite the fact that the very parties the U.S. Trustee (and Bankruptcy Courts) sought to encourage to participate in these proceedings (and those who have standing and would be the beneficiaries of any disgorged funds) have actually participated, the U.S. Trustee opposes Settlements that were extensively negotiated in good faith, at arm's length, and after completion of wide-ranging discovery.  Indeed, the Settlements were done pursuant to and in accordance with this Court's existing Scheduling Order at the time (prior to the District Court's withdrawal of the reference) which *mandated* a settlement conference: "Counsel must meet face to face in a substantive, good faith effort to resolve the Rule 60 Motions amicably. Therefore, trial counsel (lead counsel) are required to attend this meeting in person or virtually."[5]

5.     The U.S. Trustee chose to not attend the settlement sessions between Jackson Walker and the various estate representatives, a particularly puzzling decision given that Jackson Walker was meeting with the very parties whose interests the U.S. Trustee purports to protect. Setting that aside, it was those initial settlement discussions which led to a mediation that ultimately resulted in certain settlements being reached, as is the case with *Strike*.  Yet despite choosing to not participate in the settlement discussions with the estate representatives and Jackson Walker (and declining to participate in the mediation with former Federal District Court Judges Feess and Furgeson), the U.S. Trustee objects—now apparently disappointed with the results of those settlement discussions and mediation.

---

settlements referred to in such motions are hereinafter referred to as the "Settlements."  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Motions, as applicable.

[5] *See, e.g.*, Misc. Proc. No. 23-00645, *Third Amended Comprehensive Scheduling, Pre-Trial & Trial Order* entered No. 516.

USTP (Common) Ex. 19
Page 257 of 272

3

UST Exhibit 14
JW 30b6
Page 3 of 11

6.      Perhaps even more confusing, the U.S. Trustee has now taken the position that no Court approval is needed with respect to any settlements reached between Jackson Walker and the Settling Parties.[6] This in spite of the U.S. Trustee's repeated proclamations about transparency and participation.[7] If no Court approval is needed, the U.S. Trustee has no basis to object. Regardless, Jackson Walker believes—and the Court has recognized[8]—that any settlements reached should be brought before this Court to afford full transparency to this process, and to provide notice to all affected parties.

7.      While there can be no doubt the U.S. Trustee *actually believes* (notwithstanding the Objections) that full disclosure and Court approval of the pending settlements is appropriate and warranted under the circumstances, the U.S. Trustee's real motivation is clear. The U.S. Trustee objects not because the settlement process is flawed, but because the Settlements may limit the relief the U.S. Trustee alone seeks to impose against Jackson Walker based on the alleged conduct of parties who are not before this Court. This concern reveals that the U.S. Trustee is not focused on "achieving substantial justice" as he has claimed, but simply on punishing Jackson Walker.

8.      The Settlement Motions show that the ***real*** parties in interest—those with actual, pecuniary interests in the outcome of these matters—have reached agreements after extensive litigation, discovery, and negotiations, and the Settlements provide immediate and certain value to the Settling Parties whose fiduciaries must weigh litigation risk, delay, and expense. The U.S.

---

[6] The Objections highlight the U.S. Trustee's own confusion, as he asserts both that no Court approval is required and also that Court approval is subject to a heightened standard than that required by Rule 9019.

[7] *See, e.g.*, *In re Neiman Marcus Group, Ltd., et al.*, Case No. 20-32519, *In re Seadrill Partners, LLC*, Case No. 20-35740, *In re Strike, LLC*, Case No. 21-90054 and *In re 4E Brands Northamerica LLC*, Case No. 22-50009, Dec. 12, 2023 Hr'g Tr. at p. 8:08–11 ("As the U.S. Trustee, we're always concerned about transparency and participation by those who have interest may be affected.").

[8] *See In re Professional Fee Matters Concerning Jackson Walker Law Firm*, Case No. 4:23-04787, Jan. 14, 2026 Hr'g

USTP (Common) Ex. 19
Page 258 of 272

4

UST Exhibit 14
JW 30b6
Page 4 of 11

Trustee has not identified a single defect under Rule 9019 or the *Cajun Electric* factors. Because the Settlements comply with Rule 9019, they should be approved.

### <u>REPLY</u>

9.     The U.S. Trustee's Objections rest on a fundamental misunderstanding of both the nature of the proposed Settlements and the governing legal standards. The Settlement Motions do not seek approval of professional compensation, do not validate Jackson Walker's fees, do not involve any "public matters," and do not insulate any conduct from judicial scrutiny.[9] Instead, they present arm's-length compromises of disputed ***estate*** claims, negotiated by the only parties authorized to resolve those claims, which the parties have submitted to the Court to ensure transparency in an unusually complex, post-confirmation posture.

10.    Further, the Settlements easily satisfy Rule 9019, as set forth in the various Settlement Motions. The Settlements are fair, equitable, and in the best interests of the ultimate beneficiaries in these cases. The U.S. Trustee's concern that the Settlements may affect the U.S. Trustee's preferred litigation strategy in separate contested matters is not a basis to deny approval of compromises reached by the actual claimholders and presented transparently for Court review.

**A.     The U.S. Trustee Fundamentally Mischaracterizes the Nature of the Proposed Settlements and Applies an Inapplicable Legal Standard.**

11.    The U.S. Trustee's Objections rest on a fundamental mischaracterization of the Settlement Motions and an attempt to impose a legal standard that finds no support in the Bankruptcy Code, the Bankruptcy Rules, or Fifth Circuit precedent. The U.S. Trustee collapses two very different concepts into one: (i) the Court's independent obligation to review professional compensation under sections 327 and 330 of the Bankruptcy Code, and (ii) the ability of post-

---

[9] As previously noted in filings before this Court, Jackson Walker reserves all rights to argue that the settlement ⟨...⟩ would impact a settling estate's ability to receive amounts in excess of the settled amount in ⟨...⟩ ovisions set forth in each settlement agreement.

USTP (Common) Ex. 19
Page 259 of 272

5

UST Exhibit 14
JW 30b6
Page 5 of 11

confirmation fiduciaries, acting under confirmed plans, to settle estate causes of action. The U.S. Trustee's Objections improperly treat any settlement touching on fees or disgorgement as an impermissible "private agreement" about compensation of professionals. That is not the law.

12. What is before the Court is straightforward. The Settling Parties[10] are empowered under the respective confirmed plans and/or trust documents to hold, prosecute, and compromise estate claims. After extensive litigation, discovery, and arm's-length negotiations, the Settling Parties exercised that authority. It is lost on the U.S. Trustee that the Settling Parties are those who are accountable to the ultimate beneficiaries who bear the costs of continued litigation and are the very stakeholders that the Court repeatedly emphasized should receive notice and an opportunity to participate.

13. Those stakeholders have now participated. They assessed the litigation risks, costs, and delay, and they exercised discretion to reasonably compromise. The U.S. Trustee cannot convert its limited oversight role into a substantive veto power over fiduciaries' settlement decisions whenever a settlement might have an impact on the U.S. Trustee's preferred litigation strategy. The boundaries of constitutional standing and Rule 9019 do not permit that result.

14. The Settlement Motions are not fee applications under sections 327 and 330 of the Bankruptcy Code. They do not ask the Court to allow or disallow compensation. They do not rely on private contracts to enforce fees. They do not purport to bind the U.S. Trustee or dispose of his Rule 60 Motions. They ask the Court to do exactly what Rule 9019 contemplates: evaluate

---

[10] "Settling Parties" means Steven Balasiano, Plan Administrator for the Wind-Down Debtors in the chapter 11 cases of Stage Stores, Inc. and Specialty Retailers, Inc., Case No. 20-32564; Patrick Bartels, as Plan Agent for the Wind-Down Debtors with respect to the bankruptcy cases jointly administered under Bankruptcy Case No. 23-90055 (formerly Bankruptcy Case No. 23-90054), styled *In re Auto Plus Auto Sales LLC* (formerly In re IEH Auto Parts Holding, LLC, *et al.*); and Patrick Bartels, as Trustee for the Strike Liquidating Trust with respect to the bankruptcy cases administered under Bankruptcy Case No. 21-90054, In re Strike, LLC and certain of its affiliates.

USTP (Common) Ex. 19
Page 260 of 272

6

UST Exhibit 14
JW 30b6
Page 6 of 11

whether a compromise of claims is fair, equitable, and within the range of reasonableness, considering the interests of the ultimate beneficiaries.

15.     Contrary to the U.S. Trustee's assertions, the Settlement Agreements have nothing to do with "public matters". Through the Settlement Agreements, the Settling Parties are settling claims and causes of action ***owned by the Settling Parties***—precisely the sort of private matters that the U.S. Trustee agrees may be settled. Thus, the U.S. Trustee's reliance on cases addressing court approval of professional compensation (which is not sought here) is misplaced. Those cases concern attempts by estate professionals to obtain or enforce payment outside the Bankruptcy Code's fee approval framework. Those cases stand for the uncontroversial proposition that courts, not parties, approve professional compensation under sections 327 and 330 of the Bankruptcy Code, and that professionals cannot privately enforce fee arrangements against an estate outside the Bankruptcy Code. Jackson Walker does not dispute this, nor is Jackson Walker seeking approval of its compensation (which has already been considered and approved by prior court orders). Rather, the Settlements settle and release certain causes of action held by the Settling Parties. Sections 327 and 330 of the Bankruptcy Code—and the Court's obligations with respect to these sections of the Code—simply have no bearing on the Settling Parties' releases of estate causes of action.

16.     The cases cited in support of the U.S. Trustee's argument do not bar a post-confirmation estate representative from compromising disputed estate claims, including alleged disgorgement claims, through an arm's-length settlement presented to the Court for approval. Instead, they relate only to instances in which court approval of fees was not previously obtained

USTP (Common) Ex. 19
Page 261 of 272

7

UST Exhibit 14
JW 30b6
Page 7 of 11

and for which professionals sought to set their own compensation outside the Bankruptcy Code.[11] None involve post-confirmation fiduciaries exercising their plan-granted authority to compromise claims against a professional through arm's-length settlements presented to the Court for approval. Nor is the U.S. Trustee's citation to this Court's recent opinion in *In re Josiahs Trucking, LLC*[12] relevant. As this Court is well aware, the movants in that case fully satisfied the *Cajun Electric* factors, leading to this Court's approval of the settlement.[13] The fact that the settlement contained a sanctions carve-out was not the basis for this Court's approval, nor did this Court hold that settlements must include such carve-outs to be approvable under Rule 9019. The U.S. Trustee's cases are simply inapplicable here.

## B. The Settlements Do Not "Settle" the U.S. Trustee's Rule 60(b) Motions or Impair the Court's Authority.

17. The Settlements do not purport to release the Court's authority to impose sanctions on Jackson Walker, nor do they seek to dismiss the U.S. Trustee's pending Rule 60(b) Motions. Rather, they resolve disputes between Jackson Walker and the specific post-confirmation representatives who are the proper parties to assert estate claims. The releases in the Settlements run from the Settling Parties who own the claims being settled, not from the Court or the U.S.

---

[11] *See In re 5900 Assocs., Inc.*, 468 F.3d 326, 329 (6th Cir. 2006) (holding that a debtor's former counsel could not enforce fees attributable to a prior, dismissed bankruptcy case because counsel never sought bankruptcy court approval of those fees under sections 327 and 330 of the Bankruptcy Code); *In re Thorogood*, 22 B.R. 725, 728 (Bankr. E.D.N.Y. 1982) (finding that a Chapter 7 trustee acted improperly by attempting to fix his own compensation and *pro se* attorney's fees as part of the settlement with creditors); *In re Inslaw, Inc.*, 106 B.R. 331, 332 (Bankr. D.D.C. 1989) (rejecting the debtor's settlement of its counsel's administrative expense claim for compensation prior to the court's issuance of an order allowing the compensation); *In re Vaughn*, 660 B.R. 827 (Bankr. S.D. Ohio 2024) (addressing the court's review of attorney fee applications in chapter 13 cases, not whether estate representatives may settle claims against professionals).

[12] Case No. 21-70009, 2025 WL 2214038 (Bankr. S.D. Tex. Aug. 4, 2025).

USTP (Common) Ex. 19
Page 262 of 272

UST Exhibit 14
JW 30b6
Page 8 of 11

Trustee.[14]   The Court retains whatever independent authority it possesses to sanction Jackson Walker (assuming that it finds any such sanctions are appropriate in the first place, which Jackson Walker disputes), as well as full authority over the Rule 60 Motions.[15]

18.   Further, the U.S. Trustee retains the ability to pursue any relief to which he has standing.[16]   While the U.S. Trustee plays an important oversight role, he does not own the claims being settled—and he has affirmatively stated that he is not pursuing "claims" of his own[17]—thus he cannot override the judgment of estate fiduciaries.   The Court should not entertain the U.S. Trustee's attempts to obstruct the Settlements so that he can proceed on an action to attempt to collect more money—not for himself but for the Settling Parties—when those Settling Parties have already determined what compensation is reasonable and beneficial for their constituents under the circumstances.

---

[14] *See, e.g., Auto Plus Settlement Agreement and Release* [Dkt. No. 97-1], ¶ 4 ("**the Plan Agent** on behalf of the Wind-Down Debtors hereby releases, acquits. and forever discharges JW . . . from any and all actions, suits . . .") (emphasis added).

[15] *See* supra n.9.

[16] The U.S. Trustee's Objections further highlight Jackson Walker's concerns about the U.S. Trustee's ability to proceed with litigation for which he has no standing to bring.  It defies logic and precedent that the U.S. Trustee could usurp estate causes of action for disgorgement—for which only the estate representatives have standing to pursue—and stand in the way of settlements with true parties in interest.  The U.S. Trustee's Objections to the Settlement Motions are harmful to the process and could result in depletion (through protracted litigation) of any benefit that the settlements will provide to beneficiaries under the relevant plans or trust agreements.  Those beneficiaries should not be punished because of the U.S. Trustee's refusal to recognize compromise.

[17] *See* May 22, 2025 Hr'g Tr. 21:06–17 (Moses, C.J. presiding) ("**The Court:** Why would the trustee be in opposition of any of these settlement agreements if that's what the parties in the bankruptcy matter are finding is in their best interest? **Ms. Steele:** Sure, Your Honor. And so, again, there are -- *they have claims. The U.S. Trustee does not have claims*. The U.S. Trustee has request for relief, again, to restore integrity in the system. . . .   **The Court:**  But the relief would go back to the bankruptcy estate.  **Ms. Steele:** That's true, You Honor, and relief is monetary . . . unfortunately.  That's - - that's the remedy, right?") (emphasis added); *see also In re Strike, LLC,* Case No. 21-90054 Dec. 12, 2023 Hr'g Tr. at p. 6:05–08 (Isgur, J. presiding) ("**Ms. Eitel:**  Thank you, your Honor.  *The United States is not seeking any monetary relief for itself.*  Any relief that would be awarded would go back to – in the Chapter 11 . . . [  ] he ones set before you.") (emphasis added).

USTP (Common) Ex. 19
Page 263 of 272

9

UST Exhibit 14
JW 30b6
Page 9 of 11

For the reasons set forth herein and in the Settlement Motions, Jackson Walker respectfully requests that the Court (i) overrule the U.S. Trustee's Objections, (ii) approve the Settlements; and (iii) grant such other and further relief as the Court deems just and proper.

[*Reminder of Page Intentionally Left Blank*]

USTP (Common) Ex. 19
Page 264 of 272

10

UST Exhibit 14
JW 30b6
Page 10 of 11

Dated: January 29, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
*Attorney-in-Charge*
Federal I.D. No. 37238
William Greendyke (SBT 08390450)
Federal I.D. No. 576573
Julie Harrison (SBT 24092434)
Federal I.D. No. 3017799
Maria Mokrzycka (SBT 24119994)
Federal I.D. No. 3610759
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone:  (713) 651-5151
jason.boland@nortonrosefulbright.com
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

Paul Trahan (SBT 24003075)
Federal I.D. No. 563869
Emily Wolf (SBT 24106595)
Federal I.D. No. 3892373
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
paul.trahan@nortonrosefulbright.com
emily.wolf@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**
Russell Hardin, Jr. (SBT 08972800)
*Attorney-in-Charge*
Federal I.D. No. 19424
Leah M. Graham (SBT 24073454)
Federal I.D. No. 2192848
Jennifer E. Brevorka (SBT 24082727)
Federal I.D. No. 1725400
Emily Smith (SBT 24083876)
Federal I.D. No. 1890677
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
lgraham@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Co-Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I caused a copy of this Reply to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Jason L. Boland*
Jason L. Boland

USTP (Common) Ex. 19
Page 265 of 272

UST Exhibit 14
JW 30b6
Page 11 of 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Civil Action No. 4:23-CV-4787-AM |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

## U.S. TRUSTEE'S NOTICE OF PROPOSED AGENDA

TO CHIEF UNITED STATES BANKRUPTCY JUDGE EDUARDO V. RODRIGUEZ:

The U.S. Trustee's meet and confers with the Settling Parties[1] and Jackson Walker LLP ("Jackson Walker") held January 7 and 9, 2026, revealed that the parties disagree about the scope of the Court's *Order for Non-Evidentiary Electronic Status Conference* [ECF No. 141] (the "Order"). Although the Settlement Motions "remain abated" by the District Court, Order at 1; *see also* ECF No. 140, "Chief Judge Moses referred two related issues to the instant [Bankruptcy] Court for an evidentiary hearing and a report and further recommendations to the United States District Court." [ECF No. 141]. The two issues are as follows:

---

[1] The Settling Parties include: (1) Old Copper Company Inc. F/K/A J. C. Penney Company Inc. and Copper Sub Corporation, Inc. F/K/A J. C. Penney Corporation, Inc., As Wind Down Debtors In J. C. Penney Direct Marketing Services LLC, by and through its Plan Administrators; (2) Steven Balasiano, solely in his capacity as Plan Administrator for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc.; (3) Seadrill Partners, LLC Reorganized Debtors and the Seadrill Limited Reorganized Debtors; (4) Randy W. Williams, Chapter 7 trustee for Brilliant Energy, LLC; (5) David Dunn, Liquidation Trustee for the Basic Energy Liquidation Trust; (6) David Dunn, Plan Agent and sole manager, sole director, sole officer and sole representative of 4E Brands Northamerica LLC; (7) Patrick Bartels, as Trustee for the Strike Liquidating Trust; (8) Patrick Bartels, as Plan Agent for the Wind-Down Debtor In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.); (9) Sungard AS New Holdings, LLC, the wind-down debtor, by and through Drivetrain LLC, the Plan Administrator; I. Goldberg, in his capacity as the Trustee of the GWG Litigation.

USTP (Common) Ex. 19
Page 266 of 272

UST
Exhibit
15

(i)     whether the Settlement Motions should be approved before adjudicating the merits of the U.S. Trustee's Vacatur Motions; or

(ii)    whether an alternative exists that would best serve the interests of the affected parties while preserving the merits of the Vacatur Motions.

[ECF No. 140].

The District Court further ordered that the "***limited issues***…on whether the Settlement Motions should be approved or an alternative to approval exists are **REFERRED** to Chief Judge Rodriguez for an evidentiary hearing." [ECF No. 140] (emphasis supplied).

As a result, the U.S. Trustee submits the following proposed agenda in accordance with paragraph 2 of the Order.

## <u>Agenda Item 1</u>

### *Judge Moses Issue (ii)*

The District Court requested an evidentiary hearing and report and recommendation from the Bankruptcy Court on "whether an alternative exists that would best serve the interests of the affected parties while preserving the merits of the Vacatur Motions." [ECF No. 140 at 2]. The U.S. Trustee requests that the Bankruptcy Court allow the U.S. Trustee, without waiving his objections to the Settlement Motions,[2] to submit evidence regarding proposed alternatives. The U.S. Trustee estimates that the time required for an evidentiary hearing on this matter is two hours.  Simply put, the Settlement Motions could easily be approved without a U.S. Trustee objection if the orders approving the settlement provided the following terms:

---

[2] Due to the District Court's abatement of the Settlement Motions the U.S. Trustee has not filed ⬚⬚⬚⬚⬚⬚ the pending Settlement Motions including *Auto Plus* (*fka IEH*) [ECF No. 97], ⬚⬚⬚⬚⬚⬚ 98], *GWG* [ECF No. 100], and *Stage Stores* [ECF No. 108].

USTP (Common) Ex. 19
Page 267 of 272

UST Exhibit 15
JW 30b6
Page 2 of 4

Notwithstanding any contrary provision in this Order or the Settlement Agreement:

(1) The Settlement Agreement's approval shall not in any way affect any Vacatur Motion[3] or the [Settling Party's] ability to accept or distribute funds the Court may order Jackson Walker LLP to pay as a result of a Vacatur Motion; and

(2) No final fee order shall be entered until the Vacatur Motion is resolved.[4]

## **Agenda Item 2**

### *Judge Moses Issue (i)*

The Bankruptcy Court should only take limited evidence and draft a report and recommendation on whether the Settlement Motions may be approved without prejudicing the relief sought by U.S. Trustee's Vacatur Motions. The U.S. Trustee estimates that an evidentiary hearing can be completed within a half day on all matters except for GWG Holdings, which the GWG Litigation Trustee, Jackson Walker, and the U.S. Trustee agree should be heard concurrently with the trial on the U.S. Trustee's Rule 60 Motions.

## **Additional Issues**

The U.S. Trustee reserves the right to discovery on any contested matter, including the Settlement Motions, prior to any evidentiary hearing that may be noticed. Fed. R. Bankr. P. 9014.

*[Signature page follows]*

---

[3] As defined in ECF No. 109.

USTP (Common) Ex. 19
Page 268 of 272

[4] Because some of the Settlement Agreements do not provide for a final fee order, this language may not apply to all Settlement Agreements.

UST Exhibit 15
JW 30b6
Page 3 of 4

Dated: January 12, 2026

Respectfully submitted,

**KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN AND WESTERN
DISTRICTS OF TEXAS**

By: */s/ Laura D. Steele*
MILLIE APONTE SALL
Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
VIANEY GARZA
Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
LAURA D. STEELE
Trial Attorney
Wis. Bar No. 1065702/Fed. ID No. 3878215
515 Rusk, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov
          vianey.garza@usdoj.gov
          laura.steele@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I caused a copy of this Agenda to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Laura D. Steele*
U.S. Trustee Trial Attorney

USTP (Common) Ex. 19
Page 269 of 272

UST Exhibit 15
JW 30b6
Page 4 of 4



Dallas
Austin
Houston

Attorneys & Counselors

# In The News

## Lawbook 50: Eight Firms - All Texas, All the Time, All Profitable

May 20, 2025

*The Texas Lawbook*

Joyce Soliman and Marianne Auld regularly field calls from law firm leaders across the country interested in entering the Texas market via a merger.

"I always listen to what they have to say, which is my duty as the firm's leader, but I let them know that we are satisfied being the firm that we are," Auld, who is managing partner of Kelly Hart in Fort Worth, told The Texas Lawbook.

Soliman, who is co-managing partner of Houston's Porter Hedges, receives the same calls — probably from the same out-of-state law firms.

"They ask about our interest in joining a larger operation, and I listen carefully, but we have no interest in a firm merger," she said.

Kelly Hart and Porter Hedges are two of eight law firms tracked by the Texas Lawbook 50 that are 98 percent or higher Texas operations with little to no presence outside the state.

Combined, the eight firms employ more than 1,200 lawyers and all but six office in the Lone Star State. All eight law firms hit record highs last year in revenues and profits, and they are growing revenue and headcount at the same pace as the mega corporate firms that surround them.

This gang of eight generated $1.046 billion in revenue in 2024 — up nine percent from the prior year, according to Lawbook 50 research.

"The firms that focus exclusively on Texas, like Jackson Walker and Porter Hedges, have found their sweet spot in the corporate law market and are doing well," said Kent Zimmermann, a law firm consultant at Zeughauser Group.

Lawbook 50 data comes from multiple sources, including firms directly reporting their revenues, interviews with current and former partners, American Lawyer reports and other third-party sources that collect and analyze firm revenues.

Zimmermann and other legal industry analysts say that these eight Texas-only firms have made critical strategic decisions that have been successful.

"Most of them have specific specialized practice groups that may not pay top of the market but still pay well and the [firms ] ____ Zimmermann, pointing to real estate projects, state regulatory matters or midsized business bankruptcies and representing creditors or third parties. "They also focus more on middle-market clients who are growing and have substantial legal needs but cannot afford the top billing rates of lawyers at the

USTP (Common) Ex. 19
Page 270 of 272

UST
Exhibit
**16**

**MUNSCH HARDT**

Dallas
Austin
Houston

Attorneys & Counselors

large elite law firms."

The eight Texas-only firms include five firms — Jackson Walker, Porter Hedges, Munsch Hardt, Gray Reed and Kelly Hart — that are among the top 50 law firms ranked by 2024 revenue in Texas and three law firms — AZA (Ahmad, Zavitsanos & Mensing), KRCL (Kane Russell Coleman Logan) and Bell Nunnally — that sit on the edge of entering the Lawbook 50.

"We had another record-breaking year in 2024 — beyond what we reasonably expected," Porter Hedges' Soliman told The Lawbook. "Our lawyers are firing on all cylinders. There's still a lot of growth in the Texas middle market. Those companies have sophisticated issues that they need our help addressing."

AZA founding partner John Zavitsanos said the Houston trial boutique had a blowout year, increasing revenues by 31 percent.

"There has been no slowdown," he said. "Anytime there is turbulence in the market or the economy, we see an increase in business litigation."

The Texas-only eight are led by Jackson Walker, a Dallas-based full-service corporate law firm that ranks No. 3 overall in the 2024 Texas Lawbook 50 rankings by Texas revenue and No. 1 in Texas headcount with the full-time equivalent of 484 attorneys.

Jackson Walker managing partner Wade Cooper said he also regularly gets calls from out-of-state firms seeking a merger, but he lets them know that the firm has no interest.

"We like doing it the hard way — adding one lawyer at a time," said Cooper, who noted the firm has added 97 lawyers over the past three years, including 25 in 2024. "Hours are up. Rates are up. Work is up."

"The need for electricity for AI and chip manufacturing is creating a lot of opportunities for infrastructure projects and the need for regulatory advisors," he said. "Wind, solar, carbon capture — you can't help but see Texas becoming even more important to the nation's economy. Our lawyers have more business regarding electricity than we can shake a stick at."

"And it is only going to grow, as long as the state legislature doesn't screw things up," Cooper said.

Here is the 2024 Lawbook 50 data for each of the eight Texas-only firms:

Jackson Walker reported $453.6 million in revenue in 2024 — up nine percent from $417.6 million in 2023. In 2019, Jackson Walker's revenue was $289.5 million.

Porter Hedges ranks 27th in the 2024 Lawbook 50 rankings by revenue. The Houston firm, which has an FTE lawyer count of 111, achieved $116.5 million in revenue last year — up 10 percent from 2023. Porter Hedges' revenue in 2019 stood at $82.6 million.

Munsch Hardt, a Dallas-based full-service law firm with an FTE headcount of 155, ranks 28th in the Lawbook 50 ranking by revenue with $112.9 million in 2024 — a five percent increase from the year before. The firm reported revenue of $75.4 million in 2019.

USTP (Common) Ex. 19
Page 271 of 272

Gr[...] d in Houston, ranks 34th in the Lawbook 50 ranking with 2024 revenue of $96.9 million — an impressive jump of 14 percent from 2023. In 2019, Gray Reed had revenue of $70 million.

© 2026 Munsch Hardt Kopf & Harr, P.C. All Rights Reserved

MUNSCH HARDT

Dallas
Austin
Houston

Attorneys & Counselors

**Kelly Hart** reported $94 million in revenue in 2024 — a five percent increase from the year before, ranking it 37th on the Lawbook 50. The firm reported $82 million in revenue in 2019.

**Ahmad, Zavitsanos & Mensing**, a Houston litigation trial firm, had a record year in 2024 with $72 million in revenue — up from $55 million in 2023 and up from $44.6 million in 2019.

**Kane Russell Coleman Logan**, a Dallas litigation boutique, increased its 2024 revenues by three percent — from $52.6 million in 2023 to $54.2 million last year. In 2019, the firm reported $44.4 million in revenue.

**Bell Nunnally**, a Dallas full-service firm, reported $46.4 million in revenue last year — an increase of 12 percent from 2023 and up from $36 million in 2019.

To read the full article, click here.

© 2026 Munsch Hardt Kopf & Harr, P.C. All Rights Reserved