IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>**SUNGARD AS NEW HOLDINGS, LLC,** *et al.*[1]<br><br>DEBTORS | **Chapter 11**<br><br>**Case No. 22-90018**<br><br>**Jointly Administered** |

**UNITED STATES TRUSTEE'S AMENDED AND SUPPLEMENTAL
MOTION FOR (1) RELIEF FROM JUDGMENT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 60(b)(6) AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9024 APPROVING THE RETENTION AND
COMPENSATION APPLICATIONS OF JACKSON WALKER LLP,
(2) SANCTIONS, AND (3) RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LP (6195); and Sungard Availability Services, Ltd. (4711). The location of the Debtors' service address for purposes of these chapter 11 cases is: 565 E Swedesford Road, Suite 320, Wayne, PA 19087.

USTP (Sungard) Ex. 7
Page 1 of 85

### TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................4

II.     LEGAL FRAMEWORK OF TITLE 11 ...................................................5

III.    STATEMENT OF FACTS .......................................................................6

      A.      Relevant Actors..............................................................................6

      B.      Jackson Walker's and Ms. Freeman's Practice Before Judge Jones .....................6

      C.      Allegations of a Romantic Relationship Between Judge Jones and Ms. Freeman Are Raised in a 2021 Proceeding ............................................................8

      D.      Jackson Walker Takes No Remedial Steps to Disclose the Truth.......................11

      E.      In 2022, Jackson Walker Obtains Definitive Knowledge of an Ongoing Romantic Live-in Relationship between Judge Jones and Ms. Freeman But Does Not Disclose That in Pending and Closed Cases or Subsequently Filed Cases .............................................................................12

      F.      Judge Jones Publicly Confirms the Relationship with Ms. Freeman...................13

      G.      The Fifth Circuit Files an Ethics Complaint Against Judge Jones Finding "Probable Cause to Believe That Misconduct by Judge Jones Has Occurred" ...............................................................................14

      H.      Judge Jones Resigns and the Bankruptcy Court Reassigns His Cases ................16

      I.      Cases Affected by Judge Jones's Failure to Recuse and Jackson Walker's and Ms. Freeman's Breach of Their Duties ........................................16

IV.     LAW AND ARGUMENT ......................................................................17

      A.      Because 28 U.S.C. § 455 and the Bankruptcy Rules Disqualified Judge Jones from Presiding Over Cases Where Jackson Walker Was Counsel, and, at a Minimum, Disqualified Him from Approving Jackson Walker's Retention and Fee Applications, All Orders Approving Them Should Be Vacated...........................................................................17

            1.      28 U.S.C. § 455(b) Disqualified Judge Jones from Presiding Over This Case........................................................................19

            2.      28 U.S.C. § 455(a) Disqualified Judge Jones from Presiding Over This Case........................................................................21

            3.      Rule 5002 Prohibited Judge Jones from Approving Jackson Walker's Employment.................................................................23

            4.      Rule 5004(b) Prohibited Judge Jones from Approving Jackson Walker's Compensation...............................................................25

      B.      Jackson Walker Violated Its Disclosure Obligations Arising from Its Duties Under Sections 327 and 330 and the Disciplinary Rules and Its Fiduciary Duties as DIP Counsel. ........................................................26

USTP (Sungard) Ex. 7
Page 2 of 85

C.   Jackson Walker Attorneys Violated the Local Rules Incorporating the Texas Disciplinary Rules of Professional Conduct by Failing to Disclose Ms. Freeman's Relationship with Judge Jones.............................................28

1.   Jackson Walker Attorneys Violated Disciplinary Rule 3.03 Requiring Candor. ...................................................................29

2.   Jackson Walker Attorneys Violated Disciplinary Rule 4.01 Requiring Truthfulness in Statements to Others. ....................34

3.   Jackson Walker Attorneys Violated Disciplinary Rule 8.04(a)(6) By Assisting Judge Jones in His Misconduct.................................34

4.   Jackson Walker Attorneys Violated Disciplinary Rule 5.01 by Not Taking Measures to Remedy Its Lack of Candor and Truthfulness Once Discovered and by Permitting Further Concealment of Facts Relevant to Jackson Walker's Employment. ............................35

D.   Jackson Walker Had and Breached Fiduciary Duties to the Estate to Disclose All Information Relevant to Its Ability to Be Retained and Paid..........36

E.   Jackson Walker Could Not Be Retained or Paid as an Estate Professional Because the Firm was Not "Disinterested." ........................................40

1.   Jackson Walker Was Not Disinterested Because Ms. Freeman Was Not Disinterested.....................................................................41

2.   An Ethical Wall Could Not Render Jackson Walker Disinterested. .........43

F.   This Court Should Vacate the Orders Approving Jackson Walker's Retention and Awarding Jackson Walker Interim and Final Compensation and Set Them Aside Under Rule 60(b)(6).............................................44

G.   The Court Should Sanction Jackson Walker by Ordering the Return of All Fees and Expenses Previously Paid to the Firm. .................................47

1.   This Court Should Deny Jackson Walker's Fees and Expenses Under Section 328(c) and Order Return of Denied Fees and Expenses. ...............................................................................47

2.   Jackson Walker's Violation of Its Disclosure Obligations as Section 327 Professionals Also Warrants an Order Requiring the Return of Fees and Expenses. ............................................................48

3.   Jackson Walker's Violations of the Disciplinary Rules Imposed by this Court's Local Rule Warrant an Order Requiring the Return of Fees and Expenses. ............................................................51

V.   CONCLUSION ...........................................................................54

USTP (Sungard) Ex. 7
Page 3 of 85

Kevin Epstein, United States Trustee for Region 7 ("U. S. Trustee"), moves for an order (1) granting relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure vacating orders approving Jackson Walker LLP's ("Jackson Walker") applications for retention and for compensation and expenses, (2) sanctioning Jackson Walker by ordering the return of all fees and expenses previously paid to the firm, and (3) any further relief the Court deems appropriate.

## I.     PRELIMINARY STATEMENT

1.     The undisclosed intimate relationship between former Judge David R. Jones and Elizabeth Freeman—a partner (now former) at Jackson Walker ("Judge Jones" and "Ms. Freeman," respectively) significantly compromised the integrity of and public faith in the bankruptcy system.  The undisclosed relationship undermined the confidence the parties and the public could place in the impartiality of the bankruptcy system in the resolution of every case that Jackson Walker had before Judge Jones, including in this one.  Relief against Jackson Walker is necessary to restore faith in the bankruptcy system due to its failure to comply with the law protecting against conflicts of interest.

2.     The Bankruptcy Code requires that all debtor's counsel satisfy rigorous standards for employment and compensation, including that counsel is both conflict-free and disinterested and remains so throughout the case.  11 U.S.C. §§ 327, 328(c), 330.  Bankruptcy Rules 5002 and 5004 and 28 U.S.C. § 455 impose parallel requirements on judges to ensure their orders approving employment and compensation, among others, are likewise free of conflict or partiality.

3.     One way these many ethical requirements for both lawyers and judges are enforced is through the lawyers' public disclosure of connections with interested persons or parties and other potential conflicts to allow parties and the Court to determine whether counsel can comply with its ethical duties and whether a judge's recusal or counsel's disqualification might be required. Full disclosure of all relevant facts is accordingly required under the Bankruptcy Code, the

USTP (Sungard) Ex. 7
Page 4 of 85

4

Bankruptcy Rules, the Local Rules for the Southern District of Texas, the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"), and common law fiduciary duties. Jackson Walker violated these obligations by not disclosing at any time Ms. Freeman's relationship with Judge Jones and by continuing to seek appointment, to perform services, and to be paid in cases before him.

4.     Jackson Walker's violations implicate both its retention and compensation in this case. Jackson Walker was employed as Debtors' counsel with Court approval and later awarded compensation and expenses for the services rendered. Because Judge Jones lacked authority to approve those applications due to the undisclosed relationship that rendered both firm and judge conflicted, those orders approving them should be vacated under Rule 60(b)(6). Additionally, the Court should sanction Jackson Walker for its misconduct by ordering the return of fees and expenses paid in this matter, as well as ordering any other appropriate relief.

## II.     LEGAL FRAMEWORK OF TITLE 11

5.     Upon the filing of a chapter 11 petition, the debtor becomes a debtor-in-possession ("DIP") with fiduciary duties to its creditors. *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) (citing 11 U.S.C. §§ 1101, 1106–1108); *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 355 (1985). All the DIP's interests in property or other rights become part of the bankruptcy estate, 11 U.S.C. § 541, and creditors typically are paid from those estate assets under a confirmed plan of reorganization.

6.     Lawyers representing DIPs must have their employment and compensation approved by the bankruptcy court and must satisfy a host of obligations, including requirements to disclose all "connections" and to satisfy ethics standards, among others, prohibiting conflicts of interest and requiring disinterestedness. 11 U.S.C. §§ 101(14), 327; Fed. R. Bankr. P. 2014. Once employed, a DIP's lawyers' reasonable and necessary compensation may be paid from the estate

after counsel files a detailed application disclosing the work done and by whom along with their hours and fees billed; the court approves applications on an interim basis during the case, 11 U.S.C. § 331, and on a final basis at the case's conclusion, 11 U.S.C. § 330. Because compensation for DIP lawyers is afforded priority of payment as an administrative expense from the estate, every dollar of lawyer compensation is paid before any recovery to creditors and may reduce the creditors' recoveries in the case. *See* 11 U.S.C. § 503(b)(2).

## III.    STATEMENT OF FACTS

### A.    Relevant Actors

7.    Elizabeth Freeman is a licensed Texas attorney residing in the State of Texas. Ms. Freeman was previously a partner at Jackson Walker and currently practices with the firm she founded, The Law Office of Liz Freeman, PLLC.

8.    Jackson Walker is a law firm with multiple offices in the State of Texas.

9.    In 2011, the U.S. Court of Appeals for the Fifth Circuit ("Fifth Circuit") appointed Judge Jones as a bankruptcy judge for the Southern District of Texas. *See* 28 U.S.C. § 152(a)(1), (2).

### B.    Jackson Walker's and Ms. Freeman's Practice Before Judge Jones

10.    Ms. Freeman is a former law clerk to Judge Jones and was a partner at Jackson Walker from May 14, 2018, until December 2022. *See, e.g., In re J.C. Penney Direct Marketing Services, LLC*, No. 20-20184 (Bankr. S.D. Tex. Nov. 13, 2023), ECF No. 1244, ¶¶ 7, 18 (Preliminary Response of Jackson Walker LLP to Recent Filings by the U.S. Trustee) ("Prelim.

USTP (Sungard) Ex. 7
Page 6 of 85

6

Resp."); Ethics Compl. pp. 1–2. [2]   Ms. Freeman was promoted to equity partner from income

partner effective January 1, 2021. Prelim. Resp. ¶ 7.

11.      According to the firm, Ms. Freeman had "quick and substantial success," and

"Jackson Walker's debtor practice grew very substantially" after her hiring, with "Elizabeth's

leadership and contribution . . . recognized as integral" to the firm's success.  Prelim. Resp., Ex.

1, p. 2–3.

12.      Ms. Freeman left Jackson Walker by December 2022 and opened her own practice,

The Law Office of Liz Freeman, PLLC.  *Id.* at ¶ 18; Ethics Compl. pp. 1–2.

13.      Jackson Walker regularly appeared in cases before Judge Jones since Ms. Freeman

joined the firm in 2018, including cases on which Ms. Freeman worked and billed fees.  Prelim.

Resp. Ex. 1, p. 3; Ethics Compl. p. 2.

14.      While Ms. Freeman was a partner at Jackson Walker, the firm also represented

parties in cases mediated by Judge Jones, and Ms. Freeman worked and billed on many of those

cases, as well.

15.      Jackson Walker also retained and billed for Ms. Freeman as a contract attorney after

she resigned from Jackson Walker.  *E.g.*, *In re GWG Holdings, Inc.,* No. 22-90032, ECF No. 2246

(Oct. 25, 2023) (U.S. Trustee's Emergency Motion to Continue Hearing on Jackson Walker's Final

Fee Application).  In *GWG*, Jackson Walker moved to have Judge Jones appointed as mediator the

month that Ms. Freeman resigned Jackson Walker, *id.* at ECF No. 1128 (Debtors' Motion Nov.

30, 2022), but Ms. Freeman then appeared at the mediation as a Jackson Walker contract attorney.

---

[2] *Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002*, Complaint No. 05-24-9002 (5th Cir. Oct. 13, 2023) ("Ethics Complaint") attached as **Exhibit 1**.  Under Canon 3 of the Code of Judicial Conduct and its Commentary, cohabiting intimate relationships are treated as spousal relationships.  *Infra* ¶ 53.

USTP (Sungard) Ex. 7
Page 7 of 85

7

As a result of the mediation, Ms. Freeman was appointed as the trustee for the post-confirmation Wind Down Trust.

16.     In other cases, Jackson Walker informed Debtors that it "strongly recommends" that Debtors retain Ms. Freeman as conflicts counsel.  *See, e.g., IEH Auto Parts Holding, LLC,* No. 23-90054, Application to Retain Jackson Walker, ECF No. 181, ¶ 6 and Ex. A, p. 14 (Bankr. S.D. Tex. Mar. 2, 2023) (J. Jones mediated); *In re Sorrento Therapeutics, Inc.,* 23-90085, Application to Employ Jackson Walker, ECF No. 231, p. 4 (Bankr. S.D. Tex. Mar. 15, 2023) (J. Jones neither mediated nor presided).  Ms. Freeman was retained in *IEH* but not *Sorrento*, although she did work on *Sorrento* as an unretained professional as reflected in Jackson Walker billing records.[3]

### C.     Allegations of a Romantic Relationship Between Judge Jones and Ms. Freeman Are Raised in a 2021 Proceeding

17.     An intimate relationship between Judge Jones and Ms. Freeman was first alleged in March 2021 in an adversary proceeding in the case of *In re McDermott Int'l, Inc.*, No. 20-30336 (Bankr. S.D. Tex.), in which Jackson Walker was Debtors' counsel.  In the adversary proceeding, a *pro se* plaintiff, Michael Van Deelen, moved to recuse Judge Jones, almost a year before, on July 23, 2020.  *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, Adv. No. 20-3309, (Bankr. S.D. Tex.), ECF No. 4 (July 23, 2020) ("*Van Deelen*" or "adversary proceeding").[4]

18.     Both Jackson Walker and Kirkland & Ellis represented the individual director and officer defendants in the adversary proceeding.

---

[3] Even if a professional will not seek compensation from the estate but is working for the estate, the professional must still be retained under section 327 with its attendant ethical and disclosure safeguards.

[4] The U.S. Trustee was not a party to the adversary proceeding.

USTP (Sungard) Ex. 7
Page 8 of 85

19.     That recusal motion, as originally filed, did not raise the relationship between Judge Jones and Ms. Freeman as a basis for recusal but was instead based on allegations of "corruption." *See Van Deelen*, ECF No. 4.

20.     In March 2021, Mr. Van Deelen filed an amended recusal motion and attached an anonymous letter that he said he had received just days before accusing Judge Jones of "corruption." *Van Deelen v. Dickson* (*In re McDermott Int'l Inc.*), No. 21-3369 (Bankr. S.D. Tex.), ECF No. 33 at 37–38 (Jan. 9, 2023) (Order on Appeal Affirming Dismissal of the Adversary Proceeding and Denial of Motion to Recuse).[5]  The letter alleged that Judge Jones "has had a romantic relationship" with Ms. Freeman. *Infra* ¶¶ 23 & 36.

21.     The same day that Mr. Van Deelen filed this Addendum, Jackson Walker moved to file unnamed documents under seal, stating that it had received increasingly "antagonistic communications" from the *pro se* plaintiff that Jackson Walker alleged contained "defamatory statements." *Van Deelen*, ECF No. 36 (Mar. 8, 2021).

22.     The clerk of court then sealed the documents that Jackson Walker filed, referred them to chambers for consideration, and maintained them under seal while the motion to seal was pending. *Van Deelen*, ECF No. 37 (Mar. 8, 2021).

23.     Jackson Walker's Preliminary Response clarified that the "antagonistic communications" it received from Mr. Van Deelen that it filed under seal related to the allegations of, and an anonymous letter that it received on Saturday, March 6, 2021, about, a relationship between its partner, Ms. Freeman, and Judge Jones.  Prelim. Resp. ¶ 10.  Jackson Walker's Preliminary Response also admitted that it learned that same weekend in March 2021 from Ms.

---

[5] The matter is now pending before the U.S. Court of Appeals for the Fifth Circuit. *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, No. 23-20436 (appeal docketed Sep. 11, 2023).

USTP (Sungard) Ex. 7
Page 9 of 85

9

Freeman that the allegations in the anonymous letter were true; she confessed that she had previously been, but was no longer, in an intimate relationship with Judge Jones.[6] *Id*. at ¶ 13.

24.    The next day, March 9, 2021, Judge Jones contacted Judge Isgur and asked Judge Isgur to reassign the recusal motion from Judge Jones to another judge; Judge Isgur entered an order that he would hear the motion to recuse. *Van Deelen*, ECF No. 40 (Mar. 9, 2021).

25.    Judge Isgur also ordered that "[t]he [anonymous letter] is sealed, pending the Court's determination of whether there is credible, admissible evidence in support of the allegations . . . ." *Id*. That document remains under seal.

26.    Audio recording of the March 10 hearing reveals that the Court found that the *pro se* plaintiff was unable to authenticate the anonymous letter or to establish that it was not hearsay and did not admit the letter into evidence. *Van Deelen*, ECF No. 47, 5:10–9:55 (Mar. 10, 2021).

27.    Jackson Walker did not make an appearance on the record at the virtual March 10 hearing, and, although by its own admission it knew by then that Mr. Van Deelen's allegation that Judge Jones and Ms. Freeman had had a romantic relationship was true, Prelim. Resp. ¶ 13, the firm took no action to inform the presiding judge at the recusal hearing of the truth—beyond delivering a copy of the "Van Deelen communication" to Judge Jones's chambers the day before—or to correct the record at any time. *Id*. at ¶ 10.  Although Jackson Walker also stated that it "disclosed these matters to our Kirkland co-counsel, who disclosed them to the client," *id*. Ex. 1, p. 3, it is unclear if it did so before the hearing.  Ultimately, a Kirkland & Ellis attorney moved to

---

[6] In her day-long interview with the U.S. Trustee, Ms. Freeman stated that her cohabitation with Judge Jones was continuous except during the COVID-19 school closures when she lived with her children at another location. But she admitted that she never moved out of the home she shared and owned with Judge Jones.

USTP (Sungard) Ex. 7
Page 10 of 85

exclude Mr. Van Deelen's evidence of the clandestine relationship, which, by then, at least Jackson Walker's management and insolvency practice group leaders knew was true.

28.     Judge Isgur also refused Mr. Van Deelen's request for a continuance so that he could take depositions regarding the contents of the letter.  *Van Deelen*, ECF No. 47, 5:10–9:55 (Mar. 10, 2021).  Thus, Judge Isgur found there was no admissible evidence to substantiate the allegations in the anonymous letter, *see id.*, and denied the motion to recuse on March 10.  *Van Deelen*, ECF No. 42 (Mar. 10, 2021).

29.     Jackson Walker's motion to seal its communications from Mr. Van Deelen remained pending for six months after the recusal hearing, but it did not withdraw the motion, thus concealing from public view the communications that would have revealed the truth and sheltering from scrutiny the adequacy of its disclosures and the propriety of its employment in that and myriad other cases pending before Judge Jones.[7]

30.     Six months later, Judge Jones granted Jackson Walker's motion to seal: "Except upon further order of the Court after notice to the Defendants, the Van Deelen Communications shall remain under seal, and shall not be made available to anyone without order of the Court including in response to any Freedom of Information Act requests."  *Van Deelen*, ECF No. 78, ¶ 2. (Sep. 8, 2021).  Those documents remain under seal.

**D.     Jackson Walker Takes No Remedial Steps to Disclose the Truth**

31.     Notwithstanding Jackson Walker's admitted knowledge of the secret relationship between its partner, Ms. Freeman, and Judge Jones no later than March 2021, *see* Prelim. Resp. ¶ 13, Jackson Walker never publicly disclosed that relationship in any pending, closed, or

---

[7] Jackson Walker also never corrected the record in any other case, even after Jackson Walker's management admitted it knew of the intimate relationship as early as March 2021.

USTP (Sungard) Ex. 7
Page 11 of 85

subsequently filed case during the following 20 months while Ms. Freeman was a partner—or thereafter when she was Jackson Walker's contract attorney or recommended conflicts/co-counsel.

32.    According to Jackson Walker, in March 2021, Ms. Freeman only admitted to a past relationship.  Prelim. Resp. ¶ 13.  But "[n]o further details were sought at that time."  *Id*., Ex. 1, p. 3.

33.    Jackson Walker has not indicated whether it hired an independent counsel or investigator to investigate the alleged relationship, nor has it disclosed the findings of any such investigation if it did.  The firm did, however, consult with outside ethics counsel and sought an ethics opinion on its proposed remedial measures to "minimize[e] the risk that the firm's participation in *future contested matters* before the judge, through our partner or others, might result in disqualification of the judge or of us."  Prelim. Resp., Ex. 1, p.2 (emphasis added).

**E.    In 2022, Jackson Walker Obtains Definitive Knowledge of an Ongoing Romantic Live-in Relationship between Judge Jones and Ms. Freeman But Does Not Disclose That in Pending and Closed Cases or Subsequently Filed Cases**

34.    In March 2022, Jackson Walker contends it first learned that Ms. Freeman was in an ongoing, not just past, intimate relationship with Judge Jones.  Prelim. Resp. ¶ 16.  But it did not make a remedial disclosure in any case, either pending or closed.  Not only did Jackson Walker not make remedial disclosures, but it also thereafter filed at least nine employment applications during 2022 while Ms. Freeman was a Jackson Walker partner without disclosing Ms. Freeman's connection with Judge Jones, including in three cases assigned to Judge Jones and in three cases mediated by Judge Jones.

USTP (Sungard) Ex. 7
Page 12 of 85

35.     This is so despite Ms. Freeman's lawyer's urging Jackson Walker in spring 2022 to disclose the relationship in all past cases and in cases going forward.  Indeed, he went so far as to prepare a draft disclosure and provided it to Jackson Walker.[8]

**F.     Judge Jones Publicly Confirms the Relationship with Ms. Freeman**

36.     On October 4, 2023, Mr. Van Deelen sued Judge Jones in the United States District Court for the Southern District of Texas for his conduct in the *McDermott* case.  *Van Deelen v. Jones*, No. 23-03729, ECF No. 1 ("Complaint") (S.D. Tex. Oct. 4, 2023) ("*Van Deelen v. Jones*").  Attached to that Complaint as Exhibit A1 was a copy of the anonymous letter that Mr. Van Deelen says he received on March 6, 2021, notifying him of the relationship between Judge Jones and Ms. Freeman.  *Id.* at ¶ 8 and Exhibit A1.[9]  On January 11, 2024, Mr. Van Deelen filed an amended complaint naming Jackson Walker, Ms. Freeman, Kirkland & Ellis, LLP, and Kirkland & Ellis International, LLP, as additional defendants, alleging "bankruptcy fraud, honest services fraud, mail and wire fraud, and obstruction of justice—actionable under the Racketeer Influenced and Corrupt Organizations Act ("RICO")."  *Van Deelen v. Jones*, No. 23-03729, ECF No. 10 (S.D. Tex. Jan. 11, 2024) ("Amended Complaint").  According to the Amended Complaint: "Judge Jones and Freeman plainly deceived the public and interested parties in bankruptcies by failing to disclose their relationship.  But they did not deceive Jackson Walker or Kirkland & Ellis.  Both firms knew of the relationship and used it to profit."  *Id.* at ¶ 4.

---

[8] Ms. Freeman's lawyer, Mr. Kirkendall, provided this information during his interview with the U.S. Trustee.  Mr. Kirkendall, however, said that he does not believe Jackson Walker was legally obligated to disclose the information but that doing so would then force Judge Jones to disclose the relationship, as Mr. Kirkendall said he thought Judge Jones was obligated to do.  The U.S. Trustee contests that Jackson Walker was not obligated to disclose.  *See infra* IV.B.

[9] The Complaint has been unavailable on the docket and remains so as of February 29, 2024.  On October 23, 2023, the court entered an order sealing the document for "purposes of judicial security."  *Van Deelen v. Jones*, ECF No. 4 (Oct. 23, 2023).  Because of that sealing order, the U.S. Trustee does not attach the complaint to this Motion.

USTP (Sungard) Ex. 7
Page 13 of 85

37.    Reporters for the digital media company, Business Insider, obtained a copy of the Complaint against Judge Jones from Mr. Van Deelen.  Dakin Campbell & Nicole Einbinder, *Lawsuit Alleges Undisclosed Relationship Involving Federal Judge that Could Cloud Corizon Bankruptcy Deal*, Business Insider, Oct. 6, 2023, attached as Exhibit 3.  Business Insider, for the first time, made public the allegation in the sealed document in the *McDermott* adversary proceeding that Judge Jones and Ms. Freeman had a romantic relationship.  And it included the additional detail that they had been living together for years.  *Id.*

38.    According to Business Insider, Judge Jones denied the relationship, *id*., but the following day, Judge Jones confirmed the relationship to the Wall Street Journal, acknowledging he is and has been in a relationship, and has shared a home for years, with Ms. Freeman.  Alexander Gladstone & Andrew Scurria, *Bankruptcy Judge Jones Named in Lawsuit Over Romantic Relationship with Local Lawyer*, Wall Street Journal Pro, Oct. 7, 2023, attached as Exhibit 4. Judge Jones denied that he had any duty to recuse or to disclose because he was not married to Ms. Freeman and was entitled to his privacy.  *Id.*  He also claimed that "there was no economic benefit to him from her legal work."  *Id.*  But that was not true.  Ms. Freeman stated in her interview that, in December 2021 and again in December 2022, she paid half of the property taxes on the home they owned together.

**G.    The Fifth Circuit Files an Ethics Complaint Against Judge Jones Finding "Probable Cause to Believe That Misconduct by Judge Jones Has Occurred"**

39.    On October 13, Judge Jones announced from the bench that he was under investigation by the Fifth Circuit, had been asked to step down from the complex case panel pending the investigation, and would do so effective immediately. [10]  Dietrich Knauth, *Top US*

---

[10] In 2016, while Judge Jones was Chief Judge, he signed orders creating a complex case panel with Judges Jones and Isgur its original members and assigning to the panel larger chapter 11

USTP (Sungard) Ex. 7
Page 14 of 85

*Bankruptcy Judge, Under Ethics Review, Steps Back from Major Cases,* Reuters, Oct. 13, 2023, attached as Exhibit 5.

40.     The Bankruptcy Court then entered General Order 2023-10, which removed Judge Jones from the complex case panel and reassigned his existing complex cases to Judges Lopez and Isgur.  *See* General Order 2023-10, Order Designating Complex Case Panel (Oct. 13, 2023).

41.     Later on October 13, the Chief Judge of the Fifth Circuit filed the Ethics Complaint against Judge Jones, finding "probable cause to believe that misconduct by Judge Jones has occurred."  Ethics Compl. p. 1.  According to the Ethics Complaint, "Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017."  *Id.*; *see also* **Ex. 2**.  Judge Jones approved substantial legal fees and expenses payable to Jackson Walker that in some cases included fees attributable to Ms. Freeman.  *Id.* at 2.  The Ethics Complaint states that there is a "reasonable probability" that Ms. Freeman substantially benefitted or had an interest in the substantial fees Judge Jones approved. *Id.*

42.     The Ethics Complaint also stated that "[o]n information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms. Freeman or that they were cohabiting."  *Id.* at 2.  The Fifth Circuit Ethics Complaint further stated that "on information and belief, Judge Jones did not apprise that district court judge [who heard the appeal from the denial of the recusal motion and dismissal of the adversary proceeding] of the relationship with Ms. Freeman, and that judge was also unaware of the facts regarding the relationship."  *Id.* at 2.

---

business cases designated as complex.  *See* General Order 2016-1 (March 3, 2016) (first in a series of three orders to establish complex case panel and reallocate cases); General Order 2018-1, Order Regarding Complex Case Assignment (Jan. 29, 2018).

USTP (Sungard) Ex. 7
Page 15 of 85

**H.     Judge Jones Resigns and the Bankruptcy Court Reassigns His Cases**

43.     After the Fifth Circuit publicly filed the Ethics Complaint, Judge Jones submitted his resignation on October 15, 2023, that was effective on November 15, 2023.

44.     On October 16, the Bankruptcy Court issued an order reassigning all of Judge Jones's remaining cases (those without a complex case designation) and revising divisional assignments among the remaining judges.  General Order 2023-11 (Oct. 16, 2023).

**I.     Cases Affected by Judge Jones's Failure to Recuse and Jackson Walker's and Ms. Freeman's Breach of Their Duties**

45.     Judge Jones presided over at least 26 cases, and perhaps more, where he awarded Jackson Walker approximately $13 million in compensation and expenses under 11 U.S.C. § 330 and § 331 while Ms. Freeman was both a Jackson Walker partner and living with him in an intimate relationship.  This includes approximately $1 million in fees billed by Ms. Freeman herself in 17 of those cases.  Exhibit 6A–B is a list that the U.S. Trustee has compiled of affected cases where Judge Jones presided, including approval of Jackson Walker's employment and compensation.[11] The U.S. Trustee reserves his right to amend this list as he continues his investigation.

---

[11] Sometimes court orders and at other times Jackson Walker applications in the affected cases were inconsistent in applying section 330's requirements for approving fees and expenses on a final basis.  Section 330 requires that counsel file a *final* application for compensation and reimbursement of expenses at the conclusion of a case that covers all fees and expenses for the duration of case, from the petition date to the plan's effective date.  But counsel also "may apply to the court not more than once every 120 days . . . for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title," 11 U.S.C. § 331, which is commonly called an *interim* application.  In some cases, the court awarded Jackson Walker fees and expenses at the conclusion of a case on an allegedly "final" basis, but the actual order approved fees and expenses for the final interim period and did not necessarily order the award of fees and expenses for the entire case on a final basis as required by section 330.  *See, e.g., In re Strike, LLC*, No. 21-90054, ECF No. 1248 (Aug. 18, 2022, Bankr. S.D. Tex.) ("Final Order Allowing Compensation and Reimbursement of Expenses").  In an abundance of caution, the U.S. Trustee seeks to vacate and set aside all orders awarding fees and expenses to Jackson Walker, both interim and final, in this case to avoid any doubt.

USTP (Sungard) Ex. 7
Page 16 of 85

46.     In addition to the Jackson Walker cases over which Judge Jones presided, he mediated eight cases where Jackson Walker was Debtors' counsel while Ms. Freeman was either a Jackson Walker partner, Jackson Walker's contract attorney, or Jackson Walker's co-counsel retained at Jackson Walker's recommendation. The impact on those cases remains under review.[12] Exhibit 6C–D.

47.     This case is an affected case included in Exhibit 6.

## IV.    LAW AND ARGUMENT

**A.  Because 28 U.S.C. § 455 and the Bankruptcy Rules Disqualified Judge Jones from Presiding Over Cases Where Jackson Walker Was Counsel, and, at a Minimum, Disqualified Him from Approving Jackson Walker's Retention and Fee Applications, All Orders Approving Them Should Be Vacated.**

48.     Judge Jones's appointment of Jackson Walker as Debtors' counsel and approval of its compensation in cases over which he was presiding violated the U.S. Code and the Bankruptcy Rules, as well as numerous canons of judicial ethics. As a result, those retention and compensation orders should be vacated. *See infra* IV.D.

---

[12] There is also at least one case that does not appear to implicate Jackson Walker or any compensation paid under section 330 but that has been tainted by the undisclosed relationship between Judge Jones and Ms. Freeman, *In re Tehum Health Servs., Inc., f/k/a/ Corizon Health, Inc.*, No. 23-90086 (Bankr. S.D. Tex.). In that case, Judge Jones mediated the initial settlement of the estate's fraudulent conveyance claims against several litigation targets, including Ms. Freeman's client, who received the debtor's most valuable assets pre-petition while the debtor was saddled with most of the liabilities in a divisional merger. *See* Exhibit 3. The U.S. Trustee objected to the Disclosure Statement based, in part, on the tainted settlement—valued at approximately $37 million—underlying the proposed plan. The parties at first represented that they were satisfied with the results of the mediation and believed the Court could still confirm a plan incorporating that settlement. But they ultimately agreed to a "do over" of the tainted mediation with a new mediator that also included a then recently appointed Tort Claimants' Committee ("TCC"), and at a mediation in December, some of the parties, but not the TCC, reached a new settlement valued at $54 million, an increase of $17 million over the settlement from the tainted mediation. The dispute over the settlement and related matters remains pending.

USTP (Sungard) Ex. 7
Page 17 of 85

49.     Title 28, § 455, of the U.S. Code and Bankruptcy Rules 5002 and 5004 disqualified Judge Jones from presiding over cases where Jackson Walker was counsel and, at a minimum, disqualified him from approving Jackson Walker's retention and fee applications.

50.     "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arise[] . . . ." Fed. R. Bankr. P. 5004(a).

51.     Section 455(b) mandates that a judge also "*shall* . . . disqualify himself" if the judge's "spouse . . . is acting as a lawyer in the proceeding" or has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(ii), (iii) (emphasis added).  In addition, section 455(a) mandates disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

52.     Where a judge should have recused but did not, any orders entered after the circumstance requiring recusal arose may be vacated unless it can be demonstrated that the failure to recuse was "harmless error." *Roberts v. Wal-Mart Louisiana, LLC*, 54 F.4th 852, 854 (5th Cir. 2022) (explaining that the failure to recuse "does not automatically render her judgment void" and that the court should evaluate the failure to recuse "through the lens of the *Liljeberg* factors" to determine whether such failure was harmless error).[13]  In *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988), the Supreme Court explained that "in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process."  As

---

[13] The U.S. Trustee seeks to vacate only the orders approving Jackson Walker's employment and compensation.

USTP (Sungard) Ex. 7
Page 18 of 85

discussed below, in this case, each of the *Liljeberg* factors demonstrate that Judge Jones's failure to recuse as required by 28 U.S.C. § 455 was not harmless error.  *See also infra* IV.D.

**1.    28 U.S.C. § 455(b) Disqualified Judge Jones from Presiding Over This Case.**

53.    Section 455(b) mirrors the Code of Conduct for United States Judges, Canon 3C, which likewise requires a judge to recuse when the judge's "spouse . . . is acting as a lawyer in the proceeding" or has "an interest that could be substantially affected by the outcome of the proceeding."  Code of Conduct for United States Judges, Canon 3C(1)(d)(ii), (iii).

54.    Live-in intimate partners are treated as spouses for purposes of this provision.  *See* Code of Conduct for United States Judges, Canon 3C Commentary (effective Mar. 12, 2019) ("Recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship").

55.    Indeed, it is generally accepted that cohabiting with someone raises the same concerns about conflicts of interest as being married to them.  *See, e.g., Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel,* ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020) ("Lawyers who cohabit in an intimate relationship should be treated similarly to married couples for conflicts purposes.  The same is true for couples who are engaged to be married or in exclusive intimate relationships."); ABA Model Code of Judicial Conduct, Model Rule 2.11 (requiring disqualification if a judge's "domestic partner" is "acting as lawyer in the proceeding" or "has more than a de minimis interest that could be substantially affected by the proceeding"); ABA Model Code of Judicial Conduct, Terminology (2011) (defining "domestic partner" as "a person with whom another person maintains a household and an intimate relationship, other than a person to whom he or she is legally married").

USTP (Sungard) Ex. 7
Page 19 of 85

56.     Thus, Judge Jones's disqualification was *required* because he "cohabit[ed] in an intimate relationship" with Ms. Freeman, who acted as a lawyer in the proceeding—even though she did not sign pleadings or formally appear in court—and had "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5); Code of Conduct for United States Judges, Canon 3C Commentary (effective Mar. 12, 2019); *see also Conflicts Arising Out of a Lawyer's Personal Relationship with Opposing Counsel*, ABA Comm. On Ethics & Pro. Resp., Formal Op. 494 (July 9, 2020).

57.     Advisory Opinion 58 to the Code of Conduct for United States Judges states that if the judge's spouse "is an equity partner in a law firm that represents a party [in a case before the judge] the judge must recuse." United States Comm. on Codes of Conduct. Op. 58 (June 2009) ("*Advisory Opinion 58*"), available at https://www.uscourts.gov/file/25673/download.    That is because "an equity partner in a law firm generally has 'an interest that could be substantially affected by the outcome of the proceeding' in all cases where the law firm represents a party before the court." *Id.* (quoting Canon 3C(1)(d)).[14]

58.     The Fifth Circuit applies this rule. *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) ("We hold that when a partner in a law firm is related to a judge within the third degree, that partner will always be 'known by the judge to have an interest that could be substantially affected by the outcome' of a proceeding involving the partner's law firm.") (quoting 28 U.S.C. § 455(b)(5)(iii)).

59.     The Fifth Circuit has explained that section 455(b)(5)(iii) is not limited to financial interests that could be affected, for example, if a favorable result leads to a higher fee that impacts

---

[14]Although Jackson Walker stated in the Preliminary Response that it took steps to reduce Ms. Freeman's compensation as an equity partner sometime after March 2021, Prelim. Resp. ¶ 13, the U.S. Trustee's investigation has been unable to confirm when that occurred.

USTP (Sungard) Ex. 7
Page 20 of 85

a partner's compensation. *Id*. "Apart from the potential financial interests at stake, a win or loss in any lawsuit could affect a partner's interest in his firm's reputation, its relationship with its clients, and its ability to attract new clients." *Id*.

60.     Thus, the Fifth Circuit agreed with Advisory Opinion 58 that "the partner status of the judge's relative by itself is sufficient ground for disqualification." *Id*. at 1114. *Accord In re BellSouth Corp.*, 334 F.3d 941, 944 (11th Cir. 2003) (noting it was undisputed that the judge was required to recuse from cases where the firm in which his nephew was a partner acted as counsel because recusal is required where "a relative within the proscribed proximity stands to benefit financially as a partner in a participating firm—even if the relative is not himself involved").

61.     The Fifth Circuit acknowledged that a rule of "automatic disqualification of a judge based on his relation to a law firm partner" may be "harsh and inconvenient," but the court deemed it necessary to "promote public confidence in the integrity and impartiality of the judiciary in general and of the participating judge in particular." *Potashnick*, 609 F.2d at 1114.

62.     Although Advisory Opinion 58 states that firm-wide recusal is not mandated when the spouse is a non-equity partner—defined as "one who receives a fixed salary, is not entitled to share in the firm's profits, and has no interest in the firm's client list or goodwill"—that is only if the spouse "has not participated in the preparation or presentation of the case before the judge, and the relative's compensation is in no manner dependent upon the result of the case." *Advisory Opinion 58*. And even where recusal is not mandated because of a spousal relationship, it may be required if additional circumstances would raise a question about the judge's impartiality. *Id*.

**2.     28 U.S.C. § 455(a) Disqualified Judge Jones from Presiding Over This Case.**

63.     Even if disqualification were not required under section 455(b), it was required under section 455(a) because the intimate, cohabiting relationship between Judge Jones and Ms.

USTP (Sungard) Ex. 7
Page 21 of 85

21

Freeman meant that Judge Jones's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

64.    "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865.  Section 455's "overriding concern with appearances . . . stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence."  *Potashnick*, 609 F.2d at 1111. For the same reasons, the "conduct of bankruptcy proceedings not only should be right but must seem right."  *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966).  In determining whether there is an appearance of partiality, a court "ought to consider how his participation in a given case looks to the average person on the street," and "disqualification should follow if the reasonable [person], were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Id.*

65.    Thus, a non-spousal close relationship, such as a close friendship or dating relationship, may also require disqualification as "[t]here may be situations in which the judge's friendship with a lawyer or party is so tight that the judge's impartiality might reasonably be questioned."  *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 416–17, 418 n.9 (5th Cir. 2023) (quotation marks omitted) (reversing refusal to vacate referral to magistrate judge and remanding for determination of whether there was knowing consent to proceed before magistrate judge where there was an undisclosed "longstanding friendship" between the magistrate judge and counsel for one of the parties); *see also Judges' Social or Close Personal Relationships with Lawyers or Parties as Grounds for Disqualification or Disclosure*, ABA Comm. On Ethics & Pro. Resp., Formal Op. 488 (Sept. 5, 2019) ("A judge must disqualify

USTP (Sungard) Ex. 7
Page 22 of 85

22

himself or herself when the judge has a romantic relationship with a lawyer or party in the proceeding, or desires or is pursuing such a relationship.").

66.     That is certainly the case where Ms. Freeman, a Jackson Walker partner, continued to live with Judge Jones in a house that they jointly owned and that she moved into when they were romantically involved.

67.     In similar circumstances, a court ruled that the bankruptcy judge who presided over an adversary proceeding brought by a chapter 7 case trustee abused his discretion by failing to recuse himself when his fiancé was employed by trustee's counsel's firm. *Clark v. Kapila*, 612 B.R. 808, 820 (S.D. Fla. 2019) (vacating the final judgment in an adversary proceeding where bankruptcy judge failed to recuse when his fiancé was employed by a party's counsel).

### 3.     Rule 5002 Prohibited Judge Jones from Approving Jackson Walker's Employment.

68.     In addition to section 455's mandate that Judge Jones recuse himself from the entire case, Bankruptcy Rule 5002 specifically disqualified him from approving the employment of his live-in partner's law firm.  *See* Fed. R. Bankr. P. 5002.  Bankruptcy Rule 5002 bars a bankruptcy judge from approving an attorney's employment under section 327 "if the individual is a relative of the bankruptcy judge approving the employment" or "if that person is or has been so connected with such judge or the United States [T]rustee as to render the appointment or employment improper." Fed. R. Bankr. P. 5002(a)–(b).  Either basis should have precluded Judge Jones from approving Jackson Walker's employment here.

69.     The Bankruptcy Code defines a relative as an "individual related by *affinity* or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree."  11 U.S.C. § 101(45). (emphasis added).  "A spouse of a debtor would be a relative because the definition includes relationships by affinity."

USTP (Sungard) Ex. 7
Page 23 of 85

*Dobin v. Hill* (*In re Hill*), 342 B.R. 183, 199 (Bankr. D.N.J. 2006). Although Judge Jones and Ms. Freeman were not married, they were in a romantic co-habiting relationship and owned a home together and should, therefore, be treated as having a relationship that falls under the definition of a "relative." *In re Montanino*, 15 B.R. 307, 310 (Bankr. D.N.J. 1981) ("[T]he Court is satisfied that the relationship that existed between [the debtor's fiancé] and the debtor falls within the meaning of an affinity which is a close agreement between the parties and falls within the definition of a relative as provided in § 101(34) of the Code").

70.    Moreover, the relationship between Judge Jones and Ms. Freeman was likely much closer than most relationships that individuals would have with relatives in the third degree—which include "great grandparents, great uncles and aunts, first cousins once removed, second cousins, grand nephews and nieces, great grandchildren." Fed. R. Bankr. P. 5002 (Advisory Committee Notes – 1983). Accordingly, Ms. Freeman should have been treated as a "relative" under the Bankruptcy Rules.

71.    Because Judge Jones was prohibited from approving Ms. Freeman's employment as an attorney under section 327, Rule 5002(a) likewise barred Judge Jones from approving Jackson Walker's employment as an estate professional: "Whenever under this subdivision an individual may not be approved for appointment or employment, the individual's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof also may not be approved for appointment or employment." Fed. R. Bankr. P. 5002(a).

72.    Even if Ms. Freeman were not deemed a "relative" under the Code, Ms. Freeman was so connected to Judge Jones given their relationship—and, therefore, so was Jackson Walker—"as to render it improper" for Judge Jones to have approved Jackson Walker's

USTP (Sungard) Ex. 7
Page 24 of 85

employment while Ms. Freeman was a Jackson Walker partner.  *See* Fed R. Bankr. P. 5002(b).

When assessing whether these personal kinds of connections should have disqualified a judge,

"[a]ll relevant circumstances are to be taken into account by the court."  Fed. R. Bankr. P. 5002

(Advisory Committee Notes – 1985).  "The most important of those circumstances include: the

nature and duration of the connection with the bankruptcy judge; whether the connection still

exists, and, if not, when it was terminated; and the type of appointment or employment.  These and

other considerations must be carefully evaluated by the bankruptcy judge."  *Id*.  Judge Jones never

publicly evaluated these considerations.  And the failures of Judge Jones, Jackson Walker, and Ms.

Freeman to disclose the relationship deprived parties of the opportunity to seek Judge Jones's

recusal and publicly test his authority to approve Jackson Walker's employment.[15]

73.    Given Judge Jones's lack of authority to have entered the orders approving Jackson

Walker's employment because he was disqualified from doing so, those orders should be vacated.

*See infra* IV.D.

### 4.    Rule 5004(b) Prohibited Judge Jones from Approving Jackson Walker's Compensation.

74.    Similar to Rule 5002(b), Rule 5004(b) bars a bankruptcy judge from awarding

"compensation to a person who is a relative of the bankruptcy judge or with whom the judge is so

connected as to render it improper for the judge to authorize such compensation."  Fed. R. Bankr.

P. 5004(b).  Even if the judge were not disqualified from approving employment, "[a] situation

may also arise in which the disqualifying circumstance only comes to light after services have been

performed. Rule 5004(b) provides that if compensation from the estate is sought for these services,

---

[15] As reported by the Wall Street Journal, Judge Jones stated that he was not required to recuse in
Jackson Walker cases while Ms. Freeman was a firm partner because, among other reasons, they
were not married. Ex. 4.  Had Judge Jones disclosed and made his analysis public, parties would
have had the opportunity to demonstrate that his recusal analysis was not supported by the law.

USTP (Sungard) Ex. 7
Page 25 of 85

the bankruptcy judge is disqualified from awarding compensation." Fed R. Bankr. P. 5002 (Advisory Committee Notes – 1985).

75.     Just as Judge Jones should have been disqualified from approving Jackson Walker's employment application, *see supra* IV.A.3., the relationship between Judge Jones and Ms. Freeman rendered it "improper" for Judge Jones to have authorized compensation for her law firm because he should have been disqualified. *See In re MarketXT Holdings Corp.*, No. 04-12078, 2006 WL 2583644, at *6 (Bankr. S.D.N.Y. July 21, 2006) (bankruptcy judge referred the committee's fee applications to the chief judge because his son was an associate at the law firm representing the committee even though his son was not and would not be staffed on the case).

76.     Given Judge Jones's lack of authority to have entered the orders approving Jackson Walker's compensation because he was disqualified from doing so, those orders should be vacated. *See infra* IV.D.

**B.      Jackson Walker Violated Its Disclosure Obligations Arising from Its Duties Under Sections 327 and 330 and the Disciplinary Rules and Its Fiduciary Duties as DIP Counsel.**

77.     "Ethics should be a lawyer's highest calling." *In re Cruz*, No. 18-10208, 2020 WL 5083326, at *1 (Bankr. S.D. Tex. Aug. 27, 2020). This is particularly true in bankruptcy cases where creditors are required to sacrifice significant rights to rehabilitate debtors and where confidence in the fairness of the proceedings—affecting a multiplicity of diverse interests—is of paramount importance. As a result, the Bankruptcy Code requires that debtors' counsel satisfy rigorous standards for employment and compensation, including that counsel is both conflict-free and disinterested. 11 U.S.C. §§ 327, 328(c), 330. Bankruptcy Rules 5002 and 5004 and 28 U.S.C. § 455 impose parallel requirements on judges to ensure their orders approving employment and compensation, among others, are likewise free of conflict or partiality. In addition to lawyers' ethical obligations under the Code, the case law interpreting it also establishes that debtors' counsel

USTP (Sungard) Ex. 7
Page 26 of 85

has fiduciary duties to the estate and to the Court. *ICM Notes Ltd. v. Andrews and Kurth, L.L.P.*, 278 B.R. 117, 123 (S.D. Tex. 2002), *affirmed*, 324 F.3d 768 (5th Cir. 2003). And this Court itself—through a local rule—requires attorneys to comply with the Texas Disciplinary Rules of Professional Conduct. S.D. Tex. Loc. R., App. A, Rule1(A).

78.     One way these ethical requirements for both lawyers and judges are enforced is by the lawyers' public disclosure of connections and potential conflicts so that parties and the Court can determine whether counsel can comply with its many ethical duties as debtors' counsel and whether any connections with a judge might require disqualification should the judge not spontaneously recuse. Thus, Rule 2014 does not require disclosure just for the sake of disclosure, nor is it the limit of counsel's disclosure obligations. Rather, full disclosure of all relevant facts is required to ensure that counsel can and do execute their ethical and professional duties throughout the case, that counsel are eligible to be employed and compensated, and that the court itself does not have a disqualifying conflict. Because disclosure and transparency are critical to the integrity and legitimacy of every bankruptcy proceeding, failures to disclose are considered among the most serious ethical violations of bankruptcy lawyers, particularly if they are intentional. *See U.S. v. Gellene*, 182 F.3d 578, 586–90 (7th Cir. 1999).

79.     Because Texas law imputes one attorney's knowledge to all those in the firm, Jackson Walker was obligated to disclose what Ms. Freeman knew about her relationship with Judge Jones throughout her tenure—before March 2021, between March 2021 and March 2022, and between March 2022 and November 2022, regardless of when others at Jackson Walker knew definitively of the relationship. "Texas law imputes one attorney's knowledge to all attorneys in a firm." *Tesco American, Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 553 (Tex. 2006) (reversing appellate decision because one judge had conflict stemming from prior firm's representation of

USTP (Sungard) Ex. 7
Page 27 of 85

27

party while she was lawyer with the firm, although she was unaware of it).  *Unauthorized Practice of Law Comm. V. Am. Home Assurance Co., Inc.*, 261 S.W.3d 24, 40 (Tex. 2008) ("Texas law imputes knowledge of confidential information to counsel's lawyer-associates so that in a private law firm, all of the lawyers are irrebuttably presumed to have knowledge of the confidential information."); *Nat'l Medical Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996) ("The attorney's knowledge is imputed by law to every other attorney in the firm.").

80.    Likewise, "[p]artners at firms are . . . charged with knowing about the misdeeds . . . of the attorneys that they employ and supposedly supervise."  *In re Bradley*, 495 B.R. 747, 791 (Bankr. S.D. Tex. 2013) ("Knowledge and actions are said to be imputed to all members of a firm; [the] managing partners, are therefore charged with [the employee attorney's] knowledge and actions.").

**C.    Jackson Walker Attorneys Violated the Local Rules Incorporating the Texas Disciplinary Rules of Professional Conduct by Failing to Disclose Ms. Freeman's Relationship with Judge Jones.**

81.    Jackson Walker attorneys, particularly those in a supervisory role, violated the Local Rules and the Rules of Professional Conduct by failing to disclose Ms. Freeman's relationship with Judge Jones.[16]  Lawyers "must be ever conscious of the broader duty to the judicial system."  S.D. Tex. Loc. R., App. D(A).  All attorneys practicing before this Court "are required to act as mature and responsible professionals" and must comply, as "the minimum standard of practice," with "the Texas Disciplinary Rules of Professional Conduct."  S.D. Tex. Loc. R., App. A, R. 1(A).

---

[16] Because the U.S. Trustee cannot engage in formal discovery before May 15, 2024, and because Jackson Walker has not provided the U.S. Trustee with any information beyond what it included in the Preliminary Response, the U.S. Trustee does not know which attorneys at Jackson Walker knew of the relationship and when beyond what was disclosed in the Preliminary Response.

USTP (Sungard) Ex. 7
Page 28 of 85

82.     An attorney is regarded as an officer of the court and has an ethical duty to be honest.  *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1258 n.8 (5th Cir. 1986).  That duty is reflected in several of the Disciplinary Rules, including but not limited to the following:

- Disciplinary Rule 3.03 (requiring candor toward the court);

- Disciplinary Rule 4.01 (requiring truthfulness in statements to others)

- Disciplinary Rule 5.01 (imposing liability on supervisory lawyers for knowingly permitting ethical violations of another lawyer); and

- Disciplinary Rule 8.04(a)(6) (prohibiting lawyers from knowingly assisting judges in violating the law or codes of conduct).

**1.     Jackson Walker Attorneys Violated Disciplinary Rule 3.03 Requiring Candor.**

83.     Ms. Freeman and other attorneys at Jackson Walker violated Rule 3.03 that requires candor toward the tribunal and prohibits lawyers from knowingly making a false statement of fact: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation" and can constitute a breach of an attorney's ethical obligations.  Disciplinary Rule 3.03, Comment 2.  *See In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) (J. Jones) ("A failure to disclose may constitute a breach of an attorney's duty of candor.").  The court sanctioned an attorney for making "a material false statement to the Court" when the attorney argued at a hearing that his client had no obligation to turn over a phone without disclosing that the phone had been lost.  *Id.*  The court characterized the attorney's failure to disclose the loss of the phone until sixteen days after it was lost as a "complete disregard of professionalism."  *Id.* at 853.

84.     By failing to disclose the relationship between Ms. Freeman and Judge Jones, Jackson Walker and Ms. Freeman effectively made an affirmative misrepresentation and violated

USTP (Sungard) Ex. 7
Page 29 of 85

the duty of candor. *See also Gellene*, 182 F.3d at 587 ("[T]he omission of material information in a bankruptcy filing impedes a bankruptcy court's fulfilling of its responsibilities just as much as an explicitly false statement.") (quotation marks omitted) (affirming attorney's conviction for bankruptcy fraud); *Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 543 (5th Cir. 2022) ("The duty of candor extends beyond not making false statements. An omission may also violate the duty."); *cf. In re Ronco, Inc.*, 838 F.2d 212, 218, 220 (7th Cir. 1988) (holding Rule 11 sanctions were warranted based on failure to disclose, in request for continuance based on recency of appointment as counsel for the creditors' committee, that counsel previously represented one of the creditors because the "information was highly relevant to the question of whether the bankruptcy judge should have granted a continuance.").

85.     "The duty of candor applies not only to the duty to disclose material information relating to the merits of a matter, but also to facts relating to the management of the case." *In re Brown*, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014) (quotation marks omitted).

86.     When Jackson Walker sought employment as Debtors' counsel, it represented that it was conflict-free and disinterested and had no disqualifying connections. But this was not true. Because Judge Jones should have been disqualified from hearing any case where Jackson Walker was counsel while Ms. Freeman was a partner, *see supra* IV.A., Jackson Walker's and Ms. Freeman's duty of candor required them to disclose the relationship. This was categorically true both before and after March 2021 because the duty of candor also imposes a concomitant ethical duty to make "reasonably diligent inquiry," *see* Disciplinary Rule 3.03, Comment 2. Jackson Walker attorneys violated this duty of reasonably diligent inquiry at several different junctures.

87.     First, when Jackson Walker sought to be employed as Debtors' counsel, it necessarily filed a Rule 2014 declaration disclosing all connections relevant to its ability to be

USTP (Sungard) Ex. 7
Page 30 of 85

employed and later to be paid. "[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or a representation of fact in open court, may properly be made only when the lawyer knows the assertion is true or believed it to be true on the basis of a reasonably diligent inquiry." Disciplinary Rules 3.03, Comment 2.

88.    Regardless of whether anyone at Jackson Walker other than Ms. Freeman knew about her relationship with Judge Jones before March 2021, its pre-March 2021 disclosures did not satisfy the reasonably diligent inquiry standard. In every case where Jackson Walker has appeared as local counsel for Kirkland & Ellis, Kirkland & Ellis included bankruptcy judges of this Court on its schedules of material parties and disclosed relationships (mostly former clerks) with the Southern District of Texas judges. *See, e.g., In re Jones Energy, Inc.*, No. 19-32112 (Bankr. S.D. Tex. Apr. 23, 2019), ECF No. 121, ¶¶ 64–66, and schedule 1(e) (disclosing current associates were former law clerks for Southern District of Texas bankruptcy and district court judges); *In re Smile DirectClub Inc.*, No. 23-90786 (Bankr. S.D. Tex. Oct. 23, 2023), ECF No. 188, ¶¶ 22, 52 and schedule 1(n) (disclosing that a firm lawyer is a former clerk for a Southern District of Texas bankruptcy judge). Jackson Walker, however, adopted a different schedule of material parties than Kirkland & Ellis in preparing its disclosures that failed to include connections with judges. *See, e.g., In re Jones Energy, Inc.*, No. 19-32112 (Bankr. S.D. Tex. Apr. 23, 2019), ECF No. 125.[17] After Ms. Freeman left the firm, Jackson Walker's disclosures and interested parties schedule began to include judges. *See, e.g., In re Smile DirectClub Inc.*, No. 23-90786

---

[17] In at least one instance while Ms. Freeman was still at Jackson Walker, the firm stated that it had searched for connections to judges and then wrongly attested "N/A" that there were no such connections. *See* Supplemental Declaration of Kristhy Peguero, pp. 6, 20, *In re GWG Holdings, Inc.*, No. 22-90032, ECF No. 828 (Bankr. S.D. Tex. Oct. 6, 2022). This was months after Jackson Walker partners indisputably learned in March 2022 that Ms. Freeman's relationship was current, calling into further question the adequacy of the firm's disclosure process and its failure to satisfy the "reasonably diligent inquiry" standard.

USTP (Sungard) Ex. 7
Page 31 of 85

(Bankr. S.D. Tex. Oct. 27, 2023), ECF No. 194, ¶¶ 22, 52 and schedule 1(n); *In re Diebold Holding Co., LLC*, No. 23-90602 (Bankr. S.D. Tex. July 3, 2023), ECF No. 208, Schedule 1 (Schedule of Searched Parties includes judges and court contacts for the Southern District of Texas). In any event, if Jackson Walker had made reasonably diligent inquiry and surveyed its attorneys about connections with judges while Ms. Freeman was at the firm, then Jackson Walker's disclosures might have satisfied this ethical standard—and, perhaps, even ferreted out the secret relationship. But, as far as the U.S. Trustee is aware, it did not and, instead, chose to diverge from its co-counsel's standard for diligent inquiry in the bankruptcy context.

89.    Second, Ms. Freeman admitted to Jackson Walker in March 2021 that she had been in a romantic relationship with Judge Jones, Prelim. Resp. ¶ 13, but "[n]o further details were sought at that time." *Id.* at Ex. 1, p. 3. Although Jackson Walker states that it began conferring with its outside ethics expert in March 2021, the (inaccurate) draft factual statement Jackson Walker prepared and Ms. Freeman approved for transmittal to the firm's ethics counsel was dated August 27, 2021, almost six months later.[18] Jackson Walker has not explained its delay in providing the ethics expert with information necessary for him to render an opinion.

90.    Nor does Jackson Walker's investigation appear to have been sufficiently independent—or reasonably diligent—to give it credibility because, if independent counsel or an outside investigator were retained, Jackson Walker has not disclosed that. Rather, based on the Preliminary Response, the firm's general counsel managed Jackson Walker's investigation. But as the Preliminary Response makes clear, Jackson Walker had an obvious financial interest in not finding out that Ms. Freeman had a continuing, intimate live-in relationship with Judge Jones

---

[18] Jackson Walker has not disclosed anything other than the draft letter so the U.S. Trustee does not know when it was sent and whether the factual inaccuracies about not having lived together persisted in the final version.

USTP (Sungard) Ex. 7
Page 32 of 85

because the firm could not then represent clients in cases pending before Judge Jones. As the firm explained, Jackson Walker sought an ethics opinion to "minimize[e] the risk that the firm's participation in future contested matters before the judge, through our partner or others, might result in disqualification of the judge or of us." Prelim. Resp., Ex. 1, p.2.

91.     The legal risk to Jackson Walker was substantial because if the firm knew she was currently in an intimate relationship with Judge Jones, it would have had no ability to parse its ethical duties as Debtors' counsel to avoid disclosing it, which would have disqualified the firm from representing clients before Judge Jones. And the financial risk was an existential threat because Judge Jones had the single-most large chapter 11 cases in the country,[19] which contributed to the growth of Jackson Walker's bankruptcy practice. According to the firm, Ms. Freeman had "quick and substantial success" and "Jackson Walker's debtor practice grew very substantially" after her hiring, with "Elizabeth's leadership and contribution . . . recognized as integral" to the firm's success. *Id.* at 2–3.

92.     And separate from the duty of diligent inquiry, once Jackson Walker learned of a past relationship, its duty of candor requiring disclosure of all facts relevant to its ability to be employed and to be paid required that the firm disclose this fact going forward and supplement prior disclosures that omitted this information. The firm did neither.

---

[19] "[L]ast year [2020] 57% of all large, public company bankruptcy cases ended up before just three of the country's 375 bankruptcy judges . . . . Judge [David R.] Jones . . . presided over 39% of all megacases filed in 2020. . . . *Testimony of Adam J. Levitin, Professor of Law Georgetown University Law Center*, Before the Committee on the Judiciary Subcommittee on Antitrust, Commercial, and Administrative Law United States House of Representatives "Oversight of the Bankruptcy Code, Part I: Confronting Abuses of the Chapter 11 System," pp. 9 & 12 (July 28, 2021)     (emphasis     in     original)     (available     at https://docs.house.gov/meetings/JU/JU05/20210728/113996/HHRG-117-JU05-Wstate-LevitinA-20210728.pdf).

USTP (Sungard) Ex. 7
Page 33 of 85

2.  **Jackson Walker Attorneys Violated Disciplinary Rule 4.01 Requiring Truthfulness in Statements to Others.**

93.    Disciplinary Rule 4.01 requires truthfulness in statements to others.  Whether a falsehood arises from affirmative representation or by omission, it is a falsehood, nonetheless.

94.    Ms. Freeman and other Jackson Walker attorneys violated these Disciplinary Rules when they chose not to disclose Ms. Freeman's relationship with Judge Jones.  Ms. Freeman's and Jackson Walker's silence in the face of their duty to speak regarding Ms. Freeman's relationship with Judge Jones was tantamount to a misrepresentation that there was no connection between Ms. Freeman and Judge Jones that would call into question either his independence or Ms. Freeman's and Jackson Walker's eligibility to serve as counsel under section 327 in cases before Judge Jones.

3.  **Jackson Walker Attorneys Violated Disciplinary Rule 8.04(a)(6) By Assisting Judge Jones in His Misconduct.**

95.    Disciplinary Rule 8.04(6) states that "a lawyer shall not knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." But attorneys at Jackson Walker and Ms. Freeman did precisely that.  As explained above, Judge Jones violated federal law—28 U.S. C. § 455, the Code of Conduct for United States Judges, and Bankruptcy Rules 5002 and 5004—related to judicial conduct when he both failed to disclose his relationship with Ms. Freeman and to recuse himself.  His concealment of the relationship resulted in the Fifth Circuit's Ethics Complaint, which found probable cause that Judge Jones engaged in misconduct that violated the Code of Conduct for United States Judges.  *See* Ethics Compl. pp. 4–5.  Attorneys at Jackson Walker (including Ms. Freeman) knew of this relationship and assisted him in these violations by also choosing not to disclose the relationship, and thereby, violated Disciplinary Rule 8.04(a)(6).

USTP (Sungard) Ex. 7
Page 34 of 85

**4.    Jackson Walker Attorneys Violated Disciplinary Rule 5.01 by Not Taking Measures to Remedy Its Lack of Candor and Truthfulness Once Discovered and by Permitting Further Concealment of Facts Relevant to Jackson Walker's Employment.**

96.    Rule 5.01 provides:

A lawyer shall be subject to discipline because of another lawyer's violation of these rules of professional conduct if:

(a) The lawyer is a *partner or supervising lawyer* and orders, encourages, or *knowingly permits the conduct involved*; or

(b) The lawyer is a *partner* in the law firm in which the other lawyer practices, is the general counsel of a government agency's legal department in which the other lawyer is employed, or has direct supervisory authority over the other lawyer, and with knowledge of the other lawyer's violation of these rules *knowingly fails to take reasonable remedial action to avoid or mitigate the consequences* of the other lawyer's violation.

Disciplinary Rule 5.01 (emphasis added).  After Jackson Walker learned of both Ms. Freeman's relationship with Judge Jones and her repeated violations of the Disciplinary Rules since May 2018, its partners were obligated under the Disciplinary Rules to take reasonable remedial measures, including making the appropriate disclosures in the affected bankruptcy cases.  They not only failed to take *reasonable* remedial measures, they took not a single remedial measure to disclose.  Then, in cases filed after March 2021, they "knowingly permitted" further violations of the Disciplinary Rules by not disclosing the relationship even though they had actual knowledge of it by then.  What is worse, by March 2022 when there was zero question Ms. Freeman was in an ongoing, intimate, and co-habiting relationship with Judge Jones, the firm still made not a single remedial disclosure to remedy its prior misrepresentations and lack of candor—and knowingly and repeatedly compounded their ethical violations in six cases filed thereafter where Judge Jones either presided or mediated.  Accordingly, the partners and supervisory attorneys of Jackson Walker repeatedly and knowingly violated Disciplinary Rule 5.01.

USTP (Sungard) Ex. 7
Page 35 of 85

D.     **Jackson Walker Had and Breached Fiduciary Duties to the Estate to Disclose All Information Relevant to Its Ability to Be Retained and Paid.**

97.     As estate professionals, Jackson Walker owed fiduciary duties to the Debtors, the Court, and the estate generally, including the obligation to disclose all information relevant to its eligibility to be retained and compensated.  Although Rule 2014 does not expressly require disclosure of connections with judges, that Rule is not the limit of counsel's disclosure obligations.  Rather, counsel's disclosure obligations arise from this fiduciary duty in addition to the obligations imposed by the Bankruptcy Code, the Bankruptcy Rules, and the Disciplinary Rules.  A counsel's duty to disclose "arises not solely by reason of the bankruptcy rules, but also is founded upon the fiduciary obligation owed by counsel for the debtor to the bankruptcy court." *Futuronics Corp. v. Arutt, Nachamie, & Benjamin* (*In re Futuronics Corp.*), 655 F.2d 463, 470 (2d Cir. 1981) (quotation marks omitted). *See also In re Huddleston*, 120 B.R. 399, 400–01 (Bankr. E.D. Tex. 1990) ("The case law is clear that the burden of disclosure is upon the person making the statement [of qualification for employment] to come forward with facts pertinent to eligibility and to make candid and complete disclosure.") (quotation marks omitted); *In re EWC, Inc.,* 138 B.R. 276, 279 (Bankr. W.D. Okla. 1992) ("[P]rofessionals performing duties for the estate are held to high fiduciary standards, and act as officers of the court.").  And section 327(a) "implies a duty of continuing disclosure."  *In re Granite Partners, LP*, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998).

98.     "It is undisputed that counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court," as well as a "general fiduciary duty to preserve the bankruptcy estate."  *ICM Notes Ltd. v. Andrews and Kurth, L.L.P.*, 278 B.R. 117, 123 (S.D. Tex. 2002), *affirmed*, 324 F.3d 768 (5th Cir. 2003); *see also In re Evangeline Ref. Co.*, 890 F.2d 1312, 1323 (5th Cir. 1989) (noting that "attorneys for trustees are held to high fiduciary standards of conduct"); *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 840

USTP (Sungard) Ex. 7
Page 36 of 85

(Bankr. C.D. Cal. 1991) ("[T]he attorney is obligated to act not in his or her own best interest, but in the best interest of all the creditors.")

99.     The fiduciary duties owed by a professional include the duties of loyalty and care, *see Hansen*, 220 B.R. at 454, and in particular, a duty "to disclose any actual or potential conflicts of interest with the estate." *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997); *see also In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 712 (Bankr. S.D.N.Y. 2008) (finding that the complaint stated a claim that debtor's counsel breached fiduciary duties by not disclosing relationship with successful bidder at auction); *ICM Notes*, 278 B.R. at 124 (fiduciary duties of debtor's counsel include "duty to exercise independent professional judgment on behalf of the estate and to disclose any actual or potential conflicts of interest with the estate"). Among other remedies, violation of these duties may "warran[t] a denial of all compensation to debtor's counsel." *Smitty's Truck Stop*, 210 B.R. at 850.

100.    As discussed above, the relationship between Ms. Freeman and Judge Jones was a material, disqualifying connection that should have been (but was not) included in Jackson Walker's disclosures, nor did they report Judge Jones's own ethical misconduct. Those failures tainted this case and damaged the administration of the estate generally by creating an unlevel playing field for parties, who might have sought recusal of Judge Jones, objected to the retention of Jackson Walker, or sought other appropriate relief had these facts been known. The conduct of Jackson Walker and Ms. Freeman here was well short of the "high fiduciary standards" commanded by the Fifth Circuit. *See Evangeline Ref. Co.*, 890 F.2d at 1323.

101.    And although Rule 2014 is not the sole source of the disclosure obligation for estate counsel, the cases under Rule 2014 nevertheless illustrate the importance, breadth, and consequences of non-disclosure.

USTP (Sungard) Ex. 7
Page 37 of 85

102. All professionals seeking to be retained as estate-paid professionals—whether for a trustee, debtor-in-possession, or official committee—must file a Rule 2014 verified statement disclosing all of the professional's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States [T]rustee or any person employed in the office of the United States [T]rustee." Fed. R. Bankr. P. 2014. Rule 2014 disclosures are not limited to connections that would—in the professional's view—render the professional unable to be employed under 11 U.S.C. § 327(a) because of an adverse interest, conflict, or lack of disinterestedness. Rather, Rule 2014 requires the disclosure of all known connections. Professionals "cannot pick and choose which connections are irrelevant or trivial." *EWC,* 138 B.R. at 280.

103. The requirement to disclose all connections is not subjective because "[t]he decision as to what facts may be relevant should not be left up to the professional, 'whose judgment may be clouded by the benefits of the potential employment.'" *In re Fibermark, Inc.,* No. 04-10463, 2006 WL 723495 at *8 (Bankr. D. Vt. Mar. 11, 2006) (quoting *In re Lee*, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988)). Said differently, "the existence of a conflict of interest is not the *quid pro quo* [sic: *sine qua non*] for whether or not disclosure must be made." *In re Elecs. Grp., Inc.*, 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008).

104. Bankruptcy Rule 2014's disclosure requirement is also much broader than section 327's criteria to be employed and imposes independent and specific limitations upon counsel's conduct:

> [T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing the disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed.

USTP (Sungard) Ex. 7
Page 38 of 85

*In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994); *see also Granite Partners,* 219 B.R. at 44 ("The trustee broke the cardinal principle of Rule 2014(a). He arrogated to himself a disclosure decision that the court must make.").

105.    The disclosure required by professionals in bankruptcy cases "goes to the heart of the integrity of the bankruptcy system . . . ." *In re Universal Bldg. Prods.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (quoting *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236–38 (Bankr. E.D. Cal. 1988)). The duty of disclosure is not merely critical; it is sacrosanct. *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005). "Bankruptcy Rule 2014 disclosure is not optional; it's mandatory." *In re Dickson Props., LLC*, No. 11-18617, 2012 WL 2026760, *8 (Bankr. E.D. Va. June 5, 2012).

106.    Moreover, the requirement to be disinterested "does not evaporate once the attorney's employment is approved." *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 625 (Bankr. E.D. Cal. 2012). As a result, Rule 2014 also "requires professionals to reveal connections that arise after their retention." *Granite Partners*, 219 B.R. at 35; s*ee also I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (quoting *In re Metro. Env't, Inc.*, 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003) ("Although [Rule 2014(a)] does not explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.") (internal quotation marks omitted)); *eToys,* 331 B.R. at 190 ("[T]he duty to disclose is ongoing.").

107.    Although judges are not specifically mentioned in Rule 2014, the duty of disclosure is consistently held to be exceedingly broad, and even unintentional omissions of connections are at the professional's peril. *See, e.g., Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery,*

USTP (Sungard) Ex. 7
Page 39 of 85

*Inc.)*, 676 F.3d 455, 465–66 (5th Cir. 2012); *I.G. Petroleum,* 432 F.3d at 355.  "The remedy for anything short of full disclosure is denial of compensation and disgorgement of sums already paid. No exceptions are made for slipshodness or good faith. This *strict-liability* principal is the law across the country."  *In re Chris Petit and Assocs., P.C*., No. 22-50591, 2022 WL 17722853 *10 (Bankr. W.D. Tex. Dec. 13, 2022) (citations omitted) (emphasis added).

     108.    The broad duty of disclosure assists courts and parties with the necessary facts to review employment applications consistent with the Advisory Committee Notes to Rule 5002— which prohibits a bankruptcy judge from approving the retention of an attorney "if that person is or has been so connected with such judge . . . as to render the appointment or employment improper," Fed. R. Bankr. P. 5002(b)—state that professionals should make "appropriate disclosure" under Rule 2014 of their connections with a judge if those connections might render their employment improper.  *See* Fed. R. Bankr. P. 5002(b) (Advisory Committee Notes – 1985).

**E.    Jackson Walker Could Not Be Retained or Paid as an Estate Professional Because the Firm was Not "Disinterested."**

     109.    To be retained and paid, a debtor's lawyer must be "disinterested."  11 U.S.C. § 327; *see also In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 n.6 (5th Cir. 1986) ("The standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process").  Under section 101(14)(C), to be disinterested, a professional must "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, *or for any other reason*."  11 U.S.C. § 101(14)(C) (emphasis added).  "The latter portion of the definition, which is commonly referred to as the 'catch-all clause,' is sufficiently broad to include any professional with an 'interest or relationship that would even faintly color the independence and impartial

USTP (Sungard) Ex. 7
Page 40 of 85

attitude required by the Code.'" *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998) (quoting *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)).

> **1.     Jackson Walker Was Not Disinterested Because Ms. Freeman Was Not Disinterested.**

110.     Having an intimate relationship with the presiding judge "would . . . color" the "independence and impartial attitude" required by the Code. *See Crivello*, 134 F.3d at 835. Thus, Ms. Freeman was not—and could not be—disinterested in any case where Jackson Walker represented Debtors before Judge Jones because her loyalties were divided between her clients and the firm's partners on the one hand and her intimate, cohabiting partner on the other. And because Ms. Freeman was not disinterested, Jackson Walker was not disinterested.

111.     Whether an individual attorney's lack of disinterestedness should be imputed to the firm can either be determined on a "case-by-case" basis, *In re McDermott Int'l, Inc.*, 614 B.R. 244, 255 (Bankr. S.D. Tex. 2020) (J. Jones), or be automatically imputed under a *per se* rule. *See, e.g.*, *In re Essential Therapeutics, Inc.*, 295 B.R. 203, 211 (Bankr. D. Del. 2003) (imputing one member's disinterestedness to the entire firm); *In re Vebeliunas*, 231 B.R. 181, 196 (Bankr. S.D.N.Y. 1999) ("The general rule is that when one member of a firm is disqualified, all members of that firm must be similarly disqualified."), appeal dismissed, 246 B.R. 172 (S.D.N.Y. 2000); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1017 (Bankr. N.D. Ill. 1993) (if one attorney in firm is disqualified from representing debtor, the entire firm is disqualified); *In re Tinley Plaza Assocs.*, 142 B.R. 272, 277 (Bankr. N.D. Ill. 1992) ("If an attorney who is a member of a law firm is disqualified from employment by the debtor-in-possession because he or she does not meet [the criteria set out in §§ 327(a) and 101(14)(D)], then all the members of the attorney's law firm are also disqualified."); *Stanley v. Krogstad (In re Petro–Serve, Ltd.)*, 97 B.R. 856, 861–62 (Bankr. S.D. Miss. 1989) (each member of affiliated "group" of attorneys had a sufficient relationship with

USTP (Sungard) Ex. 7
Page 41 of 85

the others to warrant the group's disqualification because one member was not disinterested); *In re Wells Benrus Corp.*, 48 B.R. 196, 199 (Bankr. D. Conn. 1985) ("The disqualification of any attorney pursuant to Code § 327(a) causes every attorney in that attorney's firm to be disqualified as well."). But under either formulation, Jackson Walker was not disinterested.

112.    In *Cygnus*, the court ruled that an "inquiry" into whether the individual attorney's status would impair other firm member's ability to act in an impartial manner "is proper and required." *Cygnus Oil & Gas*, 2007 WL 1580111, at *3. But because the movant presented no evidence on the factual inquiry and relied instead on the rejected legal principle of *per se* imputation, the firm was found to be disinterested. *Id.* at *4. The court in *McDermott Int'l, Inc.*, 614 B.R. at 255, similarly rejected *per se* imputation of a Chief Restructuring Officer's ("CRO") lack of disinterestedness to his restructuring firm but preserved the Court's discretion to reach a different conclusion in the "inevitable unusual case," explaining that a "case-by-case approach to the imputation of a lack of disinterestedness harmonizes the expressed concerns of all parties."[20]

113.    This case is that "inevitable unusual case." Ms. Freeman's loyalties were divided between her clients and the firm's partners on the one hand and her co-habiting partner on the other, and even these divided loyalties could shift over time depending on what was at issue professionally or personally. As a practice group partner (income and, later, equity) and key member of Jackson Walker's restructuring team—the firm lauded her "leadership" in the restructuring practice to its ethics expert—she had the ability to influence decisions Jackson Walker made for its clients. As the Court recognized in *Cygnus*, the critical question on the firm's disinterestedness is whether Ms. Freeman's status would impair the ability of other Jackson

---

[20] It is worth noting that the legal propriety of Judge Jones's rejection of *per se* imputation of disinterestedness in this case may be shadowed by the conduct alleged in this motion.

USTP (Sungard) Ex. 7
Page 42 of 85

Walker attorneys to act in an impartial manner. Clearly, Ms. Freeman's status as a firm partner and influential leader in the restructuring practice requires that her disinterestedness be imputed to Jackson Walker.

114.　　Jackson Walker was also not disinterested for another independent reason: it had a material financial interest in having a friendly judge in a relationship with its partner who might lend a less critical eye to its employment and compensation requests. These were interests materially adverse to the estate and its creditors—as inherently recognized by Rule 5002 and 5004 disqualifying judges from approving employment or compensation to relatives or those with whom the judge has close connections.

### 2.　　An Ethical Wall Could Not Render Jackson Walker Disinterested.

115.　　Although Jackson Walker represented in its Preliminary Response that it took remedial measures in March 2021 to limit Ms. Freeman's work on cases before Judge Jones, Prelim. Resp. ¶ 13, the firm's lack of disinterestedness could not be and was not remedied by the use of ethical walls.[21] An ethical wall's purpose is to protect confidentiality based on knowledge from past representation. *See, e.g.*, *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) ("Although an ethical wall may, in certain limited circumstances, prevent a breach of confidentiality, it cannot, in the absence of an informed waiver, cure a law firm's breach of its duty of loyalty to its client."). *Cf., In re Tr. Am. Serv. Corp.*, 175 B.R. 413, 421 (Bankr. M.D. Fla. 1994) (An ethical wall "typically protects a client from the past activities and information of representation of an adverse client" but is "generally not an acceptable means of conflict avoidance

---

[21] There is some information suggesting that Jackson Walker's alleged walling off was illusory or ineffective. A sample of billing records in some cases reflects other professional's communications with Ms. Freeman on Judge Jones cases after March 2021 even when Ms. Freeman herself billed no time. This will be a subject of discovery once the U.S. Trustee is permitted to do so under the pertinent scheduling order.

USTP (Sungard) Ex. 7
Page 43 of 85

where the same professional organization actively represents two adverse interests."); *Concat*, 350

F. Supp. 2d at 822 ("Screening measures … do nothing to mitigate conflict arising from concurrent

adverse client relationships, since the purpose of the prohibition against such relationships is to

preserve the attorney's duty of loyalty, not confidentiality, to his client.").  Therefore, any alleged

ethical "wall" does not cure Jackson Walker's lack of disinterestedness as of March 2021 or its

former and future failures to disclose the firm's connections with Judge Jones because of Ms.

Freeman's cohabiting relationship with him.

F.   **This Court Should Vacate the Orders Approving Jackson Walker's Retention and Awarding Jackson Walker Interim and Final Compensation and Set Them Aside Under Rule 60(b)(6).**

116.    Federal Rule of Civil Procedure Rule 60(b)(6) provides that "[o]n motion and just

terms, the court may relieve a party or its legal representative from a final judgment, order, or

proceeding for . . . any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Bankruptcy

Rule 9024 incorporates Civil Rule 60(b) "in cases under the Code."  Fed. R. Bankr. P. 9024.  The

U.S. Trustee's motion to vacate is not premised on mere legal error in the employment and

compensation of Jackson Walker.  Rather, it is premised on conduct that goes to the fundamental

fairness and integrity of the bankruptcy proceeding itself as well as a fundamental deprivation of

due process.  The infirmity here is so foundational that the Court should vacate the Jackson Walker

retention and compensation orders.

117.    Relief under Rule 60(b)(6) applies to "extraordinary circumstances."  *Ackermann*

*v. United States*, 340 U.S. 193, 199 (1950); *see also Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir.

2002) ("Rule 60(b)(6) motions will be granted only if extraordinary circumstances are present.")

(internal quotation marks and citation omitted).  Rule 60(b)(6) is "a residual clause used to cover

unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional

circumstances."  *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting

USTP (Sungard) Ex. 7
Page 44 of 85

*Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F. 2d 599, 604–05 (5th Cir. 1986)).  The undisclosed relationship between the presiding judge and partner of a law firm appearing before the judge is that unforeseen contingency and that exceptional circumstance.

118.    The Supreme Court has held that if "a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the *risk that the denial of relief will produce injustice* in other cases, and the *risk of undermining the public's confidence in the judicial process*."  *Liljeberg*, 486 U.S. at 864 (emphasis added).  Although the Supreme Court has stated that Rule 60(b)(6) relief is "neither categorically available nor categorically unavailable for all § 455(a) violations," *id.*, it affirmed the Fifth Circuit's decision vacating a judgment under Rule 60(b)(6) because the trial court judge should have been disqualified under section 455(a).  *Id.*  "We must continuously bear in mind that 'to perform its high function in the best way []justice must satisfy the appearance of justice.'"  *Id.* (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)).  Consistent with *Liljeberg*, bankruptcy court orders and judgments may be vacated for violations of section 455(a) and Rule 5004.  *See, e.g., Clark,* 612 B.R. at 816.

119.    The exceptional facts here easily satisfy the *Liljeberg* factors.  First, there is no risk that vacatur will cause injustice to any *party*, as the relief is sought only against Jackson Walker, *counsel*, not a *party*.  Instead, permitting the orders approving Jackson Walker's retention and fees to stand would be unjust to those who are parties to this case.  Judge Jones's relationship with Ms. Freeman required his disqualification.  The relationship raises questions about his actual impartiality in this proceeding and created at least the appearance of partiality.  His actions were sufficiently egregious that he was asked to resign from the complex case panel, was subjected to the Fifth Circuit's Ethics Complaint, and voluntarily resigned from this Court within a week of his

USTP (Sungard) Ex. 7
Page 45 of 85

relationship with Ms. Freeman becoming public. At the same time, Jackson Walker and Ms. Freeman failed in their duties.

120.    As for the second and third factors, failure to vacate the retention and fee orders could produce injustice in this and other cases because disclosure and transparency go to the heart of the proper functioning of the bankruptcy system. Allowing the tainted retention and fee orders to stand would send a message that professionals can avoid consequences for their misconduct unless they are caught in real-time. This would gravely undermine the public's *perception* of the legitimacy of the Court. "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Liljeberg*, 486 U.S. at 869–70 (quoting *Public Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 467 (1952) (Frankfurter, J., concurring)). Thus, vacating the retention and fee orders and providing any party in interest, including the U.S. Trustee, sufficient opportunity to object to Jackson Walker's retention and fee applications given the newly discovered evidence bolsters, not undermines, the parties' and public's confidence in the judicial process.

121.    Because Jackson Walker was never eligible to be employed, it was never eligible to be paid. As a result, vacating the employment orders necessarily requires that the fee orders likewise be vacated and that Jackson Walker return all compensation that it has been paid.

122.    Judge Jones's, Ms. Freeman's, and Jackson Walker's actions have injured the integrity of the Court in the eyes of the public and cast a cloud on dozens of bankruptcy proceedings. Therefore, these unique and serious circumstances satisfy the *Liljeberg* factors. Rule 60(b)(6) relief should be granted, and the retention and compensation orders vacated.

USTP (Sungard) Ex. 7
Page 46 of 85

G.     **The Court Should Sanction Jackson Walker by Ordering the Return of All Fees and Expenses Previously Paid to the Firm.**

123.    "[T]he basic premise of the Bankruptcy Code is that the bankruptcy court has broad supervisory powers over professional persons who render services for the estate." *Consol. Bancshares,* 785 F.2d at 1254.  The Code specifically provides that compensation may be denied if a section 327 professional is not disinterested or holds an interest adverse to the estate.  11 U.S.C. § 328(c).  In addition, bankruptcy courts frequently use their broad discretion over attorneys' fees awards and inherent authority to deny compensation for failures to disclose information relevant to a professional's retention under section 327 and for violations of the Bankruptcy Rules, Local Rules, and Disciplinary Rules.

124.    The Court should exercise those powers here to deny compensation to Jackson Walker and order the firm to disgorge fees already paid.  *See Consol. Bancshares*, 785 F.2d at 1254 (holding that where attorneys "eschewed compliance with the Code and Rules," the court was "well within its discretion in denying them fees").

1.     **This Court Should Deny Jackson Walker's Fees and Expenses Under Section 328(c) and Order Return of Denied Fees and Expenses.**

125.    Section 328(c) provides that "the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, *at any time* during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."  11 U.S.C. § 328(c) (emphasis added).

126.    Section 328 applies if the professional is not disinterested or has a conflict at the outset or later "becomes" not disinterested or conflicted.  *Consol. Bancshares*, 785 F.2d at 1256 (5th Cir. 1986); *see also Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 354

(5th Cir. 2005) ("A court may deny compensation for services provided by an attorney who holds such an adverse interest."). "[S]ection 328(c) authorizes a 'penalty' for failing to avoid a disqualifying conflict of interest." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994).

127.    Here, Jackson Walker was not "disinterested" due to the relationship between Ms. Freeman and Judge Jones. *Supra* IV.C. "'[N]o more need be shown . . . to support a denial of compensation.'" *Consol. Bancshares*, 785 F.2d at 1256 (quoting *Woods v. City Nat'l Bank and Trust Co. of Chicago*, 312 U.S. 262, 268 (1940)). Moreover, relying on section 328(c), courts have ordered disgorgement due to a lack of disinterestedness. *See, e.g.*, *In re eToys, Inc.*, 331 B.R. 176, 190 (Bankr. D. Del. 2005) ("Because it had an actual conflict for several months (which it failed to timely disclose), the Court concludes that MNAT should disgorge all fees received in this case for work done by it on matters involving Goldman. 11 U.S.C. § 328(c)"); *Rome*, 19 F.3d at 58 (affirming bankruptcy order that retroactively disqualified and ordered forfeiture of compensation). To the extent the compensation and fee orders are vacated due to a finding of lacking disinterestedness, it is appropriate under section 328(c) for the Court also to order denial of Jackson Walker's final fees and expenses and to order their return.

**2.    Jackson Walker's Violation of Its Disclosure Obligations as Section 327 Professionals Also Warrants an Order Requiring the Return of Fees and Expenses.**

128.    Even if Jackson Walker did not have a disqualifying conflict or lack disinterestedness justifying relief under section 328(c), its disclosure failures warrant an order requiring Jackson Walker to return its fees because "the duty of disclosure [is so important] that the failure to disclose relevant connections is an independent basis for the disallowance of fees." *eToys*, 331 B.R. at 190 (quoting *Leslie Fay*, 175 B.R. at 533). *See also, e.g., Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 465–66 (5th Cir. 2012) (holding unintentional failure to disclose connections warranted return of fees even though there was no

USTP (Sungard) Ex. 7
Page 48 of 85

adverse interest under section 328(c)); *Arenes v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995) (affirming bankruptcy court's order requiring the return of a $75,000 prepetition retainer fee when the professional breached its duty to disclose it); *Rome*, 19 F.3d at 58 (affirming retroactive disqualification and forfeiture of all compensation); *EWC,* 138 B.R. at 280 ("Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were de minimis.").

129.    "[W]here there has been a clear failure to make timely and spontaneous disclosure of all facts material to a disqualifying conflict of interest, counsel appointed pursuant to section 327(a) can lay *no claim of right to a lesser sanction* than the bankruptcy court is authorized to impose pursuant to section 328(c)." *Rome*, 19 F.3d at 62 (emphasis in original).  Thus, exercising their "broad supervisory powers" over attorneys employed by the estate, *Consol. Bancshares*, 785 F.2d at 1254, "[c]ourts may deny *all* compensation to professionals who fail to make adequate disclosure.  *Am. Int'l Refinery, Inc.*, 676 F.3d at 465–66.   "'[C]ounsel who fail to disclose timely and completely their connections *proceed at their own risk* because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.'"  *Id.* at 465–66 (emphasis added) (quoting *W. Delta Oil*, 432 F.3d at 355); *accord Crivello*, 134 F.3d at 836; *Rome*, 19 F.3d at 59; *see also Prudhomme*, 43 F.3d at 1003 ("[The] court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure.").  "Sanctions are imposed for the failure to disclose, regardless of the consequences of the non-disclosure."  *In re Matco Electronics Group, Inc.*, 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008).

USTP (Sungard) Ex. 7
Page 49 of 85

130.    Although intent is relevant to determining the appropriate sanction for a failure to disclose, sanctions are nevertheless warranted even if the non-disclosures were unintentional and the estate or its creditors suffered no harm or prejudice. *Woods v. City Nat'l Bank and Trust Co. of Chicago*, 312 U.S. 262, 268 (1941) (holding, where there is a conflict of interest, attorneys "should be denied compensation" even where "fraud or unfairness were not shown to have resulted"); *Am. Int'l Refinery*, 676 F.3d at 465 (affirming $135,000 sanction where "none of these disclosure errors were intentional and . . . no harm or prejudice to the estate or creditors resulted"); *eToys*, 331 B.R. at 197 ("Failure to disclose may result in disallowance of fees or disqualification, even if the failure was negligent and not willful.").

131.    "The remedy for anything short of full disclosure is denial of compensation and disgorgement of sums already paid.  No exceptions are made for slipshodness or good faith. This strict-liability principal is the law across the country." *Chris Petit and Assocs.,* 2022 WL 17722853 *10 (citations omitted).

132.    Denial of all compensation is often warranted.  For example, the Second Circuit held, in a case cited with approval by the Fifth Circuit in *Prudhomme*, 43 F.3d at 1003, that total denial of compensation was the only appropriate sanction for nondisclosure of all facts bearing upon counsel's eligibility to be employed by the estate. *Futuronics*, 655 F.2d at 469–71 (holding bankruptcy court abused its discretion by only partially denying compensation to counsel that failed to disclose prohibited fee splitting); *see also EWC*, 138 B.R. at 282 (holding denial of all compensation is required to "serve as an effective 'penalty'" for "persons who have violated the Bankruptcy Rules, violated their fiduciary duties, and deceived the court into exceeding its authority under § 327(a)").

USTP (Sungard) Ex. 7
Page 50 of 85

133.    Here, denial of all compensation is warranted because of Jackson Walker's failures to disclose.  As discussed *supra* IV.B., Jackson Walker failed to disclose all facts bearing on its eligibility to be retained as counsel under section 327 when it remained silent about Ms. Freeman's relationship with Judge Jones.  Although Jackson Walker has argued that it did not know the extent of the relationship and did not discover it until March 2021, Ms. Freeman knew, and there are no good faith exceptions to a firm's strict liability for its disclosure failures.  Moreover, even when it found out in March 2021, it did not disclose even then. And the firm certainly knew that Ms. Freeman had been Judge Jones's law clerk. Yet it, too, made the decision not to disclose those facts.

134.    Denial of all compensation is also warranted because Jackson Walker's failure to disclose its partner's relationship with Judge Jones was not an "isolated instance," but reflects "a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy proceedings." *Futuronics*, 655 F.2d at 471.  Ms. Freeman's intimate relationship with him.  Accordingly, this Court should order Jackson Walker to return all fees and expenses paid by the estate.

**3.    Jackson Walker's Violations of the Disciplinary Rules Imposed by this Court's Local Rule Warrant an Order Requiring the Return of Fees and Expenses.**

135.    Finally, this Court may exercise its inherent authority to deny compensation to Jackson Walker based on its violation of this Court's Local Rule that adopts the Disciplinary Rules. "The bankruptcy court has inherent power to guard the practice of attorneys who appear in that court."[22] *Baker v. Cage (In re Whitley)*, 737 F.3d 980, 987 (5th Cir. 2013) (quotation marks and

---

[22] The inherent power to discipline attorneys for misconduct is distinct from courts' contempt powers.  As explained by the Fifth Circuit, courts' inherent powers include both contempt and, "[i]n addition, the Supreme Court has recognized the power to levy sanctions in response to abusive litigation practices." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993).  In particular, "a

USTP (Sungard) Ex. 7
Page 51 of 85

alterations omitted); *accord In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016); s*ee also Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991) ("We conclude that the bankruptcy court has the inherent power to award sanctions for bad-faith conduct in a bankruptcy court proceeding."); *In re Cruz*, No. 18-10208, 2020 WL 5083326, at *28 (Bankr. S.D. Tex. Aug. 27, 2020) ("The Court has the power to police conduct of attorneys who appear in this Court and to take action with respect to those attorneys who misbehave.").

136.    That inherent power stems from two sources.  Under 11 U.S.C. § 105(a), the Court possesses statutory authority to issue "any order" that is "necessary or appropriate to carry out the provisions of this title," including "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).  *See Ridgeway v. Stryker Corp. (In re Ridgeway)*, 973 F.3d 421, 428 (5th Cir. 2020) ("[Section 105(a)] "includes the power to sanction a party.").

137.    In addition, all courts have inherent powers that derive from the very nature of the bankruptcy court as a court of justice. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–48 (1991); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine)*, 77 F.3d 278, 284–85 (9th Cir. 1996) (holding that the bankruptcy court has the same inherent authority "that *Chambers* recognized . . . within Article III courts").  These inherent powers include the court's authority to control admission to its bar, to discipline attorneys who appear before it, and to sanction individuals for "bad faith" or "for oppressive reasons," such as "fraud has been practiced upon [the court], or that

---

reasonable monetary sanction for failure to carry out an attorney's special responsibility to the court differs from the more severe infraction of contempt for which attorneys and members of the general public can become liable."  *Eash v. Riggins Trucking*, 757 F.2d 557, 566 (3d Cir. 1985) (en banc) (quotation marks and alterations omitted).

USTP (Sungard) Ex. 7
Page 52 of 85

the very temple of justice has been defiled." *Chambers*, 501 U.S. at 45–46 (quoting *Universal Oil Prod. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946)).

138.    "Courts enjoy broad discretion to determine who may practice before them and to regulate the conduct of those who do." *In re Ramos*, 679 F. App'x 353, 356 (5th Cir. 2017) (quotation marks and alterations omitted); *see also In re Cruz*, No. 18-10208, 2020 WL 5083326, at *35 (Bankr. S.D. Tex. Aug. 27, 2020) ("[B]ankruptcy courts have broad leeway in determining an appropriate sanction for unethical behavior."). Further, courts have a "responsibility to supervise the conduct of attorneys who are admitted to practice before it." *Ramos*, 679 F. App'x at 356.

139.    The Court's broad authority to discipline attorneys is "discretionary" and includes requiring attorneys to "disgorge fees paid in connection with a bankruptcy proceeding." *Whitley*, 737 F.3d at 987 (quotation marks omitted). In addition, "[t]he bankruptcy court has authority to impose disciplinary sanctions on attorneys beyond the return of compensation." *Whitley*, 737 F.3d at 988; *see also Case*, 937 F.2d at 1023 ("The power to assess attorneys fees, like other inherent powers possessed by the district court, is based on the need to control court proceeding and necessity of protecting the exercise of judicial authority in connection with those proceedings. . . . These principles are equally applicable to the bankruptcy court.").

140.    Bad faith includes intentional actions that an attorney knows violate her ethical duties—or where the attorney is willfully blind to the violation. Thus, for example, the Fifth Circuit affirmed a $10,000 sanction for an *ex parte* contact to a represented party in violation of the Rules of Professional Conduct, holding that the lower court's finding that the attorney "acted intentionally and 'closed his eyes to the obvious' are sufficient to find that [the attorney] acted

USTP (Sungard) Ex. 7
Page 53 of 85

knowingly for purposes of [the rule], and . . . are tantamount to findings that [the attorney] acted in bad faith." *Williams v. Lockheed Martin, Corp.*, 990 F.3d 852, 867–68 (5th Cir. 2021).

141.    The facts here show bad faith.  By March 2021 at the latest, Jackson Walker knew of Ms. Freeman's relationship with Judge Jones and made a conscious decision not to disclose despite its obligations to do so under the Bankruptcy Code, the Bankruptcy Rules, and the Disciplinary Rules and because of its fiduciary duty.  *See supra* IV.B.; *see also eToys*, 331 B.R. at 187 (holding a knowing failure to disclose a conflict of interest "constitutes willful misconduct"); *see also id*. at 188 (failure to disclose facts that would bar retention and "would constitute a fraud on the Court").

142.    As a sanction for Jackson Walker's knowing failure to disclose, in plain violation of this Court's rules, including the Disciplinary Rules, this Court should order the firm to return all fees to the estate.  *See Williams,* 990 F.3d at 867–68 (affirming order requiring payment of $10,000 of opposing party's attorney's fees as a sanction); *Suffness v. Petros (In re Avante Real Estate, Inc.),* No. 95–10442, 1995 WL 625456, *8 (5th Cir. Oct. 11, 1995) ("[T]he bankruptcy court has broad authority to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings.").

## V.    CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests that the Court (1) vacate the orders approving Jackson Walker's employment and granting Jackson Walker's interim and final fee applications, , (2) sanction Jackson Walker for its violations of the Bankruptcy Code, Bankruptcy Rules, their fiduciary duties, the Local Rules, and the Disciplinary Rules by ordering the return of any paid fees and expenses, and (iv) grant such other and further relief as this Court deems just and appropriate.

USTP (Sungard) Ex. 7
Page 54 of 85

Date: February 29, 2024                          Respectfully Submitted,

                                                 KEVIN M. EPSTEIN
                                                 UNITED STATES TRUSTEE
                                                 REGION 7, SOUTHERN AND WESTERN
                                                 DISTRICTS OF TEXAS

                                                 By: */s/ Vianey Garza*
RAMONA D. ELLIOTT                                MILLIE APONTE SALL
Deputy Director/                                 Assistant U.S. Trustee
General Counsel                                  Tex. Bar No. 01278050/Fed. ID No. 11271
NAN ROBERTS EITEL                                AUBREY L. THOMAS
Associate General Counsel                        Assistant U.S. Trustee
Fed. ID No. 561266                               Tex. Bar No. 24130279/ Fed. ID No. 3674535
DANIELLE PHAM                                    VIANEY GARZA
Trial Attorney                                   Trial Attorney
Department of Justice                            Tex. Bar No. 24083057/Fed. ID No. 1812278
Executive Office for                             ALICIA BARCOMB
United States Trustees                           Trial Attorney
Washington, D.C. 20530                           Tex. Bar No. 24106276/Fed ID No. 3456397
(202) 307-1399 – Telephone                       515 Rusk, Suite 3516
                                                 Houston, Texas 77002
                                                 (713) 718-4650 – Telephone
                                                 (713) 718-4670 – Fax
                                                 Email: millie.sall@usdoj.gov
                                                        vianey.garza@usdj.gov
                                                        alicia.barcomb@usdoj.gov
                                                        aubrey.thomas@usdoj.gov


## CERTIFICATE OF SERVICE

        I hereby certify that on February 29, 2024, a copy of the foregoing pleading was served on
those entitled to ECF Notice through the Court's CM/ECF system.

                                                 */s/ Vianey Garza*
                                                 Vianey Garza

USTP (Sungard) Ex. 7
Page 55 of 85

**EXHIBIT 1**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 13, 2023

Lyle W. Cayce
Clerk

COMPLAINT NUMBER: 05-24-90002

COMPLAINT IDENTIFIED BY THE CHIEF JUDGE OF THE FIFTH
CIRCUIT COURT OF APPEALS AGAINST UNITED STATES
BANKRUPTCY JUDGE DAVID R. JONES,
SOUTHERN DISTRICT OF TEXAS,
UNDER THE JUDICIAL IMPROVEMENTS ACT OF 2002.

Pursuant to Rule 5 in Article III of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, I am identifying a Complaint against United States Bankruptcy Judge David R. Jones of the Southern District of Texas.

Rule 5 provides that when a chief judge has information constituting reasonable grounds for inquiry into whether a covered judge has engaged in misconduct, the chief judge may conduct an inquiry, as he or she deems appropriate, into the accuracy of the information. I have conducted an inquiry and find there is probable cause to believe that misconduct by Judge Jones has occurred. It does not appear that an informal resolution is feasible at this time. I am therefore entering this written order stating the reasons for identifying a complaint.

Judge Jones is in an intimate relationship with Elizabeth Freeman. It appears that they have cohabited (living in the same house or home) since approximately 2017. Elizabeth Freeman worked in Judge Jones's chambers as a law clerk. Subsequently, she was a partner in the Jackson Walker LLP law firm, it appears from at least 2017 until December 2022. She formed The

USTP (Sungard) Ex. 7
Page 56 of 85

Law Office of Liz Freeman, from which she has practiced since approximately December 2022.

Members of the Jackson Walker LLP firm have regularly appeared before Judge Jones since 2017. Judge Jones has approved attorneys' fees payable to that firm in which supporting documentation, that was submitted to Judge Jones and is part of public records, reflects that services by Elizabeth Freeman were performed in connection with a number of cases for which fees were sought and approved, though Elizabeth Freeman was not shown as counsel of record on the face of pleadings. The amounts billed for Elizabeth Freeman's services in those cases were substantial. The fees approved by Judge Jones for Jackson Walker LLP were likewise substantial. Judge Jones approved fees payable to Jackson Walker LLP in other cases in which Elizabeth Freeman does not appear to have provided any legal services or advice. However, at all times when Elizabeth Freeman was a Jackson Walker LLP partner, and regardless of whether she provided services or advice in a case, there is a reasonable probability that Elizabeth Freeman, as a partner in that firm, obtained a financial benefit from, or had a financial interest in, fees approved by Judge Jones. Judge Jones did not recuse in Jackson Walker LLP cases nor did he disclose his relationship with Elizabeth Freeman to the parties or their counsel in which Jackson Walker LLP appeared before him.

A motion to recuse Judge Jones was filed in a case in which Jackson Walker LLP was counsel of record. The basis of the motion was an allegation that Judge Jones was involved in a romantic relationship with Elizabeth Freeman. Judge Jones referred the motion to recuse to another bankruptcy judge but did not disclose to that judge the facts regarding his relationship with Ms. Freeman. On information and belief, the judge who ruled on the motion to recuse was unaware that Judge Jones was romantically involved with Ms. Freeman or that they were cohabiting. The motion to recuse was denied and appealed to a federal district court judge, and on information and

USTP (Sungard) Ex. 7
Page 57 of 85

belief, Judge Jones did not apprise that district court judge of the relationship
with Ms. Freeman, and that judge was also unaware of the facts regarding the
relationship. The appeal was denied. There is a reasonable probability that
if Judge Jones had disclosed the facts concerning his relationship with
Elizabeth Freeman to his fellow bankruptcy judge, to whom the motion to
recuse was referred, the motion to recuse would have been granted. Because
the motion was denied, and Judge Jones did not voluntarily recuse, Judge
Jones presided in the case and approved Jackson Walker LLP's attorneys'
fees. Court records appear to reflect that those fees included amounts for
services Elizabeth Freeman performed in connection with the case.

It appears that Judge Jones accepted an appointment from another
bankruptcy judge to act as mediator in a matter in which Ms. Freeman, as a
shareholder or partner in The Law Offices of Liz Freeman, was attorney of
record for a party and participated in the mediation; that Judge Jones did not
disclose his relationship with Ms. Freeman to the parties, to their counsel or
to the bankruptcy judge who appointed Judge Jones. Judge Jones conducted
the mediation to a conclusion.

In another matter over which Judge Jones presided, it appears that
Judge Jones approved a fee application submitted by The Law Offices of Liz
Freeman. It does not appear that any party or any other counsel in that
proceeding was apprised of Judge Jones' relationship with Ms. Freeman.

It further appears that Judge Jones recommended to other judges in
the Southern District of Texas that Ms. Freeman be appointed to the Lawyer
Admissions Committee for the Southern District of Texas Bankruptcy
Court. Judge Jones did not disclose his relationship with Ms. Freeman to
those considering the appointment.

Judge Jones and Elizabeth Freeman are not married to one another, to
the best of my knowledge, and do not hold themselves out as spouses.

USTP (Sungard) Ex. 7
Page 58 of 85

However, the Commentary to Canon 3C of the Code of Conduct for United State Judges provides "[r]ecusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." In this regard, *see also* Guide to Judiciary Policy, vol. 2, sec. 220, Advisory Opinion 58; *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1112-14 (5th Cir. 1980).

Based on the foregoing, there is probable cause to believe that Judge Jones has engaged in misconduct, as that term is defined or described in the code of conduct applicable to federal judges including bankruptcy judges. In particular:

1)    The Code of Conduct for United States Judges provides in Canon 2 that "a judge should avoid impropriety and the appearance of impropriety in all activities." All of the alleged conduct set forth above appears to constitute impropriety or at least the appearance of impropriety.

2)    Canon 2B provides in part that "[a] judge should not allow family, . . . or other relationships to influence judicial conduct or judgment."

3)    Canon 3C(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

4)    Canon 3C(1) provides a non-exclusive list of circumstances in which a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. Included in the list, in subsection 3C(1)(c), is an instance in which "the judge knows that the judge, . . . or the judge's spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding."

USTP (Sungard) Ex. 7
Page 59 of 85

4

5)     The non-inclusive list also includes, in Canon 3C(1)(d), instances in which

the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person is:

. . .

(ii) acting as a lawyer in the proceeding; [or]

(iii) known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. . . .

6)     The Commentary to Canon 3C(1)(d)(ii) provides:

The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. However, if "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii), the judge's disqualification is required.

7)     Canon 3B(3) provides "(3) [a] judge should exercise the power of appointment fairly and only on the basis of merit, avoiding unnecessary appointments, nepotism, and favoritism."

USTP (Sungard) Ex. 7
Page 60 of 85

Pursuant to Rule 11 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, Judge Jones is invited to respond either orally or in writing to this Complaint.

As a general matter, Rule 23 under Article IV of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, provides that the contents of a complaint against a judge are confidential. However, that Rule also provides that a chief judge "may disclose the existence of a proceeding under these Rules when necessary or appropriate to maintain public confidence in the judiciary's ability to redress misconduct or disability." I conclude that disclosure of the existence of this complaint is necessary and appropriate, particularly because many of the allegations regarding Judge Jones' conduct have been made public in the press and in the filing of a law suit against Judge Jones.

Pursuant to 28 U.S.C. § 351(b) and Rule 5, I hereby identify a complaint against United States Bankruptcy Judge David R. Jones. As provided by Rule 5, I will begin the review provided for in Rule 11 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

Date: October 13, 2023                    *Priscilla Richman*

                                          Priscilla Richman
                                          Chief Judge

RP-2017-284445
06/27/2017    ER    $20.00

**EXHIBIT 2**

## General Warranty Deed

**Date:**          June 26, 2017

**Grantor:**       **Quintessa Homes and Properties, L.P.,** a Texas limited partnership
                   Attn:   Fullerton Holdings Corporation, General Partner
                           Gautam V. Gopinath, President
                   2020 North Loop West, Suite 220
                   Houston, Harris County, Texas 77018-8103

**Grantee:**       **Elizabeth Carol Freeman**, a single woman, and **David R. Jones**, a single
                   man, **as joint tenants with rights of survivorship as set forth in a
                   Survivorship Agreement executed and recorded at the same time as this
                   deed**
                   6530 Rolla
                   Houston, Harris County, Texas 77055

**Consideration:** Good and valuable consideration, the receipt and sufficiency of which is
                   hereby acknowledged

**Property (including any improvements):**
      Lot Forty (40), in Block Fourteen (14), of **WESTVIEW TERRACE**, an addition in Harris
      County, Texas, according to the map or plat thereof recorded in Volume 27, Page 17, of the
      Map Records of Harris County, Texas

**Reservations from Conveyance:**    None

**Exceptions to Conveyance and Warranty:**
      Easements, rights-of-way, restrictions, conditions, covenants, prescriptive rights and all other
      encumbrances, other than liens and conveyances, that affect the property and are of record
      in Harris County, Texas, and ad valorem taxes for 2017.

      Grantor, for the Consideration and subject to the Reservations from Conveyance and the
Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together
with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold
it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and
Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee
and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or
to claim the same or any part thereof, except as to the Reservations from Conveyance and the
Exceptions to Conveyance and Warranty.

RP-2017-284445

171101341\General Warranty Deed                                                              Page 1

USTP (Sungard) Ex. 7
Page 62 of 85



When the context requires, singular nouns and pronouns include the plural.

**Quintessa Homes and Properties, L.P.,**
a Texas limited partnership

By its General Partner:

Fullerton Holdings Corporation,
a Texas corporation

By: _____
**Gautam V. Gopinath**, President

STATE OF TEXAS            §
                          §
COUNTY OF HARRIS          §

This instrument was acknowledged before me on the 26th day of June, 2017, by **Gautam V. Gopinath**, President of Fullerton Holdings Corporation, a Texas business corporation, as general partner of and on behalf of **Quintessa Homes and Properties, L.P.**, a Texas limited partnership.

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Veritas Title Company
2339 University Blvd., 3rd Floor
Houston TX 77005

RP-2017-284445

JOHN CLAY REEVES
NOTARY PUBLIC
STATE OF TEXAS
130643935
EXP 05-04-2020

17110134\General Warranty Deed

Page 2

USTP (Sungard) Ex. 7
Page 63 of 85



RP-2017-284445

```
RP-2017-284445
# Pages 3
06/27/2017 08:31 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees  $20.00
```

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

USTP (Sungard) Ex. 7
Page 64 of 85



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This January 30, 2024

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.



Case 4:23-cv-04787    Document 203-7    Filed 03/03/26 in TXSD    Page 66 of 85
Case 22-90018    Document 1043-2    Filed 17 TXSD on 02/29/24    Page 5 of 8
RP-2017-284446
06/27/2017    ER    $20.00

**Survivorship Agreement**

**Date:**          June 𝓤𝓬, 2017

**Owners:**      **Elizabeth Carol Freeman**, a single woman
                 6530 Rolla
                 Houston, Harris County, Texas 77055

                 **David R. Jones**, a single man
                 6530 Rolla
                 Houston, Harris County, Texas 77055

**Property (including any improvements):**
      **Lot Forty (40), in Block Fourteen (14), of WESTVIEW TERRACE**, an addition in Harris
      County, Texas, according to the map or plat thereof recorded in Volume 27, Page 17, of the
      Map Records of Harris County, Texas

         Owners own the Property jointly and for valuable consideration agree with each other as
follows:

   1.    If no severance occurs before the death of either Owner, then on the death of either
         Owner, the interest of the joint Owner who dies will survive to the surviving joint
         Owner.

   2.    Owners will after this date own the Property in the same manner as joint tenants with
         right of survivorship.

   3.    This agreement may be revoked, and the joint tenancy of Owners in the Property may
         be severed, only by a written instrument signed by all Owners.

   4.    This agreement is binding on Owners and Owners' respective heirs and successors.

<div style="text-align:left; margin-left:40%;">

_____

**Elizabeth Carol Freeman**

_____

**David R. Jones**

</div>

1711013411\Survivorship Agreement                                              Page 1

**RP-2017-284446**

USTP (Sungard) Ex. 7
Page 66 of 85



STATE OF TEXAS        §
                      §
COUNTY OF HARRIS      §

    This instrument was acknowledged before me on the 26th day of June, 2017, by **Elizabeth Carol Freeman** and **David R. Jones**.



Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Veritas Title Company
2339 University Blvd., 3rd Floor
Houston TX 77005

171101341\Survivorship Agreement                                    Page 2

RP-2017-284446

Page 2 of 3    Tuesday, January 30, 2024    County Clerk Harris County, Texas

Page 3 of 3    Tuesday, January 30, 2024

County Clerk Harris County, Texas

RP-2017-284446

RP-2017-284446

# Pages 3

06/27/2017 08:31 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

STAN STANART

COUNTY CLERK

Fees  $20.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

USTP (Sungard) Ex. 7
Page 68 of 85





I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

**Witness my official hand and seal of office**
**This January 30, 2024**

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.

USTP (Sungard) Ex. 7
Page 69 of 85



Lawsuit alleges undisclosed relationship involving federal judge that could cloud...

EXHIBIT

3

**News**Room

10/6/23 Bus. Insider 23:26:28

Business Insider, The
Copyright (c) 2023 The Business Insider

October 6, 2023

Lawsuit alleges undisclosed relationship involving federal judge that could cloud Corizon bankruptcy deal

Dakin Campbell,Nicole Einbinder

Oct 06, 2023

A complaint filed this week in federal court casts doubt over the neutrality of the judge who oversaw bankruptcy settlement talks involving Corizon, once the nation's largest prison health care provider.

David Jones, the chief bankruptcy judge for the Southern District of Texas, and Elizabeth Freeman, his former law clerk and a successful bankruptcy attorney, have secretly been in a romantic relationship for years, according to the complaint, which was obtained by Insider.

Corizon, a leading private prison health provider, pulled a Texas Two-Step, putting assets in YesCare and debts in Tehum.Tehum then filed for bankruptcy, potentially leaving hundreds of prisoners claiming malpractice with pennies on the dollar.A court document claims the judge mediating the settlement deal is in a romantic relationship with YesCare's attorney.

Last year, Corizon began a controversial maneuver known as a Texas Two-Step, splitting the company into two parts, one with most of its assets, known as YesCare, and one with most of its debts, known as Tehum, which then filed for bankruptcy. The Two Step was effectively designed to protect YesCare's assets, including public sector contracts worth more than $1 billion. According to a legal filing, Tehum director Isaac Lefkowitz said the Two Step can be used to "force plaintiffs into accepting lower settlements."

Freeman represented YesCare Corp. in the settlement talks. And the talks were overseen by Jones.

At least 350 malpractice suits against Corizon and tens of millions of dollars in unpaid invoices are now folded into that proposed deal, which awaits approval by the creditors. It offers prisoners who were injured or died under Corizon's care only $5,000 each.

While the complaint, submitted on Wednesday in the Southern District of Texas, is currently not available for public access on the docket, Insider obtained a copy from Michael Van Deelen, who filed the suit pro se. It alleges that Jones retaliated against him for "outing" the judge's allegedly inappropriate relationship in a previous legal filing.

Jones was appointed in May by US Bankruptcy Judge Christopher Lopez to act as a mediator in the Tehum case, to oversee talks between the company and its largest creditors. Freeman signed off on Jones' appointment as mediator, according to a stipulation and agreed order submitted in the bankruptcy docket. Neither Jones nor Freeman have disclosed their alleged relationship, according to Van Deelen's complaint.

... represents an Alabama prisoner, Tracy Grissom, who said she was subjected to negligent Corizon care,

© 2023 Thomson Reuters. No claim to original U.S. Government Works.                    2

**Lawsuit alleges undisclosed relationship involving federal judge that could cloud...**

called the claims "very disturbing" if true.

"It's very important that the mediator be neutral," Ozment told Insider. "If the allegations suggest that the mediator was not neutral, then that could potentially bear a lot of weight on whether the plan is reasonable."

Jones has denied any romantic relationship with Freeman, according to the complaint.

Jones, Freeman, and YesCare did not immediately respond to queries.

**A million-dollar home**

Van Deelen's case dates back to June 2020, when he filed a shareholder suit in Texas state court against employees of engineering company McDermott International, alleging fraud and a breach of duty. Six months earlier, McDermott had declared bankruptcy. Van Deelen says he and his wife lost their entire investment.

McDermott was represented in the case by law firm Jackson Walker, one of the country's top bankruptcy firms. Freeman clerked for Jones for six years, and she went on to become a partner at Jackson Walker, where she was one of the attorneys assigned to the McDermott bankruptcy. Van Deelen's case was ultimately "removed" to Jones' bankruptcy court, according to Van Deelen's complaint.

Freeman now runs a Houston-based law office, The Law Office of Liz Freeman, that specializes in bankruptcy litigation and reorganization. Van Deelen claims Freeman left her prestigious job at Jackson Walker because "the relationship between her and Defendant Jones was made generally known."

The document alleges that, while working the McDermott case, Freeman was Jones' "live-in girlfriend" in a home worth more than a million dollars. Exhibits attached to the complaint show that Jones and Freeman have since June 2017 been listed as co-owners of a four-bed, two-bath, 3,800 square foot home on a leafy street in Houston that was assessed at $1.07 million.

Meanwhile, two people, "probably Freeman's parents" moved into a $1.5 million home that Jones owns in Coldspring, an hour outside of Houston, according to another exhibit. The complaint alleges that Freeman had been living in that property since 2007, and that Jones purchased it in 2016.

Van Deelen said in the suit that he learned of the relationship after receiving an anonymous letter in March 2021, also attached as an exhibit. It describes alleged corruption that involved Jones, Jackson Walker, and Freeman "in a scheme in which corporate bankruptcy filers would hire Jackson Walker to represent them and then get favorable treatment from Defendant Jones because of his amorous relationship with Freeman."

Matt Cavenaugh, a partner at Jackson Walker, didn't immediately respond to a request for comment.

According to the complaint, the letter detailed the "corruption involving Judge David R. Jones" and his romantic relationship with Freeman.

"Instead of personally avoiding the McDermott bankruptcy case because of his relationship with Jackson Walker attorney Freeman," the complaint says, Jones "assigned the case to himself." He didn't disclose that he had a personal relationship with Freeman, according to the complaint.

Van Deelen submitted the letter in a motion seeking to get Jones removed from his case. Judge Marvin Isgur, another bankruptcy judge in the court, later denied it.

Van Deelen said that when he filed the complaint, he also hand delivered it to Jones in the Houston courthouse. After making his way through the maze of offices, Van Deelen said he turned a corner to find Jones eating a sandwich. When the judge saw who it was, "he turned white," Van Deelen said.

He said Jones accepted the envelope without saying a word.

Read the original article on Business Insider

© 2023 Thomson Reuters. No claim to original U.S. Government Works.                     3

Lawsuit alleges undisclosed relationship involving federal judge that could cloud...

The views expressed in any and all content distributed by Newstex and its re-distributors (collectively, the "Newstex Authoritative Content") are solely those of the respective author(s) and not necessarily the views of Newstex or its re-distributors. Stories from such authors are provided "AS IS," with no warranties, and confer no rights. The material and information provided in Newstex Authoritative Content are for general information only and should not, in any respect, be relied on as professional advice. Newstex Authoritative Content is not "read and approved" before it is posted. Accordingly, neither Newstex nor its re-distributors make any claims, promises or guarantees about the accuracy, completeness, or adequacy of the information contained therein or linked to from such content, nor do they take responsibility for any aspect of such content. The Newstex Authoritative Content shall be construed as author-based content and commentary. Accordingly, no warranties or other guarantees are offered as to the quality of the opinions, commentary or anything else appearing in such Newstex Authoritative Content. Newstex and its re-distributors expressly reserve the right to delete stories at its and their sole discretion.

**---- Index References ----**

Company: EMETALS LIMITED; JACKSON WALKER LLP

News Subject: (Bankruptcies (1BA08); Business Management (1BU42); Corporate Events (1CR05); Crime (1CR87); Criminal Law (1CR79); Fraud (1FR30); Government Litigation (1GO18); Legal (1LE33); Liability (1LI55); Social Issues (1SO05))

Region: (Americas (1AM92); North America (1NO39); Texas (1TE14); U.S. Southwest Region (1SO89); USA (1US73))

Language: EN

Other Indexing: (YesCare Corp.; Corizon; Jackson Walker)

Keywords: (News); (Finance); (Law); (insider-investigates); (corizon); (bankruptcy); (texas); (prisoner-abuse)

Word Count: 1172

**End of Document**                                © 2023 Thomson Reuters. No claim to original U.S. Government Works.



© 2023 Thomson Reuters. No claim to original U.S. Government Works.                                4

# Bankruptcy Judge Jones Named in a Lawsuit Over Romantic Relationship With Local Lawyer -- WSJ

Dow Jones Institutional News

October 7, 2023 Saturday 11:52 PM GMT

**EXHIBIT 4**

Copyright 2023 Factiva ®, from Dow Jones

All Rights Reserved

**FACTIVA**®

Copyright © 2023, Dow Jones & Company, Inc.

**DOW JONES** NEWSWIRES

**Length:** 736 words

**Byline:** By Alexander Gladstone and Andrew Scurria

## Body

A Texas bankruptcy judge has been in a romantic relationship with a lawyer whose former firm brought major chapter 11 cases to his court, a premier landing spot for corporate reorganizations.

Judge David R. Jones, who has overseen some of the nation's largest chapter 11 cases in the U.S. Bankruptcy Court in Houston, told The Wall Street Journal he is in a relationship and has shared a home for years with bankruptcy lawyer Elizabeth Freeman.

Freeman worked at Texas law firm Jackson Walker's bankruptcy practice group until December 2022, when she left to start her own law firm. Jackson Walker, a leading Texas bankruptcy firm, filed chapter 11 cases that were assigned to Judge Jones while she was still a partner there.

The relationship between the judge and the lawyer surfaced publicly earlier this week when an individual plaintiff sued Judge Jones over rulings that he made while presiding over the 2020 bankruptcy case of offshore-drilling company McDermott International. The law firm Kirkland & Ellis represented McDermott with Jackson Walker as local counsel.

USTP (Sungard) Ex. 7
Page 73 of 85
ael Van Deelen, was a shareholder in McDermott and has unsuccessfully pursued a variety of claims against the company, its advisers and the judge in bankruptcy court.

In his lawsuit, Van Deelen alleged that Jones and Freeman's romantic relationship amounted to a conflict of interest and tainted his rulings in the McDermott case.

The judge confirmed the relationship in an interview with the Journal and said that he and Freeman agreed years ago that she herself would never appear in his courtroom.

Jones said he believes the relationship didn't need to be disclosed because he and Freeman aren't married and there was no economic benefit to him from her legal work.

"I came to the conclusion that I had no duty to disclose," said the judge, who joined the Houston court in 2011. He added that he didn't want to fuel a perception that "if you were going to be appearing, you should go out and hire Jackson Walker."

Jackson Walker files bankruptcy cases on its own, but is better known as local counsel working alongside large bankruptcy firms that have made the Houston bankruptcy court a top venue in recent years. Jackson Walker, on its website, said it has been local counsel for more sizable companies in chapter 11 than any other firm since 2022 and often serves as co-counsel alongside Kirkland & Ellis, which is among the nation's most prolific filers of large corporate bankruptcies.

Jackson Walker declined to comment. Representatives for Kirkland & Ellis didn't respond to a request for comment.

A representative with the Judicial Council of the Fifth Circuit, which is responsible for reviewing complaints of judicial misconduct in Texas courts, didn't respond to a request for comment.

Jones hasn't formally responded to Van Deelen's claims in court and declined to comment on the merits of the lawsuit. He also said he was under no obligation to recuse himself from cases involving Jackson Walker or Freeman's new solo firm, the Law Office of Liz Freeman.

"If for any reason I thought that I should have done something more, I would have done it," the judge said. "I'm certainly not afraid of my relationship, I just simply think I'm entitled to a certain degree of privacy. I and I alone made the call that so long as she never appeared in front of me, that was sufficient."

Jones said that he would have had a recusal obligation for cases involving Freeman's firm only if they had been married and had communal property. Judge Jones owns the home in Houston which he and Freeman reside in, and pays utilities and other expenses on the home.

Adam Levitin, a professor at Georgetown University Law Center who focuses on bankruptcy and commercial law, said that if Judge Jones was in a romantic relationship with a lawyer from Jackson Walker, he shouldn't have heard any bankruptcy cases in which Jackson Walker represented the company.

"It creates an appearance of impropriety and partiality," Levitin said. "A lawyer's conflicts are imputed to all other attorneys at the firm. She was a partner of the firm. It creates the possibility that a litigant feels that they lost not because of the merits of a case, but because of the [judge has."

USTP (Sungard) Ex. 7
Page 74 of 85

Write to Alexander Gladstone at *alexander.gladstone@wsj.com* and Andrew Scurria at *Andrew.Scurria@wsj.com*

(END) Dow Jones Newswires

October 07, 2023 19:52 ET (23:52 GMT)

## Notes

PUBLISHER: Dow Jones & Company, Inc.

**Load-Date:** October 8, 2023

**End of Document**

UPDATE 2-Top US bankruptcy judge, under ethics review, steps back from major cases



NewsRoom

10/13/23 Reuters News 20:46:05

Reuters News
Copyright (c) 2023 Thomson Reuters

October 13, 2023

UPDATE 2-Top US bankruptcy judge, under ethics review, steps back from major cases

Dietrich Knauth

NEW YORK, Oct 13 (Reuters)

(Adds details on misconduct complaint in paragraphs 5-6)

By Dietrich Knauth

NEW YORK, Oct 13 (Reuters) - U.S. Bankruptcy Judge David Jones in Houston, who oversees more major Chapter 11 cases than any other U.S. judge, said on Friday he is facing an ethics review over a previously undisclosed romantic relationship and is stepping down from handling large cases.

Jones said over the weekend he has been in a years-long romantic relationship and shared a home with bankruptcy attorney Elizabeth Freeman, who had been a law clerk for him. Until recently, Freeman worked at Jackson Walker, a local law firm that filed many cases in Jones' Houston courthouse.

Jones said at a court hearing in the bankruptcy case of drilling company Arethusa Offshore that he is under investigation from the New Orleans-based 5th U.S. Circuit Court of Appeals and that all his bankruptcy cases involving large companies would be assigned to other judges during the investigation.

"I hope that you can appreciate that the integrity of the process is simply more important than a single case and you have my genuine apologies for the inconvenience that I am causing," Jones told the company's attorneys.

Chief 5th U.S. Circuit Judge Priscilla Richman, in a misconduct complaint made public later on Friday, said there was probable cause to believe Jones violated the codes of conduct that govern judges by, among other things, failing to avoid an appearance of impropriety.

Richman said that while Jones and Freeman were not married, the factors that apply to recusing from a case involving a judge's spouse apply equally when a judge maintains both a household and an intimate relationship with someone they are not married to.

Yet, she wrote, Jones never recused himself from cases involving Jackson Walker or disclosed his relationship with Freeman. The judge approved attorneys' fees sought by Jackson Walker for work on bankruptcy matters in which billing records showed Freeman performed "substantial" services, Richman said.

The Houston bankruptcy court on Friday also updated its case assignment rules to remove Jones from a two-judge panel that oversees all complex cases involving more than $200 million in debt.

USTP (Sungard) Ex. 7
Page 76 of 85

© 2023 Thomson Reuters. No claim to original U.S. Government Works.                2

UPDATE 2-Top US bankruptcy judge, under ethics review, steps back from major cases

Legal ethics experts have said Jones should have disclosed the relationship or recused himself from cases involving Jackson Walker.

A spokesman for Jackson Walker said the firm consulted outside ethics counsel after learning about the romantic relationship in March 2021.

"From the time we first learned of this allegation Ms. Freeman was instructed not to work or bill on any cases before Judge Jones," Jackson Walker spokesman Jim Wilkinson said. "We are confident that we acted responsibly."

Freeman, through her attorney, declined to comment.

Jones has been the busiest bankruptcy judge in the U.S. since January 2016, overseeing 11% of all Chapter 11 bankruptcies involving more than $100 million in liabilities, according to data from Debtwire, which provides research and intelligence on credit markets. He recently presided over the bankruptcies of JC Penney, Neiman Marcus, Party City and Chesapeake Energy, among many others.

The two-judge panel for complex cases is an outlier among U.S. bankruptcy courts, which typically assign cases randomly among all of their judges.

Bankruptcy Judge Marvin Isgur, who stepped down from the panel a year ago, will replace Jones, and all of Jones' complex cases will be randomly assigned to Isgur or the panel's other member, U.S. Bankruptcy Judge Christopher Lopez.

(Reporting by Dietrich Knauth; Additional reporting by Nate Raymond; Editing by Alexia Garamfalvi, Leslie Adler, Rod Nickel and William Mallard) ((Dietrich.Knauth@thomsonreuters.com;))

---- Index References ----

Company: ARETHUSA OFFSHORE-2 DRILLING; THE NEIMAN MARCUS GROUP LLC; PARTY CITY HOLDINGS INC.; CHESAPEAKE ENERGY CORPORATION; JACKSON WALKER LLP; OLD COPPER COMPANY, INC.

News Subject: (Bankruptcies (1BA08); Business Management (1BU42); Corporate Events (1CR05); Government Litigation (1GO18); Judicial Cases & Rulings (1JU36); Legal (1LE33); Judicial Cases & Rulings (1JU36); Top World News (1WO62); Corporate Bonds (1XO30); Debt Restructuring (1RE45); Corporate Events (1CR05); Legal (1LE33); Corporate Governance (1XO27); Bankruptcies (1BA08))

Industry: (Bonds (1BO97); Fixed Income Investments (1FI12))

Region: (Americas (1AM92); New York (1NE72); North America (1NO39); Texas (1TE14); U.S. Mid-Atlantic Region (1MI18); U.S. Southwest Region (1SO89); USA (1US73); Texas (1TE14); USA (1US73); Americas (1AM92))

Language: EN

Other Indexing: (Arethusa Offshore; Neiman Marcus; Party City; Chesapeake Energy; Jackson Walker; JC Penney)

Keywords: BANKRUPTCY; JONES; ETHICS; 2,; PIX; Bankruptcy; United States bankruptcy law; Judicial disqualification; United States federal judge; United States courts of appeals; United States bankruptcy courta1312cat:f

Word Count: 592

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**UPDATE 2-Top US bankruptcy judge, under ethics review, steps back from major cases**

NewsRoom

© 2023 Thomson Reuters. No claim to original U.S. Government Works.                4



USTP (Sungard) Ex. 7
Page 79 of 85

**EXHIBIT 6**

**Exhibit 6A**
**Judge Jones**
**Jackson Walker Fee Order Entered**
**Open Cases**

| Debtor Name | Case Number | Petition Date | Confirmation Status | Position | Date of Retention App | Retention App ECF | Fee App Order ECF | Total Fees Awarded | Total Expenses | Ms. Freeman Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| Westmoreland Coal Company | 18-35672 | 10/9/2018 | Confirmed | Debtor Local Counsel | 11/8/2018 | 376 | 2249 | $676,806.00 | $87,114.29 | $129,629.50 |
| J.C. Penney Company, Inc. | 20-20182 | 5/15/2020 | Confirmed | Debtor Local Counsel | 6/11/2020 | 685 | 2874 | $1,087,263.00 | $14,219.21 | $286,159.00 |
| Whiting Petroleum Corporation | 20-32021 | 4/1/2020 | Confirmed | Debtor Local Counsel | 4/17/2020 | 173 | 840 | $695,091.50 | $3,541.94 | $36,115.00 |
| Neiman Marcus Group LTD, LLC | 20-32519 | 5/7/2020 | Confirmed | Debtor Local Counsel | 6/3/2020 | 750 | 2147 | $380,573.50 | $6,103.70 | $49,910.00 |
| Stage Stores LLC | 20-32564 | 5/10/2020 | Confirmed | Debtor Local Counsel | 6/4/2020 | 385 | 983 | $182,655.50 | $2,090.65 | $29,295.00 |
| Chesapeake Energy Corporation | 20-33233 | 6/28/2020 | Confirmed | Debtor Local Counsel | 7/16/2020 | 370 | 3509 | $912,742.00 | $21,275.94 | $192,258.00 |
| Covia Holdings Corporation | 20-33295 | 6/29/2020 | Confirmed | Debtor Conflicts Counsel | 7/21/2020 | 195 | 1304 | $325,181.00 | $6,200.85 | $51,021.00 |
| Bouchard Transportation Co, Inc. | 20-34682 | 9/28/2020 | Confirmed | Debtor Local Counsel | 10/28/2020 | 173 | 20-34758 at 63 | $436,790.00 | $5,371.86 | $23,380.00 |
| Mule Sky LLC (Gulfport Energy) | 20-35561 | 11/13/2020 | Confirmed | Debtor Conflicts Counsel | 12/11/2020 | 20-35562 at 390 | 212 | $765,173.50 | $7,334.20 | $54,525.50 |
| Seadrill Partners LLC | 20-35740 | 12/1/2020 | Confirmed | Debtor Local Counsel | 12/23/2020 | 110 | 690 | $286,885.00 | $1,617.25 | $28,223.00 |
| Seadrill Limited | 21-30427 | 2/10/2021 | Confirmed | Debtor Local Counsel | 3/8/2021 | 250 | 1340 | $501,242.00 | $2,123.05 | $5,594.50 |
| Brilliant Energy, LLC | 21-30936 | 3/16/2021 | No Plan | Other | 4/13/2021 | 68 | 241 | $186,363.50 | $2,246.63 | $0.00 |
| Katerra Inc. | 21-31861 | 6/6/2021 | Confirmed | Debtor Local Counsel | 6/29/2021 | 289 | 1639 | $858,653.01 | $3,934.72 | $0.00 |

| Debtor Name | Case Number | Petition Date | Confirmation Status | Position | Date of Retention App | Retention App ECF | Fee App Order ECF | Total Fees Awarded | Total Expenses | Ms. Freeman Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| ...nergy Services, Inc. | 21-90002 | 8/27/2021 | Confirmed | Debtor Lead Counsel | 12/13/2021 | 809 | 1511 | $1,543,432.34 | $3,082.84 | $0.00 |
| ...trike LLC | 21-90054 | 12/6/2021 | Confirmed | Debtor Local Counsel | 1/6/2022 | 363 | 1248 | $875,026.00 | $12,331.41 | $0.00 |
| 4E Brands Northamerica LLC | 22-50009 | 2/22/2022 | Confirmed | Debtor Lead Counsel | 3/24/2022 | 72 | 427-1 | $859,425.50 | $7,300.81 | $0.00 |
| Sungard AS New Holdings | 22-90018 | 4/11/2022 | Confirmed | Debtor Conflicts Counsel | 5/10/2022 | 211 | 897 | $414,495.00 | $5,966.56 | $0.00 |
| | | | | | | | Totals | $10,987,798.35 | $191,855.91 | $886,110.50 |

USTP (Sungard) Ex. 7
Page 80 of 85

**Exhibit 6B**
**Judge Jones**
**Jackson Walker Fee Order Entered**
**Closed Cases**

| Debtor Name | Case Number | Petition Date | Confirmation Status | Position | Date of Retention App | Retention App ECF | Fee App Order ECF | Total Fees Awarded | Total Expenses Awarded | Ms. Freeman Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| Jones Energy Inc. | 19-32112 | 4/14/2019 | Confirmed | Debtor Local Counsel | 4/23/2019 | 125 | 251 | $92,854.00 | $20,915.86 | $10,582.00 |
| McDermott International Inc. | 20-30336 | 1/21/2020 | Confirmed | Debtor Local Counsel | 2/19/2020 | 424 | 1021 | $391,655.00 | $21,154.16 | $114,002.50 |
| Sheridan Holding Company I, LLC | 20-31884 | 3/23/2020 | Confirmed | Debtor Local Counsel | 4/2/2020 | 130 | 213 | $11,779.50 | $12,025.30 | $3,565.00 |
| Hornbeck Offshore Services, Inc. | 20-32679 | 5/19/2020 | Confirmed | Debtor Conflicts Counsel | 6/1/2020 | 132 | 283 | $61,428.00 | $798.75 | $4,727.50 |
| Denbury Resources Inc. | 20-33801 | 7/30/2020 | Confirmed | Debtor Local Counsel | 8/28/2020 | 238 | 384 & 442 | $124,321.50 | $890.07 | $37,122.50 |
| iQor Holdings Inc. | 20-34500 | 9/10/2020 | Confirmed | Debtor Local Counsel | 9/28/2020 | 154 | 252 | $63,842.00 | $3,857.50 | $1,670.00 |
| Volusion, LLC | 20-50082 | 7/27/2020 | Confirmed | Debtor Lead Counsel | 8/26/2020 | 74 | 172 | $339,428.00 | $3,025.97 | $62,897.00 |
| Seadrill New Finance Limited | 22-90001 | 1/11/2022 | Confirmed | Debtor Local Counsel | 2/8/2022 | 94 | 121 | $27,286.00 | $21,067.75 | $0.00 |
| LaForta - Gestao e Investmentos | 22-90126 | 6/16/2022 | No Plan | Debtor Lead Counsel | 7/15/2022 | 67 | 298 | $505,907.50 | $7,946.11 | $0.00 |
| | | | | | | | **Totals** | **$1,618,501.50** | **$91,681.47** | **$234,566.50** |

USTP (Sungard) Ex. 7
Page 81 of 85

**Exhibit 6C**
**Jones Mediation Cases**
**Jackson Walker Fees/Expenses**
**Open Cases**

| Debtor Name | Case Number | Petition Date | Judge | Confirmation Status | Position | Date of Retention App | Retention App ECF | Fee App Status | Fee App Order ECF | Total Fees Awarded | Total Expenses Awarded | Ms. Freeman Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ...ez Energy Coporation | 19-34508 | 8/11/2019 | Isgur | Confirmed | Debtor Local Counsel | 10/1/2019 | 269 | Final Approved | 1502 | $1,905,683.35 | $98,468.48 | $531,384.50 |
| GWG Holdings Inc. | 22-90032 | 4/20/2022 | Isgur | Confirmed | Debtor Local Counsel | 5/19/2022 | 267 | Final Pending | | $801,232.50 | $59,972.91 | $228,572.81 |
| HONX, Inc. | 22-90035 | 4/28/2022 | Isgur | Plan Pending | Debtor Local Counsel | 5/31/2022 | 128 | Interim Filed | | $393,782.00 | $7,681.61 | $71,790.00 |
| Altera Infrastructure LP | 22-90130 | 8/12/2022 | Isgur | Confirmed | Debtor Local Counsel | 9/12/2022 | 228 | Final Approved | 22-90129 at 20 | $357,209.50 | $6,739.23 | $53,445.00 |
| IEH Auto Parts Holding LLC | 23-90054 | 1/31/2023 | Lopez | Confirmed | Debtor Lead Counsel | 3/2/2023 | 181 | Final Pending | | | | |
| IEH Auto Parts Holding LLC | 23-90054 | 1/31/2023 | Lopez | Confirmed | Debtor Conflicts Counsel | 3/2/2023 | 183 | None Filed | | | | |
| MLCJR LLC | 23-90324 | 5/14/2023 | Lopez | No Plan | Debtor Conflicts Counsel | 6/13/2023 | 433 | Interim Filed | | | | |
| | | | | | | | | **Totals** | | $3,457,907.35 | $172,862.23 | $885,192.31 |

4

Case 22-90018   Document 1043-6   Filed in TXSB on 02/29/24   Page 5 of 5

**Exhibit 6D**
**Jones Mediation Cases**
**Jackson Walker Fees/Expenses**
**Closed Cases**

| or Name | Case Number | Petition Date | Judge | Confirmation Status | Position | Date of Retention App | Retention App ECF | Fee App Status | Fee App Order ECF | Total Fees Awarded | Total Expenses Awarded | Ms. Freeman Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| sources, Inc. | 18-30155 | 1/15/2018 | Isgur | Confirmed | UCC Local Counsel | 2/26/2018 | 382 | Final Approved | 122 | $1,820,436.59 | $68,949.97 | $185,702.50 |
| Tailored Brands, Inc. | 20-33900 | 8/2/2020 | Isgur | Confirmed | Debtor Local Counsel | 9/1/2020 | 496 | Final Approved | 1404 | $253,420.00 | $1,482.05 | $57,345.00 |
| | | | | | | | | | Total | $2,073,856.59 | $70,432.02 | $243,047.50 |

USTP (Sungard) Ex. 7
Page 83 of 85

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SUNGARD AS NEW HOLDINGS, LLC,** *et al.*[1] | **Case No. 22-90018** |
| **DEBTORS.** | **Jointly Administered** |

**ORDER ON UNITED STATES TRUSTEE'S AMENDED MOTION FOR
(1) RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
60(B)(6) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024 APPROVING THE
RETENTION AND COMPENSATION APPLICATIONS OF JACKSON WALKER LLP, (2)
SANCTIONS, AND (3) RELATED RELIEF**

CAME ON for consideration the *United States Trustee's Amended Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(B)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* (the "Motion"), and after consideration of the Motion and the Court being fully advised of the premises, it is hereby

**ORDERED** that

1.     The order approving the retention of Jackson Walker is vacated.

2.     All orders approving Jackson Walker's interim and/or final application(s) for compensation are vacated.

3.     Jackson Walker is disqualified as an estate professional in this case.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LP (6195); and Sungard Availability Services, Ltd. (4711). The location of the Debtors' service address for purposes of these chapter 11 cases is: 565 E Swedesford Road, Suite 320, Wayne, PA 19087.

4.    Within 14 days of entry of this Order, Jackson Walker shall return all fees and expenses previously received in connection with this case.

USTP (Sungard) Ex. 7
Page 85 of 85