IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm,<br><br>Reorganized Debtors. | Civil Action No. 4:23-cv-04787 |

**MOTION FOR ORDER APPROVING COMPROMISE AND
SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019**

TO THE HONORABLE ALIA MOSES,
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Sungard AS New Holdings, LLC, the wind-down debtor (together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC,[1] the "**Wind-Down Debtors**"), by and through Drivetrain LLC (the "**Plan Administrator**"), the Plan Administrator appointed pursuant to the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS New Holdings, LLC and Its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**"), and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "**Motion**"), and in support thereof respectfully show the Court as follows:

---

[1] The Sungard Debtors/Wind Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, LLC; Sungard Availability Services, LP; and Sungard Availability Services, Ltd.

USTP (Sungard) Ex. 9
Page 1 of 12

1

## I. RELIEF REQUESTED

1. By this Motion, and in accordance with Bankruptcy Rule 9019(a),[2] the Wind-Down Debtors request that the Court enter an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between Jackson Walker LLP ("**JW**"), the Wind-Down Debtors and the Plan Administrator that would resolve any and all claims and causes of action of any kind held by the Wind-Down Debtors, their estates, and/or the Plan Administrator, in its capacity as such, against JW arising out of or related to *In re Sungard AS New Holdings LLC, et al.,* Chapter 11 Case No. 22-90018, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Chapter 11 Case"), *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "**Misc. Proceeding**"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the mutual releases set forth in the Settlement Agreement, JW shall pay the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan (defined below) in the Chapter 11 Case.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Administrator confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion

---

[2] Article XII.A. of the Plan (defined below) provides that the Wind-Down Debtors or the Plan Administrator may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Nonetheless, the Wind-Down Debtors file this Motion under Bankruptcy Rule 9019 and seek approval from this Court to provide transparency to the Court and parties-in-interest with regard to their settlement with JW in the Chapter 11 Case.

to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### III.  BACKGROUND

**A.  Chapter 11 Case**

4. On April 11, 2022 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). The Chapter 11 Case was before former Judge Jones.

5. On May 10, 2022, the Debtors filed their *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors* [Dkt. No. 211]. JW's employment application was approved without objection by former Judge Jones on June 6, 2022 [Dkt. No. 291].

6. On June 3, 2022, the Debtors filed their *Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 257] (the "**Original Plan and Disclosure Statement**"). On September 2, 2022, the Debtors filed their *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 627] (the "**First Amended Plan and Disclosure Statement**").

7. On August 17, 2022, JW filed *Jackson Walker LLP's First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from April 11, 2022 Through July 31, 2022* [Dkt. No. 570] (the "**First Interim Fee Application**").

8. On September 7, 2022, the *Order (I) Conditionally Approving the Disclosure Statement; (II) Approving the Combined Hearing Notice; (III) Approving the Solicitation and Notice Procedures; (IV) Approving the Form of Ballot and Notices; (V) Approving Certain Dates and Deadlines in Connection with the solicitation and Confirmation of the Plan; and (VI) Scheduling a Combined Hearing on (A) Final Approval of the Disclosure Statement and (B) Confirmation,* was entered [Dkt. No. 635].

9. Former Judge Jones approved, without objection, JW's First Interim Fee Application on September 12, 2022 [Dkt. No. 649].

10. On October 13, 2022, the Debtors filed their *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 734] (the "**Second Amended Plan and Disclosure Statement**", together with the Original Plan and Disclosure Statement and the First Amended Plan and Disclosure Statement, the "**Plan and Disclosure Statement**" or "**Plan**").

11. On October 17, 2022, the Court entered the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**").

12. On November 9, 2022, the effective date of the Plan occurred (the "**Effective Date**") and the Debtors filed the *Notice of Occurrence of the Effective Date* [Dkt. No. 835].

13. On November 29, 2022, JW filed *Jackson Walker LLP's Second Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from August 1, 2022 Through November 9, 2022* [Dkt. No. 850] (the "**Second Interim Fee Application**"). Also on November 29, 2022, JW filed *Jackson Walker LLP's Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from April 11, 2022 Through November 9, 2022* (the "**Final Fee Application**") [Dkt. No. 851]. The Final Fee Application sought approval of fees aggregating $414,495.

14. Former Judge Jones approved, without objection, JW's Final Fee Application [Dkt No. 899] on December 30, 2022.

B. **The Miscellaneous Proceeding**

15. On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 1026] (the "**60(b) Motion**").

16. On December 9, 2023, an Order was entered commencing the Misc. Proceeding in the Bankruptcy Court.

17. On February 29, 2024, the U.S. Trustee filed an amended Rule 60(b)(6) motion in the Chapter 11 Case [Dkt. No. 1043] (the "**Amended 60(b) Motion**", together with the 60(b) Motion, the "**UST's Motions**"). The basis of the UST's Motions was the alleged undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

18. On April 15, 2024, the Plan Administrator, on behalf of itself and the Wind-Down Debtors, filed a *Notice of Standing and/or Indispensable Party Status* [Dkt. No. 1053] in the Chapter 11 Cases.

19. On December 16, 2024, the Wind-Down Debtors filed the *Wind-Down Debtors Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgement Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [Dkt. No. 1075] (the "**Joinder**").

20. On May 22, 2024, JW filed its response in opposition to the UST's Motions [Dkt. No. 1057].

21. On July 1, 2024, the U.S. Trustee filed his reply [Dkt. No. 1062].

22. On August 12, 2024, JW filed its sur-reply [Dkt. No. 1065].

23. JW disputes the merits of the UST's Motion and the Joinder. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case. The Wind-Down Debtors and the Plan Administrator vigorously disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW in the Chapter 11 Case.

24. The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying on the UST's office to lead the litigation. However, when trial appeared inevitable, counsel for the Plan Administrator reviewed more than a thousand documents, attended numerous hearings, meetings, and settlement conferences, and participated in regular calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases.

25. The Plan Administrator did not participate in the mediation that occurred among certain parties in March of 2025 but instead sought to resolve the issues through a series of communications directly with JW and its counsel. As a result thereof, JW and the Plan Administrator reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

### IV. SUMMARY OF SETTLEMENT AGREEMENT

26. The Settlement Agreement is straightforward. Within 5 business days of an order granting this Motion and such order becoming a Final Order (as defined therein), JW will pay to the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan in the Chapter 11 Case.

27. In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases. The Plan Administrator, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date of the Settlement Agreement, including claims and causes of action arising from or relating to the Chapter 11 Case, the UST's Motion, the Joinder, and the relationship between Elizabeth Freeman and former Judge Jones. JW, as more fully set forth in the Settlement Agreement, will release the Plan Administrator and the Wind-Down Debtors from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of action arising from or related to the Chapter 11 Case, the U.S. Trustee's motion, the Plan Administrator's Joinder, and the relationship between Elizabeth Freeman and former Judge Jones.

## V.     ARGUMENTS AND AUTHORITIES

28.     Rule 9019(a) states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

29.     "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id*. at 462. Those factors are:

   i.   The balance between the litigation's possibility of success and the settlement's future benefits;

   ii.  The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

   iii. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

   iv.  Whether other parties in interest support the settlement;

   v.   The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

   vi.  The nature and breadth of releases to be obtained by [the settling party]; and

   vii. The extent to which the settlement is the product of arm's length bargaining.

USTP (Sungard) Ex. 9
Page 8 of 12

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

30. The Plan Administrator contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Administrator and Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense, and uncertainty of litigation.

**A. The balance between the litigation's possibility of success and the settlement's future benefits**

31. The Plan Administrator contends that the possibility of success in the litigation against JW is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Administrator will realize through litigation when balanced against the cost of continued litigation. The Settlement Amount provides a significant recovery for the Wind-Down Debtors for payment to creditors in accordance with the confirmed Plan and eliminates the risk of continuing to litigate the claims against JW.

32. The Plan Administrator submits there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Wind-Down Debtors. However, the trial date to vacate the Final Fee Application is currently unscheduled. Once complete, and assuming the Plan Administrator wins, appeals would likely follow further extending the litigation timeline.

33. The Settlement Agreement and Settlement Amount provides the Liquidation Trust with more than 93% of the fees awarded to JW, upon an order approving the Settlement Amount

becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan. Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case to maximize any recovery for its constituents.

### B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment

34. As discussed above, there is a high likelihood that litigation will be complex and protracted leading to appeals and further litigation. As the Court acknowledged at the hearing on May 22, 2025, it's not clear that the court would order 100% disgorgement from JW in light of the actions of former Judge Jones and Ms. Freeman. If a finding was made that former Judge Jones and Ms. Freemen should be held at least partially responsible, it is possible that the Wind-Down Debtors would recover less than 100% of the fees and could be left to litigate with former Judge Jones and Ms. Freeman for any remaining unpaid amounts – leading again to further litigation and costs. The Plan Administrator has retained counsel with respect to the UST's Motions and will continue to need to retain and pay counsel with respect to any further proceedings. A settlement now brings finality and eliminates any meaningful litigation and collection risk, and ends future fees and costs being incurred. However, that risk could increase with the passage of time and continued litigation.

### C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement

35. The Plan Administrator is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the incurrence of further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery for the benefit of the creditors. This is also a substantial step in bringing the administration of this matter to an end.

### D. Whether other parties in interest support the settlement

36. The Plan Administrator has communicated the terms of the Settlement Agreement to the DIP Lenders (as the term is defined in the Plan), who would be the recipients of any distributions. The DIP Lenders support the settlement.

### E. The nature and breadth of releases to be obtained by JW and the Plan Administrator

37. The Settlement Agreement contains customary broad mutual releases among JW and the Plan Administrator on behalf of the Wind-Down Debtors. This is to bring finality to the claims and disputes between the Plan Administrator and JW.

### F. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations

38. Counsel for the Plan Administrator and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates. The Settlement Agreement was entered into after 20 months of litigation and after the parties exchanged multiple settlement proposals. The settlement was reached following extensive arms-length negotiations.

39. The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Administrator believes it has achieved a resolution that maximizes value for the Wind-Down Debtors while minimizing the cost and uncertainty of litigation. Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the estates and all concerned parties.

WHEREFORE, the Plan Administrator respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

DATED: July 29, 2025

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*Counsel to the Wind-Down Debtors in the Sungard Chapter 11 Cases*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, a true and correct copy of the foregoing Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Daniel F. X. Geoghan*
Daniel F. X. Geoghan