In the Matter of:

**Professional Fee Matters Concerning the Jackson Walker Law Firm**

**Case No. 4:23-cv-04787**

---

**Witness:**

**Timothy Daileader**

*February 10, 2026*

---



**SALOMON**

2201 Old Court Road
Baltimore, Maryland 21208

410-821-4888
www.crcsalomon.com
crc-ustp@crcsalomon.com

USTP (Sungard) Ex. 13
Page 1 of 208

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF TEXAS

3                      HOUSTON DIVISION

4

5    - - - - - - - - - - - - - - - -

6    IN RE:                      )  CASE NO. 4:23-cv-04787

7    IN RE PROFESSIONAL FEE MATTERS  )  CHIEF U.S. DISTRICT JUDGE

8    CONCERNING THE JACKSON WALKER  )  ALIA MOSES

9    LAW FIRM                    )  U.S. DISTRICT JUDGE

10                               )

11   - - - - - - - - - - - - - - - -

12

13

14

15                 REMOTE DEPOSITION OF

16           TIMOTHY DAILEADER OF DRIVETRAIN, LLC,

17           PLAN ADMINISTRATOR FOR THE SUNGARD AS

18            NEW HOLDINGS, LLC WIND-DOWN DEBTORS

19               TUESDAY, FEBRUARY 10, 2026

20

21

22          CRC SALOMON

23          BY:  ELIZABETH CANTANDO, CER

24          2201 OLD COURT ROAD, BALTIMORE, MARYLAND 21208

25          410-821-4888

USTP (Sungard) Ex. 13
Page 2 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 2

1

2

3

4

5

6

7

8              Remote deposition of TIMOTHY DAILEADER of Drivetrain

9    LLC, Plan Administrator for the Sungard AS New Holdings, LLC

10   Wind-Down Debtors, taken on behalf of the United States Trustee

11   via videoconference, commencing at 9:00 a.m. Central Standard

12   Time, Tuesday, February 10, 2026, before Elizabeth Cantando,

13   CER.

14

15

16

17

18

19

20

21

22

23

24

25

USTP (Sungard) Ex. 13
Page 3 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889     2201 Old Court Road, Baltimore MD 21208     www.crcsalomon.com

1    APPEARANCES OF COUNSEL (VIA VIDEOCONFERENCE)

2    FOR THE UNITED STATES TRUSTEE:

3        OFFICE OF THE UNITED STATES TRUSTEE

4        JOEL CHARBONEAU, TRIAL ATTORNEY

5        VIANEY GARZA, TRIAL ATTORNEY

6        BRIAN THILL, TRIAL ATTORNEY

7        LAURA STEELE, TRIAL ATTORNEY

8        SPENCER EZELL, TRIAL ATTORNEY

9        Joel.Charboneau@usdoj.gov

10       Vianey.Garza@usdoj.gov

11       Brian.P.Thill@usdoj.gov

12       Laura.Steele@usdoj.gov

13       Spencer.Ezell@usdoj.gov

14

15   FOR THE WITNESS; DRIVETRAIN LLC, PLAN ADMINISTRATOR FOR THE

16   SUNGARD AS NEW HOLDINGS, LLC WIND-DOWN DEBTORS; AND STEVEN

17   BALASIANO, PLAN ADMINISTRATOR FOR THE WIND-DOWN DEBTORS IN THE

18   JOINTLY ADMINISTERED CASES OF STAGE STORES, INC.:

19       COLE SCHOTZ, P.C.

20       DAN GEOGHAN, ATTORNEY AT LAW

21       SARAH CARNES, ATTORNEY AT LAW

22       DGeoghan@coleschotz.com

23       SCarnes@coleschotz.com

24

25

USTP (Sungard) Ex. 13
Page 4 of 208

```
 1    APPEARANCES OF COUNSEL (CONT'D)

 2    FOR PATRICK BARTELS, TRUSTEE FOR THE STRIKE LIQUIDATING TRUST;

 3    AND PATRICK BARTELS, PLAN AGENT FOR THE WIND-DOWN DEBTORS IN

 4    JOINTLY ADMINISTERED CASES OF IN RE AUTO PLUS AUTO SALES LLC:

 5         MCCLOSKEY ROBERSON WOOLLEY, PLLC

 6         CARISSA BREWSTER, ATTORNEY AT LAW

 7         CBrewster@mrwpllc.com

 8

 9    FOR DAVID DUNN, PLAN AGENT AND SOLE MANAGER, SOLE DIRECTOR,

10    SOLE OFFICER AND SOLE REPRESENTATIVE OF 4E BRANDS NORTHAMERICA

11    LLC; AND DAVID DUNN, LIQUIDATION TRUSTEE FOR THE BASIC ENERGY

12    LIQUIDATION TRUST:

13         BONDS ELLIS EPPICH SCHAFER JONES LLP

14         AARON GUERRERO, ATTORNEY AT LAW

15         Aaron.Guerrero@bondsellis.com

16

17    FOR JACKSON WALKER LLP:

18         NORTON ROSE FULBRIGHT

19         JASON BOLAND, ATTORNEY AT LAW

20         JULIE HARRISON, ATTORNEY AT LAW

21         Jason.Boland@nortonrosefulbright.com

22         Julie.Harrison@nortonrosefulbright.com

23

24

25
```

USTP (Sungard) Ex. 13
Page 5 of 208

1    APPEARANCES OF COUNSEL (CONT'D)

2    FOR JACKSON WALKER LLP (CONT'D):

3         RUSTY HARDIN & ASSOCIATES, LLP

4         EMILY SMITH, ATTORNEY AT LAW

5         Email:  ESmith@rustyhardin.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

USTP (Sungard) Ex. 13
Page 6 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 6

```
 1                            INDEX

 2   WITNESS                                           PAGE

 3   TIMOTHY DAILEADER

 4        Examination by MR. CHARBONEAU                 9

 5

 6

 7

 8

 9                         ---oOo---

10

11        QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

12                        PAGE    LINE

13                         (None)

14

15

16

17

18                         ---oOo---

19

20

21

22

23

24

25
```

USTP (Sungard) Ex. 13
Page 7 of 208

Office: (410) 821-4888          CRC Salomon        crc-ustp@crcsalomon.com
Fax: (410) 821-4889     2201 Old Court Road, Baltimore MD 21208     www.crcsalomon.com

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 7

```
 1                         EXHIBITS

 2   NUMBER                DESCRIPTION                    PAGE

 3   Exhibit 1      Sungard 210-217 - 8 pages            12

 4   Exhibit 2      Sungard 113-118 - 6 pages            16

 5   Exhibit 3      Sungard 001-025 - 25 pages           17

 6   Exhibit 4      Sungard 026-033 - 8 pages            51

 7   Exhibit 5      Sungard 144-151 - 8 pages            57

 8   Exhibit 6      Sungard 040-043 - 4 pages            60

 9   Exhibit 7      Sungard 160-166 - 7 pages            70

10   Exhibit 8      Sungard 085-087 - 3 pages            75

11   Exhibit 9      Sungard 112 - 1 page                 77

12   Exhibit 10     Sungard 088-111 - 24 pages           79

13   Exhibit 11     Sungard 167-169 - 3 pages            85

14

15

16

17

18

19

20

21

22

23

24

25
```

USTP (Sungard) Ex. 13
Page 8 of 208

```
 1              TUESDAY, FEBRUARY 10, 2026; 9:00 A.M.

 2                          ---oOo---

 3              COURT REPORTER:  All  right.  We are going on the

 4   record.  The time is 9 a.m. Central Standard Time, February

 5   10th, 2026.  My name is Elizabeth Cantando.  I am the digital

 6   reporter scheduled by CRC Solomon to cover this remote

 7   proceeding.  I request that all parties stipulate and agree

 8   that by videoconference technology, this will be the remote

 9   deposition of Timothy Daileader in the matter of In Re

10   Professional Fee Matters Concerning the Jackson Walker Law

11   Firm, Case Number 4:23-cv-04787.

12              This deposition is being taken using a video

13   connection before a court reporter who is not in the same

14   location as the witness.  I therefore request that the parties

15   stipulate that the deposition may be taken remotely before this

16   court reporter pursuant to Federal Rules of Bankruptcy

17   Procedure 7029 and 9014.

18              Before going on the record, the witness positively

19   identified themselves to me as Timothy Daileader by their

20   driver's license issued by the State of New York Department of

21   Motor Vehicles, and the witness is presently located in New

22   York City, New York.

23              Counsel, will you please state your appearances for

24   the record, your firms, who you represent, and that you agree

25   to stipulate that I may place this witness under oath and
```

USTP (Sungard) Ex. 13
Page 9 of 208

```
 1   report this proceeding remotely?

 2           MR. CHARBONEAU:  Yes.  Hi.  Joel Charboneau

 3   representing the United States Trustee.  Also with me are Laura

 4   Steele, Vianey Garza, Spencer Ezell, Brian Thill.  The U.S.

 5   Trustee does stipulate to that.  I also note the U.S. Trustee

 6   is continuing reservation of rights regarding the depositions

 7   and conducting the depositions not being a waiver, that the

 8   matter remains abated by the District Court.

 9           MR. GEOGHAN:  Daniel Geoghan from Cole Schotz for the

10   Deponent, Tim Daileader, and the Plan Administrator.  Yes, we

11   so stipulate.  We're good with the remote depositions.

12           MR. BOLAND:  Jason Boland, Norton Rose Fulbright, for

13   Jackson Walker.  I'm joined with my partner, Julie Harrison,

14   also of Norton Rose.  And then I see Emily Smith on of Rusty

15   Hardin & Associates, also for Jackson Walker.

16           COURT REPORTER:  Thank you.  Mr. Daileader, would you

17   please raise your right hand?

18           MR. DAILEADER:  Yes.

19      Whereupon,

20                    TIMOTHY DAILEADER,

21      having been duly sworn, was examined and testified as

22      follows:

23           COURT REPORTER:  Thank you.  Counsel, you may

24   proceed.

25           MR. CHARBONEAU:  Great.  Thank you.  Before we get
```

USTP (Sungard) Ex. 13
Page 10 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 10

1  started, I see two other names, Carissa Brewster and Sarah

2  Carnes.  If I could get their appearances and who they

3  represent as well.

4          MS. CARNES:  Yes.  It's Sarah Carnes with Cole

5  Schotz.  I represent Stage Stores, but I work with Dan.

6          MS. BREWSTER:  Carissa Brewster for Patrick Bartels

7  as the Liquidating Trustee in the Strike case and the Plan

8  Agent in the Auto Plus case.

9          MR. GUERRERO:  This is Aaron Guerrero with Bonds

10  Ellis Eppich Schafer Jones.  I represent David Dunn as the Plan

11  Agent in 4E Brands Northamerica and as the Liquidating Trustee

12  in Basic Energy.

13                          EXAMINATION

14  BY MR. CHARBONEAU:

15      Q.   All right.  Mr. Daileader, if you could please tell

16  me, did I pronounce your last name right so I don't ruin it the

17  entire deposition?

18      **A.   Daileader is fine.  Thank you so much.**

19      Q.   Okay.  Thank you for that.  Can you please state your

20  full name and spell your last name for the court reporter?

21      **A.   Yes.  My name is Timothy Daileader.  It's D as in**

22  **David, A-I-L-E-A-D-E-R.**

23      Q.   Do you hold any professional licenses, Mr. Daileader?

24      **A.   I have a -- I am a chartered financial analyst.  I**

25  **have a CFA license.**

USTP (Sungard) Ex. 13
Page 11 of 208

Timothy Daileader
Proceedings on 02/10/2026                                    Page 11

 1        Q.    And you are currently located in New York; is that
 2   right?
 3        **A.    I am.**
 4        Q.    Is that where your office is?
 5        **A.    Yes.**
 6        Q.    Do you regularly conduct business in the Southern
 7   District of Texas?
 8        **A.    From time to time, yes.**
 9        Q.    What is your role in the Sungard case?
10        **A.    I work for Drivetrain, LLC, and Drivetrain, LLC is**
11   **the Plan Administrator for the post-bankruptcy estate of**
12   **Sungard.**
13        Q.    Is Drivetrain the Plan Administrator or similar role
14   in other cases pending in the Southern District of Texas?
15        **A.    Yes.**
16        Q.    Approximately how many bankruptcy cases are you
17   currently participating in, in the Southern District of Texas?
18        **A.    I think I -- this is -- let me think.  I think this**
19   **is the only one I have currently, but from time to time we have**
20   **them.**
21        Q.    Now you're familiar with a firm named Jackson Walker.
22   Is that accurate?
23        **A.    Yes.**
24        Q.    And what was Jackson Walker's relationship with
25   Sungard with respect to Sungard's bankruptcy case?

USTP (Sungard) Ex. 13
Page 12 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax:   (410) 821-4889    2201 Old Court Road, Baltimore MD 21208    www.crcsalomon.com

```
 1                MR. GEOGHAN:  Objection to form.

 2                THE WITNESS:  I believe they were the local counsel

 3   for the Debtor.

 4   BY MR. CHARBONEAU:

 5        Q.    Did the Debtor pay fees and expenses to Jackson

 6   Walker?

 7        A.    Yes, the Debtor's estate did.

 8        Q.    Do you know approximately how much was paid to

 9   Jackson Walker post petition and pre-confirmation?

10        A.    Yes.  About, a little bit over $400,000.

11        Q.    Sorry.  Now, did you assist in responding to requests

12   for production that were issued by the United States Trustee in

13   connection with the objection to the Settlement Agreement filed

14   in this matter?

15                MR. GEOGHAN:  Objection as to form.

16                THE WITNESS:  Yes, I did.

17   BY MR. CHARBONEAU:

18        Q.    Did you review the responses to the request for

19   production?

20        A.    I did.

21        Q.    I'm gonna ask the court reporter to mark for

22   identification as Exhibit 1 the documents Bates-stamped Sungard

23   210 through and including 217.

24                          (Whereupon, Exhibit 1 was marked for

25                           identification.)
```

USTP (Sungard) Ex. 13
Page 13 of 208

 1  BY MR. CHARBONEAU:

 2      Q.    And I'm going to share screen so you can see those

 3  documents.  You'll see in the lower left-hand corner where the

 4  Bates stamp is in red.  Do you see it says Sungard210?

 5      **A.    I do.**

 6      Q.    And I'll just briefly scroll down.  It says Responses

 7  to Request for Production.  Do you see that?

 8      **A.    I do.**

 9      Q.    Would you like me to make it bigger, or is it

10  readable for you?

11      **A.    No, I can read it.  Thank you.**

12      Q.    Okay.  And do you recognize this as the Response to

13  the Request for Production?  Not the production of documents,

14  but the response to it.

15      **A.    Yes.  All right.  Now, in Sungard's bankruptcy case,**

16  **has Drivetrain, as Plan Administrator, filed a joinder with the**

17  **U.S. Trustee's Rule 60(b) motion?**

18          MR. GEOGHAN:  Objection as to form.

19          **THE WITNESS:  I believe we did.**

20  BY MR. CHARBONEAU:

21      Q.    And did Drivetrain file an amended joinder?

22      **A.    I don't remember if we amended it or not.**

23      Q.    Okay.  If I represent to you that an amended joinder

24  was filed, do you have any reason to dispute that?

25      **A.    No.**

USTP (Sungard) Ex. 13
Page 14 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 14

 1      Q.   And that was filed -- the joinders, they were filed -
 2  - or let me -- let me back up and start over.
 3          The original joinder, is it your understanding, that
 4  was filed in the Sungard case?
 5      **A.   I believe that's correct.**
 6      Q.   Now, looking at Request for Production Number 2, it
 7  asks for the production of documents evidencing engagement
 8  agreements with any professional retained to represent or
 9  advise you regarding your claims against Jackson Walker in the
10  pending bankruptcy case defined as the case.  Do you see that?
11      **A.   Yes.**
12      Q.   Sungard's case is still pending; is that accurate?
13          MR. GEOGHAN:  Objection to form.
14          **THE WITNESS:  Yes.**
15  BY MR. CHARBONEAU:
16      Q.   Now, Request for Production Number 6 asks for the
17  production of copies of all demand letters issued from you to
18  Jackson Walker relating to the case.  Did I read that
19  correctly?
20      **A.   Yes.  That's for RFP Number 6.**
21      Q.   Right.  And what do you understand that to be asking
22  you to produce?  And when I say "you," let me -- for the sake
23  of clarity, I mean you as the Plan Administrator, being
24  Drivetrain.
25          MR. GEOGHAN:  Objection as to form.  Drivetrain is

USTP (Sungard) Ex. 13
Page 15 of 208

 1  the Plan Administrator, not Mr. Daileader.

 2  BY MR. CHARBONEAU:

 3      Q.   That's what I just clarified, that by "you" -- I'm

 4  saying "you," but I mean Drivetrain.  Are we clear on that?

 5      **A.   Yes.**

 6      Q.   Okay.  So what is your understanding of what Number 6

 7  requires the production of?

 8      **A.   It appears it's asking for any written correspondence**

 9  **that was made with Jackson Walker regarding stating a claim and**

10  **asking for an amount of money to be paid on the basis of that**

11  **claim.**

12      Q.   Okay.  Is there any reason that after today you can't

13  work with your counsel and produce those documents to the U.S.

14  Trustee?

15      **A.   I don't believe we actually made a written demand to**

16  **them.  I believe we communicated with Jackson Walker via**

17  **counsel.**

18      Q.   Okay.  Well, thank you for that.  If you do discover

19  any written demand letters, please confer with your counsel

20  regarding the production of that.

21      **A.   We certainly will.**

22      Q.   Okay.  Now, we talked a moment ago about an amended

23  joinder, and I do want to take a second and talk about that.

24  So I'm going to ask the court reporter to mark for

25  identification as Exhibit 2 Sungard 113 through and including

USTP (Sungard) Ex. 13
Page 16 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 16

```
1    118.

2                            (Whereupon, Exhibit 2 was marked for

3                            identification.)

4    BY MR. CHARBONEAU:

5        Q.    Do you see Sungard 113 on your screen?

6        A.    Yes.

7        Q.    And does this refresh your recollection as to whether

8    an amended joinder was filed in Sungard's case?

9        A.    Yes.  Thank you.

10       Q.    And I'm just going to move down to the page marked

11   Bates stamp Sungard 116.  And the last paragraph reads, "Under

12   the circumstances of this case, the Sungard Wind-Down Debtors

13   submit that it is wholly appropriate for the Court to require

14   JW to pay their attorney's fees in addition to ordering

15   disgorgement of JW's fees."  Did I read that correctly?

16       A.    Yes.

17       Q.    So it's your understanding that Sungard is seeking

18   the fees that it has incurred litigating the disgorgement

19   action?

20            MR. BOLAND:  Objection to form.

21            MR. GEOGHAN:  Objection.

22   BY MR. CHARBONEAU:

23       Q.    All right.  Let's back up a second.  Mr. Daileader,

24   what firm is representing Drivetrain?

25       A.    In the Sungard matter currently?
```

USTP (Sungard) Ex. 13
Page 17 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889    2201 Old Court Road, Baltimore MD 21208    www.crcsalomon.com

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 17

```
 1      Q.   Correct.

 2      A.   Cole Schotz.

 3      Q.   And which attorney is defending your deposition

 4  today?

 5      A.   Mr. Geoghan.

 6      Q.   Was the settlement motion that is currently pending

 7  before the Court a joint motion?

 8      A.   I'm sorry.  Could you explain that question a little

 9  bit for me?  I'm not an attorney.

10      Q.   Sure.  Let's have the court reporter mark for

11  identification as Exhibit 3, Sungard 001 through and including

12  025.

13                         (Whereupon, Exhibit 3 was marked for

14                          identification.)

15  BY MR. CHARBONEAU:

16      Q.   I'm showing you the first page of a pleading called

17  Motion for Order Approving Compromise and Settlement Pursuant

18  to Bankruptcy Rule 9019.  Do you see that?

19      A.   I do.

20      Q.   Do you recognize this pleading?

21      A.   Yes.

22      Q.   Is this the motion filed on your behalf in the

23  Sungard case?

24      A.   I believe it is.

25      Q.   Was it filed by your counsel?
```

USTP (Sungard) Ex. 13
Page 18 of 208

1      A.    Yes.

2      Q.    And the last paragraph reads, "Wherefore, the Plan

3  Administrator respectfully requests the Court enter an order

4  approving the Settlement Agreement and granting the Plan

5  Administrator such other legal or equitable relief as the Court

6  may deem just and proper."  Did I read that correctly?

7      A.    Yes.

8      Q.    And it is signed by your counsel, Mr. Geoghan,

9  correct?

10      A.    Yes.

11      Q.    Is it signed by any counsel on behalf of Jackson

12  Walker?

13      **A.    No, not on that page, and I don't believe it was.**

14      Q.    Would you agree, then, this is Sun -- I mean, your

15  motion to approve the settlement?

16      A.    Yes.

17      Q.    And you would agree that Jackson Walker is not a

18  movant to this motion?

19           MR. GEOGHAN:  Objection.

20           **THE WITNESS:  I don't believe they signed this.  So**

21  **if that is -- if that's your point, yes, I would agree.**

22           MR. CHARBONEAU:  Okay.  Now I'm just going to state

23  for the record that the U.S. Trustee's position is that it is

24  improper for Mr. Boland to be objecting to questions.  He's not

25  defending the deposition.  While he may have the right to ask

USTP (Sungard) Ex. 13
Page 19 of 208

```
 1   clarifying questions to the witness, he's not defending the

 2   deposition.  And the U.S. Trustee reserves all right to move to

 3   strike any objections and/or seek other relief from the Court.

 4   So let's move back to --

 5           MR. BOLAND:  I'm going to answer that, Mr.

 6   Charboneau, if you don't mind.  As I stated --

 7           MR. CHARBONEAU:  I do mind, Mr. Boland.

 8           MR. BOLAND:  Well, I'm going to state my position on

 9   the record.  So thank you for that.  As I said yesterday during

10   yesterday's deposition, this is a contested matter.  We're

11   completely allowed to participate as a settling party in these

12   proceedings, and we intend to do so.

13           Ms. Steele's February 5th email to us acknowledged

14   our right to participate in these depositions, and that's all

15   we're doing.  We're raising appropriate objections as to form

16   for questions that need clarification or that are

17   inappropriate, and we will continue to do so.  Thank you.

18           MR. CHARBONEAU:  And for the record, Ms. Steele

19   clarified your ability to ask questions, such as clarifying

20   questions, not to defend the deposition or the witness.  What

21   you're doing is improper.

22           MR. BOLAND:  She did not, actually, but I appreciate

23   that.

24   BY MR. CHARBONEAU:

25       Q.  So moving on, where we were was asking about the
```

USTP (Sungard) Ex. 13
Page 20 of 208

1  attorney's fees when we were talking about the amended joinder.

2  So do you recall when we were --

3      MR. GEOGHAN:  Objection.  I don't think we were

4  talking about attorney's fees, but go ahead.

5  BY MR. CHARBONEAU:

6      Q.   Okay.  Before we return to the settlement motion, we

7  were talking about the amended joinder, and I'm going to turn

8  back to the document marked for identification as Exhibit 2.

9  You'll see it starts with Sungard113 in the lower left.  Do you

10  see the document?

11      **A.   Yes.**

12      Q.   Can you tell me how much has Sungard incurred in fees

13  and expenses in this litigation against Jackson Walker?

14      MR. GEOGHAN:  Objection as to form and relevance.

15      **THE WITNESS:  I believe we've paid the Cole Schotz**

16  **firm over $100,000 in regards to this matter.**

17      MR. CHARBONEAU:  Okay.  And for clarity, Mr. Geoghan,

18  so I can address any form objection you've got there, what is

19  the form objection?

20      MR. GEOGHAN:  The objection is that the question was

21  utterly unclear.  Are you talking about the time spent getting

22  to a settlement, preparing the 9019, drafting the settlement?

23  Are you talking about the absolute waste of time it has been

24  defending this 9019, and a ridiculous amount of money U.S.

25  Trustee's Office is making every estate pay to defend what

USTP (Sungard) Ex. 13
Page 21 of 208

Timothy Daileader
Proceedings on 02/10/2026                                              Page 21

```
 1   should be easy, justified motions, just so they can process
 2   their own plans, their own expectations.  So, yeah, that's --
 3   you didn't clarify the question.  My objection is the question
 4   is bad (indiscernible).
 5   BY MR. CHARBONEAU:
 6       Q.   Mr. Daileader, did Drivetrain retain Cole Schotz to
 7   represent it regarding claims against Jackson Walker relating
 8   to Jackson Walker's representation during the Sungard
 9   bankruptcy case?
10       A.   Yes, on behalf of -- yes, on behalf -- as the Plan
11   Administrator, yes.
12       Q.   Understood.  And since the retention of Cole Schotz,
13   has the Plan Administrator incurred fees and expenses related
14   to those claims?
15            MR. GEOGHAN:  Objection to form.
16            MR. BOLAND:  Objection, form.
17            THE WITNESS:  Yes.
18   BY MR. CHARBONEAU:
19       Q.   When I ask you about the fees and expenses --
20            MR. GEOGHAN:  I'll restate my (cross talk) -- I'm
21   sorry.  My apologies.  Please go ahead.
22   BY MR. CHARBONEAU:
23       Q.   When I'm asking you about the fees and expenses
24   regarding the litigation, what litigation do you understand me
25   to be asking you about?
```

USTP (Sungard) Ex. 13
Page 22 of 208

```
 1              MR. GEOGHAN:  Objection to form.

 2         THE WITNESS:  I believe that we're dealing with the

 3    claim regarding the payment of fees and expenses to Jackson

 4    Walker during the pendency of the bankruptcy case.

 5    BY MR. CHARBONEAU:

 6         Q.   That is, in fact, the litigation I'm asking you

 7    about, so if I talk about the litigation going forward, you

 8    understand what I'm referring to?

 9         A.   I believe so.  I do my best to answer the question.

10    I believe the issue that we're discussing is the claims that we

11    have made on Jackson Walker, for the return or disgorgement of

12    the fees that were paid to them during the pendency of the

13    bankruptcy case.

14              MR. GEOGHAN:  I'm going to object to the form of the

15    question because I don't understand what you mean by

16    "bankruptcy case."  But go ahead.

17    BY MR. CHARBONEAU:

18         Q.   Now, since you retained Cole Schotz to represent you

19    against Jackson Walker, is it fair to say that you have

20    incurred over $100,000 in fees and expenses.

21              MR. GEOGHAN:  Objection to form.

22         THE WITNESS:  Yes, that's my estimate.

23    BY MR. CHARBONEAU:

24         Q.   And that $100,000 as it relates to the representation

25    regarding the litigation?
```

USTP (Sungard) Ex. 13
Page 23 of 208

1           MR. GEOGHAN:  Objection to form.

2           **THE WITNESS:  Yes.**

3    BY MR. CHARBONEAU:

4       Q.   Now, do you recall producing invoices to the United

5    States Trustee that were sent to you by Cole Schotz.

6       **A.   Yes, I believe we did.**

7       Q.   Now, I added up those invoices, and I'll represent to

8    you that those invoices totaled somewhere a little bit more

9    than $450,000.  Do you have any reason to dispute that the

10   invoices produced in the request for production total to more

11   than $450,000?

12      **A.   No.**

13      Q.   Is the $100,000 that has been incurred with regard to

14   this litigation, is that part of that $450,000?

15          MR. GEOGHAN:  Objection to form.

16          **THE WITNESS:  Yes, I believe it would be.  Those are**

17   **the only invoices that we have for them, and it's been -- they**

18   **represent the work that has been performed and paid for on**

19   **behalf of -- by the Estate.  And obviously there is work that**

20   **Cole Schotz has performed in addition to this litigation.**

21   BY MR. CHARBONEAU:

22      Q.   And I think you addressed where I was going, but so

23   that we're clear, the over $100,000 relating to this litigation

24   that has been incurred has actually been paid by Drivetrain?

25      **A.   That would be paid by the Estate.  Drivetrain would**

USTP (Sungard) Ex. 13
Page 24 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 24

1   not pay it.

2        Q.   I'm sorry.  Okay.  But has it been paid?

3        A.   Yes.

4        Q.   Now we talked about the fact that -- I'm gonna move

5   down to the Sungard116.  We're still on exhibit -- document

6   marked for identification as Exhibit 2.  We talked about that

7   Sungard has -- I'm sorry.  Let me start over.  The Sungard

8   Wind-Down Debtors are seeking their attorney's fees incurred in

9   this litigation.  Is somebody speaking, or is that feedback

10  from me?  No?  Okay.  Can you hear me clear, Mr. Daileader?

11       A.   I can.  I heard the feedback, too, but I think it was

12  just an echo.

13       Q.   Okay.  Great.  Well, if that happens and you can't

14  hear a question clearly in the future, please let me know,

15  okay?

16       A.   Yes.  Thank you.

17       Q.   All right.  So the amount of the settlement, how much

18  is it?

19       A.   I believe the settlement offer was $393,000.

20       Q.   Okay.  And the amount that was paid to Jackson Walker

21  in the case, I think you told me it was a little bit more than

22  400,000.  Is that correct?

23       A.   Yes.  I believe that's right.

24       Q.   And if the Court were, after trial, to award the

25  complete return of fees plus your attorney's fees, you would

USTP (Sungard) Ex. 13
Page 25 of 208

 1  agree that that amount would be over 500,000.  Is that

 2  accurate?

 3              MR. GEOGHAN:  Objection to form.

 4              **THE WITNESS:  Yes.  If the Court awarded it in its**

 5  **full total, the answer is yes.  Or more if the fees continue to**

 6  **accrue.**

 7  BY MR. CHARBONEAU:

 8      Q.   You mentioned if the fees were to continue to accrue,

 9  and I do want to ask a few questions about that.  So to stay on

10  that topic, at the time that you were negotiating this

11  settlement agreement, did you have any projections run

12  regarding estimates of fees and expenses to take this matter to

13  trial?

14              MR. GEOGHAN:  Objection to form.

15              **THE WITNESS:  No.  But given the amount of litigation**

16  **in this case, I don't know how we could possibly form that**

17  **estimate.**

18  BY MR. CHARBONEAU:

19      Q.   Okay.  At the time you were negotiating the

20  settlement, did you anticipate incurring additional fees and

21  expenses if the matter went to trial?

22              MR. GEOGHAN:  Objection.

23              **THE WITNESS:  Yes.  If we were to litigate -- if we**

24  **were to litigate the claim and go to trial, we would most**

25  **certainly incur additional fees.**

USTP (Sungard) Ex. 13
Page 26 of 208

Timothy Daileader
Proceedings on 02/10/2026                                          Page 26

```
 1   BY MR. CHARBONEAU:
 2       Q.   Do you recall whether or not discovery was closed in
 3   the litigation?
 4       A.   I don't recall what the dates were regarding the
 5   discovery, so, no, I don't.  I don't know whether it was open
 6   or closed at that point in time.
 7       Q.   Can you tell me at -- let's start back with, you
 8   know, when did you first enter into settlement discussions with
 9   Jackson Walker?
10       A.   Well, I didn't directly enter into settlement
11   discussions with Jackson Walker.  I did so through counsel and
12   counsel -- I don't know when the first conversation has from
13   memory.  It was -- we had been speaking to them for several
14   months prior to ultimately reaching the agreement but I
15   couldn't give you a sense of when things were just casual
16   conversations or versus more serious, coming down to the final
17   agreement.
18       Q.   Were all of the discussions, whether casual or more
19   advanced, were they all in the year 2025?
20       A.   I would say substantially, yes.  I can't remember,
21   again, when the first discussion happened.  So, I would be
22   hard-pressed to say that's the first one, but I think they
23   certainly advanced into the most substantial form near when we
24   entered into the -- nearer when we entered into the final
25   agreement.
```

USTP (Sungard) Ex. 13
Page 27 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 27

1      Q.    And at that time that you were entering into those

2    negotiations, did you request an estimate of how many days

3    trial would take?

4      **A.    No.**

5      Q.    At the time you entered into the settlement

6    negotiations, did you consider the impact any appeals of the

7    settlement order might result in?

8              MR. GEOGHAN:  Objection to form.

9              **THE WITNESS:  Yes.  Generally, when we make judgments**

10   **around the settlements, they would include a number of**

11   **elements, and the -- you know, one of which would be the**

12   **likelihood of success in a trial, but second to that would also**

13   **be the amount of time and cost that would be involved if a**

14   **judgment were to be appealed.**

15   BY MR. CHARBONEAU:

16     Q.    Did you request an estimate of those time and

17   expenses if the judgment were to be appealed in this case?

18             MR. BOLAND:  Objection, form.

19             **THE WITNESS:  No, but that would be a little**

20   **premature if we hadn't gone to trial yet.  I don't know that**

21   **any lawyer could actually estimate appeal costs if you didn't**

22   **know what -- if you hadn't gone through the litigation.  That's**

23   **not consistent with my experience.**

24   BY MR. CHARBONEAU:

25     Q.    Okay.  I perhaps misunderstood your response a second

USTP (Sungard) Ex. 13
Page 28 of 208

1    ago.  I thought you were indicating that in negotiating

2    settlements that you would consider the probability of success.

3    And then you went on to speak about the collections and the

4    time and expense of appeals.  Did I misunderstand you?

5            MR. GEOGHAN:  Objection to form.

6            THE WITNESS:  Yes.  Well, I think you may have drawn

7    a conclusion which is not what I was intending to say.  What I

8    was intending to say was that there are a number of factors

9    that we consider when we enter into a judgment as to whether or

10   not a settlement is fair and good for our beneficiaries.  We

11   are fiduciaries to our claimants, and amongst them is, you

12   know, the certainty of the outcome, the avoidance of the

13   litigation costs, you know, the -- you know, how good our

14   claims would be, and then the amount of time and costs that

15   might be involved if you litigated and succeeded in an appeal -

16   - not that we could know these things for certain.  Rather, and

17   to the alternative, these are uncertainties.  So you weigh the

18   uncertainties off against the certainty of having a settlement,

19   which concludes the matter and which pays the Estate and allows

20   the Estate to pay its beneficiaries, obviously in accordance

21   with the plan.

22   BY MR. CHARBONEAU:

23        Q.   Now, at the time that you executed the settlement

24   agreement -- let me back up.  Do you recall executing a

25   settlement agreement in this case?

USTP (Sungard) Ex. 13
Page 29 of 208

 1      **A.   Yes.**

 2      Q.   And do you recall when you executed that settlement

 3 agreement?

 4      **A.   Not from specific memory.  If you shared it with me,**

 5 **I'm sure I can confirm.**

 6      Q.   All right.  We're going to turn back to the document

 7 marked for identification as Exhibit 3.  And you'll see the

 8 first page is the motion -- that's Sungard001, and I'm going to

 9 move down to the attachment.  All right?  We're on Sungard016.

10 Do you see that document?

11      **A.   I do.**

12      Q.   And at the top, it indicates this settlement

13 agreement dated July 17th, 2025.  Do you see that date?

14      **A.   I do.**

15      Q.   I'm going to move down to the page, last page,

16 Sungard025.  Do you recognize your signature on that page?

17      **A.   I do.**

18      Q.   And there's a date of July 17th, 2025.  Do you see

19 that?

20      **A.   Yes.**

21      Q.   Does this refresh your recollection as to when you

22 signed the agreement?

23      **A.   Yes.**

24      Q.   Now, at that time that you signed this agreement,

25 approximately how much had you incurred in attorney's fees

USTP (Sungard) Ex. 13
Page 30 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 30

1    relating to the litigation?

2        A.    I don't know that I made an estimate at that time,

3    but it would have been less than today.

4        Q.    Would it have still been near 100,000?

5        A.    Oh, I don't know.  Again, as I said, I didn't make an

6    estimate at the time, but it would have been -- we've incurred

7    fees of late, and obviously bringing this motion itself

8    incurred additional fees, so I don't have a specific answer as

9    to what the accrual was at that point in time.

10       Q.    Do you have any reason to believe that the fees at

11   that time were less than $75,000?

12       A.    Again, I think I just answered your question, which

13   is that I -- you know, I didn't make an estimate at the time.

14   We continue to accrue fees, and I don't have the periodic

15   understanding or the understanding of what they've been

16   periodically.  I just know that at this point, our estimate is

17   that they've exceeded $100,000.

18       Q.    Turning back to the settlement agreement, and I want

19   to just move back up to some of the terms.  And we're looking

20   at still the document marked for identification as Exhibit 3.

21   We're looking at Bates Sungard017.  Do you have an

22   understanding as to when the settlement payment will be made

23   under this agreement?

24       A.    I believe it would be laid out in the agreement.  If

25   you'd like to show me where it lays that out on that, I'd be

USTP (Sungard) Ex. 13
Page 31 of 208

1  happy to confirm that, but I don't have the document memorized.

2      Q.   Okay.  If you'll take a look at paragraph 2(a), and

3  I'll read out the beginning sentence there.  "The Effective

4  Date of this agreement" -- and then in parentheses to define a

5  term, the Effective Date in parentheses -- "is the first day as

6  of which all of the following conditions have been satisfied

7  or, to the extent permitted herein, waived."  Do you see that?

8      A.   Yes, I see that.  I see paragraph 2(a).

9      Q.   And do you have an understanding, based on the

10  settlement agreement, as to when the payment would be made if

11  there is an appeal of an order approving the settlement?

12          MR. GEOGHAN:  Objection to form.

13          MR. BOLAND:  Objection, form.

14          THE WITNESS:  I believe the paragraph 2(a) lays out

15  that there is conditions to the payment of that, and it starts,

16  "For the purposes of this agreement, the approval order will

17  become a final order."  Final order refers back to the sentence

18  preceding, but I think we don't need to do that.  "When X 14

19  days, as computed in accordance with the Federal Rules of

20  Bankruptcy 9006, shall have passed from the date of the entry

21  of the approval order, and -- and Y -- sorry for emphasis --

22  either the time to file a timely appeal under the Federal Rules

23  of Bankruptcy 8002 from the approval order passes and such

24  timely appeal is filed or, if a timely appeal is filed, then

25  all timely filed appeals have been dismissed with prejudice or

USTP (Sungard) Ex. 13
Page 32 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 32

 1   the approval order is affirmed on appeal and it's not subject

 2   to further timely appellate review."  I'll stop there.

 3   BY MR. CHARBONEAU:

 4       Q.   Okay.  So from that, do you have an understanding as

 5   to whether or not the settlement would be paid while there's a

 6   pending appeal?

 7            MR. BOLAND:  Objection, form.

 8            MR. GEOGHAN:  Objection to form.

 9            THE WITNESS:  I believe that the settlement would be

10   paid after those conditions were met.

11   BY MR. CHARBONEAU:

12       Q.   In negotiating a settlement with Jackson Walker, did

13   Jackson Walker make any representations regarding its ability

14   to pay the judge -- I mean, the settlement amount?

15       A.   Not that I heard of, but as I think I stated earlier,

16   the conversations were conducted through counsel, so I can only

17   say what counsel told me.  I don't believe we had that -- we

18   didn't have that conversation where Jackson Walker made any

19   representation.  I don't recall at least one where Jackson

20   Walker made any representation about its ability to pay.

21            MR. GEOGHAN:  I'm going to caution the client not to

22   divulge any attorney-client privileged communications, which

23   would include any communications we provided to you in

24   furtherance of our legal advice.

25            THE WITNESS:  Okay.  Thank you.

USTP (Sungard) Ex. 13
Page 33 of 208

1    BY MR. CHARBONEAU:

2        Q.    Did Jackson Walker provide any documents to you

3    evidencing its ability to pay the settlement amount?

4        **A.    No.**

5        Q.    Do you have an understanding as to whether Jackson

6    Walker is a large firm?

7              MR. GEOGHAN:  Objection to form.

8              **THE WITNESS:  I'm not exactly sure what that -- how**

9    **to measure that.  I do understand that Jackson Walker is an**

10   **established firm in the State of Texas, but I don't have any**

11   **idea about the size or scale of its legal services beyond my**

12   **own experience with them in this case.**

13   BY MR. CHARBONEAU:

14       Q.    Do you know whether they purport to be the largest

15   Texas-based firm in Texas?

16             MR. GEOGHAN:  Objection to form.

17             MR. BOLAND:  Objection, form.

18             **THE WITNESS:  I don't.**

19   BY MR. CHARBONEAU:

20       Q.    Did you perform any independent investigation as to

21   the collectibility of a judgment against Jackson Walker?

22             MR. GEOGHAN:  Objection to form.

23             MR. BOLAND:  Objection, form.

24             **THE WITNESS:  No.  I didn't perform any independent**

25   **study or review of that.**

USTP (Sungard) Ex. 13
Page 34 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 34

```
 1   BY MR. CHARBONEAU:

 2       Q.    Now, you told me about the factors in considering a

 3   settlement a few moments ago.  Do you recall that discussion?

 4       A.    I do.

 5       Q.    And was collectibility one of the factors you

 6   mentioned?

 7             MR. GEOGHAN:  Objection to form.

 8             THE WITNESS:  Yes.

 9   BY MR. CHARBONEAU:

10       Q.    And did you, and here I'm going to be using the royal

11   "you", you or your agents, investigate the collectibility of a

12   judgment against Jackson Walker relating to this litigation?

13             MR. GEOGHAN:  Objection to form.  I'll caution.  Hold

14   on, Jason.  I'll caution the client to beware of disclosing any

15   attorney-client privileged communications.  And by "agent," I

16   believe he's referring to attorneys.  We haven't testified to

17   any others.  So I would just caution you to not disclose.  To

18   the extent you can answer the question without disclosing

19   attorney-client privilege, you are more than welcome to.

20             MR. BOLAND:  And we object to form as well.

21             THE WITNESS:  Okay.

22   BY MR. CHARBONEAU:

23       Q.    You may answer.

24       A.    In my own -- yeah, I will.  In my own experience, I

25   have had some experience with law firms that faced financial
```

USTP (Sungard) Ex. 13
Page 35 of 208

Office: (410) 821-4888            CRC Salomon            crc-ustp@crcsalomon.com
Fax: (410) 821-4889      2201 Old Court Road, Baltimore MD 21208      www.crcsalomon.com

1   distress, in particular with the Dewey LeBoeuf firm, which

2   happened a number of years ago.  I do understand that these

3   situations can cause financial strain on them.  I did not

4   conduct a review or investigation of their individual financial

5   state, but I do recognize the fact that this litigation and

6   seemingly others has been protracted and in the press a lot,

7   and that in a general sense, that will have a negative effect

8   on their ability to generate revenues and practice law.  So

9   without a specific investigation, it is a consideration because

10  in my over three decades of doing financial work, including

11  work as a creditor, including investment research and being an

12  investment manager, I have seen situations where law firms

13  entered into financial distress.  That is the basis of my

14  concern around collectibility.

15      Q.   Has Jackson Walker made any representation to you

16  that it is in financial distress?

17      A.   No, they have not.

18      Q.   Now, turning to the settlement amount, and we're

19  still on Exhibit 3, Sungard018, it provides in paragraph 3 that

20  the settlement amount is 385,000.  Do you see that?

21      A.   Yes.  And I apologize.  I think I said 393 before,

22  but I was conflating the 93 percent and the 385.

23      Q.   Okay.  Okay.  Well, thank you for that.  If Jackson

24  Walker were required to pay Sungard 500,000 instead of 385,000,

25  would that change your assessment, to the extent you have one,

USTP (Sungard) Ex. 13
Page 36 of 208

1  regarding the collectibility in this case?

2          MR. GEOGHAN:  Objection.

3          MR. BOLAND:  Objection, form.

4  BY MR. CHARBONEAU:

5      Q.   Let me just start again.  Do you have any reason to

6  believe, so any factual basis to believe, that Jackson Walker

7  could not pay a $500,000 judgment to Sungard?

8          MR. BOLAND:  Objection, form.

9          THE WITNESS:  No, but I would say that it's not a

10  simple matter of comparing 500 to 385.  It's a more complex

11  matter about judging when you were paid.  I don't know what

12  their financial situation is, and I don't know whether or not

13  it's improving or deteriorating.  But I do know that in the

14  instant that we made a decision whether or not this was a good

15  settlement, that $385,000 appeared to be very close to what,

16  you know, the fees were that they were paid in the course of

17  the case.

18          And this is an important factor, that, for the

19  purposes of the plan and its beneficiaries, that a nearer or

20  nearer recovery, and an immediate payment of this, would be

21  better served than taking the risk of incurring further

22  expenses that might subsume the entire amount of any amounts

23  recovered.

24          So, given all of those uncertainties, the business

25  judgment that we applied is that $385,000, the bird in the

USTP (Sungard) Ex. 13
Page 37 of 208

1    hand, so to speak, is better than expending another, and who

2    knows what the amount would be, potentially receive $500,000

3    later.

4              Again, there are certain uncertainties that we deal

5    with when we're resolving claims: amounts, collectibility,

6    timing, difficulty.  Litigation in and of itself is always

7    uncertain.  And we have a lot of experience in litigating

8    claims.  And that's the lessons that have been taught to us.

9    BY MR. CHARBONEAU:

10        Q.    Now, you mentioned plan and plan beneficiaries.  Who

11   will benefit if the settlement amount is paid?

12        A.    The Class 3 claimants of the -- within the plan.  So

13   those would be former secured creditors of the Estate.

14        Q.    And is that just two entities, or, you know, a bunch

15   of entities?

16        A.    Yeah.  No, there were numerous creditors in the Class

17   3.  They were generally aggregated by -- they were under a

18   single credit agreement, but there are numerous individual

19   participants within that credit agreement.

20        Q.    And you talked about the time for recovery.  Why not

21   just demand that Jackson Walker cut a check for the 385,000?

22              MR. GEOGHAN:  Objection as to form.

23              MR. BOLAND:  Objection, form.

24              THE WITNESS:  These were the terms that we were able

25   to resolve with them.  I'm sure we could make all sorts of

USTP (Sungard) Ex. 13
Page 38 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                          Page 38

 1 | demands for different amounts, but obviously you need two

 2 | parties to resolve something, and this was the settlement that

 3 | was -- that reached an agreement.

 4 | BY MR. CHARBONEAU:

 5 |     Q.   And when you say "two parties," is it your position

 6 | that no one else has an interest in this litigation?

 7 |          MR. GEOGHAN:  Objection as to form.

 8 |          MR. BOLAND:  Objection, form.

 9 |          THE WITNESS:  I think that's a complicated question,

10 | but I do understand that I'm a fiduciary to the plan, and as

11 | the fiduciary, that I'm representing the interests of those

12 | claimants.

13 | BY MR. CHARBONEAU:

14 |     Q.   How about the United States Trustee?  You are aware

15 | that the United States Trustee commenced the Rule 60

16 | litigation?  Is that accurate?

17 |     A.   Yes.

18 |     Q.   Do you acknowledge that there's a public interest in

19 | the fees that were paid to Jackson Walker?

20 |          MR. GEOGHAN:  Objection to form.

21 |          MR. BOLAND:  Objection, form.

22 |          THE WITNESS:  Again, I'm a fiduciary for the plan

23 | beneficiaries.  Whether or not -- that's a legal matter, and

24 | again, there may be an interest, but it's not one that I

25 | represent. I represent the interests of the plan beneficiaries.

USTP (Sungard) Ex. 13
Page 39 of 208

Timothy Daileader
Proceedings on 02/10/2026                                            Page 39

```
 1   BY MR. CHARBONEAU:

 2       Q.   Now, going back to those plan beneficiaries, you

 3   identified them as Class 3, correct?

 4       A.   I believe that's right.

 5       Q.   And you said that it was made up of, I believe you

 6   said, numerous parties.  Is that accurate?

 7       A.   Yes.

 8       Q.   Was any attempt made to poll the Class 3 claimants

 9   regarding the advisability of entering into this settlement

10   agreement?

11            MR. GEOGHAN:  Objection to form.

12            THE WITNESS:  Yes.  I spoke to their counsel.

13   BY MR. CHARBONEAU:

14       Q.   When you say you spoke to their counsel, who are you

15   referring to?

16            MR. GEOGHAN:  Objection to form.

17            THE WITNESS:  Chad Dale of Proskauer.  He had

18   represented them during the course of the bankruptcy case.  We

19   have kept in contact with them.

20   BY MR. CHARBONEAU:

21       Q.   I'm sorry.  You said Chad who?

22       A.   Dale, D-A-L-E.

23       Q.   And he represents who?

24       A.   He was counsel to the -- I believe it was an ad hoc

25   secured creditor group in the case, and he's counsel at
```

USTP (Sungard) Ex. 13
Page 40 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889     2201 Old Court Road, Baltimore MD 21208     www.crcsalomon.com

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 40

```
 1   Proskauer.

 2        Q.   And do you have an understanding whether or not he

 3   represents the interests of all of Class 3?

 4             MR. GEOGHAN:  Objection to form.

 5             MR. BOLAND:  Objection, form.

 6             THE WITNESS:  I don't know if he represents all of

 7   Class 3, but they had acted, as I mentioned, as an ad hoc group

 8   within the case, and he had been a point of contact.

 9   BY MR. CHARBONEAU:

10        Q.   Is that the only member of Class 3 that you spoke to

11   regarding the settlement agreement?

12             MR. GEOGHAN:  Objection to form.  That wasn't the

13   testimony.

14             THE WITNESS:  I spoke to Mr. Dale regarding the

15   settlement.

16   BY MR. CHARBONEAU:

17        Q.   Okay.  Is he the only member of Class -- or the only

18   representative of someone in Class 3 with whom you spoke?

19             MR. GEOGHAN:  Objection to form.

20             THE WITNESS:  I've spoken to other members.  I don't

21   recall whether or not I spoke to them about the settlement, but

22   I did speak to Mr. Dale about the settlement.

23   BY MR. CHARBONEAU:

24        Q.   When you said there were numerous members of Class 3,

25   just put me in a ballpark.  How many is that?
```

USTP (Sungard) Ex. 13
Page 41 of 208

Office: (410) 821-4888            CRC Salomon            crc-ustp@crcsalomon.com
Fax: (410) 821-4889      2201 Old Court Road, Baltimore MD 21208      www.crcsalomon.com

1              MR. GEOGHAN:  Objection to form.

2              **THE WITNESS:  I don't recall, but generally speaking,**

3     **there can be a couple investment managers who have various**

4     **funds that operate, you know, that own pieces or own claims**

5     **within the class.  I don't recall generally off the top of my**

6     **head how many.  They were probably -- and this isn't**

7     **necessarily related to the speaking about this claim, but there**

8     **were at least half a dozen larger ones and then a number of**

9     **smaller ones.  I don't remember how they all aggregated.**

10    BY MR. CHARBONEAU:

11        Q.   Now, going back to Mr. Dale, what did you share with

12    him about the settlement?

13             MR. GEOGHAN:  Objection to form.

14             **THE WITNESS:  I believe we shared with him the amount**

15    **of the settlement.**

16    BY MR. CHARBONEAU:

17        Q.   Was there any other discussion other than regarding

18    the amount?

19             MR. GEOGHAN:  Objection to form.

20             MR. CHARBONEAU:  Okay.  What's the objection, Mr.

21    Geoghan, so I can understand it and potentially address it?

22             MR. GEOGHAN:  Whether or not the discussion related

23    to the settlement, whether or not the discussions related to

24    specific terms to share those terms of the settlement

25    agreement.  It was a vague question.  If you don't want an

USTP (Sungard) Ex. 13
Page 42 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 42

```
 1  objection, ask a more direct follow-up.

 2  BY MR. CHARBONEAU:

 3      Q.   Now, your counsel is expressing some confusion

 4  regarding my question.  But did you understand my question, Mr.

 5  Daileader, to be responsive to your testimony?

 6          MR. GEOGHAN:  Objection as to form.  My objection to

 7  form has nothing to do with necessarily his direct

 8  understanding.  It's still an objectionable question.

 9          THE WITNESS:  I'm going to try and answer the

10  question as best I can, and I believe I -- as I answered it, I

11  recall disclosing to Mr. Dale the amount of the settlement.

12  BY MR. CHARBONEAU:

13      Q.   Okay.  Before you go further, all right, what other

14  discussions did you have with him regarding this settlement

15  agreement?

16      A.   I don't recall every point that we talked about.  I

17  do recall that at some point earlier, before we reached this,

18  that I did speak to Mr. Dale and said that I was going to be

19  attempting to settle this case, you know, settle this matter,

20  and then I believe, though, again, this is going -- this is

21  quite a while ago now, that we did discuss with him that we had

22  reached a settlement and gave the amount of the settlement.

23  That's about all I can recall about our conversation.

24      Q.   Okay.  Now, let me make sure I understand.  So after

25  you had entered into the settlement agreement, that is when you
```

USTP (Sungard) Ex. 13
Page 43 of 208

1   spoke to Mr. Dale?

2        A.   No, that's not what I said, Counsel.  I said that I

3   spoke to him.  I didn't say when I spoke to him, and I don't

4   recall if I -- and what you mean by entering into the

5   settlement agreement is unclear as well.  There are obviously

6   conversations that were held between counsels, and there was a

7   -- you know, there was a point in time where there was an

8   agreement as to what the amount would be, and then it got

9   documented, and then it got signed.  So I don't recall when in

10  that process that was -- you know, that conversation was had.

11  As I mentioned, I was just confirming for you the fact that I

12  did speak to Mr. Dale, and I do recall that I disclosed the

13  amount of the settlement.  The rest of it, I don't really have

14  any memory.

15       Q.   Now, after Sungard's plan was confirmed, is that when

16  Drivetrain became the representative in this case?

17       A.   Drivetrain was named, yes, the Plan Administrator,

18  with the effectiveness of -- with the effectiveness of the plan

19  of liquidation.

20       Q.   After the confirmation, did Drivetrain retain Jackson

21  Walker to represent it?

22       A.   Again, I'm going to make a correction.  Drivetrain

23  was not involved with the case after the confirmation.  It was

24  involved with the case at the effectiveness of the plan.  There

25  may be, and I don't recall, time between the confirmation and

USTP (Sungard) Ex. 13
Page 44 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                          Page 44

1    the effectiveness of the plan.  Drivetrain did retain Jackson

2    Walker after it was retained as the Plan Administrator, after

3    the effectiveness of the plan.

4        Q.   Okay.  And after the date of that retention, until

5    Jackson Walker filed its notice of withdrawal in the case, were

6    fees and expenses paid to Jackson Walker for that post-

7    effective-date employment?

8        A.   Yes.

9             MR. GEOGHAN:  Objection.

10            THE WITNESS:  Yes.  There were fees -- there was work

11   done by Jackson Walker for the post-bankruptcy estate.  We were

12   invoiced to them in those fees.

13   BY MR. CHARBONEAU:

14       Q.   And approximately how much did those invoices total?

15            MR. GEOGHAN:  Objection.

16            THE WITNESS:  I seem to remember they totaled about

17   $115,000.

18   BY MR. CHARBONEAU:

19       Q.   Now, do you recall Jackson Walker filing a notice of

20   withdrawal on Sungard's case?

21       A.   Yes.

22       Q.   Was that at your direction?

23       A.   No.  We had begun to replace them beforehand.  As

24   some of this news came out -- I'm going to forget exactly when

25   some of these (indiscernible) revelations, for lack of a better

USTP (Sungard) Ex. 13
Page 45 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889     2201 Old Court Road, Baltimore MD 21208     www.crcsalomon.com

1    term, happened in the news.  We reached out.  I reached out to

2    Cole Schotz, and I said, I'm not exactly sure what's going on

3    here, but it's starting -- this is starting to look a little

4    messy.  And I asked Dan to come in and spoke with him about

5    replacing Jackson Walker, and we started to shift some of the

6    work over from Jackson Walker to Cole Schotz.

7              MR. CHARBONEAU:  I see the court reporter has popped

8    up.  Do you need us to take a break, or --

9              COURT REPORTER:  No, Mr. Charboneau.  No, I don't

10   believe so.

11             MR. CHARBONEAU:  Okay.  Sorry.  I just saw you pop up

12   suddenly and didn't want to power on.  Does anyone need a

13   break?

14             THE WITNESS:  I'm good.  Thank you.

15             MR. GEOGHAN:  No.  We're happy to push through, if

16   it's okay with you.

17             MR. CHARBONEAU:  Yes, yes.

18   BY MR. CHARBONEAU:

19      Q.   Okay.  So at the time that Jackson Walker filed its

20   notice of withdrawal, were there any outstanding amounts owed

21   to Jackson Walker?

22      A.   I don't believe so.  I think -- I don't recall us

23   paying any after they filed their notice.

24      Q.   Did they invoice through that notice of withdrawal?

25             MR. GEOGHAN:  Objection, form.

USTP (Sungard) Ex. 13
Page 46 of 208

1              THE WITNESS:  I don't believe so.  I think the

2    invoices -- again, I'd have to take a look at the invoices and

3    the date.  I don't commit these things to memory.  But I

4    believe they had substantially wound down the work before that

5    notice of withdrawal was filed.

6    BY MR. CHARBONEAU:

7         Q.   I'll just tell you what I'm getting at, and that'll

8    help you perhaps respond to my question, and that is, when

9    Jackson Walker waives claims against the Plan Administrator in

10   this settlement agreement, is there anything actually being

11   waived there?  So by that, my question is: were there fees or

12   claims for fees that you're aware of that Jackson Walker still

13   could make for representing the Plan Administrator post-

14   effective date?

15             MR. GEOGHAN:  Objection to form.

16             MR. BOLAND:  Objection, form.

17             THE WITNESS:  I'm not aware of any -- sorry.  I'm not

18   aware of any bills that were outstanding, that that's related

19   to.  If they had other claims that I don't know about, they

20   certainly haven't told me about it.  But I believe they were

21   paid whatever the rate was -- whatever we were invoiced --

22   excuse me.

23   BY MR. CHARBONEAU:

24        Q.   Has Jackson Walker asserted any claims against the

25   Plan Administrator?

USTP (Sungard) Ex. 13
Page 47 of 208

 1              MR. GEOGHAN:  Objection to form.

 2              MR. BOLAND:  Objection to form.

 3          **THE WITNESS:  None that I know of.**

 4  BY MR. CHARBONEAU:

 5      Q.   So, to the best of your knowledge, in the Plan

 6  Administrator's litigation with Jackson Walker, it has never

 7  asserted any potential counterclaims or other claims against

 8  the Plan Administrator?

 9              MR. BOLAND:  Objection, form.

10          **THE WITNESS:  None that I know of.**

11  BY MR. CHARBONEAU:

12      Q.   Now, we're still here on the document marked for

13  identification as Exhibit 3.  And I just want to turn to some

14  of the specific provisions.  And we'll start with Paragraph 4.

15  Can you see Paragraph 4 on your screen at Sungard018?

16      **A.   Yes.  If this settlement is approved, how much in**

17  **fees and expenses does it provide for Jackson Walker to retain?**

18              MR. GEOGHAN:  Objection.  I couldn't tell if that was

19  the end of the question.  I didn't want to just jump in.

20  BY MR. CHARBONEAU:

21      Q.   Okay.  All right.  Let's -- it was probably a pretty

22  bad question if everybody was paused that long, so I do

23  apologize for that.  Let's look at Paragraph 4.  It says,

24  "Subject to the approval of the Bankruptcy Court or District

25  Court, as applicable, the parties agree that the December 30,

USTP (Sungard) Ex. 13
Page 48 of 208

1  2022, order, Docket Number 899, shall be vacated, and the

2  approval order shall approve on a final basis JW's compensation

3  and reimbursement of expenses in the amount of $35,461.46."

4  Did I read it so far correctly?

5      **A.   Yes.**

6      Q.   So, of the approximately $400,000 in post petition

7  through confirmation date fees paid to Jackson Walker, it's

8  your understanding that they would retain $35,461.46?

9      **A.   That appears to be correct.**

10     Q.   If the final fee order is vacated, what ability,

11 prior to the apparent approval of Jackson Walker retaining

12 $35,461.46, do parties in interest have to object to those

13 fees?

14         MR. GEOGHAN:  Objection.  Form.

15         MR. BOLAND:  Objection.  Form.

16 BY MR. CHARBONEAU:

17     Q.   Let me start over.  I'll withdraw that question.  Mr.

18 Daileader, do you have an understanding regarding whether

19 professionals employed by a debtor in a bankruptcy case have to

20 be employed by order of a Court?

21     **A.   Yes.**

22     Q.   And what is your understanding?

23     **A.   I believe that professionals retained by the Estate**

24 **have to be -- have to file a retention application, and that**

25 **retention, outside of the ordinary course of business, has to**

USTP (Sungard) Ex. 13
Page 49 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 49

1    be approved by the Court.

2        Q.   And do you have an understanding whether

3    professionals retained by a bankruptcy estate and approved to

4    be retained by the Court, whether they have to file

5    applications for fees?

6        **A.   I think they have to comply with the Court's order**

7    **and that the Court's order generally requires them to make**

8    **applications and have them approved by the Bankruptcy Court.**

9        Q.   Do you have an understanding whether or not a

10   professional can be paid in a case if the professional does not

11   have an order authorizing its employment in the case?

12            MR. BOLAND:  Objection to form.

13            MR. GEOGHAN:  Objection to form.

14            **THE WITNESS:  Again, I think they need to comply with**

15   **the Court's order.  I don't have a -- I think that's a**

16   **complicated question, but I think, generally speaking, they**

17   **have to comply with the Court's order, and the Court generally**

18   **requires them to have a confirmed application in order to be**

19   **paid.**

20   BY MR. CHARBONEAU:

21       Q.   Will you agree that the Rule 60 motion of the United

22   States Trustee seeks the vacating of Jackson Walker's

23   employment order in Sungard's case?

24       **A.   That's my general understanding of it, yes.**

25       Q.   And it is your general understanding also that

USTP (Sungard) Ex. 13
Page 50 of 208

1    Sungard joined -- filed a joinder to the U.S. Trustee's motion?

2    **A.    Yes.  An amended joinder, I believe.**

3    Q.    If the final fee order is vacated, will the order of

4    employment of Jackson Walker be affected?

5          MR. GEOGHAN:  Objection as to the form, so it calls

6    for a legal conclusion.

7          MR. BOLAND:  Objection to form.

8          **THE WITNESS:  I guess my answer would be that the**

9    **Court's order will say what the Court's order will say.**

10   BY MR. CHARBONEAU:

11   Q.    Was it Drivetrain's intention that the employment

12   order of Jackson Walker be in any way affected by the

13   settlement agreement?

14         MR. GEOGHAN:  Objection to form.

15         MR. BOLAND:  Objection, form.

16         **THE WITNESS:  I don't think we had an intention.  I**

17   **think we had an agreement to resolve our portion of the claim**

18   **in the amounts and on the terms that are set forth in the**

19   **settlement agreement.  I don't know that one can imply that we**

20   **intended to do anything other than resolve a claim for the**

21   **benefit of our beneficiaries.**

22   BY MR. CHARBONEAU:

23   Q.    Do you recall a reply being filed on your behalf to

24   the objection filed by the United States Trustee to the

25   settlement motion?

USTP (Sungard) Ex. 13
Page 51 of 208

1      A.    I generally do.  If you'd like to show me the reply,

2    I can confirm its authenticity.

3      Q.    All right.  We're going to mark for identification as

4    Exhibit 4, Sungard026 through and including 033.

5                              (Whereupon, Exhibit 4 was marked for

6                              identification.)

7    BY MR. CHARBONEAU:

8      Q.    You can see the Bates stamp in the lower left,

9    Sungard026.  Can you see this document?

10     A.    Yes.

11     Q.    I'll move through it here.  Give you a second.  I'm

12   just going to move to the last page, which is Bates-stamped

13   Sungard032, and it's got Mr. Geoghan's electronic signature on

14   it.

15     A.    I see that.  Thank you.

16     Q.    Do you recognize this as the response filed?

17     A.    Yes.

18     Q.    Now, I want to call your attention to something on

19   Sungard027.  It says here in this top paragraph, and I'll just

20   highlight it here to call your attention to it.  It says, "It

21   seeks to address issues that are not before the Court.  The

22   motion only seeks approved -- to approve the settlement of the

23   Sungard Wind-Down Debtors' and Plan Administrators' claims

24   against JW.  The motion does not purport to preemptively

25   adjudicate the U.S. Trustee's motions or any disputes between

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 52

1   the U.S. Trustee and JW regarding the validity, extent and/or

2   scope of the U.S. Trustee's claims against JW."  Do you see

3   that?

4        **A.   Yes.**

5        Q.   Did I read that fairly accurately?

6        **A.   Yes.**

7        Q.   All right.  What is the basis for the assertion that

8   the settlement agreement would not preemptively adjudicate the

9   U.S. Trustee's motions?

10            MR. GEOGHAN:  Objection to form to the extent it

11  calls for legal conclusions.

12            MR. BOLAND:  Objection, form.

13            **THE WITNESS:  I believe the --**

14            **THE WITNESS:  Oh, fire drill.**

15            MR. GEOGHAN:  Fire drill going on.

16            MR. CHARBONEAU:  Okay.

17            MR. GEOGHAN:  You want to take a break?

18            MR. CHARBONEAU:  Well, it sounds like you need to

19  take a break.  How about this?  How long would they normally

20  last, Mr. Geoghan?  I mean, do we need to --

21            MR. GEOGHAN:  Let me see if it's a drill or if it's

22  an emergency.  Just one second.

23            COURT REPORTER:  Shall I take us off the record?

24            MR. CHARBONEAU:  I don't think we're getting near

25  seven hours so just go ahead and leave it going.

USTP (Sungard) Ex. 13
Page 53 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                      Page 53

```
 1           MR. GEOGHAN:  It's going to be over in two minutes.

 2   It's just a test of the system.  So we can keep going.

 3   BY MR. CHARBONEAU:

 4      Q.   Okay.  So were you answering a question when that

 5   weird alarm went off, Mr. Daileader, or do I need to ask a

 6   question?

 7           MR. GEOGHAN:  If you can read back the transcript, I

 8   think it would reset all of us.  Thank you.

 9   BY MR. CHARBONEAU:

10      Q.   All right.  Well, I -- we won't worry about reading

11   back.  I'll just sort of restate it.  Okay.  Can you tell me

12   the factual basis for the assertion that the motion does not

13   purport to preemptively adjudicate the U.S. Trustee's motions?

14           MR. GEOGHAN:  Objection to form.

15           MR. BOLAND:  Objection, form.

16           THE WITNESS:  I believe that the Plan Administrator

17   has the authority to resolve claims regarding the plan, and we

18   believe that the settlement resolves our claims.  We do not

19   believe the settlement resolves your claims.  My understanding

20   is that your claims are separate than our claims.  I think

21   that's what we say here, is that we -- the settlement, as we

22   understand it, is resolving our claims with regards to the

23   broader Rule 60 motion, not to the U.S. Trustee's motion.

24   BY MR. CHARBONEAU:

25      Q.   So then, is it your position if, pursuant to the
```

USTP (Sungard) Ex. 13
Page 54 of 208

1    settlement agreement and settlement order, the bankruptcy court

2    or district court approves on a final basis that approximately

3    $35,000 in fees and expenses, that there would be no impact on

4    the relief sought by the U.S. Trustee to vacate the employment

5    order in the case?

6              MR. GEOGHAN:  Objection to form.

7              MR. BOLAND:  Objection, form.

8              **THE WITNESS:  I think what our position would be is**

9    **that the Court would -- if the Court approved them, then the**

10   **Court would deem that to be correct.  The Court is the fact**

11   **finder here.  We've, you know, sought to approve the settlement**

12   **with Court approval.  I don't know how to answer your question**

13   **in any other way.**

14   BY MR. CHARBONEAU:

15       Q.   I want to turn back to the settlement motion marked

16   for identification as Exhibit 3, which is Bates stamp 001

17   through and including 025.  I am displaying the page Bates

18   stamp Sungard009 and want to direct your attention to paragraph

19   32.  Can you see paragraph 32 clearly on your screen?

20       **A.   Yes.**

21       Q.   All right.  It says, "The Plan Administrator submits

22   there is a significant likelihood that the order approving JW's

23   final fee application will be vacated."  Did I read it correct

24   so far?

25       **A.   Yes.**

USTP (Sungard) Ex. 13
Page 55 of 208

 1        Q.    Did -- or let me back up.  Do you also have a

 2   position on the likelihood of the employment order being

 3   vacated?

 4             MR. GEOGHAN:  Objection to form.

 5             MR. BOLAND:  Objection, form.

 6             **THE WITNESS:  No.  But I think that the -- I have to**

 7   **think about whether or not vacating that wouldn't achieve the**

 8   **same, wouldn't have the same effect.  But I think the document**

 9   **says what the document says.**

10   BY MR. CHARBONEAU:

11        Q.    If there was a significant likelihood that the Court

12   would vacate the final fee application, are there facts upon

13   which you would rely for the assertion that there is not a

14   significant likelihood the Court would vacate the employment

15   order?

16             MR. GEOGHAN:  Objection to form.

17             MR. BOLAND:  Objection, form.

18             **THE WITNESS:  I don't know the answer.  I haven't --**

19   **as I mentioned, I hadn't considered that in the alternative.**

20   **And I don't know, candidly, what the likelihood that the Court**

21   **would take action on one versus the other would be.  Again,**

22   **sort of point to the document and say that, you know, a**

23   **consideration is that there is a significant likelihood that**

24   **the order regarding the final fee application will be vacated.**

25   BY MR. CHARBONEAU:

USTP (Sungard) Ex. 13
Page 56 of 208

1          Q.   Is it still Sungard's position -- or let me back up.

2     I said Sungard.  Let me strike that.

3               Is it still your position today that it's a

4     substantial likelihood the Court would vacate the fee order

5     should this matter go to trial?

6          **A.   Yes, I think we have -- I think there's a high**

7     **likelihood.**

8          Q.   Your position is that the settlement would not affect

9     the relief sought by the U.S. Trustee.  Have I paraphrased that

10    accurately?

11              MR. GEOGHAN:  Objection to form.

12              MR. BOLAND:  Objection to form.

13              **THE WITNESS:  Yes.**

14    BY MR. CHARBONEAU:

15         Q.   Has Jackson Walker represented that it has that same

16    position on the settlement agreement effect on the relief

17    sought by the U.S. Trustee?

18              MR. GEOGHAN:  Objection to form.

19              MR. BOLAND:  Objection.  Form.

20              **THE WITNESS:  They haven't -- you would have to ask**

21    **Jackson Walker.  I haven't -- they haven't made any**

22    **representations.**

23    BY MR. CHARBONEAU:

24         Q.   I'm going to ask -- well, let me back up.  Are you

25    aware that there was a hearing conducted on December 9th, 2025,

USTP (Sungard) Ex. 13
Page 57 of 208

1  in this particular matter?

2      A.    I'm afraid I'd have to ask you to be more specific.

3  There have been a number of hearings before Judge Moses and

4  then Judge Gonzalez, and I don't really -- while I've sort of

5  reviewed them, I haven't -- I couldn't distinguish from memory

6  what the date was and what the subject matter of each was.

7      Q.    I'm gonna ask the court reporter to mark for

8  identification as Exhibit 5 Sungard144 through and including

9  151.

10                        (Whereupon, Exhibit 5 was marked for

11                         identification.)

12  BY MR. CHARBONEAU:

13      Q.    We're just going to look at a couple provisions of a

14  transcript that says: transcript of a status conference before

15  the Honorable Eduardo V. Rodriguez, Chief United States

16  Bankruptcy Judge, list here December 9th, 2025.  Do you see

17  that?

18      A.    Yes.

19      Q.    Do you recall whether or not your counsel was present

20  at the hearing?

21      A.    I believe he was.

22      Q.    Okay.  And during this hearing, do you recall --

23  well, let me back up.  Do you know whether or not Jackson

24  Walker's counsel made representations at the hearing regarding

25  how it viewed the settlement agreement affecting monetary

USTP (Sungard) Ex. 13
Page 58 of 208

1  relief sought by the United States Trustee?

2           MR. BOLAND:  Objection, form.

3           **THE WITNESS:  I don't know.  I don't know the**

4  **substance matter of what Jackson Walker represented in that**

5  **regard.**

6  BY MR. CHARBONEAU:

7      Q.   Do you know who Jason Boland is?

8      **A.   I believe he's the gentleman sitting on the call.**

9  **He's a Norton Rose attorney representing Jackson Walker.**

10     Q.   And there was discussion and a settlement agreement.

11 I'm gonna call your attention here, looking at Page 30 of the

12 transcript, Lines 10 through 15.  Mr. Boland says that "They

13 could pursue nonmonetary relief.  But from a monetary

14 standpoint, Your Honor, we believe we've settled with the party

15 in interest that has standing, that owns the client -- that

16 owns the right to receive the monies.  And so, from our -- from

17 Jackson Walker's perspective, that issue would be settled on

18 the monetary perspective."  Do you see that?

19     **A.   Yes.**

20     Q.   Do you have any factual basis to dispute that Jackson

21 Walker's position is the settlement agreement will impact the

22 monetary relief sought by the U.S. Trustee?

23          MR. GEOGHAN:  Objection, form.

24          MR. BOLAND:  Objection, form.

25          **THE WITNESS:  I can read the words there and**

USTP (Sungard) Ex. 13
Page 59 of 208

1    understand that that seems to be the argument that Mr. Boland

2    is making.  But I don't have any thoughts beyond what is, you

3    know, stated in the transcript.

4    BY MR. CHARBONEAU:

5         Q.    I appreciate that, but my question is, you know, a

6    little bit more simple.  Has any representative of Jackson

7    Walker represented to you, Drivetrain, that the settlement

8    agreement will not impact monetary relief sought by the U.S.

9    Trustee?

10             MR. GEOGHAN:  Objection to form.

11             MR. BOLAND:  Objection, form.

12             THE WITNESS:  They haven't made that representation

13   to me.

14   BY MR. CHARBONEAU:

15        Q.    I'm going to turn back to the settlement agreement,

16   which has been marked for identification as Exhibit 3.  I want

17   to take a look at Sungard020 and paragraph 7.  Can you read

18   paragraph 7, or would you like me to make it bigger?

19        A.    A little bit more would be nice.  Thank you.

20        Q.    Have you had the opportunity to review paragraph 7?

21        A.    Yes.

22        Q.    Does it refresh your recollection of the contents of

23   that paragraph?

24        A.    Yes.

25             MR. GEOGHAN:  Objection to form.

USTP (Sungard) Ex. 13
Page 60 of 208

```
 1   BY MR. CHARBONEAU:

 2       Q.   Do you know who requested paragraph 7 be included in

 3   the settlement agreement?

 4       A.   No.

 5       Q.   Were any representations made on behalf of Jackson

 6   Walker to Drivetrain regarding the purpose for paragraph 7 of

 7   this agreement?

 8            MR. GEOGHAN:  Objection to form.

 9            THE WITNESS:  No.

10   BY MR. CHARBONEAU:

11       Q.   Are you aware of potential language the U.S. Trustee

12   has proposed for inclusion in any order approving the

13   settlement agreement?

14       A.   I may have read your objection at the time, but I

15   don't recall it.

16       Q.   I'm going to ask the court reporter to mark for

17   identification as Exhibit 5, Sungard 040 through and including

18   043.

19            COURT REPORTER:  Counsel, you've already marked

20   Exhibit 5 as 114-151.

21            MR. CHARBONEAU:  Yes, you are correct.  I apologize.

22   This is Exhibit 6.  We'll mark this for identification as

23   Exhibit 6.  Thank you, Ms. Court Reporter.

24                          (Whereupon, Exhibit 6 was marked for

25                            identification.)
```

USTP (Sungard) Ex. 13
Page 61 of 208

```
 1              MR. GEOGHAN:  And what were the numbers?  I'm sorry,
 2     I didn't get them.
 3              MR. CHARBONEAU:  It is Sungard 040 through and
 4     including 043.
 5              MR. GEOGHAN:  Thank you.
 6     BY MR. CHARBONEAU:
 7         Q.   And it identifies this document as U.S. Trustee's
 8     Notice of Proposed Agenda.  Can you see that on your screen,
 9     Mr. Daileader?
10         A.   Yes.
11         Q.   Have you seen this document before?
12         A.   I may have.  I don't recall it.  But from time to
13     time I've reviewed the documents that have been filed.
14         Q.   Okay.  In this document in particular, the U.S.
15     Trustee noted that the U.S. Trustee objection could be resolved
16     by the inclusion of this settlement language here,
17     notwithstanding any contrary provision in this order or the
18     settlement agreement.  And then it has a paragraph 1 and 2.  Do
19     you see that?
20         A.   Yes.  I'm reviewing it right now.
21         Q.   Have you had the opportunity to read it now?
22         A.   Yes.  Thank you.
23         Q.   Have you reviewed that prior to today?
24         A.   I don't recall the language, but I may have.
25         Q.   All right.  Now, turning back to that paragraph 7
```

USTP (Sungard) Ex. 13
Page 62 of 208

1  that we were reviewing a second ago, so I'm just going to flip

2  pages.  We're going to go back to the document marked for

3  identification as Exhibit 3, and we were on paragraph 7.  Was

4  paragraph 7 -- let me strike that and restart.

5          Is paragraph 7 material to the Plan Administrator?

6          MR. BOLAND:  Objection, form.

7          MR. GEOGHAN:  Objection to form.  Sorry.  Go ahead,

8  Jason.  We both objected.  Go ahead.

9          MR. BOLAND:  Just objection to form.

10 BY MR. CHARBONEAU:

11     Q.    Let me try again.  If the Court says to you, and by

12 you, I mean Drivetrain, that the Court will not approve the

13 settlement agreement unless it contains the language in the

14 document marked for identification as Exhibit 6, which we

15 discussed, would Drivetrain still seek approval of the

16 settlement agreement?

17         MR. GEOGHAN:  Objection to the form.

18         MR. BOLAND:  Objection, form.

19         **THE WITNESS:  I don't know if I can answer the**

20 **hypothetical here.  I'd have to consider it and probably speak**

21 **to counsel about it.  I mean, with regards to the bar, just to**

22 **make an obvious point, the only thing it -- number seven**

23 **doesn't simply include bar for certain -- you know, I guess bar**

24 **for the benefit of Jackson Walker to certain claims, but it**

25 **also goes so far to say that, you know, that bar doesn't affect**

USTP (Sungard) Ex. 13
Page 63 of 208

1    remedies under the agreement should the agreement would be

2    breached.

3              That, in and of itself, at least in my mind, is

4    important to both parties, both settling parties because we

5    would obviously require that within the document, we would have

6    the ability to bar -- to, excuse me, to enforce a document and

7    enforce the agreement going forward.  So I'd have to give it

8    some consideration as to how this all interplays.  It's a

9    fairly complicated matter.

10              And, candidly, one of the considerations that the

11   plan would make and has made is that, you know, if there's a

12   subsequent order that comes in and it affects the plan

13   negatively, not just affirmatively, but negatively, you know,

14   how does that change the way that we think about this?  I'll

15   state the obvious, which is that we are operating with a

16   liquidating plan and that the end result of that liquidating

17   plan is the resolution of the Estate, Sungard, which means

18   there's terminus on it.

19              And to the degree that we can achieve that more

20   quickly and more cleanly, I believe, all things being equal,

21   that has a benefit to our beneficiaries.  So, anyways, that's a

22   long answer to what seems to be a very complicated intersection

23   of dealing with hypotheticals.

24   BY MR. CHARBONEAU:

25        Q.   Do you have an understanding as to whether Drivetrain

USTP (Sungard) Ex. 13
Page 64 of 208

 1  would be able to, as Plan Administrator, accept additional

 2  money as a result of this litigation, should the Court approve

 3  the settlement agreement?

 4              MR. GEOGHAN:  Object to the form.

 5              MR. BOLAND:  Objection, form.

 6              **THE WITNESS:  If the Court's order allocated or**

 7  **appropriated money to us, we would most certainly conform and**

 8  **act in accordance with the Court's order.**

 9  BY MR. CHARBONEAU:

10      Q.   What provision of the Settlement Agreement would

11  allow the Plan Administrator to receive additional money from

12  Jackson Walker, should it be ordered in this litigation?

13              MR. GEOGHAN:  Objection to form.

14              MR. BOLAND:  Objection, form.

15  BY MR. CHARBONEAU:

16      Q.   I'll turn back to the document marked for

17  identification as Exhibit 3.  You just tell me which provision

18  you need to look at, or if you need to skim through them all.

19  But if you could identify for me which provision you rely on

20  for the assertion that the Plan Administrator could receive

21  additional funds.

22              MR. GEOGHAN:  Objection to form.

23              MR. BOLAND:  Objection, form.

24              **THE WITNESS:  Again, I'm somewhat confused by your**

25  **question, because if you're saying that if there was, as I**

USTP (Sungard) Ex. 13
Page 65 of 208

1    understand it -- I apologize if I misunderstand it -- if you're

2    saying that there is a -- the settlement is approved and a

3    subsequent court order appropriates money to the plan and

4    directs the plan through the administrator to pay the money to

5    its beneficiaries, that we would ignore or not conform to the

6    Court's order because there was a settlement agreement?  I

7    presume that that issue as to whether or not it was precluded

8    might be an issue put before the Court, and the Court would

9    deal with that in the order.  I think our position would be we

10   would, in every case, follow the Court's order.  If there was

11   an objection on that basis, that would be something that would

12   be brought before the Court, and the Court would resolve it,

13   not necessarily the Plan Administrator.

14   BY MR. CHARBONEAU:

15       Q.   What provision of the Settlement Agreement provides

16   for the Court to have the ability to order additional monetary

17   relief to Sungard?

18            MR. GEOGHAN:  Objection to form.

19            MR. BOLAND:  Objection, form.

20            THE WITNESS:  I don't understand your question, and I

21   don't know that that would necessarily need to be something

22   that is included within the settlement agreement.  Again, it's

23   -- I think there's a presumption that the -- you know, that the

24   -- you know, that the money that was coming in here was -- or

25   the money that is later being appropriated was somehow coming

USTP (Sungard) Ex. 13
Page 66 of 208

1    pursuant to the settlement agreement, or it's an addition or

2    it's contradicting it.  Again, this is all hypothetical from my

3    -- from at least my limited knowledge on this.  I would presume

4    that there could be money that was appropriated to the plan on

5    the basis of a separate claim.  Maybe it's monies that were

6    recovered by the Trustee for the benefit of the different plans

7    that are out there, and that comes to us.

8              I don't know that there's any -- anything in the plan

9    here that precludes that.  In fact, I don't think there's

10   anything -- I'm sorry -- in the settlement that precludes that.

11   I don't think that's the case.  All we're narrowly saying is

12   that we're being paid an amount of money in settlement of the

13   claims that we've litigated through the Rule 60 motion.  You

14   know, I apologize.  That's my simple understanding.

15   BY MR. CHARBONEAU:

16        Q.   Okay.  Let me just ask another question or two to see

17   if I understood your answer.  Not that you didn't explain

18   yourself well.  Just make sure we're on the same page.  You'll

19   agree that the settlement agreement releases any monetary claim

20   based on any possible legal theory that the Plan Administrator

21   has based on Jackson Walker's conduct during the Sungard case,

22   will you not?

23             MR. GEOGHAN:  Objection to form.

24             MR. BOLAND:  Objection to form.

25   BY MR. CHARBONEAU:

USTP (Sungard) Ex. 13
Page 67 of 208

1       Q.   Did you respond?

2       A.   No.  I'm sorry.  I believe that you said that the

3   settlement, if I understood it, releases any monetary claim,

4   and I apologize, you qualified that two more times, so I want

5   to make sure I'm answering your question precisely.  I believe

6   that the settlement resolves any monetary claims brought by the

7   Plan Administrator on behalf of the plan.

8            If there are other monetary claims that other parties

9   may have, the question is, you know, they're not signatories to

10  this settlement agreement.  If they're able to pursue them,

11  fine, and then we're certainly not trying to impede them or

12  take any position with regards to those claims.  That is

13  separate and apart.  We're really trying to be very narrow in

14  terms of saying what we understand to be our claims and we're

15  the party in interest in them.  We're resolving those claims

16  for -- you know, pursuant to the terms that are included in

17  this.

18            If others have claims, we don't take any position on

19  that whatsoever.  And I don't -- you know, if another party,

20  you know, relies on this and gets into an argument with, you

21  know, a third party about whether or not this is covered to it,

22  then I suppose the question that arises -- this is from a non-

23  lawyer -- is whose claims are they?  But that's for somebody

24  else to decide.  I would imagine a judge.

25       Q.   Well, let's assume for a moment that the settlement

USTP (Sungard) Ex. 13
Page 68 of 208

1   agreement is approved exactly as it's presented to the Court.

2   Okay?  Are we on the same page in the hypothetical so far?

3        **A.   So far, yes, thank you.**

4        Q.   If additional money is directed to be paid to the

5   Plan Administrator on behalf of Sungard, and Jackson Walker

6   argued that the Plan Administrator cannot be paid more because

7   of the settlement agreement, would you then disagree with

8   Jackson Walker's argument?

9              MR. GEOGHAN:  Objection to form.

10             MR. BOLAND:  Objection, form.

11             **THE WITNESS:  I think it depends on the**

12   **circumstances, but I think that the settlement agreement is**

13   **precise enough to say that the claims that are resolved are**

14   **these claims.  And the ones that we know to be -- know to be,**

15   **you know, the assets of our estate.  I don't think that the,**

16   **you know, the settlement agreement, bars us from taking money**

17   **from any other source.**

18             **If somebody walked in, for instance, I'm going to**

19   **use a ridiculous example on this and says, you know -- let me**

20   **use some ridiculous example and said somebody else -- if one of**

21   **the other Plan Administrators resolved this and for some reason**

22   **decided that in the good of their heart, they were going to**

23   **give it, give money that they litigated and achieved, you know,**

24   **and got a collection on, and we're going to give it to the**

25   **Sungard beneficiaries because they had money left over, I don't**

USTP (Sungard) Ex. 13
Page 69 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 69

1    think this settlement bars that.  I don't think that there's

2    anything that bars it.  It simply says that, you know, that the

3    money that's being paid to us is in resolution of our claims

4    and distinctly our claims.

5    BY MR. CHARBONEAU:

6        Q.   Okay.  But I don't -- what I want to focus on is

7    money from Jackson Walker, not from some other Plan

8    Administrator or other potential litigation or windfall, but

9    simply Jackson Walker.  Okay.  So if Jackson Walker argues that

10   Sungard Plan Administrator has no right to additional funds

11   and, therefore, can't be paid and can't be ordered to be paid

12   additional money beyond the $385,000 in this settlement, what

13   is your position on that?

14            MR. BOLAND:  Objection, form.

15            MR. GEOGHAN:  Objection to form.

16            THE WITNESS:  Our position is we would comply with

17   the court order.  Not to oversimplify it, but the bankruptcy

18   estate remains within the jurisdiction and will at all times

19   remain within the jurisdiction of the bankruptcy court, so we

20   will follow its direction and its order.

21   BY MR. CHARBONEAU:

22       Q.   You recall -- or do you recall responding to

23   interrogatories issued by the United States Trustee?

24       A.   I do.

25       Q.   I'm gonna ask the court reporter to mark for

USTP (Sungard) Ex. 13
Page 70 of 208

1   identification as Exhibit 7 Sungard160 through and including

2   166.

3                          (Whereupon, Exhibit 7 was marked for

4                          identification.)

5   BY MR. CHARBONEAU:

6       Q.    And I'm just going to scroll through these couple

7   pages so you can see them all.  At the end, there's a

8   verification regarding the interrogatories.  Do you recognize

9   that verification, Mr. Daileader?

10      **A.    Yes.**

11      Q.    And is that your electronic endorsement?

12      **A.    Yes.**

13      Q.    Did you place or authorize the placement of your

14  electronic endorsement on this document?

15      **A.    Yes.**

16      Q.    So you recognize the document marked for

17  identification as Exhibit 7 as your interrogatory responses?

18      **A.    Yes.**

19      Q.    In response to interrogatory number one, you

20  responded that the settlement represents more than 93 percent

21  of that amount.  Do you see that here in the middle of the

22  page?

23      **A.    Yes.**

24      Q.    And will you agree that that amount being referred to

25  as the pre-confirmation attorney's fees and expenses paid to

USTP (Sungard) Ex. 13
Page 71 of 208

1   Jackson Walker?

2        **A.   Yes.**

3        Q.   The 93 percent referenced, if the fees and expenses

4   incurred in the litigation are taken into account, is the

5   recovery to be paid to Class 3 claimants actually equal to 93

6   percent?

7             MR. GEOGHAN:  Objection to form.

8             **THE WITNESS:  If the fees and expenses -- is your**

9   **question if the fees and expenses that have been undertaken to**

10  **recover the amounts were to be added to the pre-confirmation**

11  **attorney's fees and expenses, would the $385,000 be 93 percent**

12  **of that amount?  Is that your question?**

13  BY MR. CHARBONEAU:

14       Q.   That's one way of looking at it, so go ahead and

15  carry on.

16       **A.   I think the simple math says no.**

17       Q.   And the amount of money that has been incurred with

18  respect to this litigation, has that been paid out of the

19  Sungard estate to date, you said?

20            MR. GEOGHAN:  Objection to form.

21            **THE WITNESS:  Yes.**

22  BY MR. CHARBONEAU:

23       Q.   All right.  Now, the position of Sungard is that the

24  likelihood of success in the litigation is high.  Is that

25  accurate?

USTP (Sungard) Ex. 13
Page 72 of 208

```
1              MR. GEOGHAN:  Objection to form.

2              THE WITNESS:  Yes.

3              MR. CHARBONEAU:  What's the objection to form, Mr.

4    Geoghan?

5              MR. GEOGHAN:  And you're asking Tim Daileader.  He is

6    here as a fact witness.  You're inquiring with him -- you're

7    asking him about Sungard.  He's the plan --- he is an employee

8    of Drivetrain, who was the Plan Administrator.  This is not,

9    nor was it noticed as a 30(b)(6) of Drivetrain or a 30(b)(6) of

10   the reorganized Debtors.  This is a deposition of Tim

11   Daileader.  That was my objection.  The question was unclear.

12   You are welcome to re-ask the question.  That was my objection,

13   if you wanted that discussion about it.

14   BY MR. CHARBONEAU:

15        Q.   All right.  Mr. Daileader, has Drivetrain represented

16   that its assessment of the likelihood of success on the merits

17   is high in this litigation?

18        A.   Yes.

19        Q.   And what is your understanding of what is meant by

20   the likelihood is high?

21        A.   That there is a good, or very good, but not perfect,

22   probability that the Court, after trial, would enter a judgment

23   that would be favorable to the claim that the plan has

24   asserted.

25        Q.   Now, what facts do you rely upon for your assertion
```

USTP (Sungard) Ex. 13
Page 73 of 208

1   that it's not perfect?

2       A.   Facts or my judgment?  I rely on my judgment.  I have

3   litigated as a Plan Administrator or post-bankruptcy trustee

4   over 500 different litigations.  And in my experience,

5   litigation is uncertain.  And until you get a decision from a

6   judge, you don't have it.  There may be facts that we're not

7   aware of.  There may be defenses we're not aware of.  There may

8   be mitigating circumstances.

9            So, while we do think that, given what we have

10  reviewed, including Judge Isgur's letter and what we know

11  about, you know, the date of the Sungard filing, we think that

12  those are, you know, positive facts that would support our

13  claim.  We don't know what we don't know.  And I think until

14  you were to fully litigate something, you would be

15  overconfident if you thought that you had a perfect knowledge

16  of what the future would yield.

17      Q.   Did Jackson Walker make any disclosure in its

18  employment application that there was a romantic relationship

19  between Elizabeth Freeman and Judge David R. Jones?

20           MR. BOLAND:  Objection to form.

21           THE WITNESS:  I wasn't at the company or involved

22  with the company at the time that it made its employment

23  application.  But I don't know that there was any

24  representation to that effect.

25  BY MR. CHARBONEAU:

USTP (Sungard) Ex. 13
Page 74 of 208

Timothy Daileader
Proceedings on 02/10/2026                                      Page 74

1        Q.   In assessing the probability of success in the merits

2    in this case, did you review the employment application filed

3    by Jackson Walker in Sungard's case?

4        **A.   I believe I did some time ago, when the allegations**

5    **first arose, if you would, and by that I mean I probably read**

6    **about it in the newspaper or one of the trade emails that go**

7    **out.  I did go back and review particularly the billing apps.**

8    **I believe I looked at the employment -- I'm sorry, the**

9    **employment application quickly, and I looked at the billing**

10   **apps, and I didn't see Ms. Freeman's name in any of them.**

11       Q.   Do you have any reason to dispute that no disclosure

12   was made in connection with Jackson Walker's employment

13   application that Elizabeth Freeman was cohabitating with Judge

14   Jones?

15            MR. BOLAND:  Objection to form.

16            **THE WITNESS:  I -- I'm sorry.  I have no reason to**

17   **dispute that.**

18   BY MR. CHARBONEAU:

19       Q.   Do you have any reason to dispute that the employment

20   application did not disclose that Elizabeth Freeman and Judge

21   Jones were in an intimate relationship?

22            MR. BOLAND:  Objection, form.

23            **THE WITNESS:  I have no reason to dispute any of**

24   **that.**

25   BY MR. CHARBONEAU:

USTP (Sungard) Ex. 13
Page 75 of 208

Timothy Daileader
Proceedings on 02/10/2026                                              Page 75

1        Q.   Do you have any reason to dispute that the employment

2   application did not disclose a judicial conflict caused by the

3   relationship between Elizabeth Freeman and Judge Jones?

4             MR. BOLAND:  Objection, form.

5             **THE WITNESS:  I don't have any reason to dispute**

6   **that.**

7   BY MR. CHARBONEAU:

8        Q.   Are you aware of whether the order approving the

9   employment required Jackson Walker to disclose conflicts that

10  it discovered after the entry of the order approving the

11  employment?

12            MR. GEOGHAN:  Objection to form.

13            MR. BOLAND:  Objection, form.

14            **THE WITNESS:  I don't dispute your statement.**

15  BY MR. CHARBONEAU:

16       Q.   Let's take a quick look at that employment order.

17  We're going to mark for identification Sungard 085 through 087.

18                         (Whereupon, Exhibit 8 was marked for

19                         identification.)

20  BY MR. CHARBONEAU:

21       Q.   I'm going to scroll down so you can see the Judge's

22  signature.  That's the last page of the document.  Have you

23  reviewed this order before?

24       **A.   I think I mentioned just previously that I had looked**

25  **at this sometime.**

USTP (Sungard) Ex. 13
Page 76 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 76

1      Q.    Paragraph 3 of the order says, "The firm will review

2   its files periodically during the pendency of these Chapter 11

3   cases to ensure that no conflicts or other disqualifying

4   circumstances exist or arise."  Do you see that?

5      A.    Yes.

6      Q.    And the order is dated June 6, 2022, correct?

7      A.    Yes.  It appears to be.

8      Q.    And the order orders Jackson Walker -- it goes on to

9   say, "If any new relevant facts or relationships are discovered

10  or arise, the firm will use reasonable efforts to identify such

11  further developments and will promptly file a supplemental

12  declaration as required by Federal Rule of Bankruptcy Procedure

13  2014(a)."  Do you see that?

14     A.    Yes.

15     Q.    Are you aware of any supplemental disclosure filed by

16  Jackson Walker in Sungard's case regarding a relationship of

17  any sort between Elizabeth Freeman and former Judge Jones?

18             MR. GEOGHAN:  Objection to form.

19             MR. BOLAND:  Objection, form.

20             THE WITNESS:  No.

21  BY MR. CHARBONEAU:

22     Q.    Are you aware of Jackson Walker filing any

23  supplemental declaration in Sungard's case?

24     A.    No, I'm not.

25     Q.    Now, are you aware that Jackson Walker retained

USTP (Sungard) Ex. 13
Page 77 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 77

1    ethics counsel regarding the relationship between Ms. Freeman

2    and former Judge Jones?

3        **A.    I believe I read that in Judge Isgur's letter.**

4        Q.    Were you aware that, at the time Sungard employment

5    application was to be filed with the Court, that Jackson Walker

6    was in communications regarding whether to disclose a

7    relationship between Elizabeth Freeman and former Judge Jones

8    in that application?

9            MR. BOLAND:  Objection to form.

10           **THE WITNESS:  I believe that's generally consistent**

11   **with what Judge Isgur laid out in this letter.**

12   BY MR. CHARBONEAU:

13       Q.    All right.  I'm going to ask the Court to mark -- I

14   mean, the court reporter to mark for identification as Exhibit

15   Number 9, Sungard112.

16                          (Whereupon, Exhibit 9 was marked for

17                           identification.)

18   BY MR. CHARBONEAU:

19       Q.    Now, as we're getting there, do you know who William

20   Jenkins is, Mr. Daileader?

21       **A.    No, I don't.**

22       Q.    If I represent to you that he is general counsel for

23   Jackson Walker, do you have any reason to dispute that?

24       **A.    No.**

25       Q.    And I'm showing you a document here.  It's an email

USTP (Sungard) Ex. 13
Page 78 of 208

1   from William Jenkins, dated May 11, 2022, to Jacqueline Harvey.

2   Copy to Pat Cowlishaw and Peter Jarvis.  Do you see that?

**3**       **A.   I do.**

4       Q.   Do you know who Pat Cowlishaw was at Jackson Walker?

**5**       **A.   No, I do not.**

6       Q.   Mr. Jenkins' email is in response to an email below

7   here from Jacqueline Harvey.  And Jacqueline says, "I filled

8   Peter in that the firm has a disclosure due to the Court

9   tomorrow.  Are you available to discuss the disclosure language

10  tonight or early tomorrow before the filing is due?  Also, is

11  it your understanding that an extension for filing this

12  disclosure cannot be sought?"  Do you see that?

**13**      **A.   I do.**

14      Q.   Was Sungard -- was the employment application due at

15  this time, May of 2022 in the Sungard case?

**16**      **A.   It may have been.  Again, I wasn't with the company**

**17** **at this point in time, but given that the -- I believe the**

**18** **petition was filed in April of 2022.  This may be referring to**

**19** **the retention application in Sungard.**

20      Q.   Mr. Jenkins' responds: "We are not going to include

21  the proposed disclosure at this time.  We may amend once we

22  have a game plan."  Do you see that?

**23**      **A.   Yes.**

24      Q.   Do you have any facts upon which Drivetrain relies,

25  or you rely, to dispute that this is not regarding the

USTP (Sungard) Ex. 13
Page 79 of 208

1   disclosure during Sungard's case?

2          MR. BOLAND:  Objection to form.

3          **THE WITNESS:  I don't have any facts to dispute that,**

4   **but I, again, I -- it's not perfectly clear, but again, I'm not**

5   **disputing it.**

6   BY MR. CHARBONEAU:

7      Q.   Have you seen this email before?

8      **A.   I don't know.  I certainly have heard about the**

9   **substance of this, whether or not it was -- I read about it in**

10  **Judge Isgur's letter.  But I don't recall seeing this email**

11  **particularly.  Yeah, I apologize.  I just don't recall seeing**

12  **it exactly.**

13     Q.   Are you aware of whether Jackson Walker received an

14  opinion letter from ethics counsel regarding its obligation to

15  disclose to clients the judicial conflict between -- caused by

16  Elizabeth Freeman and Judge Jones' relationship?

17         MR. BOLAND:  Objection, form.

18         **THE WITNESS:  I do believe that I've heard that they**

19  **have an opinion letter.**

20  BY MR. CHARBONEAU:

21     Q.   I'm going to ask the court reporter to mark for

22  identification as Exhibit 10 Sungard088 through and including

23  111.

24                         (Whereupon, Exhibit 10 was marked for

25                          identification.)

USTP (Sungard) Ex. 13
Page 80 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                   Page 80

```
 1   BY MR. CHARBONEAU:

 2        Q.    And this is a series of documents here.  Go here.

 3   Just make it a little bit smaller so you can see Sungard108

 4   (sic) through and including Sungard111.  Just go back up to the

 5   top.  Let me know if you need me to scroll through it, but take

 6   a look at this for a second, and then the question.

 7        A.    Can you make it a little larger?  I apologize.

 8   Excuse me.  If you can make it a little larger.  Thank you.

 9   Perfect.  Perfect.

10        Q.    And let me know if you need me to scroll down.  The

11   question I'm going to have for you is, have you seen this

12   opinion letter before?

13        A.    I don't believe I've seen the opinion letter before.

14   No.

15        Q.    You see the date on this letter is June 2nd, 2022?

16        A.    Yes.

17        Q.    And it starts, "This memorandum addresses the duties

18   of a lawyer at a firm who knows that the judge presiding over a

19   case in which the lawyer and firm represents a party has a

20   conflict of interest that the judge was and is required to

21   disclose under 28 USC § 455, but has not disclosed."  Do you

22   see that?

23        A.    Yes.

24        Q.    I'm going to scroll down to the very last page

25   bearing Bates stamp Sungard111, and it states here, picking up,
```

USTP (Sungard) Ex. 13
Page 81 of 208

1   "In our opinion, disclosure by the lawyer to firm clients about

2   judicial conflict is necessary."  Do you see that?

**3**       A.   Yes.

4       Q.   Are you aware of whether Jackson Walker made any

5   disclosure to Sungard regarding judicial conflict in Sungard's

6   case?

**7**       A.   **I'm not aware of any disclosure.**

8       Q.   Now, this opinion letter was provided to Jackson

9   Walker on June 2, 2022.  So we're going to look at Sungard107.

10  So that opinion letter was an attachment to an email dated June

11  2, 2022.  Do you see that?

**12**      A.   Yes.

13      Q.   Looking back at the document we've marked for

14  identification as Exhibit 8, the order approving Jackson

15  Walker's employment was entered on June 6th, 2022, correct?

**16**      A.   Yes.

17      Q.   So you'll agree that Jackson Walker had an opinion

18  letter from his ethics counsel regarding disclosure of the

19  judicial conflict prior to the entry of its employment order in

20  Sungard's case, will you not?

21          MR. BOLAND:  Objection to form.

**22**          **THE WITNESS:  Yes.**

23  BY MR. CHARBONEAU:

24      Q.   Do you have -- let me back up.  Are you aware of

25  whether Drivetrain has any facts upon which it relies for the

USTP (Sungard) Ex. 13
Page 82 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 82

```
 1   proposition that Jackson Walker's non-disclosure of the

 2   relationship between Ms. Freeman and Judge Jones was anything

 3   other than intentional?

 4          MR. BOLAND:  Objection, form.

 5          THE WITNESS:  I'm not aware of anything.

 6   BY MR. CHARBONEAU:

 7      Q.   Do you, as the representative of Drivetrain, have an

 8   understanding as to whether or not -- let me strike that and

 9   start over.  Do you have an opinion as to whether the non-

10   disclosure was intentional or unintentional?

11          MR. BOLAND:  Object to form.

12          THE WITNESS:  I don't have an opinion of that.  I

13   don't know either party.

14   BY MR. CHARBONEAU:

15      Q.   Okay.  Well, based on the documents we just looked

16   at, would you agree that it appears Jackson Walker

17   intentionally did not disclose the judicial conflict to

18   Sungard?

19          MR. BOLAND:  Object to form.

20          THE WITNESS:  Given that one email that said that --

21   where they referred to some game plan, that would appear that

22   they were delaying making a disclosure.

23   BY MR. CHARBONEAU:

24      Q.   I think earlier you referenced some news reporting

25   breaking the news about the relationship between Judge Jones
```

USTP (Sungard) Ex. 13
Page 83 of 208

 1  and Ms. Freeman.  Do you recall approximately when the news

 2  broke?

 3       **A.    I think I read about it in the Wall Street Journal.**

 4  **It was around the -- I'm going to get my years mixed up here,**

 5  **but it might have been around November '23; is that right?**

 6       Q.    Yeah, I think that's real close.  Let me make a

 7  representation to you and, if your counsel disagrees, he can

 8  weigh in.  It's my recollection that the Business Insider broke

 9  the story on or about October 6th of 2023.  And then the Wall

10  Street Journal published an article the next day in which Judge

11  Jones admitted to a relationship with Ms. Freeman.

12            So let's say that the story broke October 6, on or

13  about.  Are you comfortable with that?

14       **A.    I am, though it's almost on my anniversary, so that**

15  **would -- you know, I have to be careful about admitting reading**

16  **the Journal on my anniversary.**

17       Q.    Well, after October 6th of 2023, at that time,

18  Jackson Walker was representing Drivetrain, correct?

19       **A.    They were.  That's correct.**

20       Q.    Did Jackson Walker or its representatives make any

21  representations to Drivetrain regarding the accuracy of that

22  reporting in The Wall Street Journal?

23       **A.    No, they didn't.**

24       Q.    At any time after October 6th of 2023, and prior to

25  its withdrawal as counsel in June of 2024, did Jackson Walker

USTP (Sungard) Ex. 13
Page 84 of 208

1   make any representations to Drivetrain regarding the accuracy

2   of that Wall Street Journal reporting?

3       **A.    Not to me personally.  Whether or not they made it to**

4   **one of my colleagues -- but I don't believe we had a discussion**

5   **about it?**

6       Q.   If such an admission had been made to one of your

7   colleagues, would it, in the normal course of business, been

8   something that would have been discussed with you?

9           MR. BOLAND:  Object to form.

10          **THE WITNESS:  Yes.  Sorry, but yes, I run the group.**

11  **So it generally would have been relayed to me, but I don't**

12  **recall any discussion (cross talk) or the substance of the**

13  **article.**

14  BY MR. CHARBONEAU:

15      Q.   At any time after October 6th of 2023, and prior to

16  Jackson Walker filing its notice of withdrawal, did Jackson

17  Walker disclose to Drivetrain that there had been a judicial

18  conflict caused by the relationship between Ms. Freeman and

19  Judge Jones?

20          MR. BOLAND:  Object to form.

21          **THE WITNESS:  No, I don't believe that disclosure was**

22  **made to us.**

23  BY MR. CHARBONEAU:

24      Q.   Now, were you aware that Jackson Walker and Ms.

25  Freeman entered into a confidential withdrawal agreement

USTP (Sungard) Ex. 13
Page 85 of 208

1   regarding her exit from Jackson Walker?

2       A.   Certainly not at that time at all.  And whether or

3   not I read it afterwards, I -- it may have been included in

4   some of all these -- whether it's Judge Isgur's letter or some

5   of the other pleadings that are out there.  There have been

6   some records about who did what, when.  But, you know, what

7   I've learned about it is mostly by reading.

8       Q.   Yeah, let's have the court reporter mark for

9   identification as Exhibit 11 the documents Bates-stamped

10  Sungard167 through and including 169.

11                          (Whereupon, Exhibit 11 was marked for

12                          identification.)

13  BY MR. CHARBONEAU:

14      Q.   And this is an unsigned copy.  I'll represent to you

15  that there is a signed copy of this agreement which has dollar

16  amounts filled in and a date.  But I'm just going to scroll

17  through to the last page.  It's only three pages long; it's

18  signed.  Do you recognize this document, which has been marked

19  for identification as Exhibit 11?

20      A.   I've never seen the document before.

21      Q.   All right.  Now I'll represent to you that the

22  document was, in fact, executed.  And Ms. Freeman left the firm

23  in December of 2022.  So it was executed, I believe, November

24  30th.  And I want to focus here on this first sentence here.

25  It says, "Confidentiality: JW and you agree that this

USTP (Sungard) Ex. 13
Page 86 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 86

1   agreement, all of its terms and conditions and all preceding

2   discussions between you and JW regarding your relationship with

3   Judge Jones" -- and then in parentheses, defined term, covered

4   matters in parentheses -- "are confidential and shall not be

5   disclosed or revealed to any third party except as specified

6   below.  Do you see that language?

7       **A.   I do.**

8       Q.   Were you aware that Jackson Walker and Ms. Freeman

9   had entered into such a nondisclosure agreement?

10          MR. BOLAND:  Object to form.

11          **THE WITNESS:  The answer is no.**

12          MR. CHARBONEAU:  Why don't we -- why don't we do

13  this?  Let's take a 15-minute break.  I think I'm more or less

14  done.  I just want to consult with my other attorneys, and I

15  need to use the restroom.  Will 15 minutes be sufficient for

16  everyone?

17          **THE WITNESS:  Yeah, thank you.  That's fine.**

18          MR. GEOGHAN:  Fifteen?

19          MR. CHARBONEAU:  Let's come back then at 12:30.

20  Yeah, 12:30 Eastern.

21          **THE WITNESS:  Thank you.**

22          COURT REPORTER:  The time is 11:17 a.m. Central

23  Standard Time.  And we are off the record.

24          (Whereupon, a recess occurred.)

25          COURT REPORTER:  I'll take us back on.  It is 11:30

USTP (Sungard) Ex. 13
Page 87 of 208

Timothy Daileader
Proceedings on 02/10/2026                                    Page 87

1    a.m.  Central Standard Time, and we are back on the record.

2                    EXAMINATION (CONT'D)

3    BY MR. CHARBONEAU:

4        Q.    Thank you so much for that.  I'm going to share

5    screen with you, and I've just got a question or two more, and

6    then I think I'll be done asking questions.  So, having said

7    that, I want to take a look again at the document marked for

8    identification as Exhibit 4, Sungard026 through and including

9    033, and to go to that first page.  I'm sorry, scroll.  This is

10   the reply to the U.S. Trustee's objection.  Do you see that?

11       **A.    Oh, no.  If you could share this screen?  We had you,**

12   **not the screen.**

13       Q.    Sorry about that.

14       **A.    No worries.**

15       Q.    That's why I like to check.

16       **A.    Thank you.**

17       Q.    All right.  Now, can you see the document bearing

18   Bates stamp Sungard026, which we've marked for identification

19   as Exhibit 4?

20       **A.    Yes.**

21       Q.    And I think I might have asked you this earlier, but

22   it's been a couple hours.  If I did, I'm sorry, but do you

23   understand that the U.S. Trustee, in the Rule 60 motion, is

24   seeking the vacation, or vacating, of all fee orders for fees

25   received by Jackson Walker in Sungard's case?

USTP (Sungard) Ex. 13
Page 88 of 208

Office: (410) 821-4888          CRC Salomon          crc-ustp@crcsalomon.com
Fax: (410) 821-4889    2201 Old Court Road, Baltimore MD 21208    www.crcsalomon.com

 1        A.    I do.

 2        Q.    And I want to move down to Paragraph 29 -- I'm sorry,

 3   not paragraph 29, but Sungard29.  And I want to look at this

 4   first sentence of the first full paragraph, where it says,

 5   "Nothing in the settlement agreement or proposed order granting

 6   the motion provides for resolution in the U.S. Trustee's

 7   motions or any claims belonging to the U.S. Trustee."  Do you

 8   see that?

 9        A.    Yes.

10        Q.    So if the U.S. Trustee is seeking to vacate the fee

11   orders, but the settlement agreement requires the entry of a

12   final fee order allowing Jackson Walker about $35,000 in fees

13   and expenses, how do you square that with Drivetrain's

14   assertion that nothing in the settlement agreement or proposed

15   order provides for a resolution of the U.S. Trustee's motions

16   or any claims belonging to the U.S. Trustee?

17              MR. GEOGHAN:  Objection to the form.  It calls for a

18   legal conclusion.

19              MR. BOLAND:  Object to form.

20              THE WITNESS:  I think we have an honest dispute as to

21   whether or not that's correct, and we are putting that question

22   to the judge.  I think it's just an honest disagreement.

23   BY MR. CHARBONEAU:

24        Q.    Well, the settlement agreement would require the

25   court to enter a final fee order approving fees for Jackson

USTP (Sungard) Ex. 13
Page 89 of 208

Timothy Daileader
Proceedings on 02/10/2026

1  Walker in the amount of approximately $35,000, correct?

2      **A.   Yes.**

3      Q.   And the Rule 60 motion seeks the vacating of all fee

4  orders for Jackson Walker, correct?

5      **A.   Yes.**

6      Q.   And the Rule 60 motion of the U.S. Trustee seeks the

7  return by Jackson Walker of all fees received in the Sungard

8  case, pre-confirmations.  Is that correct?

9      **A.   Yes.**

10      Q.   So how, then, does the settlement agreement not

11  impact the motion of the United States Trustee and relief

12  sought by the U.S. Trustee?

13          MR. BOLAND:  Object to form.

14          MR. GEOGHAN:  Objection to form.  If you're asking a

15  factual -- I apologize, I don't mean to soliloquy.  Ask him a

16  factual question.  Ask him a factual question or knowledge

17  question.  If you're asking him to make a court argument,

18  right, he's not a lawyer.  I'm happy to have him asked factual

19  questions.  I don't mean soliloquy on you.  And I've let a lot

20  of it go by.  But ask him a fact question.

21  BY MR. CHARBONEAU:

22      Q.   So please answer the question I asked, Mr. Daileader.

23      **A.   I think that the U.S. Trustee and the Plan**

24  **Administrator are posing this question to the Court but are**

25  **making the argument that nothing provides for the resolution.**

USTP (Sungard) Ex. 13
Page 90 of 208

 1   I don't know that -- your definition of impact.  And again, I'm

 2   not an attorney, but your idea of impact versus resolution,

 3   what we're saying here is that the Court can resolve the U.S.

 4   Trustee motions, and it can resolve the claims belonging to the

 5   U.S. Trustee.

 6        It'll be for the Court to decide whether or not the

 7   Plan Administrator, you know, is properly entering into the

 8   settlement.  I think, to put it very bluntly, we're asking for

 9   the Court to settle that, to figure that out.

10        MR. CHARBONEAU:  Okay.  Well, thank you for appearing

11   today.  I'm going to pass the witness at this point.

12        MR. GEOGHAN:  No questions from us.

13        MR. BOLAND:  We reserve for trial.

14        MR. CHARBONEAU:  Well, thank you again, everybody.

15   Have a good day.

16        MR. GEOGHAN:  Thank you.  Thank you all.

17        MR. CHARBONEAU:  Oh, wait, wait, wait.  I did forget

18   one thing.  You've got the right to read and review, or you can

19   waive endorsement if you want to confer with your counsel about

20   that.  Mr. Geoghan?

21        MR. GEOGHAN:  Yeah.  And, Ms. Cantando, can we please

22   order a copy of the transcript?

23        COURT REPORTER:  Yes, you may.  And you would like to

24   read?

25        MR. GEOGHAN:  Excuse me?

USTP (Sungard) Ex. 13
Page 91 of 208

Timothy Daileader
Proceedings on 02/10/2026                                          Page 91

```
 1              COURT REPORTER:  And you would also like to read?

 2              MR. GEOGHAN:  We'll read it.

 3              COURT REPORTER:  Okay.  Yes, noted.

 4              MR. CHARBONEAU:  All right.  Well, thank you so much.

 5   That concludes this deposition.  Thank you.

 6              MR. GEOGHAN:  Thank you.

 7              THE WITNESS:  Thank you.

 8              COURT REPORTER:  The time is 11:37 a.m. Central

 9   Standard Time, and we are off the record.

10              (Whereupon, the proceeding concluded at 11:37 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USTP (Sungard) Ex. 13
Page 92 of 208

Timothy Daileader
Proceedings on 02/10/2026                                                    Page 92

```
 1                         J U R A T

 2            I declare under penalty of perjury that the

 3  foregoing is true and correct:

 4                    (  ) without corrections, or

 5                    (  ) with the attached corrections.

 6

 7  Subscribed at _____ (City),

 8  _____ (State), this _____ day of

 9  _____, 20_____.

10

11                    _____

12                          Timothy Daileader

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USTP (Sungard) Ex. 13
Page 93 of 208

Timothy Daileader
Proceedings on 02/10/2026                                              Page 93

```
 1               E R R A T A   S H E E T

 2   PAGE_____ LINE_____ CHANGE_____

 3   _____

 4   REASON_____

 5   PAGE_____ LINE_____ CHANGE_____

 6   _____

 7   REASON_____

 8   PAGE_____ LINE_____ CHANGE_____

 9   _____

10   REASON_____

11   PAGE_____ LINE_____ CHANGE_____

12   _____

13   REASON_____

14   PAGE_____ LINE_____ CHANGE_____

15   _____

16   REASON_____

17   PAGE_____ LINE_____ CHANGE_____

18   _____

19   REASON_____

20

21

22        _____    _____

23             TIMOTHY DAILEADER                   DATE

24

25
```

USTP (Sungard) Ex. 13
Page 94 of 208

```
1   STATE OF VIRGINIA       )

2   COUNTY OF MONTGOMERY   ) ss.

3

4            I hereby certify that I have duly sworn the

5   witness(es) in the foregoing deposition, to testify to the

6   truth, the whole truth, and nothing but the truth, in the

7   within-entitled cause; that said deposition was taken at the

8   time and place herein named; and that the deposition is a true

9   record of the testimony of the witness(es) as reported by me,

10  and was thereafter transcribed into typewriting by computer.

11           I further certify that I am not interested in the

12  outcome of the said action, not connected with nor related to

13  any of the parties in said action, nor to their respective

14  counsel.

15           IN WITNESS WHEREOF, I have hereunto set my hand this

16  10th day of February, 2026.

17

18  Reading and signing was:

19  ( x ) requested (  ) waived (  ) not requested

20

21    Elizabeth Cantando

22  _____

23  ELIZABETH CANTANDO, CER

24  Notary Public

25  My Commission Expires:  11/30/2029
```

USTP (Sungard) Ex. 13
Page 95 of 208

Timothy Daileader
Proceedings on 02/10/2026                                    Index: $100,000..4E

### Exhibits

**Exhibit 1 - 210-**
**217 RFP responses** 7:3 12:22,
24

**Exhibit 2 - 113-**
**118 645 Amended Joinder** 7:4
15:25 16:2 20:8 24:6

**Exhibit 3 - 001-**
**025 91 Settlement Motion** 7:5
17:11,13 29:7 30:20 35:19 47:13
54:16 59:16 62:3 64:17

**Exhibit 4 - 26-**
**33 95 Sungard Reply** 7:6 51:4,
5 87:8,19

**Exhibit 5 - 144-**
**151 Dec 9 partial tr** 7:7 57:8,10
60:17,20

**Exhibit 6 - 40-**
**43 152 US Trustee Agenda**
7:8 60:22,23,24 62:14

**Exhibit 7 - 160-**
**166 Interrogatory Responses**
7:9 70:1,3,17

**Exhibit 8 - 85-**
**87 291 Employment Order**
7:10 75:18 81:14

**Exhibit 9 - 112 602-1 Ex 6-**
**7 Jenkins email** 7:11 77:14,15,
16

**Exhibit 10 - 88-111 600 -6 HK**
7:12 79:22,24

**Exhibit 11 - 167-169 NDA** 7:13
85:9,11,19

### $

**$100,000** 20:16 22:20,24 23:13,
23 30:17

**$115,000** 44:17

**$35,000** 54:3 88:12 89:1

**$35,461.46** 48:3,8,12

**$385,000** 36:15,25 69:12 71:11

**$393,000** 24:19

**$450,000** 23:9,11,14

**$500,000** 36:7 37:2

**$75,000** 30:11

### -

**---ooo---** 8:2

### 0

**001** 17:11 54:16

**025** 17:12 54:17

**033** 51:4 87:9

**040** 60:17 61:3

**043** 60:18 61:4

**085** 75:17

**087** 75:17

### 1

**1** 12:22,24 61:18

**10** 8:1 58:12 79:22,24

**100,000** 30:4

**10th** 8:5

**11** 76:2 78:1 85:9,11,19

**111** 79:23

**113** 15:25 16:5

**114-151** 60:20

**116** 16:11

**118** 16:1

**11:17** 86:22

**11:30** 86:25

**11:37** 91:8,10

**12:30** 86:19,20

**14** 31:18

**15** 58:12 86:15

**15-minute** 86:13

**151** 57:9

**166** 70:2

**169** 85:10

**17th** 29:13,18

### 2

**2** 14:6 15:25 16:2 20:8 24:6 61:18
81:9,11

**2(a)** 31:2,8,14

**2014(a)** 76:13

**2022** 48:1 76:6 78:1,15,18 80:15
81:9,11,15 85:23

**2023** 83:9,17,24 84:15

**2024** 83:25

**2025** 26:19 29:13,18 56:25 57:16

**2026** 8:1,5

**210** 12:23

**217** 12:23

**23** 83:5

**28** 80:21

**29** 88:2,3

**2nd** 80:15

### 3

**3** 17:11,13 29:7 30:20 35:19
37:12,17 39:3,8 40:3,7,10,18,24
47:13 54:16 59:16 62:3 64:17
71:5 76:1

**30** 47:25 58:11

**30(b)(6)** 72:9

**30th** 85:24

**32** 54:19

**385** 35:22 36:10

**385,000** 35:20,24 37:21

**393** 35:21

### 4

**4** 47:14,15,23 51:4,5 87:8,19

**400,000** 24:22

**455** 80:21

**4:23-cv-04787** 8:11

**4E** 10:11

USTP (Sungard) Ex. 13
Page 96 of 208

8:6

Timothy Daileader
Proceedings on 02/10/2026

Index: 5..amount

**5**

**5** 57:8,10 60:17,20

**500** 36:10 73:4

**500,000** 25:1 35:24

**5th** 19:13

**6**

**6** 14:16,20 15:6 60:22,23,24 62:14 76:6 83:12

**60** 38:15 49:21 53:23 66:13 87:23 89:3,6

**60(b)** 13:17

**6th** 81:15 83:9,17,24 84:15

**7**

**7** 59:17,18,20 60:2,6 61:25 62:3,4, 5 70:1,3,17

**7029** 8:17

**8**

**8** 75:18 81:14

**8002** 31:23

**899** 48:1

**9**

**9** 8:4 77:15,16

**9006** 31:20

**9014** 8:17

**9019** 17:18 20:22,24

**93** 35:22 70:20 71:3,5,11

**9:00** 8:1

**9th** 56:25 57:16

**A**

**A-I-L-E-A-D-E-R** 10:22

**a.m.** 8:1,4 86:22 87:1 91:8,10

**abated** 9:8

**ability** 19:19 32:13,20 33:3 35:8 48:10 63:6 65:16

**absolute** 20:23

**accept** 64:1

**accordance** 28:20 31:19 64:8

**account** 71:4

**accrual** 30:9

**accrue** 25:6,8 30:14

**accuracy** 83:21 84:1

**accurate** 11:22 14:12 25:2 38:16 39:6 71:25

**accurately** 52:5 56:10

**achieve** 55:7 63:19

**achieved** 68:23

**acknowledge** 38:18

**acknowledged** 19:13

**act** 64:8

**acted** 40:7

**action** 16:19 55:21

**ad** 39:24 40:7

**added** 23:7 71:10

**addition** 16:14 23:20 66:1

**additional** 25:20,25 30:8 64:1, 11,21 65:16 68:4 69:10,12

**address** 20:18 41:21 51:21

**addressed** 23:22

**addresses** 80:17

**adjudicate** 51:25 52:8 53:13

**administrator** 9:10 11:11,13 13:16 14:23 15:1 18:3,5 21:11,13 43:17 44:2 46:9,13,25 47:8 53:16 54:21 62:5 64:1,11,20 65:4,13 66:20 67:7 68:5,6 69:8,10 72:8 73:3 89:24 90:7

**Administrator's** 47:6

**Administrators** 68:21

**Administrators'** 51:23

**admission** 84:6

**admitted** 83:11

**admitting** 83:15

**advanced** 26:19,23

**advice** 32:24

**advisability** 39:9

**advise** 14:9

**affect** 56:8 62:25

**affected** 50:4,12

**affecting** 57:25

**affects** 63:12

**affirmatively** 63:13

**affirmed** 32:1

**afraid** 57:2

**Agenda** 61:8

**agent** 10:8,11 34:15

**agents** 34:11

**aggregated** 37:17 41:9

**agree** 8:7,24 18:14,17,21 25:1 47:25 49:21 66:19 70:24 81:17 82:16 85:25

**agreement** 12:13 18:4 25:11 26:14,17,25 28:24,25 29:3,13,22, 24 30:18,23,24 31:4,10,16 37:18, 19 38:3 39:10 40:11 41:25 42:15, 25 43:5,8 46:10 50:13,17,19 52:8 54:1 56:16 57:25 58:10,21 59:8, 15 60:3,7,13 61:18 62:13,16 63:1, 7 64:3,10 65:6,15,22 66:1,19 67:10 68:1,7,12,16 84:25 85:15 86:1,9 88:5,11,14,24 89:10

**agreements** 14:8

**ahead** 20:4 21:21 22:16 52:25 62:7,8 71:14

**alarm** 53:5

**allegations** 74:4

**allocated** 64:6

**allowed** 19:11

**allowing** 88:12

**alternative** 28:17 55:19

**amend** 78:21

**amended** 13:21,22,23 15:22 16:8 20:1,7 50:2

**amount** 15:10 20:24 24:17,20 25:1,15 27:13 28:14 32:14 33:3

USTP (Sungard) Ex. 13
Page 97 of 208

35:18,20 36:22 37:2,11 41:14,18
42:11,22 43:8,13 48:3 66:12
70:21,24 71:12,17 89:1

**amounts** 36:22 37:5 38:1 45:20
50:18 71:10 85:16

**analyst** 10:24

**and/or** 19:3 52:1

**anniversary** 83:14,16

**answering** 53:4 67:5

**anticipate** 25:20

**apologies** 21:21

**apologize** 35:21 47:23 60:21
65:1 66:14 67:4 79:11 80:7 89:15

**apparent** 48:11

**appeal** 27:21 28:15 31:11,22,24
32:1,6

**appealed** 27:14,17

**appeals** 27:6 28:4 31:25

**appearances** 8:23 10:2

**appeared** 36:15

**appearing** 90:10

**appears** 15:8 48:9 76:7 82:16

**appellate** 32:2

**applicable** 47:25

**application** 48:24 49:18 54:23
55:12,24 73:18,23 74:2,9,13,20
75:2 77:5,8 78:14,19

**applications** 49:5,8

**applied** 36:25

**appropriated** 64:7 65:25 66:4

**appropriates** 65:3

**approval** 31:16,21,23 32:1 47:24
48:2,11 54:12 62:15

**approve** 18:15 48:2 51:22 54:11
62:12 64:2

**approved** 47:16 49:1,3,8 51:22
54:9 65:2 68:1

**approves** 54:2

**approving** 17:17 18:4 31:11
54:22 60:12 75:8,10 81:14 88:25

**apps** 74:7,10

**April** 78:18

**argued** 68:6

**argues** 69:9

**argument** 59:1 67:20 68:8 89:17,
25

**arise** 76:4,10

**arises** 67:22

**arose** 74:5

**article** 83:10 84:13

**asks** 14:7,16

**asserted** 46:24 47:7 72:24

**assertion** 52:7 53:12 55:13
64:20 72:25 88:14

**assessing** 74:1

**assessment** 35:25 72:16

**assets** 68:15

**assist** 12:11

**Associates** 9:15

**assume** 67:25

**attachment** 29:9 81:10

**attempt** 39:8

**attempting** 42:19

**attention** 51:18,20 54:18 58:11

**attorney** 17:3,9 58:9 90:2

**attorney's** 16:14 20:1,4 24:8,25
29:25 70:25 71:11

**attorney-client** 32:22 34:15,19

**attorneys** 34:16 86:14

**authenticity** 51:2

**authority** 53:17

**authorize** 70:13

**authorizing** 49:11

**Auto** 10:8

**avoidance** 28:12

**award** 24:24

**awarded** 25:4

**aware** 38:14 46:12,17,18 56:25
60:11 73:7 75:8 76:15,22,25 77:4
79:13 81:4,7,24 82:5 84:24 86:8

**B**

**back** 14:2 16:23 19:4 20:8 26:7
28:24 29:6 30:18,19 31:17 39:2
41:11 53:7,11 54:15 55:1 56:1,24
57:23 59:15 61:25 62:2 64:16
74:7 80:4 81:13,24 86:19,25 87:1

**bad** 21:4 47:22

**ballpark** 40:25

**bankruptcy** 8:16 11:16,25 13:15
14:10 17:18 21:9 22:4,13,16
31:20,23 39:18 47:24 48:19 49:3,
8 54:1 57:16 69:17,19 76:12

**bar** 62:21,23,25 63:6

**bars** 68:16 69:1,2

**Bartels** 10:6

**based** 31:9 66:20,21 82:15

**Basic** 10:12

**basis** 15:10 35:13 36:6 48:2 52:7
53:12 54:2 58:20 65:11 66:5

**Bates** 13:4 16:11 30:21 51:8
54:16,17 80:25 87:18

**Bates-stamped** 12:22 51:12
85:9

**bearing** 80:25 87:17

**beginning** 31:3

**begun** 44:23

**behalf** 17:22 18:11 21:10 23:19
50:23 60:5 67:7 68:5

**belonging** 88:7,16 90:4

**beneficiaries** 28:10,20 36:19
37:10 38:23,25 39:2 50:21 63:21
65:5 68:25

**benefit** 37:11 50:21 62:24 63:21
66:6

**beware** 34:14

**bigger** 13:9 59:18

**billing** 74:7,9

**bills** 46:18

**bird** 36:25

**bit** 12:10 17:9 23:8 24:21 59:6,19
80:3

**bluntly** 90:8

USTP (Sungard) Ex. 13
Page 98 of 208

1:16 12:8 29:25
3:1 89:1

Timothy Daileader
Proceedings on 02/10/2026                          Index: Boland..concluded

**Boland** 9:12 16:20 18:24 19:5,7, 8,22 21:16 27:18 31:13 32:7 33:17,23 34:20 36:3,8 37:23 38:8, 21 40:5 46:16 47:2,9 48:15 49:12 50:7,15 52:12 53:15 54:7 55:5,17 56:12,19 58:2,7,12,24 59:1,11 62:6,9,18 64:5,14,23 65:19 66:24 68:10 69:14 73:20 74:15,22 75:4, 13 76:19 77:9 79:2,17 81:21 82:4, 11,19 84:9,20 86:10 88:19 89:13 90:13

**Bonds** 10:9

**Brands** 10:11

**breached** 63:2

**break** 45:8,13 52:17,19 86:13

**breaking** 82:25

**Brewster** 10:1,6

**Brian** 9:4

**briefly** 13:6

**bringing** 30:7

**broader** 53:23

**broke** 83:2,8,12

**brought** 65:12 67:6

**bunch** 37:14

**business** 11:6 36:24 48:25 83:8 84:7

                    **C**

**call** 51:18,20 58:8,11

**called** 17:16

**calls** 50:5 52:11 88:17

**candidly** 55:20 63:10

**Cantando** 8:5 90:21

**careful** 83:15

**Carissa** 10:1,6

**Carnes** 10:2,4

**carry** 71:15

**case** 8:11 10:7,8 11:9,25 13:15 14:4,10,12,18 16:8,12 17:23 21:9 22:4,13,16 24:21 25:16 27:17 28:25 33:12 36:1,17 39:18,25 41:5 43:19,23,24 44:5,20 53:13 54:5 65:10 66:11,21 74:2,3 76:16,23 78:15

79:1 80:19 81:6,20 87:25 89:8

**cases** 11:14,16 76:3

**casual** 26:15,18

**caused** 75:2 79:15 84:18

**caution** 32:21 34:13,14,17

**Central** 8:4 86:22 87:1 91:8

**certainty** 28:12,18

**CFA** 10:25

**Chad** 39:17,21

**change** 35:25 63:14

**Chapter** 76:2

**Charboneau** 9:2,25 10:14 12:4, 17 13:1,20 14:15 15:2 16:4,22 17:15 18:22 19:6,7,18,24 20:5,17 21:5,18,22 22:5,17,23 23:3,21 25:7,18 26:1 27:15,24 28:22 32:3, 11 33:1,13,19 34:1,9,22 36:4 37:9 38:4,13 39:1,13,20 40:9,16,23 41:10,16,20 42:2,12 44:13,18 45:7,9,11,17,18 46:6,23 47:4,11, 20 48:16 49:20 50:10,22 51:7 52:16,18,24 53:3,9,24 54:14 55:10,25 56:14,23 57:12 58:6 59:4,14 60:1,10,21 61:3,6 62:10 63:24 64:9,15 65:14 66:15,25 69:5,21 70:5 71:13,22 72:3,14 73:25 74:18,25 75:7,15,20 76:21 77:12,18 79:6,20 80:1 81:23 82:6, 14,23 84:14,23 85:13 86:12,19 87:3 88:23 89:21 90:10,14,17 91:4

**chartered** 10:24

**check** 37:21 87:15

**Chief** 57:15

**circumstances** 16:12 68:12 73:8 76:4

**City** 8:22

**claim** 15:9,11 22:3 25:24 41:7 50:17,20 66:5,19 67:3 72:23 73:13

**claimants** 28:11 37:12 38:12 39:8 71:5

**claims** 14:9 21:7,14 22:10 28:14 37:5,8 41:4 46:9,12,19,24 47:7 51:23 52:2 53:17,18,19,20,22 62:24 66:13 67:6,8,12,14,15,18, 23 68:13,14 69:3,4 88:7,16 90:4

**clarification** 19:16

**clarified** 15:3 19:19

**clarify** 21:3

**clarifying** 19:1,19

**clarity** 14:23 20:17

**class** 37:12,16 39:3,8 40:3,7,10, 17,18,24 41:5 71:5

**cleanly** 63:20

**clear** 15:4 23:23 24:10 79:4

**client** 32:21 34:14 58:15

**clients** 79:15 81:1

**close** 36:15 83:6

**closed** 26:2,6

**cohabitating** 74:13

**Cole** 9:9 10:4 17:2 20:15 21:6,12 22:18 23:5,20 45:2,6

**colleagues** 84:4,7

**collectibility** 33:21 34:5,11 35:14 36:1 37:5

**collection** 68:24

**collections** 28:3

**comfortable** 83:13

**commenced** 38:15

**commit** 46:3

**communicated** 15:16

**communications** 32:22,23 34:15 77:6

**company** 73:21,22 78:16

**comparing** 36:10

**compensation** 48:2

**complete** 24:25

**completely** 19:11

**complex** 36:10

**complicated** 38:9 49:16 63:9,22

**comply** 49:6,14,17 69:16

**Compromise** 17:17

**computed** 31:19

**concern** 35:14

**concluded** 91:10

USTP (Sungard) Ex. 13
Page 99 of 208

Timothy Daileader
Proceedings on 02/10/2026

concludes 28:19 91:5

conclusion 28:7 50:6 88:18

conclusions 52:11

conditions 31:6,15 32:10 86:1

conduct 11:6 35:4 66:21

conducted 32:16 56:25

conducting 9:7

confer 15:19 90:19

conference 57:14

confidential 84:25 86:4

Confidentiality 85:25

confirm 29:5 31:1 51:2

confirmation 43:20,23,25 48:7

confirmed 43:15 49:18

confirming 43:11

conflating 35:22

conflict 75:2 79:15 80:20 81:2,5, 19 82:17 84:18

conflicts 75:9 76:3

conform 64:7 65:5

confused 64:24

confusion 42:3

connection 8:13 12:13 74:12

consideration 35:9 55:23 63:8

considerations 63:10

considered 55:19

consistent 27:23 77:10

consult 86:14

CONT'D 87:2

contact 39:19 40:8

contents 59:22

contested 19:10

continue 19:17 25:5,8 30:14

continuing 9:6

contradicting 66:2

contrary 61:17

conversation 26:12 32:18 42:23

conversations 26:16 32:16 43:6

copies 14:17

copy 78:2 85:14,15 90:22

corner 13:3

correct 14:5 17:1 18:9 24:22 39:3 48:9 54:10,23 60:21 76:6 81:15 83:18,19 88:21 89:1,4,8

correction 43:22

correctly 14:19 16:15 18:6 48:4

correspondence 15:8

cost 27:13

costs 27:21 28:13,14

counsel 8:23 9:23 12:2 15:13,17, 19 17:25 18:8,11 26:11,12 32:16, 17 39:12,14,24,25 42:3 43:2 57:19,24 60:19 62:21 77:1,22 79:14 81:18 83:7,25 90:19

counsels 43:6

counterclaims 47:7

couple 41:3 57:13 70:6 87:22

court 8:3,13,16 9:8,16,23 10:20 12:21 15:24 16:13 17:7,10 18:3,5 19:3 24:24 25:4 45:7,9 47:24,25 48:20 49:1,4,8,17 51:21 52:23 54:1,2,9,10,12 55:11,14,20 56:4 57:7 60:16,19,23 62:11,12 64:2 65:3,8,12,16 68:1 69:17,19,25 72:22 77:5,13,14 78:8 79:21 85:8 86:22,25 88:25 89:17,24 90:3,6,9, 23 91:1,3,8

Court's 49:6,7,15,17 50:9 64:6,8 65:6,10

cover 8:6

covered 67:21 86:3

Cowlishaw 78:2,4

CRC 8:6

credit 37:18,19

creditor 35:11 39:25

creditors 37:13,16

cross 21:20 84:12

cut 37:21

**D**

D-A-L-E 39:22

Daileader 8:9,19 9:10,16,18,20 10:15,18,21,23 15:1 16:23 21:6 24:10 42:5 48:18 53:5 61:9 70:9 72:5,11,15 77:20 89:22

Dale 39:17,22 40:14,22 41:11 42:11,18 43:1,12

Dan 10:5 45:4

Daniel 9:9

date 29:13,18 31:4,5,20 44:4 46:3,14 48:7 57:6 71:19 73:11 80:15 85:16

dated 29:13 76:6 78:1 81:10

dates 26:4

David 10:10,22 73:19

day 31:5 83:10 90:15

days 27:2 31:19

deal 37:4 65:9

dealing 22:2 63:23

debtor 12:3,5 48:19

Debtor's 12:7

Debtors 16:12 24:8 72:10

Debtors' 51:23

decades 35:10

December 47:25 56:25 57:16 85:23

decide 67:24 90:6

decided 68:22

decision 36:14 73:5

declaration 76:12,23

deem 18:6 54:10

defend 19:20 20:25

defending 17:3 18:25 19:1 20:24

defenses 73:7

define 31:4

defined 14:10 86:3

definition 90:1

degree 63:19

USTP (Sungard) Ex. 13
Page 100 of 208

**delaying** 82:22

**demand** 14:17 15:15,19 37:21

**demands** 38:1

**Department** 8:20

**depends** 68:11

**Deponent** 9:10

**deposition** 8:9,12,15 10:17 17:3 18:25 19:2,10,20 72:10 91:5

**depositions** 9:6,7,11 19:14

**deteriorating** 36:13

**developments** 76:11

**Dewey** 35:1

**difficulty** 37:6

**digital** 8:5

**direct** 42:1,7 54:18

**directed** 68:4

**direction** 44:22 69:20

**directly** 26:10

**directs** 65:4

**disagree** 68:7

**disagreement** 88:22

**disagrees** 83:7

**disclose** 34:17 74:20 75:2,9 77:6 79:15 80:21 82:17 84:17

**disclosed** 43:12 80:21 86:5

**disclosing** 34:14,18 42:11

**disclosure** 73:17 74:11 76:15 78:8,9,12,21 79:1 81:1,5,7,18 82:10,22 84:21

**discover** 15:18

**discovered** 75:10 76:9

**discovery** 26:2,5

**discuss** 42:21 78:9

**discussed** 62:15 84:8

**discussing** 22:10

**discussion** 26:21 34:3 41:17,22 58:10 72:13 84:4,12

**discussions** 26:8,11,18 41:23

disgorgement 6:15,18 22:11

**dismissed** 31:25

**displaying** 54:17

**dispute** 13:24 23:9 58:20 74:11, 17,19,23 75:1,5,14 77:23 78:25 79:3 88:20

**disputes** 51:25

**disputing** 79:5

**disqualifying** 76:3

**distinctly** 69:4

**distinguish** 57:5

**distress** 35:1,13,16

**district** 9:8 11:7,14,17 47:24 54:2

**divulge** 32:22

**Docket** 48:1

**document** 20:8,10 24:5 29:6,10 30:20 31:1 47:12 51:9 55:8,9,22 61:7,11,14 62:2,14 63:5,6 64:16 70:14,16 75:22 77:25 81:13 85:18,20,22 87:7,17

**documented** 43:9

**documents** 12:22 13:3,13 14:7 15:13 33:2 61:13 80:2 82:15 85:9

**dollar** 85:15

**dozen** 41:8

**drafting** 20:22

**drawn** 28:6

**drill** 52:14,15,21

**driver's** 8:20

**Drivetrain** 11:10,13 13:16,21 14:24,25 15:4 16:24 21:6 23:24, 25 43:16,17,20,22 44:1 59:7 60:6 62:12,15 63:25 72:8,9,15 78:24 81:25 82:7 83:18,21 84:1,17

**Drivetrain's** 50:11 88:13

**due** 78:8,10,14

**duly** 9:21

**Dunn** 10:10

**duties** 80:17

---

**E**

---

**earlier** 32:15 42:17 82:24 87:21

**early** 78:10

**Eastern** 86:20

**easy** 21:1

**echo** 24:12

**Eduardo** 57:15

**effect** 35:7 55:8 56:16 73:24

**effective** 31:3,5 46:14

**effective-date** 44:7

**effectiveness** 43:18,24 44:1,3

**efforts** 76:10

**electronic** 51:13 70:11,14

**elements** 27:11

**Elizabeth** 8:5 73:19 74:13,20 75:3 76:17 77:7 79:16

**Ellis** 10:10

**email** 19:13 77:25 78:6 79:7,10 81:10 82:20

**emails** 74:6

**emergency** 52:22

**Emily** 9:14

**emphasis** 31:21

**employed** 48:19,20

**employee** 72:7

**employment** 44:7 49:11,23 50:4,11 54:4 55:2,14 73:18,22 74:2,8,9,12,19 75:1,9,11,16 77:4 78:14 81:15,19

**end** 47:19 63:16 70:7

**endorsement** 70:11,14 90:19

**Energy** 10:12

**enforce** 63:6,7

**engagement** 14:7

**ensure** 76:3

**enter** 18:3 26:8,10 28:9 72:22 88:25

**entered** 26:24 27:5 35:13 42:25 81:15 84:25 86:9

**entering** 27:1 39:9 43:4 90:7

**entire** 10:17 36:22

**entities** 37:14,15

USTP (Sungard) Ex. 13
Page 101 of 208

Timothy Daileader
Proceedings on 02/10/2026

Index: entry..Garza

**entry** 31:20 75:10 81:19 88:11

**Eppich** 10:10

**equal** 63:20 71:5

**equitable** 18:5

**established** 33:10

**estate** 11:11 12:7 20:25 23:19,25 28:19,20 37:13 44:11 48:23 49:3 63:17 68:15 69:18 71:19

**estimate** 22:22 25:17 27:2,16,21 30:2,6,13,16

**estimates** 25:12

**ethics** 77:1 79:14 81:18

**evidencing** 14:7 33:3

**EXAMINATION** 10:13 87:2

**examined** 9:21

**exceeded** 30:17

**excuse** 46:22 63:6 80:8 90:25

**executed** 28:23 29:2 85:22,23

**executing** 28:24

**exhibit** 12:22,24 15:25 16:2 17:11,13 20:8 24:5,6 29:7 30:20 35:19 47:13 51:4,5 54:16 57:8,10 59:16 60:17,20,22,23,24 62:3,14 64:17 70:1,3,17 75:18 77:14,16 79:22,24 81:14 85:9,11,19 87:8, 19

**exist** 76:4

**exit** 85:1

**expectations** 21:2

**expending** 37:1

**expense** 28:4

**expenses** 12:5 20:13 21:13,19, 23 22:3,20 25:12,21 27:17 36:22 44:6 47:17 48:3 54:3 70:25 71:3, 8,9,11 88:13

**experience** 27:23 33:12 34:24, 25 37:7 73:4

**explain** 17:8 66:17

**expressing** 42:3

**extension** 78:11

**extent** 31:7 34:18 35:25 52:1,10

---

**F**

**faced** 34:25

**fact** 22:6 24:4 35:5 43:11 54:10 66:9 72:6 85:22 89:20

**factor** 36:18

**factors** 28:8 34:2,5

**facts** 55:12 72:25 73:2,6,12 76:9 78:24 79:3 81:25

**factual** 36:6 53:12 58:20 89:15, 16,18

**fair** 22:19 28:10

**fairly** 52:5 63:9

**familiar** 11:21

**favorable** 72:23

**February** 8:1,4 19:13

**Federal** 8:16 31:19,22 76:12

**fee** 8:10 48:10 50:3 54:23 55:12, 24 56:4 87:24 88:10,12,25 89:3

**feedback** 24:9,11

**fees** 12:5 16:14,15,18 20:1,4,12 21:13,19,23 22:3,12,20 24:8,25 25:5,8,12,20,25 29:25 30:7,8,10, 14 36:16 38:19 44:6,10,12 46:11, 12 47:17 48:7,13 49:5 54:3 70:25 71:3,8,9,11 87:24 88:12,25 89:7

**fiduciaries** 28:11

**fiduciary** 38:10,11,22

**Fifteen** 86:18

**figure** 90:9

**file** 13:21 31:22 48:24 49:4 76:11

**filed** 12:13 13:16,24 14:1,4 16:8 17:22,25 31:24,25 44:5 45:19,23 46:5 50:1,23,24 51:16 61:13 74:2 76:15 77:5 78:18

**files** 76:2

**filing** 44:19 73:11 76:22 78:10,11 84:16

**filled** 78:7 85:16

**final** 26:16,24 31:17 48:2,10 50:3 54:2,23 55:12,24 88:12,25

**financial** 10:24 34:25 35:3,4,10, 13,16 36:12

---

**finder** 54:11

**fine** 10:18 67:11 86:17

**fire** 52:14,15

**firm** 8:11 11:21 16:24 20:16 33:6, 10,15 35:1 76:1,10 78:8 80:18,19 81:1 85:22

**firms** 8:24 34:25 35:12

**flip** 62:1

**focus** 69:6 85:24

**follow** 65:10 69:20

**follow-up** 42:1

**forget** 44:24 90:17

**form** 12:1,15 13:18 14:13,25 16:20 19:15 20:14,18,19 21:15,16 22:1,14,21 23:1,15 25:3,14,16 26:23 27:8,18 28:5 31:12,13 32:7, 8 33:7,16,17,22,23 34:7,13,20 36:3,8 37:22,23 38:7,8,20,21 39:11,16 40:4,5,12,19 41:1,13,19 42:6,7 45:25 46:15,16 47:1,2,9 48:14,15 49:12,13 50:5,7,14,15 52:10,12 53:14,15 54:6,7 55:4,5, 16,17 56:11,12,18,19 58:2,23,24 59:10,11,25 60:8 62:6,7,9,17,18 64:4,5,13,14,22,23 65:18,19 66:23,24 68:9,10 69:14,15 71:7, 20 72:1,3 73:20 74:15,22 75:4,12, 13 76:18,19 77:9 79:2,17 81:21 82:4,11,19 84:9,20 86:10 88:17, 19 89:13,14

**forward** 22:7 63:7

**Freeman** 73:19 74:13,20 75:3 76:17 77:1,7 79:16 82:2 83:1,11 84:18,25 85:22 86:8

**Freeman's** 74:10

**Fulbright** 9:12

**full** 10:20 25:5 88:4

**fully** 73:14

**funds** 41:4 64:21 69:10

**furtherance** 32:24

**future** 24:14 73:16

---

**G**

**game** 78:22 82:21

**Garza** 9:4

USTP (Sungard) Ex. 13
Page 102 of 208

**gave** 42:22

**general** 35:7 49:24,25 77:22

**generally** 27:9 37:17 41:2,5 49:7,16,17 51:1 77:10 84:11

**generate** 35:8

**gentleman** 58:8

**Geoghan** 9:9 12:1,15 13:18 14:13,25 16:21 17:5 18:8,19 20:3, 14,17,20 21:15,20 22:1,14,21 23:1,15 25:3,14,22 27:8 28:5 31:12 32:8,21 33:7,16,22 34:7,13 36:2 37:22 38:7,20 39:11,16 40:4, 12,19 41:1,13,19,21,22 42:6 44:9, 15 45:15,25 46:15 47:1,18 48:14 49:13 50:5,14 52:10,15,17,20,21 53:1,7,14 54:6 55:4,16 56:11,18 58:23 59:10,25 60:8 61:1,5 62:7, 17 64:4,13,22 65:18 66:23 68:9 69:15 71:7,20 72:1,4,5 75:12 76:18 86:18 88:17 89:14 90:12, 16,20,21,25 91:2,6

**Geoghan's** 51:13

**give** 26:15 51:11 63:7 68:23,24

**Gonzalez** 57:4

**good** 9:11 28:10,13 36:14 45:14 68:22 72:21 90:15

**granting** 18:4 88:5

**Great** 9:25 24:13

**group** 39:25 40:7 84:10

**Guerrero** 10:9

**guess** 50:8 62:23

**H**

**half** 41:8

**hand** 9:17 37:1

**happened** 26:21 35:2 45:1

**happy** 31:1 45:15 89:18

**hard-pressed** 26:22

**Hardin** 9:15

**Harrison** 9:13

**Harvey** 78:1,7

**head** 41:6

**heard** 24:11 32:15 79:8,18

**hearing** 56:25 57:20,22,24

**hearings** 57:3

**heart** 68:22

**held** 43:6

**high** 56:6 71:24 72:17,20

**highlight** 51:20

**hoc** 39:24 40:7

**hold** 10:23 34:13

**honest** 88:20,22

**Honor** 58:14

**Honorable** 57:15

**hours** 52:25 87:22

**hypothetical** 62:20 66:2 68:2

**hypotheticals** 63:23

**I**

**idea** 33:11 90:2

**identification** 12:22,25 15:25 16:3 17:11,14 20:8 24:6 29:7 30:20 47:13 51:3,6 54:16 57:8,11 59:16 60:17,22,25 62:3,14 64:17 70:1,4,17 75:17,19 77:14,17 79:22,25 81:14 85:9,12,19 87:8, 18

**identified** 8:19 39:3

**identifies** 61:7

**identify** 64:19 76:10

**ignore** 65:5

**imagine** 67:24

**impact** 27:6 54:3 58:21 59:8 89:11 90:1,2

**impede** 67:11

**imply** 50:19

**important** 36:18 63:4

**improper** 18:24 19:21

**improving** 36:13

**inappropriate** 19:17

**include** 27:10 32:23 62:23 78:20

**included** 60:2 65:22 67:16 85:3

**including** 12:23 15:25 17:11 35:10,11 51:4 54:17 57:8 60:17 61:4 70:1 73:10 79:22 80:4 85:10 87:8

**inclusion** 60:12 61:16

**incur** 25:25

**incurred** 16:18 20:12 21:13 22:20 23:13,24 24:8 29:25 30:6,8 71:4,17

**incurring** 25:20 36:21

**independent** 33:20,24

**indicating** 28:1

**indiscernible** 21:4 44:25

**individual** 35:4 37:18

**inquiring** 72:6

**Insider** 83:8

**instance** 68:18

**instant** 36:14

**intend** 19:12

**intended** 50:20

**intending** 28:7,8

**intention** 50:11,16

**intentional** 82:3,10

**intentionally** 82:17

**interest** 38:6,18,24 48:12 58:15 67:15 80:20

**interests** 38:11,25 40:3

**interplays** 63:8

**interrogatories** 69:23 70:8

**interrogatory** 70:17,19

**intersection** 63:22

**intimate** 74:21

**investigate** 34:11

**investigation** 33:20 35:4,9

**investment** 35:11,12 41:3

**invoice** 45:24

**invoiced** 44:12 46:21

**invoices** 23:4,7,8,10,17 44:14 46:2

**involved** 27:13 28:15 43:23,24 73:21

USTP (Sungard) Ex. 13
Page 103 of 208

Timothy Daileader
Proceedings on 02/10/2026                                    Index: Isgur..manager

**Isgur** 77:11

**Isgur's** 73:10 77:3 79:10 85:4

**issue** 22:10 58:17 65:7,8

**issued** 8:20 12:12 14:17 69:23

**issues** 51:21

----

**J**

----

**Jackson** 8:10 9:13,15 11:21,24
12:5,9 14:9,18 15:9,16 18:11,17
20:13 21:7,8 22:3,11,19 24:20
26:9,11 32:12,13,18,19 33:2,5,9,
21 34:12 35:15,23 36:6 37:21
38:19 43:20 44:1,5,6,11,19 45:5,
6,19,21 46:9,12,24 47:6,17 48:7,
11 49:22 50:4,12 56:15,21 57:23
58:4,9,17,20 59:6 60:5 62:24
64:12 66:21 68:5,8 69:7,9 71:1
73:17 74:3,12 75:9 76:8,16,22,25
77:5,23 78:4 79:13 81:4,8,14,17
82:1,16 83:18,20,25 84:16,24
85:1 86:8 87:25 88:12,25 89:4,7

**Jacqueline** 78:1,7

**Jarvis** 78:2

**Jason** 9:12 34:14 58:7 62:8

**Jenkins** 77:20 78:1

**Jenkins'** 78:6,20

**Joel** 9:2

**joinder** 13:16,21,23 14:3 15:23
16:8 20:1,7 50:1,2

**joinders** 14:1

**joined** 9:13 50:1

**joint** 17:7

**Jones** 10:10 73:19 74:14,21 75:3
76:17 77:2,7 82:2,25 83:11 84:19
86:3

**Jones'** 79:16

**Journal** 83:3,10,16,22 84:2

**judge** 32:14 57:3,4,16 67:24
73:6,10,19 74:13,20 75:3 76:17
77:2,3,7,11 79:10,16 80:18,20
82:2,25 83:10 84:19 85:4 86:3
88:22

**Judge's** 75:21

**judgment** 27:14,17 28:9 33:21
34:12 36:7,25 72:22 73:2

**judgments** 27:9

**judicial** 75:2 79:15 81:2,5,19
82:17 84:17

**Julie** 9:13

**July** 29:13,18

**jump** 47:19

**June** 76:6 80:15 81:9,10,15 83:25

**jurisdiction** 69:18,19

**justified** 21:1

**JW** 16:14 51:24 52:1,2 85:25 86:2

**JW's** 16:15 48:2 54:22

----

**K**

----

**knowledge** 47:5 66:3 73:15
89:16

----

**L**

----

**lack** 44:25

**laid** 30:24 77:11

**language** 60:11 61:16,24 62:13
78:9 86:6

**large** 33:6

**larger** 41:8 80:7,8

**largest** 33:14

**late** 30:7

**Laura** 9:3

**law** 8:10 34:25 35:8,12

**lawyer** 27:21 67:23 80:18,19 81:1
89:18

**lays** 30:25 31:14

**learned** 85:7

**leave** 52:25

**Leboeuf** 35:1

**left** 20:9 51:8 68:25 85:22

**left-hand** 13:3

**legal** 18:5 32:24 33:11 38:23 50:6
52:11 66:20 88:18

**lessons** 37:8

**letter** 73:10 77:3,11 79:10,14,19
80:12,13,15 81:8,10,18 85:4

**letters** 14:17 15:19

**license** 8:20 10:25

**licenses** 10:23

**likelihood** 27:12 54:22 55:2,11,
14,20,23 56:4,7 71:24 72:16,20

**limited** 66:3

**Lines** 58:12

**liquidating** 10:7,11 63:16

**liquidation** 43:19

**list** 57:16

**litigate** 25:23,24 73:14

**litigated** 28:15 66:13 68:23 73:3

**litigating** 16:18 37:7

**litigation** 20:13 21:24 22:6,7,25
23:14,20,23 24:9 25:15 26:3
27:22 28:13 30:1 34:12 35:5 37:6
38:6,16 47:6 64:2,12 69:8 71:4,
18,24 72:17 73:5

**litigations** 73:4

**LLC** 11:10

**local** 12:2

**located** 8:21 11:1

**location** 8:14

**long** 47:22 52:19 63:22 85:17

**looked** 74:8,9 75:24 82:15

**lot** 35:6 37:7 89:19

**lower** 13:3 20:9 51:8

----

**M**

----

**made** 15:9,15 22:11 30:2,22
31:10 32:18,20 35:15 36:14 39:5,
8 56:21 57:24 59:12 60:5 63:11
73:22 74:12 81:4 84:3,6,22

**make** 13:9 27:9 30:5,13 32:13
37:25 42:24 43:22 46:13 49:7
59:18 62:22 63:11 66:18 67:5
73:17 80:3,7,8 83:6,20 84:1 89:17

**making** 20:25 59:2 82:22 89:25

**manager** 35:12

USTP (Sungard) Ex. 13
Page 104 of 208

Timothy Daileader
Proceedings on 02/10/2026

**managers** 41:3

**mark** 12:21 15:24 17:10 51:3 57:7 60:16,22 69:25 75:17 77:13, 14 79:21 85:8

**marked** 12:24 16:2,10 17:13 20:8 24:6 29:7 30:20 47:12 51:5 54:15 57:10 59:16 60:19,24 62:2,14 64:16 70:3,16 75:18 77:16 79:24 81:13 85:11,18 87:7,18

**material** 62:5

**math** 71:16

**matter** 8:9 9:8 12:14 16:25 19:10 20:16 25:12,21 28:19 36:10,11 38:23 42:19 56:5 57:1,6 58:4 63:9

**matters** 8:10 86:4

**means** 63:17

**meant** 72:19

**measure** 33:9

**member** 40:10,17

**members** 40:20,24

**memorandum** 80:17

**memorized** 31:1

**memory** 26:13 29:4 43:14 46:3 57:5

**mentioned** 25:8 34:6 37:10 40:7 43:11 55:19 75:24

**merits** 72:16 74:1

**messy** 45:4

**met** 32:10

**middle** 70:21

**mind** 19:6,7 63:3

**minutes** 53:1 86:15

**misunderstand** 28:4 65:1

**misunderstood** 27:25

**mitigating** 73:8

**mixed** 83:4

**moment** 15:22 67:25

**moments** 34:3

**monetary** 57:25 58:13,18,22 59:8 65:16 66:19 67:3,6,8

25 69:3,7,12 71:17

**monies** 58:16 66:5

**months** 26:14

**Moses** 57:3

**motion** 13:17 17:6,7,17,22 18:15, 18 20:6 29:8 30:7 49:21 50:1,25 51:22,24 53:12,23 54:15 66:13 87:23 88:6 89:3,6,11

**motions** 21:1 51:25 52:9 53:13 88:7,15 90:4

**Motor** 8:21

**movant** 18:18

**move** 16:10 19:2,4 24:4 29:9,15 30:19 51:11,12 88:2

**moving** 19:25

---

**N**

**named** 11:21 43:17

**names** 10:1

**narrow** 67:13

**narrowly** 66:11

**nearer** 26:24 36:19,20

**necessarily** 41:7 42:7 65:13,21

**negative** 35:7

**negatively** 63:13

**negotiating** 25:10,19 28:1 32:12

**negotiations** 27:2,6

**news** 44:24 45:1 82:24,25 83:1

**newspaper** 74:6

**nice** 59:19

**non-** 67:22 82:9

**non-disclosure** 82:1

**nondisclosure** 86:9

**nonmonetary** 58:13

**normal** 84:7

**Northamerica** 10:11

**Norton** 9:12,14 58:9

**note** 9:5

**noted** 61:15 91:3

**notice** 44:5,19 45:20,23,24 46:5 61:8 84:16

**noticed** 72:9

**notwithstanding** 61:17

**November** 83:5 85:23

**number** 8:11 14:6,16,20 15:6 27:10 28:8 35:2 41:8 48:1 57:3 62:22 70:19 77:15

**numbers** 61:1

**numerous** 37:16,18 39:6 40:24

---

**O**

**oath** 8:25

**object** 22:14 34:20 48:12 64:4 82:11,19 84:9,20 86:10 88:19 89:13

**objected** 62:8

**objecting** 18:24

**objection** 12:1,13,15 13:18 14:13,25 16:20,21 18:19 20:3,14, 18,19,20 21:3,15,16 22:1,21 23:1, 15 25:3,14,22 27:8,18 28:5 31:12, 13 32:7,8 33:7,16,17,22,23 34:7, 13 36:2,3,8 37:22,23 38:7,8,20,21 39:11,16 40:4,5,12,19 41:1,13,19, 20 42:1,6 44:9,15 45:25 46:15,16 47:1,2,9,18 48:14,15 49:12,13 50:5,7,14,15,24 52:10,12 53:14, 15 54:6,7 55:4,5,16,17 56:11,12, 18,19 58:2,23,24 59:10,11,25 60:8,14 61:15 62:6,7,9,17,18 64:5,13,14,22,23 65:11,18,19 66:23,24 68:9,10 69:14,15 71:7, 20 72:1,3,11,12 73:20 74:15,22 75:4,12,13 76:18,19 77:9 79:2,17 81:21 82:4 87:10 88:17 89:14

**objectionable** 42:8

**objections** 19:3,15

**obligation** 79:14

**obvious** 62:22 63:15

**occurred** 86:24

**October** 83:9,12,17,24 84:15

**offer** 24:19

**office** 11:4 20:25

**open** 26:5

USTP (Sungard) Ex. 13
Page 105 of 208

Timothy Daileader
Proceedings on 02/10/2026

**operate** 41:4

**operating** 63:15

**opinion** 79:14,19 80:12,13 81:1, 8,10,17 82:9,12

**opportunity** 59:20 61:21

**order** 17:17 18:3 27:7 31:11,16, 17,21,23 32:1 48:1,2,10,20 49:6, 7,11,15,17,18,23 50:3,9,12 54:1, 5,22 55:2,15,24 56:4 60:12 61:17 63:12 64:6,8 65:3,6,9,10,16 69:17,20 75:8,10,16,23 76:1,6,8 81:14,19 88:5,12,15,25 90:22

**ordered** 64:12 69:11

**ordering** 16:14

**orders** 76:8 87:24 88:11 89:4

**ordinary** 48:25

**original** 14:3

**outcome** 28:12

**outstanding** 45:20 46:18

**overconfident** 73:15

**oversimplify** 69:17

**owed** 45:20

**owns** 58:15,16

**P**

**pages** 62:2 70:7 85:17

**paid** 12:8 15:10 20:15 22:12 23:18,24,25 24:2,20 32:5,10 36:11,16 37:11 38:19 44:6 46:21 48:7 49:10,19 66:12 68:4,6 69:3, 11 70:25 71:5,18

**paragraph** 16:11 18:2 31:2,8,14 35:19 47:14,15,23 51:19 54:18,19 59:17,18,20,23 60:2,6 61:18,25 62:3,4,5 76:1 88:2,3,4

**paraphrased** 56:9

**parentheses** 31:4,5 86:3,4

**part** 23:14

**participants** 37:19

**participate** 19:11,14

**participating** 11:17

**particular** 19:25 21:18 31:2,5 39:6 47:25 48:12 65:1 67:9

**partner** 9:13

**party** 19:11 58:14 67:15,19,21 80:19 82:13 86:5

**pass** 90:11

**passed** 31:20

**passes** 31:23

**Pat** 78:2,4

**Patrick** 10:6

**paused** 47:22

**pay** 12:5 16:14 20:25 24:1 28:20 32:14,20 33:3 35:24 36:7 65:4

**paying** 45:23

**payment** 22:3 30:22 31:10,15 36:20

**pays** 28:19

**pendency** 22:4,12 76:2

**pending** 11:14 14:10,12 17:6 32:6

**percent** 35:22 70:20 71:3,6,11

**perfect** 72:21 73:1,15 80:9

**perfectly** 79:4

**perform** 33:20,24

**performed** 23:18,20

**periodic** 30:14

**periodically** 30:16 76:2

**permitted** 31:7

**personally** 84:3

**perspective** 58:17,18

**Peter** 78:2,8

**petition** 12:9 48:6 78:18

**picking** 80:25

**pieces** 41:4

**place** 8:25 70:13

**placement** 70:13

**plan** 9:10 10:7,10 11:11,13 13:16 14:23 15:1 18:2,4 21:10,13 28:21 36:19 37:10,12 38:10,22,25 39:2 43:15,17,18,24 44:1,2,3 46:9,13, 25 47:5,8 51:23 53:16,17 54:21 62:5 63:11,12,16,17 64:1,11,20 65:3,4,13 66:4,8,20 67:7 68:5,6, 21 69:7,10 72:7,8,23 73:3 78:22

**partner** 82:21 89:23 90:7

**plans** 21:2 66:6

**pleading** 17:16,20

**pleadings** 85:5

**point** 18:21 26:6 30:9,16 40:8 42:16,17 43:7 55:22 62:22 78:17 90:11

**poll** 39:8

**pop** 45:11

**popped** 45:7

**portion** 50:17

**posing** 89:24

**position** 18:23 19:8 38:5 53:25 54:8 55:2 56:1,3,8,16 58:21 65:9 67:12,18 69:13,16 71:23

**positive** 73:12

**positively** 8:18

**possibly** 25:16

**post** 12:9 48:6

**post-** 44:6 46:13

**post-bankruptcy** 11:11 44:11 73:3

**potential** 47:7 60:11 69:8

**potentially** 37:2 41:21

**power** 45:12

**practice** 35:8

**pre-confirmation** 12:9 70:25 71:10

**pre-confirmations** 89:8

**preceding** 31:18 86:1

**precise** 68:13

**precisely** 67:5

**precluded** 65:7

**precludes** 66:9,10

**preemptively** 51:24 52:8 53:13

**prejudice** 31:25

**premature** 27:20

**preparing** 20:22

**present** 57:19

**presented** 68:1

USTP (Sungard) Ex. 13
Page 106 of 208

Office: (410) 821-4888        CRC Salomon        crc-ustp@crcsalomon.com
Fax: (410) 821-4889 2201 Old Court Road, Baltimore MD 21208  www.crcsalomon.com

Timothy Daileader
Proceedings on 02/10/2026

**presently** 8:21

**presiding** 80:18

**press** 35:6

**presume** 65:7 66:3

**presumption** 65:23

**pretty** 47:21

**previously** 75:24

**prior** 26:14 48:11 61:23 81:19
83:24 84:15

**privilege** 34:19

**privileged** 32:22 34:15

**probability** 28:2 72:22 74:1

**Procedure** 8:17 76:12

**proceed** 9:24

**proceeding** 8:7 9:1 91:10

**proceedings** 19:12

**process** 21:1 43:10

**produce** 14:22 15:13

**produced** 23:10

**producing** 23:4

**production** 12:12,19 13:7,13
14:6,7,16,17 15:7,20 23:10

**professional** 8:10 10:23 14:8
49:10

**professionals** 48:19,23 49:3

**projections** 25:11

**promptly** 76:11

**pronounce** 10:16

**proper** 18:6

**properly** 90:7

**proposed** 60:12 61:8 78:21 88:5,
14

**proposition** 82:1

**Proskauer** 39:17 40:1

**protracted** 35:6

**provide** 33:2 47:17

**provided** 32:23 81:8

**provision** 61:17 64:10,17,19

**provisions** 47:14 57:13

**public** 38:18

**published** 83:10

**purport** 33:14 51:24 53:13

**purpose** 60:6

**purposes** 31:16 36:19

**pursuant** 8:16 17:17 53:25 66:1
67:16

**pursue** 58:13 67:10

**push** 45:15

**put** 40:25 65:8 90:8

**putting** 88:21

**Q**

**qualified** 67:4

**question** 17:8 20:20 21:3 22:9,
15 24:14 30:12 34:18 38:9 41:25
42:4,8,10 46:8,11 47:19,22 48:17
49:16 53:4,6 54:12 59:5 64:25
65:20 66:16 67:5,9,22 71:9,12
72:11,12 80:6,11 87:5 88:21
89:16,17,20,22,24

**questions** 18:24 19:1,16,19,20
25:9 87:6 89:19 90:12

**quick** 75:16

**quickly** 63:20 74:9

**R**

**raise** 9:17

**raising** 19:15

**rate** 46:21

**re-ask** 72:12

**reached** 38:3 42:17,22 45:1

**reaching** 26:14

**read** 13:11 14:18 16:15 18:6 31:3
48:4 52:5 53:7 54:23 58:25 59:17
60:14 61:21 74:5 77:3 79:9 83:3
85:3 90:18,24 91:1,2

**readable** 13:10

**reading** 53:10 83:15 85:7

**reads** 16:11 18:2

**real** 83:6

**reason** 13:24 15:12 23:9 30:10
36:5 68:21 74:11,16,19,23 75:1,5
77:23

**reasonable** 76:10

**recall** 20:2 23:4 26:2,4 28:24 29:2
32:19 34:3 40:21 41:2,5 42:11,16,
17,23 43:4,9,12,25 44:19 45:22
50:23 57:19,22 60:15 61:12,24
69:22 79:10,11 83:1 84:12

**receive** 37:2 58:16 64:11,20

**received** 79:13 87:25 89:7

**recess** 86:24

**recognize** 13:12 17:20 29:16
35:5 51:16 70:8,16 85:18

**recollection** 16:7 29:21 59:22
83:8

**record** 8:4,18,24 18:23 19:9,18
52:23 86:23 87:1 91:9

**records** 85:6

**recover** 71:10

**recovered** 36:23 66:6

**recovery** 36:20 37:20 71:5

**red** 13:4

**referenced** 71:3 82:24

**referred** 70:24 82:21

**referring** 22:8 34:16 39:15 78:18

**refers** 31:17

**refresh** 16:7 29:21 59:22

**regard** 23:13 58:5

**regularly** 11:6

**reimbursement** 48:3

**related** 21:13 41:7,22,23 46:18

**relates** 22:24

**relating** 14:18 21:7 23:23 30:1
34:12

**relationship** 11:24 73:18 74:21
75:3 76:16 77:1,7 79:16 82:2,25
83:11 84:18 86:2

**relationships** 76:9

**relayed** 84:11

**releases** 66:19 67:3

USTP (Sungard) Ex. 13
Page 107 of 208

Timothy Daileader
Proceedings on 02/10/2026

**relevance** 20:14

**relevant** 76:9

**relief** 18:5 19:3 54:4 56:9,16
58:1,13,22 59:8 65:17 89:11

**relies** 67:20 78:24 81:25

**rely** 55:13 64:19 72:25 73:2 78:25

**remain** 69:19

**remains** 9:8 69:18

**remedies** 63:1

**remember** 13:22 26:20 41:9
44:16

**remote** 8:6,8 9:11

**remotely** 8:15 9:1

**reorganized** 72:10

**replace** 44:23

**replacing** 45:5

**reply** 50:23 51:1 87:10

**report** 9:1

**reporter** 8:3,6,13,16 9:16,23
10:20 12:21 15:24 17:10 45:7,9
52:23 57:7 60:16,19,23 69:25
77:14 79:21 85:8 86:22,25 90:23
91:1,3,8

**reporting** 82:24 83:22 84:2

**represent** 8:24 10:3,5,10 13:23
14:8 21:7 22:18 23:7,18 38:25
43:21 77:22 85:14,21

**representation** 21:8 22:24
32:19,20 35:15 59:12 73:24 83:7

**representations** 32:13 56:22
57:24 60:5 83:21 84:1

**representative** 40:18 43:16 59:6
82:7

**representatives** 83:20

**represented** 39:18 56:15 58:4
59:7 72:15

**representing** 9:3 16:24 38:11
46:13 58:9 83:18

**represents** 39:23 40:3,6 70:20
80:19

**request** 8:7,14 12:18 13:7,13
14:4,12 23:18 37:2,16

**requests** 12:11 18:3

**require** 16:13 63:5 88:24

**required** 35:24 75:9 76:12 80:20

**requires** 15:7 49:7,18 88:11

**research** 35:11

**reservation** 9:6

**reserve** 90:13

**reserves** 19:2

**reset all** 53:8

**resolution** 63:17 69:3 88:6,15
89:25 90:2

**resolve** 37:25 38:2 50:17,20
53:17 65:12 90:3,4

**resolved** 61:15 68:13,21

**resolves** 53:18,19 67:6

**resolving** 37:5 53:22 67:15

**respect** 11:25 71:18

**respectfully** 18:3

**respond** 46:8 67:1

**responded** 70:20

**responding** 12:11 69:22

**responds** 78:20

**response** 13:12,14 27:25 51:16
70:19 78:6

**responses** 12:18 13:6 70:17

**responsive** 42:5

**rest** 43:13

**restart** 62:4

**restate** 21:20 53:11

**restroom** 86:15

**result** 27:7 63:16 64:2

**retain** 21:6 43:20 44:1 47:17 48:8

**retained** 14:8 22:18 44:2 48:23
49:3,4 76:25

**retaining** 48:11

**retention** 21:12 44:4 48:24,25
78:19

**return** 20:6 22:11 24:25 89:7

**revealed** 86:5

**revelations** 44:25

**revenues** 35:8

**review** 12:18 32:2 33:25 35:4
59:20 74:2,7 76:1 90:18

**reviewed** 57:5 61:13,23 73:10
75:23

**reviewing** 61:20 62:1

**RFP** 14:20

**ridiculous** 20:24 68:19,20

**rights** 9:6

**risk** 36:21

**Rodriguez** 57:15

**role** 11:9,13

**romantic** 73:18

**Rose** 9:12,14 58:9

**royal** 34:10

**ruin** 10:16

**Rule** 13:17 17:18 38:15 49:21
53:23 66:13 76:12 87:23 89:3,6

**Rules** 8:16 31:19,22

**run** 25:11 84:10

**Rusty** 9:14

## S

**sake** 14:22

**Sarah** 10:1,4

**satisfied** 31:6

**scale** 33:11

**Schafer** 10:10

**scheduled** 8:6

**Schotz** 9:9 10:5 17:2 20:15 21:6,
12 22:18 23:5,20 45:2,6

**scope** 52:2

**screen** 13:2 16:5 47:15 54:19
61:8 87:5,11,12

**scroll** 13:6 70:6 75:21 80:5,10,24
85:16 87:9

**secured** 37:13 39:25

**seek** 19:3 62:15

**seeking** 16:17 24:8 87:24 88:10

USTP (Sungard) Ex. 13
Page 108 of 208

**seeks** 49:22 51:21,22 89:3,6

**seemingly** 35:6

**sense** 26:15 35:7

**sentence** 31:3,17 85:24 88:4

**separate** 53:20 66:5 67:13

**series** 80:2

**served** 36:21

**services** 33:11

**set** 50:18

**settle** 42:19 90:9

**settled** 58:14,17

**settlement** 12:13 17:6,17 18:4, 15 20:6,22 24:17,19 25:11,20 26:8,10 27:5,7 28:10,18,23,25 29:2,12 30:18,22 31:10,11 32:5,9, 12,14 33:3 34:3 35:18,20 36:15 37:11 38:2 39:9 40:11,15,21,22 41:12,15,23,24 42:11,14,22,25 43:5,13 46:10 47:16 50:13,19,25 51:22 52:8 53:18,19,21 54:1,11, 15 56:8,16 57:25 58:10,21 59:7, 15 60:3,13 61:16,18 62:13,16 64:3,10 65:2,6,15,22 66:1,10,12, 19 67:3,6,10,25 68:7,12,16 69:1, 12 70:20 88:5,11,14,24 89:10 90:8

**settlements** 27:10 28:2

**settling** 19:11 63:4

**share** 13:2 41:11,24 87:4,11

**shared** 29:4 41:14

**shift** 45:5

**show** 30:25 51:1

**showing** 17:16 77:25

**sic** 80:4

**signatories** 67:9

**signature** 29:16 51:13 75:22

**signed** 18:8,11,20 29:22,24 43:9 85:15,18

**significant** 54:22 55:11,14,23

**similar** 11:13

**simple** 36:10 59:6 66:14 71:16

**simply** 62:22 69:2,9

**sitting** 58:8

**situation** 36:12

**situations** 35:3,12

**size** 33:11

**skim** 64:18

**smaller** 41:9 80:3

**Smith** 9:14

**soliloquy** 89:15,19

**Solomon** 8:6

**sort** 53:11 55:22 57:4 76:17

**sorts** 37:25

**sought** 54:4,11 56:9,17 58:1,22 59:8 78:12 89:12

**sounds** 52:18

**source** 68:17

**Southern** 11:6,14,17

**speak** 28:3 37:1 40:22 42:18 43:12 62:20

**speaking** 24:9 26:13 41:2,7 49:16

**specific** 29:4 30:8 35:9 41:24 47:14 57:2

**spell** 10:20

**Spencer** 9:4

**spent** 20:21

**spoke** 39:12,14 40:10,14,18,21 43:1,3 45:4

**spoken** 40:20

**square** 88:13

**Stage** 10:5

**stamp** 13:4 16:11 51:8 54:16,18 80:25 87:18

**Standard** 8:4 86:23 87:1 91:9

**standing** 58:15

**standpoint** 58:14

**start** 14:2 24:7 26:7 36:5 47:14 48:17 82:9

**started** 10:1 45:5

**starting** 45:3

**starts** 20:9 31:15 80:17

**state** 8:20,23 10:19 18:22 19:8 33:10 35:5 63:15

**stated** 19:6 32:15 59:3

**statement** 75:14

**states** 9:3 12:12 23:5 38:14,15 49:22 50:24 57:15 58:1 69:23 80:25 89:11

**stating** 15:9

**status** 57:14

**stay** 25:9

**Steele** 9:4 19:18

**Steele's** 19:13

**stipulate** 8:7,15,25 9:5,11

**stop** 32:2

**Stores** 10:5

**story** 83:9,12

**strain** 35:3

**Street** 83:3,10,22 84:2

**strike** 10:7 19:3 56:2 62:4 82:8

**study** 33:25

**subject** 32:1 47:24 57:6

**submit** 16:13

**submits** 54:21

**subsequent** 63:12 65:3

**substance** 58:4 79:9 84:12

**substantial** 26:23 56:4

**substantially** 26:20 46:4

**subsume** 36:22

**succeeded** 28:15

**success** 27:12 28:2 71:24 72:16 74:1

**suddenly** 45:12

**sufficient** 86:15

**Sun** 18:14

**Sungard** 11:9,12,25 12:22 14:4 15:25 16:5,11,12,17,25 17:11,23 20:12 21:8 24:7 35:24 36:7 50:1 51:23 56:2 60:17 61:3 63:17 65:17 66:21 68:5,25 69:10 71:19, 23 72:7 73:11 75:17 77:4 78:14, 15,19 81:5 82:18 89:7

USTP (Sungard) Ex. 13
Page 109 of 208

Timothy Daileader
Proceedings on 02/10/2026                                    Index: Sungard's..vacate

**Sungard's** 11:25 13:15 14:12 16:8 43:15 44:20 49:23 56:1 74:3 76:16,23 79:1 81:5,20 87:25

**Sungard001** 29:8

**Sungard009** 54:18

**Sungard016** 29:9

**Sungard017** 30:21

**Sungard018** 35:19 47:15

**Sungard020** 59:17

**Sungard025** 29:16

**Sungard026** 51:4,9 87:8,18

**Sungard027** 51:19

**Sungard032** 51:13

**Sungard088** 79:22

**Sungard107** 81:9

**Sungard108** 80:3

**Sungard111** 80:4,25

**Sungard112** 77:15

**Sungard113** 20:9

**Sungard116** 24:5

**Sungard144** 57:8

**Sungard160** 70:1

**Sungard167** 85:10

**Sungard210** 13:4

**Sungard29** 88:3

**supplemental** 76:11,15,23

**support** 73:12

**suppose** 67:22

**sworn** 9:21

**system** 53:2

                    **T**

**taking** 36:21 68:16

**talk** 15:23 21:20 22:7 84:12

**talked** 15:22 24:4,6 37:20 42:16

**talking** 20:1,4,7,21,23

**taught** 37:8

**term** 31:5 45:1 86:3

**terminus** 63:18

**terms** 30:19 37:24 41:24 50:18 67:14,16 86:1

**test** 53:2

**testified** 9:21 34:16

**testimony** 40:13 42:5

**Texas** 11:7,14,17 33:10,15

**Texas-based** 33:15

**that'll** 46:7

**theory** 66:20

**Thill** 9:4

**thing** 62:22 90:18

**things** 26:15 28:16 46:3 63:20

**thought** 28:1 73:15

**thoughts** 59:2

**Tim** 9:10 72:5,10

**time** 8:4 11:8,19 20:21,23 25:10, 19 26:6 27:1,5,13,16 28:4,14,23 29:24 30:2,6,9,11,13 31:22 37:20 43:7,25 45:19 60:14 61:12,13 73:22 74:4 77:4 78:15,17,21 83:17,24 84:15 85:2 86:22,23 87:1 91:8,9

**timely** 31:22,24,25 32:2

**times** 67:4 69:18

**timing** 37:6

**Timothy** 8:9,19 9:20 10:21

**today** 15:12 17:4 30:3 56:3 61:23 90:11

**told** 24:21 32:17 34:2 46:20

**tomorrow** 78:9,10

**tonight** 78:10

**top** 29:12 41:5 51:19 80:5

**topic** 25:10

**total** 23:10 25:5 44:14

**totaled** 23:8 44:16

**trade** 74:6

**transcript** 53:7 57:14 58:12 59:3 90:22

**trial** 24:24 25:13,21,24 27:3,12,20

56:5 72:22 90:13

**trustee** 9:3,5 10:7,11 12:12 15:14 19:2 23:5 38:14,15 49:22 50:24 52:1 54:4 56:9,17 58:1,22 59:9 60:11 61:15 66:6 69:23 73:3 87:23 88:7,10,16 89:6,11,12,23 90:4,5

**Trustee's** 13:17 18:23 20:25 50:1 51:25 52:2,9 53:13,23 61:7 87:10 88:6,15

**TUESDAY** 8:1

**turn** 20:7 29:6 47:13 54:15 59:15 64:16

**turning** 30:18 35:18 61:25

                    **U**

**U.S.** 9:4,5 13:17 15:13 18:23 19:2 20:24 50:1 51:25 52:1,2,9 53:13, 23 54:4 56:9,17 58:22 59:8 60:11 61:7,14,15 87:10,23 88:6,7,10,15, 16 89:6,12,23 90:3,5

**ultimately** 26:14

**uncertain** 37:7 73:5

**uncertainties** 28:17,18 36:24 37:4

**unclear** 20:21 43:5 72:11

**understand** 14:21 21:24 22:8,15 33:9 35:2 38:10 41:21 42:4,24 53:22 59:1 65:1,20 67:14 87:23

**understanding** 14:3 15:6 16:17 30:15,22 31:9 32:4 33:5 40:2 42:8 48:8,18,22 49:2,9,24,25 53:19 63:25 66:14 72:19 78:11 82:8

**understood** 21:12 66:17 67:3

**undertaken** 71:9

**unintentional** 82:10

**United** 9:3 12:12 23:4 38:14,15 49:21 50:24 57:15 58:1 69:23 89:11

**unsigned** 85:14

**USC** 80:21

**utterly** 20:21

                    **V**

**vacate** 54:4 55:12,14 56:4 88:10

USTP (Sungard) Ex. 13
Page 110 of 208

Office: (410) 821-4888        CRC Salomon        crc-ustp@crcsalomon.com
Fax: (410) 821-4889 2201 Old Court Road, Baltimore MD 21208  www.crcsalomon.com

Timothy Daileader
Proceedings on 02/10/2026                                Index: vacated..York

**vacated** 48:1,10 50:3 54:23 55:3, 24

**vacating** 49:22 55:7 87:24 89:3

**vacation** 87:24

**vague** 41:25

**validity** 52:1

**Vehicles** 8:21

**verification** 70:8,9

**versus** 26:16 55:21 90:2

**Vianey** 9:4

**video** 8:12

**videoconference** 8:8

**viewed** 57:25

---

**W**

---

**wait** 90:17

**waive** 90:19

**waived** 31:7 46:11

**waiver** 9:7

**waives** 46:9

**walked** 68:18

**Walker** 8:10 9:13,15 11:21 12:6,9 14:9,18 15:9,16 18:12,17 20:13 21:7 22:4,11,19 24:20 26:9,11 32:12,13,18,20 33:2,6,9,21 34:12 35:15,24 36:6 37:21 38:19 43:21 44:2,5,6,11,19 45:5,6,19,21 46:9, 12,24 47:6,17 48:7,11 50:4,12 56:15,21 58:4,9 59:7 60:6 62:24 64:12 68:5 69:7,9 71:1 73:17 74:3 75:9 76:8,16,22,25 77:5,23 78:4 79:13 81:4,9,17 82:16 83:18,20, 25 84:16,17,24 85:1 86:8 87:25 88:12 89:1,4,7

**Walker's** 11:24 21:8 49:22 57:24 58:17,21 66:21 68:8 74:12 81:15 82:1

**Wall** 83:3,9,22 84:2

**wanted** 72:13

**waste** 20:23

**weigh** 28:17 83:8

**whatsoever** 67:19

**Wherefore** 18:2

**wholly** 16:13

**William** 77:19 78:1

**Wind-down** 16:12 24:8 51:23

**windfall** 69:8

**withdraw** 48:17

**withdrawal** 44:5,20 45:20,24 46:5 83:25 84:16,25

**words** 58:25

**work** 10:5 11:10 15:13 23:18,19 35:10,11 44:10 45:6 46:4

**worries** 87:14

**worry** 53:10

**wound** 46:4

**written** 15:8,15,19

---

**Y**

---

**year** 26:19

**years** 35:2 83:4

**yesterday** 19:9

**yesterday's** 19:10

**yield** 73:16

**York** 8:20,22 11:1

USTP (Sungard) Ex. 13
Page 111 of 208

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Civil Action No. 4:23-CV-04787-AM |
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Case No. 23-00645 (EVR)<br><br>(Bankruptcy Miscellaneous Proceeding) |

**WIND-DOWN DEBTOR'S OBJECTIONS AND**
**RESPONSES TO UNITED STATES TRUSTEE'S FIRST REQUEST**
<u>**FOR PRODUCTION OF DOCUMENTS TO SUNGARD AS NEW HOLDINGS, LLC**</u>

TO:     Laura D. Steele, Esq.
         Counsel for Kevin M. Epstein
         the United States Trustee, Region 7
         Southern and Western Districts of Texas

PLEASE TAKE NOTICE that that Sungard AS New Holdings, LLC, the Wind-Down

Debtor in the remaining chapter 11 case of Sungard AS New Holdings, LLC (Case No. 22-90018-

CML) (the "**Wind-Down Debtor**"), by and through Drivetrain LLC (the "**Plan Administrator**"),

as the Plan Administrator appointed pursuant to the confirmed *Second Amended Combined*

*Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor*

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 763] (the "**Plan**"), by and

through its undersigned counsel, hereby serves its objections and responses (collectively, the

"**Responses**") to the *United States Trustee's First Request for Production of Documents to*

*Sungard AS New Holdings, LLC* dated January 22, 2026 (the "**Requests**").

USTP (Sungard) Ex. 13
Page 112 of 208

UST
Exhibit
1

Dated: February 5, 2026

**COLE SCHOTZ P.C.**
*Counsel for the Wind-Down Debtor and Plan Administrator*

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: dgeoghan@coleschotz.com

*- and -*

Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: mtsukerman@coleschotz.com

USTP (Sungard) Ex. 13
Page 113 of 208

## NO WAIVER, QUALIFICATIONS, AND RESERVATION OF RIGHTS

1.      The Wind-Down Debtor reserves the right to modify and supplement these Responses and to present in any proceeding and at trial any further information and documents obtained during discovery and preparation for trial.

2.      Any statement contained in these Responses indicating that non-privileged information or documents will be produced in response to a specific Request does not mean that any such information or documents actually exist, but only that they will be produced to the extent that they exist and can be obtained without undue burden.

3.      These Responses are not intended to be, and shall not be deemed to be, an admission of the matters stated, implied or assumed by or in any of the specific Requests.

4.      These Responses are made without in any way waiving or intending to waive: (i) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of information or documents produced in response to these Requests; (ii) the right to object on any ground to the use of the information or documents produced in response to the Requests at any hearings or at trial; (iii) the right to object on any ground at any time to a request for further responses to the Requests; or (iv) the right at any time to revise, correct, add to, supplement, or clarify any of the responses contained herein.

5.      The information and documents supplied in these Responses are for use in this litigation and for no other purpose.

6.      In the following responses, identification of specific documents is based upon the Wind-Down Debtor's good faith interpretation of the Requests. All documents produced in connection with these Responses shall be deemed to respond to all requests to which the document might apply whether or not the Wind-Down Debtor has designated such document as responsive

USTP (Sungard) Ex. 13
Page 114 of 208

3

Sungard212

to a particular Request. Although the Wind-Down Debtor has made a good faith effort to identify specific documents that are responsive to each individual request, there may be some cases where a specific document is identified inadvertently to a request to which it is not responsive.

7.      To the extent that the Wind-Down Debtor states in the below Responses that it will produce documents, the document production is being made subject to the terms and confidentiality provisions of that certain Stipulated Protective Order entered on July 30, 2024, in Case No. 23-00645 [Docket No. 202].

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents evidencing post-confirmation fee and expense statement received from Jackson Walker LLP ("**Jackson Walker**").

**RESPONSE: The Wind-Down Debtor objects to this Request because it is completely irrelevant to the subject matter of this contested proceeding and is not reasonably calculated to lead to the discovery of admissible evidence.  The Wind-Down Debtor further objects to this Request insofar as it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Accordingly, the Wind-Down Debtor will not produce any documents in response to this Request.**

**REQUEST FOR PRODUCTION NO. 2:** Documents evidencing engagement agreements with any professional retained to represent or advise you regarding your claims against Jackson Walker in the pending bankruptcy case (the "**Case**").

**RESPONSE:  The Wind-Down Debtor objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence.  The Wind-Down Debtor further objects to this Request as vague and ambiguous in that the reference to**

USTP (Sungard) Ex. 13
Page 115 of 208

"pending bankruptcy case" (and the corresponding definition of "Case") does not specify a particular case or proceeding and requires the Wind-Down Debtor to speculate as to its meaning. The Wind-Down Debtor further objects to this Request insofar as it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege. Subject to and without waiving the foregoing objections, after a reasonable search, Plaintiff will produce non-privileged documents, if any, in its possession, custody and/or control that are responsive to this Request. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 3:** Documents evidencing fee and expense statements received from any professional retained to represent or advise you regarding the Case including, but not limited to, your settlement agreement.

**RESPONSE: The Wind-Down Debtor objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence. The Wind-Down Debtor further incorporates by reference herein its objections to Request for Production No. 1 to the extent this Request seeks production of Jackson Walker's post-confirmation invoices, which are completely irrelevant to this matter. The Wind-Down Debtor further incorporates by reference its objection to the definition of the term "Case" as set forth in its response to Request for Production No. 2 and further objects that it is unclear in the context of this Request whether "Case" refers to the pending proceedings against Jackson Walker or the chapter 11 cases commenced by Sungard AS New Holdings, LLC and its debtor affiliates. Subject to and without waiving the foregoing objections, after a reasonable search, Plaintiff will produce non-privileged documents, if any, in its possession, custody and/or control that**

USTP (Sungard) Ex. 13
Page 116 of 208

5

Sungard214

are responsive to this Request.  **Plaintiff reserves the right to amend and/or supplement this response.**

**REQUEST FOR PRODUCTION NO. 4:**  Documents you relied upon when determining the probability for success you used in reaching the proposed settlement with Jackson Walker. In responding, you do not need to produce: (1) documents bearing Bates stamps JW_00000001 through and including JW_00019621; (2) documents bearing Bates stamps JW_00020316 through and including JW_00030999; (3) documents bearing Bates stamps H&K_0000001 through and including H&K_0003058 (and the associated certification of records); (4) documents provided to you by the U.S. Trustee; (4) transcripts of depositions taken in this case as well as the partial transcript of interview of Elizabeth C. Freeman conducted by the U.S. Trustee; and (5) documents you assert in good faith are covered by your attorney-client privilege or the work product doctrine (you also do not need to produce a privilege log for such documents).

**RESPONSE:  The Wind-Down Debtor objects to this Request insofar as it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  The Wind-Down Debtor further objects to this Request because the term "relied upon" as used in this Request is vague, ambiguous, and susceptible to multiple meanings.  Subject to and without waiving the foregoing objections, after a reasonable search, Plaintiff will produce non-privileged documents, if any, in its possession, custody and/or control that are responsive to this Request.  Plaintiff reserves the right to amend and/or supplement this response.**

**REQUEST FOR PRODUCTION NO. 5:**  Copies of documents terminating Jackson Walker's representation of you.

USTP (Sungard) Ex. 13
Page 117 of 208

**RESPONSE:  The Wind-Down Debtor objects to this Request as overly broad in time and scope, as it does not include any specification or limitation as to time or subject matter. The Wind-Down Debtor further objects to this Request to the extent it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, after a reasonable search, Plaintiff will produce non-privileged documents, if any, in its possession, custody and/or control that are responsive to this Request.  Plaintiff reserves the right to amend and/or supplement this response.**

**REQUEST FOR PRODUCTION NO. 6:**  Copies of all demand letters issued from you to Jackson Walker relating to the Case.

**RESPONSE:  The Wind-Down Debtor objects to this Request because the term "demand letters" as impermissibly vague, ambiguous, and susceptible to multiple meanings, requiring the Wind-Down Debtor to speculate as to its meaning and scope.  The Wind-Down Debtor further incorporates by reference its objection to the definition of the term "Case" as set forth in its response to Request for Production No. 2.  Accordingly, no documents will be produced in response to this Request as currently propounded.  Should the U.S. Trustee issue a revised and clarified request, the Wind-Down Debtor will consider any such revised request.**

**REQUEST FOR PRODUCTION NO. 7:**  To the extent any mediation privilege is asserted in response to these Interrogatories or the contemporaneously issued Requests for Production, produce the mediation agreement you entered into relating to the case.

USTP (Sungard) Ex. 13
Page 118 of 208

7

Sungard216

**RESPONSE:  The Wind-Down Debtor has not asserted a mediation privilege in its objections and responses to the U.S. Trustee's Requests for Production and Interrogatories and, therefore, this Request is inapplicable.**

USTP (Sungard) Ex. 13
Page 119 of 208

8

Sungard217

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Civil Action No. 4:23-CV-04787-AM |
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Case No. 23-00645 (EVR)<br><br>(Bankruptcy Miscellaneous Proceeding) |

## WIND-DOWN DEBTORS' AMENDED AND SUPPLEMENTAL JOINDER TO UNITED STATES TRUSTEE'S AMENDED AND SUPPLEMENTAL MOTION FOR (1) RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024 APPROVING THE RETENTION AND COMPENSATION APPLICATIONS OF JACKSON WALKER LLP, (2) SANCTIONS, AND (3) RELATED RELIEF

Sungard AS New Holdings, LLC, together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC (Case No. 22-90018-CML) (collectively, the "**Sungard Wind-Down Debtors**"),[1] by and through Drivetrain LLC (the "**Plan Administrator**"), as the Plan Administrator appointed pursuant to the confirmed *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 763] (the "**Plan**"), hereby file this amendment and supplement to the *Wind-Down Debtors'*

---

[1] The Sungard Wind-Down Debtors, and the last four digits of their tax identification numbers, are: InFlow LLC (9489); Sungard AS New Holdings, LLC (5907); Sungard AS New Holdings II, LLC (9169); Sungard AS New Holdings III, LLC (3503); Sungard Availability Network Solutions Inc. (1034); Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee (3886); Sungard Availability Services Holdings (Canada), Inc. (2679); Sungard Availability Services Holdings (Europe), Inc. (2190); Sungard Availability Services Holdings, LLC (6403); Sungard Availability Services Technology, LLC (9118); Sungard Availability Services, LLC and Sungard Availability Services, Ltd. (4711).

USTP (Sungard) Ex. 13
Page 120 of 208

UST
Exhibit

2

*Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [Docket No. 559] (the "**Joinder**").[2]

As set forth in the Joinder, since the Plan's Effective Date, the Sungard Wind-Down Debtors have continued in existence for purposes of, *inter alia*, liquidating their remaining assets, including, but not limited to, "Causes of Action" (as defined in the Plan). Through the Joinder, the Sungard Wind-Down Debtors joined and adopted the relief sought by the United States Trustee (the "**U.S. Trustee**") in his *Amended and Supplemental Motion for (1) Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [Docket No. 1043] (the "**Rule 60 Motion**"), including the allegations, arguments, and pleadings made and/or filed by the U.S. Trustee in support thereof, to the extent of seeking (a) to vacate the orders approving the retention and compensation of Jackson Walker LLP ("**JW**") as Debtors' counsel, and (b) disgorgement of fees and expenses paid to JW in the Sungard Chapter 11 Cases.

Following extensive discussions and negotiations, on July 17, 2025, the Plan Administrator and Sungard Wind-Down Debtors executed a Settlement Agreement and Release with JW (the "**Settlement Agreement**"), pursuant to which they agreed, *inter alia*, to release all of their claims and causes of action against JW (including, but not limited to, those relating to the Joinder and the Rule 60 Motion) in exchange for JW's payment of $385,000 (the "**Settlement Amount**"). The Settlement Amount represents more than 93% of the fees awarded to JW in the

---

USTP (Sungard) Ex. 13
Page 121 of 208

[2]  ...d terms used but not defined herein have the meaning assigned to them in the Joinder.

67271/0001-51859276v1

Sungard114

Sungard Chapter 11 Cases. The Settlement Agreement's effective date, including payment of the Settlement Amount, is conditioned on the Court's approval of the Settlement Agreement.

On July 29, 2025, the Sungard Wind-Down Debtors filed their *Motion For Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 91] (the "**9019 Motion**") in the District Court seeking approval of the Settlement Agreement. As set forth in the 9019 Motion, the Plan Administrator's decision to enter into the Settlement Agreement was, at its core, based upon a cost-benefit analysis. Among other considerations, the Plan Administrator determined that the substantial cost and expense associated with continued litigation, the duration and inherent uncertainty of litigation, and any potential upside associated with further litigation, was clearly outweighed by the strength of the Settlement Agreement (which contemplates that JW return 93% of its fees to the Sungard Wind-Down Debtors).

On November 12, 2025, the Court entered an Order directing that the 9019 Motion be held in abeyance until after the trial on the Rule 60 Motion and the Bankruptcy Court's issuance of its report and recommendation to the District Court in connection therewith (the "**Abatement Order**"). Consequently, to preserve the Sungard Wind-Down Debtors' rights and claims against JW, the Plan Administrator must proceed with the litigation and prosecution of the Sungard Wind-Down Debtors' claims against JW in this matter through trial, notwithstanding the pendency of the 9019 Motion. The Sungard Wind-Down Debtors, thus, will be required to incur significate litigation costs, which will reduce their ultimate recovery in this matter.

As a result, the Sungard Wind-Down Debtors file this amendment and supplement to their Joinder to make clear they are seeking and asserting claims against JW for reimbursement of all their attorneys' fees and costs incurred in this matter.

USTP (Sungard) Ex. 13
Page 122 of 208

67271/0001-51859276v1
Sungard115

It is established that the Court has "wide discretion" in selecting an appropriate remedy and crafting sanctions against JW. *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 538 (Bankr. S.D.N.Y. 1994) ("I have wide discretion in my selection of an appropriate remedy.") (citing cases); *see Int'l Petroleum Corp. v. Waldron (In re American Int'l Refinery, Inc.)*, 676 F.3d 455, 466 (5th Cir. 2012); *In re Southmark Corp.*, 181 B.R. 291, 296-97 (Bankr. N.D. Tex. 1995) (stating that when determining the appropriate relief for failure to disclose, the court "must engage in a fact specific inquiry in which the court may balance benefit and/or harm to the estate, time and labor employed, egregiousness of the professional person's non-disclosure, and so forth."). Here, the Plan Administrator has a duty and mandate under the Plan to liquidate the Sungard Wind-Down Debtors' claims against JW, which arise from JW's conscious decision to hide the fact that its partner had a financial and romantic relationship with the bankruptcy judge presiding over the Sungard Chapter 11 Cases. Given the Court's abeyance of the 9019 Motion, the Sungard Wind-Down Debtors must bear the cost and expense of continued litigation until such time as its asserted claims against JW are resolved.

Under the circumstances of this case, the Sungard Wind-Down Debtors submit that it is a wholly appropriate for the Court to require JW to pay their attorneys' fees, in addition to ordering disgorgement of JW's fees.

*[The remainder of this page is intentionally blank]*

USTP (Sungard) Ex. 13
Page 123 of 208

4

Dated: November 24, 2025

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*- and -*

Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Email: mtsukerman@coleschotz.com

*Counsel to the Sungard Wind-Down Debtors and
Plan Administrator*

USTP (Sungard) Ex. 13
Page 124 of 208

67271/0001-51859276v1

Sungard117

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2025, the foregoing Joinder was served upon all

parties entitled to receive electronic notices via the Clerk of the Court's CM/ECF system.

<u>/s/ Daniel F.X. Geoghan</u>
Daniel F.X. Geoghan

USTP (Sungard) Ex. 13
Page 125 of 208

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Civil Action No. 4:23-cv-04787 |
| Professional Fee Matters Concerning the Jackson Walker Law Firm, | |
| Reorganized Debtors. | |

## MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

TO THE HONORABLE ALIA MOSES,
CHIEF UNITED STATES DISTRICT JUDGE:

NOW COMES, Sungard AS New Holdings, LLC, the wind-down debtor (together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC,[1] the "**Wind-Down Debtors**"), by and through Drivetrain LLC (the "**Plan Administrator**"), the Plan Administrator appointed pursuant to the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS New Holdings, LLC and Its Debtor Affiliates pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**), and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "**Motion**"), and in support thereof respectfully show the Court as follows:

---

[1] The Sungard Debtors/Wind Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard [...] Holdings, LLC; Sungard Availability Services Technology, LLC; Sungard Availability Services, [...] ailability Services, Ltd.

USTP (Sungard) Ex. 13
Page 126 of 208

1

Sungard001

UST Exhibit

3

# I.    RELIEF REQUESTED

1.      By this Motion, and in accordance with Bankruptcy Rule 9019(a),[2] the Wind-Down Debtors request that the Court enter an order approving the Settlement Agreement and Release (the "**Settlement Agreement**") between Jackson Walker LLP ("**JW**"), the Wind-Down Debtors and the Plan Administrator that would resolve any and all claims and causes of action of any kind held by the Wind-Down Debtors, their estates, and/or the Plan Administrator, in its capacity as such, against JW arising out of or related to *In re Sungard AS New Holdings LLC, et al.,* Chapter 11 Case No. 22-90018, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Chapter 11 Case"), *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "**Misc. Proceeding**"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. A copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. In exchange for the mutual releases set forth in the Settlement Agreement, JW shall pay the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan (defined below) in the Chapter 11 Case.

# II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157.  The Plan Administrator confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion

---

[2]      Article XII.A. of the Plan (defined below) provides that the Wind-Down Debtors or the Plan Administrator may compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Nonetheless, the Wind-Down Debtors file _____ under Bankruptcy Rule 9019 and seek approval from this Court to provide transparency to the _____ parties-in-interest with regard to their settlement with JW in the Chapter 11 Case.

USTP (Sungard) Ex. 13
Page 127 of 208

2

to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## III. <u>BACKGROUND</u>

### A. **Chapter 11 Case**

4. On April 11, 2022 (the "**<u>Petition Date</u>**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**<u>Bankruptcy Court</u>**"). The Chapter 11 Case was before former Judge Jones.

5. On May 10, 2022, the Debtors filed their *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors* [Dkt. No. 211]. JW's employment application was approved without objection by former Judge Jones on June 6, 2022 [Dkt. No. 291].

6. On June 3, 2022, the Debtors filed their *Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 257] (the "**<u>Original Plan and Disclosure Statement</u>**"). On September 2, 2022, the Debtors filed their *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 627] (the "**<u>First Amended Plan and Disclosure Statement</u>**").

USTP (Sungard) Ex. 13
Page 128 of 208

Sungard003

7.   On August 17, 2022, JW filed *Jackson Walker LLP's First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from April 11, 2022 Through July 31, 2022* [Dkt. No. 570] (the "**First Interim Fee Application**").

8.   On September 7, 2022, the *Order (I) Conditionally Approving the Disclosure Statement; (II) Approving the Combined Hearing Notice; (III) Approving the Solicitation and Notice Procedures; (IV) Approving the Form of Ballot and Notices; (V) Approving Certain Dates and Deadlines in Connection with the solicitation and Confirmation of the Plan; and (VI) Scheduling a Combined Hearing on (A) Final Approval of the Disclosure Statement and (B) Confirmation,* was entered [Dkt. No. 635].

9.   Former Judge Jones approved, without objection, JW's First Interim Fee Application on September 12, 2022 [Dkt. No. 649].

10.  On October 13, 2022, the Debtors filed their *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt No. 734] (the "**Second Amended Plan and Disclosure Statement**", together with the Original Plan and Disclosure Statement and the First Amended Plan and Disclosure Statement, the "**Plan and Disclosure Statement**" or "**Plan**").

11.  On October 17, 2022, the Court entered the *Order Confirming the Debtors' Joint Chapter 11 Plan and Approving on a Final Basis the Disclosure Statement of Sungard AS Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 763] (the "**Confirmation Order**").

12.  On November 9, 2022, the effective date of the Plan occurred (the "**Effective Date**") and the Debtors filed the *Notice of Occurrence of the Effective Date* [Dkt. No. 835].

USTP (Sungard) Ex. 13
Page 129 of 208

4

Sungard004

13.     On November 29, 2022, JW filed *Jackson Walker LLP's Second Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from August 1, 2022 Through November 9, 2022* [Dkt. No. 850] (the "**Second Interim Fee Application**").  Also on November 29, 2022, JW filed *Jackson Walker LLP's Final Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from April 11, 2022 Through November 9, 2022* (the "**Final Fee Application**") [Dkt. No. 851].  The Final Fee Application sought approval of fees aggregating $414,495.

14.     Former Judge Jones approved, without objection, JW's Final Fee Application [Dkt No. 899] on December 30, 2022.

### B.     The Miscellaneous Proceeding

15.     On or about November 3, 2023, Keven M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed a motion that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Dkt. No. 1026] (the "**60(b) Motion**").

16.     On December 9, 2023, an Order was entered commencing the Misc. Proceeding in the Bankruptcy Court.

17.     On February 29, 2024, the U.S. Trustee filed an amended Rule 60(b)(6) motion in the Chapter 11 Case [Dkt. No. 1043] (the "**Amended 60(b) Motion**", together with the 60(b) Motion, the "**UST's Motions**").  The basis of the UST's Motions was the alleged undisclosed relationship between former Judge Jones and JW's former partner, Elizabeth Freeman.

18.     On April 15, 2024, the Plan Administrator, on behalf of itself and the Wind-Down Debtors, filed a *Notice of Standing and/or Indispensable Party Status* [Dkt. No. 1053] in the Chapter 11 Cases.

USTP (Sungard) Ex. 13
Page 130 of 208

Sungard005

19.     On December 16, 2024, the Wind-Down Debtors filed the *Wind-Down Debtors Joinder to United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgement Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [Dkt. No. 1075] (the "**Joinder**").

20.     On May 22, 2024, JW filed its response in opposition to the UST's Motions [Dkt. No. 1057].

21.     On July 1, 2024, the U.S. Trustee filed his reply [Dkt. No. 1062].

22.     On August 12, 2024, JW filed its sur-reply [Dkt. No. 1065].

23.     JW disputes the merits of the UST's Motion and the Joinder.  JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Chapter 11 Case or JW's acts or omissions in relation to the Chapter 11 Case and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Chapter 11 Case.  The Wind-Down Debtors and the Plan Administrator vigorously disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW in the Chapter 11 Case.

24.     The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying on the UST's office to lead the litigation. However, when trial appeared inevitable, counsel for the Plan Administrator reviewed more than a thousand documents, attended numerous hearings, meetings, and settlement conferences, and participated in regular calls with the U.S. Trustee and other trustees, debtors, plan administrators and plan agents in other bankruptcy cases.

USTP (Sungard) Ex. 13
Page 131 of 208

Sungard006

25. The Plan Administrator did not participate in the mediation that occurred among certain parties in March of 2025 but instead sought to resolve the issues through a series of communications directly with JW and its counsel. As a result thereof, JW and the Plan Administrator reached a settlement that fully and completely settles and resolves the disputes between them on the terms and conditions set forth in the Settlement Agreement.

## IV.     SUMMARY OF SETTLEMENT AGREEMENT

26. The Settlement Agreement is straightforward. Within 5 business days of an order granting this Motion and such order becoming a Final Order (as defined therein), JW will pay to the Plan Administrator $385,000.00 (the "**Settlement Amount**"), which will be distributed pursuant to the terms of the confirmed Plan in the Chapter 11 Case.

27. In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases. The Plan Administrator, as fully set forth in the Settlement Agreement, will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date of the Settlement Agreement, including claims and causes of action arising from or relating to the Chapter 11 Case, the UST's Motion, the Joinder, and the relationship between Elizabeth Freeman and former Judge Jones. JW, as more fully set forth in the Settlement Agreement, will release the Plan Administrator and the Wind-Down Debtors from all claims and causes of action involving any act, matter, transaction occurrence, or event before the Effective Date, including claims and causes of action arising from or related to the Chapter 11 Case, the U.S. Trustee's motion, the Plan Administrator's Joinder, and the relationship between Elizabeth Freeman and former Judge Jones.

USTP (Sungard) Ex. 13
Page 132 of 208

Sungard007

## V.     ARGUMENTS AND AUTHORITIES

28.     Rule 9019(a) states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose…to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007)(quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

29.     "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in [the Fifth] Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*…" *Id.* at 462. Those factors are:

    i.    The balance between the litigation's possibility of success and the settlement's future benefits;

    ii.    The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

    iii.    The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

    iv.    Whether other parties in interest support the settlement;

    v.    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

    vi.    The nature and breadth of releases to be obtained by [the settling party]; and

    vii.    The extent to which the settlement is the product of arm's length bargaining.

USTP (Sungard) Ex. 13
Page 133 of 208

Sungard008

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

30.    The Plan Administrator contends that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*.  The Settlement Agreement gives the Plan Administrator and Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense, and uncertainty of litigation.

**A.  The balance between the litigation's possibility of success and the settlement's future benefits**

31.    The Plan Administrator contends that the possibility of success in the litigation against JW is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against JW (including any applicable appeals); and (b) the amount of recovery the Plan Administrator will realize through litigation when balanced against the cost of continued litigation.  The Settlement Amount provides a significant recovery for the Wind-Down Debtors for payment to creditors in accordance with the confirmed Plan and eliminates the risk of continuing to litigate the claims against JW.

32.    The Plan Administrator submits there is a significant likelihood that the order approving JW's Final Fee Application will be vacated, thus opening up the possibility that fees paid to JW will be clawed back to the Wind-Down Debtors.  However, the trial date to vacate the Final Fee Application is currently unscheduled.  Once complete, and assuming the Plan Administrator wins, appeals would likely follow further extending the litigation timeline.

33.    The Settlement Agreement and Settlement Amount provides the Liquidation Trust

USTP (Sungard) Ex. 13
Page 134 of 208

3% of the fees awarded to JW, upon an order approving the Settlement Amount

9

Sungard009

becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan. Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case to maximize any recovery for its constituents.

**B. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**

34.     As discussed above, there is a high likelihood that litigation will be complex and protracted leading to appeals and further litigation. As the Court acknowledged at the hearing on May 22, 2025, it's not clear that the court would order 100% disgorgement from JW in light of the actions of former Judge Jones and Ms. Freeman. If a finding was made that former Judge Jones and Ms. Freemen should be held at least partially responsible, it is possible that the Wind-Down Debtors would recover less than 100% of the fees and could be left to litigate with former Judge Jones and Ms. Freeman for any remaining unpaid amounts – leading again to further litigation and costs. The Plan Administrator has retained counsel with respect to the UST's Motions and will continue to need to retain and pay counsel with respect to any further proceedings. A settlement now brings finality and eliminates any meaningful litigation and collection risk, and ends future fees and costs being incurred. However, that risk could increase with the passage of time and continued litigation.

**C. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**

35.     The Plan Administrator is of the firm belief that the Settlement Agreement is in the best interest of the creditors as the Settlement Agreement removes any uncertainty of litigation, stops the incurrence of further attorney's fees and expenses in connection with these disputes, and provides a substantial recovery for the benefit of the creditors. This is also a substantial step in bringing the administration of this matter to an end.

USTP (Sungard) Ex. 13
Page 135 of 208

10

Sungard010

**D. Whether other parties in interest support the settlement**

36.     The Plan Administrator has communicated the terms of the Settlement Agreement to the DIP Lenders (as the term is defined in the Plan), who would be the recipients of any distributions.  The DIP Lenders support the settlement.

**E. The nature and breadth of releases to be obtained by JW and the Plan Administrator**

37.     The Settlement Agreement contains customary broad mutual releases among JW and the Plan Administrator on behalf of the Wind-Down Debtors.  This is to bring finality to the claims and disputes between the Plan Administrator and JW.

**F. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement; the Settlement Agreement was the result of arms-length negotiations**

38.     Counsel for the Plan Administrator and JW are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy related litigation and the administration of bankruptcy estates.  The Settlement Agreement was entered into after 20 months of litigation and after the parties exchanged multiple settlement proposals. The settlement was reached following extensive arms-length negotiations.

39.     The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation.  The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses.  The Plan Administrator believes it has achieved a resolution that maximizes value for the Wind-Down Debtors while minimizing the cost and uncertainty of litigation.   Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the estates and all concerned parties.

USTP (Sungard) Ex. 13
Page 136 of 208

11

Sungard011

WHEREFORE, the Plan Administrator respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

DATED: July 29, 2025

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*Counsel to the Wind-Down Debtors in the Sungard Chapter 11 Cases*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, a true and correct copy of the foregoing Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Daniel F. X. Geoghan*
Daniel F. X. Geoghan

USTP (Sungard) Ex. 13
Page 137 of 208

Sungard012

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | |
| Professional Fee Matters Concerning the Jackson Walker Law Firm, | Civil Action No.: 4:23-cv-04787 |
| Reorganized Debtors. | |

## ORDER GRANTING MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Upon the hearing on the *Motion for Order Approving Compromise and Settlement Pursuant Bankruptcy Rule 9019* (the "**Motion**")[1] filed by the Sungard AS New Holdings, LLC the wind-down debtor (together with each of the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC,[2] the "**Wind-Down Debtors**"), by and through Drivetrain LLC (the "**Plan Administrator**"), the Court having considered the Motion, all responses or objections thereto, the evidence presented at the hearing, the arguments of counsel, and the law, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; that this is a core proceeding under 28 U.S.C. § 157; that notice of the Motion and the opportunity for hearing on the Motion was appropriate under the particular circumstances; that no other or further notice need be provided; that the terms of the Settlement Agreement are fair, equitable, and in the best interest of the Wind-Down Debtors, the Wind-Down Debtors' estates, the creditors, and

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed to them in the Motion.

[2] The Sungard Debtors/Wind Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, ~~rd~~ Availability Services, LP; and Sungard Availability Services, Ltd.

USTP (Sungard) Ex. 13
Page 138 of 208

Sungard013

all other parties-in-interests; and after due deliberation and sufficient cause appearing therefore, it is:

**ORDERED** that the Settlement as described in the Motion and Settlement Agreement (attached hereto as Exhibit A) is approved. The Settlement Agreement and the terms and conditions thereof, including, without limitation, the mutual releases contained therein, are incorporated by reference herein and approved in their entirety as if set forth herein. It is further

**ORDERED** that all objections, statements, or reservations of rights regarding, or other responses to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled, are overruled and denied on the merits with prejudice. It is further

**ORDERED** that Seadrill is authorized to enter into the Settlement Agreement, execute all other documents, and take any and all actions necessary to effectuate the Settlement Agreement. It is further

**ORDERED** that this Order is binding in all respects upon all parties in interest in this case, creditors of the Debtor or the estate, and the successors and assigns of each of the foregoing. It is further

**ORDERED** that this Order shall be effective immediately upon its entry. And it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

_____
Alia Moses,
Chief United States District Judge

USTP (Sungard) Ex. 13
Page 139 of 208

Sungard014

# EXHIBIT A

Settlement Agreement

USTP (Sungard) Ex. 13
Page 140 of 208

Sungard015

# SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement (the "Agreement") dated July 17, 2025 is made and entered into by and between Jackson Walker LLP ("JW"), the Wind-Down Debtors in the chapter 11 cases of Sungard AS New Holdings, LLC and its affiliates (the "Wind-Down Debtors"), and Drivetrain, LLC, as Plan Administrator for the Wind-Down Debtors (the "Plan Administrator", and collectively with JW and the Wind-Down Debtors, the "Parties"), with respect to the bankruptcy cases jointly administered under Bankruptcy Case No. 22-90018, *In re Sungard AS New Holdings, LLC* and certain of its affiliates (the "Bankruptcy Cases"), filed in the United States Bankruptcy Court for the Southern District of Texas.

## RECITALS

A.     On or about November 2-3, 2023, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel. The U.S. Trustee also filed related motions seeking to withdraw the reference of the Rule 60(b) motions.

B.     On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings".

C.     On May 22, 2024, JW filed its response in opposition to the U.S. Trustee Filings in each of the Relevant Cases.

D.     On July 1, 2024, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings and, and August 12, 2024, JW filed its sur-reply in further opposition to the U.S. Trustee Filings.

E.     On December 16, 2024, the Wind-Down Debtors filed a joinder to the U.S. Trustee Filings. *See* Dkt. No. 1075.

F.     The Parties dispute whether there is merit to the U.S. Trustee Filings or any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Case or JW's acts or omissions in relation to the Bankruptcy Case, including, without limitation, whether the release and exculpation provisions of the confirmed plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases (collectively, the "Bankruptcy Disputes").

G.     The Parties engaged in discovery from May 2024 through December 2024, and a trial on the issue of vacatur of JW's final fee applications as raised in the U.S. Trustee Filings was previously set before the Honorable Chief Judge Rodriguez in May 2025.

USTP (Sungard) Ex. 13
Page 141 of 208

67271/0001-50473230v2

1

Sungard016

H.       On April 9, 2025, Chief District Court Judge Alia Moses entered a *Memorandum Opinion and Order* withdrawing the Rule 60(b) motions, including the motion filed in the Bankruptcy Cases, to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court" or "District Court Proceeding", as applicable).

I.       As a result thereof, and in order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

<div align="center">

**AGREEMENT**

</div>

NOW, THEREFORE, in consideration of the mutual terms and covenants set forth in this Agreement, the receipt and sufficiency of which is respectively hereby acknowledged, and intending to be legal bound hereby, the Parties, as applicable, hereby agree as follows:

1.       Recitals.  The above recitals are incorporated herein by reference.

2.       Effective Date.

   (a)       The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived:  (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court or District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined).  For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review.  If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Case or any other action or proceeding.

   (b)       With respect to the forgoing paragraph, the Parties will in good faith exercise all reasonable efforts required of such Party to obtain the entry of the Approval Order, including executing and delivering any motions, declarations, testimony, or other items of support reasonably required in connection therewith, and attending any related hearings related to approval of the Settlement Motion (defined below).  Consistent with the preceding sentences, the Wind-Down Debtors and/or the Plan Administrator, as applicable will promptly prepare a motion to

USTP (Sungard) Ex. 13
Page 142 of 208
67271/0001-50473230v2

2

Sungard017

approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 or such other applicable rule(s) as may be applicable (the "Settlement Motion"). Before the Settlement Motion is filed, JW will be given an opportunity to review and comment on the Settlement Motion. The Settlement Motion and related Approval Order shall be in form and substance acceptable to both Parties. For the avoidance of doubt, the Settlement Motion, Approval Order and any related arguments or testimony provided in support of the same shall make clear that this Agreement resolves all issues and claims between the Wind-Down Debtors, the Plan Administrator, and JW, including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings as to the Bankruptcy Cases, and that this Agreement meets the standards required for approval under Rule 9019 of the Bankruptcy Rules. The Settlement Motion will be filed in the District Court under case number 4:23-CV-4787 AM. For the further avoidance of doubt, the Wind-Down Debtors and the Plan Administrator have agreed to file a Settlement Motion seeking approval of their entry into this Agreement out of an abundance of caution and without prejudice to the express terms of the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan or Sungard AS New Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 751] (the "Confirmed Plan"), which specifically waives the requirement that the Wind-Down Debtors and the Plan Administrator seek approval of any compromise or settlement of Claims (as that term is defined in the Confirmed Plan) or Causes of Action (as that term is defined in the Confirmed Plan) pursuant to Bankruptcy Rule 9019.

3. <u>Settlement Payment</u>. Within five (5) business days after the Effective Date, JW shall pay or cause to be paid to the Wind-Down Debtors (receipt of which shall be promptly confirmed by the Plan Administrator) the sum of $385,000.00 (the "Settlement Payment"). Payment shall be made payable to the Wind-Down Debtors' account by wire transfer using wire transfer instructions separately provided to JW. The Settlement Payment shall be paid to the Wind-Down Debtors and distributed pursuant to the terms of the Confirmed Plan in the Bankruptcy Case.

4. <u>Vacatur of Final Fee Order</u>. Subject to the approval of the Bankruptcy Court or District Court, as applicable, the Parties agree that the December 30, 2022 *Order* [Dkt. No. 899] shall be vacated and the Approval Order shall approve, on a final basis, JW's compensation and reimbursement of expenses in the amount of $35,461.46, which represents reimbursement of expenses in the amount of $5,966.46 and reduced fees in the amount of $29,495.00.

5. <u>Mutual Releases</u>.

(a) *Release in Favor of JW*. Upon receipt of the entire Settlement Payment, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, the Plan Administrator on behalf of itself and the Wind-Down Debtors hereby releases, acquits, and forever discharges JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants,

USTP (Sungard) Ex. 13
Page 143 of 208

67271/0001-50473230v2

3

Sungard018

contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Wind-Down Debtors or the Plan Administrator against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions.

(b)    *Release in Favor of the Wind-Down Debtors and the Plan Administrator.* On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW hereby releases, acquits, and forever discharges the Wind-Down Debtors and the Plan Administrator and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Case, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

6.    <u>Waiver of Future and Unknown Claims</u>. Each of the Parties acknowledges that it has been advised by its attorney(s) concerning, and is familiar with, the provisions of California Civil Code Section 1542, which provides:

USTP (Sungard) Ex. 13
Page 144 of 208
67271/0001-50473230v2

4

Sungard019

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR.

Each of the Parties acknowledges that it may have sustained damages, losses, fees, costs or
expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs
or expenses as the Party may have sustained might give rise to additional damages, losses, fees,
costs or expenses in the future. Nevertheless, each of the Parties who/which have provided releases
herein acknowledges that the releases herein have been negotiated and agreed upon in light of such
possible damages, losses, fees, costs or expenses, and each expressly waives any and all rights
under California Civil Code Section 1542 and under any other federal or state statute or law of
similar effect concerning any potential presently-unknown claims.

7.    <u>Bar</u>. The Parties agree that this Agreement may be pleaded as a complete bar to
any action or suit before any court or administrative body, with respect to any claim or cause of
action under federal, state or other law relating to any possible claim by the Wind-Down Debtors
or the Plan Administrator against JW or any other released parties, except that this Agreement may
not be pleaded as a bar to any claims or causes of action that arise in connection with performance,
non-performance and/or breach of this Agreement.

8.    ***Express Waiver of Fraudulent Inducement Claims***.

**THE PARTIES EXPRESSLY WAIVE ANY FRAUDULENT
INDUCEMENT CLAIMS RELATED TO THIS AGREEMENT. THE
PARTIES EXPRESSLY DISCLAIM RELIANCE UPON ANY FACTS,
PROMISES, UNDERTAKINGS, REPRESENTATIONS OR OMISSIONS
OF ANY KIND MADE BY ANY OTHER PARTY OR ITS AGENTS,
REPRESENTATIVES, OR ATTORNEYS PRIOR TO THE DATE OF
EXECUTION OF THIS AGREEMENT WHICH ARE NOT EXPRESSLY
SET FORTH OR REFERENCED HEREIN. THE PARTIES ARE RELYING
EXCLUSIVELY ON THEIR OWN JUDGMENT IN ENTERING INTO
THIS AGREEMENT.**

**MOREOVER, THE PARTIES ALL AGREE, REPRESENT, AND
WARRANT THAT: (1) THE TERMS OF THIS AGREEMENT,
INCLUDING BUT NOT LIMITED TO THE PARTIES' WAIVER OF
RELIANCE, WERE NEGOTIATED AND ARE NOT MERE BOILER
PLATE; (2) THE PARTIES HAVE SPECIFICALLY DISCUSSED THE
ISSUES WHICH ARE THE TOPIC OF THE LAWSUIT AND THIS
AGREEMENT; (3) ALL PARTIES ARE REPRESENTED BY
COMPETENT COUNSEL; (4) THIS AGREEMENT AND ANY
AGREEMENTS RELATING TO THE UNDERLYING LAWSUIT
AMOUNT TO AN ARM'S LENGTH TRANSACTION; AND (5) THE**

USTP (Sungard) Ex. 13
Page 145 of 208

67271/0001-50473230v2

5

Sungard020

**PARTIES ARE SOPHISTICATED AND KNOWLEDGEABLE IN BUSINESS MATTERS.**

9.  <u>No Admission / Liability Denied</u>.  This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation.  The payment of the consideration by or on behalf of JW and/or the execution of the Settlement Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied.  This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

10.  <u>Representations and Warranties</u>.  The following representations and warranties in this Agreement shall survive its execution and performance.

(a)  *Representations and Warranties by the Wind-Down Debtors and the Plan Administrator.*

(i)  Subject to approval by the Bankruptcy Court or District Court, as applicable, the Wind-Down Debtors and the Plan Administrator have all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of the Wind-Down Debtors;

(ii)  Subject to approval by the Bankruptcy Court or District Court, as applicable, the execution, delivery and performance by the Plan Administrator of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Wind-Down Debtors or the Plan Administrator may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Wind-Down Debtors or the Plan Administrator is a party or to which the Wind-Down Debtors or the Plan Administrator may be bound;

(iii)  The Wind-Down Debtors and the Plan Administrator are the only persons or entities who, to their knowledge, have any interest in any claims, causes of action, costs or demands herein released and none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities; and

(iv)  The Wind-Down Debtors and the Plan Administrator have freely and voluntarily entered into this Agreement and has been fully

USTP (Sungard) Ex. 13
Page 146 of 208
67271/0001-50473230v2

6

Sungard021

advised by their attorneys concerning their rights and have further been advised by their attorneys as to the terms and effects of this Agreement.

(b)     *Representations and Warranties by JW.*

(i)     JW has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary corporate and/or partnership action on the part of JW;

(ii)     The execution, delivery and performance by JW of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval, authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which JW may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which JW is a party to which JW may be bound; and

(iii)     JW has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning JW's rights and have further been advised by its attorneys as to the terms and effects of this Agreement.

11.     <u>Notice in the District Court Proceeding, Miscellaneous Proceeding, or Bankruptcy Case</u>. Within three (3) business days after the Effective Date, the Wind-Down Debtors and/or the Plan Administrator, as applicable and JW may file a joint notice in the District Court Proceeding, the Bankruptcy Case, or the miscellaneous proceeding captioned *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, pending before the Honorable Chief Judge Rodriguez in the Bankruptcy Court (the "<u>Miscellaneous Proceeding</u>"), as may be applicable, attaching a copy of the Final Order and notifying the applicable judge of the settlement of the claims related to the Rule 60(b) motion and the Bankruptcy Case. The Parties may file a notice in the District Court Proceeding, the Bankruptcy Case, and/or the Miscellaneous Proceeding, as applicable, in advance of the Approval Order becoming a Final Order informing the applicable pending judge of the settlement and this Agreement.

12.     <u>Cooperation and Dismissal or Withdrawal with Prejudice</u>. The Parties will cooperate with each other to give effect to the Agreement, including, without limitation, the Wind-Down Debtors shall withdraw the joinder to the U.S. Trustee Filings with prejudice within three (3) business days after receipt of the Settlement Payment.

USTP (Sungard) Ex. 13
Page 147 of 208
67271/0001-50473230v2

7

Sungard022

13.     <u>Retention of Jurisdiction</u>.  The Bankruptcy Court or District Court, as applicable, shall retain exclusive jurisdiction over this Agreement and the Approval Order and any disputes or claims related to or arising from the foregoing.

14.     <u>Return of Documents / Prohibition on Further Disclosure of Discovery Materials</u>. Within 30 days of the Effective Date, the Wind-Down Debtors, the Plan Administrator and their counsel, and any employee of any of the foregoing persons or entities shall (a) destroy or return to JW all material in their possession produced by JW in this case designated as "Confidential Information" in accordance with the Protective Order in the Miscellaneous Proceeding or Bankruptcy Case, if any, including Confidential documents and data produced in discovery, deposition transcripts and exhibits, and designated trial exhibits and (b) be prohibited from sharing, producing, or displaying any materials produced by JW in discovery in connection with the Miscellaneous Proceeding or Bankruptcy Case to any third party.

15.     <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that requires reference to the laws of some other jurisdiction must be disregarded.

16.     <u>Dispute Resolution</u>.  Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Bankruptcy Court or District Court, as applicable.

17.     <u>Successors and Assigns</u>.  This Agreement accrues to the benefit of and is binding on the Parties and their respective successors, successors in interest, and assigns.

18.     <u>Headings and Construction</u>.  Headings in this Agreement are for convenience and are not to be used in construing this Agreement.  This Agreement shall not be construed or interpreted against any Party, either by having drafted this Agreement or otherwise, but shall be construed and interpreted as to give the fullest effect to the releases and undertakings set forth herein.

19.     <u>Entire Agreement / No Oral Agreements</u>.  The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties in respect of settling the matters and claims as provided herein, and that there are no other oral or written representations not fully expressed in the Agreement in respect of such matters.  The Parties have not relied on any facts, statements, or the failure by any Party to make statements or disclose facts, in entering into this Agreement.  No waiver, amendment or modification of this Agreement shall be binding unless made in writing and signed by all Parties.

20.     <u>Expenses, Fees, and Costs</u>.  The Parties shall pay their own costs, expenses, and attorneys' fees incurred in the prosecution, defense, and settlement of this matter, except to the extent such monies are included in amounts paid pursuant to this Agreement.

21.     <u>Severability</u>.  Should any clause, paragraph, or part of this Agreement be held or declared by a court of competent jurisdiction to be void or illegal for any reason, all other clauses, paragraphs, or parts of this Agreement which can be performed or effective without such illegal clause, paragraph, or part, shall nevertheless remain in full force and effect.

USTP (Sungard) Ex. 13
Page 148 of 208
67271/0001-50473230v2

8

Sungard023

22.     _Waiver_.  The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter.  No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

23.     _Counterparts_.  This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original.  All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

IN WITNESS WHEREOF, the Parties have entered into this Agreement intending to be bound by their obligations as set forth in this Agreement.

**EXECUTED** in multiple originals on the dates set forth below.

*[Signature blocks on next page]*

USTP (Sungard) Ex. 13
Page 149 of 208

67271/0001-50473230v2

Sungard024

Drivetrain LLC, as Plan Administrator for the
Sungard Wind-Down Debtors

DATED: _____July 17, 2025_____

Jackson Walker LLP

DATED: _____7/17/2025_____

Name: William R. Jenkins, Jr.
Title: Partner and General Counsel

USTP (Sungard) Ex. 13
Page 150 of 208

67271/0001-50473230v2

10

Sungard025

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Civil Action No. 4:23-cv-04787 (AM) |

## THE SUNGARD WIND-DOWN DEBTORS' RESPONSE TO THE U.S. TRUSTEE'S OBJECTION TO ITS MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

On July 29, 2025, the wind-down debtors in the jointly administered chapter 11 cases of Sungard AS New Holdings, LLC and its affiliates (together, the "**Sungard Wind-Down Debtors**")[1] filed their *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 91] (the "**Motion**").[2] On August 15, 2025, the U.S. Trustee filed *The U.S. Trustee's Omnibus Objection to Approval of Private Party Settlements that Preempt Adjudication of the U.S. Trustee's Rule 60(b) Motions* [Docket No. 93] (the "**UST Omnibus Objection**"), objecting to the Motion because, according to the U.S. Trustee, it seeks to "preempt adjudication" of his Rule 60(b) Motions. The Sungard Wind-Down Debtors hereby file their response to the UST Omnibus Objection[3] and respectfully state as follows:

---

[1] Apart from these proceedings, the Sungard Wind-Down Debtors' chapter 11 cases are jointly administered under Case No. 22-90018 (the "**Sungard Chapter 11 Cases**"). The Sungard Wind-Down Debtors include: InFlow LLC; Sungard AS New Holdings, LLC; Sungard AS New Holdings II, LLC; Sungard AS New Holdings III, LLC; Sungard Availability Network Solutions Inc.; Sungard Availability Services (Canada) Ltd./Sungard, Services de Continuite des Affaires (Canada) Ltee; Sungard Availability Services Holdings (Canada), Inc.; Sungard Availability Services Holdings (Europe), Inc.; Sungard Availability Services Holdings, LLC; Sungard Availability Services Technology, LLC; Sungard Availability Services, LP; and Sungard Availability Services, Ltd.

[2] Capitalized terms used but not defined herein have the meanings assigned to them in the Motion.

[3] By agreement of the parties, the Sungard Wind-Down Debtors' deadline to respond to the UST Omnibus Objection was extended to September 5, 2025.

USTP (Sungard) Ex. 13<br>Page 151 of 208

1

Sungard026

UST Exhibit 4

The U.S. Trustee's objection is a red herring. It seeks to address issues that are not before the Court. The Motion seeks only to approve the settlement of the ***Sungard Wind-Down Debtors' and Plan Administrator's claims*** against JW. The Motion does ***not*** purport to "preemptively adjudicate" the U.S. Trustee's Motions or any disputes between the U.S. Trustee and JW regarding the validity, extent, and/or scope of the ***U.S. Trustee's claims*** against JW. For this simple reason, the Court should overrule the U.S. Trustee's objection to the Motion.

## ARGUMENT

As set forth by the Wind-Down Debtors in their *Notice of Standing and/or Indispensable Party Status* [Docket No. 1053] and Joinder, since the Plan's Effective Date, the Wind-Down Debtors have continued in existence for the purposes of, *inter alia*, liquidating their remaining assets. Under the Plan, "Causes of Action"[4] belonging to the Debtors were expressly preserved and vested in the Wind-Down Debtors.

The Wind-Down Debtors possess and have asserted Causes of Action against JW arising from or relating to, among other things, Jackson Walker's failure to disclose the relationship between Elizabeth Freeman and former Judge Jones in the Sungard Chapter 11 Cases. The U.S.

---

[4]     "Causes of Action" is defined in the Plan to mean:

    any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, choate or inchoate, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to Bankruptcy Code sections 362, 510, 542, 543, 544 through 550, or 553; and (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in Bankruptcy Code section 558.

USTP (Sungard) Ex. 13
Page 152 of 208
                                   I(A)(33)).

2

Sungard027

Trustee does not dispute this fact in the UST Omnibus Objection or otherwise. Indeed, the US Trustee tacitly acknowledged that he and the Debtors' estates may have claims based on the same or overlapping facts in the Amended 60(b) Motion, recognizing "[t]hat the estate might have a separate claim against Jackson Walker based on the same nucleus of facts…" (Amended 60(b) Motion at ¶ 127; *see also* ¶ 126 (stating that the "estate might also have a cause of action based on the same violation")).

The Plan Administrator, as the sole representative of the Wind-Down Debtors, has a duty under the Plan to liquidate the Wind-Down Debtors' assets, including any "Causes of Action" against JW. Consistent therewith, the Wind-Down Debtors filed the Joinder, seeking disgorgement of fees and expenses paid to Jackson Walker in the Sungard Chapter 11 Cases. As set forth in the Motion, the Plan Administrator has participated in the Misc. Proceeding since its inception, while carefully balancing its litigation costs against potential recoveries. Following good faith and arms' length negotiations with JW, the Plan Administrator determined in its sound business judgment to resolve the Sungard Wind-Down Debtors' Causes of Action against JW under the terms of the Settlement Agreement, which amounts to a recovery of about 93% of the fees awarded to JW in the Sungard Chapter 11 Cases. If forced to continue to litigate, the fees and expenses that would be incurred by the Wind-Down Debtors certainly would eclipse any potential incremental recovery to the Wind-Down Debtors in these proceedings.

Thus, there can be no legitimate question that the Settlement Agreement is in the best interests of the Wind-Down Debtors and satisfies the standard for approval under Bankruptcy Rule 9019. The U.S. Trustee does not challenge the Motion on that basis – nor could he. Rather, the U.S. Trustee's objection to the Motion is premised on his belief that approval of the Settlement

USTP (Sungard) Ex. 13
Page 153 of 208

3

Agreement "prematurely and improperly short circuit[s] the U.S. Trustee's prosecution of his Rule 60(b) Motions." (UST Omnibus Objection at p. 1). The U.S. Trustee is wrong.

Nothing in the Settlement Agreement or the proposed Order granting the Motion provides for the resolution of the UST Motions or any claims belonging to the U.S. Trustee. It should go without saying that the Plan Administrator can only settle claims on behalf of itself and the Sungard Wind-Down Debtors, not any third parties. And under the Plan, it is the Plan Administrator's prerogative to settle those claims. That is all the Motion seeks to accomplish. (*See, e.g.*, Settlement Agreement at ¶ 2(b) (making clear that the Settlement Agreement resolves "all issues and claims between the Wind-Down Debtors, the Plan Administrator, and JW, including all claims and causes of action related to the allegations contain in the U.S. Trustee Filings as to the Bankruptcy Cases")). The effect, if any, of the Settlement Agreement on the U.S. Trustee's case (as opposed to the Sungard Wind-Down Debtors' case) against JW is not a concern of the Sungard Wind-Down Debtors and not an issue that ought to be adjudicated in the context of the limited relief sought by the Wind-Down Debtors in the Motion before the Court.

To be sure, as the Court is aware, there is a pending dispute between JW and the US Trustee regarding the extent of the U.S. Trustee's standing to pursue certain relief in the UST Motions. The issues are already fully briefed in JW's response in opposition to the Amended 60(b) Motion [Docket No. 1057] and the US Trustee's reply thereto [Docket No. 1062]. The Motion before the Court, however, does not seek to adjudicate or even implicate those issues. The Plan Administrator and Sungard Wind-Down Debtors are not concerned with issues surrounding the extent of the U.S. Trustee's claims and standing to prosecute all the relief sought in the UST Motions. The Plan Administrator has a fiduciary obligation to monetize the Wind-Down Debtors' assets (including

USTP (Sungard) Ex. 13
Page 154 of 208

4

Causes of Action against JW) and maximize recoveries for the Wind-Down Debtors' creditors under the Plan. That is all it seeks to do here.

Ultimately, each of the U.S. Trustee's arguments against approval of the Motion suffer from the same flaws, in that they are based on the incorrect premise that the Settlement Agreement preemptively adjudicates the U.S. Trustee's 60(b) Motion. For instance, the U.S. Trustee argues that the Motion does not take into account the U.S. Trustee's position that the JW employment order should be vacated and, consequently, JW should not receive any compensation at all. (*See* UST Omnibus Objection at pp. 2-3). In the same vein, the U.S Trustee contends that the parties may not "settle" the U.S. Trustee's contested matters without the U.S Trustee's consent, or "abrogate" the Court's independent obligation to review the conduct of estate professionals. (*See id.* at p. 2 n.3). However, the U.S Trustee's position relative to the JW employment order is immaterial to the Motion. The Motion does not seek to settle the UST Motions or curtail the Court's own review of these matters. The Motion seeks only to approve of the Settlement Agreement, which represents a compromise of the Sungard Wind-Down Debtors' claims against JW, not the U.S. Trustee's claims, whatever those claims may be.

Similarly, the U.S. Trustee argues that the fact that the Motion was filed, notwithstanding the Plan's waiver of the legal requirement to do so, demonstrates "gamesmanship targeted at evading the relief requested by the U.S. Trustee[.]" (UST Omnibus Objection at p. 4). The U.S. Trustee's argument in this regard is illogical, however. Whether the Settlement Agreement is effectuated with or without the Court's approval has no impact on JW's and the U.S Trustee's respective rights, claims, and arguments vis a vis each other. In other words, if the parties consummated the Settlement Agreement without filing the Motion, JW could still make any arguments it wishes regarding the effect of the Settlement Agreement on the U.S. Trustee's case,

USTP (Sungard) Ex. 13
Page 155 of 208

Sungard030

and likewise the U.S Trustee could make the same arguments he wishes regarding the lack of effect on the U.S Trustee's case.

Also, although the Plan permits the Plan Administrator to settle claims without Court approval, it does not prevent the Plan Administrator from seeking Court approval of a settlement agreement. In this case, not only was the Plan Administrator required to file the Motion pursuant to the Settlement Agreement, but the Plan Administrator submits it is appropriate under the circumstances of this case to disclose and seek this Court's approval of the Settlement Agreement, for sake of transparency and out of an abundance of caution, given the nature of these proceedings and the purpose of Bankruptcy Rule 9019.

Lastly, the U.S Trustee argues that the Court should delay consideration of the Motion until after trial on the UST Motions because the relief sought in the UST Motions is "broader, and more curative than a partial disgorgement of fees to a private party alone." (UST Omnibus Objection at p. 5). However, as discussed above, the fact that the U.S. Trustee is seeking its own relief against JW is **not** a legitimate ground to prevent other parties with claims against JW, such as the Sungard Wind-Down Debtors, from settling their claims. Adopting such an approach would not only run contrary to the strong public policy in favor of allowing parties to settlement claims, but would simply be cost prohibitive and punitive to the Sungard Wind-Down Debtors and their stakeholders. Absent the Court's approval of the Settlement Agreement, the Sungard Wind-Down Debtors will have to continue to prosecute their claims through trial, the cost of which would exponentially eclipse any potential incremental recovery they may obtain at trial (which would be marginal here given the strength of the settlement) and does not account for any risk that the Court may not order disgorgement of 100% JW's fees and expenses. Thus, the Court should reject the U.S Trustee's request in this regard.

USTP (Sungard) Ex. 13
Page 156 of 208

Sungard031

WHEREFORE, the Plan Administrator respectfully requests that the Court overrule the U.S. Trustee's objections and grant the relief sought in the Motion.

DATED: September 5, 2025        Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Email: dgeoghan@coleschotz.com

*Counsel to the Plan Administrator and Wind-Down*
*Debtors in the Sungard Chapter 11 Cases*

USTP (Sungard) Ex. 13
Page 157 of 208

7

Sungard032

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2025, a true and correct copy of *The Sungard Wind-Down Debtors' Response to the U.S. Trustee's Objection to its Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Daniel F. X. Geoghan*
Daniel F. X. Geoghan

USTP (Sungard) Ex. 13
Page 158 of 208

Sungard033

```
                 UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                    .
IN RE:                              .  Case No. 23-00645
                                    .
PROFESSIONAL FEE MATTERS            .  515 Rusk Avenue
CONCERNING THE JACKSON WALKER       .  Houston, TX 77002
LAW FIRM                            .
                                    .  Tuesday, December 9, 2025
. . . . . . . . . . . . . . . . .   .  8:40 a.m.


                  TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE EDUARDO V. RODRIGUEZ
            CHIEF UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:


For the United States     Department of Justice - U.S. Trustee
Trustee:                  By:  VIANEY GARZA, ESQ.
                               MILLI APONTE SALL, ESQ.
                               KEVIN EPSTEIN, ESQ.
                          515 Rusk, Suite 3516
                          Houston, TX 77002
                          (713) 718-4661

                          Department of Justice - U.S. Trustee
                          By:  LAURA STEELE, ESQ.
                          517 East Wisconsin Avenue, Suite 430
                          Milwaukee, WI 53202
                          (414) 297-4499

Audio Operator:           Ana Castro, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

USTP (Sungard) Ex. 13
Page 159 of 208

UST
Exhibit

5

4

APPEARANCES (Continued):

| | |
|---|---|
| Chapter 7 Trustee in<br>Brilliant Energy: | RANDY W. WILLIAMS, ESQ.<br>7924 Broadway, Suite 1044<br>Pearland, TX 77581 |
| For Michael Goldberg,<br>Litigation Trustee of<br>the GWG Litigation<br>Trust: | Reid Collins & Tsai LLP<br>By: NATHANIEL JOHN PALMER, ESQ.<br>     BILL REID, ESQ.<br>1301 South Capital of Texas Highway<br>Suite C-300<br>Austin, TX 78746<br>(512) 647-6107 |
| For Patrick Bartels,<br>as liquidating trustee<br>of Strike, LLC and<br>Auto Plus: | Law Firm<br>By: THOMAS ANDREW WOOLLEY III, ESQ.<br>190 T.C. Jester, Suite 400<br>Houston, TX 77007<br>(713) 337-3900 |
| For Matthew Ray,<br>liquidating trustee of<br>Strike, LLC and Auto<br>Plus: | White & Case LLP<br>By: SEAN GORMAN, ESQ.<br>609 Main Street, Suite 2900<br>Houston, TX 77002<br>(713) 496-9700 |
| For EXCO Resources,<br>Inc.: | Foley & Lardner LLP<br>By: JOHN MELKO, ESQ.<br>1000 Louisiana Street, Suite 2000<br>Houston, TX 77002-2099<br>(7130 276-5727 |
| For Dan Williams, the<br>plan administrator for<br>Katerra, Inc.: | Fox Rothschild LLP<br>By: TREY MONSOUR, ESQ.<br>Saint Ann Court<br>2501 N. Harwood Street, Suite 1800<br>Dallas, TX 75201<br>(214) 231-5796 |
| For David R. Jones: | Quinn Emanuel Urquhart & Sullivan<br>LLP<br>By: BEN FINESTONE, ESQ.<br>295 Fifth Avenue, 9th Floor<br>New York, NY 10016<br>(212) 849-7000 |
| Also Present: | WILLIAM JENKINS, ESQ.<br><br>W. ROSS FORBES, ESQ. |

USTP (Sungard) Ex. 13
Page 160 of 208



1          MR. BOLAND:  Your Honor, I might have a slightly

2    different take, just because we have not ever -- allocations

3    never come up in the conversations.  But from our perspective,

4    Your Honor, we've settled with the estates.  If we offer to pay

5    $50 back, that's the amount that would -- they would be owed,

6    and they would release the ability to recover $51 back.  The

7    U.S. Trustee, Your Honor, if they're seeking non-monetary

8    sanctions, we have an argument about whether that's

9    appropriately teed up or not.

10         That's -- they could pursue non-monetary relief, but

11   from a monetary standpoint, Your Honor, we believe we've

12   settled with the party in interest that has standing, that owns

13   the client, that owns the right to receive the monies.  And so

14   from our -- from Jackson Walker's perspective, that issue would

15   be settled on the monetary perspective.

16         THE COURT:  So then the U.S. Trustee's Real 60

17   disgorgement would go away in your -- at least from your

18   position, your client's position?

19         MR. BOLAND:  Your Honor, our position would be that

20   their disgorgement action, which we don't think they have

21   standing to even seek anyway, would be settled by these

22   settlement agreements.  That's our position, Judge.

23         THE COURT:  And is that clear in the settlement

24   agreement?

USTP (Sungard) Ex. 13
Page 161 of 208
           MR. BOLAND:  It's clear --

1          THE COURT:  That's agreements, there's ten of them,

2    right?

3          MR. BOLAND:  Yeah, it's fair, Judge.  It's clear that

4    the estates are providing a release, and they're releasing the

5    ability to recover additional monies.  And so to the extent,

6    you know, an extra dollar was awarded, but I have a release

7    saying they're not going to take that dollar, that's the

8    perspective we have, Judge.

9          THE COURT:  Well, okay.  I've read a couple of these

10   settlement agreements.  I don't read that in the settlement

11   agreements.  But if that's what the parties are asserting, I

12   mean -- and again, we're not hearing the merits.

13         MR. BOLAND:  Sure.

14         THE COURT:  I'm just asking these questions because I

15   need to understand how this could or should be structured if it

16   does go forward.  And so the -- Jackson Walker's position is

17   that should I approve a settlement agreement, the monies

18   disgorged would end essentially the U.S. Trustee's Rule 60

19   disgorgement.

20         MR. BOLAND:  We believe --

21         THE COURT:  And how does that affect the vacatur of

22   the retention order?

23         MR. BOLAND:  Well, Your Honor, I think, you know,

24   if -- one, I do -- I think it resolves the monetary relief

USTP (Sungard) Ex. 13
Page 162 of 208    e seeking, which, again, we don't think they have

Sungard147

 1  standing to seek.  And I know that's an issue we'll talk about

 2  as far as teeing that up with Your Honor as well.

 3          But it also goes to mitigation factors.  If Your

 4  Honor ends up vacating and/or having a sanctions proceeding,

 5  that's the purpose of sanctions, right, to deter future

 6  inappropriate conduct by the least coercive means.  Those are

 7  facts and evidence that Your Honor would consider in connection

 8  with that sort of proceeding that the U.S. Trustee could

 9  continue to pursue as far as a nominal.

10          THE COURT:  Okay.  But why should I approve a

11  settlement agreement if we don't allow the U.S. Trustee to

12  bring to trial the vacatur of the retention order to begin with

13  because the vacatur of the retention order would disgorge the

14  entirety of the fees.

15          MR. BOLAND:  I --

16          THE COURT:  And so why should I award a portion of

17  that up front and terminate that proceeding essentially?

18          MR. BOLAND:  I --

19          THE COURT:  One moment.  Does the ERO need a break?

20  Are you okay?  Okay.  Thank you.

21          Go ahead.

22          MR. BOLAND:  Your Honor, I actually disagree, Your

23  Honor, respectfully, with your premise that the vacatur of an

24  employment order is a de facto 100 percent disgorgement of

USTP (Sungard) Ex. 13
Page 163 of 208     We're happy to brief that, Your Honor, if that becomes

```
 1   an issue.

 2              THE COURT:  We're not going to get into the merits of

 3   that.

 4              MR. BOLAND:  I understand.

 5              THE COURT:  I'm just -- we're --

 6              MR. BOLAND:  Understood, Judge.

 7              THE COURT:  I need to understand the structure here

 8   and how we're going to proceed.

 9              MR. BOLAND:  Understood.  I just wanted to state on

10   the -- I disagree with that.  But I understand Your Honor's

11   position.  You have to remind me of the question of the Court.

12              THE COURT:  Okay.  So if -- why should I allow a

13   partial disgorgement of the employment or the fee order?

14   Essentially, given your client's position, it terminates the

15   merits of the U.S. Trustee's Rule 60 vacatur of the retention

16   order to begin with.  And if vacatur of that is granted, then

17   the entirety of the fees, and at least in the U.S. Trustee's

18   position, should be disgorged, not a portion of it.

19              So if I grant a settlement essentially awarding a

20   partial disgorgement without vacatur of the retention order,

21   then essentially the trustee's case is over, at least that

22   portion of it.

23              MR. BOLAND:  I don't --

24              THE COURT:  Now, I mean, I think that's the U.S.

     e's position.  We can clarify --
```

USTP (Sungard) Ex. 13
Page 164 of 208

1          MR. BOLAND:  That portion of it, I think, Your Honor,

2    from a monetary standpoint, our argument would be it would be

3    over.  There would be other non-monetary components.  And Your

4    Honor, I direct -- don't know if you'll recall, but almost two

5    years ago, the very first hearing we had was I think in the

6    connection with the <u>Brilliant Energy</u> case.  And Ms. Eitel stood

7    before you and said, you know, we're not here to advocate on

8    behalf of private parties.  We're here to bring transparency to

9    the process, and we're here to bring parties to the table.

10          And that's the whole purpose of this indispensable

11   party standing motions that we did, was to bring people to the

12   table who have the standing, who have the stake in this case,

13   who have the monetary relief and the ability to seek monetary

14   relief.  That was the entire purpose of us doing that, Your

15   Honor.  So we did that process.  We went through the settlement

16   process.  We went through the mediation process.  And we

17   reached monetary settlements with these folks.  And so we've

18   complied by the book.

19          THE COURT:  Well, that's a portion of it.  I think

20   the basis of the U.S. Trustee's Rule 60 motion is to get down

21   to the point of whether or not Jackson Walker should have

22   amended his disclosure statement or should have been not

23   allowed to proceed in that proceeding in early in the case, or

24   maybe shouldn't have even been allowed to be retained to begin

USTP (Sungard) Ex. 13
Page 165 of 208

```
 1   how am I going to deal with this particular one --

 2            MR. BOLAND:  Understood.  We appreciate you.

 3            THE COURT:  -- without prejudicing anybody's rights?

 4   Okay.  And I believe that's it.  Is there anything else that

 5   you think we need to deal with?

 6            MS. STEELE:  No.  Thank you very much, Your Honor.

 7            THE COURT:  Mr. Boland?

 8            MR. BOLAND:  Nothing further, Judge.  We appreciate

 9   Your Honor's time.

10            THE COURT:  Anybody else in the courtroom?  All

11   right.  Thank you.  And we're adjourned.

12        (Proceedings concluded at 1:03 p.m.)

13                        * * * * *

14

15                C E R T I F I C A T I O N

16

17        I, Heidi Jolliff, court-approved transcriber, hereby

18   certify that the foregoing is a correct transcript from the

19   official electronic sound recording of the proceedings in the

20   above-entitled matter.

21

22

23

24   HEIDI JOLLIFF, AAERT NO. 2850    DATE: December 11, 2025
```

USTP (Sungard) Ex. 13
Page 166 of 208

TRANSCRIPTS, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the | § | Civil Action No. 4:23-CV-4787-AM |
| Jackson Walker Law Firm | § | |
| | § | |
| | § | |

## U.S. TRUSTEE'S NOTICE OF PROPOSED AGENDA

TO CHIEF UNITED STATES BANKRUPTCY JUDGE EDUARDO V. RODRIGUEZ:

The U.S. Trustee's meet and confers with the Settling Parties[1] and Jackson Walker LLP ("Jackson Walker") held January 7 and 9, 2026, revealed that the parties disagree about the scope of the Court's *Order for Non-Evidentiary Electronic Status Conference* [ECF No. 141] (the "Order"). Although the Settlement Motions "remain abated" by the District Court, Order at 1; *see also* ECF No. 140, "Chief Judge Moses referred two related issues to the instant [Bankruptcy] Court for an evidentiary hearing and a report and further recommendations to the United States District Court." [ECF No. 141]. The two issues are as follows:

---

[1] The Settling Parties include: (1) Old Copper Company Inc. F/K/A J. C. Penney Company Inc. and Copper Sub Corporation, Inc. F/K/A J. C. Penney Corporation, Inc., As Wind Down Debtors In J. C. Penney Direct Marketing Services LLC, by and through its Plan Administrators; (2) Steven Balasiano, solely in his capacity as Plan Administrator for each of the wind-down debtors in the jointly administered cases of Stage Stores, Inc.; (3) Seadrill Partners, LLC Reorganized Debtors and the Seadrill Limited Reorganized Debtors; (4) Randy W. Williams, Chapter 7 trustee for Brilliant Energy, LLC; (5) David Dunn, Liquidation Trustee for the Basic Energy Liquidation Trust; (6) David Dunn, Plan Agent and sole manager, sole director, sole officer and sole representative of 4E Brands Northamerica LLC; (7) Patrick Bartels, as Trustee for the Strike Liquidating Trust; (8) Patrick Bartels, as Plan Agent for the Wind-Down Debtor In re Auto Plus Auto Sales LLC (formerly In re IEH Auto Parts Holding, LLC, et al.); (9) Sungard AS New Holdings, LLC, the wind-down debtor, by and through Drivetrain LLC, the Plan Administrator; I. Goldberg, in his capacity as the Trustee of the GWG Litigation.

USTP (Sungard) Ex. 13
Page 167 of 208

1

UST Exhibit 6

    (i)       whether the Settlement Motions should be approved before adjudicating the merits of the U.S. Trustee's Vacatur Motions; or

    (ii)      whether an alternative exists that would best serve the interests of the affected parties while preserving the merits of the Vacatur Motions.

[ECF No. 140].

    The District Court further ordered that the "*limited issues*…on whether the Settlement Motions should be approved or an alternative to approval exists are **REFERRED** to Chief Judge Rodriguez for an evidentiary hearing." [ECF No. 140] (emphasis supplied).

    As a result, the U.S. Trustee submits the following proposed agenda in accordance with paragraph 2 of the Order.

### Agenda Item 1

*Judge Moses Issue (ii)*

    The District Court requested an evidentiary hearing and report and recommendation from the Bankruptcy Court on "whether an alternative exists that would best serve the interests of the affected parties while preserving the merits of the Vacatur Motions." [ECF No. 140 at 2]. The U.S. Trustee requests that the Bankruptcy Court allow the U.S. Trustee, without waiving his objections to the Settlement Motions,[2] to submit evidence regarding proposed alternatives. The U.S. Trustee estimates that the time required for an evidentiary hearing on this matter is two hours.  Simply put, the Settlement Motions could easily be approved without a U.S. Trustee objection if the orders approving the settlement provided the following terms:

---

[2] Due to the District Court's abatement of the Settlement Motions the U.S. Trustee has not filed objections to the pending Settlement Motions including *Auto Plus (fka IEH)* [ECF No. 97], *[...]* 08], *GWG* [ECF No. 100], and *Stage Stores* [ECF No. 108].

USTP (Sungard) Ex. 13
Page 168 of 208

2

Sungard041

Notwithstanding any contrary provision in this Order or the Settlement Agreement:

(1) The Settlement Agreement's approval shall not in any way affect any Vacatur Motion[3] or the [Settling Party's] ability to accept or distribute funds the Court may order Jackson Walker LLP to pay as a result of a Vacatur Motion; and

(2) No final fee order shall be entered until the Vacatur Motion is resolved.[4]

## **Agenda Item 2**

### *Judge Moses Issue (i)*

The Bankruptcy Court should only take limited evidence and draft a report and recommendation on whether the Settlement Motions may be approved without prejudicing the relief sought by U.S. Trustee's Vacatur Motions. The U.S. Trustee estimates that an evidentiary hearing can be completed within a half day on all matters except for GWG Holdings, which the GWG Litigation Trustee, Jackson Walker, and the U.S. Trustee agree should be heard concurrently with the trial on the U.S. Trustee's Rule 60 Motions.

## **Additional Issues**

The U.S. Trustee reserves the right to discovery on any contested matter, including the Settlement Motions, prior to any evidentiary hearing that may be noticed. Fed. R. Bankr. P. 9014.

*[Signature page follows]*

---

[3] As defined in ECF No. 109.

USTP (Sungard) Ex. 13
Page 169 of 208

[4] If the Settlement Agreements do not provide for a final fee order, this language may not apply to all Settlement Agreements.

3

Dated: January 12, 2026                    Respectfully submitted,

                                           **KEVIN M. EPSTEIN**
                                           **UNITED STATES TRUSTEE**
                                           **REGION 7, SOUTHERN AND WESTERN**
                                           **DISTRICTS OF TEXAS**

                                           By: */s/ Laura D. Steele*
                                           MILLIE APONTE SALL
                                           Assistant U.S. Trustee
                                           Tex. Bar No. 01278050/Fed. ID No. 11271
                                           VIANEY GARZA
                                           Trial Attorney
                                           Tex. Bar No. 24083057/Fed. ID No. 1812278
                                           LAURA D. STEELE
                                           Trial Attorney
                                           Wis. Bar No. 1065702/Fed. ID No. 3878215
                                           515 Rusk, Suite 3516
                                           Houston, Texas 77002
                                           (713) 718-4650 – Telephone
                                           (713) 718-4670 – Fax
                                           Email: millie.sall@usdoj.gov
                                                   vianey.garza@usdoj.gov
                                                   laura.steele@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 12, 2026, I caused a copy of this Agenda to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

                              */s/ Laura D. Steele*
                              U.S. Trustee Trial Attorney

USTP (Sungard) Ex. 13
Page 170 of 208

Sungard043

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Civil Action No. 4:23-CV-04787-AM |
| In re:<br><br>Professional Fee Matters Concerning the<br>Jackson Walker Law Firm | Case No. 23-00645 (EVR)<br><br>(Bankruptcy Miscellaneous Proceeding) |

**WIND-DOWN DEBTOR'S OBJECTIONS AND**
**RESPONSES TO UNITED STATES TRUSTEE'S FIRST SET**
**OF INTERROGATORIES TO SUNGARD AS NEW HOLDINGS, LLC**

TO:     Laura D. Steele, Esq.
        Counsel for Kevin M. Epstein
        the United States Trustee, Region 7
        Southern and Western Districts of Texas

PLEASE TAKE NOTICE that Sungard AS New Holdings, LLC, the Wind-Down Debtor

in the remaining chapter 11 case of Sungard AS New Holdings, LLC (Case No. 22-90018-CML)

(the "**Wind-Down Debtor**"), by and through Drivetrain LLC (the "**Plan Administrator**"), as the

Plan Administrator appointed pursuant to the confirmed *Second Amended Combined Disclosure*

*Statement and Joint Chapter 11 Plan of Sungard AS New Holdings, LLC and Its Debtor Affiliates*

*Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 763] (the "**Plan**"), by and through

its undersigned counsel, hereby serves its objections and responses (collectively, the "**Responses**")

to the *United States Trustee's First Set of Interrogatories to Sungard AS New Holding, LLC* dated

January 22, 2026 (the "**Interrogatories**").

USTP (Sungard) Ex. 13
Page 171 of 208

UST
Exhibit

7

Dated: February 5, 2026

**COLE SCHOTZ P.C.**
*Counsel for the Wind-Down Debtor and Plan Administrator*

*/s/ Daniel F.X. Geoghan*
Daniel F.X. Geoghan (Texas Bar No. 24126280)
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: dgeoghan@coleschotz.com

*- and -*

Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: mtsukerman@coleschotz.com

USTP (Sungard) Ex. 13
Page 172 of 208

67271/0001-52296995v1
Sungard161

## GENERAL STATEMENT

1.    These Responses have been prepared based upon the information currently available to the Wind-Down Debtor, its agents and employees, and are provided after a reasonable investigation and inquiry.  The Wind-Down Debtor reserves the right to modify and supplement its responses and objections and to present in any proceeding and at trial any further information and documents obtained during discovery and preparation for trial.

2.    These Responses are not intended to be, and shall not be deemed to be, an admission of the matters stated, implied or assumed by or in any of the specific Interrogatories. These Responses are made without in any way waiving or intending to waive: (i) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of information or documents produced in response to these Interrogatories; (ii) the right to object on any ground to the use of the information or documents produced in response to the Interrogatories at any hearings or at trial; (iii) the right to object on any ground at any time to a request for further responses to the Interrogatories; or (iv) the right at any time to revise, correct, add to, supplement, or clarify any of the responses contained herein.

3.    These Responses are for use in this litigation and for no other purpose.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Provide a breakdown of the settlement amount attributable to:

      a.    recovery of the pre-confirmation attorneys' fees and expenses paid to Jackson Walker LLP ("**Jackson Walker**") for representation in or in connection with the case(s) to which your settlement agreement relates (the "**Case**").

      b.    recovery of the post-confirmation attorneys' fees and expenses paid to Jackson Walker for representation in or in connection with the Case;

USTP (Sungard) Ex. 13
Page 173 of 208

Sungard162

    c.      resolution of any other claims or causes of action; and

    d.      the attorneys' fees and expenses that you have incurred in connection with the matters giving rise to the settlement agreement.

**RESPONSE: The Wind-Down Debtor objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  The Wind-Down Debtor further objects to this Interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections, the Wind-Down Debtor sought recovery of pre-confirmation attorneys' fees and expenses paid to Jackson Walker, and the settlement payment represents more 93% of that amount.  The Wind-Down Debtor further refers the U.S. Trustee to the terms of the settlement agreement (the "Settlement Agreement") attached to the *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 91] ("Settlement Motion"), which speak for themselves. As set forth therein, the Settlement Agreement contemplates that Jackson Walker will make a "lump sum" settlement payment in resolution of all the Sungard Wind-Down Debtor's claims against Jackson Walker.**

**INTERROGATORY NO. 2:** State in detail any other monetary remedies or sanctions the Court may award you if the order approving Jackson Walker's employment in the Case is vacated or the final fee order approving Jackson Walker's fees and expenses in the Case is vacated.

**RESPONSE:  The Wind-Down Debtor objects to this Interrogatory as vague and ambiguous because it is not clear what the phrase "any other monetary remedies or sanctions" is referring to.  Further, the Wind-Down Debtor objects to this Interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence. Further, the Wind-Down Debtor objects because this Interrogatory improperly requires it to draw legal conclusions regarding the effect and scope of a hypothetical, future court order and speculate as to what monetary remedies or sanctions the Court may award in such order. It likewise improperly requires the Wind-Down Debtor to draw advisory legal conclusions regarding the legal effect or consequences resulting from vacating the order approving Jackson Walker's employment and/or the final fee order approving Jackson Walker's fees and expenses.  Accordingly, no response will be provided.**

**INTERROGATORY NO. 3:** State who will receive a distribution if the settlement is approved and how much you anticipate distributing to them. In responding, you may describe who will receive a distribution from the settlement amount by the class(es) set forth in the chapter 11 plan confirmed in the Case.

**RESPONSE: The Wind-Down Debtor objects to this Interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence.  Subject to, and** the foregoing objections, the Wind-Down Debtor refers to the terms of the

USTP (Sungard) Ex. 13
Page 174 of 208

4

Sungard163

Plan. If the Settlement Agreement is approved, the settlement proceeds will be distributed in accordance with the terms of the Plan. As more particularly set forth and described therein, the settlement payment will be distributed to holders of "Term Loan DIP Facility Claims" and "First Lien Credit Agreement Claims" (Class 3) net of Plan administration expenses.

**INTERROGATORY NO. 4:** With respect to any mediation for which you produced a mediation agreement (in response to the request for production issued to you contemporaneous with these interrogatories), state the date such mediation commenced and the date such mediation terminated.

**RESPONSE:  This interrogatory is inapplicable given that the Wind-Down Debtor did not participate in the mediation and did not produce any mediation agreement.**

**INTERROGATORY NO. 5:** What is the probability of success in the litigation against Jackson Walker that you used in deciding to enter into the settlement agreement?

**RESPONSE:  The Wind-Down Debtor objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Subject to, and without waiving the foregoing objections, the Wind-Down Debtor refers to the Settlement Motion, which discusses and describes the Wind-Down Debtor's and Plan Administrator's consideration of various factors that informed and guided their decision to enter into the Settlement Agreement, including, among others, the litigation's possibility of success.  As more particularly discussed therein, the Wind-Down Debtor and Plan Administrator believe the litigation against Jackson Walker has a high probability of success.**

**INTERROGATORY NO. 6:** After the filing of the Case, describe the connections between you and Jackson Walker and when such connections terminated.

**RESPONSE: The Wind-Down Debtor objects to this Interrogatory as vague and ambiguous because (a) the Wind-Down Debtor did not file "the Case" and only came into existence, in such capacity, after confirmation of the Plan; (b) it is unclear whether the term "Case" in the context of this Interrogatory refers to the Debtors' pre-confirmation chapter 11 cases, the Wind-Down Debtors' post-confirmation cases, or the Wind-Down Debtor's case or litigation against Jackson Walker; and (c) the term "connections" is undefined and requires speculation as to its meaning.  The Wind-Down Debtor further objects to this Interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence.  Subject to, and without waiving the foregoing objections, following the effective date of the Plan, the Wind-Down Debtor responds as follows:  Jackson Walker initially served as counsel for the Wind-Down Debtor and Plan Administrator in the chapter 11 cases.  On or about January 24, 2024, the Plan Administrative engaged Cole Schotz to represent the Wind-Down Debtors and Plan Administrator in connection with all matters for which Jackson Walker was conflicted, including any challenges to Jackson Walker's retention and/or fees in the chapter 11 cases.  As of February 15, 2025, the Plan _____ _____ directed Jackson Walker to transition all matters in the chapter 11 cases to**

USTP (Sungard) Ex. 13
Page 175 of 208

5

Sungard164

Cole Schotz, with the exception of a single transactional matter Jackson Walker was assisting with and finalizing. As of May 2024, the latter transactional matter (which was still pending) was also transitioned to Cole Schotz and Jackson Walker was fully transitioned out of the case. On June 19, 2024, Jackson Walker filed its notice of withdrawal as counsel.

**INTERROGATORY NO. 7:** If the settlement agreement is approved and a court, in connection with the U.S. Trustee's litigation against Jackson Walker related to the Case, subsequently orders Jackson Walker to pay funds to you in addition to the Settlement Amount, state whether you would accept and distribute such funds.

**RESPONSE: The Wind-Down Debtor objects to this Interrogatory to the extent that it seeks information that is neither relevant to the subject matter of this contested proceeding or reasonably calculated to lead to the discovery of admissible evidence. Further, the Wind-Down Debtor objects to the extent this Interrogatory seeks a legal conclusion and requires the Wind-Down Debtor to speculate as to the scope and effect of a hypothetical, future court order. Subject to, and without waiving the foregoing objections, the Wind-Down Debtor responds that it would comply with any order issued by the Court and take any action consistent with its obligations under the Plan and not inconsistent with the terms of the Settlement Agreement, including by accepting and distributing funds paid to it by Jackson Walker by order of the Court.**

**INTERROGATORY NO. 8:** If your answer to question no. 6 is no, please state the facts which support your answer.

**RESPONSE: The Wind-Down Debtor objects to this Interrogatory as it purports to refer to Interrogatory No. 6, which cannot be construed as calling for a "yes" or "no" response. To the extent this Interrogatory is intended to refer to Interrogatory No. 7, the Wind-Down Debtor provided a response other than "no." Accordingly, no response is required.**

USTP (Sungard) Ex. 13
Page 176 of 208

## **<u>VERIFICATION</u>**

I, Timothy Daileader, am a Partner of Drivetrain LLC, and declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing *Sungard Wind-Down Debtor's Objections and Responses to United States Trustee's First Set of Interrogatories to Sungard AS New Holdings, LLC* and know the contents thereof. I hereby certify and verify that the foregoing responses are true and correct to the best of my knowledge, information, and belief.

Dated this 5th day of February, 2026.


*/s/ Timothy Daileader*
Timothy Daileader

USTP (Sungard) Ex. 13
Page 177 of 208

67271/0001-52296995v1

Sungard166

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 07, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNGARD AS NEW HOLDINGS, LLC, *et al.*, | ) | Case No. 22-90018 (DRJ) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 211** |

**ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF JACKSON WALKER LLP AS CO-COUNSEL
AND CONFLICTS COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

The Court, having considered the Application to Retain Jackson Walker LLP (the "<u>Firm</u>")

as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession (the

"<u>Application</u>") pursuant to 11 U.S.C. §§ 327(a) and 330 filed by the above-captioned debtors and

debtors-in-possession (collectively, the "<u>Debtors</u>"), is of the opinion that the requested relief is in

the best interest of the estates and their creditors; that the Firm represents no interest adverse to

the estates in the matters upon which it is to be engaged and are disinterested persons within the

definition of 11 U.S.C. § 101(14); and that the Application should be approved. It is therefore

ORDERED THAT:

1.      The Debtors are authorized to retain and employ the Firm as co-counsel and

conflicts counsel upon the terms and conditions set forth in the Application as modified herein.

2.      The Firm shall apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in

compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the

Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the

Court. For billing purposes, the Firm shall keep its time in one tenth (1/10) hour increments. The

UST
Exhibit

8

Firm will use its best effort to avoid any duplication of services provided by any of the Debtors'
other chapter 11 professionals in these chapter 11 cases.

3.      The Firm will review its files periodically during the pendency of these chapter 11
cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new
relevant facts or relationships are discovered or arise, the Firm will use reasonable efforts to
identify such further developments and will promptly file a supplemental declaration, as required
by Fed. R. Bankr. P. 2014(a).

4.      The Firm shall not charge a markup to the Debtors with respect to fees billed by
contract attorneys ("Contractors") who are hired by the Firm to provide services to the Debtors,
and shall ensure that any such Contractors who are attorneys are subject to conflict checks and
disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

5.      To the extent the Application or the Cavenaugh Declaration is inconsistent with
this Order, the terms of this Order shall govern.

6.      Notwithstanding anything to the contrary in the Application, the Firm shall not be
entitled to reimbursement for fees and expenses incurred in connection with any objection to its
fees absent further order of the Court.

7.      The Firm shall file a notice with the Court and give not less than ten (10) business
days' notice to the Debtors, the U.S. Trustee, and the Official Committee of Unsecured Creditors
prior to any increases in the rates set forth in the Application.  The notice shall explain the basis
for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code
and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all
rights to object to any hourly rate increases on all grounds, including the reasonableness standard

USTP (Sungard) Ex. 13
Page 179 of 208

2

Sungard086

set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

8.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed:  June 06, 2022.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Corrected

**EXHIBIT**

**6-7**

From: Jenkins, William [wjenkins@jw.com]
Sent: Wed 5/11/2022 12:41:20 AM Coordinated Universal Time
To: Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Cc: Crowlishaw, Pat[pcrowlishaw@jw.com]; Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Re: Call regarding tomorrow's disclosure

*[External email]*
We are not going to include the proposed disclosure at this time. We may amend once we have a game plan.

William R. Jenkins, Jr.
Partner
Jackson Walker LLP
777 Main Street, Suite 2100
Fort Worth, Texas 76102
Telephone 817-334-7214
Telecopier 817-334-7290

On May 10, 2022, at 7:09 PM, Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com> wrote:

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

William, Pat,

I filled Peter in that the firm has a disclosure due to the Court tomorrow. Are you available to discuss the disclosure language tonight or early tomorrow before the filing is due? Also, is it your understanding that an extension for filing this disclosure cannot be sought?

Please let us know your availability at your earliest convenience.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

USTP (Sungard) Ex. 13
Page 181 of 208

UST
Exhibit
**9**

Sungard112

CONFIDENTIAL                                                                                          H&K_0002246

EXHIBIT

6-1

**From:** Cowlishaw, Pat[pcowlishaw@jw.com]
**Sent:** Mon 3/8/2021 11:30:49 PM Coordinated Universal Time
**To:** Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
**Subject:** Our Call

*[External email]*

Peter,

I'm still uncertain (or failed to take good notes) on what rule our lawyer may have violated.   Are you seeing a conflict under Texas 1.06 arising out of the lawyer's interest in a matter in which the judge presided?  Other?

I'm not meaning to omit rules of good judgment, common sense, etc., but rather trying to understand more strictly whether she may have violated DRs here. Thanks.

Pat

USTP (Sungard) Ex. 13
Page 182 of 208

UST
Exhibit

10

Sungard088

CONFIDENTIAL                                                                 H&K_0000001

From: Jarvis, Peter R (POR - X55877)[/O=HOLLAND & KNIGHT/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=JARVIS, PETER R (POR - X55801)9BF]
Sent: Tue 3/9/2021 12:10:49 AM Coordinated Universal Time
To: 'Cowlishaw, Pat'[pcowlishaw@jw.com]
Subject: 28 USC 455
Attachment: Our Call
Attachment: Potashnick v. Port City Const. Co.

<div style="float:right; border:1px solid black; text-align:center; padding:4px;">
EXHIBIT<br>
**6-2**
</div>

Pat,

My starting point here is 28 USC 455. See attached fairly old 5 Circuit case. If the bankruptcy court judge either had to recuse or had to disclose and get consent to continue, and if one or more of your firm's clients are or may be harmed as a result, then I think there are at least personal interest conflicts for the lawyer in the relationship.

I will have more later.

Regards,
Peter

USTP (Sungard) Ex. 13
Page 183 of 208

Sungard089

CONFIDENTIAL

H&K_0000051

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

EXHIBIT
6-3

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

September 22, 2021

*Via E-mail (pcowlishaw@jw.com)*

Patrick R. Cowlishaw
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201

      Re:    Judicial Disqualification Question

Dear Pat:

## Summary and Introduction

Based upon my work as a lawyer for lawyers,[1] you have asked for my opinion regarding the subject discussed in your September 1, 2021 letter to me. For purposes of this letter, I will assume as true the facts as stated in your letter and will not fully repeat them here.

I understand your core question to be whether the steps outlined in your letter regarding your partner, Elizabeth Freeman, and the practice that your firm and she have before U.S. Bankruptcy Court Judge David R. Jones are sufficient to meet public disclosure obligations that Ms. Freeman and your firm may have and to allow Judge Jones not to have to make further disclosures or disqualify your firm or himself from cases on which Ms. Freeman and your firm may work on a going-forward basis.[2] Although there is a lack of what I would consider "all fours" authority and thus the ultimate resolution of this issue cannot be said to be free from doubt, it is my opinion that the steps that your firm has taken and plans to take should be regarded as sufficient to meet any such obligations and avoid such disqualification.

## Legal Analysis

28 USC §455(a) through (c), which applies to Bankruptcy Court judges, provides that:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

[1] A copy of my "website bio" is enclosed herewith as Exhibit A.

[2] Although Judge Jones is not my client, I include a discussion of his potential obligations since they are pertinent to the assessment of the obligations of Ms. Freeman and your firm.

USTP (Sungard) Ex. 13
Page 184 of 208

Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston
Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

Sungard090

Patrick R. Cowlishaw
September 22, 2021
Page 2

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

Given, *inter alia*, that Ms. Freeman and Judge Jones have never been married or lived together and that they do not appear to have any other common economic interests or investments, the sole portion of 28 USC §455 that it is necessary to consider at length is the language in 28 USC §455(a) which would require Judge Jones to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."

As is explained in your letter, there has been no romantic relationship between Ms. Freeman and Judge Jones since at least March 2020, and Ms. Freeman, and Judge Jones have not and do not live together. Although Ms. Freeman and Judge Jones are and can be expected to remain close personal friends, both of them recognize and agree that this must remain the extent of their relationship. In addition, and as explained in your letter, Ms. Freeman's work at your firm has for some time excluded and continues to exclude any appearances before or the signing of any pleadings in cases pending before Judge Jones. Additionally, since March 2021, when your firm management first learned of the prior romantic relationship, Ms. Freeman has not participated in any way in in cases pending before Judge Jones, and her 2021 compensation has not included and will not include any portion of firm net income earned from cases that have been or are pending before Judge Jones.

USTP (Sungard) Ex. 13
Page 185 of 208

Sungard091

Patrick R. Cowlishaw
September 22, 2021
Page 3

Your letter states, however, that your firm is considering changing the work that Ms. Freeman may do beginning in April 2022.[3]  This will be at least two years since Ms. Freeman and Judge Jones had a romantic relationship.  Even then, however, Ms. Freeman will continue not appearing before or signing pleadings submitted to Judge Jones for another four years.  It follows that Judge Jones is only likely even to see Ms. Freeman's name on any documents submitted to the court when it appears along with others on attorney fee requests.

There is no question but that a too-close personal connection between a judge and a lawyer can require judicial disqualification.  *See*, *e.g.*, *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980), noting that:

> Because 28 U.S.C. s 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.

For purposes of this kind of analysis, however, it is neither necessary nor appropriate to indulge in suspicions or speculations beyond those which a reasonable person would consider.  *See*, *e.g.*, *Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1:

> Under § 455, Plaintiff, as the party moving to recuse, bears "a heavy burden of proof" in showing the Court should recuse. *E.g.*, *United States v. Reggie*, No. 13-111-SDD-SCR, 2014 WL 1664256, at *2 (M.D. La. Apr. 25, 2014). The statute provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. The decision whether to recuse under § 455 is committed to the sound discretion of the Court asked to recuse. *See*, *e.g.*, *Garcia v. City of Laredo*, 702 F.3d 788, 793-94 (5th Cir. 2012); *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (quoting *Chitimacha Tribe v. Harry L. Laws* Co., 690 F.2d 1157, 1166 (5th Cir. 1982) ). The United States Supreme Court has made clear "[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (emphases added); *see also United States v. Morrison*, 833 F.3d 491, 506 (5th Cir. 2016), cert. denied, 137 S. Ct. 1098 (2017). The Fifth Circuit has interpreted this mandate to mean that "[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person," while remaining "mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary" would be. *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995). Indeed, the statute exists to mandate recusal in cases

---

[3] You also have stated that the adjustment to her year-end 2021 compensation, to exclude any portion of fees earned by the firm in cases before Judge Jones, will not be repeated at year-end 2022.

USTP (Sungard) Ex. 13
Page 186 of 208

JW_00012072

Patrick R. Cowlishaw
September 22, 2021
Page 4

where it truly appears (or is the case that) the presiding judge cannot consider the case impartially—not where a litigant's speculation based on incomplete information implies concealment and impropriety. See H.R. REP. NO. 93-1453, at 6355 (1974).

*See also Womack v. Wright*, Civil Action No. 4:18-CV-567, 2019 WL 442254 (E.D. Tex. Feb. 4, 2019) at *1 ("Under § 455, Defendant, as the party moving to recuse, bears a heavy burden of proof in showing the Court should recuse") (internal quotation omitted); *Fields v. Texas Department of State Health Services*, Civil Action No. 4:16-CV-607, 2018 WL 2933962 E.D. Tex. June 12, 2018) at *1 ("The decision whether to recuse under § 455 is committed to the sound discretion of the Court asked to recuse"); *In re Prince*, Adv. Proc. No. 15–4010, 2016 WL 1398480 (Bkr. E.D. Tex. Apr. 6, 2016) at *3 ("This objective standard cannot be satisfied by mere speculation about a judge's state of mind"); Charles Gardner Geyh & Kris Markarian, <u>Judicial Disqualification: An Analysis of Federal Law</u> 21 (Third Ed. 2020).[4]

By the time that six or more years will have passed since any romantic relationship existed between Ms. Freeman and Judge Jones, it would seem most unlikely that Judge Jones' partiality could reasonably be questioned if Ms. Freeman personally appears before him or personally signs pleadings submitted to him.  Even before then, however, it would seem most unlikely that Judge Jones would be consciously or unconsciously biased because Ms. Freeman had worked outside of court on aspects of a bankruptcy matter that ultimately came before him or because Judge Jones may be called upon to pass upon the reasonableness of a fee request that includes some of Ms. Freeman's time.[5]  But even if these risks to impartiality could be said to be more than most unlikely, they seem to me to fall within the range of what Judge Jones is entitled to consider as not requiring recusal.  In other words, it is my opinion that a reasonable observer aware of all

_____

[4] As this monograph notes:

> In *Sensley v. Albritton*, [385 F.3d 591(5th Cir. 2004)] the trial judge's wife was employed as an assistant district attorney in the office representing the defendants, though she herself was in no way involved in the case. The plaintiffs moved to disqualify. Relying on §455(b)(5)(iii), they alleged that the outcome of the case might have an indirect effect on the judge's wife's ongoing employment in the office, in the event that the district attorney lost political popularity by losing the case. The Fifth Circuit found the plaintiffs' allegations unconvincing because "they are only able to make this argument by layering several speculative premises on top of one another to reach a speculative conclusion." [385 F.3d at 600.]

Geyh & Markarian, *supra*, at 70-71.  In *Sensley*, the risk of changed compensation was to the judge's spouse and not to someone with whom the judge was never married and had never lived with.

[5] In reaching this conclusion, I am assuming that until at least six years have passed, Judge Jones will not be called upon to assess the propriety of actions taken by Ms. Freeman as a lawyer.

USTP (Sungard) Ex. 13
Page 187 of 208

Sungard093

Patrick R. Cowlishaw
September 22, 2021
Page 5

surrounding facts and circumstances would conclude that there presently is and will continue to be an insufficient basis to question Judge Jones' impartiality.

I hope this letter is sufficient to address your questions and concerns in full. If not, or if I can provide you with additional information or input on any other issues, please let me know.

Sincerely yours,

HOLLAND & KNIGHT LLP

Peter R. Jarvis

Peter R. Jarvis

PRJ:kfk

Enclosure

USTP (Sungard) Ex. 13
Page 188 of 208

Sungard094

From: Jenkins, William[wjenkins@jw.com]
Sent: Tue 5/3/2022 5:50:34 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]
Subject: PRIVILEGED AND CONFIDENTIAL FW: confidential – disqualification issue [IMAN-JWDOCS.FID4392283]

**EXHIBIT 6-4**

*[External email]*

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**Jackson Walker LLP**

From: Cooper, Wade <wcooper@jw.com>
Sent: Thursday, April 28, 2022 3:23 PM
To: Ruzinsky, Bruce <bruzinsky@jw.com>
Cc: Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
Subject: confidential - disqualification issue [IMAN-JWDOCS.FID4392283]

Bruce,

Thanks for this. I think it might be hard to visit tonight, but we ought to try to get us together as soon as we can. Maybe you could start by advising as to your schedule and we can go from there. Meantime, Pat helped me catalogue some additional thoughts and concerns.

We genuinely appreciate the effort being directed toward seeking a solution here.Disclosure is a subject we have considered, even before we knew the facts most recently disclosed. It brings with it a number of questions that would have to be thought through, and will require some time.Some of those arise out of the federal judicial disqualification statute itself, which addresses disclosure and waiver as follows:

"No justice, judge, or magistrate judge shall accept from the parties to a proceeding a waiver of any ground for disqualification enumerated in subsection (b).Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."

28 USC § 455(e).

Questions to be considered include:

- Is "close personal relationship" sufficient to constitute "full disclosure" under the circumstances?

- Does the reference to "waiver" mean that, in addition to disclosure, the court must provide parties the opportunity to make an affirmative waiver of the grounds for disqualification (and, if granted by all "parties", the Judge may preside but if not granted by all parties, he must reassign the matter)?If so, is that a procedure that Judge Jones would consider undertaking whenever JW appears before him?
  - In the context of a bankruptcy proceeding, who all constitute the "parties" from whom a waiver is to be requested? How does the disclosure/waiver rule apply to parties who join later in the proceeding?

- Subsection (e) above limits use of waiver to subjection (a) cases, i.e., cases in which the judge's impartiality may reasonably be questioned on grounds other than the specific prohibited relationships in subsection (b)ne of the prohibited relationships is that of a spouse who appears as a lawyer in the proceeding. § 455(b)(5). Our understanding of Fifth Circuit precedent is that this rule would prohibit any equity partner of the judge's spouse from appearing before him and, because a spousal relationship was involved, there could be no curative disclosure or waiver.One guidance document to federal judges includes the comment that "recusal considerations applicable to a judge's spouse should also be considered with respect to a person other than a spouse with whom the judge maintains both a household and an intimate relationship." *Guide to Judiciary Policy, Vol. 2A at 12* (comment to Canon 3C). What is the risk that a reviewing court may view disclosure/waiver as inadequate in these circumstances, leaving our cases vulnerable to collateral attack?

Research may provide answers to some of the questions above, and we will undertake to have Peter Jarvis address them promptly.Other questions also may warrant consideration by all of us:

USTP (Sungard) Ex. 13
Page 189 of 208

Judge Jones, and the Firm going to address press and other inquiries that may follow the making of such a disclosure, e.g., what is meant by 'close personal relationship'"?, "Does this disclosure mean that Mr. Van Deelen's allegations of a romantic relationship were correct?Or that such a relationship now exists?If so, why wasn't this disclosure made earlier? Has this

Sungard095

relationship been a factor, or the driving factor, in the rise to prominence of JW's bankruptcy practice in Houston?

• [] The draft disclosure disclaims any financial interest in cases before the Judge and asserts that no compensation is based on the firm's cases there. For the Firm to stand behind those assertions, Comp Committee would need to consider whether her compensation should be set without credit for any WAC or originations associated with cases in that court, as well as making the net income adjustment to eliminate sharing in profits derived from fees for cases in that court. This of course would need to be considered by all concerned.

• [] If the draft disclosure were made, what opportunity will that create for collateral attack on our recent cases in this court, at least going back to McDermott? Should any cases be reopened, what risk does that raise of claims by our clients against the firm for the additional expense they will incur?

Along with all of this, but perhaps on a separate or parallel track, is the question of candor in Liz's communications with the firm, both in 2021 and during the recent meeting with Pat and Julia. When the most recently disclosed facts are presented to the full Management Committee, there may be members who, even after careful and dispassionate consideration, conclude that a serious question is raised regarding fitness for partnership. When and how to address that issue also is going to take some time and care.

All of these are matters that we are glad and anxious to discuss with you. We too are anxious to move forward, but just want to share our sense that there is a lot of ground to cover yet.

---

**From:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Sent:** Thursday, April 28, 2022 12:29 PM
**To:** Cooper, Wade <wcooper@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** RE: Disqualification Issue

Thanks Wade.

My flight lands a little after 4:00 and i was planning on going straight to the hotel to drop off my bags and check in, and then head over to the reception.

Let me know where and when you want to meet.

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Cooper, Wade <wcooper@jw.com>
**Sent:** Thursday, April 28, 2022 12:27 PM
**To:** Ruzinsky, Bruce <bruzinsky@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Re: Disqualification Issue

Bruce,
When do you arrive? Lets get together asap.
On Apr 28, 2022, at 12:20 PM, Ruzinsky, Bruce <bruzinsky@jw.com> wrote:

Gentlemen, here is a slightly revised version received this morning from Tom.

Elizabeth Freeman is a partner in the Firm. Ms. Freeman is a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011. She is also a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on the Firm's cases in Judge Jones' court. Ms. Freeman does not have any financial interest in the Firm's cases in Judge Jones' court in that the Firm does not

USTP (Sungard) Ex. 13
Page 190 of 208

based on the Firm's cases in Judge Jones' court and her partner share of the Firm's profits does not include a share in any of cases in Judge Jones' court.

Looking forward to discussing this soon.

Sungard096

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Ruzinsky, Bruce
**Sent:** Wednesday, April 27, 2022 7:07 PM
**To:** Cooper, Wade <wcooper@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Disqualification Issue

Gentlemen, Matt and Liz and I met today with the attorney that Liz is consulting with (Tom Kirkendall). The meeting included a discussion about disclosures in bankruptcy cases, and Tom said he envisioned adding to the regular disclosures made specific information on JW attorneys who clerked for SDTX bankruptcy judges (and maybe those who clerked for SDTX USDC judges as well as since they ordinarily hear appeals from SDTX bankruptcy cases).

I asked what he had in mind for the disclosure regarding Liz, and he offered the following:

Elizabeth Freeman is a partner in the Firm and a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011 and a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on cases in Judge Jones' court. She also does not derive any financial benefit or compensation from the Firm's cases in Judge Jones' court, and her share of the Firm's profits does not include a share of any of the Firm's profits attributable to cases in Judge Jones' court.

We expect to have a follow-up call with Tom tomorrow to at least discuss the filing of such disclosures in both existing cases and new cases, or just in new cases.

In the meantime, I hope you will share your imput on this type of filed disclosure, and that we can discuss it soon (maybe tomorrow night in Dallas).

Thanks.

**Bruce J. Ruzinsky**
**Jackson Walker L.L.P.**
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4204 (phone)
(713) 857-0220 (cell)
(713) 308-4155 (fax)
bruzinsky@jw.com
www.jw.com



USTP (Sungard) Ex. 13
Page 191 of 208

Sungard097

CONFIDENTIAL

H&K_0000892



**EXHIBIT**

**6-5**

Thanks.

Bruce J. Ruzinsky
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4204 (Direct)
(713) 857-0220 (Cell)
(713) 308-4155 (Direct Fax)
bruzinsky@jw.com (email)
This message may contain proprietary and confidential information protected by the attorney client or other privileges recognized by law

---

**From:** Ruzinsky, Bruce
**Sent:** Wednesday, April 27, 2022 7:07 PM
**To:** Cooper, Wade <wcooper@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>; Jenkins, William <wjenkins@jw.com>
**Subject:** Disqualification Issue

Gentlemen, Matt and Liz and I met today with the attorney that Liz is consulting with (Tom Kirkendall). The meeting included a discussion about disclosures in bankruptcy cases, and Tom said he envisioned adding to the regular disclosures made specific information on JW attorneys who clerked for SDTX bankruptcy judges (and maybe those who clerked for SDTX USDC judges as well as since they ordinarily hear appeals from SDTX bankruptcy cases).

I asked what he had in mind for the disclosure regarding Liz, and he offered the following:

Elizabeth Freeman is a partner in the Firm and a former law partner of the Honorable David R. Jones, Chief Bankruptcy Judge of the Southern District of Texas, at the Houston-based law firm of Porter & Hedges from 2009-2011 and a former briefing attorney for Judge Jones from 2011-2018. Ms. Freeman maintains a close personal relationship with Judge Jones. Consequently, Ms. Freeman does not appear in court or provide her professional services on cases in Judge Jones' court. She also does not derive any financial benefit or compensation from the Firm's cases in Judge Jones' court, and her share of the Firm's profits does not include a share of any of the Firm's profits attributable to cases in Judge Jones' court.

We expect to have a follow-up call with Tom tomorrow to at least discuss the filing of such disclosures in both existing cases and new cases, or just in new cases.

In the meantime, I hope you will share your input on this type of filed disclosure, and that we can discuss it soon (maybe tomorrow night in Dallas).

Thanks.

**Bruce J. Ruzinsky**
**Jackson Walker L.L.P.**
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4204 (phone)
(713) 857-0220 (cell)
(713) 308-4155 (fax)
bruzinsky@jw.com
www.jw.com



USTP (Sungard) Ex. 13
Page 192 of 208

Sungard098

CONFIDENTIAL                                      H&K_0000895

**From:** Jarvis, Peter R (POR - X55877)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2D50741C3F244EBD815E374EE8641D76-JARVIS, PET]
**Sent:** Tue 5/3/2022 10:15:44 PM Coordinated Universal Time
**To:** Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
**Subject:** William and Pat, For your review and comment

---

**Liz-Related Issues**

1. If a judge does not disclose a potential issue arising under §455 with respect to a case before the judge but a lawyer for one of the parties in the case actually knows of the issue, does the lawyer have a duty—either under the statute or under the Texas Rules--to make disclosure?

2. If a judge has an intimate personal relationship with a lawyer at a firm and also lives with that lawyer, is it sufficiently "full disclosure" (to the extent that full disclosure can be a cure under §455(a)) for the judge to say to counsel/parties to litigation pending before the judge that the judge has close personal relationship" with that lawyer (assuming for the sake of this question that the lawyer who lives with the judge is not actually involved in the representation and will not receive any fees as a result of the litigation)?

3. To the extent that disclosure plus waiver/consent in this situation can cure a potential problem under §455, does the party who receives the disclosure need affirmatively to express a waiver/consent or is the passage of time after disclosure and without objection sufficient?

4. To what extent does it seem that this situation is not within §455(a) but must be treated as the equivalent of a marital relationship?

█████ **Related Issues**



Regards,
Peter

USTP (Sungard) Ex. 13
Page 193 of 208

Sungard099



From: Harvey, Jacqueline (POR - X52939) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9O6C]
Sent: Tue 5/10/2022 9:21:32 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877) [Peter.Jarvis@hklaw.com]
Subject: Jenkins Williams - Disclosure due tomorrow

Peter,

I talked to William and updated him on the matter. I told him that Tom agrees that a disclosure by the firm is necessary, but that an agreement around the wording of that disclosure has yet to be determined. The firm has a disclosure to the Court due tomorrow. William believes at this point, they should continue with the old disclosure until this is sorted out, but wanted our confirmation.

Let me know if you would like a call to discuss, or have an answer for William that I can pass along to him.

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

USTP (Sungard) Ex. 13
Page 194 of 208

Sungard100

**EXHIBIT**
**6-7**

jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 6, 2022 5:57 AM
**To:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

*[External email]*

Peter, let's keep the advice on this matter oral at this point. Also, we discussed this internally yesterday. We think it makes sense for just an introductory call with Tom to throw out the idea that the two of you could work independently to try to find a solution. Once you have the answers to the various questions we have poised, maybe you can address them with Tom and try to find a solution. We are hoping that a solution by the two advisors would be accepted by all.

Thanks! I have a hearing at 10 – 11:30 Central this morning but am happy to chat any other time today.

Wm.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Thursday, May 5, 2022 11:10 PM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>; Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** Re: Liz-Related Matters

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Between 10 am and noon Pacific?

Sent from my iPhone

> On May 5, 2022, at 4:26 AM, Jenkins, William <wjenkins@jw.com> wrote:
>
> *[External email]*
> Peter, what is your schedule like Friday for a call with Tom?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**From:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Sent:** Wednesday, May 4, 2022 6:15 PM
**To:** Jenkins, William <wjenkins@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Cc:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Subject:** RE: Liz-Related Matters

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

USTP (Sungard) Ex. 13
Page 195 of 208

Several thoughts/responses re the Liz-related matters:

Sungard101



**EXHIBIT 6-8**

From: Jenkins, William[wjenkins@jw.com]
Sent: Mon 5/30/2022 10:03:49 PM Coordinated Universal Time
To: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]; Harvey, Jacqueline (POR - X52939)[Jacqueline.Harvey@hklaw.com]
Cc: Cowlishaw, Pat[pcowlishaw@jw.com]; Cooper, Wade[wcooper@jw.com]
Subject: RE: Update On Meeting with Tom [IMAN-JWDOCS.FID560826]

*[External email]*
Pater and Jacqueline,

I hope you all are having a wonderful Memorial Day! Last week we discussed the situation and we think our next step is to share the memo you all are preparing with a couple of our bankruptcy partners so that we ensure they understand the gravity of the situation. Ideally we would like to share it with them tomorrow and then follow up with a call or meeting on June 1 or as soon thereafter as possible. Do you think we could get the memo sometime tomorrow?

As I recall, the topics were to include:

1. Both you two and Tom agree that Jones has a duty to disclose the situation under section 455(a), and perhaps an obligation to recuse himself in any case in which JW is counsel. The current situation without disclosure is not sustainable.
2. Rule 8.03(b) of the Texas Disciplinary Rules of Professional Conduct, may require the JW lawyers with knowledge of the situation to disclose the situation if Jones does not, and if we do not, we may be subject to misconduct under 8.03(a).
3. If Liz and JW have a co-counsel relationship or something similar, that may avoid issues in the future.

Thank you very much for your help on this matter!

Wm.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

**JW | Jackson Walker LLP**

---

From: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
Sent: Thursday, May 26, 2022 1:03 PM
To: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jenkins, William <wjenkins@jw.com>
Cc: Cowlishaw, Pat <pcowlishaw@jw.com>
Subject: RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

---

From: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
Sent: Thursday, May 26, 2022 10:52 AM
To: Jenkins, William <wjenkins@jw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Subject: RE: Update On Meeting with Tom

Thank you. I'll send a calendar invite for 12 p.m. PT / 2 p.m. CT for everyone who can join to call in.

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

USTP (Sungard) Ex. 13
Page 196 of 208 

From: Jenkins, William <wjenkins@jw.com>
Sent: Thursday, May 26, 2022 9:34 AM

Sungard102

H&K_0002691

To: 'Harvey, Jacqueline (POR - X52939)' <Jacqueline.Harvey@hklaw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Subject: RE: Update On Meeting with Tom

Thanks! We are a little anxious and would like to move as quickly as possible without upsetting anyone.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

From: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
Sent: Monday, May 23, 2022 12:59 PM
To: Jenkins, William <wjenkins@jw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Subject: RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,

We have not yet, but are planning for a call later this week. We will be sure to update you when we do. Were you able to assemble that list of cases either currently before Jones or in the pre-assignment stage?

**Jacqueline Harvey** | **Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

From: Jenkins, William <wjenkins@jw.com>
Sent: Monday, May 23, 2022 7:24 AM
To: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
Subject: RE: Update On Meeting with Tom

*[External email]*
Have you all had any further discussions with Tom after I spoke with Peter last week?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



---

From: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
Sent: Monday, May 16, 2022 1:04 PM
To: Jenkins, William <wjenkins@jw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
Subject: RE: Update On Meeting with Tom

USTP (Sungard) Ex. 13
Page 197 of 208

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,
We are speaking to Tom today at 1 p.m. PT. Are you and Pat free for a call at 2 p.m. PT / 4 p.m. Central? If so, I'll send dial in information.

Sungard103

CONFIDENTIAL                                                     H&K_0002693



NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

USTP (Sungard) Ex. 13
Page 198 of 208

Sungard104

CONFIDENTIAL

H&K_0002695

To: Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
Cc: Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
Subject: RE: Update On Meeting with Tom

*[External email]*
Yes, I am free all afternoon. Please include Pat in an invite just in case he can join.

I need to follow up on the number of cases in Jones court or that are in a pre-filing stage. I hope to have that information for our call this afternoon.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

**W̶ | Jackson Walker LLP**

---

**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Thursday, May 26, 2022 11:14 AM
**To:** Jenkins, William <wjenkins@jw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,

We have a call with Tom today at 11 a.m. PT / 1 p.m. CT. Are you free for a call later today so we can provide you with an update?

Also, were you able to get that list of cases together that are either before Judge Jones or pending assignment?

Thank you,

**Jacqueline Harvey | Holland & Knight**
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Thursday, May 26, 2022 9:10 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Cc:** Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>; Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Any update on a call with Tom?

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

**W̶ | Jackson Walker LLP**


USTP (Sungard) Ex. 13
Page 199 of 208

---

**From:** Jenkins, William
**Sent:** Tuesday, May 24, 2022 11:30 AM

Sungard105

Jacqueline Harvey | Holland & Knight
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Friday, May 13, 2022 8:03 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

*[External email]*
Let's set up a time to chat after you figure out when you will be talking to Tom.

**William R. Jenkins, Jr.** | Partner
777 Main Street Suite 2100 | Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com



**Jackson Walker** LLP

**From:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>
**Sent:** Thursday, May 12, 2022 7:20 PM
**To:** Jenkins, William <wjenkins@jw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** RE: Update On Meeting with Tom

**\*\*RECEIVED FROM EXTERNAL SENDER – USE CAUTION\*\***

Hi William,
We are planning to talk to him on Monday, and will send you an update after we speak to him.

Jacqueline Harvey | Holland & Knight
She/Her/Hers
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
50 California Street, Suite 2800 | San Francisco, California 94111
Phone 415.743.6977 | Fax 415.743.6910
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Jenkins, William <wjenkins@jw.com>
**Sent:** Thursday, May 12, 2022 7:58 AM
**To:** Harvey, Jacqueline (POR - X52939) <Jacqueline.Harvey@hklaw.com>; Jarvis, Peter R (POR - X55877) <Peter.Jarvis@hklaw.com>
**Cc:** Cowlishaw, Pat <pcowlishaw@jw.com>
**Subject:** Update On Meeting with Tom

*[External email]*
Can you give us an update on when you expect to discuss the situation again with Tom?

Thanks!

ner
Fort Worth, TX | 76102
V: (817) 334-7214 | F: (817) 870-5114
C: (817) 614-1379 | wjenkins@jw.com

Sungard106

CONFIDENTIAL

H&K_0002694

From: Harvey, Jacqueline (POR - X52939)[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USERB8CE9C8C]
Sent: Thur 6/2/2022 7:28:25 PM Coordinated Universal Time
To: Jenkins, William[wjenkins@jw.com]; Cowlishaw, Pat[pcowlishaw@jw.com]
Cc: Jarvis, Peter R (POR - X55877)[Peter.Jarvis@hklaw.com]
Subject: Jackson Walker - Attorney's Duties with Knowledge of Judicial Misconduct
Attachment: 2022.06.02 Memorandum Re Attorney Duties with Knowledge of Judicial Misconduct.pdf

**EXHIBIT 6-9**

Dear William and Pat,

Attached please find a copy of a memo that Peter Jarvis and I have prepared which assesses the disciplinary risk to lawyers in your firm's bankruptcy practice who assist in the representation of clients with cases pending before Judge Jones. This risk described in this memo is in addition to whatever risk partners and supervising lawyers at the firm may have under Texas RPC 5.01(a), which provides that a partner or supervising lawyer is subject to discipline for another lawyer's RPC violations if the partner or supervising lawyer "orders, encourages, or knowingly permits the conduct involved," or under Texas RPC 5.01(b) which provides for discipline of a lawyer with "direct supervisory authority" over another lawyer if the supervisory lawyer "knowingly fails to take reasonable remedial action to avoid or mitigate the consequences of the other lawyer's violation."

Weighing the risk to your firm, its lawyers, and its bankruptcy clients as a whole, Peter and I do not presently believe that there is a reasonably safe way forward as long as Elizabeth Freeman remains a part of your firm and her relationship with Judge Jones remains undisclosed. For example, we do not believe that the situation can be cured by having Ms. Freeman assume a non-partnership role at the firm such as associate, independent counsel, or "of counsel." We also do not believe that the situation can be cured by waiting to see which cases are assigned to Judge Jones and only informing clients if and when a case is assigned to him. Since the risk is already known to exist, it would have to be disclosed to prospective firm clients with cases that could come before Judge Jones.

In other words, and although we remain ready, willing, and able to consider any and all potential options, our present view is that the best and clearest way forward is likely to be for Ms. Freeman to leave your firm and either set up her own separate firm or join another firm. In cases that are not assigned to Judge Jones, your firm and she could then agree to work as co-counsel if your clients so desire and if you and she thought it appropriate to do so. Co-counsel arrangements would, however, have to be made on a case-by-case basis with the clients' best interests in mind and not on the basis of any *quid pro quo* or other mandatory cross-referral requirements. *See* Texas RPC 7.03(e)(2).

As we have explained, Peter and I believe based on our last conversation with him that Tom Kirkendall, who represents Ms. Freeman, either agrees already or is coming around to the view that Ms. Freeman cannot remain at your firm absent, at a minimum, disclosure on the record by Judge Jones.

There are other issues that will have to be addressed as a part of an overall approach or solution. For example, an assessment of what, if anything, to do with each of the cases that have been pending before Judge Jones during the present status of his relationship with Ms. Freeman seems appropriate, and the economic terms of Ms. Freeman's separation from your firm will need attention. If your colleagues and you agree, we would propose to address these matters with Tom as well as to assess whether or how his, or his client's, views may have evolved since we last spoke with him.

Best regards,

**Peter Jarvis | Holland & Knight**
Partner and Co-Leader, Legal Profession Team
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.243.5877 | Fax 503.241.8014
peter.jarvis@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**Jacqueline Harvey | Holland & Knight**
Associate
Holland & Knight LLP
601 Southwest 2nd Avenue #1800 | Portland, Oregon 97204
Phone 503.517.2939 | Fax 503.241.8014
jacqueline.harvey@hklaw.com | www.hklaw.com

Add to address book | View professional biography

USTP (Sungard) Ex. 13
Page 201 of 208

Sungard107

CONFIDENTIAL                                                                H&K_0002810

# Holland & Knight

601 SW Second Avenue, Suite 1800 | Portland, OR 97204 | T 503.243.2300 | F 503.241.8014
Holland & Knight LLP | www.hklaw.com

Peter R. Jarvis
+1 503-243-5877
Peter.Jarvis@hklaw.com

**Memorandum**

Date:    June 2, 2022

**Contents Covered by Attorney-Client Privilege and Work Product Doctrine**
**Privileged and Confidential:  Attorney-Client Communication**

To:      Jackson Walker LLP

From:    Peter R. Jarvis & Jacqueline N. Harvey

Re:      Duties of Attorney Knowing of Judicial Misconduct

---

## I.    INTRODUCTION AND SUMMARY

This memorandum addresses the duties of a lawyer at a firm who knows that the judge presiding over a case in which the lawyer and the firm represents a party has a conflict of interest that the judge was and is required to disclose under 28 U.S.C. § 455 but has not disclosed.  For purposes of this memorandum, we assume that the judge's conflict is a result of the lawyer's firm's involvement in the case in light of the lawyers who are a part of the firm but is also a conflict that could be waived by the parties.

Although we cannot say that the matter is entirely free from doubt, it is our opinion that the lawyer has a duty to disclose the judicial conflict to the lawyer's client and seek to obtain the client's agreement to make disclosure. If the client directs the lawyer to make disclosure, the lawyer must either see to it that the judicial conflict is disclosed or withdraw.  If the client directs the lawyer not to make any disclosure, the lawyer must withdraw.

## II.   LEGAL AUTHORITY AND ANALYSIS

Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might be reasonably be questioned."  "Because 28 U.S.C. § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *See Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980).[1]  But, a conflict under § 455(a) may be waived by the parties after

---

[1] *See also Ayati-Ghaffari v. JPMorgan Chase Bank, N.A.*, Civil Action No. 4:18-CV-483, 2019 WL 452756 (E.D. Tex. Feb. 5, 2019) at *1 ("The United States Supreme Court has made clear '[t]he recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.'") (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004)). "The Fifth Circuit has interpreted this

USTP (Sungard) Ex. 13
Page 202 of 208

[courts] ask how things appear to the well-informed, thoughtful and objective observer, rather

Jacksonville | Los Angeles | Miami | New York | Orange County | Orlando | Philadelphia | Portland
Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach
| Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Fort Worth | Houston

Sungard108

June 2, 2022
Page 2

"full disclosure on the record of the basis for disqualification." *Id.* at § 455(e). The question here is therefore what a lawyer must do in a situation in which the lawyer is unwilling simply to withdraw from the case and the judge has not made any disclosure even though, to the lawyer's knowledge, the judge is aware of the underlying facts, which would appear to give rise to need for disclosure or recusal.

### A. __Texas RPC 1.03__

Rule 1.03 of the Texas Disciplinary Rules of Professional Conduct (the "RPCs") provides that:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Or as stated in Comment [1] to RPC 1.03, "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued to the extent the client is willing and able to do so."

On the facts assumed here, RPC 1.03 requires communication by the lawyer to the client of the judicial disclosure or recusal issue. In fact, RPC 1.03 would require communication with the client even if the lawyer was not personally certain that the judge had failed to make a necessary disclosure but just believed that there was a material risk that this was so. This follows not only because of the risk of the case taking a turn unfavorable to the lawyer's client as a result of the future rulings by the judge but also because a subsequent revelation of the conflict may require that the client's matter be re-litigated from the beginning. *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 726–27 (5th Cir. 2010) ("'Although § 455 does not speak to vacating a judgment, Rule 60(b)(6), in conjunction with § 455, does provide "a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." ' ") (citing *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1408 (5th Cir. 1994) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988))); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (absent disclosure and waiver, the judgment had to be vacated and remanded to a different judge). *See also, In re Cleveland*, 420 Fed. Appx. 435, 437 (5th Cir. 2011) (because the judge was disqualified under § 455, the judge's order must be vacated); *Hill v. Thaler*, 401 Fed. Appx. 974, 975 (5th Cir. 2010) (concluding where no disclosure and waiver occurred the judgment had to be vacated and remanded to a different judge). If nothing else, communicating this risk to the client allows the client to decide whether the client wishes to change counsel in order to address and hopefully eliminated the judicial disqualification issue.

---

than the hypersensitive, cynical, and suspicious person,' while remaining 'mindful that an observer of our judicial system is less likely to credit judges' impartiality than the judiciary' would be. *Ayati-Ghaffari*, 2019 WL 452756 at \*1 (citing *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995)).

USTP (Sungard) Ex. 13
Page 203 of 208

Sungard109

H&K_0002812

June 2, 2022
Page 3

### B.    RPC 8.04(a)(6)

If the client directs the lawyer to make disclosure, then the lawyer must either do so or withdraw.  *See*, *e.g.*, RPC 1.02(a). That does not mean, however, that the lawyer is free to proceed without disclosure if the client directs the lawyer to do so.  Under RPC 8.04(a)(6), a lawyer cannot "knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law." RPC 8.04(a)(6). The questions thus become what is meant by "knowingly" and what is meant by "assist."[2]

### 1.    Defining "Knowingly"

The Terminology section of the RPCs provides that "'knowingly' … denotes actual knowledge of the facts in question.  A person's knowledge may be inferred from circumstances." Actual knowledge requires proof beyond what is required to establish what a reasonably prudent (and therefore non-negligent) person should have known. In the present situation, however, it appears that the lawyer with the case before the judge has actual knowledge of all of the facts which appear to give rise to the judicial conflict.  Consequently, the most that that lawyer could say is that the lawyer does not "know" that the law requires judicial disclosure or recusal on these facts--perhaps on the ground that since the judge also knows the facts, the judge must have reached a reasoned decision that disclosure or recusal is not required.

We are not aware of any Texas authority directly on point.  Nonetheless, it is our opinion that the likelihood of the lawyer prevailing on such a defense is low.  At least at present, we do not see a strong argument to the effect that judicial disclosure or recusal is not required. And even if the lawyer is able to identify a plausible and non-frivolous argument as to why disclosure or recusal is not necessary, we are not certain that that would protect the lawyer from discipline.  Although we have found no Texas authority on point, disciplinary decisions in several other jurisdictions use language that, at least if taken literally, would move the "actual knowledge/must have known" standard under ABA Model Rule 8.3 (the counterpart to RPC 8.03) very close to a "should have known" standard.  *See* Geoffrey C. Hazard, Jr., W. William Hodes & Peter R. Jarvis, The Law of Lawyering §68.04 (last updated 12/21).

### 2.    Defining "Assist"

Texas Ethics Opinion 692 (2021) addresses whether a lawyer who merely remains silent and says nothing can be held to have failed to disclose a material fact when doing so was otherwise "necessary to avoid assisting a criminal or fraudulent act" under RPC 3.03(a)(2).  The opinion provides that:

> This Committee agrees with the latter view that "assisting" a client's criminal or
> fraudulent act—at least in these circumstances—requires more than mere silence

---

[2] For the sake of completeness, we note that in addition to RPC 8.04(a)(6), RPC 8.03(b) provides that "Except as permitted in paragraphs (c) or (d), a lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority" and that RPC 8.04(a)(3) prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." In light of our analysis of RPC 8.04(a)(6), we do not believe it is necessary to explore these ~~at this time.~~

USTP (Sungard) Ex. 13
Page 204 of 208

Sungard110

June 2, 2022
Page 4

or inaction. Although the term "assisting" is not defined in the Rules, the ordinary legal meaning of that term implies some kind of affirmative and knowing participation in the client's lie. By way of example, "assisting" crimes generally require proof that the defendant solicited, encouraged, directed, aided, or attempted to aid another person in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2); *see also Rodriguez v. MumboJumbo, L.L.C.*, 347 S.W.3d 924 (Tex. App.—Dallas 2011, no pet.). Rodriguez involved allegations that a lawyer had suborned perjury by failing "to clarify or pull back" allegedly false testimony. 347 S.W.3d at 926-27. But, the court noted, "[f]or subornation of perjury to occur, the suborner must act with the intent to promote or assist the witness in providing false testimony." *Id*. at 927. "One does not suborn perjury merely because one knows it has occurred and fails to disclose it." *Id*. In other words, a lawyer's failure to "clarify or pull back" a client's false testimony is not the same as promoting or assisting a client in providing false testimony as required for the crime of suborning perjury. In the same way, this Committee concludes that a lawyer does not "assist" in the client's false testimony under Rule 3.03(a)(2) by passively witnessing that testimony on cross-examination and remaining silent.

In the present circumstances, however, it would appear difficult to conclude that the lawyer's participation in a case before a judge who is required either to disclose a conflict or implement recusal is equivalent to mere silence which does not constitute impermissible assistance. In other words, it is our opinion that conducting a case before and seeking favorable rulings from a judge who is required to make disclosure or implement recusal would therefore constitute impermissible assistance to a judge under RPC 8.04(a)(6).

If we are correct in our opinion that the lawyer must either do or say something about the conflict or withdraw, the next question is how best to raise the issue with opposing counsel and the court if the lawyer chooses not to withdraw. At least at present, we cannot say that a particular approach must be followed. For example, it may be best to begin by speaking with opposing counsel about the matter and then addressing the matter jointly with the court rather than by simply making a filing with the court before communicating with other counsel.

## III.   CONCLUSION AND RECOMMENDATION

In our opinion, disclosure by the lawyer to firm clients about the judicial conflict is necessary. If the client decides to change lawyers and firms, no duty to take any further action may exist. If the client wishes to stay with the present lawyer and firm, however, then the firm lawyers who participate in the case with knowledge of the facts giving rise to the need for judicial disclosure or recusal are running a material risk of lawyer discipline.

USTP (Sungard) Ex. 13
Page 205 of 208

Sungard111

## Confidential Withdrawal Agreement

This is to confirm that, in consideration of the mutual promises between the parties, and for other consideration, the sufficiency of which each party hereby acknowledges, Elizabeth Freeman ("you") and Jackson Walker L.L.P. ("JW") have agreed as follows.

1.      You have agreed to withdraw as an Equity Partner from the JW Partnership. Your signature on this Agreement shall constitute delivery of a Withdrawal Notice.  You and JW agree that November __, 2022 shall be your Withdrawal Date, and that your withdrawal is effective as of that date.

2.      JW will continue your group medical coverage, at your cost, through November 30, 2022.  You acknowledge that you may maintain coverage for any group medical, group dental, or other group health insurance subject to and in accordance with the Consolidated Omnibus Budget and Reconciliation Act ("COBRA"), after November 30, 2022.  You understand and agree that the Firm has no obligation to pay COBRA premiums for any period after November 30, 2022.

3.      As of October 31, 2022, you had an Income Account of $ _____, as reflected on the books of the Partnership.  As of October 31, 2022, you also had a Capital Account balance of $ 304,000, as reflected on the books of the Partnership.  JW shall deduct from that balance the following:

a.      An amount equal to the product of your 2021 Participation Percentage times the amount of 2021 JW Net Income attributable to matters venued before United States Bankruptcy Judge Jones in the United States Bankruptcy Court for the Southern District of Texas; and

b.      An amount equal to the product of your 2022 Participation Percentage times the amount of 2022 JW Net Income through October 31, 2022 attributable to matters venued before Judge Jones; and

c.      Any other amounts owed by you JW, which JW will itemize to you in a statement accompanying they payment provided for in the following sentence.

JW shall pay you your Income Account and Capital Account balances, net of those deductions, by doing either of the following by January 31, 2023: (i) mailing a check to you at _____[address]_____, or (ii) sending a wire transfer to you via written wire instructions you provide to JW.

4.      JW represents Janet S. Casciato-Northrup, Chapter 7 Trustee, in *In re The Landing Council of Co-Owners, Debtor,* Case No. 17-34213, in the United States Bankruptcy Court for the Southern District of Texas, before U. S. Bankruptcy Judge Isgur, JW Client/Matter #143816.00001.  Some of the professional services provided by JW in that matter have been and are being provided under a contingent fee arrangement, set forth in the engagement letter.  JW recognizes you as the originator of that matter.  To

USTP (Sungard) Ex. 13
Page 206 of 208

1

UST
Exhibit

11

*U.S. Trustee's Exhibit 15*

the extent that JW receives any contingent fee in that matter after November __, 2022, or receives any contingent fee in that matter before November __, 2022 that is not distributed until after November __, 2022, JW agrees to include you in any distribution. The amount of your distribution will be determined by the Compensation Committee, applying the same factors that it commonly applies in distributing contingent fees, the same as if you remained a JW Equity Partner.

5.    You agree that the amounts provided for in paragraph 3 and 4, together with amounts previously paid to you by JW, shall constitute full and complete compensation as an Equity Partner under the terms of the JW Partnership Agreement for your participation as a partner through November __, 2022.

6.    <u>Confidentiality.</u>  JW and you agree that this Agreement, all of its terms and conditions, and all preceding discussions between you and JW, regarding your relationship with Judge Jones ("Covered Matters") are confidential and shall not be disclosed or revealed to any third party, except as specified below.  JW and you agree that the existence, terms and conditions of the Agreement, and the content of the preceding discussions, may be disclosed only (a) by either party to their tax advisor, the IRS, accountants, insurers, or attorneys as each party deems necessary; (b) in the course of defending a legal or regulatory proceeding commenced by someone other than the disclosing party; (c) in a proceeding to enforce this Agreement, or (d) as otherwise may be required by law.  The parties acknowledge that, within JW, Covered Matters have been discussed within the Management and Compensation Committees and with JW internal and outside counsel, and the parties agree that the resolution of these matters in the reaching of this agreement may be disclosed within those Committees.  You agree that JW also may disclose the terms of this Agreement to the members of its Compensation Committee and, as needed in order to carry out its terms, its accounting and administrative personnel.

7.    The parties acknowledge that they have discussed the opportunity, subsequent to your withdrawal, to work together as co-counsel in future matters, excluding matters before Judge Jones.  The parties also acknowledge that any work together following your withdrawal, and the terms of such work, will require client consent on a matter by matter basis, and, in the case of some bankruptcy matters, may require court approval.   JW and you each commit to use reasonable best efforts to realize future opportunities to work together to our mutual benefit, but each also agrees that neither has made any commitment to the other regarding any volume of work or any compensation.

8.     Through November __, 2022, you may continue to use your JW office and to remotely use and access JW systems, on the terms ordinarily available to any JW equity partner, for business purposes.  During this time you will be under no obligation to perform billable work, except as necessary to discharge your responsibility to clients on matters under your supervision.  Otherwise you may devote as much time as you wish to seeking other employment.  You agree that you will not remove from JW or copy any client file materials for your future use, or arrange for anyone else to remove or copy such materials except by JW personnel responsible for executing client file transfers in

USTP (Sungard) Ex. 13
Page 207 of 208

2

Sungard168

response to a transfer request signed by the client.  Consistent with our interest in continued opportunities to work together, JW and you expect and intend to confer and cooperate in good faith with respect to future relationships with existing JW bankruptcy practice clients, including the potential transfer of any client matters, in whole or in part, to you and a future employer, all subject to client direction.  To that end it is agreed that, both before and after November __, 2022, you, together with Bruce Ruzinsky and/or Matt Cavenaugh, may discuss with current and prospective clients the possibility of your working as co-counsel with JW following your withdrawal, so that your continued involvement might be as seamless as possible.

Agreed to and effective this ___ day of _____, 2022.

**JACKSON WALKER L.L.P.**

_____

By:   Wade Cooper
Its   Managing Partner

**ELIZABETH FREEMAN**

_____

USTP (Sungard) Ex. 13
Page 208 of 208

3

Sungard169

*U.S. Trustee's Exhibit 15*