**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Professional Fee Matters Concerning the Jackson Walker Law Firm | § | Civil Action No. 4:23-CV-4787-AM |
| | § | |
| | § | |

# JACKSON WALKER LLP'S BRIEF IN OPPOSITION TO THE U.S. TRUSTEE'S STANDING TO SEEK DISGORGEMENT OF FUNDS FROM JACKSON WALKER LLP

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................ 2

ARGUMENT ........................................ 5

I. The U.S. Trustee lacks standing to seek disgorgement because disgorgement is an estate remedy that only the Estate Entities may obtain, and the Estate Entities released their claims against Jackson Walker. ........................................ 5

A. The U.S. Trustee seeks disgorgement of funds paid to the estates. ........................................ 5

B. Claims for disgorgement of estate-paid fees are estate causes of action that vested in the respective Estate Entities. ........................................ 12

C. The U.S. Trustee has no standing to assert estate causes of action. ........................................ 17

D. The estate claims assertable against Jackson Walker for recovery of fees and expenses paid during the Affected Cases were released, and Jackson Walker was exculpated, in the majority of the Affected Cases. ........................................ 21

E. Derivative standing is unavailable here, and the U.S. Trustee has not even tried to obtain it. ........................................ 27

II. Section 307 gives the U.S. Trustee the right to be heard, not the right to assert estate causes of action. ........................................ 28

A. Section 307 does not permit the U.S. Trustee to seek disgorgement of estate funds from Jackson Walker. ........................................ 28

B. The U.S. Trustee's "government enforcement authority" analogy fails because no specific statute authorizes him to seek disgorgement of funds from Jackson Walker. ........................................ 36

III. The Court's inherent authority does not rescue the U.S. Trustee's standing problem. ........................................ 37

CONCLUSION ........................................ 39

In accordance with this Court's *Order For An In Person Evidentiary Hearing* [Dkt. No. 303], Jackson Walker LLP ("Jackson Walker") submits this brief in opposition to the United States Trustee's (the "U.S. Trustee") standing to seek disgorgement of funds from Jackson Walker through his Vacatur Motions.[1]

**PRELIMINARY STATEMENT**

1. Jackson Walker acknowledges that the U.S. Trustee has standing to object to fee applications and to seek to vacate orders that he believes were improperly entered. But Jackson Walker disputes that the U.S. Trustee has standing to obtain the relief he ultimately seeks in his Vacatur Motions—namely, the disgorgement of every dollar of fees and expenses paid to Jackson Walker in the Affected Cases. This brief addresses that straightforward but important distinction.

2. In his Vacatur Motions, the U.S. Trustee seeks to recover 100% of money that once belonged to the bankruptcy estates, for redistribution back to those estates, based on alleged harm to those estates. That is the definition of an estate cause of action. It is the estates—or the reorganized debtors and/or their successors (together, the "Estate Entities")[2]—that own any such claims under the confirmed plans that are now final (or, in the case of *Brilliant*, by operation of

[1] The Vacatur Motions are defined in the Court's *Report and Recommendation to the United States District Court* ("Report and Recommendation"), Dkt. No. 286 at 24, nn.31, 32.

[2] The Estate Entities include: Reorganized Debtors of Exco Resources, Inc.; WLB Debtors of Westmoreland Coal Company; Liquidation Trust of WMLP Debtors; Reorganized Debtors of Jones Energy, Inc.; Reorganized Debtors of Sanchez Energy, Inc.; Reorganized Debtors of McDermott International, Inc.; Reorganized Debtors of Sheridan Holding Company I, LLC; Reorganized Debtor of Whiting Petroleum Corporation; Reorganized Debtors of Neiman Marcus Group, LTD, LLC; Wind-Down Debtors of Stage Stores, Inc.; Wind-Down Debtors of J.C. Penney Company, Inc.; Reorganized Debtors of Chesapeake Energy Corporation; Reorganized Debtors of Covia Holdings Corporation; Reorganized Debtor of Volusion, LLC; Reorganized Debtor of Denbury Holdings, Inc.; Reorganized Debtors of Tailored Brands, Inc.; Reorganized Debtors of iQor Holdings, Inc.; Post Effective Date Debtor of Tug Robert J. Bouchard; Reorganized Debtors of Gulfport Energy Corporation, Inc.; Wind-Down Debtors of Katerra, Inc.; Liquidation Trust of Strike, LLC; Reorganized Debtors of Seadrill Member, LLC; Wind-Down Debtors of Auto Plus Auto Sales, LLC; Reorganized Debtor of Seadrill Operating GP, LLC; Reorganized Debtors of Seadrill Limited; Wind-Down Debtors of Sungard AS New Holdings, LLC; Plan Agent of 4E Brands Northamerica; Reorganized Debtors of Altera Infrastructure L.P.; Liquidation Trustee of Basic Energy Services, Inc.; and the Chapter 7 Trustee of Brilliant Energy, LLC. The *In re La Forta – Gestao E Investmentos* chapter 11 case was dismissed.

section 541 of the Bankruptcy Code, and in the case of *La Forta*, by operation of the sale order), not the U.S. Trustee. *See* Dkt. No. 311-3, Ex. 231 at pp. 2-4, 10. And this issue is precisely why the Court entered orders in the underlying Affected Cases requiring "[a]ny party-in-interest claiming to be an indispensable party pursuant to Fed. R. Bankr. P. 7019 or otherwise claiming to have standing to seek that JW return compensation or otherwise be sanctioned for alleged failures to disclose certain connections [to] file a notice with the Court."[3]

3. To be clear, Jackson Walker does not dispute that the U.S. Trustee has a "watchdog" role in bankruptcy cases. H.R. Rep. 595, 95th Cong. 88-99, 2d Sess. 404, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5966; *see also* 11 U.S.C. § 307. But the U.S. Trustee's "watchdog" role has limits. It does not give him the authority to seek affirmative, monetary relief on behalf of third parties, including the Estate Entities. Nor does section 307 of the Bankruptcy Code provide the U.S. Trustee with the power to step into the shoes of the Estate Entities and to prosecute claims that belong exclusively to them.

4. The U.S. Trustee cannot cure this problem by simply relabeling his request as he has previously attempted. Indeed, the U.S. Trustee's requested relief against Jackson Walker has morphed from a redo of the fee application process, to seeking full disgorgement, and then, faced with a challenge to his standing, a restyling of his disgorgement request as one for sanctions.[4] But placing a new label on a claim does not change the nature of that claim. The actual words of the U.S. Trustee's Vacatur Motions reveal what he is really seeking: the return of 100% of fees and expenses to third parties—the Estate Entities. Vacatur Mot. § IV.G (seeking "return of all fees

[3] *See* Case No. 20-325619, Dkt. No. 3202; Case No. 20-32564, Dkt. No. 1250; Case No. 20-20184, Dkt. No. 1386; Case No. 20-33239, Dkt. No. 583; Case No. 20-34758, Dkt. No. 396; Case No. 20-35561, Dkt. No. 1122; Case No. 21-90054, Dkt. No. 1521; Case No. 23-90055; Dkt. No. 130; Case No. 21-30427, Dkt. No. 1630; Case No. 21-30936, Dkt. No. 281; Case No. 22-90018, Dkt. No. 1051; Case No. 22-50009, Dkt. No. 582; Case No. 22-90126, Dkt. No. 337; Case No. 22-90129, Dkt. No. 121; Case No. 21-90002, Dkt. No. 1800.

[4] *See infra* § I.A.14.

and expenses previously paid"). But, in the majority of the cases, the Estate Entities—who are the only parties with authority to seek disgorgement—have either chosen not to pursue such claims, have reached settlements with Jackson Walker[5] (or are in discussions with Jackson Walker to resolve such claims), or expressly disclaimed any intention to pursue such claims.[6]

5. The case law is clear. Claims that may result in disgorgement (*e.g.*, breach of fiduciary duty, fraud, or professional negligence) are estate-owned causes of action.[7] They cannot be pursued by a party who does not own them (*i.e.*, the U.S. Trustee). The U.S. Trustee is not an estate representative. He is a statutory "watchdog" whose participation rights allow him to "raise" and "be heard" on issues, not to take control of estate causes of action and demand turnover of funds belonging to an estate or its successor. 11 U.S.C. § 307. Section 307 authority is not unlimited, as the U.S. Trustee suggests. The Court should not permit the U.S. Trustee to act for the Estate Entities where they have exclusive authority to exercise, or not exercise, their own rights.

6. Jackson Walker respectfully requests that the Court find that the U.S. Trustee lacks standing to pursue disgorgement or return of estate funds from Jackson Walker.

---

[5] The Estate Entities who have resolved their claims against Jackson Walker, subject to the District Court's consideration of this Court's Report and Recommendation, include: Stage Stores Wind-Down Debtors; J.C. Penney Wind-Down Debtors; Strike Liquidation Trust; Auto Plus Wind-Down Debtors; Reorganized Seadrill Debtors; Sungard Wind-Down Debtors; 4E Brands Plan Agent; Basic Energy Liquidation Trustee; and the Brilliant Energy Chapter 7 Trustee.

[6] The Reorganized Altera Infrastructure Debtors and the La Forta lenders previously announced that they did not intend to pursue disgorgement against Jackson Walker. *See* Dkt. No. 311-4, Ex. 232, *In re Altera, Infrastructure Project Services, LLC,* Case No. 22-90129 (MI) (S.D. Tex.) Sept. 16, 2024 Hr'g Tr. 6:25-8:5 (*La Forta* lender's counsel: "Your Honor, we appreciate the inquiry by the Court by counsel. We polled our clients. We asked them two questions: Do you want to seek to try to disgorge disallow the fees of Jackson Walker? And second, if money is disgorged, do you want it? The answer to the first question was no. We do not seek to set aside the fee award."); *id.* at 8:25-9:4 (Altera's counsel: "Your Honor. I can confirm that we understand and appreciate what Your Honor set out. At this time, Altera has made a decision not to participate or expen[d] [any] resources or money in participating in any sort of disgorging process.").

[7] *See infra* § I.B.

## ARGUMENT

**I. The U.S. Trustee lacks standing to seek disgorgement because disgorgement is an estate remedy that only the Estate Entities may obtain, and the Estate Entities released their claims against Jackson Walker.**

**A. The U.S. Trustee seeks disgorgement of funds paid to the estates.**

7. Before addressing the U.S. Trustee's standing, the Court must understand exactly what relief the U.S. Trustee is seeking. The U.S. Trustee is not seeking a fine or penalty payable to the United States government. *See, e.g.*, Dkt. No. 311-5, Ex. 233, *In re Neiman Marcus Group, LTD, LLC, at el.,* Case No. 20-32519, Dec. 12, 2023 Hr'g Tr. 6:4-7 (U.S. Trustee: "The United States is not seeking any monetary relief for itself. Any relief that would be awarded would go back in the Chapter 11 cases."); Dkt. No. 311-6, Ex. 234, *In re Exco Resources, Inc.*, Case No. 18-30155, Mar. 26, 2024 Hr'g Tr. 20:25-21:4 (U.S. Trustee: "We are not requesting sanctions that would go to the United States. But we believe that the proper relief in this case to address Jackson Waker's actions is for them to return the fees that were awarded and paid from the case"). He is seeking the return of fees and expenses that were paid from the bankruptcy estates to Jackson Walker—money that, if recovered, would go back to those same estates. *Id*. The Vacatur Motions themselves characterize the request as recovery of estate property.

8. Indeed, on their face, the Vacatur Motions filed in the Presiding Judge Cases state:[8]

---

[8] The Presiding Judge Cases include: Case No. 19-32112, Jones Energy, Inc., Dkt. No. 282; Case No. 20-30336, McDermott International, Inc., Dkt. No. 1141; Case No. 20-31886, Sheridan Production Partners, I-A, LP, Dkt. No. 10; Case No. 20-32680, Energy Services Puerto Rico, LLC, Dkt. No. 13; Case No. 20-33233, Chesapeake Energy Corporation, Dkt. No. 4514; Case No. 20-33295, Covia Holdings Corporation, Dkt. No. 1477; Case No. 20-33812, Denbury Holdings, Inc., Dkt. No. 14; Case No. 20-34500, iQor Holdings Inc., Dkt. No. 326; Case No. 20-50082, Volusion, LLC, Dkt. No. 337; Case No. 22-90002, Seadrill Member LLC, Dkt. No. 11; Case No. 22-90126, La Forta - Gestao E Investmentos, Dkt. No. 311; Case No. 18-35672, Westmoreland, Coal Company, Dkt. No. 3377; Case No. 20-20184, J. C. Penney Company Direct Marketing Services LLC, Dkt. No. 1351; Case No. 20-32021, Whiting Petroleum Corporation, Dkt. No. 1465; Case No. 20-32519, Neiman Marcus Group LTD LLC, Dkt. No. 3224; Case No. 20-32564, Stage Stores, Inc., Dkt. No. 1241; Case No. 20-33302, Covia Finance Company, LLC, Dkt. No. 235; Case No. 20-34758, Tug Robert J. Bouchard Corporation, Dkt. No. 381; Case No. 20- 35561, Mule Sky LLC, Dkt. No. 1089; Case No. 20-35740, Seadrill Partners LLC, Dkt. No. 877; Case No. 21-30427, Seadrill Limited, Dkt. No. 1621; Case No. 21-30936, Brilliant Energy, LLC, Dkt. No. 284; Case No. 21-31861, Katerra Inc., Dkt. No. 2093;

- "The Court Should Sanction Jackson Walker by Ordering The Return of All Fees and Expenses Previously Paid." Vacatur Presiding Judge Mot. § IV.G.

- "The Court should exercise those powers here to deny compensation to Jackson Walker and order the firm to disgorge fees already paid." *Id.* ¶ 124.

- "[T]his Court should order Jackson Walker to return all fees and expenses paid by the estate." *Id.* ¶ 134.

- "[T]his Court should order the firm to return all fees to the estate." *Id.* ¶ 142.

- "Jackson Walker shall return all fees and expenses previously received in connection with this case." *Id.*, Proposed Order ¶ 4.

Similarly, the Vacatur Motions filed in the Mediated Judge Cases state:[9]

- "The Court Should Order Jackson Walker to Return All Compensation Because of the Failure to Disclose Ms. Freeman's Relationship With Judge Jones." Vacatur Mediated Judge Mot. § II.

- "This Court Should Vacate the Prior Orders Awarding Jackson Walker Compensation and Order a Return of Compensation Paid." Vacatur Mot. § II.A.

- "Ms. Freeman's and Jackson Walker's Violation of their Disclosure Requirements as Section 327 Professionals Warrants an Order Requiring Jackson Walker to Return the Compensation It Received." Vacatur Mot. § II.A.2.

- "This Court Should Order Jackson Walker to Return the Compensation Paid as a Sancton for Violating this Court's Rules." Vacatur Mot. § II.B.

- "[T]he Court should sanction Jackson Walker for its misconduct by ordering the return of fees and expenses paid in this matter." *Id.* ¶ 8.

- "[T]his Court should vacate all orders awarding compensation to Jackson Walker, order it to return any compensation paid, and order such further relief as the Court deems appropriate." *Id.* ¶ 61.

---

Case No. 21-90002, Basic Energy Services Inc., Dkt. No. 1791; Case No. 21- 90054, Strike, LLC, Dkt. No. 1540; Case No. 22- 50009, 4E Brands Northamerica LLC, Dkt. No. 645; Case No. 22-90018, and Sungard AS New Holdings, LLC, Dkt. No. 1043. Jackson Walker hereinafter refers to the Vacatur Motions filed in the Presiding Judge Cases as the "Vacatur Presiding Judge Mot."

[9] The Mediated Judge Cases include: Case No. 18-30155, EXCO Resources, Inc., Dkt. No. 2358; Case No. 19-34508, Sanchez Energy Corporation, Dkt. No. 2930; Case No. 20-33916, TMW Merchants LLC, Dkt. No. 255; Case No. 22-90129, Altera Infrastructure Project Services LLC, Dkt. No. 96; Case No. 23-90055; and Auto Plus Auto Sales, LLC, Case No. 23-90055, Dkt. No. 50. Jackson Walker hereinafter refers to the Vacatur Motions filed in the Mediated Judge Cases as the "Vacatur Mediated Judge Mot."

- The Court should "order a return of compensation already paid." *Id.* ¶ 175.
- "Jackson Walker should be ordered to return all compensation it has been paid." *Id.* ¶ 180.
- "The undisclosed conflict likewise supports requiring a return of fees previously paid." *Id.* ¶ 183.
- "[T]he Court should order Jackson Walker to return the compensation paid." *Id.* ¶ 184.
- "[T]he violation of their disclosure obligations warrants an order requiring Jackson Walker to return the compensation it has received." *Id.* ¶ 185.
- "[T]his Court should order Jackson Walker to return all compensation paid by the estate." *Id.* ¶ 198.
- "[T]his Court should order Jackson Walker to return all compensation to the estate." *Id.* ¶ 211.

9. Simply put, the U.S. Trustee is chasing the estates' property based on the estates' alleged injuries for the purported benefit of the estates.

10. If Jackson Walker were ordered to "disgorge" or "return" all of the fees and expenses paid by the estates back to the estates, it is the estates—and the estates alone—that would benefit from that recovery. This is significant because the law is clear about who may pursue a claim to recover estate property for the estate's benefit: the debtor-in-possession or the estate successor appointed under a confirmed plan, *i.e.*, the Estate Entities. *See Smart World Technologies,* 423 F.3d 166, 182 (2d Cir. 2005) ("It is the debtor-in-possession who control the estate's property, including its legal claims, and it is the debtor-in-possession who has the legal obligations to pursue claims or to settle them, based upon the best interests of the estate"); *see also e.g.,* Dkt. No. 311-7, Ex. 235, *In re 4E Brands Northamerica, LLC*, Case No. 22-50009 (MI) (Bankr. S.D. Tex.), Feb. 15, 2024 Hr'g Tr. 39:15-18 (Judge Isgur: ". . . I find that the Maestas parties do not have standing to bring the claim because it is owned by [the plan administrator]."); *In re Sorrento Therapeutics, Inc.*, No. 23-90085, 2026 WL 1791033, at *19-22 (Bankr. S.D. Tex.

June 22, 2026) ("To the extent those claims exist, they belonged to the Estate and were transferred to the Liquidation Trust under the Plan as of the Effective Date."); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap. Mgmt. L.P.)*, 2022 WL 5219626, at *13 (Bankr. N.D. Tex. Sept. 30, 2022) (in federal court, a litigant may not ordinarily assert the legal rights or interests of third parties); *see also* Dkt. No. 298-23, Ex. 223, Mar. 11, 2024 Hr'g Tr. 14:24-15:7 (Judge Isgur stating, in the context of "constitutional standing" to "seek disgorgement" that "[o]nly the injured party can seek relief.").

11. The U.S. Trustee is not an Estate Entity, and nothing in the Bankruptcy Code makes him one; nor is the U.S. Trustee the alleged injured party in any of the Affected Cases. *See* 28 U.S.C. § 586 (U.S. Trustee Duties; supervision by Attorney General); *In re Ondova Limited Liability Co.,* Case No. 09–34784–SGJ–7, 2017 WL 477776, at *23 n.2 (Bankr. N.D. Feb. 1, 2017) (recognizing that the U.S. trustee's role is to handle the ministerial functions associated with case administration, including appointment of chapter 7 trustee); *In re Professional Fee Matters Concerning Jackson Waker Law Firm*, 667 B.R. 329, 338 (Bankr. S.D. 2024) ("The United States Trustee is appointed by the United States Attorney General to oversee the administration of bankruptcy cases under 28 U.S.C. § 586.").

12. Recognizing the standing hurdle he faces, the U.S. Trustee insists that his request is a "sanctions" motion, not an estate cause of action, and that sanctions are exempt from the standing analysis that applies to estate claims, which is discussed below. *See* U.S. Trustee's Supplemental Brief, filed at Dkt. No. 351, ¶¶ 27, 36-40, 46 in *In re La Forta – Gestao E Investmentos*, Case No. 22-90126, and Dkt. No. 142, ¶¶ 27, 36-40, 46 in *In re Altera Infrastructure Project Servs., LLC* (hereinafter, "UST Standing Br."). In support of this argument, the U.S. Trustee repeatedly states he is not pursuing a "claim", while simultaneously asking that the Court

disgorge funds. Dkt. No. 311-8, Ex. 236, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-00645, Dec. 9, 2025 Hr'g Tr. 171:20-23 (U.S. Trustee: "And, your Honor, just to be clear, the U.S. Trustee has never asserted claims or estate actions on behalf of any other entity. We are seeking relief. And relief comes in the form of sanctions, which may be disgorgement."). The U.S. Trustee's argument fails for two reasons.

13. First, courts look to substance, not labels. *See, e.g.*, *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) ("As part of this inquiry [of whether a claim belongs to a bankruptcy estate], we look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury."); *see also In re Matter of Buccaneer Res., L.L.C.,* 912 F. 3d 291, 293 (5th Cir. 2019) (the key inquiry is whether the creditor has suffered a direct injury or merely an injury derivative of an injury suffered by the debtor); *In re Apex Long Term Acute Care–Katy, L.P.*, 599 B.R. 314, 322 (Bankr. S.D. Tex. 2019) (examining substance of relief sought rather than the label attached to the claim to determine if the claim was an estate claim transferred and released under a confirmed chapter 11 plan). The U.S. Trustee cannot avoid the estate-claim problem by calling its relief "sanctions" rather than what it really is—a request for disgorgement. The Court must look to the substance of the allegations and the relief sought, which is evident here through the repeated references in the Vacatur Motions to "return of compensation paid." *See supra* ¶ 8. Even if the U.S. Trustee's requested relief could be viewed as a request for sanctions, which it is not, relief seeking 100% disgorgement across all of the Affected Cases far exceeds any reasonable, least-restrictive sanction that could be sought by the U.S. Trustee and instead functions as a recovery to the estates. *See Harris v. First City Bancorporation of Tex., Inc. (In re First City Bancorporation of Tex., Inc.)*, 282 F.3d 864, 867 (5th Cir. 2002) (noting that when a bankruptcy court imposes a disciplinary sanction it "must use the least restrictive sanction

necessary to deter the inappropriate behavior"). No matter what the U.S. Trustee calls it, if money is going back to the estates for alleged harms to the estates, those claims belong to the estates.

14. Second, the U.S. Trustee's own evolving theory reveals the truth. These cases started with the U.S. Trustee seeking only a "reset" of Jackson Walker's final fee application process in his initial Rule 60 motions. *See* Dkt. No. 298-22, Ex. 222, Dec. 2023 Hr'g Tr. 7:25-8:5 (U.S. Trustee: "[The Rule 60 motion] was just the initial step because vacating the fee awards doesn't direct disgorgement or any return of fees. It just basically says we're resetting to the status quo before Judge Jones approved those fees, and then we can deal with what the remedy is and how that relief gets granted."); Dkt. No. 298-24, Ex. 224, Jan. 25, 2024 Hr'g Tr. 17:19-18:6 (U.S. Trustee: "the United States Trustee has filed a number of Rule 60(b)(6) motions asking that the final fee orders in the cases currently before your Honor and other Courts be vacated . . . because of Judge Jones. In our opinion, if that is entered, everyone goes back to where they were before those orders were entered. And everyone has the right, under 1109(b) to object to those fee applications or bring any other cause of action or objection that they might believe that they're entitled to as a party-in-interest in a Chapter 11 case."). The Vacatur Motions then morphed into an assertion that, not only should the relevant orders be vacated, but that all of Jackson Walker's fees and compensation should be disgorged. *See* Vacatur Presiding Judge Mot. ¶ 124 ("The Court should exercise those powers here to deny compensation to Jackson Walker and order the firm to disgorge fees already paid."); Vacatur Mediated Judge Mot. ¶ 175 (stating that the Court should "order a return of compensation already paid"). When faced with standing issues, *see generally* Dkt. No. 298-26, Ex. 226, Sept. 9, 2024 Hr'g Tr. 4:16-10:16 (Judge Isgur expressing concern over the U.S. Trustee's ability to seek monetary relief for third parties), the U.S. Trustee then recast his disgorgement request as a request for "sanctions," even though he still refers to a "return of fees"

and to "disgorgement." *See* Vacatur Presiding Judge Mot. ¶ 124; § G; Vacatur Mediated Judge Mot. ¶ 175. The U.S. Trustee's legal theories have changed in a deliberate effort to escape a standing problem by affixing a different label to the same substantive relief. The Court itself has recognized the difference between sanctions (which is "a different remedy") and disgorgement (*i.e.*, "return of fees and expenses as the U.S. Trustee laid out in its Rule 60 motions"). Dkt. No. 298-27, Ex. 227, Oct. 29, 2024 Hr'g Tr. 12:15-24; *see* Dkt. No. 298-25, Ex. 225, July 11, 2024 Hr'g Tr. 27:5-25 (Judge Lopez finding that "[t]here's two forms of relief [(vacatur and disgorgement)], which means that [the U.S. Trustee has] to have standing for both.").

15. The U.S. Trustee has argued that his "request for disgorgement of fees rather than a civil penalty does not transform his sanctions request into an estate cause of action" because denial and return of fees is routinely treated as the appropriate sanction for alleged disclosure violations. *See U.S. Trustee's Reply to Jackson Walker LLP's Response in Opposition to the United States Trustee's Amended and Supplemental Motion for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief*, ¶ 129 (the "UST Reply Br.").[10] But that misses the point. When the relief

[10] *See* Case No. 19-32112, Jones Energy, Inc., Dkt. No. 29; Case No. 20-30336, McDermott International, Inc., Dkt. No. 1160; Case No. 20-31886, Sheridan Production Partners, I-A, LP, Dkt. No. 25; Case No. 20-32680, Energy Services Puerto Rico, LLC, Dkt. No. 24; Case No. 20-33233, Chesapeake Exploration, LLC, Dkt. No. 649; Case No. 20-33302, Covia Finance Company, LLC, Dkt. No. 244; Case No. 20-33812, Denbury Holdings, Inc., Dkt. No. 23; Case No. 20-34500, iQor Holdings Inc., Dkt. No. 335; Case No. 20-50082, Volusion, LLC, Dkt. No. 352; Case No. 22-90002, Seadrill Member LLC, Dkt. No. 24; Case No. 22-90126, La Forta - Gestao E Investmentos, Dkt. No. 334; Case No. 18-35689 Westmoreland, Coal Company Asset Corp., Dkt. No. 14; Case No. 20-20184, J. C. Penney Company Direct Marketing Services LLC, Dkt. No. 1496; Case No. 20-32021, Whiting Petroleum Corporation, Dkt. No. 1482; Case No. 20-32519, Neiman Marcus Group LTD LLC, Dkt. No. 3237; Case No. 20-32564, Stage Stores, Inc., Dkt. No. 1241; Case No. 20-33302, Covia Finance Company, LLC, Dkt. No. 244; Case No. 20-34758, Tug Robert J. Bouchard Corporation, Dkt. No. 421; Case No. 20-35561, Mule Sky LLC, Dkt. No. 1166; Case No. 20-35760, Seadrill Partners LLC, Dkt. No. 16; Case No. 21-30427, Seadrill Limited, Dkt. No. 1659; Case No. 21-30936, Brilliant Energy, LLC, Dkt. No. 287; Case No. 21-31861, Katerra Inc., Dkt. No. 22143; Case No. 21-90002, Basic Energy Services Inc., Dkt. No. 1846; Case No. 21- 90054, Strike, LLC., Dkt. No. 1695; Case No. 22- 50009, 4E Brands Northamerica LLC, Dkt. No. 705; Case No. 22-90018, Sungard AS New Holdings, LLC, Dkt. No. 1062; Case

is a disgorgement claim that benefits the estate and is premised on injury to the estate, it is—quite simply—an estate cause of action that the U.S. Trustee does not have standing to assert.

**B. Claims for disgorgement of estate-paid fees are estate causes of action that vested in the respective Estate Entities.**

16. The claims for disgorgement alleged in the Vacatur Motions are estate causes of action, which vested in the relevant Estate Entity upon confirmation of the plans. With respect to the Affected Cases without confirmed plans: (1) in *Brilliant*, all causes of action remain with the Chapter 7 Trustee and may not be asserted by any other entity, *see Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 307 (5th Cir. 2001) (holding that because certain claims were property of the bankruptcy estate, the chapter 7 trustee was the real party in interest with exclusive standing to assert them); and (2) in *La Forta*, all "claims, causes of action, avoidance actions (including those arising under chapter 5 of the Bankruptcy Code) and the proceeds of each (other than claims directly related to the Assets, such as warranty claims)" were sold to Operadora CICSA, S.A. de C.V. *See* Dkt. No. 311-3, Ex. 231 at pp. 2-4, 10.

17. With respect to the Affected Cases with confirmed plans, upon confirmation of a chapter 11 plan, "all of the property of the estate"—including causes of action belonging to the estate—vested in the reorganized debtor or other successor entity. 11 U.S.C. § 1141(b). The Plans and Confirmation Orders[11] implemented that vesting broadly and explicitly.

18. For example, the Plan in *Chesapeake* provides that: "on the Effective Date, all property in each Estate that constitutes property of the Estate under section 541 of the Bankruptcy Code, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan

---

No. 18-30155, EXCO Resources, Inc., Dkt. No. 2372; Case No. 19-34508, Sanchez Energy Corporation, Dkt. No. 2950; Case No. 20-33916, TMW Merchants LLC, Dkt. No. 267; Case No. 22-90129, Altera Infrastructure Project Services LLC, Dkt. No. 115; Case No. 23-90055, Auto Plus Auto Sales, LLC, Dkt. No. 150.

[11] The citation to each relevant plan and confirmation order (together, the "Plans and Confirmation Orders") is provided below.

shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances." Dkt. No. 295-6, Ex. 81, Art. IV.H; Dkt. No. 295-6, Ex. 81, ¶¶ 128-129.

19. The other Plans and Confirmation Orders contain similar vesting provisions. *See* Dkt. No. 293-1, Ex. 1, Art. IV.K; Dkt. No. 293-8, Ex. 8, Art. IV.D; Dkt. No. 293-10, Ex. 10, Art. III.D; Dkt. No. 293-16, Ex. 16, Art. IV.G; Dkt. No. 293-22, Ex. 22, Art. IV.G; Dkt. No. 293-29, Ex. 29, Art. III.H; Dkt. No. 293-35, Ex. 35, Art. IV; Dkt. No. 293-41, Ex. 41, Art. IV.I; Dkt. No. 293-48, Ex. 48, Art. IV.G; Dkt. No. 294-5, Ex. 55, Art. IV.C; Dkt. No. 2169, Ex. 63, Art. IV.D.1; Dkt. No. 294-15, Ex. 75, Art. IV.H; Dkt. No. 295-6, Ex. 81, Art. IV.H; Dkt. No. 295-20, Ex. 95, Art. VII.G; Dkt. No. 296-1, Ex. 101, Art. IV.G; Dkt. No. 296-7, Ex. 107, Art. IV.F; Dkt. No. 296-13, Ex. 113, Art. IV.F; Dkt. No. 296-19, Ex. 119, IV.D; Dkt. No. 311-1, Ex. 229, Art. IV.G; Dkt. No. 311-2, Ex. 230, Art. IV.C; Dkt. No. 296-42, Ex. 142, Art. VIII.D; Dkt. No. 297-5, Ex. 150, Art. IV.F; Dkt. No. 297-11, Ex. 156, Art. IVA.1; Dkt. No. 297-17, Ex. 162, Art. IV.G; Dkt. No. 297-25, Ex. 170, Art. IV.F; Dkt. No. 297-39, Ex. 184, Art. VIII.I; Dkt. No. 297-47, Ex. 192, Art. IV.A.1; Dkt. No. 298-6, Ex. 206, Art. IV.F; Dkt. No. 298-14, Ex. 214, Art. V.C.3.

20. Each vesting provision makes clear that "Causes of Action" were among those assets that vested in the respective Estate Entity. For those Affected Cases that do not specifically refer to "Causes of Action" in the vesting provision of the confirmed Plans, each Affected Case includes "Causes of Action" within the class of assets vesting in the respective Estate Entity. *See e.g.*, Dkt. No. 293-10, Ex. 10, Art. I.90, Art. I.130-131 (vesting the "Liquidation Trust Assets" in the Liquidation Trust, which included all "Retained Causes of Action"); Dkt. No. 294-13, Ex. 63, Art. IV.D.1, Art. I.A. 17, Art. I.A.76 (vesting the "Excluded Assets" in the Wind-Down Debtors, which included claims or actions that a debtor may have against a person to the extent related to other Excluded Assets or Excluded Liabilities, under the Asset Purchase Agreement); Dkt. No.

296-19, Ex. 119, Art IV.D, Art. I.A.90, Art. I.A.123 (vesting the "Post-Effective Date Debtor Assets" in the Post-Effective Date Debtor, which included Causes of Action); Dkt. No. 296-42, Ex. 142, Art. IV.D.1, Art. I.A.85, Art. I.A.123 (vesting the "Liquidation Trust Assets" in the Liquidation Trust, which included all "Preserved Estate Claims"); Dkt. No. 297-11, Ex. 156, Art IV.A.1, Art. I.A.8, Art. I.A.113 (vesting the "Assets" in the Estates, which included all "Retained Causes of Action"); Dkt. No. 297-47, Ex. 192, Art. IV.A.1, Art. I.A.6 (vesting the "Assets" in the Estates, which included "all of the Debtor's property, rights and interest that are property of the Estate pursuant to section 541 of the Bankruptcy Code"); Dkt. No. 298-14, Ex. 214, Art V.C.3, Art. I.A.81, I.A.124 (vesting the "Liquidation Trust Assets" in the Liquidation Trust, which included all "Retained Causes of Action").

21. "Causes of Action", in turn, was defined broadly in the various Plans—encompassing all claims and causes of action of any nature that the various estates held as of or after the relevant petition dates, whether known or unknown, foreseen or unforeseen. For example, in *Chesapeake*, "Cause of Action" was defined as:

> 23. "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

*See* Dkt. No. 295-6, Ex. 81, Art. I.23.

22. The other Plans define "Causes of Action" similarly. Dkt. No. 293-1, Ex. 1, Art. I.A.38; Dkt. No. 293-8, Ex. 8, Art. I.A.34; Dkt. No. 293-10, Ex. 10, Art. I.A.23; Dkt. No. 293-16, Ex. 16, Art. I.A.13; Dkt. No. 293-22, Ex. 22, Art. I.A.16; Dkt. No. 293-29, Ex. 29, Art. I.A.; Dkt. No. 293-35, Ex. 35, Art. I.A.11; Dkt. No. 293-41, Ex. 41, Art. I.A.25; Dkt. No. 293-48, Ex. 48,

Art. I.A.42; Dkt. No. 294-5, Ex. 55, Art.I.A.17; Dkt. No. 294-13, Ex. 63, Art. I.A.27; Dkt. No. 294-15, Ex. 75, Art. I.A.32; Dkt. No. 295-6, Ex. 81, Art. I.A.23; Dkt. No. 294-13, Ex. 88, Art. I.A.18; Dkt. No. 295-20, Ex. 95, Art. I.A.27; Dkt. No. 296-1, Ex. 101, Art. I.A. 82; Dkt. No. 296-7, Ex. 107, Art. I.A.21; Dkt. No. 296-13, Ex. 113, Art. I.A.34; Dkt. No. 296-19, Ex. 119, Art. I.A.20; Dkt. No. 311-1, Ex. 229, Art. I.A.27; Dkt. No. 311-2, Ex. 230, Art. I.A.15; Dkt. No. 296-42, Ex. 142, Art. I.A.15; Dkt. No. 197-5, Ex. 150, Art. I.A.50; Dkt. No. 297-11, Ex. 156, Art. I.A.20; Dkt. No. 297-17, Ex. 162, Art. I.A.17; Dkt. No. 297-25, Ex. 170, Art. I.A.36; Dkt. No. 297-39, Ex. 184, Art. I.A.33; Dkt. No. 297-47, Ex. 192, Art. I.A.15; Dkt. No. 298-6, Ex. 206, Art. I.A; Dkt. No. 298-14, Ex. 214, Art. I.A.25.

23. Thus, any Cause of Action assertable by an Estate Entity against Jackson Walker for disgorgement or return of funds was, by operation of section 1141(b) of the Bankruptcy Code and the Plans and Confirmation Orders, transferred to and became the property of the respective Estate Entity on the Effective Date of each Plan. *See* Dkt. No. 293-1, Ex. 2; Dkt. No. 293-9, Ex. 9; Dkt. No. 293-17, Ex. 17; Dkt. No. 293-23, Ex. 23; Dkt. No. 293-30, Ex. 30; Dkt. No. 293-42, Ex. 42; Dkt. No. 293-49, Ex. 49; Dkt. No. 294-6, Ex. 56; Dkt. No. 294-14, Ex. 64; Dkt. No. 295-1, Ex. 76; Dkt. No. 295-7, Ex. 82; Dkt. No. 295-14, Ex. 89; Dkt. No. 295-21, Ex. 96; Dkt. No. 296-2, Ex. 102; Dkt. No. 296-8, Ex. 108; Dkt. No. 296-14, Ex. 114; Dkt. No. 296-21, Ex. 121; Dkt. No. 296-29, Ex. 129; Dkt. No. 296-36, Ex. 136; Dkt. No. 296-43, Ex. 143; Dkt. No. 297-6, Ex. 151; Dkt. No. 297-12, Ex. 157; Dkt. No. 297-18, Ex. 163; Dkt. No. 297-26, Ex. 171; Dkt. No. 297-40, Ex. 185; Dkt. No. 298-7, Ex. 207; Dkt. No. 298-15, Ex. 215.

24. This principle is firmly established in case law. Representatives of bankruptcy estates—and not the U.S. Trustee—hold the exclusive right to pursue causes of action belonging to the estates. *See Educators Group Health Trust*, 25 F.3d at 1284 ("If a cause of action belongs

to the estate, then the [estate representative] has exclusive standing to assert the claim."); *see also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.2d 380, 385 (5th Cir. 2008) ("Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed."). And disgorged fees that are ordered to be paid back to an estate constitute property of the estate. *See In re PDG Prestige, Inc.*, Case No. 23-3004, 2025 WL 2752732 (Bankr. W.D. Tex. Sept. 26, 2025) at *7 n.90 ("Any disgorged funds would clearly be property of the bankruptcy estate.").

25. Thus, because the estate Causes of Action vested solely in the respective Estate Entities pursuant to the Plan and Confirmation Orders (or otherwise in the cases of *Brilliant* and *La Forta*), the U.S. Trustee lacks standing to seek return of fees and expenses previously paid to Jackson Walker in the Affected Cases. *See In re SunEdison, Inc.*, Case No. 16-10992, 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019), at *6 (claim seeking to vacate retention and fee order for estate professional and disgorgement of fees paid and sanctions was an estate claim only the post-confirmation trust that acquired estate claims could pursue and settle); *In re Syntax-Brillian Corp.*, Case No. 13-337, 2016 WL 7177615, at * 11 (D. Del. Dec. 9, 2016) (motion for sanctions and disgorgement against debtor's counsel was an estate cause of action released under the plan); *see also Ruhl v. HSBC Mortg. Servs., Inc.*, 399 B.R. 49, 55-56 (E.D. Wis. 2008) (claims seeking disgorgement of improper interest from mortgage servicer following confirmation and competition of a chapter 13 plan was an "estate" cause of action because the alleged harm was to the estate and any proceeds from the action would return to the estate; accordingly, the estate was the entity with Article III standing to bring the claim); 11 U.S.C. § 549 (vesting the debtor-in-possession with the

exclusive right to avoid any post-petition transfer of property that is not authorized by the Bankruptcy Code).

26. Indeed, courts across the country routinely hold that causes of action, when asserted against an attorney or law firm, belong to the client of such attorney or law firm, not to third parties. *F.D.I.C. v. Howse*, 802 F. Supp. 1554, 1563 (S.D. Tex. 1992) (dismissing third-party and cross-claims against law firms, holding that under Texas law an attorney owes no duty to third-party non-client); *see Barcelo v. Elliott*, 923 S.W.3d 575, 577 (Tex. 1966) (providing that an attorney does not owe a fiduciary duty to a non-client and is not liable to a non-client for damages resulting from the negligent performance of legal services for a client). Moreover, claims for legal malpractice cannot be assigned to third-parties for prosecution. *Britton v. Seale*, 81 F.3d 602, 606 (5th Cir. 1996) (holding that claims for legal malpractice cannot be assigned to third-parties for prosecution); *see also State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 707-08 (Tex. 1996) (holding that legal malpractice claims are not assignable).

**C. The U.S. Trustee has no standing to assert estate causes of action.**

27. A court's consideration of its jurisdiction to hear a case must "begin—and end—with standing." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). To prevail on its claim for disgorgement, the U.S. Trustee bears the "burden of establishing" standing. *Carney v. Adams*, 592 U.S. 53, 5960 (2020). In recent Supreme Court jurisprudence, the Court has explained that Article III standing cannot be considered at a "high level of generality." *Murthy*, 603 U.S. at 59. Rather, a granular consideration of facts is required because "standing is not dispensed in gross . . . a plaintiff must demonstrate standing for each claim that they press against each defendant and for each form of relief that they seek." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (internal citations and quotations omitted). Standing is a threshold issue that must be determined before a decision on the merits can be reached. *See Audler v. CBC Innovis Inc.*, 519

F.3d 239, 247-48 (5th Cir. 2008) ("Because standing is a jurisdictional requirement, we must address it before considering the merits of an appellant's claim."); *see also Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016).

28. With respect to pursing estate claims, the Fifth Circuit has made clear that there are generally three categories of claims in a bankruptcy case: those that "belong to the estate;" those "asserting a generalized injury to the debtor's estate, which ultimately affects all creditors;" and those "by individual creditors that affect only that creditor personally." *In re Schimmelpenninck*, 183 F.3d 347, 359-60 (5th Cir. 1999). In recognizing these categories, the Fifth Circuit found that only the estate representative (here, the Estate Entities) is the proper party to bring the first two categories of claims; and the third can only be brought by an individually affected creditor. *Id.* at 360. The Fifth Circuit emphasized that even formally "creditor" claims must be asserted by the estate representative where they advance a generalized grievance shared by the creditor body as a whole. *Id.* at 359 ("If the right belongs to the debtor's creditors, the distinction between personal and general claims takes on significance: A trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal. In other words, even if a claim 'belongs to' the creditor, the trustee is the proper party to assert the claim, for the benefit of all creditors, provided the claim advances a generalized grievance."). And in *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 588, the Fifth Circuit reiterated this finding, holding that claims alleging a "generalized injury to the debtor's estate, which ultimately affects all creditors" falls squarely within the estate representative's exclusive domain—not because the claims are necessarily "common to a number of creditors", but because they raise no injury that is personal and independent of the estate's own harm. *Id.* at 588-89.

29. Here, the U.S. Trustee's theory of recovery fails the *Schimmelpenninck* test. The relief sought—disgorgement and return of funds previously paid to Jackson Walker—is premised entirely on alleged harm to the estates. This is not a "public interest" that the U.S. Trustee seeks to protect, but a private interest of the Estate Entities, who are the only parties would be benefit from an order of disgorgement. *See In re Container Store Group, Inc.*, 676 B.R. 356, 368-71 (S.D. Tex. 2026) (finding that the U.S. Trustee must be asserting a "public interest" to have constitutional standing beyond the statutory authority provided in section 307). While seeking to vacate orders may vindicate the "public interest" of the bankruptcy system to allow for a redo of the fee application process (as originally proclaimed by the U.S. Trustee), requesting disgorgement (*e.g.*, asserting an estate claim) takes the U.S. Trustee's standing one step too far. In essence, the U.S. Trustee alleges that the debtors were harmed because they retained a law firm that—as the U.S. Trustee sees it—was conflicted. But Jackson Walker's duties were owed to the estates—not to the U.S. Trustee or to any individual creditor. *ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 125 (S.D. Tex. 2002) (stating that "the attorney for debtor in possession is a fiduciary of the estate" but that there is no "fiduciary duty running directly from the debtor's counsel to a particular creditor."), *aff'd sub nom. In re ICM Notes Ltd.*, 324 F.3d 768 (5th Cir. 2003); *see also Howse,* 802 F. Supp. at 1563 (holding that an attorney owes no duty to a third-party non-client); *Barcelo*, 923 S.W.3d at 577 (providing that an attorney does not owe a fiduciary duty to a non-client). That is the textbook definition of a generalized injury to the estate—the kind of claim that belongs to the Estate Entities, not to a third party. As such, the U.S. Trustee is not exercising a "public interest" right by seeking disgorgement; he is going beyond public rights and asserting private rights.

30. In actuality, the U.S. Trustee's relief sought is recovery and control of estate property. Claims premised on generalized harm to the estates or seeking to recover property transferred from the estate are estate claims. The U.S. Trustee's request to recover estate-paid professional fees based on alleged conduct generally affecting the estates is unquestionably an estate claim. *See* Vacatur Presiding Judge Mot., ¶ 100 (U.S. Trustee alleging "damage [to] the administration of the estate generally."). Where the money would flow back to the estates—not to the U.S. Trustee or the United States—the claim to that money is an estate asset.

31. Once it is established that the U.S. Trustee's disgorgement request is an estate cause of action, the standing analysis is straightforward. The Estate Entities have exclusive authority to control estate property—including deciding whether to pursue, not pursue, settle, or not settle estate claims and causes of action. Absent a grant of derivative standing (discussed below), the Estate Entities are exclusively accountable for estate property, including causes of action. The confirmed Plans provide that the authority to control estate causes of action rests with the Plans' respective designated Estate Entity—not with the U.S. Trustee. And, in *Brilliant*, the Bankruptcy Code is clear that the chapter 7 trustee controls all estate property, including estate claims. 11 U.S.C. § 704.

32. Further, the U.S. Trustee is not an authorized representative of any estate, creditor, or economic stakeholder. As discussed below, his statutory role does not grant him unlimited standing and authority to prosecute any private matter or private action. That is particularly true given the U.S. Trustee's allegations, which largely sound in "breach of fiduciary duty" by Jackon Walker, a claim the U.S. Trustee has no authority to pursue. *See, e.g.*, Vacatur Mediated Judge Motion ¶¶ 7, 9, 59, 108, 135, 136, 139, 107, 147, 188 & 193 (referencing Jackson Walker's alleged fiduciary duties and breaches thereof); UST Reply Br. ¶ 35 (referencing Jackson Walker's

fiduciary duties to the estates). The real parties in interests—the Estate Entities—are present and capable of deciding whether to pursue claims against Jackson Walker, and in some cases, they have pursued such claims. *See* Dkt. No. 293-7, Ex. 7; Dkt. No. 293-28, Ex. 28, Dkt. No. 294-9, Ex. 59; Dkt. No. 294-17, Ex. 67; Dkt. No. 296-24, Ex. 124; Dkt. No. 296-45, Ex. 145; Dkt. No. 297-29, Ex. 174; Dkt. No. 297-35, Ex. 180; Dkt. No. 297-43, Ex. 188; Dkt. No. 297-49, Ex. 194; Dkt. No. 298-18, Ex. 218. The Estate Entities are the only parties with standing, not the U.S. Trustee.

### D. The estate claims assertable against Jackson Walker for recovery of fees and expenses paid during the Affected Cases were released, and Jackson Walker was exculpated, in the majority of the Affected Cases.

33. Under section 1123(b)(3)(B) of the Bankruptcy Code, a reorganized debtor or estate representative can bring a post-confirmation action only when the plan preserves that party's standing to bring such a claim and only if the plan expressly provides for the claim's "retention and enforcement by the debtor." *Dynasty Oil and Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) (quoting 11 U.S.C. § 1123(b)(3)(B)). Thus, post confirmation, "the ability of the [debtor or another party] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *Id.* (quoting *In re Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994)).

34. The Fifth Circuit has considered the issue several times and, in doing so, has repeatedly examined a confirmed plan's language to determine whether the post-confirmation claims could be asserted and whether a confirmed plan allowed for the requesting party or entity to bring such claims. *See Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013); *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011) (unless a plan includes an effective reservation, the plaintiff "has no standing to pursue a claim that the estate owned before it was dissolved").

35. Here, any claims that could result in disgorgement of fees and expenses paid to Jackson Walker during the Affected Cases are estate causes of action that were released under the majority of the Plans and Confirmation Orders, with the exception of only *Brilliant*, *La Forta*, and *Sanchez Energy*. *See* Dkt. No. 293-1, Ex. 1, Art. VIII.C; Dkt. No. 293-8, Ex. 8; Art. IX.F; Dkt. No. 293-10, Ex. 10, Art. VII.F.4; Dkt. No. 293-16, Ex. 16, Art. VIII.C; Dkt. No. 293-29, Ex. 29, Art. VIII.C; Dkt. No. 293-35, Ex. 35, Art. VIII.C; Dkt. No. 293-41, Ex. 41, Art. VIII.B; Dkt. No. 293-48, Ex. 48, Art. VIII.C; Dkt. No. 294-5, Ex. 55, Art. VIII.C; Dkt. No. 294-13, Ex. 63, Art. X.C; Dkt. No. 294-15, Ex. 75, Art. VIII.D; Dkt. No. 296-13, Ex. 113, Art. VIII.C; Dkt. No. 295-6, Ex. 81, Art. VIII.C; Dkt. No. 295-13, Ex. 88, Art. VIII.B; Dkt. No. 295-20, Ex. 95, Art. XI.D; Dkt. No. 296-1, Ex. 101, Art. VIII.B; Dkt. No. 296-7, Ex. 107, Art. VIII.C; Dkt. No. 296-19, Ex. 119, Art. X.D; Dkt. No. 311-1, Ex. 229, Art. VIII.C; Dkt. No. 311-2, Ex. 230, Art. VIII.C; Dkt. No. 296-42, Ex. 142, Art. XII.B; Dkt. No. 297-5, Ex. 150, Art. VIII.C; Dkt. No. 297-11, Ex. 156, Art. VIII.F.3; Dkt. No. 297-17, Ex. 162, Art. VIII.B; Dkt. No. 297-25, Ex. 170, Art. VIII.B; Dkt. No. 297-39, Ex. 184, Art. XII.B; Dkt. No. 297-47, Ex. 192, Art. VIII.F.4; Dkt. No. 298-6, Ex. 206, Art. VIII.C; Dkt. No. 298-14, Ex. 214, Art. IX.F.4.

36. Further, Jackson Walker is a "Released Party" under each referenced Plan. *See* Dkt. No. 293-1, Ex. 1, Art. I.A.144; Dkt. No. 293-8, Ex. 8, Art. I.A.186; Dkt. No. 293-10, Ex. 10, Art. I.A.127, 129; Dkt. No. 293-16, Ex. 16, Art. I.A.106; Dkt. No. 293-29, Ex. 29, Art. I.A; Dkt. No. 293-35, Ex. 35, Art. I.A.99-100; Dkt. No. 293-41, Ex. 41, Art. I.A.134-135; Dkt. No. 293-48, Ex. 48, Art. I.A.214; Dkt. No. 294-5, Ex. 55, Art. I.A.94; Dkt. No. 294-13, Ex. 63, Art. I.A.166-167; Dkt. No. 294-15, Ex. 75, Art. I.A.170-171; Dkt. No. 295-6, Ex. 81, Art. I.A.143; Dkt. No. 295-13, Ex. 88, Art. I.A.130-131; Dkt. No. 295-20, Ex. 95, Art. I.A.84; Dkt. No. 296-1, Ex. 101, Art. I.A.111; Dkt. No. 296-7, Ex. 107, Art. I.A.148; Dkt. No. 296-13, Ex. 113, Art. I.A.136-137;

Dkt. No. 296-19, Ex. 119, Art. I.A.112-113; Dkt. No. 311-1, Ex. 229, Art. I.A.161, 163; Dkt. No. 311-2, Ex. 230, Art. I.A.92-93; Dkt. No. 296-42, Ex. 142, Art. I.A.38, 136; Dkt. No. 297-5, Ex. 150, Art. I.A.88-89; Dkt. No. 297-11, Ex. 156, Art. I.A.109-110; Dkt. No. 297-17, Ex. 162, Art. I.A.99-100; Dkt. No. 297-25, Ex. 170, Art. I.A.141-142; Dkt. No. 297-39, Ex. 184, Art. I.A.146; Dkt. No. 297-47, Ex. 192, Art. I.A.79, 81; Dkt. No. 298-6, Ex. 206, Art. I.A; Dkt. No. 298-14, Ex. 214, Art. I.A.116, 121.

37. Additionally, the majority of the Plans and Confirmation Orders exculpated Jackson Walker for any Cause of Action related to the Affected Cases. *See* Dkt. No. 293-1, Ex. 1, Art. I.A.88, Art. VIII.E; Dkt. No. 293-8, Ex. 8, Art. I.A.98, Art. IX.F; Dkt. No. 293-10, Ex. 10, Art. I.A.58, Art. VII.F.3; Dkt. No. 293-16, Ex. 16, Art. I.A.41, Art. VIII.E; Dkt. No. 293-22, Ex. 22, Art. I.A.54, Art. VIII.B; Dkt. No. 293-29, Ex. 29, Art. I.A, Art. VIII.E; Dkt. No. 293-35, Ex. 35, Art. I.A.44, 99, Art. VIII.E; Dkt. No. 293-41, Ex. 41, Art. I.A.64, Art. VIII.D; Dkt. No. 293-48, Ex. 48, Art. I.A.98-208, Art. VIII.E; Dkt. No. 294-5, Ex. 55, Art. I.A.44, Art. VIII.E; Dkt. No. 294-13, Ex. 63, Art. I.A.78, 166, Art. X.E; Dkt. No. 294-15, Ex. 75, Art. I.A.86, 170, Art. VIII.G; Dkt. No. 295-6, Ex. 81, Art. I.A.72, Art. VIII.E; Ex. 88, Art. I.A.56, 130, Art. VIII.D; Dkt. No. 295-20, Ex. 95, Art. I.A.82, 84, Art. XI.C; Dkt. No. 296-1, Ex. 101, Art. I.A.54, Art. VIII.D; Dkt. No. 296-7, Ex. 107, Art. I.A.68, Art. VIII.E; Dkt. No. 296-13, Ex. 113, Art. I.A.76, 136, Art. VIII.E; Dkt. No. 296-19, Ex. 119, Art. I.A.56, 112, Art. X.F; Dkt. No. 311-1, Ex. 229, Art. I.A.74, 161, Art. VIII.D; Dkt. No. 311-2, Ex. 230, Art. I.A.45, 92, Art. VIII.E; Dkt. No. 296-42, Ex. 142, Art. I.A.38, 61, Art. XII.D; Dkt. No. 297-5, Ex. 150, Art. I.A.50, 88, Art. VIII.E; Dkt. No. 297-17, Ex. 162, Art. I.A.52, 99, Art. VIII.D; Dkt. No. 297-25, Ex. 170, Art. I.A.73, 141, Art. VIII.D; Dkt. No. 298-14, Ex. 214, Art. I.A.55, 123, Art. IX.F.3. The only Affected Cases that did not exculpate Jackson Walker include: *Brilliant, La Forta, IEH Auto Parts*, *Sungard*, *4E Brands*, and *Altera*.

38. Under the Plans and Confirmation Orders, the only Causes of Actions that were retained by the respective Estate Entities were those that were not released, waived, or transferred pursuant to the Plans. For example, in the *Chesapeake* Plan, only Retained Causes of Action were preserved:

> 173. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

Dkt. No. 295-6, Ex. 81, Art. I.A.173. The other Plans and Confirmation Orders contained similar limitations, retaining only claims that were not released or exculpated. *See* Dkt. No. 293-1, Ex. 1, Art. I.A.152; Dkt. No. 293-8, Ex. 8, Art. I.A.192; Dkt. No. 293-10, Ex. 10, Art. I.A.133; Dkt. No. 293-16, Ex. 16, Art. Art. I.A.115; Dkt. No. 293-29, Ex. 29, Art. I.A; Dkt. No. 293-35, Ex. 35, Art. Art. I.A.107; Dkt. No. 293-41, Ex. 41, Art. I.A.144; Dkt. No. 293-48, Ex. 48, Art. I.A.226; Dkt. No. 294-5, Ex. 55, Art. Art. I.A.104; Dkt. No. 294-13, Ex. 63, Art. I.A.177; Dkt. No. 294-15, Ex. 75, Art. I.A.183; Dkt. No. 295-6, Ex. 81, Art. I.A.173; Dkt. No. 295-13, Ex. 88, Art. I.A.148; Dkt. No. 295-20, Ex. 95, Confirmation Order ¶ 28; Dkt. No. 296-1, Ex. 101, Art. I.A.122; Dkt. No. 296-7, Ex. 107, Art. I.A.156; Dkt. No. 296-13, Ex. 113, Art. I.A.151; Dkt. No. 296-19, Ex. 119, Art. I.A.123; Dkt. No. 311-1, Ex. 229, Art. I.A.184; Dkt. No. 311-2, Ex. 230, Art. I.A.98; Dkt. No. 296-42, Ex. 142, Art. I.A.123; Dkt. No. 297-5, Ex. 150, Art. I.A.99; Dkt. No. 297-11, Ex. 156, Art. I.A.113; Dkt. No. 297-17, Ex. 162, Art. IV.N; Dkt. No. 297-25, Ex. 170, Art. I.A.158; Dkt. No. 297-39, Ex. 184, Art. I.A.164; Dkt. No. 297-47, Ex. 192, Confirmation Order ¶ 70; Dkt. No. 298-6, Ex. 206, Art. I.A; Dkt. No. 298-14, Ex. 214, Art. I.A.130.

39. Claims against Jackson Walker—as a Released Party and, in applicable cases, an Exculpated Party—therefore were not preserved or retained under the Plans and Confirmation Orders. Thus, even if the U.S. Trustee were able to assert estate causes of action (which he cannot), the disgorgement claims he seeks to pursue have been released and were not preserved or retained.

The U.S. Trustee simply cannot bring claims and causes of action belonging to the Estate Entities that the Estate Entities themselves lack standing to bring.

40. The relief sought by the U.S. Trustee is especially problematic in confirmed Plan cases (which includes all of the Affected Cases except for *Brilliant* and *La Forta*) because it would effectively override Plan and Confirmation Order finality and the Estate Entities' control over claims as resolved through the Confirmation Orders. Nothing in the Bankruptcy Code grants the U.S. Trustee authority to override a debtor's judgment or to brush aside the final judgment embodied in a Confirmation Order. *See In re California Litfunding, a Nevada Corp.*, 360 B.R. 310, 324 (Bankr. C.D. Cal. 2007) (discussing 11 U.S.C. §§ 1141 and 1144 and the "strong policy in favor of the finality of a confirmation order").

41. In an attempt to avoid the releases, the U.S. Trustee argues that at least one Confirmation Order, that entered in *Altera*, contains a carveout preserving claims by "Governmental Units" and that this carveout saves his Vacatur Motions from the various Plan releases. UST Reply Br., ¶¶ 142-43 (citing the *Altera* Confirmation Order, which provides in paragraph 120 that "Nothing in the Plan or this Confirmation Order discharges, releases, precludes, or enjoins (a) any liability to any Governmental Unit that is not a Claim; . . . or (e) any liability to a Governmental Unit on the part of any Person or Entity other than the Debtors or Reorganized Debtors."). This argument misreads the carveout. The carveout preserves governmental liabilities such as regulatory enforcement actions or tax liabilities to the government and expressly applies only to liabilities ***to*** a Governmental Unit. *Id.* It does not preserve the right of the U.S. Trustee to seek recovery of estate assets on behalf of the estates themselves, which is what the disgorgement request amounts to. The Vacatur Motions do not seek to collect a debt owed to the United States (*i.e.*, a liability owed to the government) but to obtain repayment of money for the benefit of the

estates. That is an estate-owned claim, and the governmental carveout does not apply to estate-owned claims being pursued by the U.S. Trustee on the various estates' behalf.

42. The U.S. Trustee also argues he is not a "Releasing Party" under any of the Plan definitions, so the non-debtor releases do not bind him. UST Reply Br., ¶ 144. But this argument is a red herring: Jackson Walker does not assert that the non-debtor releases bind the U.S. Trustee, but that the debtor releases, which release causes of action owned by the Estate Entities, bind the U.S. Trustee and all parties in interest. *See supra* ¶¶ 33-39. The non-debtor releases, and the inapplicability of those releases to the U.S. Trustee, are thus irrelevant. Because the estates released their causes of action (which include any "remedies" associated with alleged breaches of fiduciary duties) against Jackson Walker, the U.S. Trustee cannot prosecute released estate claims regardless of whether he is a "Releasing Party" or not.

43. Lastly, the U.S. Trustee argues in his Reply that the exculpation provisions in certain of the Affected Cases do not apply to Jackson Walker because Ms. Freeman and/or Jackson Walker engaged in actual fraud, willful misconduct, or gross negligence, triggering a carve out of the exculpation language. *See* UST Reply, ¶¶ 145-154. These arguments are red herrings. The U.S. Trustee bears the burden to establish the carve out applies, and his Vacatur Motion does not begin to meet the standards under Federal Rule 9 for pleading fraud, not to mention that the carve out for actual fraud, willful misconduct, and/or gross negligence was raised only in the U.S. Trustee's Reply and not in the actual Vacatur Motions themselves. *See* UST Reply Br. ¶¶ 145-154; *see also Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (finding that "[a]rguments raised for the first time in a reply brief are generally waived"); *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010) (noting that "the scope of the reply brief must be limited to addressing the arguments raised" in the response or memorandum in opposition");

*Matter of Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 235 (5th Cir. 2020) ("Under Rule 9(b), in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") (internal quotation marks and citations omitted).

44. Simply put, the Plans and Confirmation Orders released claims and causes of action against Jackson Walker for any disgorgement or return of fees paid (*i.e.*, estate-owned claims), and Jackson Walker was exculpated for its actions in the majority of the Affected Cases; therefore, claims against Jackson Walker were not specifically or unequivocally preserved under *United Operating* and its progeny. The U.S. Trustee cannot seek such relief now through his Vacatur Motions.

**E. Derivative standing is unavailable here, and the U.S. Trustee has not even tried to obtain it.**

45. The law does permit other parties to pursue estate claims in certain narrow circumstances and only if specific requirements are met to obtain derivative standing. *Louisiana World Exposition v. Federal Ins. Co*., 858 F.2d 233, 247 (5th Cir. 1988); s*ee also In re SI Restructuring Inc*., 714 F.3d 860 (5th Cir. 2013); *In re Louisiana World Exposition, Inc*., 832 F.2d 1391 (5th Cir. 1987). Derivative standing requires a colorable claim and an unjustified refusal by the debtor-in-possession to pursue it, and it is granted only in narrow circumstances to protect estates from unnecessary and uneconomical litigation. *In re Clear the Air, LLC*, 631 B.R. 286, 295 (Bankr. S.D. Tex. 2021) ("a creditor may bring suit on behalf of the bankruptcy estate for fraudulent transfers if: (1) the creditor's claim is colorable; (2) the debtor-in-possession unjustifiably refused to pursue the claim; and (3) that the creditor received leave to sue from the bankruptcy court before pursuing the fraudulent transfer claim").

46. The U.S. Trustee has not sought derivative standing. He made no effort to request that any Estate Entity prosecute these claims and did not attempt to satisfy the derivative-standing

standard; instead, he seeks to bypass those safeguards entirely without regard to the affected estates' interests. The U.S. Trustee apparently believes he does not need to satisfy these requirements and that his statutory role gives him a free pass to pursue estate claims without obtaining anyone's authorization to do so. It does not.

47. Moreover, certain Estate Entities have in fact shown up to exercise their rights to pursue estate claims against Jackson Walker. *See* Dkt. No. 293-7, Ex. 7; Dkt. No. 293-28, Ex. 28, Dkt. No. 294-9, Ex. 59; Dkt. No. 294-17, Ex. 67; Dkt. No. 296-24, Ex. 124; Dkt. No. 296-45, Ex. 145; Dkt. No. 297-29, Ex. 174; Dkt. No. 297-35, Ex. 180; Dkt. No. 297-43, Ex. 188; Dkt. No. 297-49, Ex. 194; Dkt. No. 298-18, Ex. 218. Given this participation, the U.S. Trustee should not be permitted to exercise control over the estate actions seeking disgorgement derivatively.

48. For the reasons set forth above, the U.S. Trustee lacks standing to pursue estate causes of action, which is the true relief sought in the Vacatur Motions.

## II. Section 307 gives the U.S. Trustee the right to be heard, not the right to assert estate causes of action.

### A. Section 307 does not permit the U.S. Trustee to seek disgorgement of estate funds from Jackson Walker.

49. The U.S. Trustee's primary standing argument is that he has authority under section 307 of the Bankruptcy Code to "raise" and "be heard" on "any issue" in a bankruptcy case, and that this broad language is enough to authorize his disgorgement request. *See* UST Standing Br. ¶ 28 ("As a matter of plain text, the U.S. Trustee's section 307 authority allows him to seek disgorgement and other sanctions for Jackson Walker's violation of its disclosure obligations. Section 307 expressly authorizes the U.S. Trustee to "raise" and "be heard" on "any issue" except that he "may not file a plan."). The U.S. Trustee argues that section 307's plain text allows him to seek vacatur of retention and fees orders under sections 327 and 330 of the Bankruptcy Code, denial or reduction of compensation under sections 328(c) and 330(a)(2) of the Bankruptcy Code,

sanctions for professionals' misconduct (no Bankruptcy Code provision cited), and recovery of fees under Bankruptcy Rule 2017. *Id.*

50. As stated above, Jackson Walker does not contest the U.S. Trustee's ability to object to Jackson Walker's fee applications—as in the *GWG* and *HONX* cases—or to seek vacatur of final fee orders or employment orders under Rule 60(b). Jackson Walker also does not contest the U.S. Trustee's ability to seek sanctions for Jackson Walker's alleged misconduct. Each of these items falls within the U.S. Trustee's authority under section 307 and aligns with the Congress's intended purpose that United States trustees "serve as enforcers of the bankruptcy laws by bringing proceedings in the bankruptcy courts in particular cases in which a particular action taken or proposed to be taken deviates from the standards established by the proposed Bankruptcy Code." H.R. Rep. 595, 95th Cong. 88-99, 2d Sess. 404, at 109, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6070.

51. Indeed, under 28 U.S.C. § 586, Congress explicitly authorized the U.S. Trustee to review fee applications and, if appropriate, file comments or objections to fee applications. 11 U.S.C. § 586(a)(3)(A)(i)-(ii). The U.S. Trustee can certainly "monitor plans and disclosure statements"; ensure reporting requirements are met; "monitor the functioning of creditors' committees"; "notify the U.S. Attorney of possible crimes uncovered"; "monitor progress of bankruptcies and keep cases moving" and "monitor the employment of professional persons in bankruptcy cases." H.R. Rep. No. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5227, 5237. Congress intended that the U.S. Trustee could "comment to the court through pleadings, motions, and other appropriate filings on any of the matters listed above." *Id.* Jackson Walker does not contest that the United States Trustee is "charged with

promoting the integrity of the bankruptcy system for all stakeholders." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 212-213 (2024).

52. But what the U.S. Trustee cannot do—what is explicitly prohibited under notions of constitutional standing—is seek return of estate funds to the estates for injuries allegedly suffered by the estates. This clearly falls outside the scope of section 307 and goes beyond the U.S. Trustee's charge to enforce bankruptcy laws and protect the public interest and the integrity of the "system". Nothing within section 307, or anywhere else in the Bankruptcy Code, authorizes the U.S. Trustee to take control of estate property to assert another party's legal rights, claims, or interests, particularly in a post-confirmation context where even the Court's jurisdiction is more limited than pre-confirmation. *See Matter of Sanchez Energy Corp.*, 159 F.4th 309, 318 (5th Cir. 2025) ("The scope of a bankruptcy court's related-to jurisdiction narrows, however, after a reorganization plan is confirmed, and the reorganized debtor is re-vested with its property and operates outside of bankruptcy court superintendence."); *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."). Again, Jackson Walker does not dispute the U.S. Trustee's broad authority to act as a "watchdog" and be heard in bankruptcy cases, but that participation right is distinct from the right to assert and control an estate cause of action. *See* H.R. Rep. 595, 95th Cong. 88-99, 2d Sess. 404, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5699; 11 U.S.C. § 307.

53. The U.S. Trustee's reading of section 307 would have no limiting principle. If "raise" "any issue" means "assert any cause of action on behalf of any party," then the U.S. Trustee could pursue fraudulent transfer claims, preference claims, breach of fiduciary duty claims, and

any other estate-owned cause of action—all without authorization from the estate entity or court approval. That is not what section 307 provides. *See In re Washington Mfg. Co.*, 123 B.R. 272, 276 (Bankr. M.D. Tenn. 1991) (recognizing limitations on section 307's authority, including finding that section 307 does not authorize the U.S. Trustee to exercise its "broad . . . supervisory authority" to intervene into an estate representative's action where such "intervention would unnecessarily duplicate the role of [the estate representative]").

54. The 1986 House Report, discussing the bill that amended the Bankruptcy Code to codify section 307 (previously, section 332), is informative:

> The U.S. Trustee is given standing to raise, appear, and be heard on any issue in any case or proceeding under Title 11, U.S. Code—except that the U.S. Trustee may not file a plan in a Chapter 11 case. In this manner, ***the U.S. Trustee is given the same right to be heard as a party in interest***, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised. ***By not designating the U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over the U.S. Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the U.S. Trustee has no pecuniary stake in any case, and functions only as an impartial administrator***.

H.R. Rep. No. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5227, 5240 (emphasis added). Thus, the U.S. Trustee is not granted standing beyond that of which an ordinary party in interest would have. *See In re Subpoena Duces Tecum*, 461 B.R. 823, 828 (Bankr. C.D. Cal. 2011) ("The legislative history thus makes clear that the UST is not a party in interest, yet has standing to participate in a bankruptcy case ***to a similar extent as a party in interest***.") (emphasis added). A party in interest, like the U.S. Trustee, has a statutory right to appear, raise issues, and be heard, *see* 11 U.S.C. §1109(b), but courts still require parties in interest to demonstrate standing to pursue affirmative relief. *See, e.g., In re Smart World Techs., LLC*, 423 F.3d 166, 182 (2d Cir. 2005) (finding that section 1109(b) allows a party in interest to intervene in

a pending proceeding but does not allow it to take control of the estate's legal causes of action); *see also Hartford Underwriters Ins. Co. v. Union Planters, N.A.*, 530 U.S. 1, 8 (2000) (stating that section 1109 "does not bestow any right to usurp" the debtor-in-possession's right to initiate "litigation that belongs exclusively to the estate") (internal quotations omitted); *In re Marin Motor Oil, Inc.*, 689 F.2d 445, 455-53 (3d Cir. 1982) (distinguishing between the right to participate in a proceeding "initiated by a . . . debtor in possession" and the right to assert such cause of actions); *In re Sunbeam Corp.*, 287 B.R. 861,862 (S.D.N.Y. 2003) (right to intervene is distinct from "the right, in essence, to take ownership of the [estate's] causes of action"); *In re Quigley Co., Inc.*, 437 B.R. 102, 158 (Bankr. S.D.N.Y. 2010) ("While section 307 of the Bankruptcy Code grants the United States Trustee the right to appear and be heard on any issue (other than filing a plan under [section] 1121(c)), ***it does not authorize the United States Trustee to assert control over causes of action belonging to the Quigley estate***.") (emphasis added). And this Court has previously recognized that the U.S. Trustee is not immune from the rules of litigation simply because it is a government entity. *See* Nov. 13, 2024 *Memorandum Opinion*, Case No. 23-00645, Dkt. No. 544, p. 10 ("[T]he United States Trustee is not being drawn into lawsuits but is instead the plaintiff of the instant Miscellaneous Proceeding; the United States Trustee cannot avoid an otherwise valid discovery request by virtue of the *Morgan* doctrine under these facts."); *id.*, p. 17 ("This Miscellaneous Proceeding was brought by the government, and as such, the United States Trustee cannot be given absolute authority to determine which testimony may be considered by the Court in its task of adjudicating this dispute.").

55. If the Estate Entities are the only parties entitled to assert estate causes of action or seek disgorgement of funds back to the estates, then no parties in interest have a right to be heard on the matter. The U.S. Trustee does not have greater rights than any other party in interest. The

U.S. Trustee is meant to function "only as an impartial administrator"—not to usurp estate causes of action and pursue them against Jackson Walker, even when the estates, in some instances, have settled their claims and determined enough is enough. H.R. Rep. No. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5227, 5240. Acting in such a manner—by making requests for disgorgement of estate funds and return of fees rather than merely seeking vacatur or sanctions—goes beyond impartiality as the U.S. Trustee becomes an advocate for a party with a pecuniary interest, exactly what Congress intended to protect against. Under the House Report, the U.S. Trustee simply has no right—no standing—to seek disgorgement of funds or assert causes of action against Jackson Walker. *See In re Washington Mfg. Co.*, 123 B.R. at 276.

56. Moreover, the U.S. Trustee's belated reliance on Rule 2017 and reasonableness of Jackson Walker's fees under section 330 of the Bankruptcy Code is inappropriate. *See* UST Standing Br. ¶¶ 43-45. The Vacatur Motions do not rely on either Rule 2017 or the reasonableness of Jackson Walker's fees in respect of any of the requested relief for disgorgement or return of funds. *See generally* Vacatur Mot. (no mention of Rule 2017 or any challenge to the reasonableness of fees); UST Reply Br. § II.G (discussing the U.S. Trustee's standing but never citing to Rule 2017 or challenging the reasonableness of fees). As to the latter, the U.S. Trustee has admitted that he "is not arguing in this matter that the fees and/or expenses incurred by [Jackson Walker] in any of the [Affected] Cases were either unreasonable or unnecessary for any reason other than the Freeman Jones Relationship." *See* Dkt. No. 311-9, Ex. 237 p. 3. Further, Rule 2017 is appropriately used to seek determination of "whether a debtor's payment of money . . . to an attorney . . . is excessive" under section 329 of the Bankruptcy Code. Fed. R. Bankr. P. 2017; *see In re Mayeaux*, 269 B.R. 614, 621 n.13 (Bankr. E.D. Tex. 2001) ("Rule 2017 implements

§ 329(b).”). The U.S. Trustee cannot point to any case in which Rule 2017 has been used as the basis to deny and disgorge compensation to an attorney or law firm whose fees were not excessive but were challenged on other grounds, such as those asserted by the U.S. Trustee here. *See* UST Reply Br. ¶ 126 (citing *In the matter of Geraci*, 138 F.3d 314, 316-318 (7th Cir. 1998), in which the U.S. Trustee “invoked Bankruptcy Rule 2017 to challenge the fees charged” in twelve chapter 7 cases under section 329 as “unreasonably high;” with the Seventh Circuit concluded that “the bankruptcy court acted pursuant to 11 U.S.C. § 329(b) and Bankruptcy Rule 2017” in ordering debtor’s counsel “to return a portion of his fee” to his clients.).

57. And as to the former, the Vacatur Motions are not based on Rule 2017 but based primarily on alleged violations of specified provisions in the Judicial Code (*e.g.*, 28 U.S.C. § 455), the Bankruptcy Code (*e.g.*, sections 101(14), 327, and 328(c)), the Bankruptcy Rules (*e.g.*, Rule 5002), Texas Disciplinary Rules (*e.g.*, Disciplinary Rules 3.03, 5.01, and 8.04(a)(6)), and local rules (*e.g.*, Local Rule 16.4I(2)). Moreover, the U.S. Trustee’s request for disgorgement of fees is purportedly based solely on this Court’s inherent authority and section 105(a) of the Bankruptcy Code. Again, JW does not dispute that the U.S. Trustee has standing to seek to vacate orders (which is the only relief rooted in the U.S. Trustee’s own role and authority under the Bankruptcy Code), or that the Court has the inherent ability to fashion a remedy if it determines such to be appropriate. What JW disputes, however, is the U.S. Trustee’s standing to seek a monetary recovery on behalf of the Estate Entities.

58. Even setting aside the U.S. Trustee’s non-reliance on Rule 2017 or reasonableness of fees in his Vacatur Motions, neither Rule 2017 nor section 330 confer the standing the U.S. Trustee needs. Rule 2017(b) permits a review of fees—it does not permit a demand for 100% disgorgement of all fees paid across thirty cases, years after confirmation, based on alleged

undisclosed Rule 2014 connections. Similarly, section 330's reasonableness standard is a criterion applied during the fee approval process—it does not create a standalone right in the U.S. Trustee to bring a disgorgement action after fees have been approved and paid and releases have been given.

59. Despite faulting Jackson Walker for not citing a case holding that the U.S. Trustee cannot seek disgorgement of fees under section 330, *see* UST Standing Br. ¶ 50, which is not unexpected given the unprecedented nature of these cases, *see* Report and Recommendation, D.iii.2.c (stating that "[t]he factual underpinnings of the claims being settled—the Jones-Freeman Relationship that potentially affected 33 complex bankruptcy cases over multiple years—are unprecedented, and there is no binding opinion on all fours with the instant facts."), the U.S. Trustee fails to acknowledge that—***as movant***—he bears the burden of establishing his standing. *Carney v. Adams*, 592 U.S. 53, 5960 (2020). It is not Jackson Walker's burden to disprove. The U.S. Trustee's lone cite to a case regarding appellate standing is insufficient to meet his burden. *In re Donovan Corp.*, 215 F.3d 929, 930 (9th Cir. 2000) (addressing only whether the U.S. Trustee "had standing to appeal the bankruptcy court's denial of her motion"). And the Vacatur Motions have little in common with the garden-variety disclosure, conflict, and retention matters that the U.S. Trustee relies on in his Standing Brief.[12] There is simply no statute or case law that authorizes the

[12] *See* UST Standing Br. ¶¶ 24-26, 38-39. Many of those cases do not confront issues related to a U.S. Trustee's request for sanctions in the form of disgorgement or otherwise, *see Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2d Cir. 2010), *U.S. Tr. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 299 (3d Cir. 1994), *U.S. Tr. v. Clark (In re Clark)*, 927 F.2d 793, 796 (4th Cir. 1991), *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir. 1990), *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499-500 (6th Cir. 1990), *United States v. F.D.I.C.*, 881 F.2d 207, 209 (5th Cir. 1989), *Edwards Fam. P'ship v. Johnson (In re Cmty.Home Fin. Servs., Inc.)*, 990 F.3d 422, 426-27 (5th Cir. 2021), *A-1 Trash Pickup, Inc. v. U.S. Tr. (In re A-1 Trash Pickup, Inc.)*, 802 F.2d 774, 775, 777 (4th Cir. 1986); while other cited cases concern the Court's authority, not the U.S. Trustee's authority, to take certain actions, *see Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714 (6th Cir. 2001), *opinion clarified sub nom.* 24 F. App'x 539 (6th Cir. 2002); *United States v. Schilling (In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 422 (6th Cir. 2004).

U.S. Trustee to take *de facto* control over estate claims, remedies, and property under the guise of its watchdog authority or as an enforcement action.

**B. The U.S. Trustee's "government enforcement authority" analogy fails because no specific statute authorizes him to seek disgorgement of funds from Jackson Walker.**

60. The U.S. Trustee argues that he is like an agency enforcing federal law—such as the Equal Employment Opportunity Commission (EEOC) bringing a discrimination action on behalf of employees—and that the government can seek victim-specific relief without being a proxy for injured parties. *See* UST Standing Br. ¶¶ 53-58. Those cases, however, do not support the U.S. Trustee's standing here. In EEOC cases, for example, applicable law grants the EEOC authority and discretion to seek victim-specific relief to promote the public interest. *See U.S. v. Miss. Dep't of Pub. Safety*, 321 F.3d 495, 499 (5th Cir. 2003). Nothing in the Bankruptcy Code (including section 307) or any other statute grants the U.S. Trustee any authority or discretion to assert claims and rights that belong to bankruptcy estates or stakeholders. The U.S. Trustee cannot point to any provision in the Bankruptcy Code or any other statute that says: "The U.S. Trustee may seek to disgorge a debtor's professionals' fees paid from the estate, for the benefit of the estate." Section 307 says the U.S. Trustee "may raise and may appear and be heard on any issue." 11 U.S.C. 307. It does not say that the U.S. Trustee may pursue affirmative recovery (turnover,

---

While some cases do involve a U.S. Trustee's request for sanctions or disgorgement, they are simply inapt. None bear even a passing resemblance to the disgorgement relief requested in the Vacatur Motion, *see Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003-04 (5th Cir. 1995), *Lloyd Ward & Assocs. v. U.S. Tr. (In re Network Cancer Care, L.P.)*, 197 F. App'x 284, 284 (5th Cir. 2006); *W.F. Dev. Corp. v. Off. of U.S. Tr. (In re W.F. Dev. Corp.)*, 905 F.2d 883 (5th Cir. 1990); *In re 38-36 Greenville Ave LLC*, No. 21-2164, 2022 WL 1153123 (3d Cir. Apr. 19, 2022), *cert. denied*, 143 S. Ct. 118 (2022); *Kohou v. U.S. Tr.*, 610 F. App'x 244 (4th Cir. 2015); *Bisges v. Gargula (In re Clink)*, 770 F.3d 719, 721 (8th Cir. 2014); *Lawrence v. U.S. Tr. (In re Windman)*, 442 F. App'x 359 (9th Cir. 2011); *Orlyn v. U.S. Tr. (In re Takeuchi)*, 295 F. App'x 202 (9th Cir. 2008); *United States v. Schilling (In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 422 (6th Cir. 2004); *Miller v. U.S. Tr. (In re Indep. Eng'g Co.)*, 197 F.3d 13 (1st Cir. 1999); *Law Offs. of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040 (9th Cir. 1997); *Jensen v. U.S. Tr. (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844 (B.A.P. 10th Cir. 1997); *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1312 (6th Cir. 1995).

disgorgement, return of fees, whatever it may be) on behalf of debtors or estates. Those are fundamentally different things. It is one thing for the U.S. Trustee to, pursuant to section 307, "bring up for discussion or consideration" or otherwise have "the chance to appear in court . . . and present evidence and argument" on issues relating to professional compensation and retention. *See* UST Standing Br. ¶ 29. It is another thing for the U.S. Trustee to assert an affirmative claim for relief seeking to claw back money paid by bankruptcy estates. No case the U.S. Trustee relies upon stands for that proposition.

61. Moreover, the allegations in the Vacatur Motions largely sound in breach of fiduciary duty by Jackson Walker—a class of claims the U.S. Trustee has no standing to pursue. *See* Vacatur Presiding Judge Mot. ¶¶ 83, 97-108; Vacatur Mediated Judge Mot. ¶¶ 9, 59, 135-140. The government enforcement analogy, far from supporting the U.S. Trustee, actually underscores the deficiency in his position: he lacks the explicit statutory authorization that agencies like the EEOC rely on when pursuing victim-specific relief.

**III. The Court's inherent authority does not rescue the U.S. Trustee's standing problem.**

62. The U.S. Trustee argues that even if he lacks standing, this Court can simply act on its own, *sua sponte*, "to reduce fees and order disgorgement." UST Standing Br. ¶¶ 75-82. This argument conflates two distinct concepts. Of course the underlying bankruptcy court had an independent obligation to review professional fees and to raise concerns about compensation on its own initiative, when Jackson Walker filed its applications for compensation. But, other than in the cases of *GWG* and *Honx*, the fee applications have now been approved under final fee orders. *See* Case No. 18-30167, Dkt. No. 122; Case No. 18-35672, Dkt. No. 2249; Case No. 19-32112, Dkt. No. 251; Case No. 19-34508, Dkt. No. 1502; Case No. 20-30336, Dkt. No. 1021; Case No. 20-31884, Dkt. No. 213; Case No. 20-32021, Dkt. No. 840; Case No. 20-32519, Dkt. No. 2147; Case No. 20-32564, Dkt. No. 983; Case No. 20-20182, Dkt. No. 2874; Case No. 20-32679, Dkt.

No. 283; Case No. 20-33233, Dkt. No. 3509; Case No. 20-33295, Dkt. No. 1304; Case No. 20-50082, Dkt. No. 172; Case No. 20-33801, Dkt. No. 442; Case No. 20-33900, Dkt. No. 1404; Case No. 20-34500, Dkt. No. 252; Case No. 20-34758, Dkt. No. 63; Case No. 20-35561, Dkt. No. 212; Case No. 21-31861, Dkt. No. 1639; Case No. 21-90054, Dkt. No. 1248; Case No. 22-90001, Dkt. 121; Case No. 23-90054, Dkt. 981; Case No. 20-35740, Dkt. 690; Case No. 21-30427, Dkt. 1340; Case No. 21-30936, Dkt. 241; Case No. 22-90018, Dkt. 899; Case No. 22-50009, Dkt. 427; Case No. 22-90126, Dkt. 298; Case No. 22-90129, Dkt. 40; Case No. 21-90002, Dkt. 1511. Except in *GWG* and *Honx*, this Court is not tasked with ordinary fee application review but with considering whether there are extraordinary circumstances such that the final fee orders were manifestly unjust and should be vacated. *See* Fed. R. Civ. P. 60(b)(6). The Court's role here, then, is not a *sua sponte* review tethered to the fee application process, which is a prospective review of fees that have not yet been finally approved, but a weighing of factors including whether there will be any injustice to parties, undermining of the public's confidence in the judicial process, or disruption to finality of judgments. *See Seven Elves, Inc. v. Eskenazi,* 635 F. 2d 396, 402 (5th Cir. 1981) (setting the factors to consider with respect to Rule 60(b)); *see also Air Line Pilots Assoc., Int'l v. Cont'l Airlines, Inc. (In re Cont'l Airlines Corp.),* 901 F.2d 1259, 1263 (5th Cir. 1990) (applying the "harmless error" test through consideration of the following factors (a) the risk of injustice to the parties in this particular case, (b) the risk that the denial of relief will produce injustice in other cases, and (c) the risk of undermining the public's confidence in the judicial process); *see also Patterson v. Mobil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003) ("Although we conclude that Judge Cobb should have stood recused under § 455(a), *we do not automatically* vacate the rulings issued after he should have recused himself") (emphasis added).

63. More importantly, the Court's inherent authority is irrelevant to the U.S. Trustee's standing. If the U.S. Trustee cannot establish his own standing to seek the monetary relief requested in his Vacatur Motions, the fact that the Court could raise similar concerns on its own does not validate the U.S. Trustee's motions or legal position. The standing defect belongs to the U.S. Trustee, not to the Court. The U.S. Trustee must establish that he has the right to be here seeking this relief—the Court's independent authority does not provide that. *See In re SunEdison, Inc.*, No. 16-10992 (SMB), 2019 WL 2572250, at *8 (Bankr. S.D.N.Y. June 21, 2019) ("Mar-Bow's standing argument confuses the Court's inherent authority—what the Court can do—with its own standing—what Mar-Bow can do. The Court has the inherent authority to remedy a fraud on the Court, and even one who lacks standing to prosecute may bring it to the Court's attention and *suggest* that it vacate a prior judgment based on fraud on the Court. But this does not mean that any creditor or every creditor has the right to litigate the same claim of fraud on the court even though it has not suffered a particularized injury.") (emphasis in original) (internal citations omitted).

**CONCLUSION**

64. The U.S. Trustee is asking this Court to order Jackson Walker to return millions of dollars of fees to the bankruptcy estates—fees paid years ago and, in most cases, in the face of confirmed Plans that expressly released Jackson Walker from the very claims that could give rise to the relief requested by the U.S. Trustee. The U.S. Trustee is not asking that Jackson Walker simply pay a fine to the government for its alleged wrongdoing. It is seeking the exact same dollars paid from the estates to be repaid back from Jackson Walker. That request cannot be buried under the name of "sanctions" but must be recognized for what it is: an estate claim for return of professional fees paid.

65. The U.S. Trustee's disgorgement request is, in substance, a claim to recover estate property for the estate based on injury to the estate—an estate cause of action that only the Estate Entities may assert, pursue, settle, or release. Because the Bankruptcy Code, and the relevant Plans and Confirmation Orders, vest that control in the Estate Entities, section 307 participatory rights do not permit the U.S. Trustee to usurp estate ownership and autonomy over those claims. And in any event, the estate claims the U.S. Trustee seeks to assert were released and Jackson Walker was exculpated under most of the confirmed Plans.

66. The Court should deny the U.S. Trustee's request for disgorgement for lack of standing, and should decline to allow relabeling to circumvent that threshold deficiency.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 18, 2026

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Federal I.D. No. 37238
Julie Harrison (SBT 24092434)
Federal I.D. No. 3017799
Maria Mokrzycka (SBT 24119994)
Federal I.D. No. 3610759
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com
maria.mokrzycka@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

**RUSTY HARDIN & ASSOCIATES, LLP**

Russell Hardin, Jr. (SBT 08972800)
*Attorney-in-Charge*
Federal I.D. No. 19424
Jennifer E. Brevorka (SBT 24082727)
Federal I.D. No. 1725400
Emily Smith (SBT 24083876)
Federal I.D. No. 1890677
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
rhardin@rustyhardin.com
jbrevorka@rustyhardin.com
esmith@rustyhardin.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2026, a true and correct copy of the foregoing was filed via the CM/ECF system which served the document on all counsel of record.

*/s/ Jason L. Boland*
Jason L. Boland