**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **Professional Fee Matters Concerning** | § | **Case No. 4:23-cv-04787-AM** |
| **The Jackson Walker Law Firm** | § | |

**UNITED STATES TRUSTEE'S PRE-TRIAL BRIEF ON STANDING**

(Relates to ECF Nos. 303, 312, 318)

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), files this *Pre-Trial Brief on Standing* pursuant to the Orders entered at ECF Nos. 303 and 318, and in support states:

## INTRODUCTION

1. For almost three years, the U.S. Trustee has sought relief concerning Jackson Walker in 33 cases—including to vacate the orders approving its employment applications and its fee applications under Rule 60(b)(6) and to impose appropriate sanctions—for its years-long failures to disclose its conflict arising from its bankruptcy partner's relationship with the bankruptcy judge that presided over or mediated those cases.

2. Had the relationship been disclosed prior to the entry of the orders approving Jackson Walker's retention in these cases and the fees that were paid from these estates, the U.S. Trustee would have objected under 11 U.S.C. §§ 307, 327, 328, 330, and 331, and 28 U.S.C. § 586—as U.S. Trustees have done in thousands of cases over the past 40 years, including in this Court. And if the Court were to have determined that Jackson Walker was disqualified from retention, then the firm would never have been awarded nor paid any fees.

3. The result should be no different now. The Court, the U.S. Trustee, and the parties were unaware that Jackson Walker failed to disclose the relationship. The facts came to light

publicly only when reported by Business Insider on October 6, 2023, and confirmed by former Judge Jones the next day to the Wall Street Journal. And that was only after the Court had entered the retention and fee orders in most of the cases.[1]

4. While conceding the U.S. Trustee's standing to seek vacatur of retention and fee orders and sanctions and to object to fee applications, Jackson Walker nevertheless challenged the U.S. Trustee's standing to seek the *remedy* of disgorgement.[2] And after granting Jackson Walker's motion to withdraw its limited standing objection with prejudice, the Court stated that "[b]ecause standing implicates this Court's subject matter jurisdiction under Article III," the previously scheduled hearing set for September 9 on the U.S. Trustee's standing will proceed and the U.S. Trustee's briefing deadline stands to address the Court's jurisdiction. *Order Resolving ECF No. 313*, ECF No. 318 at 4 (Aug. 28, 2026).

5. As this Court has already held, it has subject-matter jurisdiction in this proceeding under 28 U.S.C. § 1334(b) because it concerns Jackson Walker's employment and fees "arising in or related to" the affected bankruptcy cases. *Id.* at 3. It is therefore Jackson Walker that has invoked the Court's jurisdiction under 11 U.S.C. § 327, 328, 330, and 331. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And in opposing the relief that Jackson Walker was granted, the U.S. Trustee does not need to separately establish Article III standing. *Bond v. United States*, 564 U.S. 211, 217 (2011).

---

[1] In two of these cases, the U.S. Trustee has objected to Jackson Walker's final fee applications. As explained below, plan confirmation is irrelevant to whether the Court can unwind orders improvidently entered retaining estate professionals during the case and awarding pre-confirmation fees under 11 U.S.C. § 327 and § 330. Nor are professionals protected under a confirmed plan's exculpation provisions for their willful misconduct or gross negligence.

[2] Jackson Walker conceded that the U.S. Trustee has standing to seek all the relief he sought—vacatur of retention and fee orders, objection to fee applications after vacatur, and sanctions. *See* Jackson Walker's Brief in Opposition, No. 4:23-cv-0478, ECF No. 312 (Aug. 18, 2026).

6. Moreover, as explained in his prior briefings identified here, ECF Nos. 291-1 and 292,[3] the U.S. Trustee has both constitutional and statutory standing to object to employment and fee applications.[4]

7. First, the U.S. Trustee—as an official of the Department of Justice—has constitutional standing to "pursue the public's interest" to ensure compliance with the Bankruptcy Code and Rules, regardless of lacking a pecuniary interest and notwithstanding that fees that are deemed to have been paid improperly might be returned to the successors of the estates that paid those fees.

8. Second, seeking to vacate orders approving employment and compensation applications because of the professional's misconduct in the application process itself is a natural outgrowth of—and inherent in the statutory scheme governing—the U.S. Trustee's undisputed authority to object to employment and compensation under 11 U.S.C. § 307 and 28 U.S.C. § 586.[5] This is particularly true when those orders were based on a false and incomplete disclosure without which an uncompromised court would never have approved them. Any contrary holding would not only conflict with Supreme Court precedent and a uniform line of cases from courts of appeals, but it would fundamentally undermine the U.S. Trustee's ability to perform his watchdog role in

[3] The U.S. Trustee adopts and incorporates herein by reference the arguments set forth in all prior briefing that he has filed in these matters, as identified in ECF Nos. 291-1 and 292.

[4] The Court's Order provides that the U.S. Trustee "asserts that he has constitutional, prudential and statutory standing." ECF No. 318 at 1. As explained herein, because Jackson Walker withdrew with prejudice its standing arguments, the Court's inquiry is limited to whether it has subject-matter jurisdiction, which concerns only the U.S. Trustee's constitutional standing. And prudential standing is not applicable here.

[5] The Court also cites to 11 U.S.C. § 1109, which is limited to chapter 11 cases and confers standing on other parties in interest.

the Southern District of Texas on matters that go to the core of Congress's stated purpose in establishing the U.S. Trustee Program.

9. Moreover, the Court can and must act to avoid the untenable result that Jackson Walker retains the fees it improperly sought and obtained. As also explained in the U.S. Trustee's supplemental briefings identified at ECF Nos. 291-1 and 292, this Court has both the authority and the independent duty to address professional misconduct in the employment and compensation process, including to vacate orders, deny or reduce fees, and order disgorgement to preserve the integrity of the bankruptcy process.[6]

**BACKGROUND**

10. Jackson Walker first contested the U.S. Trustee's standing on May 22, 2024, in its responses to the U.S. Trustee's Vacatur Motions.[7] *E.g., In re Neiman Marcus Group Ltd. LLC*, No. 20-32519, ECF No. 3234 at 34-39 (Bankr. S.D. Tex. filed May 22, 2024). The U.S. Trustee filed replies in each of the cases, *e.g., id.* at ECF No. 3237 (filed July 1, 2024), and Jackson Walker thereafter filed sur-replies, *e.g., id.* at ECF No. 3239 (filed Aug. 12, 2024).

11. After a September 16, 2024, hearing before Judge Isgur and further to his order directing briefing "on whether the United States Trustee had standing to seek a return of the fees in light of the plan provisions vesting all recoveries in the Reorganized Debtors," *In re Altera Infrastructure Project Services LLC,* No. 22-90129, ECF No. 134 (Bankr. S.D. Tex. Sep. 20, 2024), the U.S. Trustee and Jackson Walker filed briefs in two cases. *In re La Forta – Gestao e*

[6] In his referral of the firm for disciplinary proceedings, Judge Isgur cited the Court's inherent authority to make the disciplinary referral and to impose sanctions for Jackson Walker's misconduct. *In re Jackson Walker LLP*, 4:24-mc-01523, ECF No. 1 at 1 (S.D. Tex. Sep. 20, 2024).

[7] The Vacatur Motions are defined in the Court's Report and Recommendation to the United States District Court, ECF No. 286 at 24 & nn.31, 32.

*Investmentos*, No. 22-90126, ECF Nos. 351 and 355 (Bankr. S.D. Tex. filed Oct. 7 and Oct. 31, 2024), and *In re Altera Infrastructure Project Services LLC*, No. 22-90129, ECF Nos. 142 and 150 (Bankr. S.D. Tex. filed Oct. 7 and Oct. 31, 2024).

12. On November 10, 2025, the Honorable Alia Moses, Chief United States District Judge for the Western District of Texas, issued her order of referral of the instant proceeding to this Court for reports and recommendations. ECF No. 109.

13. Following a status hearing on December 9, 2025, this Court issued a minute entry on the docket memorializing a stipulation between the U.S. Trustee and Jackson Walker that the U.S. Trustee has constitutional and prudential standing to prosecute the Vacatur Motions, but the Court reserved the standing issue with respect to disgorgement until after trial and any order of vacatur. Misc. No. 23-04787, Minute Entry (S.D. Tex. Dec. 9, 2025).

14. In response to this Court's order of July 14, 2026, ECF No. 287, the U.S. Trustee and Jackson Walker filed summaries of prior filings on standing and supplements on July 21, 2026, at ECF Nos. 292 and 291 respectively.

15. Following a scheduling conference on August 4, 2026, this Court set an evidentiary hearing on Jackson Walker's arguments challenging the U.S. Trustee's standing to bring the Vacatur Motions and objections to final fee applications for September 9, 2026. ECF No. 303.

16. On August 18, 2026, Jackson Walker filed *Jackson Walker LLP's Brief in Opposition to the U.S. Trustee's Standing to Seek Disgorgement of Funds from Jackson Walker LLP* ("**JW Brief**") arguing that a claim for disgorgement of estate-paid fees is an estate cause of action that the U.S. Trustee lacks standing to assert. ECF No. 312.

17. A week later on August 25, 2026, Jackson Walker filed an Unopposed Expedited Motion to Withdraw its Standing Arguments, ECF No. 313, which the Court granted following an

expedited hearing, holding that Jackson Walker's standing arguments were withdrawn with prejudice. ECF No. 318.

18. The Court ordered that the withdrawal of Jackson Walker's standing arguments did not relieve the Court of its independent obligation to confirm standing and that the dates established in the Trial Scheduling Order remained in place. *Id.* Accordingly, the U.S. Trustee submits this brief to assist the Bankruptcy Court with its report and recommendation to the District Court.

**ARGUMENT**

19. The U.S. Trustee "may raise and may appear and be heard on any issue in any case or proceeding" under the Bankruptcy Code, except he may not propose a chapter 11 plan. 11 U.S.C. § 307. He is "charged with promoting the integrity of the bankruptcy system for all stakeholders." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 212-13 (2024).

20. Because Jackson Walker withdrew with prejudice its standing arguments, the only question for this Court is whether it has subject-matter jurisdiction, which implicates only constitutional standing. This Court has already held it has subject-matter jurisdiction over both these bankruptcy cases and these professional fee matters. And although challenges to statutory or prudential standing may be waived—and were waived by Jackson Walker with prejudice—neither would be an impediment here.

21. Aside from the U.S. Trustee's standing to pursue this litigation, this Court has the independent authority to *sua sponte* review Jackson Walker's misconduct in the employment and compensation process and the duty to address it regardless of whether the U.S. Trustee or another litigant moves for relief.

## I. This Court Has Subject-Matter Jurisdiction.

### A. This Court Has Subject-Matter Jurisdiction Over Jackson Walker's Retention and Fee Requests, and the U.S. Trustee Need Not Separately Establish Article III Standing to Oppose the Relief Jackson Walker Sought.

22. It is well settled that "[t]he party *invoking* [the] federal jurisdiction [of an Article III court] bears the burden of establishing" its own Article III standing to bring that suit. *Lujan,* 504 U.S. at 561 (emphasis added); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). It is equally settled that "Article III does not restrict [an] opposing party's ability to object to relief." *Bond*, 564 U.S. at 217; *see Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2195 (2020). The Supreme Court has therefore described as "puzzling" the suggestion that a litigant opposing a request for relief carries any burden in that regard. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013).

23. In this case, it is the debtors that invoked this Court's subject-matter jurisdiction by filing their chapter 11 cases and seeking Jackson Walker's employment under 11 U.S.C. § 327, and Jackson Walker who invoked its jurisdiction to seek fees under 11 U.S.C. § 330. Litigants, like the U.S. Trustee, thus carry no burden to establish jurisdiction to oppose that relief or seek its unwinding if that relief was wrongly ordered.

24. If this Court lacked jurisdiction over Jackson Walker's employment and fees, that jurisdictional defect would require vacating the orders that the U.S. Trustee seeks to vacate. But, as this Court held, its "subject matter jurisdiction over the underlying bankruptcy matters is founded upon 28 U.S.C. § 1334(b), which confers upon the district courts original jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." ECF No. 318. This Court further held that "[t]he instant proceeding is a civil action within the Southern District of Texas concerning professional fee matters (retention and fee orders), arising in or related to a case under title 11 of the United States Code." *Id.* Because this Court has already held

that it has jurisdiction over these bankruptcy cases, and specifically over these professional fee matters, as explained in the Supreme Court decisions discussed above, the U.S. Trustee does not need to establish Article III standing to oppose Jackson Walker's retention or fees or to seek to unwind orders approving them. As the Court has already found that it has subject-matter jurisdiction, this Court has no need to inquire further into the U.S. Trustee's standing in this contested matter.[8]

25. Indeed, "[i]t would be quite something if a party could invoke federal jurisdiction under false pretenses and then invoke the limitations of federal jurisdiction to keep tens of thousands of dollars in ill-gotten gains." *Mitchell Law Firm L.P. v. Bessie Jeanne Worthy Revocable Tr.*, 8 F.4th 417, 423 (5th Cir. 2021). "But that has never been the law. It is axiomatic that 'power is inherent in every court . . . to undo what it had no authority to do originally.' To that end, a court may 'direct restitution, so far as practicable, of all property and rights which have been lost by [an] erroneous judgment.'" *Id.* (quoting *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219, 221 (1891)).

**B. Even if the U.S. Trustee Were the One Invoking the Court's Jurisdiction, He Has Constitutional Standing to Seek Relief Here.**

26. Congress enacted the Bankruptcy Code through its constitutional power to establish a "uniform law on the subject of Bankruptcies." U.S. Const. art. I § 8, cl. 4. Relief accorded under title 11 is "a legislatively created benefit," *United States v. Kras*, 409 U.S. 434, 446–47 (1973), allowed by Congress under that constitutional power. Congress then created the office of U.S.

---

[8] If a litigant in a bankruptcy case initiates a new "'adversary proceeding[],' essentially [a] full civil lawsuit[] carried out under the umbrella of the bankruptcy case," *Bullard* v. *Blue Hills Bank*, 575 U.S. 496, 505 (2015), that litigant, like a typical plaintiff filing suit in an Article III court, may need to establish Article III jurisdiction over that matter. *Cf.* 28 U.S.C. 1334(a) and (b) (granting district courts exclusive jurisdiction over bankruptcy "cases" but non-exclusive jurisdiction over bankruptcy-related civil "proceedings").

Trustees and gave them "important oversight and watchdog responsibilities to ensure honesty and fairness in the administration of bankruptcy cases and to prevent and ferret out fraud." H.R. Rep. No. 99-764, at 18 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5227, 5231.

27. Unlike with private parties, there is no Article III obstacle to congressional authorization for a federal officer or agency to "pursue the public's interest." *Director v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 132-133 (1995). The "generalized grievance prohibition"—which requires private parties to establish a particularized injury likely to be redressed by a favorable decision—does not apply to "the Executive Branch and its duly appointed officers." *CFPB v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016). Rather, as the Supreme Court long ago explained, the federal government's "obligations . . . to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often *of itself sufficient to give it a standing in court*." *In re Debs*, 158 U.S. 564, 584 (1895) (emphasis added), *abrogated on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968). Further, "[n]o one doubts" that a sovereign "has a cognizable interest in the continued enforceability of its laws that is harmed by a judicial decision" precluding their enforcement. *Hollingsworth* v. *Perry*, 570 U.S. 693, 709–10 (2013) (citation and internal quotation marks omitted); *see, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011) (recognizing the federal government's "sovereign interest in the execution of federal law"); *United States v. FDIC*, 881 F.2d 207, 209 (5th Cir. 1989) (holding the Office of the Comptroller of the Currency's "obligation to ensure the safety and soundness of the national banking system for the benefit of depositors and the general public . . . provides sufficient standing for the United States").

28. The U.S. Trustee, as an official of the Department of Justice, does not need a pecuniary interest to ensure compliance with the Bankruptcy Code and Rules. Multiple courts of

appeals have so held. *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 162 (2d Cir. 2010); *Stanley v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Donovan Corp.)*, 215 F.3d 929, 930 (9th Cir. 2000); *U.S. Tr. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 299 (3d Cir. 1994); *U.S. Tr. v. Clark (In re Clark)*, 927 F.2d 793, 796 (4th Cir. 1991); *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 824 (1st Cir. 1990); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499–500 (6th Cir. 1990). *Cf. Edwards Family P'ship v. Johnson (In re Cmty. Home Fin. Servs.),* 990 F.3d 422, 426-27 (5th Cir. 2021).

29. In *Community Home Financial Services,* the Court of Appeals for the Fifth Circuit upheld the standing of a case trustee to appeal a fee order despite a lack of pecuniary interest. 990 F.3d at 426-27. In so doing, it cited with approval cases from the First, Fourth, and Sixth Circuits that rejected a pecuniary-interest test for U.S. Trustees' standing. *Id.* The Fifth Circuit explained that trustee standing "does not arise from the trustee's pecuniary interest, but rather from the trustee's 'official duty to enforce the bankruptcy law in the public interest.'" *Id.* at 427 (quoting *In re Clark*, 927 F.2d at 796).

30. The U.S. District Court for the Southern District of Texas has similarly affirmed the U.S. Trustee's standing to act "even without a pecuniary interest." *Epstein v. Container Store Group, Inc. (In re Container Store Group, Inc.)*, 676 B.R. 356, 369 (S.D. Tex. 2026) (rejecting a challenge to the U.S. Trustee's standing), *appeal pending*, No. 26-20166 (5th Cir. Apr. 24, 2026). It expressly recognized the U.S. Trustee's "official duty to enforce the bankruptcy law in the public interest" as the basis for constitutional Article III standing. *Id.* at 370.

31. The fact that a return of fees may benefit private parties does not impair the government's public-interest standing, as Jackson Walker conceded. Government agencies routinely seek disgorgement or restitution as a means of enforcing, for example, securities laws,

consumer financial laws, and the Commodities Exchange Act. *See* 15 U.S.C.A. § 78u; 12 U.S.C. § 5565(a)(2); 7 U.S.C. § 13a-1(d)(3); *see also CFPB v. Gordon*, 819 F.3d 1179, 1188 (9th Cir. 2016) (holding CFPB had standing to seek restitution and disgorgement from attorney), *cert. denied*, 582 U.S. 941 (2017); *In re Donovan Corp.*, 215 F.3d 929, 930 (9th Cir. 2000) (holding U.S. Trustee had standing to appeal order denying motion for disgorgement of professional fee).[9] If this Court adopted Jackson Walker's position that disgorgement is exclusively a private right of action, it would have widespread ramifications beyond the U.S. Trustee's ability to police misconduct by attorneys paid from bankruptcy estates to impair the government's broader ability to seek disgorgement in enforcement actions or restitution for victims of crime.

32. Here, the U.S. Trustee seeks relief for Jackson Walker's failure to comply with its obligations to disclose connections and conflicts of interest. Such disclosure obligations are "central to the integrity of the bankruptcy process." *Dordevic v. Layng (In re Dordevic)*, 62 F.4th 340, 342–43 (7th Cir. 2023). As the bankruptcy watchdog, it is well within the U.S. Trustee's constitutional standing to seek vacatur of the employment and fee applications tainted by Jackson Walker's misconduct and to seek related sanctions.

**C. The U.S. Trustee Has Standing for Every Form of Relief He Seeks.**

33. The U.S. Trustee seeks vacatur of Jackson Walker's retention and fee orders and sanctions for its misconduct. Each request is based on the public interest in the integrity of the bankruptcy system and the harm to the public interest caused by Jackson Walker's non-disclosure

[9] *Cf. Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Comp. Programs*, 519 U.S. 248, 273-74 (1997) (holding there was no Article III impediment to agency participating in appeal in support of individual seeking death benefits).

of its partner's ongoing romantic relationship with Judge Jones.[10] Thus, for the reasons discussed above, the U.S. Trustee has Article III standing for each request.

34. For private parties, Article III standing also requires that it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation modified). "Article III's redressability requirement serves to align injuries and remedies." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 120 (2025). "The primary goals of that requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions." *Id.* Even if these requirements applied here, they would be no barrier to standing. Jackson Walker harmed the public interest by being employed and paid while violating its disclosure requirements and ethical obligations. The harm that Jackson Walker's misconduct caused to the integrity of the bankruptcy system is redressable by this Court vacating the wrongfully obtained retention and fee orders, requiring Jackson Walker to return wrongfully obtained fees and expenses, and imposing other sanctions available to this Court in its discretion.

35. First, the Court may vacate the orders approving Jackson Walker's employment and compensation applications. As Jackson Walker conceded, the U.S. Trustee has standing both to seek vacatur of retention and fee orders and to object to fee applications. *JW Brief* at 3, 29 & 34. For the reasons explained in the U.S. Trustee's supplemental brief in *In re Altera Infrastructure Project Services LLC*, Case No. 22-90129 ("**Altera Supp. Br.**"), ECF No. 142 at 23-26, upon vacatur of a retention order Jackson Walker has no entitlement to fees, and if retention is permitted but the fee order vacated, Jackson Walker would have to return any fees and expenses

[10] Judge Moses likewise recognized the public interest, stating that she was charged "to sit in designation and restore the public's confidence in judicial integrity and impartiality." *Bouchard v. Jones*, 4:24-cv-0693-AM, ECF No. 105, p.2 (Aug. 17, 2026) ("*Bouchard Order*").

not approved. Jackson Walker provided no authority that would allow it to keep fees and expenses the court did not award; there is none. *See In re 5900 Associates, Inc.*, 468 F.3d 326, 330–31 (6th Cir. 2006) ("The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case, and 11 U.S.C. § 330 is the sole mechanism by which fees may be enforced."). "Court approval under § 330(a) is what creates the liability [to pay attorneys' fees], not the performance of the services." *Id*. (quotation omitted).

36. Second, as Jackson Walker conceded, *JW Brief* at 29 & 34, the Court may sanction Jackson Walker for its misconduct, and this Court has discretion to fashion a remedy. Sanctions may include an order to return all or a portion of the fees and expenses awarded, as well as other relief that the Court deems just and appropriate, including admonishment, suspension, fine, and other means to discipline the attorneys who engaged in the misconduct. *See* ECF No. 93 at 4-5. For the reasons stated in the U.S. Trustee's prior briefs, the sanctions he seeks include the full return of fees. Jackson Walker's position was that this is not the "least restrictive sanction" the Court can order for its misconduct. *JW Brief* at 9-10. That does not impact the U.S. Trustee's standing to seek such remedy. The parties can litigate whether a sanction is warranted and, if so, what an appropriate sanction would be. As Jackson Walker conceded, it is within the Court's discretion to make that determination.

37. "When establishing redressability, a plaintiff need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (citation modified). The Court need not determine if all requested remedies are available. Redressability for purposes of standing requires only that this Court can issue an order that will lessen the injury

that Jackson Walker caused. The U.S. Trustee has shown that the Court can do so here. The Court should determine the appropriate relief it will grant only after trial.

## II. Neither Statutory Nor Prudential Standing Is an Impediment to this Court's Jurisdiction.

### A. Statutory and Prudential Standing Are Not Jurisdictional and Are No Longer at Issue Given Jackson Walker's Waiver.

38. Only constitutional standing is relevant to this Court's jurisdiction. Thus, albeit meritless for the reasons discussed in the U.S. Trustee's prior briefs and below, *see*, *e.g.*, *Altera Supp. Br.* at 9-14 & *infra*, section II.B, any challenge to the U.S. Trustee's statutory standing to seek vacatur, disgorgement, sanctions, or any other relief for Jackson Walker's disclosure violations has been waived by its withdrawal of its objections. *See Chavez v. Plan Benefit Servs.*, 108 F.4th 297, 314 n.45 (5th Cir. 2024) (holding appellant forfeited challenge to lower court's holding that plaintiff had statutory standing); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 & n.3 (1st Cir. 2014) (holding that, unlike constitutional standing, arguments on statutory standing are waivable, and "from a jurisdictional standpoint" the court need only assess constitutional standing); *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016) (holding that statutory standing "does not implicate the district court's subject-matter jurisdiction").

39. Likewise, although also meritless for the reasons discussed in the U.S. Trustee's prior briefs and below, *see*, *e.g.*, *In re Altera Infrastructure Project Services LLC*, Case No. 22-90129, ECF No. 115 ("**Altera Reply Br.**") at 53-58 & *infra*, section II.C, Jackson Walker has waived the argument that the U.S. Trustee lacks standing because disgorgement is an estate claim and the U.S. Trustee lacks third-party standing to bring it. *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (distinguishing "the constitutional minimum of standing, which flows from Article III's case-or-controversy requirement" from the "prudential limitations on its exercise,"

which includes "standing to raise the rights of others"); *Craig v. Boren*, 429 U.S. 190, 193 (1976) ("[O]ur decisions have settled that limitations on a litigant's assertion of *jus tertii* are not constitutionally mandated."); *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319-20 (5th Cir. 1999) (holding defendant waived prudential standing argument that plaintiff was asserting damages claim that belonged to another).[11] Moreover, the U.S. Trustee's statutory standing trumps any such prudential standing considerations. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("Just as a court cannot apply its independent policy judgment to recognize a cause of action Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates.").

40. This Court may not consider non-jurisdictional challenges to the U.S. Trustee's authority to seek relief that Jackson Walker has waived. Party-presentation principles preclude courts from ruling on issues not argued by the parties. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "That principle—the rule that points not argued will not be considered—distinguishes our adversarial system of justice from an inquisitorial one." *Margolin v. Nat'l Ass'n of Immig. Judges,* 608 U.S. ----, 2026 WL 1463466, at *2 (2026) (internal quotation marks omitted). As the Supreme Court has emphasized, "in both civil and criminal cases, . . . [courts] rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties

[11] To the extent this Court is concerned about the prudential standing requirement applied in the "person aggrieved" test, *see Matter of Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 366 (5th Cir. 2023), that requirement does not apply here for two reasons. First, the "person aggrieved" test is applied in bankruptcy appeals, *id.*, and not the proceedings before this Court. Second, and more importantly, the "person aggrieved" test applies to a private party's standing, and not to the U.S. Trustee's standing. *In re Container Store Grp., Inc.*, 676 B.R. at 370. "[M]ultiple circuits, including the Fifth Circuit, have rejected the pecuniary-interest test as the foundation for Trustee standing." *Id.* (citing *In re Community Home Fin. Servs., Inc.*, 990 F.3d at 426–27).

present." *Sineneng-Smith*, 590 U.S. at 375. "In short: Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *Id*. at 376 (citation modified). Consequently, this Court should not *sua sponte* consider the waived arguments regarding statutory or prudential standing, which are unnecessary to establish its subject-matter jurisdiction.

41. To be sure, this Court has an independent obligation to enforce the Bankruptcy Code. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (holding bankruptcy courts have an "obligation" to direct a debtor to conform his plan to the Bankruptcy Code). Similarly, this Court has a duty to review fee applications even absent objection, derived from the Court's "inherent obligation to monitor the debtor's estate and to serve the public interest." *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994). And, as noted in section III, *infra*, this Court has the authority and obligation to review misconduct before it. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944). But that independent obligation warrants this Court's granting of the Vacatur Motions, and not a *sua sponte* inquiry into non-jurisdictional arguments waived by Jackson Walker.

**B. The U.S. Trustee Has Statutory Standing to Seek the Relief Requested.**

42. Even though Jackson Walker has waived its arguments regarding the U.S. Trustee's statutory standing, any requirement for statutory standing is satisfied here. Congress conferred statutory standing, through 11 U.S.C. § 307, upon the U.S. Trustee to act in the public interest to ensure that all parties and professionals comply with the laws and rules governing this federally created bankruptcy system. The plain language of section 307 of title 11 empowers United States Trustees to "raise" "any issue" other than proposing a chapter 11 plan.

43. Although further statutory standing is unnecessary, the U.S. Trustee is also specifically tasked by Congress with reviewing and objecting to professionals' employment and fee applications.

44. The U.S. Trustee has statutory authority to review and comment on, and therefore statutory standing to object to, employment applications under 11 U.S.C. § 327. *See* 28 U.S.C. § 586(a)(3)(I).[12]

45. The U.S. Trustee has statutory authority to review and comment on, and therefore statutory standing to object to, fee applications under 11 U.S.C. § 330. *See* 28 U.S.C. § 586(a)(3)(A).

46. Through these statutory provisions, Congress granted the U.S. Trustee standing to object to Jackson Walker's employment and fee applications. Seeking to vacate orders approving those same employment and compensation applications under Rule 60(b) because of the professional's misconduct in the application process itself is a natural outgrowth of—and inherent in the statutory scheme governing—the U.S. Trustee's undisputed authority to object to employment and compensation lest 11 U.S.C. § 307 and 28 U.S.C. § 586 be rendered "dead letters." *See*, *e.g.*, *Scott v. Lloyd*, 34 U.S. 418, 446 (1835) ("Yet it is apparent that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter.").

47. For the same reasons, the U.S. Trustee has statutory standing to seek sanctions for Jackson Walker's misconduct in failing to comply with its disclosure obligations in its employment and fee applications. Indeed, as an officer of the Court, the U.S. Trustee has a duty to bring

[12] Consequently, both employment and fee applications are required to be served on the U.S. Trustee. Fed. R. Bankr. P. 9034(d), (e).

misconduct to the Court's attention and request that the Court exercise its discretion to impose sanctions. *See In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976) (noting that whenever an officer of the court "discovers a possible ethical violation concerning a matter before the court, he is not only authorized but is in fact obligated to bring the problem to that court's attention").

48. Any suggestion that the United States Trustee lacks statutory authority to seek the affirmative recovery of fees in enforcing the Bankruptcy Code and Bankruptcy Rules, *JW Brief* at 36-37, is contrary to decades of caselaw granting that relief at United States Trustees' requests. *Altera Supp. Br.* at 13-14.

49. Indeed, this Court has granted the U.S. Trustee relief on the same or similar grounds in at least the attached sampling of cases. *See* **U.S. Trustee Ex. A.**

### C. The U.S. Trustee Is Not Asserting an Estate Claim by Seeking a Return of Fees.

50. Jackson Walker alleged that the U.S. Trustee's requested relief is an estate cause of action that he lacks standing to assert. *JW Brief* at 30. It argued disgorgement must be a private right of action because it (1) is premised on injury to the estate and (2) benefits the estate. *JW Brief* at 12. As explained above, *see supra* section II.A., this argument relates to prudential not constitutional standing, and Jackson Walker has withdrawn it with prejudice. But in any event, these contentions are incorrect.

51. Jackson Walker asserted that disgorgement "is premised entirely on alleged harm to the estate" that is a private right of the estate. *JW Brief* at 19. In arguing that its disclosure requirements implicated only its duty to its clients, Jackson Walker ignored its duties under the Bankruptcy Code and Rules and to this Court, which include a duty "to disclose any actual or potential conflicts of interest with the estate." *See ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 123–24 (S.D. Tex. 2002), *aff'd*, 324 F.3d 768 (5th Cir. 2003).

52. Further the U.S. Trustee is not deprived of standing simply because the disgorgement he requested might benefit the estates or their successors. As previously explained, Supreme Court and Fifth Circuit case law recognize federal agencies' authority to seek victim-specific relief. *See Altera Supp. Br.* at 5, 19. Jackson Walker attempted to sidestep Supreme Court and Fifth Circuit caselaw recognizing the Equal Employment Opportunity Commission ("**EEOC**")'s authority to seek victim-specific relief by arguing that federal law grants the agency authority to do so.[13] *JW Brief* at 36. But the statutory authority that Congress provided the EEOC was to "prevent any person from engaging in any unlawful employment practice," as set forth in the federal employment discrimination laws. 42 § 2000e-5. This authorization is entirely consistent with the U.S. Trustee's statutory authority and watchdog role in bankruptcy proceedings.

53. Importantly, Jackson Walker conceded that the U.S. Trustee has standing to pursue the public interest. *JW Brief* at 19, 30. Because the debtor-in-possession or other fiduciary is the client that seeks the professional's retention and fees in the first place, they are unlikely to challenge them as any fees likely will be paid from the creditors' recovery "rather than its own assets." *See Busy Beaver*, 19 F.3d at 842-43. For a variety of reasons, such as "perceived professional courtesy," "fear of retaliation," or simply the associated cost, it is "relatively uncommon" for parties other than the U.S. Trustee to object to fee applications. *Id.* at 842.

54. Moreover, a holding that the U.S. Trustee lacks standing to seek the return of fees would negate the U.S. Trustee's ability to "protect the public interest by aiding bankruptcy judges

---

[13] To the extent Jackson Walker was challenging the U.S. Trustee's constitutional standing to seek disgorgement, its argument about the EEOC's statutory authority misses the mark, as statutory standing is distinct from constitutional standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016).

in monitoring certain aspects of bankruptcy proceedings," including professional retention and compensation. *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003).

55. Indeed, any argument that Jackson Walker's failure to disclose had no impact on the public was soundly rejected by the District Court. *Bouchard Order* at 2. There, the District Court observed that the very conflict of interest at the heart of these matters has "needlessly embroiled [this Court] in a scandal" such that there is now a need to "restore the public's confidence in judicial integrity and impartiality." *Id.* at 1-2. The public interest that the U.S. Trustee seeks to vindicate here is clear, and it is independent and different from the private rights and claims that an estate may pursue against Jackson Walker.

56. For all the reasons set forth here and in prior briefing, the U.S. Trustee is not asserting an estate cause of action that only the estate can bring. *Altera Supp. Br.* at 19-21; *see also Denison v. Marina Mile Shipyard, Inc. (In re New River Dry Dock, Inc.)*, 497 F. App'x 882, 885 (11th Cir. 2012) ("[Appellant] contends that [the creditor] lacked standing to request a disgorgement of fees because [the creditor] had no authority to recover property of the bankruptcy estate and the Plan Administrator did not have authorization to assign this claim to [the creditor]. *This argument is meritless*.") (emphasis added); *United Artists Theatre Co.*, 315 F.3d at 225 (holding U.S. Trustee had standing to challenge debtor's retention agreement with financial advisor). Accordingly, Jackson Walker's prior arguments regarding the transfer of estate claims, including whether such claims were released under the relevant plans, are irrelevant.

57. As to any argument regarding the plans' exculpations, *JW Brief* at 26-27, this is unrelated to the U.S. Trustee's standing and, as explained in prior briefing, lacks merit. *See Altera Reply Br.* at 62-67. Jackson Walker's protestation that the U.S. Trustee needed to plead fraud with particularity in his Vacatur Motions (as opposed to in a complaint) and that the U.S. Trustee had

to assert the carveout in his opening motion *before* Jackson Walker raised the exculpation in its response, had no basis in the Bankruptcy Rules or caselaw. Additionally, even if this were a standing issue and not simply an affirmative defense, the exculpation provisions do not protect Jackson Walker from claims for its willful misconduct and gross negligence in failing to disclose Ms. Freeman's relationship with Judge Jones.

58. Finally, although Jackson Walker acknowledged the multiple cases cited by the U.S. Trustee in which bankruptcy courts granted the U.S. Trustee relief in the form of sanctions or disgorgement, it argued without explanation that the cases are "inapt." *JW Brief* at 36 n. 12. It appears that Jackson Walker distinguished these matters because of the large amount of fees at issue here, *see JW Brief* at 35 (noting claims involve "33 complex bankruptcy cases over multiple years"). But this only highlighted the extensive nature of its misconduct.

59. Against that backdrop, any position that "no parties in interest have a right to be heard on the matter" in these post-confirmation cases, *JW Brief* at 32, underscores the need for the U.S. Trustee to act. Under such a theory, Jackson Walker would keep all of its fees even if the Court were to vacate its retention and fee orders. That is true whether vacatur were sought by the U.S. Trustee or another party in this case. Such an outcome is contrary to the Bankruptcy Code. *See In re 5900 Associates, Inc.*, 468 F.3d at 330–31.

**III. This Court Has an Independent Obligation to Address Jackson Walker's Misconduct.**

60. Even aside from the U.S. Trustee's standing to pursue this litigation, as the U.S. Trustee previously explained, the U.S. Trustee's standing is irrelevant to this Court's independent authority and duty to address professional misconduct in the employment and compensation process. *Altera Supp. Br.*, ECF No. 142 at 30-35. The Court also has the authority to *sua sponte* review misconduct before the Court and the duty to address it regardless of whether a litigant moves for relief. *See Hazel-Atlas Glass Co.,* 322 U.S. at 246 ("Surely it cannot be that preservation

of the integrity of the judicial process must always wait upon the diligence of litigants."); *Universal Oil Products Co. v. Root Refining Co*., 328 U.S. 575, 580–81 (1946) (holding, "if the court finds after a proper hearing that fraud has been practiced upon it, or that the very temple of justice has been defiled, the entire cost of the proceedings could justly be assessed against the guilty parties").[14]

61. This Court thus can, and should, grant Rule 60 relief on its own motion. *See McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).

[*Remainder of page intentionally blank*]

[14] Judge Isgur also relied on the Court's inherent authority in making his disciplinary referral of Jackson Walker to the district court for sanctions: "Sanctions may be imposed under the Court's inherent powers 'only when it finds fraud has been practiced upon it, or that the very temple of justice has been defiled.' *F.D.I.C. v. Maxxam, Inc*., 523 F.3d 566, 590 (5th Cir. 2008). If a law firm itself has engaged in such conduct, ' . . . there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith.' *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995)." *In re Jackson Walker LLP*, 4:24-mc-01523, ECF No. 1 at 1 (S.D. Tex. Sep. 20, 2024).

WHEREFFORE, the U.S. Trustee respectfully requests the Court issue a report and recommendation that the U.S. Trustee has standing for the relief he seeks and grant any other relief the Court deems necessary or appropriate.

Date: September 1, 2026

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE, REGION 7

By: */s/ Laura D. Steele*

Millie Aponte Sall, Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
Laura D. Steele, Assistant U.S. Trustee (Detail)
Wis. Bar No. 1065702/Fed. ID No. 3878215
Vianey Garza, Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
William J. Charboneau, Trial Attorney
VA Bar No. 68025/Fed. ID No. 3885907
515 Rusk Street, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov
laura.steele@usdoj.gov
vianey.garza@usdoj.gov
joel.charboneau@usdoj.gov