**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | Civil Action No. 4:23-cv-04787 |

**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019 BETWEEN JACKSON WALKER, LLP AND DANIEL R. WILLIAMS, PLAN ADMINISTRATOR OF KATERRA, INC.**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

NOW COMES, Daniel R. Williams, in his capacity as Plan Administrator (the "Plan Administrator") for the estates of Katerra, Inc. and its affiliated debtors (collectively, the "Debtors" or "Wind-Down Debtors"), and files this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 Between Jackson Walker, LLP and Daniel R. Williams, Plan Administrator of Katerra, Inc.* (the "Motion"), and in support thereof, respectfully shows the Court as follows:

## I. RELIEF REQUESTED

1. Pursuant to Bankruptcy Rule 9019(a), the Plan Administrator requests that the Court enter an order approving the *Settlement Agreement and Release* (the "Settlement

Agreement") between Jackson Walker, LLP ("JW", and collectively, with the Plan Administrator, the "Parties") and the Plan Administrator that would resolve any and all claims and causes of action of any kind held by the Wind-Down Debtors and their estates, against JW arising out of or related to the engagement of JW in *In re Katerra, Inc., et al.*, Chapter 11 Case No. 21-31861, pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Cases"), and the allegations raised against JW in *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787, now pending in the United States District Court for the Southern District of Texas (the "Misc. Proceeding").[1] A true and correct copy of the Settlement Agreement is attached as **Exhibit "A"** to the proposed order attached to this Motion. In exchange for the mutual releases set forth in the Settlement Agreement, JW shall pay the Plan Administrator $560,000.00 (the "Settlement Amount") to be distributed to the Wind-Down Debtors pursuant to the terms of the confirmed Plan in the Bankruptcy Cases.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. The Plan Administrator confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

[1] On February 29, 2024, and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain cases, (b) initial Rule 60(b)(6) motions in other cases, and (c) objections to JW's then pending final fee applications in certain remaining cases (collectively, the "Relevant Cases"). All such motions are collectively referred to as the ("Vacatur Motions"). The Settlement Agreement does not resolve the U.S. Trustee's claims under the Vacatur Motions or any additional proceeds Katerra may be entitled to receive thereunder.

## III. BACKGROUND

### A. The Debtors' Chapter 11 Cases

4. On June 6, 2021, (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Bankruptcy Cases were pending before the Honorable David R. Jones and was reassigned to the Honorable Christopher M. Lopez.

5. On June 29, 2021, the Debtors filed their *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors-in-Possession* [Bankr. Case Dkt. No. 289]. JW's employment application was approved by former Judge Jones on August 4, 2021 [Dkt. No. 795].

6. On August 13, 2021, the Debtors filed the *Disclosure Statement for the Joint Chapter 11 Plan of Katerra, Inc. and its Debtor Subsidiaries* (the "Disclosure Statement"). *See* Bankr. Case Dkt. No. 852.

7. Additionally, on August 13, 2021, the Debtors filed their *Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, and (IV) Approving the Scheduling of Certain Dates in Connection with Confirmation of the Plan* [Bankr. Case Dkt. No. 853].

8. On August 26, 2021, Debtors filed their *Amended Joint Chapter 11 Plan* [Bankr. Case Dkt. No. 943].

9. On September 1, 2021, Debtors filed their *Disclosure Statement for the Amended Joint Chapter 11 Plan* [Bankr. Case Dkt. No. 979].

10. On October 21, 2021, the Bankruptcy Court entered the *Order (I) Approving the Disclosure Statement and (II) Confirming the Amended Joint Chapter 11 Plan of Katerra, Inc. and its Debtor Subsidiaries* [Bankr. Case Dkt. No. 1365].

11. On October 29, 2021, the effective date of the Plan occurred (the "Effective Date") [Bankr. Case Dkt. No. 1422].

12. On the Effective Date, Daniel R. Williams, in his capacity as Plan Administrator, became the sole representative of the Debtors' estates for the purpose of, *inter alia*, reviewing, settling, and compromising disputes regarding claims filed against the Debtors' estates and facilitating distributions to creditors pursuant to Articles IV.D and VII.B of the Plan.

13. On December 3, 2021, JW filed its *Second and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from June 6, 2021 Through October 21, 2021* (the "Fee Application") [Bankr. Case Dkt. No. 1523]. JW's Fee Application was approved by former Judge Jones on January 28, 2022, awarding compensation and reimbursement of expenses in the amount of $858,653.01 [Bankr. Case Dkt. No. 1639].

**B. The Miscellaneous Proceeding**

14. On or about November 3, 2023 and February 29, 2024, Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), filed his Vacatur Motions seeking relief from the order approving JW's Fee Application pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure [Bankr. Case Dkt. Nos. 2049 and 2093]. The basis of the Vacatur Motions was the alleged undisclosed relationship between former Judge Jones and Ms. Elizabeth Freeman, a former partner of JW.

15. On April 15, 2024, the Plan Administrator, on behalf of himself and the Wind-Down Debtors, filed a *Notice of Standing and Indispensable Party Status* [Bankr. Case Dkt. No. 2104] in the Bankruptcy Cases.

16. On May 22, 2024, JW filed its response in opposition to the Rule 60(b) Motion [Bankr. Case Dkt. No. 2126].

17. On July 1, 2024, the U.S. Trustee filed his reply [Bankr. Case Dkt. No. 2143].

18. On August 12, 2024, JW filed its sur-reply [Bankr. Case Dkt. No. 2154].

19. On October 11, 2024, an Order was entered commencing the Misc. Proceeding which is now pending in the District Court [Bankr. Case Dkt. No. 2169].

20. JW disputes the merits of the Vacatur Motions. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's alleged acts or omissions in relation to the Bankruptcy Cases, and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases. The Wind-Down Debtors and the Plan Administrator disagree with JW's alleged defenses and believe that the release and exculpation provisions of the Plan will provide no defense for JW.

21. The Plan Administrator has participated in the Misc. Proceeding since its inception. To avoid unnecessary costs, the Plan Administrator did not attend any depositions, instead relying on the U.S. Trustee's office to lead the litigation. However, counsel for the Plan Administrator had access to all substantive pleadings and discovery produced from May 2024 through December 2024.

22. On March 5, 2025, JW and the Plan Administrator participated in a mediation with the Honorable (Ret.) Judge Royal Ferguson and Honorable (Ret.) Gary Fees serving as mediators. No settlement was reached during that mediation.

23. On April 9, 2025, Chief District Judge Alia Moses entered a Memorandum Opinion and Order withdrawing the Rule 60(b) motions to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court").

24. On November 12, 2025, Chief District Judge Alia Moses entered an Order that, among other things, referred the Vacatur Motions back to Chief Bankruptcy Judge Eduardo Rodriguez for a report and recommendation.

25. On July 10, 2026, Chief Bankruptcy Judge Eduardo Rodriguez entered his Report and Recommendation to the United States District Court, recommending approval of various pending settlement motions with other estate representatives. That Report and Recommendation remains pending before Chief District Judge Alia Moses.

26. On August 2, 2026, JW and the U.S. Trustee filed a *Notice of Settlement Term Sheet Between JW and U.S. Trustee* [Dkt. No. 301], which set forth the principle settlement terms between the U.S. Trustee and JW to resolve the Vacatur Motions, including JW's agreement to pay $15 million in the Relevant Cases to fully resolve and settle the Vacatur Motions. Although Katerra is expecting to receive some proportionate share of the $15 million, the settlement between the U.S. Trustee and JW is not being addressed or settled herein.

27. On August 4, 2026, Chief Bankruptcy Judge Eduardo Rodriguez entered an *Order Setting an In-Person Trial on the U.S. Trustee's Vacatur Motions and Objections to Final Fee Application* [Dkt. No. 204], setting a trial on the Vacatur Motions to commence on January 17, 2027.

28. In order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## IV. SUMMARY OF SETTLEMENT TERMS[2]

The Settlement Agreement provides that within five (5) business days of an order granting this Motion becoming a Final Order, JW will pay to the Plan Administrator for the benefit of the Wind-Down Debtors the sum of $560,000.00, which will be distributed pursuant to the terms of the confirmed plan in the Bankruptcy Cases. The Settlement Agreement also provides that the Parties will grant mutual releases. The Plan Administrator, the Debtors and their estates, and the Wind-Down Debtors will release JW from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date, including claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones. Nothing in the Agreement, however, (i) precludes the Plan Administrator from receiving additional monies that may flow to the Katerra estates under any settlement agreement reached between JW and the U.S. Trustee (the "Trustee Settlement") or (ii) precludes the Plan Administrator from disputing the Trustee Settlement or any allocation of proceeds therefrom, including reallocation of such proceeds.

29. Additionally, JW will release the Plan Administrator, the Debtors and their estates, the Wind-Down Debtors from any and all claims and causes of action involving any act, matter,

[2] The summary of the settlement terms is provided herein for convenience only. To the extent of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls. Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to such terms in the Settlement Agreement.

transaction, occurrence, or event before the Effective Date, including claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

## V. ARGUMENT AND AUTHORITIES

30. The Settlement Agreement is straightforward. On the Effective Date of the Settlement Agreement, JW will pay to the Wind-Down Debtors $560,000.00, representing approximately 65% of the fees previously awarded JW in the Bankruptcy Cases. Additionally, the Plan Administrator understands that the Wind-Down Debtors may receive a portion of the $15 million Trustee Settlement, if such Trustee Settlement is approved and becomes effective.

31. In its business judgment, the Plan Administrator believes the Settlement Agreement presents a favorable recovery in the Bankruptcy Cases given the costs and uncertainty of continued litigation, along with the added benefit of the potential to receive some of the $15 million under the Trustee Settlement. In exchange for the Settlement Amount, JW and the Plan Administrator are providing mutual releases. The mutual releases preserve the Plan Administrator's rights to take a position on the Trustee Settlement if and when filed.

32. The Plan Administrator has almost completed the administration of the Wind-Down Debtors' estates and settling this litigation for the amounts that will be paid by JW directly rather than stringing this litigation out further constitutes sound business judgment. The Plan Administrator has been careful to manage litigation costs by letting other parties take the lead on depositions and other litigation expenses so the Plan Administrator's legal expenses would be minimal. The result of such careful management is that the creditors will get the benefit of nearly all the settlement proceeds.

33. Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy

Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose . . . to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 461 (5th Cir. 2007) (quoting *In re Masters, Inc.*, 141 Bankr. E.D.N.Y. 1992)).

34. "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in the Fifth Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson* . . . ." *Id.* at 462. Those factors are:

i. The balance between the litigation's possibility of success and the settlement's future benefits;

ii. The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

iii. The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

iv. Whether other parties in interest support the settlement;

v. The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy judge reviewing, the settlement;

vi. The nature and breadth of releases to be obtained by [the settling party]; and

vii. The extent to which the settlement is the product of arm's length bargaining.

*See Iridium*, 478 F.3d at 462 (citing *TMT Trailer Ferry*, 390 U.S. at 424; *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992)).

35. The recovery of 65% is consistent with the outcomes in other cases previously found to be fair and reasonable. In its July 10, 2026, Report and Recommendation to the District

Court (Case No. 4:23-cv-4787), the Court recommended approval of ten comparable JW fee settlements arising from the same underlying conduct. Excluding the Auto Plus (IEH) settlement, an outlier that recovered only approximately 11% of awarded fees due to case-specific mitigating factors, the average recovery rate across the remaining nine Court-recommended settlements was approximately 68.1% and $476,000.00 per case. The $560,000.00 (65%) recovery for the Bankruptcy Case falls squarely within this established range, supporting the reasonableness of the proposed settlement terms. Securing this settlement now aligns with the objectives of completing administration of the Bankruptcy Cases efficiently. Resolving this dispute avoids the expense, delay, and uncertainty of protracted litigation and allows the Plan Administrator to move toward finalizing outstanding estate matters.

36. The Parties contend that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives the Plan Administrator and the Wind-Down Debtors the full benefit of the Settlement Amount without the time, expense and uncertainty of continued and protracted litigation, and will enable the Plan Administrator to move further towards closure of the Bankruptcy Cases as this dispute is one of the last unresolved issues remaining in the Bankruptcy Cases.

**B. The Settlement's Benefits**

37. The Settlement Agreement and Settlement Amount provides the Wind-Down Debtors with approximately 65% of the fees awarded to JW, upon an order approving the Settlement Amount becoming final, to be paid to the estates' creditors in accordance with the confirmed Plan. Given that the Plan Administrator did not attend any of the myriads of depositions, it has significantly minimized its costs of litigation in this case which otherwise would have diluted the recovery for general unsecured creditors. A settlement now brings finality and

eliminates any meaningful litigation and/or collection risk and puts an end to litigation costs after over two (2) years of litigation, including motion practice.

**C. Best Interests of Creditors**

38. The Plan Administrator believes that the Settlement Agreement is in the best interest of general unsecured creditors as the Settlement Agreement removes any uncertainty of litigation, stops the Wind-Down Debtors from incurring further attorney's fees and expenses in connection with these disputes, and provides an additional source of recovery for the benefit of the general unsecured creditors in light of the relatively small amount of fees and expenses at issue in the Bankruptcy Cases. This is also a substantial step towards completing the administration of the Bankruptcy Cases and closing it.

**D. The Nature and Breadth of Releases to be Obtained by JW and the Plan Administrator**

39. The Settlement Agreement contains customary mutual releases between JW and the Plan Administrator on behalf of the bankruptcy estates. The mutual releases carve out the $15 million Trustee Settlement so that the Plan Administrator can evaluate and take a position on the allocation of any such proceeds to the Wind-Down Debtors. The Settlement Agreement brings finality to the direct claims and disputes between the Plan Administrator and JW.

**E. The Settlement Agreement was the Result of Arms-Length Negotiations**

40. Counsel for the Plan Administrator and JW are competent and experienced. The Settlement Agreement was reached after extensive litigation and discovery in the Bankruptcy Cases and the Misc. Proceeding and after the parties exchanged multiple settlement proposals. The settlement was reached following extensive arms-length negotiations and a prior mediation that was not successful.

41. The Plan Administrator recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Plan Administrator believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. The Plan Administrator in his business judgement believes he has achieved a resolution that maximizes value for the Wind-Down Debtors' estates. Consequently, the Plan Administrator urges that the Settlement Agreement is fair, equitable, and in the best interest of the Wind-Down Debtors' estates and all concerned parties.

*Remainder of Page Intentionally Blank*

WHEREFORE, the Plan Administrator respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Plan Administrator such other legal or equitable relief as the Court may deem just and proper.

Dated: September 24, 2026

**FOX ROTHSCHILD LLP**

*<u>/s/ Trey A. Monsour</u>*

Trey A. Monsour, Esq. (Tex. Bar No. 14277200)
Fox Rothschild LLP
Saint Ann Court
2501 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 231-5796
Facsimile: (972) 404-0516
2727 Revere Street #2048
Houston, TX 77098
Mobile: (713) 927-7469
E-mail: tmonsour@foxrothschild.com

-and-

Michael A. Sweet (admitted *pro hac vice*)
345 California Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 364-5540
Facsimile: (415) 391-4436
Email: msweet@foxrothschild.com

-and-

Gordon E. Gouveia (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
Facsimile: (312) 517-9201
Email: ggouveia@foxrothschild.com

*Counsel to the Plan Administrator*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, a true and correct copy of the foregoing *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 Between Jackson Walker, LLP and Daniel R. Williams, Plan Administrator of Katerra, Inc*. was filed with the Court and served via the Court's CM/ECF notification system upon all parties registered to receive such electronic notices in this case.

*/s/ Trey A. Monsour*
Trey A. Monsour