**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re Diebold Holding Co., Inc., et al., Debtors[1]** | § | **No. 23-90602** |
| | § | |
| | § | **CHAPTER 11** |
| | § | **Jointly Administered** |

**U.S. TRUSTEE'S RECOMMENDATION TO THE COURT**
**ON ORDER FOR JACKSON WALKER LLP TO SHOW CAUSE**

**(Relates to ECF No. 429)**

Kevin Epstein, United States Trustee for Region 7 ("U.S. Trustee"), respectfully files this response to the invitation in the Court's Order for Jackson Walker LLP ("Jackson Walker") to Show Cause "to exercise his statutory duties here and investigate potential violations of Bankruptcy Rule 2014 and § 327 in this and possibly other cases . . . and issue a recommendation to this Court as to whether the instant matter and possibly others should be consolidated with Civil Case No. 4:23-cv-4787 for disposition." ECF No. 429 at 9.[2] As explained below, the answer to the Court's invitation is that the U.S. Trustee conducted an extensive investigation and engaged in thorough discovery over the past three years and,

[1] The Debtors are the following ten entities: Diebold Nixdorf, Incorporated; Diebold Nixdorf Technology Finance, LLC; Diebold Global Finance Corporation; Diebold SST Holding Company, LLC; Diebold Holding Company, LLC; Diebold Self-Service Systems; Griffin Technology Incorporated; Impexa LLC; Diebold Nixdorf Canada, Limited; and Diebold Canada Holding Company Inc.

[2] On October 6, the Court entered a supplemental order, ECF No. 432, directing Jackson Walker LLP to file its response in *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, No. 4:23-cv-4787 (S.D. Tex.) ("Misc. Proc." or "Miscellaneous Proceeding"), but the order did not direct where the U.S. Trustee should respond to the Court's invitation. Accordingly, in an abundance of caution, the U.S. Trustee files his response in *Diebold* and in the Miscellaneous Proceeding.

consistent with his statutory duties, does not recommend that *In re Diebold Holding Co.* ("Diebold") or any other case be added to the Miscellaneous Proceeding.

## SUMMARY

1. The U.S. Trustee shared the Court's concerns about the conduct of Jackson Walker in *Diebold* but determined that it was not akin to the 33 cases consolidated before the District Court in the Miscellaneous Proceeding (the "Affected Cases"). *Diebold* was among approximately 90 cases (counting jointly administered cases as one) that the U.S. Trustee investigated before filing Motions Seeking Vacatur, Sanctions, and Related Relief ("Vacatur Motions") or fee objections in the 33 Affected Cases.

2. The Affected Cases share the following common facts:

   a. Elizabeth Freeman ("Ms. Freeman") was either a partner with Jackson Walker when the case was pending, or after her departure, Jackson Walker hired her as contract counsel or a debtor separately retained her;

   b. Judge David R. Jones ("Judge Jones") was the presiding judge or appointed mediator; ***and***

   c. Jackson Walker obtained employment or fee orders without disclosing the relationship between its partner, Ms. Freeman, and Judge Jones.

3. These common facts, as the U.S. Trustee has alleged in his Vacatur Motions and fee objections, support vacatur of the respective employment and fee orders and denial of pending fee applications for violations of 11 U.S.C. §§ 327 and 330, Rule 2014, and this Court's Local Rules incorporating the Texas Disciplinary Rules of Professional Conduct. Vacatur of employment and fee orders in the Affected Cases is also required because Judge Jones was disqualified from entering orders approving Jackson Walker's retention and fee applications under 28 U.S.C. § 455 and Rules 5002 and 5004(b).

4. Based on the U.S. Trustee's investigation, which was confirmed in Jackson Walker's Notice in Response to Court's Order to Show Cause, Misc. Proc., ECF No 327 ("OSC Response"), the *Diebold* case shares none of these common facts:

a. Ms. Freeman separated from Jackson Walker in December 2022 and was no longer a partner when Diebold filed;

b. Although Ms. Freeman was paid $27,000 for services, those fees were incurred before the petition was filed and before Judge Jones was appointed as the presiding judge;[3] and

c. Diebold neither sought nor obtained an order to employ Ms. Freeman, nor did Jackson Walker seek Court approval to compensate Ms. Freeman for services to the estate in its fee application.[4]

5. Because the *Diebold* facts are distinguishable, so are the applicable legal theories. The U.S. Trustee, after thorough consideration, exercised his prosecutorial discretion not to seek vacatur or to object to Jackson Walker's fee application. In the three years since, neither Jackson Walker nor any other party has disclosed, and the U.S. Trustee has not discovered, facts that warrant consolidation of *Diebold* or any other case beyond the Affected Cases.

6. Nevertheless, that Jackson Walker even considered using Ms. Freeman as contract counsel and expensing her fees, as set forth in its *Diebold* engagement letter, is troubling. This engagement letter came more than a year after Jackson Walker acknowledges its partners knew about the secret relationship and seven months after Ms. Freeman's departure because of that very relationship. But the docket reflects that the debtors did not retain or seek to retain Ms.

---

[3] Jackson Walker's OSC Response states that it paid Ms. Freeman a total of approximately $81,000 for pre-petition work across seven cases after she departed the firm. ECF No. 327.

[4] In other cases where this did occur, the U.S. Trustee objected. For example, in *GWG*, one of the Affected Cases, Ms. Freeman was a Jackson Walker partner when it applied to be retained. After she left the firm, Ms. Freeman worked as a contract attorney for Jackson Walker during the mediation with Judge Jones, and Jackson Walker included her contract expenses in its fee application. *See In re GWG Holdings, Inc.*, No. 22-90032, UST Obj. to Final Fee App., ECF No. 2415, ¶¶ 41, 47, 50-54, 58, 59-60 (Bankr. S.D. Tex. Mar. 29, 2024).

Freeman, and Jackson Walker did not seek reimbursement of any expense for her services as a contract attorney (or otherwise).

## I. FACTUAL BACKGROUND

7. Beginning on October 6, 2023, multiple media outlets reported that Judge Jones was in an intimate, cohabiting relationship with Ms. Freeman, a bankruptcy partner at Jackson Walker. Neither Judge Jones, Ms. Freeman, nor Jackson Walker ever disclosed this relationship.

8. Within three weeks of the revelation of the previously undisclosed relationship, the U.S. Trustee assembled a multi-jurisdictional team to investigate and redress this affront to the integrity of the bankruptcy system in the Southern District of Texas and identified the universe of 33 Affected Cases. Shortly thereafter, on November 2, 2023, he began filing the Vacatur Motions.[5] The U.S. Trustee attached Exhibit 6 to each Vacatur Motion, placing the 33 Affected Cases into four "buckets":

a. Ex. 6-A identified 16 open cases over which Judge Jones was presiding;

b. Ex. 6-B identified nine closed cases over which Judge Jones had presided;

c. Ex. 6-C identified six open cases that Judge Jones had mediated;[6] and

d. Ex. 6-D identified two closed cases that Judge Jones had mediated.

9. To determine the Affected Cases, the U.S. Trustee first identified every bankruptcy case filed between 2017 and fall 2023 in the Southern District of Texas where

---

[5] In *IEH Auto Parts* and *GWG Holdings*, no final fee order had been entered, and the U.S. Trustee ultimately filed objections to final applications for compensation instead.

[6] Ex. 6-C lists *IEH Auto Parts* twice because Jackson Walker and Elizabeth Freeman were each separately retained in the case—Jackson Walker as lead counsel and Ms. Freeman as conflicts counsel.

Jackson Walker had been retained under either section 327 or section 1103,[7] regardless of the presiding judge and regardless of whether the case was open or closed.[8] This initial list comprised approximately 90 cases (counting jointly administered cases as one), including *Diebold* and the eight other chapter 11 cases Jackson Walker identified in its OSC Response.

10. Cases assigned to a bankruptcy judge other than Judge Jones were culled from the list except where Judge Jones had mediated a case assigned to another bankruptcy judge. Then cases that did not overlap with Ms. Freeman's tenure at Jackson Walker were likewise culled from the list unless Ms. Freeman had been retained as conflicts counsel or co-counsel with Jackson Walker, as she was in *IEH Auto Parts*, or as contract counsel, as she was in *GWG Holdings*, both of which Judge Jones mediated. *See In re Auto Parts Holding, LLC,* No. 23-90054 (Bankr. S.D. Tex.); *In re GWG Holdings, Inc.*, No. 22-90032 (Bankr. S.D. Tex.).

## II. THE U.S. TRUSTEE'S ANALYSIS IDENTIFIED NO ACTION IN *DIEBOLD* BECAUSE MS. FREEMAN WAS NO LONGER AT JACKSON WALKER WHEN *DIEBOLD* RETAINED IT, AND MS. FREEMAN WAS NEVER EMPLOYED OR COMPENSATED POST-PETITION.

11. Ms. Freeman resigned from Jackson Walker effective December 1, 2022. Seven months later, the *Diebold* debtors filed their petitions for chapter 11 relief, on June 1, 2023, and Judge Jones confirmed the pre-packaged plan on July 12, 2023. *Diebold* filed an application to retain Jackson Walker as co-counsel and conflicts counsel on July 3, 2023, and the court entered an order approving the employment on July 27, 2023. Debtors did not file an application to retain Ms. Freeman, and Ms. Freeman did not file an application for compensation.

---

[7] The U.S. Trustee initially erred on the side of over-inclusiveness because the relevant date range was not then clear.

[8] Normally, the U.S. Trustee would not discuss his process but shares general information for the Court's benefit without waiving any privileges, including his investigatory and deliberative processes.

12. Although Jackson Walker did disclose in its engagement letter attached to the employment application that it "may engage" Ms. Freeman as a contract attorney in the future, ECF No. 429 at 3, nothing in the record reflects that it either engaged or paid her. As Jackson Walker explained in its November 1, 2023, supplement, Jackson Walker had engaged Ms. Freeman for pre-filing assistance but did not use her services post-petition once the case was filed and assigned to Judge Jones.[9] ECF No. 349. This representation is consistent with the remainder of the public docket in the case as well as Jackson Walker's sworn responses to the U.S. Trustee's interrogatories and Ms. Freeman's deposition testimony in the Miscellaneous Proceeding. And it is consistent with Jackson Walker's OSC Response.

13. Had the U.S. Trustee uncovered or received evidence that the contemplated contract counsel arrangement materialized, *Diebold* would have joined the list of Affected Cases for redress. It would be wholly inappropriate for retained debtor-in-possession's counsel to try to "backdoor" the employment of co-counsel without a separate section 327 employment application and Rule 2014 disclosures of connections for that co-counsel. Moreover, section 504 prohibits attorneys who are compensated under section 330 from sharing that compensation with attorneys who are not in a professional partnership, corporation, or association, effectively requiring that co-counsel have their employment and compensation separately approved by the court. And where courts allow estate-paid counsel to use and bill contract attorneys as a "pass-through" estate expense, these contract attorneys are subject to an independent obligation to be conflict free and to make Rule 2014 disclosures, which Jackson Walker's engagement letter

[9] After the relationship between Judge Jones and Ms. Freeman was reported in the news media, Judge Isgur ordered Jackson Walker to supplement its final fee application with information about any time billed by, payments to, or consultations with Ms. Freeman regarding the case. ECF No. 334.

expressly acknowledged. ECF No. 429 at 3 (Ms. Freeman's engagement as contract conflicts counsel would be "subject to clearance of requisite conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.").

## III. THE U.S. TRUSTEE HAS ACTED SWIFTLY, DILIGENTLY, AND PERSISTENTLY OVER THE LAST THREE YEARS TO SEEK REDRESS FOR JACKSON WALKER'S AND MS. FREEMAN'S MISCONDUCT AND, IN DOING SO, HAS NOT IDENTIFIED OTHER "AFFECTED CASES" "LURKING ON THE DOCKETS."

14. The Court stated that it was troubled by "the unanswered question of how many other cases like this [Diebold] may be lurking on the dockets of the Southern District of Texas Bankruptcy Courts." ECF No. 429 at 8. The U.S. Trustee invested significant time and resources in search of an answer to that question. After initially analyzing over 90 cases and identifying a factual and legal basis to act in the 33 Affected Cases—followed by extensive litigation and discovery—the U.S. Trustee has identified no other cases warranting an enforcement action by the U.S. Trustee against Jackson Walker for its disclosure and ethical failures.

15. Thus, the answer to the Court's invitation is that the U.S. Trustee does not recommend that *Diebold* or other cases be added to the Miscellaneous Proceeding, which seek to redress matters within the scope of the U.S. Trustee's statutory watchdog responsibilities.

16. Nevertheless, the U.S. Trustee agrees that the Court "has an independent duty to ensure compliance with the disclosure requirements for retention and compensation of professionals in chapter 11 cases . . . ." ECF No. 429 at 8. And this extends to the Court's inherent authority to regulate and to redress the conduct of attorneys who practice before it—and impose sanctions on them—when they have "defiled the very temple of justice." Letter from the

Honorable Marvin Isgur to the Honorable Randy Crane filed in *In re Jackson Walker LLP*, No. 4:24-mc-01523, ECF No. 1 (S.D. Tex. Sep. 20, 2024).

17. The U.S. Trustee has faithfully, carefully, and diligently fulfilled his statutory watchdog role in bringing the 33 Affected Cases before the Court to redress Jackson Walker's serious misconduct, and he stands ready to proceed.[10]

Date: October 16, 2026

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE, REGION 7

By: */s/ Laura D. Steele*
Millie Aponte Sall, Assistant U.S. Trustee
Tex. Bar No. 01278050/Fed. ID No. 11271
Laura D. Steele,
Assistant U.S. Trustee (Detail)
Wis. Bar No. 1065702/Fed. ID No. 3878215
Vianey Garza, Trial Attorney
Tex. Bar No. 24083057/Fed. ID No. 1812278
William J. Charboneau, Trial Attorney
VA Bar No. 68025/Fed. ID No. 3885907
515 Rusk Street, Suite 3516
Houston, Texas 77002
(713) 718-4650 – Telephone
(713) 718-4670 – Fax
Email: millie.sall@usdoj.gov
laura.steele@usdoj.gov
vianey.garza@usdoj.gov
joel.charboneau@usdoj.gov

[10] As discussed in more detail in the U.S. Trustee's October 2 Status Report in the Misc. Proceeding, ECF No. 325, the Court has under advisement the U.S. Trustee's standing to seek the return of fees paid to Jackson Walker and the Court's subject matter jurisdiction, raising uncertainty with respect to the threshold question of whether the U.S. Trustee may proceed to prosecute or to settle the 33 Affected Cases.

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, a copy of the foregoing pleading was served on all parties entitled to electronic notice through the Court's CM/ECF system.

*/s/ Laura D. Steele*
Laura D. Steele