United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 02, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 23-90602** |
| **DIEBOLD HOLDING COMPANY, INC.** | § | |
| **and** | § | |
| **DIEBOLD NIXDORF HOLDING COMPANY, INC.** | § | |
| **and** | § | |
| **DIEBOLD GLOBAL FINANCE CORPORATION** | § | |
| **and** | § | |
| **DIEBOLD NIXDORF CANADA, LIMITED** | § | |
| **and** | § | |
| **DIEBOLD NIXDORF, INCORPORATED** | § | |
| **and** | § | |
| **DIEBOLD NIXDORF TECHNOLOGY FINANCE, LLC** | § | |
| **and** | § | |
| **DIEBOLD SELF-SERVICE SYSTEMS** | § | |
| **and** | § | |
| **DIEBOLD SST HOLDING COMPANY, LLC** | § | |
| **and** | § | |
| **GRIFFIN TECHNOLOGY, INCORPORATED** | § | |
| **and** | § | |
| **IMPEXA, LLC** | § | |
| **and** | § | |
| **DIEBOLD CANADA HOLDING COMPANY, INC.,** | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

**ORDER**
**TO SHOW CAUSE**
***Regarding Dkt. No. 423***

On September 24, 2026, Judge Marvin Isgur issued a "Final Decree," Dkt. No. 423, which required Jackson Walker, LLP ("*Jackson Walker*") to, *inter alia*, "deposit the sum of $100,000.00 of its retainer into a Jones Day IOLTA account to be held by Jones Day pending further order regarding the settlement with Jackson Walker. The balance of the retainer should be refunded

according to its terms." *Id*. ¶ 1. Paragraph 2 of the Final Decree stated that "[t]he Court has recused on issues regarding the Jackson Walker fees. The matter should be presented by the Clerk to Chief Judge Rodriguez." *Id.* ¶ 2. Judge Isgur then ordered the matter be referred to this Court for disposition. Dkt. No. 428.

On June 1, 2023, Diebold Holding Company, Inc., Diebold Nixdorf Holding Co., Inc., Diebold Global Finance Corp., Diebold Nixdorf Canada, Ltd., Diebold Nixdorf, Inc., Diebold Nixdorf Technology Finance, LLC, Diebold Self-Service Systems, Diebold SST Holding Co., LLC, Griffin Technology, Inc., Impexa, LLC, and Diebold Canada Holding Co., Inc. (collectively, the "*Debtors/Debtors in Possession*") filed the instant chapter 11 proceeding. Dkt. No. 1. On July 3, 2023, Jackson Walker filed its "Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel" ("*Retention Application*") and "Declaration of Matthew D. Cavenaugh in Support of the Debtors' Application to Retain and Employ Jackson Walker LLP as Co-Counsel and Conflicts Counsel." Dkt. No. 208.

On July 27, 2023, former Bankruptcy Judge Jones ("*Former Judge Jones*") entered the "Order Authorizing the Retention and Employment of Jackson Walker LLP as Co-Counsel and Conflicts Counsel" (the "*Retention Order*"), approving employment of Jackson Walker as Co-Counsel and Conflicts Counsel to Debtors and Debtors in Possession. Dkt. No. 279. The Debtors paid an initial retainer to Jackson Walker in the amount of $425,000. Dkt. No. 208, ¶ 14. Prior to the filing of these cases, Jackson Walker drew down the aggregate amount of $244,327.50 from the retainer, which was the total amount due to Jackson Walker for all prepetition services and for reimbursement of filing fee expenses. *Id.* Jackson Walker currently holds a retainer in the amount of $188,928.00. Dkt. No. 412, ¶ 12. Notably, attached to the Retention Application is a copy of

Jackson Walker's "Engagement Letter," which, *inter alia*, proposes to engage the Law Office of Elizabeth Freeman as special conflicts counsel:

> **SPECIAL CONFLICTS COUNSEL.** The Firm may engage outside counsel to serve as special conflicts counsel where Jones Day and the Firm both have actual or potential conflicts ("Special Conflicts Counsel"), as the need may arise. Due to the size and scope of the Engagement and the broad universe of creditors and potential parties in interest, the Firm proposes that a Special Conflicts Counsel would be appropriate in this matter. For this Engagement, subject to clearance of requisite conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules, the Firm will engage the Law Office of Liz Freeman as Special Conflicts Counsel via a contract attorney arrangement and will pass all costs therefore through to Client at cost and without any markup. Ms. Freeman's hourly rate is $750/hour.

Dkt. No. 208, at 13. Yet by this time, and as explained more fully *infra*, Jackson Walker was already aware that Elizabeth Freeman ("*Ms. Freeman*") was in an intimate relationship[1] with Former Judge Jones, who was presiding over the instant case.

On September 25, 2023, Jackson Walker filed its "First and Final Fee Application" requesting $154,167.00 in fees and $5,570.83 in expenses for a total award of $159,737.83 in fees and expenses for the period of June 1, 2023 through July 12, 2023. Dkt. No. 320. On October 13, 2023, after Former Judge Jones resigned, this case was randomly reassigned to Judge Marvin Isgur. Oct. 13, 2023, Min. Entry. On November 1, 2023, Jackson Walker filed a "Supplement to Jackson Walker LLP's First and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel and Conflicts Counsel to the Debtors for the Period from June 1, 2023 Through July 12, 2023" ("*Supplement to Fee Application*"). Dkt. No. 349. On August 27, 2026, the remaining Debtors filed, *inter alia*, the "Motion for Entry of a Final Decree and Order (I) for Approval of Jackson Walker's Final Fee Application, (II) Closing the Remaining Chapter 11 Case,

[1] Complaint, No. 05-24-90002, at 1 (5th Cir. Oct. 13, 2023) ("Judge Jones is in an intimate relationship with Elizabeth Freeman.").

and (III) Granting Related Relief" ("*Motion for Final Decree*"). Dkt. No. 412. The Motion for Final Decree states that the reorganized Debtor Diebold Holding Co., LLC, engaged in discussions with Jackson Walker and as a result, Jackson Walker voluntarily agreed to reduce its fees to $100,000.00. Dkt. No. 412, ¶ 16.

Ms. Freeman, a former partner at Jackson Walker, was allegedly in an intimate relationship with Former Judge Jones (the "*Jones-Freeman Relationship*") beginning in 2013. Civ. Case No. 4:23-cv-4787, Dkt. No. 186-4, at 2. Former Judge Jones was assigned to preside over the instant bankruptcy case when it was filed on June 1, 2023. *See* Dkt. No. 39. Jackson Walker stated in its Supplement to Fee Application that it hired Ms. Freeman as pre-petition conflicts counsel in the instant case and that Ms. Freeman was paid $27,000 for her work on this matter. Dkt. No. 349, at 1. Allegedly, Jackson Walker learned of the Jones-Freeman Relationship through multiple attorneys but deliberately concealed it from clients, the Court, and other parties. Civ. Case No. 4:23-cv-4787, Dkt. No. 186-4, at 2–3. After allegations surfaced in March 2021, Jackson Walker allegedly ignored advice from ethics counsel and crisis management professionals and engaged in a "cover-up" instead of making required disclosures. *Id.* at 7–16. In a later filing, Jackson Walker acknowledged that it never disclosed any relationship between Ms. Freeman and Former Judge Jones in either its employment applications or supplemental disclosures in the bankruptcy cases "affected by the undisclosed relationship between Elizabeth Freeman and Former Judge David R. Jones" (the "*Affected Cases*"). *See* Civ. Case No. 4:23-cv-4787, Dkt. No. 301-1, at 1–2. That would include the instant case as well.

This matter presents an extraordinary and unprecedented challenge to the integrity of the federal judicial system. At its core is the undisclosed intimate relationship between a former United States Bankruptcy Judge and a former law partner at a firm that repeatedly appeared before that

judge in bankruptcy proceedings. This undisclosed conflict allegedly permeated more than thirty-three bankruptcy cases, depriving litigants and creditors of the impartial tribunal guaranteed by law (the "*Civil Case*"). *See* Civ. Case No. 4:23-cv-4787, Dkt. No. 27, at 1, 4. Judicial impartiality is not merely an aspirational principle; it is the indispensable foundation of public confidence in the administration of justice. When a judge presides over matters involving a party or counsel whose relationship with the judge should have been disclosed, the legitimacy of every affected proceeding is called into question. If the allegations are established, the resulting failure of disclosure and recusal represents a miscarriage of justice on an unprecedented scale, requiring this Court to confront not only the fairness of the individual proceedings, but also the systemic consequences of judgments entered under a cloud of undisclosed judicial conflict.

This Court has held that Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 2014(a) "requires professionals to disclose all connections with the debtor, creditors, or parties in interest. The disclosure requirements are broader than the rules governing disqualification, and an applicant must disclose all connections regardless of whether they rise to the level of a disqualifying interest." *In re Steinmetz Plumbing, Inc.*, No. 25-37611, 2026 WL 1826349, at *6 (Bankr. S.D. Tex. June 24, 2026) (Rodriguez, C. J.). Furthermore, "[a]lthough Bankruptcy Rule 2014(a) does not explicitly require ongoing disclosure, 'case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.'" *Id.* at *8 (quoting *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005)).

Additionally, 11 U.S.C. § 327(a) of the Bankruptcy Code provides that "a trustee or debtor in possession may employ professionals only if they do not hold or represent an interest adverse to the estate and are disinterested persons." *Steinmetz Plumbing, Inc.*, 2026 Bankr. LEXIS 1597,

at *24–25 (Rodriguez, C. J.). To receive compensation as counsel for the debtor, an attorney "must be disinterested and may hold no interest adverse to the bankruptcy estate." *In re Humble Place Joint Venture*, 936 F.2d 814, 819 (5th Cir. 1991). Section 328(c) allows the court to deny compensation to a professional in any case where "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate." 11 U.S.C. § 328(c).

A disinterested person is defined by § 101(14)(C) as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." A party possesses an adverse interest to the estate if they "possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant" or "possess a predisposition under circumstances that render such a bias against the estate." *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 461 (5th Cir. 2012). Furthermore, attorneys who are "engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'" *Id.* at 462 (quoting *W. Delta Oil Co.*, 432 F.3d at 355).

Mr. Kevin Epstein, U.S. Trustee for the Southern District of Texas ("*U.S. Trustee*"), has exercised his statutory duties in the Affected Cases by filing motions under Rule 60(b) to vacate retention orders and disgorge attorney's fees collected by Jackson Walker.[2] The proceedings to

[2] *See* Bankr. S.D. Tex. Case Nos. 21-30936 (*In re Brilliant Energy, LLC*), 21-90054 (*In re Strike, LLC*), 20-35740 (*In re Seadrill Partners LLC*), 21-90002 (*In re Basic Energy Servs., Inc.*), 20-33233 (*In re Chesapeake Energy Corp.*), 20-33295 (*In re Covia Holdings Corp.*), 20-20184 (*In re J C. Penney Direct Mktg. Servs. LLC*), 21-31861 (*In re Katerra, Inc.*), 21-30427 (*In re Seadrill Ltd.*), 20-32564 (*In re Stage Stores, Inc.*), 22-90018 (*In re Sungard AS New Holdings, LLC*), 20-34758 (*In re Tug Robert J. Bouchard Corp.*), 18-35672 (*In re Westmoreland Coal Co.*), 20-32021 (*In re Whiling Petroleum Corp.*), 20-35561 (*In re Mule Sky LLC*), 22-50009 (*In re 4E Brands Northamerica LLC*), 22-90129 (*In re Altera Infrastructure Project Servs. LLC*), 23-90055 (*In re Auto Plus Auto Sales LLC*), 20-32519 (*In

vacate retention orders and disgorge attorney's fees were consolidated, and Chief Judge the Hon. Alia Moses, Chief District Judge for the Western District of Texas, withdrew the reference as to each of these proceedings. Civ. Case No. 4:23-cv-04787, Dkt. No. 31. On November 12, 2026, Chief Judge Moses referred "the merits of the U.S. Trustee's Vacatur Motions along with all the Miscellaneous Motions in the Affected Bankruptcy Cases and Adversary Proceeding 25-2002 to this Court for further reports and recommendations." Civ. Case No. 4:23-cv-4787, Dkt. No. 109, at 1–2. The U.S. Trustee's mission is to "protect[] the public interest and ensur[e] that bankruptcy cases are conducted according to law." *In re Wilson*, 413 B.R. 330, 334 (Bankr. E.D. La. 2009). "The role of the U.S. Trustee has been described to be that of a 'watchdog,' and 'as executives of the bankruptcy network,' Congress has 'likened the U.S. Trustee's relation to that of a prosecutor.'" *Id.* (quoting *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990)). 28 U.S.C. § 586(a)(3)(I) charges the U.S. Trustee with "monitoring applications filed under section 327 of title 11 and, whenever the U.S. Trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." The U.S. Trustee's statutory duties "include[e] monitoring the progress of cases, monitoring the debtor's business, ensuring compliance with reporting requirements, and supervising the administration of bankruptcy cases." *In re SAL ATX LLC*, 660 B.R. 795, 809 (Bankr. W.D. Tex. 2024) (citing 11 U.S.C. § 586); *In re Jensen's Interiors, Inc.*, 132 B.R. 105, 106 (E.D. Pa. 1991) ("The broad duties of the U.S. Trustee include 'monitoring applications for compensation and reimbursement filed under § 330 of Title 11' . . . [and] [i]t is

*re Neiman Marcus Grp. LTD LLC*), 20-33302 (*In re Covia Fin. Co., LLC*), 20-33916 (*In re TMW Merchs. LLC*), 20-31886 (*In re Sheridan Prod. Partners, I-A, LP*), 22-90126 (*In re LaForta - Gestao E Investmentos*), 20-33812 (*In re Denbury Holdings, Inc.*), 20-32680 (*In re Energy Servs. P.R., LLC*), 22-90002 (*In Seadrill Member LLC*), 19-32112 (*In re Jones Energy, Inc.*), 19-34508 (*In re Sanchez Energy Corp.*), 20-34500 (*In re IQOR Holdings Inc.*), 18-30155 (*In re EXCO Res., Inc.*), 20-50082 (*In re Volusion, LLC*), 20-30336 (*In re McDermott Int'l Inc.*).

clear . . . that the United States Trustee is empowered with the authority to object to requests for compensation." (quoting 28 U.S.C. § 586(a)(3)(I)).

This Court has toiled with the allegations regarding Jackson Walker's Bankruptcy Rule 2014 disclosure practices in the Affected Cases over the last three years. In the instant case, it is questionable as to whether Jackson Walker's mention of Ms. Freeman in the Engagement Letter attached to the Retention Application suffices as proper disclosure of connections in an application for employment as required by Bankruptcy Rule 2014(a). *See* Dkt. No. 208, at 13. Most troubling to the Court is the unanswered question of how many other cases like this may be lurking on the dockets of the Southern District of Texas Bankruptcy Courts. The Court is also left wondering why the U.S. Trustee, the "Bankruptcy Watchdog," has not discharged his statutory duties in this matter, and perhaps in other similar matters, by reviewing and possibly challenging the adequacy of Jackson Walker's disclosures pursuant to Bankruptcy Rule 2014. The primary statutory duty of the U.S. Trustee regarding the employment of professionals in a chapter 11 case is to monitor the retention applications 28 U.S.C. § 586. *See In re SAL ATX LLC*, 660 B.R. at 809. Specifically, under § 586(a)(3)(I), the U.S. Trustee is required to monitor applications filed for the employment of professional persons under 11 U.S.C. § 327 and file comments with the bankruptcy court with respect to the approval of such applications whenever the U.S. Trustee deems it to be appropriate.

These allegations raise serious concerns about compliance with the Bankruptcy Code and the Bankruptcy Rules, as well as the integrity of the bankruptcy process. Nevertheless, this Court has an independent duty to ensure compliance with the disclosure requirements for retention and compensation of professionals in chapter 11 cases which are governed by Bankruptcy Code sections 327, 328, and 1103 and Bankruptcy Rule 2014. Bankruptcy Rule 2014 mandates full and transparent disclosure of connections and potential conflicts of interest by professionals employed

in bankruptcy cases. Failure to meet these requirements may result in vacatur of retention orders and disgorgement of fees under 11 U.S.C. §§ 328 and 329(b).

Accordingly, the Court invites the U.S. Trustee to exercise his statutory duties here and investigate potential violations of Bankruptcy Rule 2014 and § 327 in this and possibly other cases to ensure that no violations of Bankruptcy Rule 2014 or § 327 have occurred in the instant case and possibly others and issue a recommendation to this Court as to whether the instant matter and possibly others should be consolidated with Civil Case No. 4:23-cv-4787 for disposition.

Alternatively, should the U.S. Trustee decline to act, the Court finds it appropriate to determine whether pursuant to Rule 53 a special master should be appointed. Should the Court elect to proceed under Rule 53, Jackson Walker must be prepared to demonstrate to this Court why this Court should not issue a report and recommendation to the U.S. District Court that a special master be appointed to assist this Court in the prosecution of this matter and to investigate and make recommendations to this Court about whether other cases exist that should be consolidated into Civil Case No. 4:23-cv-4787 for disposition. Bankruptcy Rule 9031 provides that Rule 53 is not incorporated into the Bankruptcy Code. But the Fifth Circuit has noted that if the bankruptcy reference is withdrawn, the District Court can invoke Rule 53 to appoint a special master on the bankruptcy court's recommendation. *See Matter of Delta Produce, L.P.*, 845 F.3d 609, 622 (5th Cir. 2016); *see also Sec. & Exch. Comm'n v. Barton*, 79 F.4th 573, 578 (5th Cir. 2023) (the bankruptcy court recommended appointment of a special master and the district court subsequently appointed a special master). Accordingly, it is therefore:

**ORDERED:** that

1. On **Thursday, October 22, 2026, at 1:30 p.m. (Central Standard Time**), **an in-person** hearing shall be held before the United States Bankruptcy Court, Bob Casey Federal Building, **COURTROOM NO. 401**, 515 Rusk, Houston Texas, 77002.

**2.** The U.S. Trustee is invited to appear and be heard on this matter, exercise his statutory duties and review the Retention Application, Bankruptcy Rule 2014(a) Disclosure at Dkt. 208 and Retention Order at Dkt. 279 in the instant case, and possibly other cases to ensure that no violations of Bankruptcy Rule 2014 or § 327 have occurred in the instant case and possibly others and issue a recommendation to this Court as to whether the instant matter and possibly others should be consolidated with Civil Case No. 4:23-cv-4787 for disposition by this Court.

**3.** Jackson Walker must be prepared to show cause as to (i) why this matter should not be consolidated with Civil Case No. 4:23-cv-4787 for a final disposition by this Court and why Jackson Walker has not brought this matter, and potentially others similar to it, to this Court's attention earlier in the Civil Case proceeding; (ii) why the Court should not issue a separate order setting a hearing in which Jackson Walker would need to show cause as to why it should not be sanctioned for its failure to bring this and potentially other similar matters to this Court's attention earlier in the Civil Case proceeding, and (iii) why a special master, pursuant to Fed. R. Civ. P. 53(a) should not be appointed to assist the Court in the prosecution of this matter and to investigate and make recommendations to this Court about whether other cases exist that should be consolidated into Civil Case No. 4:23-cv-4787 should the United States Trustee choose not to fulfill his statutory obligations by declining to review the Retention Application, Bankruptcy Rule 2014(a) Disclosure at Dkt. 208 and Retention Order at Dkt. 279 in the instant case, and possibly other cases to ensure that no violations of Bankruptcy Rule 2014 or § 327 have occurred in the instant case and possibly others and issue a recommendation to this Court as to whether the instant matter and possibly others should be consolidated with Civil Case No. 4:23-cv-4787 for disposition by this Court.

**4.** No later than **1:00 p.m. Central Standard Time**, **Thursday, October 15, 2026** Jackson Walker must file, with the Clerk of Court, a list of all cases commencing between January 1, 2020 and the present, other than the current cases listed in Civil Case No. 4:23-cv-4787, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, in which it has appeared as Counsel, Co-Counsel and/or Conflicts Counsel for the debtor(s) in the Southern District of Texas Bankruptcy Courts and in which it filed Retention Applications, Bankruptcy Rule 2014(a) disclosures and in which Retention Orders were entered, and in which Former Judge Jones was either the presiding judge or the court appointed mediator. For each case, Jackson Walker must:

a. list the case number and name of the lead case;

b. cite to the date and CM/ECF number in which each retention application, Bankruptcy Rule 2014(a) disclosure statement, retention order, fee application, fee order, and where applicable, mediation order, was entered;

c. state the total amount of the pre-petition retainer ;

d. the total amount of fees drawn down pre-petition and to whom they were paid;

e. the total amount of fees and expenses awarded post-petition and to the extent applicable, post confirmation;

f. the overall total of the fees and expenses sought and awarded to date, and

g. include a brief statement on the current status of the case.

**5.** Pursuant to Bankruptcy General Order 2021-05 and Bankruptcy Local Rule 9017-1, parties, other than Jackson Walker and the U.S. Trustee, may either appear electronically or in person unless otherwise ordered by this Court.

**6.** To participate electronically, parties must follow the instructions set forth on Judge Rodriguez's web page located at: https://www.txs.uscourts.gov/content/united-states-bankruptcy-judge-eduardo-v-rodriguez. Parties are additionally instructed to: (i) call in utilizing the dial-in-number for hearings before Judge Rodriguez at 832-917-1510, conference room number 999276 and (ii) log on to GoToMeeting for video appearances and witness testimony, utilizing conference code: judgerodriguez. Parties MUST HAVE TWO SEPARATE DEVICES to appear by video and telephonically. One device will be used to log on to GoToMeeting and the other will be used to call the telephonic conference line.

**7.** **Public Hearing:** Any member of the public, including media, are permitted to attend in person or electronically and observe this hearing pursuant to Bankruptcy Local Rule 9017-1(a)(6)[3] however, those in attendance either in person or electronically will be bound by this Order.

**8.** **Audio and Video Recording Is Strictly Prohibited:** Pursuant to District Local Rule 83.7, made applicable to this proceeding by Bankruptcy Local Rule 1001-1(b), no photo-or electro-mechanical means of recordation or transmission of court proceedings is permitted. Failure to adhere to this rule may result in additional orders of this Court including confiscation of such device by the Court, expulsion from the Courtroom, an order to show cause for civil contempt, potential sanctions, and/or a referral to the United States District Court's Chief Judge to consider criminal contempt pursuant to 18 U.S.C. §§ 401; 402.

**9.** Parties must comply with Bankruptcy Local Rule 9013-2 and Judge Rodriguez's Court Procedures Section VII(b) regarding the exchange and submission of electronic exhibits.

---

[3] Bankruptcy Local Rule 9017-1(a)(6) ("The Court may allow remote participation for individual hearings or trials. In hearings and trials for which the Court authorizes remote participation, the Court's audio and video connections may be utilized only by . . . (6) other persons as specifically authorized by the Court.").

**10.** For any witness and exhibits, parties must utilize Form 1-100 Witness & Exhibit List which can be located on this Court's home page at https://www.txs.uscourts.gov/content/chief-united-states-bankruptcy-judgeeduardo-v-rodriguez.

**11.** No than **Monday, October 5, 2026**, Jackson Walker, LLP, must serve a copy of this Order on the United States Trustee and all parties entitled to notice of the hearing and file a certificate of service with the Clerk of Court.

**12.** This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**SIGNED Friday, October 2, 2026**

______________________________
**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**