**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Professional Fee Matters Concerning the Jackson Walker Law Firm** | **Civil Action No. 4:23-cv-04787** |

**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019 BETWEEN JACKSON WALKER, LLP AND REORGANIZED DEBTORS OF EXCO RESOURCES, INC., ET AL.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The Reorganized Debtors of EXCO Resources, Inc., et al. (collectively, "EXCO"),[1] file this *Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019 Between Jackson Walker, LLP and Reorganized Debtors of EXCO Resources, Inc., et al.* (the "Motion") and would respectfully show the Court as follows:

[1] The Reorganized Debtors, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: EXCO Resources, Inc. (2779); EXCO GP Partners Old, LP (1262); EXCO Holdings (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258); EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (7701); EXCO Production Company (WV), LLC (7851); EXCO Resources (XA), LLC (7775); EXCO Services, Inc. (2747); Raider Marketing GP, LLC (6366); and Raider Marketing, LP (4295).

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II. RELIEF REQUESTED

3. Pursuant to Bankruptcy Rule 9019(a), EXCO requests that the Court enter an order approving the Settlement Agreement and Release (the "Settlement Agreement")[2] between Jackson Walker, LLP ("JW", and collectively, with EXCO, the "Parties") and EXCO that would resolve all issues and claims between EXCO and JW, arising out of in the chapter 11 cases of EXCO Resources, Inc., et al., formerly jointly administered under Case No. 18-30155 (the "Bankruptcy Cases") including all claims and causes of action related to the allegations contained in the U.S. Trustee Filings (and previously raised in the EXCO Rule 60 Motion and EXCO Withdrawal Motion), and the allegations raised against JW in *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 4:23-cv-04787 (EVR) (Bankr. S.D. Tex.), now pending in the United States District Court for the Southern District of Texas (the "Miscellaneous Proceeding"). The Settlement Agreement meets standards required for approval under Bankruptcy Rule 9019.

4. In exchange for the mutual releases set forth in the Settlement Agreement, JW shall pay the EXCO the sum of $500,000 (the "Settlement Payment") to be distributed to EXCO pursuant to the terms of the Settlement Agreement.

[2] A true and correct copy of the Settlement Agreement is attached as **Exhibit A** to the proposed order attached to this Motion. The Settlement Agreement does not resolve the U.S. Trustee's claims under the Vacatur Motions (defined herein) or any additional proceeds EXCO may be entitled to receive thereunder. Capitalized terms shall have the same meaning ascribed to them in the Settlement Agreement unless otherwise defined herein.

## III. BACKGROUND

### A. The Chapter 11 Bankruptcy Cases

5. On January 14, 2018 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

6. On January 24, 2018, the United States Trustee for Region 7 (the "U.S. Trustee") filed a *Notice of Appointment of Creditors Committee*. [Bankr. ECF Nos. 175 & 181]. On March 23, 2018, the Bankruptcy Court entered the order approving the retention of JW as co-counsel to the Committee. [Bankr. ECF No. 526].

7. On July 19, 2018, the Bankruptcy Court entered the order appointing former Judge David Jones as the mediator. [Bankr. ECF No. 894].

8. In June of 2019, the Bankruptcy Court confirmed the Plan and entered the *Order Confirming Third Amended Settlement Joint Chapter 11 Plan of Reorganization of EXCO Resources, Inc., and its Debtor Affiliates* (the "Confirmation Order"). [Bankr. ECF No. 2128].

9. On August 27, 2019, JW filed its final fee application, requesting final approval and allowance of attorneys' fees in the amount of $1,820,436.59 and reimbursement of actual and necessary expenses in the amount of $68,949.98. [Bankr. ECF No. 2304]. On September 20, 2019, the Bankruptcy Court approved the final fee application. [Bankr. ECF No. 122 (entered in Case No. 18-30167)]. JW was awarded approximately $1,015,215.79 for fees and expenses incurred from the date former Judge Jones was appointed as mediator in the Chapter 11 Cases.

10. All Bankruptcy Cases were officially closed as of September 29, 2021.[3]

[3] On August 13, 2019, the Court entered a final decree in EXCO Resources and ordered the closing of certain bankruptcy cases. [Bankr. ECF No. 2285]. Further docketing, regardless of which Reorganized Debtor, was to be done in the instant case, *In re EXCO Services, Inc.*, Case No. 18-30617, until that final decree was entered on September 21.

**B. EXCO's Rule 60(b) Motion and Withdrawal Motion.**

11. On or about November 3, 2023, Kevin M. Epstein, the U.S. Trustee, filed motions that sought, among other relief, the vacatur of orders approving JW's retention as counsel and/or JW's fee applications pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in various bankruptcy proceedings where (a) former Judge David Jones served as the presiding judge or court-appointed mediator, and (b) JW served as estate-retained counsel.[4]

12. EXCO was originally not included in the U.S. Trustee's initial Vacatur Motions. As such, on January 12, 2024, EXCO filed its own *Motion for Orders (I) Reopening the Lead Chapter 11 Case; (II) Vacating Certain Orders Approving Jackson Walker Applications for Compensation and Reimbursement of Expenses Pursuant to Federal Rule 60(b); (III) Disgorging Compensation and Expenses Awarded to Jackson Walker Relating Back to July 18, 2018; and (IV) Granting Other Appropriate Relief* (the "EXCO Rule 60 Motion"). [EXCO ECF No. 2334].

13. On January 30, 2024, EXCO filed a *Motion for Withdrawal of the Reference and Referral of Reorganized Debtors' Request for Orders (I) Vacating Certain Orders Pursuant to Federal Rule 60(b); (II) Disgorging Compensation and Expenses Awarded to Jackson Walker; and (III) Granting Other Appropriate Relief* (the "EXCO Withdrawal Motion"), requesting the Court to refer the Reopen/Rule 60(b) Motion to Chief District Judge Moses of the Western District of Texas. [Bankr. ECF No. 2336].

[4] On February 29, 2024 and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions in certain of the above-referenced cases, (b) initial Rule 60(b)(6) motions in certain other cases, and (c) objections to JW's then pending final fee applications in the remaining cases (collectively, the "Relevant Cases"). All such motions (collectively, the "Vacatur Motions") and objections filed by the U.S. Trustee are collectively referred to herein as the "U.S. Trustee Filings."

14. On February 2, 2024, the U.S. Trustee filed the *United States Trustee's Limited Objection to Reorganized Debtors' Motion to Reopen* [Bankr. ECF No. 2337], objecting to EXCO's request to waive UST quarterly fees.

15. On February 16 and 20, 2024, JW filed its response to the EXCO Rule 60 Motion and Motion to Withdraw the Reference, respectively. [Bankr. ECF Nos. 2338 & 2339].

16. On February 28, 2024, the U.S. Trustee filed its separate *Motion to Reopen Chapter 11 Case to Allow Action by the United States Trustee* [Bankr. ECF No. 2342].

17. On March 24, 2024, during a status conference held before the Bankruptcy Court, EXCO, with consent from JW and the U.S. Trustee, withdrew the EXCO Rule 60 Motion without prejudice, abated consideration of the EXCO Withdrawal Motion, and then joined the U.S. Trustee's amended Vacatur Motions.[5]

18. On October 7, 2024, the UST filed its *Motion for Withdrawal of the Reference and Referral of Motion for Relief Under Rule 60(b)(6) and Related Matters* (the "UST Withdrawal Motion") [Bankr. ECF No. 2377].

19. On October 11, 2024, the Bankruptcy Court entered the *Third Case Management Order*, referring all matters related to the U.S. Trustee's Vacatur Motions and Withdrawal Motions to Chief Bankruptcy Judge Eduardo V. Rodriguez in the Miscellaneous Proceeding, No. 23-00645, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm* and directing all related pleadings to be filed therein, as described in paragraph 21 below. [*See* Bankr. ECF No. 2380].

20. On December 3, 2024, EXCO filed a notice of standing in the Bankruptcy Cases regarding the UST Filings.

---

[5] EXCO's joinder to the U.S. Trustee's Vacatur Motions was filed in the Bankruptcy Cases at Bankr. ECF No. 2383 and the Miscellaneous Proceeding at ECF No. 566.

### C. The Miscellaneous Proceeding

21. On December 9, 2023, the Miscellaneous Proceeding, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Case No. 23-645 (EVR) (Bankr. S.D. Tex.), was established to consolidate certain pretrial and discovery issues related to the U.S. Trustee's Vacatur Motions. Chief Bankruptcy Judge Rodriguez was appointed to preside over the Miscellaneous Proceeding.

22. JW disputes the merits of the Vacatur Motions. JW also disputes any other basis to challenge JW's employment and/or fee orders entered in the Bankruptcy Cases or JW's alleged acts or omissions in relation to the Bankruptcy Cases, and asserts that the release and exculpation provisions of the confirmed Plan bar any potential claims against JW and relieve JW from any and all potential liability in relation to the Bankruptcy Cases. EXCO disagrees with JW's alleged defenses and believes that the release and exculpation provisions of the Plan will provide no defense for JW.

23. EXCO has been involved in these issues since its inception. EXCO filed its Rule 60(b) Motion before the U.S. Trustee in their Bankruptcy Cases. EXCO participated in the Miscellaneous Proceeding but was not directly involved in any discovery or related motion practice. These reasons were twofold: (i) satisfaction with the work the UST and its colleagues at the Justice Department were doing independently with respect to the UST's Rule 60(b) Motion; and (ii) a desire to avoid the duplicative and expensive discovery in the Miscellaneous Proceeding. However, EXCO continued to remain engaged and filed joinders to certain U.S. Trustee motions when appropriate.

24. On April 9, 2025, Chief District Judge Alia Moses entered a *Memorandum Opinion and Order*, withdrawing the Vacatur Motions to the District Court under Civil Action No. 4:23-CV-4787-AM (the "District Court").

25. On November 12, 2025, Chief District Judge Alia Moses entered an Order that, among other things, referred the Vacatur Motions back to Chief Bankruptcy Judge Eduardo Rodriguez for a report and recommendation.

26. On July 10, 2026, Chief Bankruptcy Judge Eduardo Rodriguez entered his Report and Recommendation to the United States District Court, recommending approval of various pending settlement motions with other estate representatives. That Report and Recommendation remains pending before Chief District Judge Alia Moses.

27. On August 2, 2026, JW and the U.S. Trustee filed a *Notice of Settlement Term Sheet Between JW and U.S. Trustee,* [ECF No. 301] which set forth the principle settlement terms between the U.S. Trustee and JW to resolve the Vacatur Motions, including JW's agreement to pay $15 million in the Relevant Cases to fully resolve and settle the Vacatur Motions.

28. On August 4, 2026, Chief Bankruptcy Judge Eduardo Rodriguez entered an *Order Setting an In-Person Trial on the U.S. Trustee's Vacatur Motions and Objections to Final Fee Application* [ECF No. 204], setting a trial on the Vacatur Motions to commence on January 17, 2027.

29. On September 9, 2026, Chief Bankruptcy Judge Eduardo Rodriguez conducted a hearing relating to the U.S. Trustee's standing with respect to the Vacatur Motions. On October 20, 2026, Chief Bankruptcy Judge Eduardo Rodriguez entered his Report and Recommendation to the United States District Court, recommending that that U.S. Trustee has standing to pursue the Vacatur Motions [ECF No. 333].

30. In order to avoid the further time, substantial expense, and uncertainties of continued litigation and to avoid the substantial stress and distraction of continued litigation, the

Parties desire to fully and completely settle the disputes between them on the terms and conditions set forth herein.

## IV. SUMMARY OF SETTLEMENT TERMS[6]

31. The Settlement Agreement provides that within five (5) business days of an order granting this Motion becoming a Final Order, JW will pay to EXCO the Settlement Payment of $500,000.00.

32. The Settlement Agreement also provides that the Parties will grant mutual releases. EXCO will release JW from any and all claims and causes of action involving any that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, the EXCO Rule 60 Motion, the EXCO Withdrawal Motion, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by EXCO and their estates against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions. Notwithstanding the foregoing and for the avoidance of doubt, nothing herein or in the Settlement Agreement shall preclude EXCO from receiving additional monies, if any, that may flow to EXCO's estates under any settlement agreement reached between JW and the U.S. Trustee (the "Trustee Settlement").

33. Additionally, JW will release EXCO and affiliate reorganized debtors, from any and all claims and causes of action involving any act, matter, transaction, occurrence, or event before the Effective Date, including claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

[6] The summary of the settlement terms is provided herein for convenience only. To the extent of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls.

## V. LEGAL STANDARD

34. Bankruptcy Rule 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." Fed. R. Bankr. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose . . . to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC*), 478 F.3d 452, 461 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13 (Bankr. E.D.N.Y. 1992)).

35. The Fifth Circuit requires the bankruptcy court to 'evaluate and set forth in a comprehensible fashion' the following: "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) [a]ll other factors bearing on the wisdom of the compromise." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)). "Under the rubric of the third, catch-all provision," the Fifth Circuit has articulated two additional factors: "[f]irst, the court should consider the best interests of the creditors, 'with proper deference to their reasonable views.' Second, the court should consider 'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *In re Cajun Elec. Power Coop.*, 119 F.3d 349, 355-56 (5th Cir. 1997) (internal quotation marks and citations omitted).

## VI. ARGUMENTS AND AUTHORITIES

36. The Settlement Agreement is straightforward. On the Effective Date of the Settlement Agreement, JW will pay to EXCO $500,000.00, representing approximately 49% of

the fees previously awarded JW in the Bankruptcy Cases after former Judge Jones became the court-appointed mediator.

37. In its business judgment, EXCO believes the Settlement Agreement presents a favorable recovery in the Bankruptcy Cases given the costs and uncertainty of continued litigation, along with the added benefit of the potential to recover under the Trustee Settlement. In exchange for the Settlement Amount, JW and EXCO are providing mutual releases.

**B. The Expected Recovery is Fair and Reasonable.**

38. The recovery of 49% is consistent with the outcomes in other cases previously found to be fair and reasonable. In its July 10, 2026, Report and Recommendation to the District Court, the Bankruptcy Court recommended approval of ten comparable JW fee settlements arising from the same underlying conduct. The $500,000.00 recovery for the Bankruptcy Cases here falls squarely within this established range, supporting the reasonableness of the proposed settlement terms. Resolving this dispute avoids the expense, delay, and uncertainty of protracted litigation.

39. The Parties contend that the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Iridium*. The Settlement Agreement gives EXCO the full benefit of the Settlement Amount without the time, expense and uncertainty of continued and protracted litigation.

**C. The Nature and Breadth of Releases to be Obtained by EXCO and JW.**

40. The Settlement Agreement contains customary mutual releases between JW and EXCO. The mutual releases carve out the Trustee Settlement so that EXCO and its estates can evaluate and take a position on the allocation of any such proceeds. The Settlement Agreement brings finality to the direct claims and disputes between EXCO and JW.

**D. The Settlement Agreement was the Result of Arms-Length Negotiations.**

41. Counsel for EXCO and JW are competent and experienced. The Settlement Agreement was reached after extensive litigation and discovery in the Bankruptcy Cases and the Miscellaneous Proceeding and after the parties exchanged multiple settlement proposals. The settlement was reached following extensive arms-length negotiations and a prior mediation that was not successful.

42. EXCO recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. EXCO believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. Consequently, EXCO urges that the Settlement Agreement is fair, equitable, and in the best interest of the Reorganized Debtors and all concerned parties.

## VII. CONCLUSION

WHEREFORE, EXCO respectfully requests that the Court enter an order approving the Settlement Agreement and grant EXCO such other legal or equitable relief as the Court may deem just and proper.

Dated: October 29, 2026

Respectfully submitted,

**FOLEY & LARDNER LLP**

*/s/ John P. Melko*

John P. Melko
jmelko@foley.com
Texas State Bar No. 13919600
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: 713.276.5500

**COUNSEL FOR EXCO RESOURCES, INC. AND AFFILIATE REORGANIZED DEBTORS**

**CERTIFICATE OF SERVICE**

I do hereby certify that on October 29, 2026 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case.

*/s/ John P. Melko*
John P. Melko