**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>Professional Fee Matters Concerning the Jackson Walker Law Firm | §<br>§<br>§<br>§<br>§<br>§ | Case No. 4:23-CV-4787 |
| In re:<br><br>SN Catarina, LLC,<br><br>Reorganized Debtor | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 19-34514 (MI)<br><br>(formerly Jointly Administered under Lead Case Sanchez Energy Corporation, 19-34508) |

**MOTION OF MESQUITE ENERGY, INC. FOR ENTRY OF AN ORDER APPROVING COMPROMISE AND SETTLEMENT WITH JACKSON WALKER LLP PURSUANT TO BANKRUPTCY RULE 9019**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES CHIEF BANKRUPTCY JUDGE:**

Mesquite Energy, Inc., as the reorganized debtor (the "Reorganized Debtor") in the chapter 11 cases of Sanchez Energy Corporation, *et al.*, formerly jointly administered under Case No. 19-34508 and currently being administered as *In re SN Catarina, LLC*, Case No. 19-

34514 (MI) (the "Chapter 11 Cases"), files this *Motion for Entry of an Order Approving Compromise and Settlement with Jackson Walker LLP* (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (as modified, amended, or supplemented, the "Plan").[1] A copy of the *Settlement Agreement and Release* (the "Settlement Agreement") between the Reorganized Debtor and Jackson Walker LLP ("Jackson Walker") is attached hereto as **Exhibit A**. In support of this Motion, the Reorganized Debtor respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1. The Reorganized Debtor respectfully seeks the Court's approval of the Settlement Agreement with Jackson Walker in the amount of $600,000 (the "Settlement Payment"), which resolves all claims the Reorganized Debtor and the Debtors' estates have or may have against Jackson Walker arising out of or related to the Chapter 11 Cases, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*, Civil Action No. 4:23-cv-04787 (the "Misc. Proceeding"), and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones (the "Jones-Freeman Relationship"). The Settlement Payment will be made to the Reorganized Debtor in accordance with the terms of the confirmed Plan.

2. The Settlement Agreement was the product of extensive negotiations between the Reorganized Debtor and Jackson Walker conducted at arm's length, following more than

[1] The Plan [Bankr. Case Dkt. No. 1205], as confirmed by the Bankruptcy Court on April 30, 2020 via that certain *Order Approving Disclosure Statement and Confirming Second Amended Joint Chapter 11 Plan of Reorganization of Sanchez Energy Corporation and its Debtor Affiliates* (the "Confirmation Order") [Bankr. Case Dkt. No. 1212], provides that: "On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules." *See* Plan, Art. IV.G. Notwithstanding this Plan provision, the Reorganized Debtor seeks approval of its settlement with Jackson Walker under Bankruptcy Rule 9019 out of an abundance of caution and for purposes of transparency.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

two and a half years of litigation encompassing over 40 depositions, the production of over 98,000 pages of documents, voluminous pleadings and briefing, numerous hearings, and extensive negotiations. If approved, the Settlement Agreement will obviate the need for the Reorganized Debtor to participate in the trial on the merits scheduled to commence January 19, 2027.

3. After careful evaluation, the Reorganized Debtor has concluded that the Settlement Agreement is fair, reasonable, and in the best interests of the Reorganized Debtor and its estate. The Settlement Agreement provides a certain, immediate recovery that avoids the substantial costs, risks, and delays of continued litigation. As recognized by this Court in its *Report and Recommendation to the United States District Court* (the "Report and Recommendation") [Dkt. No. 286] which recommends approval of nine other settlements in other bankruptcy cases where former Judge Jones served as the presiding judge or court-appointed mediator and Jackson Walker served as estate retained counsel (collectively, the "Affected Cases"), there remains uncertainty in fact and law.

4. Specifically, while the Reorganized Debtor believes that it would prevail if the claims were litigated to final judgment, several disputed issues make the scope of any disgorgement order uncertain. For example, Jackson Walker is likely to assert that the fees subject to disgorgement should be reduced based on the facts that Jackson Walker served as co-counsel to the Debtors in the Chapter 11 Cases with Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as lead restructuring counsel; that former Judge Jones was not the presiding judge in the Chapter 11 Cases but rather served as the court-appointed mediator; that a significant portion of Jackson Walker's fees were incurred before former Judge Jones's appointment; and that the confirmed chapter 11 plan included a settlement with respect to professional fees that capped Jackson Walker's professional fees. While the Reorganized Debtor disputes that any of these facts should result in a reduction of the amount of fees

disgorged, Jackson Walker is likely to litigate each of these issues if no settlement is reached. The expense and uncertainty of resolving these issues weighs heavily in favor of the proposed Settlement Agreement, through which the Reorganized Debtor will receive the immediate benefit of the $600,000 payment without the cost, delay, or risk of further litigation.

5. Importantly, the Settlement Agreement does not impair the relief sought by the U.S. Trustee in his Vacatur Motions (as defined below). The Settlement Agreement only releases claims held by the Reorganized Debtor and the Debtors' estates against Jackson Walker. It does not release any independent claims or relief asserted by the U.S. Trustee. Moreover, the Settlement Agreement expressly preserves the Reorganized Debtor's right to receive additional monies, if any, that may flow to the Reorganized Debtor under any settlement that may be reached between Jackson Walker and the U.S. Trustee.

## RELIEF REQUESTED

6. By this Motion, and in accordance with Bankruptcy Rule 9019(a), the Reorganized Debtor requests that the Court enter an order approving the Settlement Agreement between Jackson Walker and the Reorganized Debtor. The Settlement Agreement would resolve any and all claims and causes of action of any kind held by the Reorganized Debtor and its estates against Jackson Walker arising out of or related to the Chapter 11 Cases, the Misc. Proceeding, and the relationship between Elizabeth Freeman and former Bankruptcy Judge David R. Jones. In exchange for the mutual releases set forth in the Settlement Agreement, Jackson Walker shall pay the Reorganized Debtor $600,000 in accordance with the terms of the confirmed Plan in the Chapter 11 Cases.

## JURISDICTION AND VENUE

7. The United States District Court for the Southern District of Texas and the United States Bankruptcy Court for the Southern District of Texas have jurisdiction over this Motion and the litigation pursuant to 28 U.S.C. § 157, the *Amended Standing Order of*

*Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012, and the orders entered in this matter.

8. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

9. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure. To the extent necessary, the Reorganized Debtor consents to the entry of a final order by the Bankruptcy Court consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Chapter 11 Cases

10. On August 11, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases were assigned to the Honorable Marvin Isgur.

11. On August 26, 2019, the U.S. Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). *See* Bankr. Case Dkt. No. 228.

12. On September 6, 2019, the Debtors filed an *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for the Debtors and Debtors in Possession* (the "Jackson Walker Employment Application") [Bankr. Case Dkt. No. 269]. That same date, the Debtors also filed an *Application to Employ Akin Gump Strauss Hauer & Feld LLP as Counsel to the Debtors and Debtors in Possession* (the "Akin Gump Employment Application") [Bankr. Case Dkt. No. 268].

13. On October 1, 2019, the Bankruptcy Court (Judge Isgur) entered an *Order Granting the Application of Debtors and Debtors-In-Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for Debtors and Debtors-In-Possession* (the "Jackson Walker Employment Order") [Bankr. Case Dkt. No. 416], and an *Order Authorizing*

*Employment of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Debtors and Debtors in Possession* (the "Akin Gump Employment Order") [Bankr. Case Dkt. No. 415].

14. On January 17, 2020, Jackson Walker filed its *First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from August 11, 2019 through November 30, 2019* ("Jackson Walker First Interim Fee Application"), seeking allowance of compensation for professional services provided in the amount of $779,620.50 and reimbursement of actual and necessary expenses in the amount of $61,867.43, which was approved by the Bankruptcy Court on February 12, 2020. *See* Bankr. Case Dkt. No. 925.

15. On March 26, 2020, former Judge Jones was appointed as a mediator in the Chapter 11 Cases. *See* Bankr. Case Dkt. No. 1094. Mediation commenced on March 27, 2020, and ultimately resulted in an agreement between the Debtors, the Committee, an ad hoc group of unsecured noteholders, and the Secured Ad Hoc Group (as defined in the Plan), which agreement was embodied in the Plan.

16. On April 30, 2020, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"). *See* Bankr. Case Dkt. No. 1212.

17. The Plan provides that any cause of action to disgorge fees paid to Jackson Walker belongs exclusively to the Reorganized Debtor. Specifically, under the Plan, the Reorganized Debtor "through its authorized agents or representatives, shall retain and may exclusively enforce any and all . . . Causes of Action" and that "[t]he Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court."

*Id.* at Art. IV.N. Accordingly, any fees disgorged by Jackson Walker would be payable solely to the Reorganized Debtor.

18. On June 30, 2020, the Plan went effective. *See* Bankr. Case Dkt. No. 1417.

19. On July 2, 2020, Jackson Walker filed its *Second Interim and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from August 11, 2019 through April 30, 2020*, seeking approval of fees totaling $1,905,683.35 (the "Jackson Walker Final Fee Application"). *See* Bankr. Case Dkt. No. 1432. In connection with the Jackson Walker Final Fee Application, Jackson Walker agreed to a 10% reduction in its fees through March 27, 2020, pursuant to Art. II.B.1 of the Plan.

20. On July 27, 2020, the Bankruptcy Court (Judge Isgur) approved the Jackson Walker Final Fee Application. *See* Bankr. Case Dkt. No. 1502.

**B. The Miscellaneous Proceeding**

21. On November 2-3, 2023, the U.S. Trustee filed motions seeking, among other relief, vacatur of orders approving Jackson Walker's retention as counsel and/or Jackson Walker's fee applications, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, in certain Affected Cases where (a) former Judge Jones served as the presiding judge or court-appointed mediator and (b) Jackson Walker served as estate- or committee-retained counsel (collectively, the "Vacatur Motions").

22. On December 9, 2023, Chief Bankruptcy Judge Eduardo V. Rodriguez initiated a miscellaneous proceeding, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm, Misc.* No. 23-00645, and has presided over pretrial, discovery, and certain other matters related to the Vacatur Motions. Contemporaneously with the filing of the Vacatur Motions, and on December 22, 2023, the U.S. Trustee filed motions to withdraw the reference and refer the Affected Cases to the United States District Court for the Southern District of Texas.

23. On February 29, 2024, and March 29, 2024, the U.S. Trustee filed (a) amended Rule 60(b)(6) motions, (b) initial Rule 60(b)(6) motions, and (c) objections to Jackson Walker's then-pending final fee applications in certain of the Affected Cases (the Vacatur Motions, the amended motions, the additional Rule 60(b)(6) motions, and fee objections are referred to collectively as the "U.S. Trustee Filings").

24. On May 22, 2024, Jackson Walker filed its response in opposition to the U.S. Trustee Filings. *See* Bankr. Case Dkt. No. 2944. On July 1, 2024, and August 12, 2024, respectively, the U.S. Trustee filed his reply in further support of the U.S. Trustee Filings, and Jackson Walker filed its sur-reply in further opposition to the U.S. Trustee Filings. *See* Bankr. Case Dkt. Nos. 2950 & 2959. Jackson Walker disputes the merits of the U.S. Trustee Filings. Jackson Walker also disputes any other basis to challenge its fee orders entered in these Chapter 11 Cases or its acts and omissions in relation to the Chapter 11 Cases and asserts that the exculpation provisions of the confirmed Plan bar any potential claims against Jackson Walker and relieve Jackson Walker from any and all potential liability in relation to the Chapter 11 Cases.

25. From May 15, 2024, through December 2024, the U.S. Trustee and Jackson Walker engaged in extensive discovery, which included, among other things, over 40 depositions and the production of over 98,000 pages of documents in the litigation. To avoid incurring unnecessary attorney's fees and related expenses, the Reorganized Debtor limited its participation in the discovery process, instead relying on the U.S. Trustee to lead the litigation efforts.

26. On August 13, 2024, the Reorganized Debtor filed its *Notice Stating Basis for Standing in Connection with Jackson Walker Fee Matters*. *See* Bankr. Case Dkt. No. 2960.

27. On April 9, 2025, Chief District Court Judge Alia Moses entered a *Memorandum Opinion and Order* that, among other things, granted the U.S. Trustee's motion

to withdraw the reference of the various pending U.S. Trustee Filings to the United States District Court for the Southern District of Texas, Houston Division (the U.S. Trustee Filings and the withdrawn matters are referred to collectively herein as the "Litigation"). While certain matters have since been referred back to the Bankruptcy Court for a report and recommendation to the District Court, no new trial date was set at that time.

28. Certain representatives of the bankruptcy estates in nine of the Affected Cases filed *Motions for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019*, seeking approval of individual settlement agreements with Jackson Walker (the "Other 9019 Settlement Motions"). The Bankruptcy Court conducted an evidentiary hearing on the Other 9019 Settlement Motions on March 17-19, 2026.

29. On July 10, 2026, the Bankruptcy Court issued the Report and Recommendation on the Other 9019 Settlement Motions, recommending that the District Court approve the nine proposed settlements between Jackson Walker and the bankruptcy estates, which would result in Jackson Walker returning approximately $4,785,000 in fees and expenses previously awarded to Jackson Walker in those cases.

30. On July 14, 2026, the Bankruptcy Court entered an *Order for Non-Evidentiary Scheduling Conference*. *See* Dkt. No. 287.

31. On July 17, 2026, the U.S. Trustee and Jackson Walker filed a *Joint Emergency Motion for Entry of an Order Extending Deadlines* [Dkt. No. 289] to permit continued settlement discussions regarding the U.S. Trustee's Vacatur Motions. The Court denied the extension motion on July 20, 2026. *See* Dkt. No. 290.

32. On August 4, 2026, the Bankruptcy Court held a non-evidentiary scheduling conference with respect to Jackson Walker's standing arguments and scheduling of a trial on the Vacatur Motions. At that scheduling conference, the Bankruptcy Court entered two orders: (a) an *Order for an In-Person Evidentiary Hearing* [Dkt. No. 303], scheduling an evidentiary

hearing on Jackson Walker's Standing Arguments (as defined therein) for September 9, 2026, and (b) an *Order Scheduling an In-Person Trial* [Dkt. No. 304] on the merits of the U.S. Trustee's Vacatur Motions and objections to final fee applications, commencing January 19, 2027. The Bankruptcy Court's orders provide numerous pretrial deadlines, including the exchange of witness and exhibit lists, the filing of pre-trial briefs, and the preparation of joint pre-trial orders.

## SUMMARY OF SETTLEMENT AGREEMENT

33. The Settlement Agreement is straightforward and includes the following key terms, summarized below in pertinent part:

i. ***Effective Date***: The effective date of this Agreement (the "Effective Date") is the first day as of which all of the following conditions have been satisfied or, to the extent permitted herein, are waived: (i) all Parties have executed and exchanged each Party's signature pages to this Agreement; and (ii) the Bankruptcy Court or District Court, as applicable, has entered an order (the "Approval Order") approving all terms of this Agreement and overruling any objections to approval of this Agreement and such order has become a Final Order (as hereafter defined). For purposes of this Agreement, the Approval Order will become a "Final Order" when: (x) fourteen (14) days (as computed in accordance with Fed. R. Bankr. P. 9006) shall have passed from the date of the entry of the Approval Order, and (y) either (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed, or (ii) if a timely appeal is filed, then all timely filed appeals have been dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely appellate review. If the Effective Date does not occur: (a) the Parties shall revert, without prejudice to or waiver of any right, to their respective positions immediately prior to the execution of this Agreement; and (b) neither this Agreement nor evidence of its terms shall be admissible for any purpose in the Bankruptcy Cases or any other action or proceeding.

ii. ***Settlement Payment:*** Within five (5) business days after the Effective Date, JW shall pay or cause to be paid to the Reorganized Debtor for the benefit of the Reorganized Debtor (receipt of which shall be promptly confirmed by the Reorganized Debtor) the sum of $600,000 (the "Settlement

Payment"). Payment shall be made payable to the Reorganized Debtor's account by wire transfer using wire transfer instructions provided separately to JW.

iii. ***Release in Favor of Jackson Walker:*** On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement and except as otherwise provided herein, the Reorganized Debtor and the Debtors and their estates, hereby release, acquit, and forever discharge JW and its respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims and causes of action that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones, which for the avoidance of doubt includes all such claims, causes of action and allegations that may be held by the Reorganized Debtor, the Debtors and their estates against JW related to any breach of fiduciary duty, negligence, gross negligence, malpractice, fraud (or similar fraud based claims), and/or requests for sanctions. Notwithstanding the foregoing and for the avoidance of doubt, nothing herein or in this Agreement shall impair any standing or ability of the U.S. Trustee to prosecute claims asserted in the U.S. Trustee Filings with respect to the Bankruptcy Cases or preclude the Reorganized Debtor from receiving additional monies, if any, that may flow to the Reorganized Debtor's estates under any settlement agreement reached between JW and the U.S. Trustee (the "Trustee Settlement") or any judgment in the U.S. Trustee's favor with respect to the U.S. Trustee Filings.

iv. ***Release in Favor of the Reorganized Debtor, the Debtors and their Estates***. On the Effective Date, and for the consideration described herein, and except for those obligations created by or arising out of this Agreement, JW

hereby releases, acquits, and forever discharges the Reorganized Debtor, the Debtors and their estates, and their respective predecessors in interest, successors, affiliates, estates, directors, officers, employees, agents, heirs, executors, representatives, insurers, reinsurers, attorneys, partners, associates, staff members, and assigns from any and all actions, suits, debts, covenants, contracts, controversies, agreements, promises, duties, obligations, claims, sanctions, issues, demands, damages, injuries, losses, liabilities, expenses, attorneys' fees and causes of action of any kind, whether arising in contract, in tort, by statute, at law, in equity, or otherwise, and whether fixed or contingent, liquidated or unliquidated, known or unknown, concealed or revealed, discovered or undiscovered, actual or potential, direct or indirect, material or immaterial, disputed or undisputed, arising out of, related to, based upon, by reason of, or in any way involving any act, matter, transaction, occurrence, or event before the Effective Date, including but not limited to any and all claims, causes of action and allegations that relate to or arise from the Bankruptcy Cases, the U.S. Trustee Filings, the Bankruptcy Disputes, or the relationship between Ms. Freeman and former Judge Jones.

v. ***No Admission / Liability Denied.*** This settlement is made to avoid the uncertainties, annoyance, and expense of further litigation. The payment of the consideration by or on behalf of JW and/or the execution of the Agreement is not, and is not to be construed, as an admission of liability, which is expressly denied. This Agreement and/or its terms shall not be admissible in any proceeding against any Party, except in any proceeding to approve, construe, interpret or enforce the settlement or any of its terms.

## ARGUMENT AND AUTHORITIES

34. Rule 9019(a) states that "[o]n motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." FED. R. BANKR. P. 9019(a). "Bankruptcy Rule 9019, unique in that it does not have a parallel section in the Code, has a 'clear purpose … to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'" *In re Iridium Operating, LLC*, 478 F.3d 452, 461 (2d Cir. 2007) (quoting *In re Masters, Inc.*, 141 B.R. 13 (Bankr. E.D.N.Y. 1992)).

35. The Fifth Circuit requires the bankruptcy court to 'evaluate and set forth in a comprehensible fashion' the following: "(1) [t]he probability of success in the litigation, with

due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) [a]ll other factors bearing on the wisdom of the compromise." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968)). "Under the rubric of the third, catch-all provision," the Fifth Circuit has articulated two additional factors: "[f]irst, the court should consider the best interests of the creditors, 'with proper deference to their reasonable views.' Second, the court should consider 'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *In re Cajun Elec. Power Coop.*, 119 F.3d 349, 355-56 (5th Cir. 1997) (internal quotation marks and citations omitted).

36. In evaluating a settlement under Bankruptcy Rule 9019, the Bankruptcy Court does not substitute its own judgment for the Reorganized Debtor's, nor is it required to conduct a mini-trial on the underlying claims. Rather, the Bankruptcy Court need only "apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision." *In re Cajun Elec. Power Coop*., 119 F.3d at 356 (quotations omitted). "Compromises are a normal part of the bankruptcy process and oftentimes a desirable and wise method of bringing to a close proceedings that are otherwise lengthy, complicated, and costly." *Id.* at 354 (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)).

37. As such, the Reorganized Debtor's burden is not high, and the Reorganized Debtor submits that the Settlement Agreement easily satisfies this standard. *In re Shankman*, No. 08-36327, 2010 WL 743297, at *3 (Bankr. S.D. Tex. Mar. 2, 2010) ("the Trustee's burden is not high. The Trustee need only show that his decision falls within the "range of reasonable litigation alternatives."). As explained more fully below, the terms of the Settlement Agreement are fair and equitable pursuant to the requirements established by the Supreme Court in *Anderson* and the Fifth Circuit in *Jackson Brewing*. The Settlement Agreement gives

the Reorganized Debtor the full benefit of the Settlement Payment without the time, expense, and uncertainty of continued litigation.

***Factor 1: The probability of success in the litigation, with due consideration for the uncertainty in fact and law.***

38. The Reorganized Debtor contends that the probability of success in the litigation against Jackson Walker is high but there are substantial questions concerning: (a) the amount of time it will take to litigate and/or recover against Jackson Walker (including any applicable appeals); and (b) the amount of recovery the Reorganized Debtor will realize through litigation when balanced against the cost of continued litigation. The Settlement Payment provides a significant recovery for the Reorganized Debtor in accordance with the confirmed Plan and eliminates the risk of continuing to litigate the claims against Jackson Walker.

39. The Reorganized Debtor submits there is a high likelihood that the order approving Jackson Walker's Final Fee Application will be vacated, thus opening up the possibility that fees paid to Jackson Walker will be clawed back to the Reorganized Debtor. However, the trial date to vacate the Jackson Walker Final Fee Application is not set until January 2027, and such trial is likely to last weeks (not including any appeals which are likely by both parties). In contrast, the Settlement Agreement provides the Reorganized Debtor with the certainty of receiving $600,000, without the need for further litigation, expense, or delay.

40. Moreover, no rulings have been made in this proceeding that bear insight on the likely outcome of the claims or defenses. As the Bankruptcy Court recognized in its Report and Recommendation, "[t]he factual underpinnings of the claims being settled — the Jones-Freeman Relationship that potentially affected 33 complex bankruptcy cases over multiple years — are unprecedented, and there is no binding opinion on all fours with the instant facts." *See* Report and Recommendation at p. 171.

41. If the Reorganized Debtor were to continue litigating its claims against Jackson Walker, Jackson Walker would likely assert several defenses to the extent of disgorgement that

have not been addressed by a court. These include the arguments that former Judge Jones was a mediator, not the presiding judge; that Jackson Walker was co-counsel to Akin, which was lead counsel; that fees incurred prior to former Judge Jones' appointment as mediator should not be subject to disgorgement; that former Judge Jones' role as mediator concluded before the earliest date on which Jackson Walker contends it first had knowledge of any romantic relationship with Ms. Freeman; and that the professional fee settlement in these cases reduces or eliminates the amount of disgorgement available. The Reorganized Debtor disputes that these arguments would affect the amount of disgorgement. However, this uncertainty in both fact and law weighs heavily in favor of a negotiated resolution that provides a certain, immediate recovery to the Reorganized Debtor.

42. In light of these uncertainties, the Settlement Agreement is a reasonable compromise. The Settlement Payment of $600,000 represents a substantial portion of the fees incurred during and after former Judge Jones was appointed mediator. And the Settlement Agreement guarantees a certain recovery to the Reorganized Debtor, avoids the costs and risks of continued litigation, and preserves the Reorganized Debtor's right to receive any additional monies that may flow to the Reorganized Debtor under the Trustee Settlement.

***Factor 2: The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay.***

43. As discussed above, this litigation has proven to be extremely complex and protracted, and will inevitably lead to appeals and further litigation.

44. Even if the Reorganized Debtor were to prevail at trial, the amount of fees to be recovered would remain uncertain, and the Reorganized Debtor would then be required to pursue additional proceedings to determine the scope of any disgorgement. And as Chief District Court Judge Alia Moses noted at the hearing on May 22, 2025, it is not clear that the Court would order 100% disgorgement from Jackson Walker in light of the actions of former

Judge Jones and Ms. Freeman. *See* May 22, 2025 Hr'g Tr. 55:2-5; 61:6-13; 67:1-5 (S.D. Tex. May 22, 2025).

45. Moreover, the Reorganized Debtor has retained counsel with respect to the Vacatur Motions and will continue to need to retain and pay counsel with respect to any further proceedings. The Settlement Agreement now brings finality, eliminates litigation and collection risk, and ends the accrual of future fees and costs, risks that would only increase with the passage of time and continued litigation.

46. The costs of continued litigation are not speculative. As this Court is aware, at the evidentiary hearing on the 9019 Settlement Motions in the Affected Cases, estate representatives testified that the estimated costs of participating in a trial on the Vacatur Motions ranged from $50,000 to $150,000 for smaller estates, and from $500,000 to $1,000,000 for larger cases—costs that, in some instances, would approach or exceed the maximum potential recovery. *See* Report and Recommendation at pp. 139 & 173. For the Reorganized Debtor, the Settlement Agreement avoids the need to incur such costs and preserves estate resources.

47. Further, even if litigation were pursued, the most likely theory of recovery, disgorgement of fees, is subject to uncertainty as to its scope given the facts and circumstances of the Chapter 11 Cases, including Jackson Walker's role as co-counsel and former Judge Jones' appointment as mediator months after the commencement of the Chapter 11 Cases. The Settlement Agreement accounts for this risk by providing a certain recovery now of a substantial portion of the total fees paid to Jackson Walker.

***Factor 3: The paramount interest of the creditors with proper deference to their reasonable views***

48. Under the confirmed Plan, all Causes of Action were vested in the Reorganized Debtor, and any recoveries on those Causes of Action would be distributed to the Reorganized Debtor—and not to other creditors—pursuant to the terms of the Plan. Even so, the

Reorganized Debtor's current equity holders are all former creditors of the Debtors during the chapter 11 case, and any benefit to the Reorganized Debtor from the Settlement Agreement will ultimately inure to their benefit. Thus, the interests of creditors weighs in favor of approval of the Settlement Agreement.

49. To the Reorganized Debtor's knowledge, no party in interest has indicated opposition to the Settlement Agreement. The Reorganized Debtor has provided notice of this Motion to all parties entitled to notice and will address any objections that may be raised in response to this Motion.

***Factor 4: The extent to which the settlement is truly the product of arm's-length bargaining and not of fraud or collusion.***

50. Counsel for the Reorganized Debtor and Jackson Walker are competent and experienced in the Bankruptcy Code, Bankruptcy Rules, bankruptcy-related litigation and the administration of bankruptcy estates. The Settlement Agreement was entered into following extensive arm's-length negotiation and years of litigation, and after the parties exchanged multiple settlement proposals.

51. The Reorganized Debtor recognizes that a degree of uncertainty and litigation risk exists with respect to continued litigation. The Reorganized Debtor believes that the Settlement Agreement fairly accounts for such risk and provides for the resolution of disputes without the need for continued litigation and its attendant costs and expenses. Further, the Reorganized Debtor believes it has achieved a resolution that maximizes value for it while minimizing the cost and uncertainty of litigation.

***Factor 5: All other factors bearing on the wisdom of the compromise***

52. The Settlement Agreement contains broad mutual releases between Jackson Walker and the Reorganized Debtor on behalf of the Reorganized Debtor and its estates. The releases encompass all claims and causes of action of any kind arising out of or related to the Bankruptcy Cases, the U.S. Trustee Filings, and the Jones-Freeman Relationship. The breadth

of the releases is appropriate given the circumstances, and is designed to bring finality to the claims and disputes between the Reorganized Debtor and Jackson Walker. The releases in the Settlement Agreement appropriately resolve any disputes arising from Jackson Walker's role. Given these circumstances, the mutual releases are proportionate and appropriate to bring finality to the parties' claims.

53. Furthermore, the Settlement Agreement does not negatively impact the integrity of the judicial system. As the Court explained in the Report and Recommendation, under the catch-all provision of the *Jackson Brewing* Factors, *see In re Jackson Brewing Co.*, 624 F.2d at 602, the Bankruptcy Court considers whether approval of a settlement would circumvent the Bankruptcy Code's requirements for professional compensation and the Bankruptcy Court's inherent authority, or otherwise allow Jackson Walker to avoid accountability. *See* Report and Recommendation at pp. 107 & 200; *In re Kallstrom*, 298 B.R. 753, 761 (B.A.P. 10th Cir. 2003) ("[B]ankruptcy courts, in exercising their discretion under Bankruptcy Rule 9019, may consider, inter alia, whether the proposed settlement promotes the integrity of the judicial system.").

54. Here, the Settlement Agreement does not impair the Court's authority or the U.S. Trustee's ability to pursue relief. As described above, the Settlement Agreement: (i) releases only claims held by the Reorganized Debtor and the Debtors' estates against Jackson Walker; (ii) does not resolve the Vacatur Motions which remain pending; (iii) does not preclude the Reorganized Debtor from receiving additional funds if the Court later orders Jackson Walker to make further payments; and (iv) does not limit the Court's inherent authority or its ability to enforce the Bankruptcy Code's requirements governing professional employment and compensation. The consideration of judicial integrity therefore weighs in favor of approving the Settlement Agreement.

55. Consequently, the Reorganized Debtor believes that the Settlement Agreement is fair, equitable, and in the best interest of the estate.

**WHEREFORE**, the Reorganized Debtor respectfully requests that the Court enter an order approving the Settlement Agreement and granting the Reorganized Debtor such other legal or equitable relief as the Court may deem just and proper.

[*Remainder of this page intentionally left blank*]

Date: November 5, 2026

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

*/s/ Jennifer J. Hardy*

Jennifer J. Hardy (Texas State Bar No. 24096068)
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Facsimile: (713) 510-1799
Email: JHardy2@willkie.com

Christopher DiPompeo (admitted *pro hac vice*)
1875 K St., N.W.
Washington, D.C. 20006
Telephone: (202) 303-1016
Facsimile: (202) 303-2000
Email: CDiPompeo@willkie.com

*Attorneys for the Interested Party Mesquite Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2026, I caused a copy of the foregoing Motion to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on all parties registered to receive such service.

*/s/ Jennifer J. Hardy*
Jennifer J. Hardy